**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------- x
                                :

CHARLOTTE BENNETT             :

                    Plaintiff,    :

                                :

           -against-       :      No. 1:22 Civ. 07846 (VSB)

                                :

ANDREW M. CUOMO, MELISSA DEROSA,   :
JILL DESROSIERS, and JUDITH MOGUL,   :

                                :

                  Defendants.   :

                                :
------------------------------------------------------------- x

## MEMORANDUM OF LAW
## IN SUPPORT OF JILL DESROSIERS' MOTION TO DISMISS

DEBEVOISE & PLIMPTON LLP
Jyotin Hamid
Mary Beth Hogan
jhamid@debevoise.com
mbhogan@debevoise.com
919 Third Avenue
New York, New York 10022
(212) 909-6000
*Counsel to Defendant Jill DesRosiers*

# TABLE OF CONTENTS

I.  PRELIMINARY STATEMENT ................................................................... 1

II.  ALLEGED FACTUAL BACKGROUND ..................................................... 3

III.  LEGAL ARGUMENT ............................................................................... 6

    A.  Standard Of Review ......................................................................... 6

    B.  The Claim Against Ms. DesRosiers For Gender Discrimination Under The NYCHRL Should Be Dismissed .......................................................... 6

    C.  The Claims Against Ms. DesRosiers For Aiding And Abetting Sexual Harassment Under The NYSHRL And Discrimination Under The NYCHRL Should Be Dismissed ..................................................... 9

    D.  Plaintiff's Retaliation Claims Against Ms. DesRosiers Should Be Dismissed ....................................................................................... 14

        1.  Plaintiff Did Not Suffer An Adverse Employment Action ...................... 15

        2.  There Is No Causal Connection Between Plaintiff's Complaint And The Purported Adverse Employment Action .................................. 18

    E.  All Of Plaintiff's Claims Fail Also On The Basis Of Qualified Immunity ......... 20

        1.  Plaintiff's Equal Protection Claim ............................................. 20

        2.  Plaintiff's NYSHRL And NYCHRL Claims ................................. 22

    F.  The Dismissal Should Be With Prejudice .......................................... 22

IV.  CONCLUSION ...................................................................................... 24

# **TABLE OF AUTHORITIES**

**CASES**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..........................................................................................................6, 7

*Bancroft v. City of Mount Vernon*,
    672 F. Supp. 2d 391 (S.D.N.Y. 2009).......................................................................................22

*Bensch v. Est. of Umar*,
    2 F.4th 70 (2d Cir. 2021) ..........................................................................................................22

*Betterson v. HSBC Bank USA, N.A.*,
    661 F. App'x 87 (2d Cir. 2016) ...............................................................................................17

*Brightman v. Prison Health Serv., Inc.*,
    970 N.Y.S.2d 789 (1st Dep't 2013) .........................................................................................18

*Brown v. City of Syracuse*,
    673 F.3d 141 (2d Cir. 2012)........................................................................................................7

*Chanval Pellier v. Brit. Airways, Plc.*,
    No. CIV.A. 02-CV-4195, 2006 WL 132073 (E.D.N.Y. Jan. 17, 2006) ...................................17

*Dawson v. Cnty. of Westchester*,
    351 F. Supp. 2d 176 (S.D.N.Y. 2004)......................................................................................22

*Dickens v. Hudson Sheraton Corp. LLC*,
    689 F. App'x 670 (2d Cir. 2017) .............................................................................................19

*Farmer v. Shake Shack Enters., LLC*,
    473 F. Supp. 3d 309 (S.D.N.Y. 2020)................................................................................15, 18

*Fattoruso v. Hilton Grand Vacations Co., LLC*,
    873 F. Supp. 2d 569 (S.D.N.Y. 2012), *aff'd*, 525 F. App'x 26 (2d Cir. 2013)...................7, 13

*Harris v. NYU Langone Med. Ctr.*,
    No. 12 CIV. 0454 RA JLC, 2013 WL 3487032 (S.D.N.Y. July 9, 2013) .................................9

*In Barrer-Cohen v. Greenburgh Cent. Sch. Dist.*,
    No. 18 CIV. 1847 (NSR), 2019 WL 3456679 (S.D.N.Y. July 30, 2019)..............................21

*Jones v. Parmley*,
    465 F.3d 46 (2d Cir. 2006)........................................................................................................22

*Kunzler v. Canon, USA, Inc.*,
    257 F. Supp. 2d 574 (E.D.N.Y. 2003) .....................................................................................13

*L-7 Designs, Inc. v. Old Navy, LLC*,
    647 F.3d 419 (2d Cir. 2011)............................................................................20

*Lewis v. Triborough Bridge & Tunnel Auth.*,
    77 F. Supp. 2d 376 (S.D.N.Y. 1999).............................................................13

*Looney v. Black*,
    702 F.3d 701 (2d Cir. 2012)............................................................................20

*Lore v. City of Syracuse*,
    670 F.3d 127 (2d Cir. 2012)......................................................................20, 22

*McHenry v. Fox News Network, LLC*,
    510 F. Supp. 3d 51 (S.D.N.Y. 2020).....................................................9, 10, 14

*McKenna v. Wright*,
    386 F.3d 432 (2d Cir. 2004)............................................................................20

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
    715 F.3d 102 (2d Cir. 2013)............................................................................15

*Mondelo v. Quinn, Emanuel, Urquhart & Sullivan, LLP*,
    No. 21 CIV 02512 (CM), 2022 WL 524551 (S.D.N.Y. Feb 22, 2022) ............12

*Morales v. New York & Presbyterian Hosp.*,
    No. 18CV9711GBDKHP, 2019 WL 8989858 (S.D.N.Y. Nov. 20, 2019) ............10

*Naumovski v. Norris*,
    934 F.3d 200 (2d Cir. 2019)............................................................................21

*Nicosia v. Amazon.com, Inc.*,
    834 F.3d 220 (2d Cir. 2016)............................................................................17

*Patane v. Clark*,
    508 F.3d 106 (2d Cir. 2007)..............................................................................9

*Patrick v. Adjusters Int'l, Inc.*,
    No. 16CV2789WFKPK, 2017 WL 6521251 (E.D.N.Y. Dec. 18, 2017)...............12

*Richards v. City of New York*,
    No. 1:19-CV-10697-MKV, 2021 WL 4443599 (S.D.N.Y. Sept. 28, 2021)........6, 8

*Romero v. Howard Johnson Plaza Hotel*,
    97-CV-3706, 1999 WL 777915 (S.D.N.Y. Sept. 29, 1999) ................................13

