**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CHARLOTTE BENNETT,

                              Plaintiff,

            v.                                                          1:22-CV-07846-VSB-KHP

ANDREW M. CUOMO,
MELISSA DEROSA,
JILL DESROSIERS, and
JUDITH MOGUL,

                              Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF GOVERNOR CUOMO'S MOTION TO DISMISS THE RETALIATION CLAIMS OR, IN THE ALTERNATIVE, TO STRIKE CERTAIN ALLEGATIONS

Rita M. Glavin
GLAVIN PLLC
156 West 56th Street, Ste. 2004
New York, NY 10019
Tel: (646) 693-5505
rglavin@glavinpllc.com

Theresa Trzaskoma
SHER TREMONTE LLP
90 Broad Street, 23rd Floor
New York, New York 10004
Tel.: (212) 202-2600
Fax: (212) 202-4156
ttrzaskoma@shertremonte.com

## <u>TABLE OF CONTENTS</u>

THE COMPLAINT AND RELEVANT BACKGROUND ............................................................ 4

LEGAL STANDARDS ............................................................................................................... 11

ARGUMENT ............................................................................................................................... 13

    I.   The Retaliation Claims Should Be Dismissed in Their Entirety. ...................................... 13

        A.  As a Matter of Law, Plaintiff's Voluntary and Requested Transfer Was Not Retaliatory. ................................................................................................................ 13

            1.  A Voluntary, Lateral Transfer Is Not Retaliatory. ................................................. 14

            2.  There Is No Connection Between Plaintiff's Complaints About Governor Cuomo's Conduct and Her Unhappy Work Circumstances. ............................... 15

            3.  Plaintiff Has Not Pled Governor Cuomo's Personal Involvement in the Transfer. ............................................................................................................. 16

        B.  As a Matter of Law, Statements Made in Governor Cuomo's Defense After Plaintiff Resigned Were Not Retaliation. ..................................................................... 18

            1.  Plaintiff Had No Employment or Ongoing Economic Relationship with Governor Cuomo at the Time of the Statements. ................................................. 18

            2.  The Statements Were Reasonable Defensive Measures. ..................................... 19

        C.  Governor Cuomo Is Entitled to Qualified Immunity. .................................................. 22

    II.  In the Alternative, the Court Should Strike Allegations Concerning Statements Made After Plaintiff's Resignation. ................................................................................. 23

CONCLUSION ............................................................................................................................ 25

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392 (S.D.N.Y. 2012) ...................... 24

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................................... 11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................ 11

Chambers v. Time Warner, Inc., 282 F.3d 147 (2d Cir. 2002) ....................................................... 4

*Cnty. Vanlines Inc. v. Experian Info. Sols, Inc.*, 205 F.R.D. 148 (S.D.N.Y. 2002) ..................... 23

*Eckhart v. Fox News Network, LLC*, No. 20-CV-5593 (RA), 2022 WL 4579121 (S.D.N.Y. Sept. 29, 2022) ......................................................................................................... 18, 19

*Eckhart v. Fox News Network, LLC*, No. 20-cv-5593, 2021 WL 4124616 (S.D.N.Y. Sep. 9, 2021) ........................................................................................................................................ 22

*Empire Merchants, LLC v. Reliable Churchill LLP*, 902 F.3d 132 (2d Cir. 2018) ...................... 11

*Feliciano v. City of New York*, No. 14-cv-6751, 2015 WL 4393163 (S.D.N.Y. July 15, 2015) . 12, 16

*Front, Inc. v. Khalil*, 24 N.Y.3d 713 (2015) .............................................................................. 22

Ganske v. Mensch, 480 F. Supp. 3d 542 (S.D.N.Y. 2020) ............................................................. 4

*Gaughan v. Rubenstein*, 261 F. Supp. 3d 390 (S.D.N.Y. 2017) .................................................. 21

*Global View Ltd. Venture Capital v. Great Cent. Basin Exploration, LLC*, 288 F. Supp. 2d 473 (S.D.N.Y. 2003) ................................................................................................................ 24

*Green v. Maraio*, 722 F.2d 1013 (2d Cir. 1983) ........................................................................ 23

*HC2, Inc. v. Delaney*, 510 F. Supp. 3d 86 (S.D.N.Y. 2020) ....................................................... 20

*Hope v. Pelzer*, 536 U.S. 730 (2002) ......................................................................................... 22

*Hughes v. Twenty-First Century Fox, Inc.,* 304 F. Supp. 3d 429 (S.D.N.Y. 2018) .... 19, 20, 21, 22

*Johnson v. Glick*, 481 F.2d 1028 (2d Cir. 1973), *overruled on other grounds*, *Graham v. Connor*, 490 U.S. 386 (1989) ................................................................................................. 17

*Jones v. Parmley*, 465 F.3d 46 (2d Cir. 2006) ........................................................................... 23

*Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199 (2d Cir. 2006) ........................ 18

*King v. Block Inst., Inc.*, No. 17-cv-7318, 2020 WL 2523245 (E.D.N.Y. May 18, 2020) ........... 12

*L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419 (2d Cir. 2011) .............................................. 11

*Lax v. City Univ. of New York*, No. 16-cv799 (LDH) (VMS), 2020 WL 6161253 (E.D.N.Y. Oct. 21, 2020) ........................................................................................................................ 22

*Liberian Cmty. Ass'n of Conn. v. Lamont*, 970 F.3d 174 (2d Cir. 2020) .................................... 23

*Lipsky v. Commonwealth United Corp.*, 551 F.2d 887 (2d Cir. 1976) ................................... 23, 24

*Lumpkin v. H.E.L.P. USA*, No. 02 CV 5475, 2005 WL 839669 (E.D.N.Y. 2005) ...................... 16

*Major League Baseball Props., Inc. v. Opening Day Prods., Inc.*, 1997 WL 525482 (S.D.N.Y. Aug. 22, 1997) ................................................................. 25

*Marchuk v. Faruqi & Faruqi, LLP*, 100 F. Supp. 3d 302 (S.D.N.Y. 2015) ............................... 21

*Matthews v. Corning Inc.*, 77 F. Supp. 3d 275 (W.D.N.Y. 2014) ................................. 14

*McHenry v. Fox News Network LLC*, 510 F. Supp. 3d 51 (S.D.N.Y. 2020) ......................... 12, 17

*McKinnon v. Patterson*, 568 F.2d 930 (2d Cir. 1977) ..................................... 17

*Melman v. Montefiore Med. Cent.*, 946 N.Y.S.2d 27 (1st Dep't 2012)........................................ 20

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) ............................................................ 22, 23

*Naumovski v. Norris*, 934 F.3d 200 (2d Cir. 2019)...................................................... 12

*Nieblas-Love v. N.Y.C. Housing Auth.*, 165 F. Supp. 3d 51 (S.D.N.Y. 2016)............................. 12

*Pacheco v. New York Presbyterian Hosp.*, 593 F. Supp. 2d 599 (S.D.N.Y. 2009) ............... 14, 15

*Parrish v. Sollecito*, No. 01 Civ. 5420 (VM), 2002 WL 1072227 (S.D.N.Y. May 28, 2002)...... 24

*Richardson v. Comm. on Human Rights & Opportunities*, 532 F.3d 114 (2d Cir. 2008) ........... 22

