**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____
)
CHARLOTTE BENNETT,                                     )          1:22-cv-07846 (VSB) (KHP)
)
       Plaintiff,                                    )
)
    v.                                                   )
)
ANDREW M. CUOMO, MELISSA                       )
DEROSA, JILL DESROSIERS, and                     )
JUDITH MOGUL,                                          )
)
       Defendants.                                )
_____)

---

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT ANDREW M. CUOMO'S MOTION TO DISMISS

---

Debra S. Katz
Rachel E. Green
Kayla Morin
Katz Banks Kumin LLP
11 Dupont Circle, NW, Suite 600
Washington, D.C. 20036
Ph:    (202) 299-1140
Email:  katz@katzbanks.com
       green@katzbanks.com
       morin@katzbanks.com

Herbert Eisenberg
Laura S. Schnell
Eisenberg & Schnell LLP
233 Broadway, Suite 2704
New York, New York 10279
Ph:    (212) 966-8900
Email:  lschnell@eisenbergschnell.com
       heisenberg@eisenbergschnell.com

_Attorneys for Plaintiff Charlotte Bennett_

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................... 1

   RELEVANT FACTUAL BACKGROUND.................................................................... 2

   I.   DEFENDANT CUOMO'S HARASSMENT OF PLAINTIFF.................................. 2

   II.   DEFENDANT CUOMO'S RETALIATION AGAINST PLAINTIFF............................ 6

THE INSTANT MOTION................................................................................................ 10

   I.   STANDARD OF REVIEW...................................................................................... 11

   II.   SEXUAL HARASSMENT & RETALIATION UNDER § 1983, NYSHRL & NYCHRL ................................................................................................................ 11

ARGUMENT.................................................................................................................... 13

   I.   Plaintiff Charlotte Bennett's Transfer and Ultimate Constructive Discharge After Complaints of Sexual Harassment are Retaliatory ........................................... 13

      A.   Courts Regularly Recognize That a Voluntary Transfer Under Circumstances Like Plaintiff Alleged Is an Adverse Employment Action. ................................. 14

      B.   Plaintiff Alleged a Connection Between Defendant Cuomo's Sexual Harassment and Her "Do Nothing" Job and Defendant Cuomo's Personal Involvement. ................... 15

   II.   Defendant Cuomo's Post-Employment Retaliation Is Actionable ................................... 17

      A.   No Economic Relationship Is Required to Protect Against Unlawful Retaliation. ..... 18

      B.   There Is No Exception to Retaliation Liability for "Defensive" Statements.............. 20

   III.   Qualified Immunity Does Not Shield Defendant Cuomo................................................. 22

   IV.   The Motion to Strike Is Without Merit and Should Be Denied........................................ 23

CONCLUSION................................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Anderson v. Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392 (S.D.N.Y. 2012)................ 23, 24

*Annis v. Cnty. of Westchetser*, 36 F.3d 251 (2d Cir. 1994)........................................................ 23

*Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010) ..................................................... 16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................................... 11

*Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107 (2d Cir. 2004)............... 11, 18

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2008) ...................................................................... 11

*Brown v. Montefiore Med. Ctr.*, No. 19-cv-11474 (ALC),
   2021 WL 1163797 (S.D.N.Y. Feb. 9, 2022)............................................................................ 14

*Burlington N. & Santa Fe Ry. Co.*, 548 U.S. 53 (2006) ....................................................... 17, 19

*Chamberlain Estate of Chamberlain v. City of White Plains*,
   960 F.3d 100 (2d Cir. 2020).................................................................................................... 22

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) .................................................. 5, 9

*Claes v. Boyce Thompson Inst. for Plant Research*,
   88 F. Supp. 3d 121 (N.D.N.Y. 2015)...................................................................................... 15

*de Souza v. Planned Parenthood Fed'n of Am.*, Inc.,
   No. 21-cv-5553 (LGS), 2022 WL 2047580 (S.D.N.Y. June 7, 2022)..................................... 20

*DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104 (2d Cir. 2010)................................................. 11

*Dunson v. Tri-Maint. & Contractors, Inc.*, 171 F. Supp. 2d 103 (E.D.N.Y. 2001)..................... 19

*Emmons v. Broome Cnty.*, No. 3:16-cv-1114,
   2018 WL 2364286 (N.D.N.Y. May 24, 2018)......................................................................... 18

*Field Day, LLC v. County of Suffolk*, 463 F.3d 167 (2d Cir. 2006)............................................ 22

*Gaughan v. Rubenstein*, 261 F. Supp. 3d 390 (S.D.N.Y. 2017)................................................. 21

*Gierlinger v. Town of Brant*, No. 13-cv-00370 (AM),
   2015 WL 3441125 (W.D.N.Y. May 28, 2015)........................................................................ 23

*Gleason v. Chain Service Restaurant*, 300 F. Supp. 1241 (S.D.N.Y. 1969),
   *aff'd*, 422 F.2d 342 (2d Cir. 1970) ........................................................................................ 24

*Global View Ltd. Venture Capital v. Great Cent. Basin Exploration, LLC*,
   288 F. Supp. 2d 473 (S.D.N.Y. 2003).................................................................................... 23

*Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93 (2d Cir. 2010) ................................................ 12

*Green v. Town of East Haven*, 952 F.3d 394 (2d Cir. 2020) ........................................................ 14

*Hayut v. State Univ. of N.Y.*, 352 F.3d 733 (2d Cir. 2003) .......................................................... 11

*Heskin v. Insite Advertising, Inc.*, No. 03-cv-2598 (GDB) (AJP),
   2005 WL 407646 (S.D.N.Y. Feb. 22, 2005)........................................................................... 19

*Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429 (S.D.N.Y. 2018)..................... 22

*James v. Countrywide Fin. Corp.*, 849 F. Supp. 2d 296 (E.D.N.Y. 2013)................................... 12

*Lipsky v. Commonwealth United Corp.*, 551 F.2d 887 (2d Cir. 1976)......................................... 24

*Littlejohn v. City of New York*, 795 F.3d 297 (2d Cir. 2015)....................................................... 11

*Liverpool v. Con-Way, Inc.*, No. 08-cv-4076 (JG) (JO),
   2009 WL 1362965 (E.D.N.Y. May 15, 2009) ........................................................................ 19

*Lore v. City of Syracuse*, 670 F.3d 127 (2d Cir 2012) ................................................................ 22

*Matter of Electchester Hous. V. Project v. Rosa*,
   225 A.D.2d 772 (2d Dep't 1996)............................................................................................ 19

*Matthew v. Texas Comptroller of Pub. Accts.*,
   No-21-cv-5337 (JPC), 2022 WL 4626511 (S.D.N.Y. September 30, 2022) .......................... 13

*McCalla v. City of N.Y.*, No. 15-cv-8002 (LAK) (AJP),
   2017 WL 3601182 (S.D.N.Y. Aug. 14, 2017)........................................................................ 14

*McKenna v. Wright*, 386 F.3d 432 (2d Cir. 2004)....................................................................... 22

*Melman v. Montefiore Med. Cent.*, 98 A.D.3d 107 (1st Dept. 2012)........................................... 21

*Mendez v. Starwood Hotels & Resorts Worldwide, Inc.*,
   746 F. Supp. 2d 575 (S.D.N.Y. 2010).................................................................................... 21

*Mihalik v. Credit Agricole Cheuvreux N Am., Inc.*, 715 F.3d 102 (2d Cir. 2013).......................12

*Mira v. Kingston*, 218 F. Supp. 3d 229 (S.D.N.Y. 2016) .......................................17, 19

*Mooney v. City of New York*, No. 18 Civ. 328 (DLC),
   2018 WL 4356733 (S.D.N.Y. Sept. 12, 2018).................................................16