*Smith v. HBO*,
    No. 12-CV-2177 MKB, 2013 WL 2285185 (E.D.N.Y. May 22, 2013)................13

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
    547 F.3d 406 (2d Cir. 2008)...............................................................................17, 23

*Trujillo v. City of New York*,
    696 F. App'x 560 (2d Cir. 2017) ...................................................................................7

*Trujillo v. City of New York*,
    No. 14 CIV. 8501 (PGG), 2016 WL 10703308 (S.D.N.Y. Mar. 29, 2016) ..........................19

*Vega v. Hempstead Union Free Sch. Dist.*,
    801 F.3d 72 (2d Cir. 2015)...............................................................................15, 18

*Warren v. Ultimate Fitness Grp., LLC*,
    No. 19-CV-10315 (KMK), 2021 WL 4239246 (S.D.N.Y. Sept. 17, 2021)............................12

*Williams v. New York City Hous. Auth.*,
    872 N.Y.S.2d 27 (1st Dep't 2009) ...............................................................................15

*Williams v. Rosenblatt Sec. Inc.*,
    No. 14-CV-4390 (JGK), 2016 WL 4120654 (S.D.N.Y. July 22, 2016) ................................10

**OTHER AUTHORITIES**

Jesse McKinley, *Cuomo Is Accused of Sexual Harassment by a 2nd Former Aide*,
    N.Y. TIMES (Feb. 27, 2021) .........................................................................................16

New York Attorney General,
    *In the Matter of Independent Investigation Under Executive Law 63(8)*,
    May 26, 2021 Testimony of Charlotte Bennett  ................................................................16

New York Attorney General,
    *In the Matter of Independent Investigation Under Executive Law 63(8)*,
    Testimony of Jill DesRosiers, Exhibits Part 2 ..................................................................16

New York Attorney General,
    *Transcripts and Exhibits from Independent Investigation into Sexual Harassment
    Allegations Against Former Governor Andrew Cuomo* .......................................................23

## I.     PRELIMINARY STATEMENT

Jill DesRosiers' alleged involvement in this case is narrow and does not support any claims against her.  Plaintiff Charlotte Bennett's Complaint focuses on a series of alleged interactions between herself and former Governor Andrew Cuomo, between May 2019 and June 2020, which she contends constitute sexual harassment.  Ms. DesRosiers is not alleged to have participated in any of that alleged misconduct, nor to have been aware of it until after it ceased.

The case against Ms. DesRosiers hinges on a single action she took *after* the alleged harassment was over – namely *granting Plaintiff's own request* to be transferred to a different job.  Specifically, Plaintiff alleges that she came to Ms. DesRosiers' office unannounced on June 10, 2020, and, in "a meeting that lasted only a few minutes," told Ms. DesRosiers that she felt the Governor had "crossed a boundary" with her and requested a transfer to a position in which she would not have to interact with him.  After informing her supervisor (Defendant Melissa DeRosa) and the Governor's Special Counsel (Defendant Judith Mogul) that same day, Ms. DesRosiers *granted Plaintiff's own request* for a transfer within two days.  Plaintiff does not allege that she experienced any further harassment after she sought and obtained the transfer to a different role.

Although Plaintiff now alleges that the new role was unsatisfactory because she had little to do, she does not allege that it involved any reduction in status or compensation.  Plaintiff also does not allege that Ms. DesRosiers was aware that Plaintiff found the new role to be unfulfilling, that Ms. DesRosiers intended to transfer Plaintiff to a role that she would find unfulfilling, that Ms. DesRosiers had any involvement in managing the new role, nor any other facts that could plausibly support an inference that Ms. DesRosiers, *by granting Plaintiff's own request* for a transfer, intended to harm Plaintiff or violate her rights.  If anything, a transfer from being an Executive Assistant to becoming Health Policy Advisor to the Executive Chamber's

1

Health Policy team, with no reduction in pay, was a promotion, not a punishment, especially during the height of the COVID-19 pandemic.  Indeed, before filing this lawsuit, Plaintiff admitted in sworn testimony to the New York State Attorney General's office that, a few weeks after the transfer, she told Ms. DesRosiers that the new role was her "dream job" when Ms. DesRosiers asked her if she was happy in the new role.

In short, Ms. DesRosiers' entire alleged involvement in this matter can be summarized as follows: she was unaware of the alleged harassment while it was occurring, when Plaintiff brought concerns about Mr. Cuomo's conduct to her attention and asked for a transfer, Ms. DesRosiers informed her supervisor and legal counsel and then granted Plaintiff's own request for a transfer to what Plaintiff has testified was her "dream job."  Ms. DesRosiers' actions were reasonable, not wrongful, and they do not support any legal claims.

Nevertheless, Plaintiff asserts three categories of claims against Ms. DesRosiers, each of which fails as a matter of law.

*First*, Plaintiff asserts that Ms. DesRosiers discriminated against Plaintiff on the basis of her gender, in violation of the New York City Human Rights Law ("NYCHRL").  But there is no allegation that Ms. DesRosiers took any action against Plaintiff to discriminate against Plaintiff on the basis of Plaintiff's gender.  Plaintiff attempts to support this claim by alleging that Ms. DesRosiers (1) sometimes wore dresses and heels in the office, and (2) granted Plaintiff's own request for a transfer.  Neither allegation supports a claim for gender discrimination.

*Second*, Plaintiff asserts that Ms. DesRosiers "aided and abetted" Mr. Cuomo's sexual harassment and discrimination, in violation of the New York State Human Rights Law ("NYSHRL") and the NYCHRL.  But according to Plaintiff's own allegations, Ms. DesRosiers was not aware of Mr. Cuomo's alleged misconduct until after it was over, and the transfer

2

Plaintiff sought and Ms. DesRosiers granted was effective to end it.  Plaintiff's allegations, therefore, do not support that Ms. DesRosiers both "actually participated in" the misconduct and "shared the intent or purpose" of the principal actor, as required to state a claim for aiding and abetting.

**Third**, Plaintiff asserts that Ms. DesRosiers retaliated against Plaintiff by granting Plaintiff's own request for a transfer, in violation of the NYCHRL, the NYSHRL, and the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.  But granting Plaintiff's own request for a transfer – to a role that did not involve any reduction in status or pay – is neither an adverse employment action nor an action that can plausibly be interpreted as retaliatory.

All of Plaintiff's claims fail for the independent reason that, as a government official, Ms. DesRosiers is entitled to qualified immunity because it was reasonable for Ms. DesRosiers to believe that she was not violating any clearly established constitutional or statutory rights of Plaintiff by granting Plaintiff's own request.