*Schaper v. Bronx Lebanon Hosp. Ctr.*, 408 F. Supp. 3d 379 (S.D.N.Y. 2019) ........................... 17

*Schmitt v. Artforum Int'l Mag., Inc.*, 178 A.D.3d 578 (1st Dep't 2019)...................................... 19

*Shomo v. City of New York*, 579 F.3d 176 (2d Cir. 2009) .................................................. 17

*Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236 (2d Cir. 2002) ........................................ 11

*Stetson v. NYNEX Serv. Co.*, 995 F.2d 355 (2d Cir. 1993)........................................................ 16

*Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020)................................................................ 17

*Taylor v. N.Y.C. Dep't of Educ.*, No. 11–CV–3582, 2012 WL 5989874 (E.D.N.Y. Nov. 30, 2012) ................................................................................................................................ 14

*Tucker v. Am. Int'l Grp., Inc.*, 936 F. Supp. 2d 1 (D. Conn. 2013) ............................................ 23

*U.S. v. N.Y.C. Trans. Auth.*, 97 F.3d 672 (2d Cir. 1996) ........................................................... 20

*Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72 (2d Cir. 2015)...................................... 11

*Victory v. Pataki*, 814 F.3d 47 (2d Cir. 2016).............................................................................. 17

*Villetti v. Guidepoint Glob. LLC*, No. 21-2059-CV, 2022 WL 2525662 (2d Cir. July 7, 2022). 12, 16

*Wade v. Kay Jewelers, Inc.*, No. 3:17-CV-990 (MPS), 2018 WL 4440532 (D. Conn. Sept. 17, 2018) .................................................................................................................................. 4

*Williams v. Warden For Nevada, Women's Corr. Facility*, 489 F. Supp. 2d 1171 (D. Nev. 2007) .................................................................................................................................. 24

*Wood v. Moss*, 572 U.S. 744 (2014) ............................................................................................ 23

**Statutes**

42 U.S.C. § 1983.......................................................................................................................... 10

New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 et seq. ............................ 10, 18

New York State Human Rights Law, N.Y. Exec. L. § 290 et seq. ......................................... 10, 18

**Rules**

Fed. R. Civ. P. 12(f) ....................................................................................................................... 23

Defendant former Governor Andrew M. Cuomo ("Governor Cuomo"), by and through his undersigned counsel, respectfully submits this Memorandum of Law in support of his motion to dismiss the Second, Seventh, and Eleventh causes of action (the "Retaliation Claims") of the Complaint or, in the alternative, to strike certain allegations in the Complaint related to the Retaliation Claims.[1]

## PRELIMINARY STATEMENT

From January 1, 2010 until August 24, 2021, Governor Cuomo served as the Governor of New York State. On August 3, 2021, New York Attorney General Letitia James ("AG James") issued a public report ("AG Report") accusing Governor Cuomo of sexually harassing numerous women, including Plaintiff Charlotte Bennett ("Plaintiff"). The AG Report, which AG James announced in a prejudicial televised news conference, resulted from a flawed, one-sided investigation. A political hit job, the AG Report accepted as true in numerous instances highly suspect allegations without fully investigating them and it ignored material evidence that directly undermined the allegations and credibility of complainants.

Governor Cuomo (personally and through counsel) repeatedly criticized the shoddy investigative process and the AG's inaccurate and incomplete factfinding. As designed, however, the AG Report created a political firestorm. On August 10, 2021, Governor Cuomo announced his resignation, effective August 24, 2021. Confirming the political motivation behind the AG Report, AG James announced her own campaign for governor on October 28, 2021. Even after he left office, Governor Cuomo continued to deny the allegations against him and criticize the AG Report. He also sought disclosure of the entire investigative record, but AG James released only a select

---

[1]     We incorporate by reference and rely on the arguments made by the other individual Defendants in their Motions to Dismiss to the extent those arguments apply to Governor Cuomo's motion.

group of witness statements, withholding material that tended to exculpate Governor Cuomo, undermine witness's credibility, or cast doubt on the integrity of the investigation and AG Report.

Plaintiff, who worked for New York State from January 2019 until her resignation on November 5, 2020, had been among the first women to make public her sexual harassment allegations against Governor Cuomo. Beginning on February 27, 2021, when the *New York Times* published an interview with her, Plaintiff and her counsel repeatedly used the press and social media to attack Governor Cuomo. As was his right, Governor Cuomo defended himself against various public allegations, including Plaintiff's.

On September 14, 2022, Plaintiff filed this Complaint against Governor Cuomo and others asserting various claims of sexual harassment and discrimination. She also brought the three Retaliation Claims based on allegations that Governor Cuomo retaliated against her in violation of state and federal law. Specifically, Plaintiff claims that Governor Cuomo retaliated against her: (1) by allegedly "approving" Plaintiff's requested transfer to a policy position within the Executive Chamber; and (2) by allegedly making statements to the media—either personally or through counsel—criticizing the AG's investigation, pointing out problems with the AG Report's factfinding, and denying the allegations against him. Plaintiff's Retaliation Claims, which are based at least in part on conduct after she resigned from State employment, fail as a matter of law.

First, with respect to Plaintiff's transfer to a health policy position, her own allegations make clear that she asked to be moved and that her reassignment was entirely voluntary. Her allegations also establish that Governor Cuomo was not personally involved in the transfer, much less that he did so as a form of retaliation. Indeed, Plaintiff does not plead any involvement by Governor Cuomo in her voluntary transfer beyond a conclusory allegation that, "upon information and belief," he "approved" it. Moreover, to the extent Plaintiff's new position was not satisfactory,

her allegations also make clear that this was due to circumstances having nothing to do with her personally; instead, there was an unrelated transition of leadership on the health policy team that led to Plaintiff's work dissatisfaction.

Second, with respect to alleged statements by Governor Cuomo and his counsel defending against various sexual harassment allegations, these are not actionable as retaliation.  The alleged statements were made long after Plaintiff's employment with New York State had concluded, when no employment or other ongoing economic relationship existed between Plaintiff and Governor Cuomo. Further, each of the alleged statements was a reasonable defensive measure, taken by Governor Cuomo and his counsel to defend him against serious public accusations and a flawed and misleading public report. None of the statements constituted unlawful retaliation against Plaintiff.

Lastly, to the extent the Retaliation Claims have any substantive merit (which they do not), they should still be dismissed because Governor Cuomo is entitled to qualified immunity.

In addition, even if the Court were to allow Plaintiff to proceed with the Retaliation Claims based on her requested workplace transfer, her allegations regarding the statements made by Governor Cuomo and his counsel in 2021 and 2022 should be stricken under Rule 12(f) as impertinent, immaterial, and scandalous. Such statements, made many months after Plaintiff's employment ended, responded to the public allegations against Governor Cuomo (including many public statements by Plaintiff) and criticized the seriously flawed investigation and AG Report. Plaintiff includes allegations concerning these reasonable defensive measures for no purpose other than to chill Governor Cuomo and his counsel from continuing to defend against the allegations against him. These irrelevant allegations should be stricken from the Complaint.