*Pacheo v. New York Presbyterian Hosp.*, 593 F. Supp. 2d 599 (S.D.N.Y. 2009).......................15

*Parrish v. Sollecito*, No. 01-cv-5420 (VM),
   2002 WL 1072227 (S.D.N.Y. May 28, 2002) ...........................................23

*Petrosino v. Bell Atl.*, 385 F.3d 210 (2d Cir. 2004) ....................................................14

*Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997) ...............................................17, 19

*Rosario v. Nat'l Hous. P'ship Prop. Mgmt., Inc.*,
   No. 96-cv-4633 (BSJ), 1998 WL 146207 (S.D.N.Y. Mar. 26, 1998).....................14

*Schmitt v. Artforum Int'l Mag., Inc.*, 178 A.D.3d 578 (1st Dept. 2019).......................20

*Shakerdge v. Tradition Fin. Servs., Inc.*, No. 16-cv-01940 (VAB),
   2017 WL 4273292 (D. Conn. Sept. 26, 2017).......................................17, 18

*Silver v. Mohasco Corp.*, 602 F.2d 1083 (2d Cir. 1979)......................................17, 18

*United States v. N.Y.C. Dep't of Educ.*, No. 16-cv-4291 (LAK) (JCF),
   2017 WL 435940, (S.D.N.Y. Jan. 31, 2017), *report and recommendation adopted*,
   No. 16-cv-4291 (LAK), 2017 WL 1319695 (S.D.N.Y. Apr. 4, 2017) ..............14, 15

*United States v. N.Y.C. Transit Authority.*, 97 F.3d 672 (2d Cir. 1996).......................21

*Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72 (2d Cir. 2015)........................11

*Walker v. Schult*, 717 F.3d 119 (2d Cir. 2013) ...........................................11

*Wanamaker v. Columbian Rope Co.*, 108 F.3d 462 (2d Cir. 1997)..................17, 18, 19

*Weekes v. JetBlue Airways Corp.*, No. 21-cv-1965 (MKB),
   2022 WL 4291371 (E.D.N.Y. Sept. 16, 2022) .......................................13, 15

*Wellner v. Montefiore Med. Ctr.*, No. 17-cv-3479 (KPF),
   2019 WL 4081898 (S.D.N.Y. Aug. 29, 2019)........................................13, 15

*Wermann v. Excel Dentistry, P.C.*, No. 13-cv-7028 (DAB),

iv

2014 WL 846723 (S.D.N.Y. Feb. 25, 2014)............................................................ 21

*Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62 (1st Dept. 2009).................................... 12, 19, 20

*Williams v. Warden for Nevada, Women's Corr. Facility*,
    489 F. Supp. 2d 1171 (D. Nev. 2007)......................................................... 24

*Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59 (2d Cir. 2015)................................. 12

## Statutes

42 U.S.C. § 1983.................................................................................... 1, 11, 20

Fed. R. Civ. P. 12(f)................................................................................ 23

New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*............................. 1, 19

New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.*................................ 1, 19, 21

Title VII of the Civil Rights Act of 1964, as amended, § 2000e *et seq.*........................ 11

## Other Authorities

State of New York Office of the Attorney General Letitia James, *Report of Investigation
    into Allegations of Sexual Harassment by Governor Andrew M. Cuomo*, available at
    https://ag.ny.gov/sites/default/files/2021.08.03_nyag_-_investigative_report.pdf................... 9

In four separately filed motions, all Defendants have moved to dismiss most counts in Plaintiff Charlotte Bennett's Complaint.[1]  Doc. 28, 33, 34, 38.  Defendant Andrew M. Cuomo has moved to dismiss the retaliation claims brought by Plaintiff Charlotte Bennett under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983 ("§ 1983"); the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL") and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL"). Alternatively, he moves to strike certain paragraphs related to the retaliation claims. Plaintiff respectfully requests that this Court deny Defendant Cuomo's motion.[2]

## PRELIMINARY STATEMENT

As set forth in great factual detail in the Complaint, which must be accepted as true on a motion to dismiss, former Governor Cuomo ("Defendant Cuomo") subjected Charlotte Bennett, his Executive Assistant, to increasingly traumatizing sexual harassment, culminating in more and more overt attempts to have a sexual relationship with Ms. Bennett. Ms. Bennett only escaped Defendant Cuomo's escalating sexual harassment by leaving her job. Her initial reports to those in power resulted in a hasty transfer to a dead-end job, which she ultimately had no choice but to quit. Only after public exposure of the sexual harassment of Ms. Bennett and others was there any investigation of her complaints. The resulting intensive investigation by the Attorney General of the State of New York culminated in detailed findings that Defendant Cuomo had subjected Ms. Bennett and others to sexual harassment and retaliation in violation of state and federal laws. Both during and after the Attorney General's investigation, Defendant Cuomo directly and through his

---

[1] Plaintiff addresses only those arguments raised in Defendant Andrew Cuomo's motion to dismiss, Doc. 38, in this opposition.

[2] Plaintiff also incorporates by reference the arguments set forth in her memoranda of law in opposition to Defendant Melissa DeRosa's, Defendant Jill DesRosiers's, and Defendant Judith Mogul's motions to dismiss.

attorney repeatedly labeled Ms. Bennett a liar and made false allegations against her, all of which have caused Ms. Bennett emotional distress and reputational damage.

Defendant Cuomo does not move to dismiss Ms. Bennett's sexual harassment claims against him. He moves only to dismiss the retaliation claims, claiming that Ms. Bennett's transfer and then resignation – both caused by his sexual harassment – could not as a matter of law be retaliatory. He further argues that any statements he made to the media after her employment ended cannot be retaliatory as a matter of law because they were "defensive statements." These arguments are meritless. The law makes clear that retaliation can take many forms, and that a forced transfer to a dead-end position – even when couched as "voluntary" – is an adverse action sufficient to state a retaliation claim at the motion to dismiss stage. Similarly, the Supreme Court has made clear that post-termination retaliation is actionable.

For the reasons set forth below, Defendant Cuomo's motion must be denied.

## RELEVANT FACTUAL BACKGROUND

## I.   DEFENDANT CUOMO'S HARASSMENT OF PLAINTIFF

Defendant Cuomo[3] was the Governor of the State of New York from January 1, 2011, until his resignation effective August 24, 2021. Doc. 1 ¶ 14. Charlotte Bennett ("Plaintiff") started working for the State of New York in January 2019 at age 23 as a Briefer. *Id.* ¶ 15. It was well-known that Defendant Cuomo preferred to work with women who were pretty and dressed in a stereotypically feminine and sexy manner and that female employees were pressured to conform to this preference. *Id.* ¶ 16. Ms. Bennett observed that when Defendant Cuomo was in the office, his Secretary Defendant DeRosa ("Defendant DeRosa"), his Chief of Staff Defendant Jill DesRosiers ("Defendant DesRosiers"), and other female staffers who worked on the 39th floor

---

[3] Plaintiff incorporates by reference all allegations against all Defendants in her Complaint (Doc. 1) to the extent those allegations apply to this Opposition to Defendant Cuomo's motion to dismiss.

wearing dresses and high heeled shoes. *Id.* Defendant Cuomo hired Ms. Bennett as his Executive Assistant on or around May 15, 2019. *Id.* ¶ 21. She relocated to the 39th floor and felt compelled to wear dresses or other traditionally feminine attire. *Id.* ¶ 21.