For these reasons, as further explained herein, all of Plaintiff's claims against Ms. DesRosiers should be dismissed, with prejudice, for failure to state a claim.

## II.    ALLEGED FACTUAL BACKGROUND[1]

Plaintiff is a former employee of the New York State Executive Chamber (the "Executive Chamber"), who served as an Executive Assistant to Mr. Cuomo from May 2019 through June 2020.  Complaint ("Compl."), Dkt. 1, ¶ 2.  Ms. DesRosiers served as Mr. Cuomo's Chief of Staff from January 2019 through December 2020.  *Id.* ¶ 12.

---

[1] Ms. DesRosiers assumes the truth of the factual allegations in the Complaint for purposes of this motion only.

Plaintiff alleges that between May 2019 and June 2020 she was subjected to gender-based discrimination and sexual harassment by Mr. Cuomo.  *Id.* ¶ 2.  The bulk of the allegations in the Complaint concern a series of interactions between Plaintiff and Mr. Cuomo during this period.  *Id.* ¶¶ 15–79.  Ms. DesRosiers is not alleged to have had any involvement in, nor even any awareness of, these interactions between Plaintiff and Mr. Cuomo.  *Id.*

On June 10, 2020, Plaintiff went to Ms. DesRosiers' office unannounced, and, in "a meeting that lasted only a few minutes," Plaintiff allegedly told Ms. DesRosiers that Mr. Cuomo had "crossed a boundary" and "requested a transfer to a position in which she would not have to interact with him."  *Id.* ¶ 81.  According to Plaintiff's allegations, Ms. DesRosiers was sympathetic and open to helping Plaintiff with her request: Ms. DesRosiers "apologized" for Mr. Cuomo's behavior and asked Plaintiff's preference as between transferring to another role in the Executive Chamber or taking a position at a state agency.  *Id.* ¶ 82.  Plaintiff told Ms. DesRosiers that she preferred the former.  *Id.*  Plaintiff concedes that Ms. DesRosiers did not try to "encourage Plaintiff to remain in her [current] position."  *Id.*

Ms. DesRosiers reported Plaintiff's concerns to Ms. DesRosiers' supervisor, Ms. DeRosa, and to the Special Counsel, Ms. Mogul, later that same day.  *Id.* ¶ 83.  After this consultation with her supervisor and legal counsel, Ms. DesRosiers arranged for the transfer Plaintiff had requested, and told Plaintiff of her new role two days later, on June 12, 2020.  *Id.* ¶ 84.  Plaintiff was transferred, effective the following Monday, to a role as "Health Policy Advisor" to the Executive Chamber's health policy team.  *Id.*

Less than three weeks later, on June 30, 2020, Ms. DesRosiers arranged a meeting with Plaintiff and Ms. Mogul, the Special Counsel, during which Plaintiff for the first time described in detail the instances of alleged harassment by Mr. Cuomo.  *Id.* ¶¶ 90–93.  Ms. Mogul directed

4

the interview.  *Id.* ¶ 99.  At the end of the interview, Ms. Mogul told Plaintiff that Ms. Mogul "need[ed] time to process the information Plaintiff had shared and would contact her about what would happen next."  *Id.* ¶ 96.  Ms. DesRosiers is not alleged to have led the interview nor to have had responsibility for determining any next steps.

The following day, on July 1, 2020, Plaintiff contacted Ms. Mogul and requested a follow-up conversation, which took place later that evening with Ms. Mogul and Ms. DesRosiers.  *Id* ¶ 102.  During that conversation, Plaintiff requested that her complaint not be investigated by the Governor's Office of Employee Relations ("GOER").  *Id.* ¶ 103.  Ms. Mogul told Plaintiff that the circumstances Plaintiff had described did not, in Ms. Mogul's view, rise to the level of sexual harassment and therefore did not need to be reported to GOER.  *Id.*  Ms. DesRosiers, who is not a lawyer, is not alleged to have made or contributed to the judgments of the Special Counsel, Ms. Mogul, that Mr. Cuomo's conduct did not constitute sexual harassment or that a report to GOER was unnecessary.

Although Plaintiff now contends that her new role as Health Policy Advisor was unsatisfactory because she did not have enough to do, *see id.* ¶¶ 111–14, she does not allege that it involved any reduction in pay or demotion in status.  Nor does she allege that Ms. DesRosiers was aware that the role was allegedly unsatisfactory, intended to transfer Plaintiff to a role that would be unsatisfactory, or had any involvement in managing Plaintiff's new role.  Plaintiff does not allege that she informed Ms. DesRosiers about the issues she was allegedly experiencing in her new role, and she does not allege that at any point she requested a different role or different work from Ms. DesRosiers.

Plaintiff's next alleged interaction with Ms. DesRosiers after July 1 was not until after Plaintiff had decided to resign from her position and leave the Executive Chamber.  *Id.* ¶¶ 120,

122.  At a meeting in Ms. DesRosiers' office on October 23, 2020, Plaintiff informed Ms.

DesRosiers that she intended to resign.  *Id.* ¶ 122.  During that conversation, Ms. DesRosiers

offered to find Plaintiff another job, which Plaintiff declined.  *Id.*  Ms. DesRosiers then assisted

Plaintiff with finalizing her resignation.  *Id.*  As Plaintiff alleges, Ms. DesRosiers was on

extended leave from the Executive Chamber beginning in late 2020.  *Id.* ¶ 124.

## III.   LEGAL ARGUMENT

### A.   Standard Of Review

Under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).  There is "facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Id.*  It is not enough that the plaintiff has alleged "a sheer possibility that a defendant has acted

unlawfully."  *Id.*  "[T]he tenet that a court must accept as true all of the allegations contained in a

complaint is inapplicable to legal conclusions."  *Id.*  "Threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

### B.   The Claim Against Ms. DesRosiers For Gender Discrimination Under The NYCHRL Should Be Dismissed

Plaintiff asserts that Ms. DesRosiers, Ms. DeRosa, and Ms. Mogul discriminated against

Plaintiff on the basis of her gender, in violation of the NYCHRL.  Compl. ¶¶ 218–227 (Ninth

Cause of Action).  To state a claim for employment discrimination under the NYCHRL, a

plaintiff must allege, among other things, that she suffered an adverse employment action "under

circumstances giving rise to an inference of discriminatory intent."  *Richards v. City of New*

*York*, No. 1:19-CV-10697-MKV, 2021 WL 4443599, at *6 (S.D.N.Y. Sept. 28, 2021) (quoting

6

*Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012)).  While NYCHRL claims are construed more liberally than their state and federal counterparts, "employment discrimination claims under the NYCHRL must meet the standard of pleading set forth in *Twombly* and *Iqbal*." *Fattoruso v. Hilton Grand Vacations Co., LLC*, 873 F. Supp. 2d 569, 576 (S.D.N.Y. 2012), *aff'd*, 525 F. App'x 26 (2d Cir. 2013) (quoting *Goodman v. Port Auth. of New York & New Jersey*, 850 F. Supp. 2d 363, 386 (S.D.N.Y.2012)).