## THE COMPLAINT AND RELEVANT BACKGROUND[2]

Plaintiff started work in the New York State Executive Chamber in late January 2019. Compl. ¶ 10. She initially served as a Briefer in the New York City office, reporting directly to Governor Cuomo's Director of Scheduling, Annabel Walsh. *Id.* ¶¶ 15–16. Plaintiff's role was largely administrative, entailing "research[ing] and organiz[ing] materials for inclusion in the Governor's daily briefing book." *Id.* ¶ 15.

A few months later, on May 8, 2019, Plaintiff told Ms. Walsh she wished to be considered for a Senior Briefer position. *Id.* ¶ 17. During that conversation, Ms. Walsh asked if Plaintiff was interested in serving as an Executive Assistant to Governor Cuomo, and Plaintiff indicated that she was. *Id.* After interviewing with Governor Cuomo and Ms. Walsh, *id.* ¶ 19, Plaintiff began a week-long "trial period" and was formally hired on or around May 15, 2019. *Id.* ¶ 19–21.

As Governor Cuomo's Executive Assistant, Plaintiff reported directly to the Director of the Governor's Offices, Stephanie Benton. *See id.* ¶ 20. Ms. Benton assigned tasks to Plaintiff, coordinated her work schedule, and was Plaintiff's conduit to the Governor. *See, e.g.*, *id.* ¶¶ 27, 58, 74; *see also* Declaration of Theresa Trzaskoma dated November 18, 2022 ("Trzaskoma Decl."), Ex. A ("Bennett Tr.")[3] at 47:8–18.

---

[2]    We accept the Complaint's allegations Complaint as true solely for the purposes of this Motion and only to the extent that they are not inconsistent with or contrary to the documents referenced in or integral to the Complaint.

[3]    On a motion to dismiss, the Court may consider any statements or documents incorporated by reference in the complaint, documents that are "integral" to the complaint even if they are not incorporated by reference, and matters of which judicial notice may be taken. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002). Even where the plaintiff chooses not to attach them to the complaint, such documents may be considered in their entirety to "provide the necessary or proper context for understanding [a Defendant's] statements." *Ganske v. Mensch*, 480 F. Supp. 3d 542, 545 (S.D.N.Y. 2020). Plaintiff's sworn testimony in AG James's investigation, released by AG James on November 10, 2021, is incorporated by reference to the Complaint. *See* Compl. ¶¶ 130, 135–38. Indeed, the Complaint both quotes from and heavily paraphrases Plaintiff's sworn testimony. *Compare id.* ¶ 59 *with* Bennett Tr. 164:16–165:7; *compare* Compl. ¶ 40 *with* Bennett Tr. 137:15–138:7. It also directly references that testimony. Compl. ¶ 130; *see also Wade v. Kay Jewelers, Inc.*, No. 3:17-CV-990 (MPS), 2018 WL 4440532, at *3 (D. Conn. Sept. 17, 2018) (considering deposition testimony on motion to dismiss even where complaint did not cite or reference it directly, but quoted or paraphrased the testimony extensively).

Plaintiff alleges that while she was an Executive Assistant, she and Governor Cuomo engaged in conversations about her personal life and about his own. *See, e.g.*, *id.* ¶¶ 22–23, 30–31, 46–49, 54–56. Plaintiff alleges, for example, that Governor Cuomo "asked Plaintiff about her parents and about her hobbies, which she told him included weightlifting, skiing, and running." *Id.* ¶ 30. Plaintiff also alleges that she told Governor Cuomo about leaving her job to care for an ex-boyfriend, *id.* ¶ 22, and discussed her activities at her alma mater, *id.* ¶¶ 54–55. She also asked Governor Cuomo about his own personal life amidst the pandemic. *Id.* ¶ 56.

Despite acknowledging this friendly chit-chat, Plaintiff also alleges that Governor Cuomo's conduct became inappropriate sexual harassment. She alleges, for example, that Governor Cuomo "hazed" her by asking her (and, she says, not any male colleagues) to memorize and sing "Danny Boy," and by challenging her to a push-up competition. *Id.* ¶¶ 24–26, 30, 35. She also alleges that Governor Cuomo pressured her to disclose personal details and had unwelcome conversations with her about a sexual assault she experienced in college. *See, e.g.*, *id.* ¶¶ 62–69, 76, 93. And she alleges that Governor Cuomo made sexual advances toward her. *Id.* ¶¶ 64, 76.

On June 10, 2020, Plaintiff met for "a few minutes" with Chief of Staff Jill DesRosiers and complained that Governor Cuomo had "crossed a boundary" in their personal conversations. *Id.* ¶¶ 80–81. Plaintiff "requested a transfer to a position in which she would not have to interact with him." *Id.*; *see also* Bennett Tr. at 202:21–203:10, 205:6–17. Ms. DesRosiers asked about Plaintiff's personal and career interests to determine what departments might be the best fit. *See* Bennett Tr. at 205:13–17, 208:7–9 (telling Ms. DesRosiers her interests were "women's health and LGBTQ health"); *id.* at 226:18–25 (describing her new position to Special Counsel Judith Mogul and Ms. DesRosiers as "a dream job"); *id.* at Ex. 20 (Plaintiff discussing her new job, saying that her new supervisor "is great so I'm excited. I think it will be good" and calling it "[a]nother great path and

one I wanted to be on anyway"). Plaintiff alleges that she asked Ms. DesRosiers not to tell Governor Cuomo about her report, but that Ms. DesRosiers disregarded that request and informed Governor Cuomo and Ms. Mogul. Compl. ¶¶ 83, 85.

Two days later, consistent with Plaintiff's request, Ms. DesRosiers offered Plaintiff a position as a "Health Policy Advisor on the Executive Chamber's health policy team, reporting to Assistant Secretary for Health Megan Baldwin," beginning on June 15, 2020. *Id.* ¶ 84. Plaintiff also alleges, solely on information and belief, that Governor Cuomo "approved Plaintiff's transfer." *Id.*  Plaintiff voluntarily accepted the transfer. *See* Bennett Tr. at 208:4–13. Shortly thereafter, on June 29, 2020, Plaintiff "told several Executive Chambers staffers she had left her role" as Governor Cuomo's assistant because he "had made sexual advances toward her." Compl. ¶ 90. One of those staffers informed Ms. DesRosiers. *Id.*  ¶ 91. Ms. DesRosiers and Ms. Mogul immediately met with Plaintiff and asked her to tell them "everything," which Plaintiff alleges she did. *Id.* ¶¶ 92–94.

One week later, Plaintiff learned that her supervisor, Ms. Baldwin, was being replaced. *Id.* ¶ 108.  Plaintiff does not allege that the decision to replace Ms. Baldwin had anything to do with Plaintiff's complaints about Governor Cuomo, but bemoans the disruptive impact her new supervisor's transition had on her work. According to Plaintiff, she now had a "'do nothing' position." *Id.* ¶ 114. In the meantime, Plaintiff alleges she suffered from numerous physical and mental health struggles that caused her to take paid medical leave shortly after the transfer and, ultimately, caused her to resign from state employment. *Id.* ¶¶ 114, 117, 122.  Her last day was November 5, 2020, less than four months after she changed positions. *See id.* ¶ 123.