Over the course of Ms. Bennett's employment as Executive Assistant for Defendant Cuomo, he made numerous and repeated sexually harassing and gender-based comments about her body, clothing, appearance, and femininity, including but not limited to: commenting on Ms. Bennett's winged eyeliner makeup by calling her "Wings," *id.* ¶ 79; asking why Ms. Bennett wore her hair in a bun, expressing his displeasure that she did, and then calling her "Bun" multiple times per week for the next month, *id.* ¶¶ 39-41; asking where on her body Ms. Bennett had piercings and telling Ms. Bennett she should get a tattoo on her butt, *id.* ¶ 69; and telling Ms. Bennett she looked like a Daisy Duke, *id.* ¶ 76. Defendant Cuomo thus made it plain that he expected his female employees to dress femininely, and he made it painfully clear that he paid attention to Ms. Bennett's appearance and was displeased when she did not dress femininely. He also asked her repeated questions about her sex life, romantic interests, and history of sexual assault. *Id.* ¶¶ 23, 31, 48, 53, 65-68. These comments made Ms. Bennett feel extremely uncomfortable, distressed, and demeaned. *Id.* ¶¶ 23, 31, 48, 53, 66-68.

During Ms. Bennett's first days as Defendant Cuomo's Executive Assistant, Defendant Cuomo instructed Ms. Bennett to memorize the lyrics to "Danny Boy" and made her recite the lyrics, which she did. *Id.* ¶ 24. Later that day, Defendant Cuomo, standing with Stephanie Benton (the Director of the Governor's Offices) and Defendant DeRosa in Ms. Benton's office, demanded Ms. Bennett sing "Danny Boy" in front of all three of them. *Id.* ¶ 25. Ms. Bennett recited the lyrics in a speaking voice, but Defendant Cuomo interrupted her and insisted she sing. Defendant DeRosa interjected, "This is hazing." *Id.* Defendant Cuomo began singing and instructed Ms.

Bennett to join in.   After about 30 seconds, Ms. Bennett stopped singing and left the office, humiliated.   *Id.*   Defendant Cuomo never forced male Executive Chamber employees or the outgoing Executive Assistant (also male) to memorize and sing the lyrics to "Danny Boy" or any other song during their employment.   *Id.* ¶ 26.

On or around October 25, 2019, Defendant Cuomo asked Ms. Bennett a series of pointed questions about the size of his hands.   *Id.* ¶ 37.   He asked her what "everyone" thought about the size of his hands.   Ms. Bennett understood Defendant Cuomo to be encouraging her to comment on the size of his genitals, which made her extremely uncomfortable.   *Id.*

On January 19, 2020, while Ms. Bennett was picking up a PowerPoint at the Executive Mansion, Defendant Cuomo asked her to tell him something.   *Id.* ¶¶ 44, 45.   When she told him about the workday, he was critical and repeatedly told her to tell him "*something interesting*".   *Id.* ¶¶ 45, 46.   Unsure of what else to say, Ms. Bennett told Defendant Cuomo that his 2015 sexual assault legislation, "Enough is Enough," changed her life.   *Id.* ¶ 46.   She explained that her college boyfriend had sexually assaulted and physically attacked her and that she had reported his conduct to their school.   *Id.* ¶ 47.   After pressing her for details, Plaintiff remembers him saying, "Well, some people have it much worse."   *Id.* ¶¶ 47, 48.

On May 15, 2020, Ms. Bennett found herself alone with Defendant Cuomo in his office. *Id.* ¶ 52.   Defendant Cuomo made Ms. Bennett extremely uncomfortable when he asked her who she was "hitting on," who was hitting on her, and whether she was interested in any male staffers. *Id.* ¶ 53.   After Defendant Cuomo pressed her to tell him something "new," she confided that she was writing a speech about the pain she experienced in reporting her sexual assault to her school. *Id.* ¶ 54.   He cut her off and, without breaking eye contact, exclaimed repeatedly "You were raped! You were abused! You were assaulted! You were betrayed!" for 10-15 seconds.   *Id.* ¶ 54.   Ms.

Bennett was traumatized by Defendant Cuomo's statements and his bizarre conduct. *Id.* When she attempted to change the subject and asked how Defendant Cuomo was coping with the pandemic, he told her that he wanted a girlfriend in Albany and that he wanted to ride into the mountains with a beautiful woman on his motorcycle. *Id.* ¶ 56.

His harassment reached a tipping point in a one-on-one conversation between Ms. Bennett and Defendant Cuomo on June 5, 2020. *Id.* ¶ 58. Defendant Cuomo told Ms. Bennett he was "lonely" and that he wanted a girlfriend in Albany, asked Ms. Bennett what her longest relationship had been, and asked whether she had been monogamous in that relationship. *Id.* ¶¶ 63-66. He also asked, among other things, whether she enjoyed herself physically during sex, whether she slept with older men, and whether age mattered to her in a relationship. *Id.* ¶¶ 67-68. Defendant Cuomo stated that he did not think age mattered in a relationship and would be willing to date someone as long as she was over the age of 21 years old. *Id.* ¶ 68. Ms. Bennett was 25 years old at the time. *Id.* ¶ 2. She believed that throughout this conversation, Defendant Cuomo was propositioning her for sex. *Id.* ¶ 68.[4]

The next morning, a Saturday, Ms. Bennett received an email instructing her to perform a task at the Capitol, where Defendant Cuomo was working. *Id.* ¶ 73. Ms. Bennett was concerned about seeing Defendant Cuomo alone again after their conversation the previous day. *Id.* She started to panic when she realized she was there because Defendant Cuomo wanted to be alone with her. *Id.* ¶ 75. Defendant Cuomo called her in to help with his iPhone twice, but otherwise did not assign her any work. *Id.* When he finally called her in a third time and told her he was

---

[4] Defendant Cuomo's effort to justify his sexual harassment by characterizing himself as a good guy in his brief by quoting material outside of the Complaint cannot be considered on a motion to dismiss unless it is converted to a motion for summary judgment where "the motion shall be treated as one for summary judgment and disposed of as provided in [Federal Rule of Civil Procedure] 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (citation omitted). *See* Doc. 38 at 9-10.

ready to leave, he asked Ms. Bennett if she had found him a girlfriend and told her she looked like Daisy Duke, a television character known to be a sex symbol. *Id.* ¶ 76. Ms. Bennett understood Defendant Cuomo's comments to be sexual advances. *Id.* ¶ 76. Defendant Cuomo was testing the waters and had timed the conversation to provide an opportunity for her to leave with him. *Id.* She left the office suite alone at her earliest opportunity. *Id.*

Following this conversation, Ms. Bennett realized that Defendant Cuomo could summon her to staff him by herself at any time of the day or night, putting her in even more uncomfortable situations, and she feared that Defendant Cuomo would continue to escalate his advances toward her. *Id.* ¶ 77. As a result, Ms. Bennett made the painful decision that she could no longer work as Defendant Cuomo's Executive Assistant. *Id.* She resolved to speak to Defendant DesRosiers about resigning her position as soon as she could. *Id.* Before she could speak to Defendant DesRosiers, she staffed Defendant Cuomo at a press conference in New York City, where he greeted her inappropriately and flirtatiously as "Wings." *Id.* ¶¶ 77-78.

## II.   DEFENDANT CUOMO'S RETALIATION AGAINST PLAINTIFF

On June 10, 2020, Plaintiff reported Defendant Cuomo's sexual harassment to Defendant DesRosiers. *Id.* ¶ 81. She told Defendant DesRosiers that Defendant Cuomo had "crossed a boundary" when he told Plaintiff that he was lonely and wanted a girlfriend and asked repeated questions about her sex life. *Id.* She said she was no longer comfortable serving as his Executive Assistant. *Id.* Defendant DesRosiers did not ask *any* follow up questions about Defendant Cuomo's conduct. *Id.* ¶ 82. Defendant DesRosiers relayed Plaintiff's report of sexual harassment to Defendant DeRosa and Judith Mogul ("Defendant Mogul"), Special Counsel to Defendant Cuomo, around that same day, and one or both women informed Defendant Cuomo of Ms. Bennett's complaints shortly thereafter. *Id.* ¶ 83.