Here, the Complaint advances two theories to support Plaintiff's gender discrimination claim against Ms. DesRosiers, both of which fail as a matter of law.

***First***, the Complaint alleges that all three women defendants discriminated against Plaintiff on the basis of her gender "by maintaining and contributing to an office environment" in which women "were pressured to wear more traditionally feminine attire" and in which Mr. Cuomo subjected women to discriminatory behavior and comments.  Compl. ¶ 220.  But beyond this conclusory assertion about all three women, the Complaint does not allege a single specific thing that Ms. DesRosiers ever said or did that supposedly "maintain[ed] and contribut[ed]" to a discriminatory office environment.  *See Trujillo v. City of New York*, 696 F. App'x 560, 561 (2d Cir. 2017) (affirming district court's dismissal of discrimination and retaliation claims because a complaint alleging discrimination "must at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed") (quoting *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014)).  The only factual allegation that mentions Ms. DesRosiers in this regard is that Plaintiff "observed Defendants DeRosa and DesRosiers, as well as other female staffers who worked on the 39th floor, wearing dresses and high heels when Defendant Cuomo was in the office."  Compl. ¶ 16.  To state the

obvious: the mere fact that a woman wears a dress and high heels at work does not support a claim that she has engaged in gender discrimination.

**Second**, the Complaint relies on Ms. DesRosiers' actions after Plaintiff requested a transfer.  Compl. ¶ 221.  Ms. DesRosiers' actions were to immediately inform her supervisor and the Special Counsel that Plaintiff had raised a concern; to grant Plaintiff's own request for a transfer within two days; to join counsel in interviewing Plaintiff less than three weeks later, when Plaintiff provided a detailed account of her interactions with Mr. Cuomo for the first time; and to be present when the Special Counsel made a judgment which was consistent with what Plaintiff wanted.  *Id.* ¶¶ 83–84, 91–96, 102–103.  Plaintiff cites Ms. DesRosiers' granting of Plaintiff's request for a transfer also as the basis of her retaliation claims – a theory which fails as a matter of law for the reasons detailed in Section III.D, below, including, among others, that the transfer does not constitute an "adverse employment action" in the first place.

But even putting aside that there was no adverse employment action, Plaintiff does not even attempt to explain how or why Ms. DesRosiers' conduct supposedly constitutes gender discrimination.  The Complaint is devoid of any factual allegation to support a plausible inference that Ms. DesRosiers engaged in the conduct because she intended to discriminate against Plaintiff ***based on Plaintiff's gender***, as necessary to state a discrimination claim under the NYCHRL.  *See Richards*, 2021 WL 4443599, at *6 (the plaintiff's gender must be "a 'substantial' or 'motivating' factor" contributing to the defendant's challenged actions) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015)).

Where, as here, a plaintiff fails to allege "any factual circumstances from which a gender-based motivation might be inferred" a gender discrimination claim is properly dismissed because the "[t]he *sine qua non* of a gender-based discriminatory action claim . . .  is that 'the

discrimination must be because of sex.'"  *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007).

(dismissing gender discrimination claims under Title VII and the NYCHRL where Plaintiff did

not allege a "gender-based adverse employment action").

### C.    The Claims Against Ms. DesRosiers For Aiding And Abetting Sexual Harassment Under The NYSHRL And Discrimination Under The NYCHRL Should Be Dismissed

Plaintiff asserts that Ms. DesRosiers, Ms. DeRosa, and Ms. Mogul aided and abetted Mr.

Cuomo's sexual harassment, in violation of the NYSHRL, and aided and abetted Mr. Cuomo's

gender discrimination, in violation of the NYCHRL.  Compl. ¶¶ 183–192 (Fifth Cause of

Action); Compl. ¶ 221 (Ninth Cause of Action).  To state a claim for aiding and abetting

unlawful harassment or discrimination, a plaintiff must "plead that the defendant 'actually

participated' in such unlawful conduct by the employer."  *McHenry v. Fox News Network, LLC*,

510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020) (quoting *Farmer v. Shake Shack Enters., LLC*, 473 F.

Supp. 3d 309, 337 (S.D.N.Y. 2020)).  In addition, "aiding and abetting 'liability requires that the

aider and abettor share the intent or purpose of the principal actor.'"  *Id.*  (quoting *Fried v. LVI

Servs., Inc.*, No. 10 Civ. 9308 (JSR), 2011 WL 2119748, at *8 (S.D.N.Y. May 23, 2011)).

Plaintiff cannot rely on generalized assertions about all defendants and instead "must provide

specific allegations as to how ***each particular defendant*** actually participated in conduct giving

rise to her claims[.]"  *Harris v. NYU Langone Med. Ctr.*, No. 12 CIV. 0454 RA JLC, 2013 WL

3487032, at *30 (S.D.N.Y. July 9, 2013), *report and recommendation adopted as modified*, No.

12 CIV. 0454 RA, 2013 WL 5425336 (S.D.N.Y. Sept. 27, 2013).  Plaintiff alleges the same facts

as the basis for both her aiding and abetting discrimination claim under the NYCHRL and her

aiding and abetting sexual harassment claim under the NYSHRL.  *Compare* Compl. ¶ 186

("Defendant DesRosiers also aided or abetted harassment on the basis of sex by arranging for

Plaintiff's transfer to a 'do nothing' position"), *with* Compl. ¶ 221 ("Defendant DesRosiers also

aided or abetted discrimination on the basis of gender by arranging for Plaintiff's transfer to a 'do nothing' position"). These claims should therefore be analyzed coextensively. *See McHenry*, 510 F. Supp. 3d at 65 n.3 ("Although the Amended Complaint alleges claims of both sexual harassment and gender discrimination, it does not plead facts as to gender discrimination other than by means of sexual harassment."). "The same standard governs aiding and abetting claims under the NYSHRL and NYCHRL 'because the language of the two laws is virtually identical.'" *McHenry*, 510 F. Supp. 3d at 68 (quoting *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004)).