On February 24, 2021, Lindsey Boylan, a former New York State employee who was running for Manhattan Borough President, published an essay alleging that Governor Cuomo

sexually harassed her by, among other things, purportedly kissing her on the lips without consent on one occasion, suggesting they play strip poker on a plane, going out of his way to touch her, and giving her and other female staffers roses on Valentine's Day.[4] *Id.* ¶ 125. Three days later, on February 27, 2021, the *New York Times* published an interview with Plaintiff in which she also alleged publicly that Governor Cuomo sexually harassed her. *Id.* ¶ 126.  Shortly thereafter, on March 1, 2021, Governor Cuomo issued a referral to AG James, authorizing her to select an independent law firm to investigate the allegations of sexual harassment against him. *Id.* ¶ 129. On March 4, 2021, CBS televised an interview between Norah O'Donnell and Plaintiff, in which Plaintiff further repeated and publicized her allegations against Governor Cuomo.[5]

Over the next several months, even as the AG's investigation went forward, Governor Cuomo faced a barrage of public criticism and press inquiries with Plaintiff and Ms. Boylan reiterating their own accusations and chiming in on complaints made by others:

For example, Plaintiff tweeted:

- "When @NYGovCuomo propositioned me for sex, he broke the law. It is very simple: the issue is about his action, it is not about my feelings. He broke the law (you know, the one he signed). Trzaskoma Decl., Ex. C.

Among other things, Ms. Boylan tweeted:

- "You are not going to derail or destroy any more lives @NYGovCuomo." Trzaskoma Decl., Ex. D;

- "Resign you disgusting monster, @NYGovCuomo." Trzaskoma Decl., Ex. E.

Plaintiff's attorney, Debra Katz, also made public statements about Governor Cuomo:

- Regarding Governor Cuomo, "Public officials who engage in such egregious abuses of their power need to be held accountable. They do not deserve to hold their positions." Trzaskoma Decl., Ex. F;

---

[4]        *See* Trzaskoma Decl., Ex. B.

[5]        *See* Trzaskoma Decl. ¶ 5.

- "Just as he was prone to gaslight the women and make them think it was their imagination that he was crossing the line, he thinks he's going to pull this off with the public . . . It's absurd." Trzaskoma Decl., Ex. G.

Executive Chamber employees Brittany Commisso and Alyssa McGrath also accused Governor Cuomo of wrongdoing in news articles published on April 7, 2021 and March 19, 2021.[6]

Governor Cuomo took reasonable steps to counter the public actions and ensuing media onslaught. Specifically, between February 27, 2021 and May 3, 2021, Governor Cuomo made a series of public statements defending himself from the allegations. While he apologized for making Plaintiff or other staffers feel uncomfortable, he also made clear that he did not engage in gender-based harassment.[7] *See also id.* ¶¶ 127–28, 131. Among other things, Governor Cuomo stated:

- On February 27, 2021: "When [Plaintiff] came to me and opened up about being a sexual assault survivor and how it shaped her and her ongoing efforts to create an organization that empowered her voice to help other survivors, I tried to be supportive and helpful. [Plaintiff]'s initial impression was right: I was trying to be a mentor to her. I never made advances toward [Plaintiff] nor did I ever intend to act in any way that was inappropriate. The last thing I would ever have wanted was to make her feel any of the things that are being reported." Trzaskoma Decl., Ex. J.
- On February 28, 2021: "I never intended to offend anyone or cause any harm. I spend most of my life at work and colleagues are often also personal friends. At work sometimes I think I am being playful and make jokes that I think are funny. I do, on occasion, tease people in what I think is a good natured way. I do it in public and in private. You have seen me do it at briefings hundreds of times. I have teased people about their personal lives, their relationships, about getting married or not getting married. I mean no offense and only attempt to add some levity and banter to what is a very serious business. I now understand that my interactions may have been insensitive or too personal and that some of my comments, given my position, made others feel in ways I never intended. I acknowledge some of the things I have said have been misinterpreted as an

---

[6]     *See* Trzaskoma Decl., Ex. H (alleging that Governor Cuomo groped her on two separate instances); *id.*, Ex. I (claiming that Governor Cuomo made repeated sexual innuendos at her and looked down her shirt).

[7]     The links to www.governor.ny.gov contained in the Complaint are no longer operable. In lieu of the same, Governor Cuomo incorporates herein contemporaneously archived pages comprising the substance of the February 27, 2021 and February 28, 2021 statements referenced in the Complaint. *See* Trzaskoma Decl., Exs. J, K. Links to or transcripts of the other statements relied upon by the Complaint are likewise incorporated herein as exhibits.

unwanted flirtation. To the extent anyone felt that way, I am truly sorry about that." Trzaskoma Decl., Ex. K.

- On March 12, 2021 (though the Complaint mistakenly cites it as March 8): "[L]ook, it's very simple. I never harassed anyone. I never abused anyone. I never assaulted anyone. And I never would, right? Now, is it possible that I have taken a picture with a person who after the fact says they were uncomfortable with the pose and the picture? Yes, and that's what you're hearing about. Now, I have taken thousands of pictures. I never meant to make anyone feel uncomfortable. I never meant to make anyone feel awkward. There were times when I'd go to take a picture with a person, and I can feel that they're standoffish or something, and I respect that. I never took a picture with a person who said, 'I'm uncomfortable,' and then did it anyway. But yes, I apologized for people who I have taken pictures with and who, after the fact, said they were uncomfortable with that picture." Trzaskoma Decl., Ex. L.

On April 26, 2021, in response to a press question, Governor Cuomo stated, "The report can't say anything different because I didn't do anything wrong." Trzaskoma Decl., Ex. M; *see* Compl. ¶ 131. On May 3, he reaffirmed his position: "And I've already told New Yorkers where I am. I did nothing wrong [] period, and I'm not resigning and I'm doing my job every day." Trzaskoma Decl., Ex. N; *see* Compl. ¶ 131.

On August 3, 2021, AG James announced the AG Report and held a press conference accusing Governor Cuomo of sexually harassing numerous women, including Plaintiff. *Id.* ¶ 135. The AG Report spawned several concurrent investigations into the sexual harassment allegations, including by the Assembly Judiciary Committee and by multiple district attorneys, all of which largely relied on AG James's investigation and AG Report, and which were pending throughout 2021 and into 2022.[8] Facing tremendous political and public pressure, Governor Cuomo announced his resignation on August 10, 2021, effective August 24, 2021. *Id.* ¶ 140.

---

[8]      *See* Trzaskoma Decl., Ex. O (announcing release of evidence to and cooperation with Assembly investigation); *id.*, Ex. P (noting coordination with district attorneys). The Oswego County District Attorney was the last prosecutor to public announce closure of his investigation without charges, which occurred on January 31, 2022. *See id.*, Ex. Q; *see also id.* ¶ 26.