Two days later, Defendant DesRosiers informed Ms. Bennett she could transfer to the Executive Chamber's Health Policy team. *Id.* ¶ 84. She then asked Ms. Bennett if she could share her complaint with Defendant DeRosa and Stephanie Benton, even though she had already informed Defendants DeRosa and Mogul. *Id.* ¶¶ 83, 85. Ms. Bennett agreed but made clear she did not want Defendant Cuomo informed because she feared his retaliation. *Id.* Defendant DesRosiers did not reveal that he had already been made aware of her complaint.

Meanwhile, Ms. Bennett began her new role on the health policy team. She reported for her first day on June 15, 2020, but her supervisor was not available to meet until the next day. *Id.* ¶ 86. Less than one month later, Defendant Cuomo announced he was replacing Ms. Bennett's supervisor, who then failed to come to work for more than a week, leaving Ms. Bennett without any meaningful work assignments. *Id.* ¶ 108. When her supervisor did return to work, she was largely unresponsive to Ms. Bennett's job-related questions and requests. *Id.* ¶ 111. Her replacement similarly gave Ms. Bennett very few assignments. *Id.* ¶ 113.

On June 30, 2020, over two weeks after Ms. Bennett reported Defendant Cuomo's sexual harassment, Defendants DesRosiers and Mogul asked Ms. Bennett about the details of the harassment. *Id.* Over the course of approximately ninety minutes, Ms. Bennett described Defendants DesRosiers and Mogul about Defendant Cuomo's sexual harassment in detail. *Id.* ¶ 93. She told them, among other things, that Defendant Cuomo had asked her questions about her sex life, that he was willing to date someone if she was over the age of 21 (knowing that Ms. Bennett was then 25 years old), asked if she had been monogamous in her past relationships, and told her to get a tattoo on her butt. *Id.* ¶ 93. Ms. Bennett told Defendants DesRosiers and Mogul that Defendant Cuomo had been "grooming" her, the process of establishing an emotional connection or relationship of trust with an individual prior to exploiting her sexually. *Id.* ¶ 94.

Both Defendants DesRosiers and Mogul took contemporaneous notes during the interview and concluded that Ms. Bennett was credible.  *Id.* ¶ 95.  At the end of the interview, Ms. Bennett told Defendants DesRosiers and Mogul that she did not want Defendant Cuomo to find out she had reported his sexual harassment because she was afraid of his reaction.  *Id.* ¶ 96.

Ms. Bennett was understandably terrified at the prospect of an investigation.  She had witnessed Defendant Cuomo's – and the other Defendants' – tempers flare when they were frustrated or angry, and she feared the retaliation she would face were her complaint investigated. *Id.* ¶ 102.

Meanwhile, Ms. Bennett's health, which had suffered throughout Defendant Cuomo's harassment of her, continued to deteriorate.  She had very little work and few meaningful assignments in her new role, which exacerbated her feelings of anxiety and depression.  *Id.* ¶¶ 108-09, 110-14.  After speaking with her medical provider and therapist, she concluded that Defendant Cuomo's sexual harassment and her resulting transfer to a "do nothing" position was damaging her health, and she made the painful decision that she needed to resign.  *Id.* ¶ 114.

On February 27, 2021, *The New York Times* published an article detailing some of Defendant Cuomo's sexual harassment of Ms. Bennett.  *Id.* ¶ 126.  The same day Defendant Cuomo issued a press release insisting that he "never made advances toward [Ms. Bennett], nor did [he] ever intend to act in any way that was inappropriate."  *Id.* ¶ 127.  After Ms. Bennett's allegations and those of others harassed by Defendant Cuomo became public, Attorney General Letitia James was tasked with investigating on March 1, 2021.  *Id.* ¶ 129.  While the Attorney General's investigation was ongoing, Defendant Cuomo made public statements questioning Ms. Bennett's credibility, both explicitly and implicitly.  *Id.* ¶ 131.  In a press conference on March 8, 2021, Defendant Cuomo asserted, "I never harassed anyone.  I never abused anyone.  I never

assaulted anyone." *Id.* In a press conference on April 26, 2021, he asserted that he "didn't do anything wrong" regarding the allegations of sexual harassment against him. *Id.* And in a press conference on May 3, 2021, Defendant Cuomo stated, "I did nothing wrong, period." *Id.*

Defendant Cuomo's false public statements portrayed Ms. Bennett as a liar, caused Ms. Bennett significant emotional distress and reputational harm, subjected Ms. Bennett to vitriolic attacks by Defendant Cuomo's supporters on social media, and will continue to harm her future employment prospects. *Id.* ¶ 132. Throughout this time period, Defendant Cuomo consulted his brother, Chris Cuomo, then an anchor on CNN, and others outside the Executive Chamber about his public response to Ms. Bennett's allegations of sexual harassment. *Id.* ¶ 133. Chris Cuomo circulated a disparaging tweet about Ms. Bennett in mid-March 2021. *Id.*

Attorney General James released her report on August 3, 2021, which found that Defendant Cuomo made multiple "inappropriate and offensive comments of a sexual nature" to Ms. Bennett and that he "had detailed conversations with [Ms. Bennett] about her experiences with sexual assault, and did so in a way that—on certain occasions—made her feel extremely uncomfortable, as if he were 'grooming' her." *Id.* ¶ 137.[5] These comments, the Attorney General Report concluded, were "by any reasonable measure, gender-based, offensive, and harassing" and, "individually and collectively," constituted unlawful sexual harassment. *Id.*

---

[5] Defendants cite to the materials collected during the New York Attorney General's investigation into Defendant Cuomo's alleged sexual harassment. Doc. 33 at 23 n.7; Doc. 34 at 16, 23; Doc. 38 at 1. For the purposes of a motion to dismiss "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers,* 282 F.3d at 153 (citation omitted). When a document is not incorporated by reference, the Court may "consider it where the complaint relies heavily upon its terms and effect, which renders the document 'integral' to the complaint." *Id.* (citation omitted). Given that Plaintiff refers to that report in her Complaint, *see, e.g.,* Doc. 1 ¶¶ 135-38, she does not oppose consideration of that investigation and report. *See* State of New York Office of the Attorney General Letitia James, *Report of Investigation into Allegations of Sexual Harassment by Governor Andrew M. Cuomo* 143-44, available at https://ag.ny.gov/sites/default/files/2021.08.03_nyag_-_investigative_report.pdf ("AG Report").

On August 10, 2021, Defendant Cuomo announced his resignation as Governor. *Id.* ¶ 140. In his announcement, Defendant Cuomo once again cast aspersions on Ms. Bennett by stating that "[t]he most serious allegations made against [him] had no credible factual basis in the [Attorney General Report]"; "this situation and moment are not about the facts . . . [they are] about politics"; and that he "truly believe[s] [the Attorney General's investigation] is politically motivated . . . unfair [and] untruthful . . . and . . . demonizes behavior [in a way] that is unsustainable for society." *Id.*

Defendant Cuomo, through his representative, continued to attack Ms. Bennett following his resignation. *Id.* ¶¶ 141-45. On August 20, 2021, Defendant Cuomo's personal attorney claimed in a press conference to have "new information" relating to Ms. Bennett's credibility. *Id.* ¶ 141. On or around October 20, 2021, Defendant Cuomo's personal attorney posted to Defendant Cuomo's campaign website a document that repeated untrue allegations from a 2017 lawsuit that Ms. Bennett had made a false complaint of sexual misconduct. *Id.* ¶ 142. On January 13, 2022, Defendant Cuomo's personal attorney held a press conference and reiterated the false allegations about Ms. Bennett from the 2017 lawsuit, stated repeatedly that Defendant Cuomo did not sexually harass Ms. Bennett, and implied that Ms. Bennett only participated in the Attorney General's investigation out of a desire for money. *Id.* ¶ 143.