Here, the Complaint does not allege that Ms. DesRosiers "actually participated" in the alleged harassment or discrimination nor that she shared Mr. Cuomo's "intent or purpose." There is no allegation that she even knew about, much less participated in, Mr. Cuomo's alleged harassment while it was occurring, or that she shared Mr. Cuomo's alleged intent to sexually harass Plaintiff or to discriminate against her based on her gender. The aiding and abetting claims should therefore be dismissed as against Ms. DesRosiers. *See, e.g.*, *Williams v. Rosenblatt Sec. Inc.*, No. 14-CV-4390 (JGK), 2016 WL 4120654, at *4 (S.D.N.Y. July 22, 2016) (dismissing aiding and abetting claim against defendants who were not alleged to have any "direct involvement" in alleged harassment or other discriminatory conduct); *McHenry*, 510 F. Supp. 3d at 76–79 (dismissing aiding and abetting claim against a defendant where complaint did not allege that the defendant "actually participated in [the] harassment" by the primary violator and where the harassment "had ended before" the plaintiff complained to the defendant of the primary violator's harassment); *Morales v. New York & Presbyterian Hosp.*, No. 18CV9711GBDKHP, 2019 WL 8989858, at *13 (S.D.N.Y. Nov. 20, 2019), *report and recommendation adopted sub nom. Morales v. City of New York*, No. 18CIV9711GBDKHP,

2020 WL 1150136 (S.D.N.Y. Mar. 10, 2020) (dismissing aiding and abetting claim where "Plaintiff does not allege any facts to suggest the [defendant] had knowledge of any discriminatory conduct on the part of the [other defendants] . . . [n]or does she plead any facts that render plausible a claim that the [defendant] harbored discriminatory motives").

The Complaint advances the same two theories in support of the aiding and abetting claims as discussed above with respect to the direct discrimination claim: (1) that Ms. DesRosiers and the other women defendants aided and abetted sexual harassment "by maintaining and contributing to an office environment" in which women "were pressured to wear more traditionally feminine attire" and in which Mr. Cuomo subjected women to discriminatory behavior and comments; and (2) that she aided and abetted sexual harassment and discrimination by her conduct after Plaintiff complained about Mr. Cuomo and requested a transfer.  Compl. ¶¶ 185–86, 221.

The first theory fails because, as discussed above with respect to the direct discrimination claim, the Complaint does not allege a single specific thing that Ms. DesRosiers ever said or did that supposedly "maintain[ed] and contribut[ed]" to the allegedly hostile environment.  As above, the mere fact that Ms. DesRosiers herself sometimes allegedly wore dresses and high heels is insufficient to state a claim against her for aiding and abetting sexual harassment.

The second theory fails as well.  Ms. DesRosiers' response to Plaintiff's complaint about Mr. Cuomo was reasonable and responsible: she immediately informed her supervisor and the Special Counsel; she confirmed Plaintiff's preference for the type of transfer Plaintiff was seeking; she granted Plaintiff's request for a transfer within two days; and she followed the lead of counsel on next steps.  But even if Ms. DesRosiers' response is deemed inadequate (though it

should not be), an inadequate response to a complaint of discrimination or harassment is, by itself, insufficient to sustain an aiding and abetting claim under the NYSHRL or the NYCHRL.

It is well settled that allegations that a defendant "should have done more" or should have "responded differently" to complaints do "not amount to active participation in the [primary violator's] alleged harassment." *Warren v. Ultimate Fitness Grp., LLC*, No. 19-CV-10315 (KMK), 2021 WL 4239246, at *5–6 (S.D.N.Y. Sept. 17, 2021) (denying plaintiff's motion to amend to add an aiding and abetting claim because defendants' failure to investigate a complaint was not "active participation" and plaintiff did not allege that defendant shared the same discriminatory intent as the primary violator); *see also Mondelo v. Quinn, Emanuel, Urquhart & Sullivan, LLP*, No. 21 CIV 02512 (CM), 2022 WL 524551, at *14 (S.D.N.Y. Feb. 22, 2022) (dismissing aiding and abetting claims under NYSHRL and NYCHRL because plaintiff "has not pleaded any facts from which a trier of fact could infer that [defendant] failed to intervene because he too harbored an intent to discriminate against [plaintiff] because he was Hispanic"); *Patrick v. Adjusters Int'l, Inc.*, No. 16CV2789WFKPK, 2017 WL 6521251, at *6 (E.D.N.Y. Dec. 18, 2017) (when defendants are "alleged to have made efforts to remediate [alleged harasser's] conduct that proved to be ineffective, . . . [t]his does not rise to the level of 'active participation' in discrimination for which courts have previously imposed liability due to a failure to investigate").

The allegation that Ms. DesRosiers failed to refer Plaintiff's complaint to GOER, as allegedly required by Executive Department policy, *see* Compl. ¶ 186, is likewise insufficient to state a claim for aiding and abetting liability. The Plaintiff's Complaint concedes that she herself requested that no referral to GOER be made and that it was Ms. Mogul, the Special Counsel, not Ms. DesRosiers, a non-lawyer, who allegedly determined that a referral to GOER was

unnecessary.  *Id.* ¶ 103.  But even putting these concessions aside and assuming for the sake of argument that Ms. DesRosiers violated the policy, a violation of internal policy does not equate to a violation of the anti-discrimination laws.  *Fattoruso*, 873 F. Supp. 2d at 581 ("[A] violation of [the company's] internal policies does not ergo amount to a violation of federal, state, or local law."); *Kunzler v. Canon, USA, Inc.*, 257 F. Supp. 2d 574, 582 (E.D.N.Y. 2003) ("While [defendant] may have violated Company policy in its handling of Plaintiff's complaint, this fact does not transform the [actions] into conduct prohibited by Title VII."); *Smith v. HBO*, No. 12-CV-2177 MKB, 2013 WL 2285185, at *5 n. 10 (E.D.N.Y. May 22, 2013) ("[M]ere violation of company policy, without more, is not a sufficient basis for a Title VII action.").