During press conferences and in written submissions following his resignation, Governor Cuomo's counsel vehemently denied that Governor Cuomo violated any laws and publicly criticized the AG's investigation and AG Report. Although Plaintiff alleges that Governor Cuomo's counsel "regurgitated false allegations" against Plaintiff, and "falsely portrayed Plaintiff as a liar and a con artist," "to punish her for coming forward, and to silence her," *id*. ¶¶ 141–145, such allegations grossly misrepresent the public record. Thus, even if counsel's statements arguably could be attributed to Governor Cuomo for purposes of a retaliation claim, nothing in those statements threatened Plaintiff or called her a con artist. Instead, counsel simply outlined the flaws, omissions, and errors in the AG Report and investigative process, defended Governor Cuomo in the midst of pending investigations, and criticized AG James's selective public releases of some but not all evidence underlying the AG Report (including the release of certain witness transcripts on November 10 and November 29, 2021). *See* Trzaskoma Decl. ¶¶ 22–27.

Plaintiff now asserts claims against Governor Cuomo for sexual harassment and also for retaliation under the Equal Protection Clause, via 42 U.S.C. § 1983; the New York State Human Rights Law, N.Y. Exec. L. § 290 *et seq*. ("NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 *et seq*. ("NYCHRL"). Plaintiff's Retaliation Claims are premised on three categories of conduct: (i) her voluntary transfer to the health policy team; (ii) Governor Cuomo's statements to the media between March and May 2021, after Plaintiff had resigned from employment with New York State; and (iii) statements by Governor Cuomo's counsel during press conferences held *after* the issuance of the AG Report on August 20, 2021, October 20, 2021, and January 13, 2022. Compl. ¶¶ 159, 205, 240.

## **LEGAL STANDARDS**

Under Rule 12(b)(6), dismissal is appropriate where the complaint fails to state a claim "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The plausibility of a claim also depends on "the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011). Thus, the factual allegations pled "must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Empire Merchants, LLC v. Reliable Churchill LLP*, 902 F.3d 132, 139 (2d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). "[L]egal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (internal quotations omitted). Where a Plaintiff fails to "nudge[] [her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

To state a claim under § 1983, a plaintiff must allege: (1) the violation of a right secured by the Constitution or federal law; and (2) that the alleged deprivation was committed by a person acting under color of state law. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87–88 (2d Cir. 2015). (quotations omitted) (citations omitted). Once the color of law requirement is met, § 1983 claims largely parallel the Title VII standard, which requires the same elements as the

11

NYSHRL. *See Naumovski v. Norris*, 934 F.3d 200, 221 (2d Cir. 2019) (citing *Vega.*, 801 F.3d at 88). Unlike Title VII claims, however, a Plaintiff asserting a § 1983 claim must also allege facts that, when taken as true, would establish (i) that retaliatory intent was the "'but-for' cause" of the adverse employment action," and (ii) that the defendant was personally involved in the alleged constitutional violation. *See id.* at 212–14.

To plausibly state a claim under the NYSHRL, Plaintiff must establish: "(1) she engaged in a protected activity; (2) her employer was aware of this activity; (3) the employer took adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity." *See Villetti v. Guidepoint Glob. LLC*, No. 21-2059-CV, 2022 WL 2525662, at *4 (2d Cir. July 7, 2022); *Nieblas-Love v. N.Y.C. Housing Auth.*, 165 F. Supp. 3d 51, 69–70 (S.D.N.Y. 2016) (citations omitted).

While the NYCHRL does not require an adverse employment action, a plaintiff still must allege facts supporting an inference "that something happened that was reasonably likely to deter a person from engaging in protected activity." *McHenry v. Fox News Network LLC*, 510 F. Supp. 3d 51, 67 (S.D.N.Y. 2020). "Simply stating that the NYCHRL encompasses a broader standard does not absolve [plaintiff] from putting forth evidence tending to show a causal connection between [her protected act] . . . and the alleged retaliatory actions." *Feliciano v. City of New York*, No. 14-cv-6751, 2015 WL 4393163, at *9 (S.D.N.Y. July 15, 2015) (quoting *EEOC v. Bloomberg, L.P.*, 967 F. Supp. 2d 816, 862 (S.D.N.Y. 2013)); *see King v. Block Inst., Inc.*, No. 17-cv-7318, 2020 WL 2523245, at *8 (E.D.N.Y. May 18, 2020) (plaintiff must allege that retaliation was the "motivating factor" for defendant's decisions).

## ARGUMENT

Plaintiff's retaliation claims against Governor Cuomo are not viable. First, with respect to her claim for retaliation relating to her transfer to the health policy team, Plaintiff does not allege facts supporting an inference that the transfer was an adverse employment action or that the transfer was "reasonably likely to deter a person from engaging in protected activity." To the contrary, Plaintiff specifically requested and agreed to the transfer. Moreover, the circumstances that allegedly caused Plaintiff to be unhappy in that new position were entirely unrelated to Plaintiff. Plaintiff also does not (and cannot) plausibly allege Governor Cuomo's personal involvement in the decision to transfer her.

Second, with respect to Plaintiff's claims regarding Governor Cuomo's and his counsel's media statements beginning in February 2021, those claims fail under any standard, because: (i) the statements at issue were not retaliatory in nature but were instead permissible and reasonable statements made in Governor Cuomo's defense; and (ii) all of the allegedly "retaliatory" statements were made long after Plaintiff resigned, which ended any economic or employment relationship that may have existed between Plaintiff and Governor Cuomo.

Finally, Governor Cuomo is entitled to dismissal on qualified immunity grounds.

## I.   THE RETALIATION CLAIMS SHOULD BE DISMISSED IN THEIR ENTIRETY.

### A.   As a Matter of Law, Plaintiff's Voluntary and Requested Transfer Was Not Retaliatory.

Plaintiff's Retaliation Claims based on her transfer to the health policy team fail for at least three reasons. First, as a matter of law, voluntary lateral transfers do not suffice to plead unlawful retaliation. Second, even if the transfer was not voluntary, and even if it was a lesser position, the allegations are insufficient to show any connection between Plaintiff's complaints about Governor

Cuomo's conduct and her unhappy work circumstances. Third, Plaintiff does not sufficiently allege Governor Cuomo's personal involvement in her transfer.

### 1.  A Voluntary, Lateral Transfer Is Not Retaliatory.

It is well settled in this Circuit that lateral transfers—and particularly *voluntary* transfers—do not constitute an "adverse employment action" in the context of a retaliation claim. *See Pacheco v. New York Presbyterian Hosp.*, 593 F. Supp. 2d 599, 617 (S.D.N.Y. 2009) (under Title VII standard); *see also Matthews v. Corning Inc.*, 77 F. Supp. 3d 275, 298 (W.D.N.Y. 2014) (under Title VII and NYSHRL); *Taylor v. N.Y.C. Dep't of Educ.*, No. 11–CV–3582, 2012 WL 5989874, at *10 (E.D.N.Y. Nov. 30, 2012) ("The courts in this Circuit have generally declined to find that transfers (or denials of transfers) amount to adverse employment actions, even in the context of a retaliation claim"). Where a plaintiff requests a transfer herself, even where such a request is allegedly precipitated by discrimination, that transfer "cannot constitute an adverse employment action, even under the relaxed standard for retaliation claims." *Matthews*, 77 F. Supp. 3d at 298.