## THE INSTANT MOTION

Defendant Cuomo moves to dismiss the retaliation claims against him, claiming that Plaintiff's transfer and resignation, and statements made after Plaintiff's resignation, could not be retaliatory as a matter of law. His arguments are meritless, and his motion must be denied.

## I.     STANDARD OF REVIEW

On a motion to dismiss, the trial court must "assess the legal feasibility of the complaint, not [] assay the weight of the evidence which might be offered in support thereof." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). "[A]ll factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Asking for plausible grounds does not impose a probability requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal[ity]." *Twombly*, 550 U.S. at 556.

## II.    SEXUAL HARASSMENT & RETALIATION UNDER § 1983, NYSHRL & NYCHRL

To establish liability on a § 1983 claim, a plaintiff must show the defendant acted "under the color of state law" and caused the plaintiff to be deprived of a federal right. *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004). Sexual harassment § 1983 claims borrow standards from Title VII, as amended, §§ 2000e *et seq.* ("Title VII"). *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 744 (2d Cir. 2003). "[R]etaliation claims alleging an adverse action because of a complaint of discrimination are actionable under § 1983." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 80 (2d Cir. 2015). Under Title VII, "[t]o establish a *prima facie* case

of retaliation, a plaintiff must show: '(1) that [he] participated in protected activity, (2) that [he] suffered an adverse employment action, and (3) that there was a causal connection between [his] engaging in the protected activity and the adverse employment action.'"  *James v. Countrywide Fin. Corp.*, 849 F. Supp. 2d 296, 310 (E.D.N.Y. 2013) (quoting *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010)).  For the reasons set forth below, Plaintiff has established a *prima facie* case of § 1983 retaliation.

The standard is more lenient under the NYCHRL: a plaintiff must merely "show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action."  *Mihalik v. Credit Agricole Cheuvreux N Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013) (citation omitted).  In general, "courts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing [its] provisions broadly in favor of discrimination plaintiffs."  *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 75 (2d Cir. 2015) (citation omitted).  Under the NYCHRL, "'no challenged conduct may be deemed nonretaliatory' unless 'a jury could not reasonably conclude . . . that such conduct was . . . reasonably likely to deter a person from engaging in protected activity.'"  *Mihalik*, 715 F.3d at 112 (quoting *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 71 (1st Dept. 2009)).

In 2019, former Governor Cuomo signed into law amendments to the NYSHRL that require courts to construe it, like the NYCHRL, "liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws including those laws with provisions worded comparably to the provisions of this article have been so construed."  N.Y. Exec. Law § 300 (NYSHRL and NYCHRL collectively referred to herein as "NY/NYC Laws").  The effect of the amendment "is to render the standard for claims [brought under the NYSHRL]

closer to the standard under the NYCHRL." *Weekes v. JetBlue Airways Corp.*, No. 21-cv-1965 (MKB), 2022 WL 4291371, at *7 (E.D.N.Y. Sept. 16, 2022) (quoting *Wellner v. Montefiore Med. Ctr.*, No. 17-cv-3479 (KPF), 2019 WL 4081898, at *5 n.4 (S.D.N.Y. Aug. 29, 2019)); *see also Matthew v. Texas Comptroller of Pub. Accts.,* No-21-cv-5337 (JPC), 2022 WL 4626511, at *10 (S.D.N.Y. September 30, 2022).

## ARGUMENT

### I.  Plaintiff Charlotte Bennett's Transfer and Ultimate Constructive Discharge After Complaints of Sexual Harassment Are Retaliatory

Plaintiff plausibly alleges that her transfer and ultimate constructive discharge was retaliatory. The compelled transfer of a victim of sexual harassment is akin to a constructive discharge where the victim has no choice but to leave the toxic environment. Here, Plaintiff has alleged that she transferred to escape Defendant Cuomo's persistent and increasingly frightening sexual advances. Doc. 1 ¶¶ 21-26, 30-31, 37, 54-55, 62-69, 76, 80-82. Following Plaintiff's complaints of sexual harassment, the only response was a hasty transfer to a "do nothing" position. *Id.* ¶¶ 81, 84. This new position was materially inferior: Plaintiff received little supervisor guidance (if any), significantly reduced job responsibilities which decreased markedly over time, and fewer opportunities for meaningful career development. *Id.* ¶¶ 86, 108-09, 110-14. Plaintiff's working conditions deteriorated further after Defendant Cuomo announced he was replacing her immediate supervisor, who then avoided work for a week, leaving Plaintiff without meaningful work. *Id.* ¶ 108. Plaintiff's new supervisor similarly gave Plaintiff very few assignments, and eventually Plaintiff was forced to resign after concluding that Defendant Cuomo's sexual harassment and her resulting transfer were damaging her health. *Id.* ¶ 114.

An employee is constructively discharged when the employer intentionally creates a work atmosphere so intolerable that the employee is forced to quit involuntarily. *Petrosino v. Bell Atl.*,

385 F.3d 210, 229 (2d Cir. 2004). The standard is whether "an objectively reasonable person in the plaintiff's position would find 'her work conditions so intolerable as to compel resignation.'" *Brown v. Montefiore Med. Ctr.*, No. 19-cv-11474 (ALC), 2021 WL 1163797, at \*5 (S.D.N.Y. Mar. 25, 2021) (quoting *McCalla v. City of N.Y.*, No. 15-cv-8002 (LAK) (AJP), 2017 WL 3601182, at \*68 (S.D.N.Y. Aug. 14, 2017)). "Whether a constructive discharge has occurred is a question of fact to be determined by the trier of fact." *Rosario v. Nat'l Hous. P'ship Prop. Mgmt., Inc.,* No. 96-cv-4633 (BSJ), 1998 WL 146207, at \*3 (S.D.N.Y. Mar. 26, 1998); *see also Green v. Town of East Haven*, 952 F.3d 394, 405 (2d Cir. 2020) (holding that if any relevant facts are in dispute or subject to competing inferences as to their effect, the determination of whether a reasonable employee would have felt compelled to resign is a question for the jury). Defendant Cuomo created conditions that were so intolerable that Plaintiff was forced transfer to escape from his escalating sexual harassment, resulting in her ultimate constructive termination.

A. ***Courts Regularly Recognize That a Voluntary Transfer Under Circumstances Like Plaintiff Alleged Is an Adverse Employment Action.***

Defendant Cuomo's assertion that "[i]t is well settled in this Circuit that lateral transfers— and particularly voluntary transfers" do not constitute adverse employment actions misstates the law. Doc. 38 at 14. Courts consistently find "voluntary transfers" to constitute adverse employment actions in the context of constructive discharge claims under Title VII, which marks the floor for Plaintiff's claims. *See United States v. N.Y.C. Dep't of Educ.*, No. 16-cv-4291 (LAK) (JCF), 2017 WL 435940, at \*7-8 (S.D.N.Y. Jan. 31, 2017), *report and recommendation adopted*, No. 16-cv-4291 (LAK), 2017 WL 1319695 (S.D.N.Y. Apr. 4, 2017) ("[A] voluntary transfer to a materially inferior position becomes actionable as a constructive involuntary transfer when an employer creates conditions so difficult or unpleasant that a reasonable person . . . would have been compelled to request and accept the transfer."); *see also Claes v. Boyce Thompson Inst. for*

*Plant Research*, 88 F. Supp. 3d 121, 126 (N.D.N.Y. 2015) (noting that while the Second Circuit had not yet applied constructive discharge to voluntary transfers, "various district courts in this circuit and several other circuit courts have persuasively explained the reasoning behind such application").