Plaintiff's aiding and abetting claims against Ms. DesRosiers fail for an even more simple reason: Ms. DesRosiers' action ***was effective*** to stop the alleged harassment by Plaintiff's own admission.  Although there are cases in which a supervisor's allegedly willfully ignoring harassment and thus allowing it to continue have been found to constitute the "active participation" and shared "purpose or intent" necessary to state a claim for aiding and abetting liability, that is the opposite of what is alleged here.  *See, e.g.*, *Lewis v. Triborough Bridge & Tunnel Auth.*, 77 F. Supp. 2d 376, 383–384 (S.D.N.Y. 1999) (aiding and abetting claim survived motion to dismiss where defendant "intentionally or recklessly disregarded [plaintiffs'] repeated complaints," and thereby "allow[ed], or even encourage[d]" the alleged harassment to continue); *Romero v. Howard Johnson Plaza Hotel*, 97-CV-3706, 1999 WL 777915, at *9 (S.D.N.Y. Sept. 29, 1999) (denying summary judgment to supervisor alleged to have aided and abetted hostile work environment by encouraging the perpetrators and "repeatedly failing to intervene[,]" thereby "adding fuel to the fire").

13

In this case, there are no allegations that Ms. DesRosiers encouraged Mr. Cuomo's alleged misconduct, that she shared his alleged intent to harass or discriminate against Plaintiff, or that by her allegedly inadequate response she allowed the alleged harassment or discrimination to continue. To the contrary, Ms. DesRosiers' response was effective. It is undisputed that the alleged misconduct ceased after Ms. DesRosiers granted the transfer requested by Plaintiff. This alone is sufficient to defeat the aiding and abetting claims. *See McHenry*, 510 F. Supp. 3d at 77 (dismissing aiding and abetting claims against an official at the company when "there are no allegations that [primary violator's] sexual harassment of [plaintiff] continued after the email put [the company official] on notice of [primary violator's] misconduct [] [a]nd the Amended Complaint lacks non-conclusory allegations that [company official] knew of [primary violator's] harassment of [plaintiff] while it was ongoing.").

In short, none of the purported deficiencies in Ms. DesRosiers' response, including that she did not refer Plaintiff's complaint to GOER (consistent with Plaintiff's expressed preference and the expressed judgment of legal counsel) amounts to the "active participation" in Mr. Cuomo's alleged sexual harassment of Plaintiff and "shared intent or purpose" to harass necessary to state an aiding and abetting claim.

D.    **Plaintiff's Retaliation Claims Against Ms. DesRosiers Should Be Dismissed**

Plaintiff asserts that Ms. DesRosiers retaliated against Plaintiff after Plaintiff requested a transfer, in violation of the Equal Protection Clause, the NYSHRL, and the NYCHRL. Compl. ¶¶ 164–172 (Third Cause of Action), 193–200 (Sixth Cause of Action), 228–235 (Tenth Cause of Action). Plaintiff alleges that Ms. DesRosiers retaliated by granting Plaintiff's own request for a transfer to a new role because, she alleges, the new role turned out to be unfulfilling such that, months later, she felt compelled to resign from it. *Id.* ¶¶ 168, 196, 231.

14

To state a claim for retaliation under any of the three sources of authority on which Plaintiff relies, Plaintiff must allege, among other things, that she complained about alleged discrimination, that she suffered an adverse employment action, and that there was a causal connection between her complaint and the adverse employment action. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 91 (2d Cir. 2015) (articulating elements of a retaliation claim under the Equal Protection Clause, and noting that such elements mirror those of a retaliation claim under Title VII); *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 330–31 (S.D.N.Y. 2020) (holding that elements for retaliation claims under NYSHRL and Title VII are the same, and articulating such elements); *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013) (articulating elements of a retaliation claim under NYCHRL).

Here, Plaintiff does not adequately allege either (1) an adverse employment action or (2) a causal connection between the purported adverse employment action and her complaint about Mr. Cuomo's conduct.

### 1.    Plaintiff Did Not Suffer An Adverse Employment Action

Under the Equal Protection Clause, "an adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Vega*, 801 F.3d at 90 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)).  The same standard applies under the NYSHRL.  *Farmer*, 473 F. Supp. 3d at 330.  The standard under the NYCHRL is similar but not identical: an adverse employment action is one which would "be reasonably likely to deter a person from engaging in protected activity." *Williams v. New York City Hous. Auth.*, 872 N.Y.S.2d 27, 34 (1st Dep't 2009) (quoting N.Y.C. Code § 8-107(7)).

Plaintiff's transfer, at her own request, to the Health Policy Advisor role was not an adverse employment action under any of the applicable standards.  Plaintiff has not alleged that

the new job involved any reduction in status or pay.  Although Plaintiff now contends that the

new role **turned out to be** unsatisfactory because she did not have enough to do, *see* Compl.

¶¶ 111–14, **the transfer itself** – which is the action for which Ms. DesRosiers is allegedly

responsible – was not an adverse action.  There is no allegation that Ms. DesRosiers intended to

transfer Plaintiff to a role that she would find unfulfilling, that Ms. DesRosiers knew that

Plaintiff would find the role unfulfilling, that Ms. DesRosiers had any involvement in managing

the new role, nor any other facts that could plausibly support an inference that Ms. DesRosiers,

by granting Plaintiff's own request for a transfer, was taking an adverse action against Plaintiff.

To the contrary, at the time Ms. DesRosiers approved the transfer, the new role, on its face,

appeared to be a promotion, not a punishment.  Plaintiff went from being an Executive Assistant,

with clerical duties such as taking dictation and transferring phone calls, *see id.* ¶ 20, to a policy

role in health care during the height of the COVID-19 pandemic.[2]

---

[2] In her sworn testimony to the Attorney General, Plaintiff admitted that Ms. DesRosiers asked her if she was happy with her new job during the July 1 meeting and that in response she described the job to Ms. DesRosiers as her "dream job."  *See In the Matter of Independent Investigation Under Executive Law 63(8)*, May 26, 2021 Testimony of Charlotte Bennett, 226:15–25, available at
https://ag.ny.gov/sites/default/files/2021.05.26_charlotte_bennett_10.05.2021.pdf.  Her description of the position as her "dream job" is further corroborated by the near-contemporaneous notes taken by Ms. DesRosiers at the July 1 meeting.  *See* Testimony of Jill DesRosiers, Exhibits Part 2, at 35, 105, available at
https://ag.ny.gov/sites/default/files/jill_desrosiers_exhibits_-_combined_part_2.pdf.  Plaintiff reiterated this sentiment when she came forward publicly with her allegations, months after her resignation from the health policy position.  Jesse McKinley, *Cuomo Is Accused of Sexual Harassment by a 2nd Former Aide*, N.Y. TIMES (Feb. 27, 2021), available at
https://www.nytimes.com/2021/02/27/nyregion/cuomo-charlotte-bennett-sexual-harassment.html ("Ms. Bennett said she ultimately decided not to insist on an investigation because she was happy in her new job . . . 'I have no problem with what they did,' Ms. Bennett said of Ms. DesRosiers and Ms. Mogul, describing both women as sympathetic to her concerns.").  Although it is not necessary for the Court to consider Plaintiff's testimony, the corroborating notes from the July 1 interview, or Plaintiff's statement to the *New York Times* in order to rule in Ms. DesRosiers' favor on this motion, the Court may do so consistent with Rule 12(b)(6), both because Plaintiff's testimony in the Attorney General's investigation and allegations in the *New*