Here, Plaintiff acknowledges that she "requested a transfer" from her current position as Governor Cuomo's Executive Assistant. Compl. ¶ 81. Not only that, Plaintiff testified that she even made an effort to expedite the transfer. *See* Bennett Tr. 207:3–9. As set forth in Ms. DesRosiers's motion to dismiss, the transfer was not a retaliatory decision by Ms. DesRosiers, who received the request and implemented it. ECF 34. Plaintiff's new role was also precisely the *type* of position she had requested. Indeed, during Plaintiff's June 10, 2020 meeting with Ms. DesRosiers, Plaintiff expressed a specific interest in working on women's health issues. *See* Bennett Tr. 205:15–17, 208:7–9 (confirming that Plaintiff wanted to work in "women's health and LGBTQ health"). And that is exactly the role she got: "Ms. Baldwin told Plaintiff she would be working on women's and LGBTQ+ health issues and provided background on the different agencies, organizations, and individuals that also worked on those issues." Compl. ¶ 87. These

14

facts do not support a retaliation claim because such a transfer—to a position Plaintiff specifically requested—would not be "reasonably likely to deter a person from engaging in protected activity." *See Pacheco*, 593 F. Supp. 2d at 604, 627 (dismissing retaliation claim under NYCHRL, stating "[a]ll of the evidence conclusively demonstrates that Plaintiff's transfer was voluntary and that he suffered no adverse consequences . . . hardly a set of circumstances that would deter the reasonable employee from complaining about an employer's employment practices.").

### 2. There Is No Connection Between Plaintiff's Complaints About Governor Cuomo's Conduct and Her Unhappy Work Circumstances.

Nor is there any merit to Plaintiff's allegation that Governor Cuomo retaliated against her by allegedly approving her transfer to a position "where she had little work or supervision and significantly diminished material responsibilities." *See, e.g.*, *id.* ¶ 159. Plaintiff was given a lateral assignment consistent with her interests and experience. Even if it were true that Plaintiff's new role was dissatisfying, nothing in the Complaint suggests that anyone, least of all Governor Cuomo, intended for Plaintiff to be assigned to a "do nothing job," or that Governor Cuomo or any defendant was ever aware of her dissatisfaction. Further, by Plaintiff's own allegations, the circumstances that led to her having little to no work, and having unresponsive or unhelpful supervisors, were the result of an office shake-up. As Plaintiff herself describes it, the new position got off to a poor start because Ms. Baldwin learned she was being replaced just a week after Plaintiff started. *Id.* ¶ 108. Apparently upset by this news, Ms. Baldwin, "abruptly stopped coming to work for more than a week." *Id.* And Ms. Baldwin's replacement did not begin training until early August, and lasted only approximately eight weeks in the position. *Id.* ¶¶ 113, 118.

These events, while unfortunate, are not evidence of retaliation against Plaintiff. Plaintiff does not, and cannot, plead that the decision to replace Ms. Baldwin had anything to do with Plaintiff's complaints, much less was motivated by a desire to subject Plaintiff to an inferior

15

position. *See Villetti*, 2022 WL 2525662, at \*4; *Feliciano*, 2015 WL 4393163, at \*9; *see also* Compl. ¶¶ 108, 111–113. Nor does Plaintiff plead that Governor Cuomo had any knowledge that she was disappointed with her new role. There also is no basis to infer that Governor Cuomo knew or intended that Ms. Baldwin's replacement would have such a short tenure or that Plaintiff would not be able to tolerate two months of having no assignments.

In this regard, there is no merit to Plaintiff's contention that her transfer to a "do nothing position" was tantamount to being "constructively discharged." Compl. at ¶ 26. Such a claim fails absent evidence that "the employer deliberately created working conditions that were 'so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'" *Stetson v. NYNEX Serv. Co.*, 995 F.2d 355, 361 (2d Cir. 1993) (under ADEA, which was patterned after Title VII) (citation omitted); *see also Lumpkin v. H.E.L.P. USA*, No. 02 CV 5475, 2005 WL 839669, at \*5 (E.D.N.Y. 2005) (finding no constructive discharge where plaintiff retained the same salary and pay grade after his transfer to a lower position, even if it was subjectively seen as a demotion). Constructive discharge cannot be established "simply through evidence that an employee was dissatisfied with the nature of his assignments," *Stetson*, 995 F.2d at 360, yet that is all Plaintiff has alleged.

### 3. Plaintiff Has Not Pled Governor Cuomo's Personal Involvement in the Transfer.

As set forth above, and for the reasons set forth in Ms. DesRosiers's motion to dismiss, Plaintiff fails to plead facts supporting an inference that her transfer was retaliatory. But even if the Court were to find otherwise, the Retaliation Claims still should be dismissed as against Governor Cuomo because he had no personal involvement in Plaintiff's transfer.

In the Second Circuit, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Shomo v. City of New York*,

579 F.3d 176, 184 (2d Cir. 2009). And under § 1983, the general doctrine of *respondeat superior* or a simple allegation of supervisory liability does not suffice. *Johnson v. Glick*, 481 F.2d 1028, 1033–34 (2d Cir. 1973), *overruled on other grounds*, *Graham v. Connor*, 490 U.S. 386 (1989); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977) (finding no personal liability). A plaintiff alleging a § 1983 claim must plead and prove "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *See Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). The NYSHRL and NYCHRL apply a similar standard, limiting liability to those who "actually participate" in the alleged retaliatory conduct. *See Schaper v. Bronx Lebanon Hosp. Ctr.*, 408 F. Supp. 3d 379, 395 (S.D.N.Y. 2019) ("[L]iability under both the NYSHRL and NYCHRL is limited to those individual employees 'who actually participate[d] in the conduct giving rise to plaintiff's [retaliation] claim.'") (citations omitted).

Here, Plaintiff alleges only one fact—on information and belief—that purports to connect Governor Cuomo to the relevant conduct, that Governor Cuomo "approved Plaintiff's transfer." Compl. ¶ 84. Even if true, this threadbare allegation does not suffice. *See McHenry*, 510 F. Supp. 3d at 85. Plaintiff simply cannot rely on Governor Cuomo's title or position, without more, to establish personal involvement. *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) ("[A] defendant in a § 1983 action may not be held liable . . . merely because he held a high position of authority."). Further, as explained above, nothing in the Complaint even suggests that Governor Cuomo was responsible for Plaintiff's work circumstances after the transfer. Because Governor Cuomo had no personal involvement in the mechanics of Plaintiff's transfer, or in her assignments, staffing, hours, or other circumstances of her job on the health policy team, Plaintiff has no claim for retaliation against him. *See Tangreti,* 983 F.3d at 618; *Schaper*, 408 F. Supp. 3d at 395.

**B.  As a Matter of Law, Statements Made in Governor Cuomo's Defense After Plaintiff Resigned Were Not Retaliation.**

Plaintiff further claims that Governor Cuomo retaliated against her through a series of media statements by Governor Cuomo himself, on February 27, February 28, March 8, April 26, and May 3, 2021, and press conferences by his counsel, on August 20, 2021, October 20, 2021, and January 13, 2022. Compl. ¶¶ 127–28, 131, 141–43. Those statements do not constitute retaliation for two reasons. First, Plaintiff, was not a New York State employee after November 10, 2020. And she has not—and cannot—allege any ongoing economic or employment relationship with Governor Cuomo or the State at the time of the statements, a prerequisite for asserting any retaliation claim. Second, the statements at issue were reasonable defensive measures to defend Governor Cuomo against the public allegations against him, including those made in the AG Report, and to respond to and defend against AG James's selective public release of some underlying witness transcripts, as well as pending investigations stemming from that report. Trzaskoma Decl. ¶¶ 22–27. Under the law, Governor Cuomo and his counsel were entitled to take reasonable measures to defend against potential criminal prosecution and to respond to accusations of wrongdoing and the public release of some evidence.