Plaintiff alleges facts sufficient to demonstrate that she only requested a transfer because Defendant Cuomo created conditions "so difficult or unpleasant that a reasonable person . . . would have been compelled to request and accept the transfer." *N.Y.C. Dep't of Educ.*, 2017 WL 435940, at *8.  Drawing all inferences in her favor, that is enough to demonstrate this transfer was involuntary, even under the higher Title VII standard requiring "adverse employment action."[6] Moreover, as Defendant Cuomo acknowledges, Doc. 38 at 12, a plaintiff need only demonstrate that the defendant took an action that would deter a reasonable employee from reporting the discriminatory behavior in order to plead a retaliation claim under the NYCHRL.  The same standard applies to NYSHRL retaliation claims.  *See Weekes*, 2022 WL 4291371, at *7; *Wellner*, 2019 WL 4081898, at *5 n.4.  Any reasonable person would be deterred from reporting harassment if, after reporting, the employer conducted no investigation, engaged in no remedial efforts, and instead transferred the person to a "do nothing" job.

> **B.      *Plaintiff Alleged a Connection Between Defendant Cuomo's Sexual Harassment and Her "Do Nothing" Job and Defendant Cuomo's Personal Involvement*.**

Defendant Cuomo argues that Plaintiff does not plead his "personal involvement" in her transfer or constructive discharge.  Doc. 38 at 21.  This is not true.  Plaintiff alleged that Governor

---

[6] Defendant's reliance, Doc. 38 at 14, on *Pacheo* is misguided.  There, the court concluded that "[a]ll of the evidence conclusively demonstrates that Plaintiff's transfer was voluntary and that he suffered no adverse consequences." *Pacheo v. New York Presbyterian Hosp.*, 593 F. Supp. 2d 599, 617 (S.D.N.Y. 2009) (Title VII standard). Here, by contrast, Plaintiff has alleged that she only transferred to escape Defendant Cuomo's escalating predatory sexual harassment and further that she suffered adverse consequences resulting from that transfer: it was a "do nothing" job with little work responsibilities which ultimately forced her to resign due to the job's contribution to her declining health.

Cuomo directly *caused* her transfer by subjecting her to increasing frightening sexual advances. *See* Doc. 1 ¶ 81. She also plead that he was told of the transfer and approved it. *Id.* ¶ 84. Plaintiff was Defendant Cuomo's Executive Assistant: he naturally was involved in approving her transfer to another role in the Executive Chamber,[7] as well as in the decision to decline to investigate her claims of sexual harassment. *Id.* ¶¶ 83-84, 103. Both he and the other Defendants – his top aides – attempted to completely ignore the serious sexual harassment Plaintiff reported, leaving her no choice but to ask for a transfer. Further, Plaintiff plead that after she began her new role, Defendant Cuomo (who had been notified, against Plaintiff's wishes, that she had reported his sexual harassment) announced that he would be replacing her supervisor. As a result, plaintiff was left without a supervisor for more than a week, and without meaningful work assignments. *Id.* ¶¶ 86, 108, 111, 113.

This level of involvement in Plaintiff's transfer is sufficient to demonstrate both causation and personal involvement. *See Vega*, 801 F.3d at 91 ("A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action."). In any event, whether the transfer was "voluntary" or not is irrelevant: whether the transfer and the resulting "do nothing" job was retaliatory ultimately is a question of fact for the jury; Plaintiff has plead adequate facts to withstand Defendant Cuomo's motion to dismiss. *See Mooney v. City of New York*, No. 18 Civ. 328 (DLC), 2018 WL 4356733, at *9 (S.D.N.Y. Sept. 12, 2018) (discussing, in the context of a retaliatory transfer, that the question of whether certain actions were retaliatory could not be resolved on a motion to dismiss).

---

[7] Defendant Cuomo objects to the allegation that he "approved Plaintiff's transfer" because that allegation is plead upon information and belief. However, facts which are peculiarly within the possession and control of defendant, or where the belief is based on factual information that makes the inference of culpability plausible, may be plead upon information and belief. *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010). It is eminently plausible that then-Governor Cuomo would have been involved in the decision to transfer his Executive Assistant from his staff.

## II.   **Defendant Cuomo's Post-Employment Retaliation Is Actionable**

Defendant Cuomo argues that statements he made to media about Plaintiff after her resignation cannot be retaliatory as a matter of law. Doc. 38 at 18. He is wrong.

The Supreme Court has made clear that "[t]he scope of the anti-retaliation provision [in Title VII] extends beyond workplace-related or employment-related retaliatory acts and harm." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. 53, 67 (2006). Plaintiff may recover for post-employment retaliation. *See Mira v. Kingston*, 218 F. Supp. 3d 229, 235 (S.D.N.Y. 2016) (citing *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997)); *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997). For example, "[a] negative reference or similar actions taken with respect to a new prospective employer can be considered an adverse action and therefore provide support for a retaliation claim." *Shakerdge v. Tradition Fin. Servs., Inc.*, No. 16-cv-01940 (VAB), 2017 WL 4273292, at *5 (D. Conn. Sept. 26, 2017); *see also Wanamaker*, 108 F.3d at 466 ("[P]laintiffs may be able to state a claim for retaliation, even though they are no longer employed by the defendant company, if, for example, the company 'blacklists' the former employee, wrongfully refuses to write a recommendation to prospective employers, or sullies the plaintiff's reputation."); *Silver v. Mohasco Corp.*, 602 F.2d 1083, 1090 (2d Cir. 1979) (explaining that post-employment blacklisting falls within the scope of retaliatory provisions of Title VII), *rev'd on other grounds*, 477 U.S. 807, 814 n.17 (1980).

The Complaint details statements by then-Governor Cuomo in Spring 2021 such as: "I never harassed anyone, I never abused anyone, I never assaulted anyone," and that he "didn't do anything wrong." Doc. 1 ¶ 131. These statements were followed by vitriolic attacks against Plaintiff by Defendant Cuomo's supporters on social media, attacks which impugned Plaintiff's integrity and diminished her ability to attain future job opportunities. *Id*. ¶ 132. During a press conference held while Defendant Cuomo was still Governor, his counsel claimed to be in

17

possession of new information which would cast doubt on Plaintiff's credibility, yet she refused to provide any detail. *Id*. ¶ 141. These comments and those that followed after Defendant Cuomo left office were intended to impugn Plaintiff's integrity and harm her ability to move forward professionally. *Id*. ¶¶ 144-45.

As a preliminary matter, Plaintiff complained of sexual harassment and Defendant Cuomo made the vast majority of his retaliatory statements while he was still Governor, *see id*. ¶¶ 127, 131, 132, 133, 140, 141, so that retaliatory conduct was clearly "under color of state law." *See Back*, 365 F.3d at 122.   Because all of Defendant Cuomo's subsequent retaliatory conduct (and that of his counsel) related to Plaintiff's employment and, necessarily, to Defendant Cuomo's employment by New York State, the retaliatory conduct occurring after his resignation is similarly actionable. *Cf. Emmons v. Broome Cnty.*, No. 3:16-cv-1114, 2018 WL 2364286, at *8 (N.D.N.Y. May 24, 2018) (noting that the plaintiff's former supervisor's public, post-employment dissemination of disparaging information about the plaintiff, relating to her employment, could be actionable).   Further, Defendant Cuomo's and his agent's statements, including stating publicly that unreleased information would illuminate the alleged falsity of Plaintiff's claims, threatened her future livelihood, and therefore are actionable. *See Wanamaker*, 108 F.3d at 466; *Shakerdge*, 2017 WL 4273292, at *5; *Silver*, 602 F.2d at 1090.

Defendant Cuomo's public personal attacks, plastered in the press and on social media, would surely deter any victim of harassment from coming forward.   These hostile and retaliatory comments are both actionable and relevant as they are illustrative of Cuomo's retaliatory intent.