However the job may have turned out, by granting Plaintiff's own request for a transfer to a job which on its face appeared to be a promotion (after first confirming with Plaintiff whether she would prefer a transfer within the Executive Chamber or outside it), Ms. DesRosiers did not engage in conduct that plausibly would "dissuade a reasonable worker from making or supporting a charge of discrimination" or "be reasonably likely to deter a person from engaging in protected activity." *See, e.g.*, *Betterson v. HSBC Bank USA, N.A.*, 661 F. App'x 87, 90 (2d Cir. 2016) ("Nor may [Plaintiff] rely on her *voluntary* transfer to another department [to assert an adverse employment action] especially since that transfer did not affect pay or benefits.") (emphasis in original); *Chanval Pellier v. Brit. Airways, Plc.*, No. CIV.A. 02-CV-4195, 2006 WL 132073, at *4 (E.D.N.Y. Jan. 17, 2006) ("It is clear that [Plaintiff's] transfer cannot serve as an adverse employment action because she voluntarily requested and accepted it.").

To the extent Plaintiff is alleging that the purported "adverse employment action" was her own ultimate resignation from the Executive Chamber in November of 2020, and not her voluntary transfer to the health policy team in June 2020, there is no basis in the Complaint to hold Ms. DesRosiers responsible for Plaintiff's decision to resign. There is no allegation that Ms. DesRosiers caused the new role to be unsatisfactory, intended it to be so, or was even aware that Plaintiff allegedly found it unsatisfactory. After July 1, 2020, when Plaintiff told Ms. DesRosiers that the new role was her "dream job" a few weeks after the transfer went into effect (*see* note 2, above), Ms. DesRosiers' next alleged interaction with Plaintiff was not until October 23, 2020, when Plaintiff informed Ms. DesRosiers that she intended to resign, at which time Ms.

---

*York Times* are referenced in the Complaint, *see, e.g.*, Compl. ¶¶ 5, 130, and because the Court may take judicial notice of such publicly available information. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (court may consider documents incorporated by reference in complaint on a motion to dismiss); *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (court may take judicial notice of publicly available materials on a motion to dismiss).

DesRosiers offered to try to find Plaintiff another job but Plaintiff declined.  Compl. ¶ 122.

There is **no** alleged interaction between Plaintiff and Ms. DesRosiers between July 1, when

Plaintiff told Ms. DesRosiers that the new role was her "dream job," and October 23, when

Plaintiff told Ms. DesRosiers that she had decided to resign.

Accordingly, even if the new job turned out to be unsatisfactory to the point that Plaintiff

chose to resign from it months later, all unbeknownst to Ms. DesRosiers and not because of any

action or inaction by Ms. DesRosiers, the transfer itself, which is the action for which Ms.

DesRosiers was allegedly responsible, was not an adverse employment action.

2. **There Is No Causal Connection Between Plaintiff's Complaint And The Purported Adverse Employment Action**

Plaintiff also fails to allege adequately a causal connection between her complaint about

Mr. Cuomo and the purported adverse employment action.

Under the Equal Protection Clause, to establish a causal connection, "the plaintiff must

plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action."

*Vega*, 801 F.3d at 90.  It is not enough that "retaliation was a 'substantial' or 'motivating' factor

in the employer's decision."  *Id.*  To satisfy the but-for test, the plaintiff must show "that absent

the retaliatory motive, the adverse action would not have occurred."  *Farmer*, 473 F. Supp. at

333.  Although neither the New York Court of Appeals nor the Second Circuit has explicitly

adopted the "but-for" causation standard for retaliation claims under the NYSHRL, the Second

Circuit has "on several occasions" implicitly applied such standard to such claims.  *Id.* at 333,

n.7 (collecting cases).  Under the NYCHRL, a causal connection requires that "the defendant

was motivated at least in part by an impermissible motive."  *Brightman v. Prison Health Serv.,*

*Inc.*, 970 N.Y.S.2d 789, 792 (1st Dep't 2013).

Here, Plaintiff fails to allege a causal connection adequately because Plaintiff's Complaint concedes that the cause for the transfer was that Plaintiff herself requested the transfer.  Compl. ¶ 81.  Plaintiff's allegations also make clear that Ms. DesRosiers approved Plaintiff's request for a transfer ***before*** she even knew what Plaintiff's detailed allegations about Mr. Cuomo were, which she learned only subsequently during the interview conducted by Ms. Mogul on June 30.  *Id.* ¶¶ 84, 92–99.

Given that the Complaint concedes that Plaintiff requested the transfer, any retaliatory animus on Ms. DesRosiers' part could not have been the "but-for" cause of the transfer.  Plaintiff cannot show that the transfer would not have happened absent a retaliatory motive.  Plaintiff therefore fails to satisfy the causation standard applicable to her Equal Protection and NYSHRL claims.

She also fails to satisfy the causation standard applicable to the NYCHRL claim.  It is not plausible that a retaliatory animus was even a motivating factor for Ms. DesRosiers' decision to grant Plaintiff's own request for a transfer.  It does not make sense to infer an illegal motive from the fact that Ms. DesRosiers did what Plaintiff asked her to do, especially given that the job to which Plaintiff was transferred in no way appeared inferior and in fact appeared to be a promotion.  *See, e.g., Trujillo v. City of New York*, No. 14 CIV. 8501 (PGG), 2016 WL 10703308, at *20 (S.D.N.Y. Mar. 29, 2016) (dismissing retaliation claim where the complaint "does not allege facts sufficient to demonstrate that any of the acts that Plaintiff alleges forced him to resign were motivated by discriminatory animus or in retaliation for protected activity"); *Dickens v. Hudson Sheraton Corp. LLC*, 689 F. App'x 670, 673 (2d Cir. 2017) (dismissing retaliation claim and holding that "[t]hough a plaintiff can indirectly establish a causal connection to support a [] retaliation claim by showing that the protected activity was closely

followed in time by the adverse employment action, [plaintiff] has not provided enough information to even draw that indirect inference here") (internal quotations marks omitted). There is no need to reach for an implausible explanation for Ms. DesRosiers' conduct: the obvious reason why Ms. DesRosiers approved the transfer is that Plaintiff requested it.  *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011) ("Plausibility [for purposes of a Rule 12(b)(6) motion] [] depends on a host of considerations:  the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable.").