**1.  Plaintiff Had No Employment or Ongoing Economic Relationship with Governor Cuomo at the Time of the Statements.**

Liability for retaliation under Title VII, the NYSHRL, and the NYCHRL attaches only where the purported retaliator has an employment or ongoing economic relationship with the Plaintiff. *See Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 205–06 (2d Cir. 2006) (under Title VII); *Eckhart v. Fox News Network, LLC*, No. 20-CV-5593 (RA), 2022 WL 4579121, at *2 (S.D.N.Y. Sept. 29, 2022) ("Retaliation claims under [NYSHRL and NYCHRL] are confined to the employment context, or at the very least, to situations where the parties had an 'ongoing economic relationship.'").

Governor Cuomo did not have *any* type of employment relationship or employer or supervisor status with Plaintiff in late February 2021, more than three months after her resignation. *See* Compl. ¶ 123. That Plaintiff was a former employee does not suffice because absent an ongoing economic relationship, the retaliation laws do not apply. *See Schmitt v. Artforum Int'l Mag., Inc.*, 178 A.D.3d 578, 584–86 (1st Dep't 2019) (NYCHRL claim only viable where former employee has an "ongoing economic relationship" with former employer, and where alleged retaliation related to that "quasi-employment economic relationship"); *see also Eckhart,* 2022 WL 4579121, at *2 (no ongoing economic relationship between Fox News anchor and former employee following employee's termination).

### 2.   The Statements Were Reasonable Defensive Measures.

Even if Plaintiff could avail herself of the various laws despite being a former employee with no ongoing economic relationship, her Retaliation Claims would still fail because the alleged statements, when considered in context, make clear that Governor Cuomo was defending himself, not retaliating against Plaintiff. "There is an important difference between defending oneself, on the one hand, and threatening, intimidating, or otherwise interfering with someone's right to pursue a discrimination claim on the other." *Hughes v. Twenty-First Century Fox, Inc.,* 304 F. Supp. 3d 429, 449 (S.D.N.Y. 2018) (citing *Dixon v. Int'l Bhd. of Police Officers*, 504 F.3d 73, 84 (1st Cir. 2007)). And nothing in Governor Cuomo's statements was remotely threatening toward Plaintiff. On the contrary, Governor Cuomo consistently treated Plaintiff with respect.

On February 27, 2021, for example, Governor Cuomo responded to Plaintiff's allegations in her *New York Times* interview. Trzaskoma Decl. ¶ 13; *id.* Ex. J. While he denied making sexual advances toward Plaintiff and said he never "intend[ed] to act in any way that was inappropriate," he also said Plaintiff was a "hard-working and valued member" of his staff with "every right to

speak out."[9] *Id.* The following day, Governor Cuomo expressed regret for making Plaintiff uncomfortable:

> I have teased people about their personal lives, their relationships, about getting married or not getting married. I mean no offense and only attempt to add some levity and banter to what is a very serious business . . . I now understand that my interactions may have been insensitive or too personal and that some of my comments, given my position, made others feel in ways I never intended. I acknowledge some of the things I have said have been misinterpreted as an unwanted flirtation. To the extent anyone felt that way, I am truly sorry about that.

*Id.* ¶ 14; *id.* Ex. K. Moreover, even if Governor Cuomo's statements could be viewed as critical of Plaintiff (they were not), this still would not be retaliation. A party is "entitled to defend itself against [a plaintiff's] charges, even if the [plaintiff] finds it searingly painful to hear himself criticized." *Melman v. Montefiore Med. Ctr.*, 946 N.Y.S.2d 27, 42 (1st Dep't 2012). To hold otherwise would improperly muzzle defendants in discrimination cases in violation of the First Amendment and New York's litigation privilege. *See HC2, Inc. v. Delaney*, 510 F. Supp. 3d 86, 105 (S.D.N.Y. 2020) (statements made concerning a lawsuit are "absolutely privileged as long as they are pertinent to the subject of the litigation.") (citations omitted); *see also U.S. v. N.Y.C. Trans. Auth.*, 97 F.3d 672, 677 (2d Cir. 1996) ("Reasonable defensive measures" are not retaliation "even though such steps are adverse to the charging employee").

Governor Cuomo's subsequent statements, made on March 8, April 26, and May 3, 2021, do not mention or reference Plaintiff at all—either explicitly or implicitly. *See* Trzaskoma Decl., Exs. L, M, N; *see also Hughes*, 304 F. Supp. 3d at 449 (dismissing retaliation claim where statement "peddled to the National Enquirer" did not mention plaintiff by name). Instead, those statements were clearly directed at defending himself from the media onslaught, and were

---

[9]     The Court should note that, unlike many cases involving allegations of defensive measures, Governor Cuomo *encouraged* Plaintiff to speak out and to have her claims independently investigated.

obviously meant to encourage the public to withhold judgment until all the facts were made publicly available. *Cf. Hughes,* 304 F. Supp. 3d at 449 (such statements must be allowed "to blunt the inflammatory force of [a plaintiff's] allegations"). Such defensive measures cannot reasonably be held to be retaliatory. *See Gaughan v. Rubenstein*, 261 F. Supp. 3d 390, 420 n.4 (S.D.N.Y. 2017) (statements made in defense are rarely considered retaliatory); *Marchuk v. Faruqi & Faruqi, LLP*, 100 F. Supp. 3d 302, 312 (S.D.N.Y. 2015) (same principles in the NYCHRL context).

As for statements made by Governor Cuomo's counsel following the release of the AG Report, that criticism was clearly directed at AG James and her investigative team, aimed to expose troubling flaws in the investigative process and the subsequent AG Report, and defend a client from a media onslaught in the face of pending investigations stemming from that report. *See* Trzaskoma Decl. ¶¶ 22–27. Indeed, on the same day as the October 20, 2021 press conference, Governor Cuomo submitted and publicly released a lengthy application to AG James requesting that she correct the many flaws in the AG Report, including concerns about the credibility of certain witnesses and evidence that the investigative team either failed to obtain or ignored. Trzaskoma Decl., Ex. R; *id.* ¶¶ 23–24. Governor Cuomo's counsel's statements on that date cannot be construed as anything other than an effort to defend her client, including by pointing out inconsistencies between the evidence and the AG Report's conclusions. *See id.* ¶¶ 21–23. As for the January 13, 2022 press conference, counsel's statements were a response to AG James's selective public release of some evidence in November 2021 and the dismissal of a criminal charge against Governor Cuomo on January 7, 2022 after a separate investigation, as well as continued criticism of the AG Report. *Id.* ¶¶ 25–27. And Governor Cuomo's counsel has continued to publicly criticize AG James's investigators and their process, as well as AG James's handling of the matter. Such statements simply do not constitute unlawful retaliation. *See Richardson v. Comm.*

*on Human Rts. & Opportunities*, 532 F.3d 114, 123–24 (2d Cir. 2008); *cf. Eckhart v. Fox News Network, LLC*, No. 20-cv-5593, 2021 WL 4124616, at *22 (S.D.N.Y. Sep. 9, 2021) ("[plaintiff] has not plausibly pled that this press release was retaliatory"); *Lax v. City Univ. of New York*, No. 16-cv-799 (LDH) (VMS), 2020 WL 6161253, at *9 (E.D.N.Y. Oct. 21, 2020), *aff'd*, No. 20-3906-CV, 2022 WL 103315 (2d Cir. Jan. 11, 2022) ("[c]riticism for lodging a complaint" is not retaliation).