### A.    *No Economic Relationship is Required to Protect Against Unlawful Retaliation.*

Defendant Cuomo argues that he cannot be held liable for retaliation because he had no employment relationship with Plaintiff at the time of his retaliatory statements.   This argument is contrary to law and must be rejected.

The Supreme Court and Second Circuit have explicitly recognized that "post-employment retaliation" – which necessarily involves the absence of an ongoing economic relationship – can be actionable. *See Mira*, 218 F. Supp. at 235 (citing *Robinson*, 519 U.S. at 346 ("[W]e hold that former employees are included within [Title VII's] coverage."); and *Wanamaker*, 108 F.3d at 466). Indeed, the plain text of the NY/NYC Laws and Supreme Court jurisprudence as to federal retaliation claims make clear that a plaintiff need not allege an economic relationship to state a claim for retaliation. The NYCHRL makes it unlawful for "*any person*," including *individuals* who are not employers, to "coerce, intimidate, threaten or interfere with" any person in the exercise of any right protected by the statute. N.Y. Admin. Code § 8-107(19) (emphasis added). Consistent with the broad purpose of the NY/NYC Laws,[8] a defendant need only engage in conduct that is "reasonably likely to deter a person from engaging in protected activity," regardless of any economic effect. *Id.* § 8-107(7). Under the NYCHRL, it is unlawful to retaliate "in any manner," and no "challenged conduct" may "be categorically rejected as nonactionable." *Williams*, 61 A.D.3d at 70-71; *see also* N.Y. Exec. Law § 300.[9] Federal law similarly prohibits any conduct that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 57; *see also de Souza v. Planned Parenthood Fed'n of*

---

[8] Both the NY/NYC Laws make it unlawful "for *any person* to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so." N.Y.C. Admin. Code § 8-107(7) (emphasis added); N.Y. Exec. Law § 296(6) ("It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."). A primary purpose of these anti-retaliation provisions is "maintaining unfettered access to statutory remedial mechanisms." *Liverpool v. Con-Way, Inc.*, No. 08-cv-4076 (JG) (JO), 2009 WL 1362965, at *11 (E.D.N.Y. May 15, 2009) (quoting *Robinson*, 519 U.S. at 346); *see also Matter of Electchester Hous. V. Project v. Rosa*, 225 A.D.2d 772, 773 (2d Dep't 1996) ("The viability of the [State Law] and, indeed, civil rights laws depends on the unfettered right of those who are colorably aggrieved to file and litigate complaints.")

[9] The fact that courts hold individuals liable who have "no control or authority over [a] plaintiff," further supports the argument that no economic relationship is necessary to state a claim for retaliation. *Dunson v. Tri-Maint. & Contractors, Inc.*, 171 F. Supp. 2d 103, 114-16 (E.D.N.Y. 2001); *see also Heskin v. Insite Advertising, Inc.*, No. 03-cv-2598 (GDB) (AJP), 2005 WL 407646, at *25 (S.D.N.Y. Feb. 22, 2005) (individual who harassed plaintiff and asked that she be fired could be liable even though he worked for a different company).

*Am., Inc.*, No. 21-cv-5553 (LGS), 2022 WL 2047580, at *4 (S.D.N.Y. June 7, 2022) (same standard applies to the NYSHRL).

Plaintiff has alleged sufficient facts to demonstrate that all of Defendant Cuomo's retaliatory conduct (and that of his agents) related to both her employment by New York State and to Defendant Cuomo's role as the former Governor of New York State. *See Schmitt v. Artforum Int'l Mag., Inc.*, 178 A.D.3d 578, 584 (1st Dept. 2019) ("To respect the legislative goal of shielding 'employees' from retaliatory or discriminatory harm and affording them a legal remedy in the event of 'employer' transgressions, the Second Circuit applied the terminology [related to 'employment'] liberally to past, present or prospective employers rather than requiring a parsimonious literalness.") (citation omitted). Thus, Defendant Cuomo's post-employment retaliatory actions are actionable, and Plaintiff has properly plead a claim of retaliation under § 1983, the NYSHRL, and the NYCHRL.

## B.     There Is No Exception to Retaliation Liability for "Defensive" Statements.

In a final effort to seek immunity for his retaliatory mistreatment of Plaintiff, Defendant Cuomo asserts that his statements were defensive statements that are not actionable. Since no such blanket immunity exists, his argument must be rejected.

Defendant Cuomo's retaliatory statements are not the type of reasonable defensive measures that courts have allowed in the context of defending oneself from litigation, and they plainly fall within the broad anti-retaliation scope of the NY/NYC Laws. Again, the expansive NYCHRL makes in unlawful to retaliate "*in any manner*," and no "challenged conduct" may "be categorically rejected as nonactionable." *Williams*, 61 A.D.3d at 70, 71. The NYSHRL and its

new broad remedial scope ought not be different.  N.Y. Exec. Law § 300.  Notably, neither statute contains an exception for supposedly "defensive" measures.[10]

Plaintiff has alleged that Defendant Cuomo engaged in a coordinated campaign to "publicly cast doubt on [her] allegations," Doc. 1 ¶ 131, directed certain individuals to monitor her social media, *id.* ¶ 133, denigrated the Attorney General's investigation – which found Plaintiff's allegations of sexual harassment credible – as "politically motivated," *id.* ¶ 140, and had his personal attorney post an untrue, inflammatory story on his website claiming that Plaintiff had previously made a false complaint of sexual misconduct, *id.* ¶ 142.  Taking these allegations as true, as the Court must, Plaintiff has alleged that Defendant Cuomo's actions are far from reasonable, and that they led to tangible harm to her reputation and future employment prospects. *See Wermann v. Excel Dentistry, P.C.*, No. 13-cv-7028 (DAB), 2014 WL 846723, at *4 (S.D.N.Y. Feb. 25, 2014) (finding that frivolous counterclaims that "could harm [plaintiff's] reputation and affect her prospective employment" constituted actionable retaliation); *see also Mendez v. Starwood Hotels & Resorts Worldwide, Inc.*, 746 F. Supp. 2d 575, 598 (S.D.N.Y. 2010) (finding that "secret surveillance by an employer well *might*" dissuade a person from engaging in protected activity) (emphasis in original).[11]

---

[10] Defendant Cuomo's statements are actionable as retaliation under § 1983 *and* the NY/NYC Laws. However, even if the Court finds that the statements are reasonable defensive measures in the context of § 1983 (which Plaintiff does not concede and believes such a finding is baseless), it should still find them actionable in the context of the NY/NYC Laws, which incorporate the minimal pleading standards discussed above. *See Wermann v. Excel Dentistry, P.C.*, No. 13-cv-7028 (DAB), 2014 WL 846723, at *4 (S.D.N.Y. Feb. 25, 2014) (noting that even though filing retaliatory counterclaims did not violate Title VII, it may violate the NY/NYC Laws).

[11] The cases Defendant Cuomo relies on are inapposite. *Melman v. Montefiore Med. Cent.*, 98 A.D.3d 107, 129 (1st Dept. 2012) contained absolutely no allegations of public statements about the plaintiff. *United States v. N.Y.C. Transit Authority.*, 97 F.3d 672, 677 (2d Cir. 1996) involved an employment policy about responding to discrimination claims.  In *Gaughan v. Rubenstein*, 261 F. Supp. 3d 390, 420 n.4 (S.D.N.Y. 2017), the court merely noted that filing of motions by a defendant in a case cannot be considered retaliation. *Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429 (S.D.N.Y. 2018) was a defamation claim against media company with the heightened liability standard of actual malice.  The statement at issue in *Hughes* did not name the plaintiff and did not "impugn [her] character." *Id.* at 449.