E.     **All Of Plaintiff's Claims Fail Also On The Basis Of Qualified Immunity**

All of Plaintiff's claims against Ms. DesRosiers fail for the independent reason that Ms. DesRosiers was a government official and is thus entitled to qualified immunity.  Although qualified immunity is an affirmative defense, it "may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint."  *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (internal citations and quotations omitted).

1.     **Plaintiff's Equal Protection Claim**

Under federal law, "[q]ualified immunity protects public officials performing discretionary functions from personal liability in a civil suit for damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Lore v. City of Syracuse*, 670 F.3d 127, 162 (2d Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "A right is clearly established if the law (1) was 'defined with reasonable clarity,' (2) has been affirmed by 'the Supreme Court or the Second Circuit[,]' and (3) where the conduct at issue would have been understood by a reasonable defendant to be unlawful under the existing law."  *Looney v. Black*, 702 F.3d 701,

706 (2d Cir. 2012) (internal citations and quotations omitted). "[O]fficials only forfeit their immunity when 'existing precedent has placed the statutory or constitutional question beyond debate.'" *Naumovski v. Norris*, 934 F.3d 200, 211 (2d Cir. 2019) (cleaned up) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). "When analyzing whether the right violated was 'clearly established,' the Supreme Court has repeatedly (and recently) reminded us that clearly established law must be 'particularized' to the facts of the case and must not be defined 'at a high level of generality.'" *Id.* (quoting *White v. Pauly*, 580 U.S. 73 (2017)).

Applying these standards to the allegations in the Complaint – and defining the purported constitutional right, not generally, but at the required level of particularity – Plaintiff had no clearly established constitutional right to not be granted her own request for a transfer to a job involving no reduction in status or pay. Ms. DesRosiers had an objectively reasonable response to Plaintiff arriving unannounced in her office, informing her that Plaintiff felt Mr. Cuomo had "crossed a boundary," and requesting a transfer to another role in which she would not have to interact with him. Ms. DesRosiers expressed sympathy, checked Plaintiff's preference about the type of transfer she wanted, immediately informed her supervisor and counsel, and then within two days granted the requested transfer. Compl. ¶¶ 81–84. Any reasonable supervisor would have had a similar response.

Accordingly, it was objectively reasonable for Ms. DesRosiers to believe that she was not violating any clearly established constitutional right of Plaintiff by responding as she did and granting Plaintiff's own request for a transfer. *Cf. In Barrer-Cohen v. Greenburgh Cent. Sch. Dist.*, No. 18 CIV. 1847 (NSR), 2019 WL 3456679, at *10 (S.D.N.Y. July 30, 2019) (dismissing Equal Protection claim on qualified immunity grounds where plaintiff alleged an adverse employment action in the form of a reassignment to different duties and a desk in a demeaning

"fishbowl" environment, because reassigning plaintiff to this role did "not amount to a violation of a clearly established constitutional right.").  Ms. DesRosiers is therefore protected by qualified immunity against Plaintiff's Equal Protection claim.

2.    **Plaintiff's NYSHRL And NYCHRL Claims**

New York law also recognizes the defense of qualified immunity.  New York's qualified immunity defense contains a subjective and objective component.  *Lore*, 670 F.3d at 166.  The objective component of the defense parallels the federal standard, *see Jones v. Parmley*, 465 F.3d 46, 63–64 (2d Cir. 2006), except that the reasonableness of an officer's action is judged with references to state law instead of federal.  *Bancroft v. City of Mount Vernon*, 672 F. Supp. 2d 391, 401 (S.D.N.Y. 2009).  The subjective component asks whether the defendant's actions were taken in bad faith or without a reasonable basis.  *Dawson v. Cnty. of Westchester*, 351 F. Supp. 2d 176, 200 (S.D.N.Y. 2004) (qualified immunity protects defendants from NYSHRL claims).

As discussed above with respect to the Equal Protection claim, Ms. DesRosiers' response to Plaintiff's complaint and request for a transfer was reasonable by any standard.  There is no plausible basis to infer that Ms. DesRosiers was acting in bad faith or with the belief that she was violating Plaintiff's clearly established statutory rights.  She is therefore entitled to qualified immunity from the NYSHRL and NYCHRL claims as well.

F.    **The Dismissal Should Be With Prejudice**

If the Court is inclined to grant Ms. DesRosiers' motion, it should do so with prejudice, and without granting leave to re-plead.  "A district court may in its discretion deny leave to amend 'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'"  *Bensch v. Est. of Umar*, 2 F.4th 70, 81 (2d Cir. 2021) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)).

In this case, Plaintiff had access to an extensive record prior to preparing the Complaint. The New York State Attorney General conducted an investigation into Mr. Cuomo's alleged sexual harassment of Plaintiff and made publicly available the results of its findings and the evidence it used to come to its conclusions. The record available to Plaintiff in preparing her Complaint included the Attorney General's 165-page investigative report, the transcripts of lengthy depositions of several witnesses, including Ms. DesRosiers, Ms. DeRosa, and Ms. Mogul, and voluminous documentary evidence, including Ms. DesRosiers' relevant emails, text messages, and handwritten contemporaneous notes from her conversations with Plaintiff.[3] Given all of the evidentiary material that was available to her when she prepared her Complaint, the deficiencies of her claims against Ms. DesRosiers reflect that the claims cannot be adequately pleaded and therefore that permitting leave to amend would be futile and unduly prejudicial to Ms. DesRosiers.

---

[3] *See* New York Attorney General, *Transcripts and Exhibits from Independent Investigation into Sexual Harassment Allegations Against Former Governor Andrew Cuomo*, available at https://ag.ny.gov/CuomoIndependentInvestigation. The Court may take judicial notice of the availability of this material for purposes of this motion. *Staehr*, 547 F.3d at 425.

## IV.    CONCLUSION

For all the foregoing reasons, Ms. DesRosiers respectfully requests that the Court dismiss all the claims asserted against her in the Complaint, with prejudice, for failure to state a claim.

Dated:  New York, New York
        November 18, 2022

Respectfully submitted,

DEBEVOISE & PLIMPTON LLP

By: /s/ *Jyotin Hamid*
Jyotin Hamid
Mary Beth Hogan
jhamid@debevoise.com
mbhogan@debevoise.com
919 Third Avenue
New York, New York 10022
(212) 909-6000
*Counsel for Defendant Jill DesRosiers*

24