In sum, Plaintiff should not be permitted to use anti-retaliation laws unfairly as a means to silence Governor Cuomo and his lawyers from speaking out in his defense. *See Hughes*, 304 F. Supp. 3d at 449 (even a *preemptive* statement to the press is a reasonable defensive measure); *see also Front, Inc. v. Khalil*, 24 N.Y.3d 713, 718–20 (2015) (finding statements made prior to commencement of anticipated litigation are privileged).

### C.  Governor Cuomo Is Entitled to Qualified Immunity.

The Retaliation Claims should also be dismissed on the grounds that Governor Cuomo is entitled to qualified immunity. "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Even if his allegedly approving Plaintiff's voluntary transfer or his defending himself constituted retaliation (and it does not), such a conclusion is inconsistent with all existing case law establishing that voluntary transfers and reasonable defensive measures are not retaliatory. *See supra* Parts I.A–I.B. Thus, there is no way Governor Cuomo could have believed that he was violating a clearly established right when he took these actions. *See Hope v. Pelzer*, 536 U.S. 730, 739–40 (2002). Governor Cuomo is likewise entitled to qualified immunity on the state law claims because there is no allegation that, with respect to Plaintiff's transfer, he acted "in bad faith or without a

reasonable basis," particularly given that Plaintiff herself requested the transfer. *See Jones v. Parmley*, 465 F.3d 46, 63 (2d Cir. 2006) (qualified immunity under New York state law).

Moreover, the qualified immunity issue can and should be resolved at this stage of the proceeding. *See Mitchell v. Forsyth*, 472 U.S. at 526; *Wood v. Moss*, 572 U.S. 744, 755, n.4 (2014) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (*per curiam*)) ("We have repeatedly 'stressed the importance of resolving immunity questions at the earliest possible stage [of the] litigation'"); *Liberian Cmty. Ass'n of Conn. v. Lamont*, 970 F.3d 174, 193–94 (2d Cir. 2020) (affirming Rule 12(b)(6) dismissal on qualified immunity grounds); *Green v. Maraio*, 722 F.2d 1013, 1019 (2d Cir. 1983) ("the complaint itself establishes the circumstances required as a predicate to a finding of qualified immunity and, consequently, there is no reason to require an answer, a hearing or a trial").

## II.   IN THE ALTERNATIVE, THE COURT SHOULD STRIKE ALLEGATIONS CONCERNING STATEMENTS MADE AFTER PLAINTIFF'S RESIGNATION.

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act: (1) on its own; or (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f). Although motions to strike are generally disfavored, *Cnty. Vanlines Inc. v. Experian Info. Sols, Inc.*, 205 F.R.D. 148, 152 (S.D.N.Y. 2002), "[w]hether to grant or deny a motion to strike is vested in the trial court's sound discretion." *Tucker v. Am. Int'l Grp., Inc.*, 936 F. Supp. 2d 1, 15 (D. Conn. 2013) (citing *Hollander v. Am. Cyanamid Co.*, 172 F.3d 192, 198 (2d Cir. 1999)).

A motion to strike impertinent and immaterial may be granted if it can be shown that no evidence in support of the allegation would be admissible. *See Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976). "An allegation is 'impertinent' or 'immaterial' when it

is neither responsive nor relevant to the issues involved in the action. 'Scandalous' generally refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." *Anderson v. Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392, 416 (S.D.N.Y. 2012). Allegations that are included as "taunting asides," *id.* at 417, or "name calling" are properly stricken as immaterial and scandalous. *See Global View Ltd. Venture Capital v. Great Cent. Basin Exploration, LLC*, 288 F. Supp. 2d 473, 481 (S.D.N.Y. 2003); *see also Parrish v. Sollecito*, No. 01 Civ. 5420 (VM), 2002 WL 1072227, at *2 (S.D.N.Y. May 28, 2002).

Statements made by Governor Cuomo and his counsel beginning at least three months after Plaintiff terminated her employment with the State of New York cannot serve as the basis for the Retaliation Claims, and bear no relationship to any meritorious claim in the Complaint, nor do any other allegations regarding Governor Cuomo's conduct *after* Plaintiff's resignation. Such statements, listed below, are both immaterial and scandalous, and serve no purpose other than to impugn Governor Cuomo, his counsel, and his family for statements made in Governor Cuomo's defense. *Compare* Compl. ¶ 127 ("Defendant Cuomo's statement falsely portrayed Plaintiff as a liar."), ¶ 133 (alleging involvement of Governor Cuomo's brother), ¶ 142 (implying that counsel made false statements and did not engage in due diligence), ¶ 144 (counsel "falsely portrayed Plaintiff as a liar and a con artist") *with Williams v. Warden For Nevada, Women's Corr. Facility*, 489 F. Supp. 2d 1171 (D. Nev. 2007) (striking "personal attacks against petitioner and counsel" and other unprofessional statements). Further, any discovery into statements made by Governor Cuomo's counsel would necessarily implicate both work-product protections and the attorney-client privilege, and thus "no evidence in support of [those] allegation[s] would be admissible." *See Lipsky*, 551 F.2d at 893; *see also Major League Baseball Props., Inc. v. Opening Day Prods.,*

24

*Inc.*, 1997 WL 525482, at \*6–7 (S.D.N.Y. Aug. 22, 1997) (granting in part motion to strike privileged attorney-client information from counterclaim).

As a result, Governor Cuomo requests that the Court strike the following allegations from the Complaint in their entirety: ¶¶ 127–28, 131–133, 140–45; and that the Court strike from the following paragraphs any reference to statements made by Governor Cuomo or his counsel that post-date Plaintiff's resignation: ¶¶ 159, 161–62, 205, 207–208, 240, 242–43.

## CONCLUSION

For the foregoing reasons, Governor Cuomo respectfully requests that the Court dismiss the Retaliation Claims or, in the alternative, strike the requested allegations from the Complaint.

Dated:      November 18, 2022                                Respectfully submitted,
            New York, New York

                                                                /s/  Rita M. Glavin

                                                            Rita M. Glavin
                                                            GLAVIN PLLC
                                                            156 West 56th Street, Ste. 2004
                                                            New York, NY 10019
                                                            Tel: (646) 693-5505
                                                            rglavin@glavinpllc.com


                                                            Theresa Trzaskoma
                                                            SHER TREMONTE LLP
                                                            90 Broad Street, 23rd Floor
                                                            New York, New York 10004
                                                            Tel.: (212) 202-2600
                                                            Fax: (212) 202-4156
                                                            ttrzaskoma@shertremonte.com

                                                            *Counsel for former Governor*
                                                            *Andrew M. Cuomo*