As Defendant Cuomo's own brief notes, there is an "important difference between defending oneself, on the one hand, and threatening, intimidating, or otherwise interfering with someone's right to pursue a discrimination claim on the other." *Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 449 (S.D.N.Y. 2018) (citation omitted).  His actions plainly fall into the latter category.  As plead in her Complaint, Defendant Cuomo's public statements cast aspersions against Plaintiff, were intended to harm her reputation, well-being, and career prospects, and were offensive retaliatory statements.

## III.   Qualified Immunity Does Not Shield Defendant Cuomo

In a last-ditch effort to protect himself from liability, Defendant Cuomo argues that he is entitled to qualified immunity.  Defendant Cuomo has the burden of demonstrating that the affirmative defense of qualified immunity protects him from answering for his unlawful acts. *Lore v. City of Syracuse*, 670 F.3d 127, 149 (2d Cir 2012).[12]  He has failed to do so.  The doctrine of qualified immunity shields government officials from civil liability *only* if the conduct complained of "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 162 (citation omitted).  It has long been obvious that government officials cannot discriminate, harass, or retaliate against female governmental employees, and that doing so constitutes discrimination on the basis of sex in violation of

---

[12] The Second Circuit has warned that "advancing qualified immunity as grounds for a motion to dismiss is almost always a procedural mismatch." *Chamberlain Estate of Chamberlain v. City of White Plains*, 960 F.3d 100, 110-11 (2d Cir. 2020) (noting that "as a general rule, the defense of qualified immunity cannot support the grant of a Rule 12(b)(6) motion") (citation omitted).  Such a defense "faces a formidable hurdle . . . and is usually not successful." *Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 191-92 (2d Cir. 2006) (citation omitted).  Defendant Cuomo does not clear this high bar.

A defendant raising the defense at the motion to dismiss stage rather than the summary judgment stage "must accept the more stringent  standard applicable to this procedural route": the motion may be granted only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief" and only if the facts supporting the defense "appear on the face of the complaint." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).  Plaintiffs are "entitled to all reasonable inferences from the facts alleged, not only those that support [their]  claim, but also those that defeat the immunity defense." *Id.* at 436.

constitutional equal protection law. *Annis v. Cnty. of Westchetser*, 36 F.3d 251, 254 (2d Cir. 1994). Surely, Defendant Cuomo, an attorney, cannot claim he did not know about the sexual harassment and retaliation laws that he himself took credit for improving. Doc. 1 ¶ 32. Defendant Cuomo's attempt to seek protection under this defense is unavailing on Ms. Bennett's § 1983 claims, and given his role in signing into law the 2019 NYSHRL amendments, it is simply not a defense to any claims arising under the NY/NYC Laws.

## IV.    **The Motion to Strike Is Without Merit and Should Be Denied**

In the alternative, Defendant Cuomo seeks to strike allegations of the Complaint that demonstrate his retaliatory campaign to smear Plaintiff and label her a liar motivated by money. Doc. 1 ¶¶ 127-28, 131, 140-45. He argues that Plaintiff's allegations about his statements made after her resignation are both immaterial and scandalous. The Court must reject this argument. Motions to strike are disfavored, particularly here, where the allegations are relevant to Plaintiff's retaliation claims.

Under Rule 12(f) of the Federal Rules of Civil Procedure, a "court may strike from a pleading . . . any . . . immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are "viewed with disfavor by the federal courts and are infrequently granted." *Gierlinger v. Town of Brant*, No. 13-cv-00370 (AM), 2015 WL 3441125, at *1 (W.D.N.Y. May 28, 2015) (citation omitted). Courts only grant motions to strike in extreme circumstances not present here. *See, e.g.*, *Anderson v. Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392, 417 (S.D.N.Y. 2012) (striking assertions unrelated to claim regarding a "weekend rendezvous between attorneys"); *Global View Ltd. Venture Capital v. Great Cent. Basin Exploration, LLC*, 288 F. Supp. 2d 473, 481 (S.D.N.Y. 2003) (striking that Defendants were "unprincipled con artists"); *Parrish v. Sollecito*, No. 01-cv-5420 (VM), 2002 WL 1072227, at *1-2 (S.D.N.Y. May 28, 2002) (striking

allegation regarding defendant's mistress that had nothing to do with hostile work environment claims).[13]

Defendant Cuomo argues that Plaintiff's allegations are immaterial because they cannot serve as the basis for her retaliation claims. But post-employment instances of retaliation can form the basis of a retaliation claim. Moreover, courts routinely deny Rule 12(f) motions brought on the ground that the matter is impertinent and immaterial, as Defendant Cuomo argued here, unless it can be shown that no evidence in support of the allegation would be admissible. *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) (citing *Gleason v. Chain Service Restaurant*, 300 F. Supp. 1241 (S.D.N.Y. 1969), *aff'd*, 422 F.2d 342 (2d Cir. 1970)). At a minimum, Plaintiff's allegations about Defendant Cuomo's conduct "provide a better understanding" of her claims "by providing background facts[,] and thus are proper." *Gierlinger*, 2015 WL 3441125, at *1 (citation omitted).

Defendant Cuomo's arguments that Plaintiff's allegations are scandalous are similarly unavailing. "Scandalous generally refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." *Anderson*, 850 F. Supp. 2d at 416 (citation omitted). Defendant Cuomo fails to identify anything that is purportedly scandalous in any paragraph of the Complaint, and merely makes broad conclusory assertions of impropriety. For example, he fails to explain why the fact that he was consulting his journalist brother is in any way scandalous, and why Plaintiff's allegation that Defendant Cuomo called *her* a liar should be stricken. Rather, the paragraphs Defendant Cuomo

---

[13] Defendant Cuomo's reliance on *Williams v. Warden for Nevada, Women's Corr. Facility*, 489 F. Supp. 2d 1171, 1176 (D. Nev. 2007), an out-of-Circuit and irrelevant case, is misplaced. The *Williams* court struck assertions that impugned the competence of Petitioner's counsel including: "[t]hat she now seeks, in bad faith, to undo her own representations would be troubling enough; that she insinuates that the mistake was fault of the court, and the court should have seen the problem in 2003, is the height of disrespect and arrogance."

seeks to strike are admissible as indicative of his retaliatory intent and the impact his retaliation had on Plaintiff. *See, e.g.*, Doc. 1 ¶ 127 (alleging that Defendant Cuomo "falsely portrayed Plaintiff as a liar" causing Plaintiff "emotional distress and reputational harm"); ¶ 133 (alleging that Defendant Cuomo directed individuals to monitor Plaintiff's social media); ¶ 142 (alleging that Defendant Cuomo's attorney spread false information about Plaintiff). These comments sought to cast aspersions on Plaintiff, and consequently the inferences drawn from their quoted statements are appropriate in her Complaint.

## CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court deny Defendant Cuomo's motion.

Dated: December 20, 2022                Respectfully submitted,

**EISENBERG & SCHNELL LLP**            **KATZ BANKS KUMIN LLP**

*/s/ Herbert Eisenberg*                */s/ Debra S. Katz*
Herbert Eisenberg                      Debra S. Katz
Laura S. Schnell                       Rachel E. Green
                                       Kayla Morin
233 Broadway, Suite 2704               11 Dupont Circle, NW, Suite 600
New York, New York 10279               Washington, D.C. 20036
Ph:    (212) 966-8900                  Ph:    (202) 299-1140
Email: lschnell@eisenbergschnell.com   Email: katz@katzbanks.com
       heisenberg@eisenbergschnell.com        green@katzbanks.com
                                              morin@katzbanks.com

*Attorneys for Plaintiff Charlotte Bennett*   *Attorneys for Plaintiff Charlotte Bennett*

cc:    All Counsel of Record (via ECF)