**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____
_____

|  |  |  |
|---|---|---|
| CHARLOTTE BENNETT, | ) | 1:22-cv-07846 (VSB) (KHP) |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| ANDREW M. CUOMO, MELISSA | ) |  |
| DEROSA, JILL DESROSIERS, and | ) |  |
| JUDITH MOGUL, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

_____

---

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT MELISSA DEROSA'S MOTION TO DISMISS

---

Debra S. Katz
Rachel E. Green
Kayla Morin
Katz Banks Kumin LLP
11 Dupont Circle, NW, Suite 600
Washington, D.C. 20036
Ph:    (202) 299-1140
Email:  katz@katzbanks.com
            green@katzbanks.com
            morin@katzbanks.com

Herbert Eisenberg
Laura S. Schnell
Eisenberg & Schnell LLP
233 Broadway, Suite 2704
New York, New York 10279
Ph:    (212) 966-8900
Email:  lschnell@eisenbergschnell.com
            heisenberg@eisenbergschnell.com

*Attorneys for Plaintiff Charlotte Bennett*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................. 1

RELEVANT FACTUAL BACKGROUND.................................................. 3

I.   DEFENDANT DeROSA'S INVOLVEMENT IN HARASSMENT OF PLAINTIFF........ 3

II.  DEFENDANT DeROSA'S FAILURE TO REFER PLAINTIFF'S REPORT TO GOER
     AND PARTICIPATION IN ADJUSTING PROTOCOLS TO PROTECT DEFENDANT
     CUOMO ............................................................................................ 7

THE INSTANT MOTION........................................................................ 9

I.   STANDARD OF REVIEW................................................................ 9

II.  ARGUMENT .............................................................................. 10

   A.  Plaintiff Plausibly Alleges That Defendant DeRosa Aided and Abetted Sexual
       Harassment and Gender Discrimination ....................................... 10

     i.   Plaintiff Alleged Defendant DeRosa Held a Position of Authority and Failed to
          Investigate Her Complaint of Discrimination and Harassment............... 11

     ii.  Plaintiff Alleged Defendant DeRosa's Actions and Inactions Demonstrate Actual
          Participation in Unlawful Conduct................................................ 15

   B.  Plaintiff Plausibly Alleges That Defendant DeRosa Discriminated Against Her on the
       Basis of Gender.................................................................... 19

     i.   The Court Must Consider the Entire Universe of Plaintiff's Allegations as to
          Defendant DeRosa in Determining Whether She Discriminated Against Plaintiff. . 19

     ii.  Plaintiff Has Adequately Alleged Defendant DeRosa Treated Her Less Well Because
          of Her Gender.................................................................... 20

CONCLUSION.................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ananiadis v. Mediterranean Gyros Prods., Inc.*, 54 N.Y.S.3d 155 (N.Y. App. Div. 2017).........12

*Anderson v. Davis, Polk & Wardell, LLP*, 850 F. Supp. 2d 392 (S.D.N.Y. 2012)......................23

*Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010) ...........................................................9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .........................................................................................9

*Baez v. Anne Fontaine USA, Inc.* No. 14-cv-6621 (KBF),
    2017 WL 57858 (S.D.N.Y. Jan. 5, 2017) ....................................................................13, 15, 17

*Bascomb v. Smith Barney Inc.*, No. 96 Civ. 8747 (LAP),
    1999 WL 20853 (S.D.N.Y. Jan. 15, 1999) .......................................................................15, 16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..........................................................................9

*Bennett v. Progressive Corp.*, 225 F. Supp. 2d 190 (N.D.N.Y. 2002)...................................15, 17

*Brown v. Coach Stores, Inc.*, 163 F.3d 706 (2d Cir. 1998)............................................................9

*Carter v. Verizon*, No. 13 Civ. 7579 (KPF), 2015 WL 247344 (S.D.N.Y. Jan. 20, 2015)...........21

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) .......................................................2

*Chauca v. Abraham*, 841 F.3d 86 (2d Cir.), *as amended* (Nov. 8, 2016) ...............................10, 11

*Cid v. ASA Inst. of Bus. & Computer Tech., Inc.*,
    No. 12-cv-2947 (DLI) (VMS), 2013 WL 1193056 (E.D.N.Y. Mar. 22, 2013)......................15

*Citizens United v. Schneiderman*, 882 F.3d 374 (2d Cir. 2018) ....................................................9

*Delisi v. Nat'l Ass'n of Pro. Women, Inc.*, 48 F. Supp. 3d 492 (E.D.N.Y. 2014)...................12, 13

*Deravin v. Kerik*, 335 F.3d 195 (2d Cir. 2003)............................................................................11

*Doe v. Columbia Univ.*, 831 F.3d 46 (2d Cir. 2016)......................................................................9

*Edelman v. NYU Langone Health Sys.*, No. 21 Civ. 502 (LGS),
    2022 WL 4537972 (S.D.N.Y. Sept. 28, 2022).......................................................................20

*Feingold v. New York*, 366 F.3d 138 (2d Cir. 2004).....................................................................11

*Fried v. LVI Servs., Inc.*, No. 10 Civ. 9308 (JSR),
2011 WL 2119748 (S.D.N.Y. May 23, 2011) ........................................................ 17

*Friederick v. Passfeed, Inc.*, No. 21-cv-2066 (RA),
2022 WL 992798 (S.D.N.Y. Mar. 31, 2022) ........................................................ 16

*Garrigan v. Ruby Tuesday, Inc.*, No. 14 Civ. 155 (LGS),
2014 WL 2134613 (S.D.N.Y. May 22, 2014) ...................................................... 21

*Gittens v. Winthrop Hospitalist Assocs., P.C.*,
No. 19-cv-5070 (LDH) (LB), 2022 WL 504490 (E.D.N.Y. Feb. 18, 2022) ........... 16

*Grant v. New York Times Co.*, No. 16-cv-03175 (PKC),
2017 WL 4119279 (S.D.N.Y. Sept. 14, 2017) .................................................... 23

*Griffin v. Sirva, Inc.*, 29 N.Y.3d 174 (2017) ......................................................... 10

*Harrison v. SUNY Downstate Med. Ctr.*, No. 16-cv-1101 (RRM) (CLP),
2017 WL 4326507 (E.D.N.Y. Sept. 25, 2017) .................................................... 23

*Hernandez v. Kaisman*, 957 N.Y.S.2d 53 (N.Y. App. Div. 2012) ........................... 20

*Heron v. Medrite Testing, LLC*, No. 21 Civ. 9471 (CM),
2022 WL 1214179 (S.D.N.Y. Apr. 25, 2022) .................................................... 17

*Hicks v. IMB*, 44 F. Supp. 2d 593 (S.D.N.Y. 1999) ................................... 15, 16, 18

*Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC*,
470 F. Supp. 2d 345 (S.D.N.Y. 2007) ............................................................... 16

*Joyce v. Remark Holdings, Inc.*, No. 19-cv-6244 (DLC),
2022 WL 179839 (S.D.N.Y. Jan. 20, 2022) ...................................................... 23

*Klymn v. Monroe Cnty. Supreme Ct.*, No. 21-cv-6488 (JLS),
2022 WL 16950048 (W.D.N.Y. Nov. 15, 2022) ................................................. 18

*Lauture v. Int'l Bus. Machines Corp.*, 216 F.3d 258 (2d Cir. 2000) ........................ 15

*Lenart v. Coach Inc.*, 131 F. Supp. 3d 61 (S.D.N.Y. 2015) .............................. 20, 21

*Lewis v. Triborough Bridge & Tunnel Auth.*, 77 F. Supp. 2d 376 (S.D.N.Y. 1999) ........ 11, 12, 17

*Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268 (2d Cir. 2009) ........................ 19

*Manswell v. Heavenly Miracle Acad. Servs., Inc.*,
  No. 14-cv-7114 (MKB) (SMG), 2017 WL 9487194 (E.D.N.Y. Aug. 23, 2017),
  *report and recommendation adopted*, No. 14-cv-7114 (MKB) (SMG),
  2017 WL 4075180 (E.D.N.Y. Sept. 14, 2017) ................................................................. 18, 19

*McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51 (S.D.N.Y. 2020) ......................... 11, 14

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102 (2d Cir. 2013) ........... 19, 20, 21

*Moazzaz v. MetLife, Inc.*, No. 19-cv-10531 (JPO),
  2021 WL 827648 (S.D.N.Y. Mar. 4, 2021) .............................................................................. 24

*Mondelo v. Quinn, Emanuel, Urquhart & Sullivan, LLP*,
  No. 21 Civ. 02512 (CM), 2022 WL 524551 (S.D.N.Y. Feb. 22, 2022) ............................. 13, 14

*Olsen v. Suffolk Cnty.*, No. 15-cv-4064 (JS) (AYS),
  2016 WL 5395846 (E.D.N.Y. Sept. 27, 2016) ........................................................................ 14

*Pachura v. Austin*, No. 621-cv-0316 (LEK/ATB),
  2022 WL 1909546 (N.D.N.Y. June 3, 2022) ........................................................................... 14

*Resetar v. Phillips Feed Serv., Inc.*, No. CV 16-3428,
  2017 WL 1092345 (E.D. Pa. Mar. 23, 2017) .......................................................................... 18

*Rodriguez v. Metro Elec. Contractors, Inc.*,
  No. 18-cv-05140 (KAM), 2021 WL 848839 (E.D.N.Y. Mar. 5, 2021) ................................... 11

*Schaper v. Bronx Lebanon Hosp. Ctr.*, 408 F. Supp. 3d 379 (S.D.N.Y. 2019) ............... 11, 12, 15

*Simon v. City of New York*, No. 17 Civ. 9575 (DAB),
  2019 WL 916767 (S.D.N.Y. Feb. 14, 2019) ........................................................................... 23

*Sletten v. LiquidHub, Inc.*, No. 13 Civ. 1146 (NRB),
  2014 WL 3388866 (S.D.N.Y. July 11, 2014) .......................................................................... 22

*Sotomayor v. City of New York*, 862 F. Supp. 2d 226 (E.D.N.Y. 2012),
  *aff'd*, 713 F.3d 163 (2d Cir. 2013) ........................................................................................ 19

*Stinnett v. Delta Air Lines*, 803 Fed. App'x 505 (2d Cir. 2020) ........................................... 23

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ................................................................. 9

*Vaigasi v. Solow Mgmt. Corp.*, No. 11 Civ. 5088 (RMB) (HBP),
  2014 WL 1259616 (S.D.N.Y. Mar. 24, 2014) ........................................................................ 23

*Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72 (2d Cir. 2015) ..................... 9, 19, 20, 24

iv

*Warren v. Ultimate Fitness Grp., LLC*, No. 19-cv-10315 (KMK),
   2021 WL 4239246 (S.D.N.Y. Sept. 17, 2021) .......................................................... 13

*Weekes v. JetBlue Airways Corp.*, No. 21-cv-1965 (MKB),
   2022 WL 4291371 (E.D.N.Y. Sept. 16, 2022) ........................................................ 11


**Statutes**

New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ............................. 1, 11

New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ............................................ 1


**Other Authorities**

Rep. of N.Y. St. Temp. Comm'n Against Discrimination,
   1945 N.Y. Legis. Doc. No. 6 ................................................................................... 10

State of New York Office of the Attorney General Letitia James,
   *Report of Investigation into Allegations of Sexual Harassment*
   *by Governor Andrew M. Cuomo*, available at
   https://ag.ny.gov/sites/default/files/2021.08.03_nyag_-_investigative_report.pdf............passim

State Assemb. A08421 (N.Y. 2019), available at
   https://nyassembly.gov/leg/?default_fld=&leg_video=&bn=A08421&term=2019&Summary=
   Y&Actions=Y&Memo=Y&Chamber%26nbspVideo%2FTranscript=Y ................................. 11

In four separately filed motions, all Defendants have moved to dismiss most counts in Plaintiff Charlotte Bennett's ("Plaintiff") Complaint.[1]  Doc. 28, 33, 34, 38.  Defendant Melissa DeRosa attempts to create higher standards for aiding and abetting liability under the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL") and New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL") and for gender discrimination liability under the NYCHRL in an ultimately unavailing effort to seek dismissal of the claims against her.  Her efforts to concoct additional legal hurdles must be rejected, and for the reasons set forth below, Plaintiff respectfully requests that this Court deny Defendant Melissa DeRosa's motion to dismiss.[2]

## PRELIMINARY STATEMENT

Defendant Melissa DeRosa ("Defendant DeRosa"), one of former Governor Andrew Cuomo's highest-ranking aides, used her seniority and authority to contribute to an office environment where Charlotte Bennett was sexualized and forced to perform demeaning and humiliating tasks to please former Governor Cuomo.  Defendant DeRosa witnessed former Governor Cuomo harass Ms. Bennett, acknowledged verbally that his sexist actions were "hazing," and, despite her position of authority, did nothing to protect Ms. Bennett in the moment or to prevent her from being alone with him in the future.  Indeed, when Ms. Bennett's report of former Governor Cuomo's sexual harassment of Ms. Bennett was conveyed to Defendant DeRosa, instead of investigating her allegations or reporting them to the Governor's Office of Employee Relations ("GOER") as she was required by Executive Chamber policy and

---

[1] Plaintiff addresses only those arguments raised in Defendant Melissa DeRosa's motion to dismiss, Doc. 28, in this opposition.

[2] Plaintiff also incorporates by reference the arguments set forth in her oppositions to Defendant Andrew Cuomo's, Defendant Judith Mogul's, and Defendant Jill DesRosiers' motions to dismiss.

1

by law, Defendant DeRosa changed staffing protocols to insulate the former Governor from contact with female staffers. By failing to report former Governor Cuomo's sexual harassment to GOER, Defendant DeRosa ensured that he would face no consequences for his unlawful treatment of Ms. Bennett, including his maintenance of a sexually hostile work environment, and left Ms. Bennett to fend for herself as she navigated a transfer to a lesser position in the aftermath of being sexually harassed by the then-Governor of New York State. There can be almost no clearer form of aiding and abetting sexual harassment and discrimination – protecting a powerful sexual harasser at the expense of his victims.[3]

The NYSHRL and NYCHRL (collectively, "NY/NYC Laws") provide broad protections for employees seeking to hold powerful people like Defendant DeRosa accountable for aiding and abetting others' violations of those Laws. These Laws were designed to protect employees,

---

[3] The New York Attorney General's investigation into Defendant Cuomo's alleged sexual harassment examined Defendant DeRosa's involvement in surveilling and retaliating against several others who came forward alleging Defendant Cuomo's sexual harassment of them, including Defendant DeRosa's efforts to harm and discredit Lindsey Boylan. The Report concluded that Defendant DeRosa was personally involved in retaliating against Ms. Boylan:

> The timing and testimony ties the response clearly to the sexual harassment tweet—in other words, had the sexual harassment tweet not occurred, the Executive Chamber would not have engaged in its retaliatory activity. Ms. DeRosa, the person who decided to release the Confidential Files, testified that while there was discussion about whether to release the documents before December 13, 2020, she decided not to release them previously. But as soon as she saw the December 13 sexual harassment tweet, she had the documents sent to reporters.

State of New York Office of the Attorney General Letitia James, *Report of Investigation into Allegations of Sexual Harassment by Governor Andrew M. Cuomo* at 158, available at https://ag ny.gov/sites/default/files/2021.08.03_nyag_-_investigative_report.pdf ("AG Report") (citing to DeRosa Transcript, at 522:16–542:17, available at https://ag ny.gov/CuomoIndependentInvestigation).

Defendants cite to the materials collected during the New York Attorney General's investigation into Defendant Cuomo's alleged sexual harassment. Doc. 33 at 23 n.7; Doc. 34 at 16, 23; Doc. 38 at 1. For the purposes of a motion to dismiss, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citations omitted). When a document is not incorporated by reference, the Court may "consider it where the complaint relies heavily upon its terms and effect, which renders the document 'integral' to the complaint." *Id.* (citation omitted). Given that Plaintiff refers to the AG Report in her Complaint, *see, e.g.*, Doc. 1 ¶¶ 135-38, she does not oppose consideration of that investigation and report.

like Ms. Bennett, from individuals like Defendant DeRosa who hold high-ranking positions with

nearly unparalleled access to harassers in positions of power, and who through their actions and

intentional inactions aid and abet sexual harassment.

The New York Attorney General's investigation into former Governor Cuomo's alleged

sexual harassment expressly concluded that:

> [A]ll of these aspects of the Executive Chamber's culture—e.g., the use of fear,
> intimidation and retribution, the acceptance of everyday flirtation and gender-based
> comments by the Governor as just "old fashioned" . . . contributed to creating an
> environment where the Governor's sexually harassing conduct was allowed to
> flourish and persist.  It also interfered with the Executive Chamber's ability—and
> responsibility—to respond to allegations of sexual harassment in a proper way by
> taking them seriously, reporting them, and having GOER investigate them.

See State of New York Office of the Attorney General Letitia James, *Report of Investigation into*

*Allegations of Sexual Harassment by Governor Andrew M. Cuomo* ("AG Report") at 164,

available at https://ag.ny.gov/sites/default/files/2021.08.03_nyag_-_investigative_report.pdf.[4]

Because Ms. Bennett has properly plead allegations in support of her claims, Defendant

DeRosa's motion to dismiss must be denied.

## RELEVANT FACTUAL BACKGROUND

## I.   DEFENDANT DeROSA'S INVOLVEMENT IN HARASSMENT OF PLAINTIFF

Defendant DeRosa served as the top-ranking aide, Secretary to the Governor, to

Defendant Andrew Cuomo[5] ("Defendant Cuomo") from around April 2017 until her resignation

---

[4] *See also* AG Report at 152:

> [T]he purported determination by . . . Ms. DeRosa . . . that the comments reported by Ms. Bennett
> did not constitute sexual harassment, or were not even of a 'sexually harassing nature' under the
> policies, was wrong. . . . [I]t is not a fair reading of the Executive Chamber policy that counsel or
> any supervisor to whom allegations are reported should serve a screening role in the way that . . .
> Ms. DeRosa . . . did. The Executive Order and the policy make it mandatory for GOER to investigate
> all allegations of a sexually harassing nature.

[5] Plaintiff incorporates by reference all allegations against all Defendants, including Defendant Cuomo, in
her Complaint (Doc. 1), to the extent those allegations apply to this Opposition to Defendant DeRosa's motion to
dismiss.

in August 2021.  Doc. 1 ¶ 14.  In that role, she worked on the 39th floor of the Executive

Chamber's New York City office, where Defendant Cuomo's office was located.  *Id.* ¶ 16.

  Plaintiff started working for the State of New York in January 2019 as a Briefer.  *Id.* ¶ 15.

At that time, she was 23 years old.  *Id.*  It was well-known that Defendant Cuomo preferred to

work with women who were pretty and dressed in a stereotypically feminine and sexy manner,

and female employees were pressured to conform to meet this preference.  *Id.*  ¶ 16.  Plaintiff

observed Defendant DeRosa, Defendant Jill DesRosiers ("Defendant DesRosiers"), and other

female staffers who worked on the 39th floor wearing dresses and high heels when Defendant

Cuomo was in the office.  *Id.*  When Plaintiff was a Briefer, she worked on the 38th floor, where

female staffers typically wore business casual attire, and she usually wore business attire pants

(not dresses).  *Id.*  But when Defendant Cuomo hired Plaintiff as his Executive Assistant later in

2019 and she relocated to the 39th floor, Plaintiff felt compelled to wear dresses or other

traditionally feminine attire, including high-heeled shoes, when Defendant Cuomo was in the

office.  Defendant DeRosa and others set the tone where women were pressured to wear

traditional feminine attire when near Defendant Cuomo.  *Id.* ¶¶ 21, 185, 220.

  Over the course of Plaintiff's employment as Executive Assistant for Defendant Cuomo,

he made numerous sexually harassing and gender-based comments about her body, clothing,

appearance, and femininity.  *See, e.g.*, *id.* ¶¶ 39-41, 69, 76, 79.  Defendant Cuomo thus made it

clear that he expected his female employees to dress femininely, and he made it painfully clear

that he paid attention to Plaintiff's appearance and was displeased when she did not dress

femininely.  *Id.*  He also repeatedly asked her questions about her sex life, romantic interests, and

history of sexual assault.  *Id.* ¶¶ 23, 31, 48, 53, 65-68.  This made Plaintiff feel extremely

uncomfortable, distressed, and demeaned.  *Id.*

4

During Plaintiff's first days as Defendant Cuomo's Executive Assistant, he instructed Plaintiff to memorize the lyrics to "Danny Boy." *Id.* ¶ 24. Several times that day, he leaned out his office door and asked Plaintiff to recite the lyrics. *Id.* Later that day, Defendant Cuomo, standing with Stephanie Benton (the Director of the Governor's Offices) and Defendant DeRosa in Ms. Benton's office, demanded Plaintiff sing "Danny Boy" in front of all three of them. *Id.* ¶ 25. Plaintiff found this humiliating and recited the lyrics in a speaking voice, but he interrupted her and insisted she sing. Defendant DeRosa interjected, "This is hazing." *Id.* Defendant Cuomo began singing and instructed Plaintiff to join in, and she felt she had no choice but to do so. After about 30 seconds, Plaintiff stopped singing and left the office, humiliated. *Id.* Defendant Cuomo never forced other male Executive Chamber employees or the outgoing Executive Assistant (also male) to memorize and sing the lyrics to "Danny Boy" or any other song during their employment. *Id.* ¶ 26. Defendant DeRosa did not protect Plaintiff from Defendant Cuomo's sexist hazing.

On May 15, 2020, Plaintiff had a conversation alone with Defendant Cuomo in his office. *Id.* ¶ 52. Defendant Cuomo made Plaintiff extremely uncomfortable when he asked Plaintiff who she was "hitting on," who was hitting on her, and whether she was interested in any male staffers. *Id.* ¶ 53. When Plaintiff attempted to change the subject and asked how Defendant Cuomo was coping with the pandemic, he told Plaintiff that he wanted a girlfriend in Albany and that he wanted to ride into the mountains with a beautiful woman on his motorcycle. *Id.* ¶ 56.

The harassment reached a tipping point on June 5, 2020, when his invasive questions turned into what she reasonably understood to be a sexual advance. *Id.* ¶ 58. Defendant Cuomo told Plaintiff he was "lonely" and that he wanted a girlfriend, and asked Plaintiff what her longest relationship had been and whether she had been monogamous. *Id.* ¶¶ 63-66. He also

asked, among other things, whether she enjoyed herself during sex, whether she slept with older men, and whether age mattered in a relationship. *Id.* ¶¶ 67-68. Defendant Cuomo said that he did not think age mattered and would be willing to date someone very young – as long as she was over the age of 21 years old. *Id.* ¶ 68. Plaintiff was 25 years old at the time. *Id.* ¶ 2.

The morning after Defendant Cuomo told Plaintiff he would be willing to date someone over the age of 21 years old, Plaintiff was instructed to perform a task at the Capitol. *Id.* ¶ 73. She was directed to come to Defendant Cuomo's office suite, where he was working. *Id.* ¶ 74. Ms. Benton and Defendant DeRosa met her there and instructed her to stay until he finished working. The two women then left, leaving Plaintiff alone with him. *Id.* Defendant DeRosa did so even though she was acutely aware of his prior sexist hazing of Plaintiff. *Id.* ¶¶ 24-26.

It was clear to Plaintiff that she was there because Defendant Cuomo wanted to be alone with her, and she started to panic. *Id.* ¶ 75. Defendant Cuomo called her in to help with his iPhone twice, but otherwise did not assign her any work. *Id.* When he finally called her in a third time and told her he was ready to leave, he asked Plaintiff if she had found him a girlfriend and told her she looked like Daisy Duke, a television character well-known as a sex symbol. *Id.* ¶ 76. She understood these comments to be sexual advances. *Id.*

Following this conversation, Plaintiff realized that Defendant Cuomo or one of his aides, like Defendant DeRosa, could summon her to be alone with him at his office at any time of the day or night, putting her in even more uncomfortable situations. Plaintiff feared that Defendant Cuomo would continue to escalate his advances toward her. *Id.* ¶ 77. As a result, Plaintiff made the painful decision that she could no longer work as his Executive Assistant. *Id.*

## II.  **DEFENDANT DeROSA'S FAILURE TO REFER PLAINTIFF'S REPORT TO GOER AND PARTICIPATION IN ADJUSTING PROTOCOLS TO PROTECT DEFENDANT CUOMO**

On June 10, 2020, Plaintiff reported Defendant Cuomo's sexual harassment to Defendant DesRosiers. *Id.* ¶ 81. Plaintiff told Defendant DesRosiers that Defendant Cuomo had "crossed a boundary" and had told Plaintiff that he was lonely and wanted a girlfriend and asked repeated questions about her sex life, and that she was no longer comfortable serving as his Executive Assistant. *Id.* Defendant DesRosiers did not ask any follow up questions about Defendant Cuomo's conduct. *Id.* ¶ 82. She relayed Plaintiff's report of sexual harassment to Defendant DeRosa and Defendant Judith Mogul ("Defendant Mogul") on or around that same day. *Id.* ¶ 83.

Defendant DeRosa knew and understood the definition of sexual harassment: she was a major proponent inside the Executive Chamber of amending the NYSHRL to eliminate the "severe or pervasive" requirement. *Id.* ¶ 98. Furthermore, Defendant DeRosa knew that it was GOER's responsibility to conduct investigations into allegations of sexual harassment.[6] Defendant DeRosa was legally required to report the conduct to GOER for investigation.

But she did not. Instead, she chose to confront Defendant Cuomo himself about Plaintiff's allegations (despite Plaintiff's stating that she did not want Defendant Cuomo to learn of her report). *Id.* ¶ 85. According to Defendant DeRosa's sworn testimony given in connection with the Attorney General's investigation, she said to Defendant Cuomo: "I can't believe you put yourself in a situation where you would be having any version of these conversations."[7]

---

[6] Plaintiff's Complaint reproduces the relevant portions of the Executive Department's Equal Opportunity Employee Handbook ("the Handbook"). *See id.* ¶ 101.

[7] AG Report at 62 (citing to DeRosa transcript, at 383:20-25).

Rather than taking appropriate corrective action, Defendants DeRosa and Mogul changed Executive Chamber protocols and staffing "really more for the Governor's protection,"[8] presumably to protect him from sexually harassing female employees since he demonstrated that he was incapable of restraining himself.   One protocol change instructed staff to leave materials for Defendant Cuomo at the Executive Mansion trooper station, rather than inside the mansion where they might encounter him.   Another change barred female staffers from staffing Defendant Cuomo by themselves, to avoid their being alone with him where he made sexualized and other inappropriate comments to women.   Doc. 1 ¶ 107.   Defendant DeRosa thereby actively insulated Defendant Cuomo from potential additional harassment claims by cutting off female employees' access to him.   She did nothing to address the sexually hostile work environment he had created.

The AG Report described at length Defendant DeRosa's involvement in failing to properly respond to later allegations of harassment against Defendant Cuomo, including failing to refer allegations of his sexual harassment to GOER while simultaneously pressuring and surveilling other women thought to have potential claims against Cuomo and coordinating attacks against them.   *See, e.g.*, AG Report at 10, 91, 104-11.[9]   This is sufficient to raise the inference that Defendant DeRosa's practice of responding to allegations of sexual harassment was to avoid GOER involvement to protect Defendant Cuomo at all costs, even though she knew her actions were in violation of both Executive Chamber policy and New York law, and thus to infer that her practice was to aid and abet his unlawful treatment of Plaintiff and others.

---

[8] AG Report at 62 (citing to DeRosa transcript, at 423:3-21, and Mogul transcript, at 254:13-17, available at https://ag.ny.gov/CuomoIndependentInvestigation).

[9] The AG Report described Defendant DeRosa's failure to properly respond to later allegations of Defendant Cuomo's harassment, including her failure to refer allegations of his sexual harassment to GOER while she simultaneously requested GOER's advice about whether releasing a complainant's confidential files might constitute retaliation. *Id.* at 107 (re: Lindsey Boylan).   Indeed, the AG Report concluded that Defendant DeRosa never reported any allegations of sexual harassment to GOER.   *See id.* at 129.

## THE INSTANT MOTION

Defendant DeRosa moves to dismiss all claims against her, claiming that Plaintiff did not allege that she aided and abetted any unlawful conduct and that Plaintiff did not allege that she committed any discriminatory acts against Plaintiff. She is wrong on all points.

## I.   STANDARD OF REVIEW

The burden placed on the plaintiff on a Rule 12(b)(6) motion is exceedingly minimal, especially for discrimination cases. *See Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998) ("[T]he pleading requirements in discrimination cases are very lenient, even *de minimis*."). A court must accept as true the plaintiff's allegations and draw all reasonable inferences in her favor. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78 (2d Cir. 2015). A court must deny the motion to dismiss where the plaintiff plausibly alleges that the defendants violated the law. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[T]he question is not whether a plaintiff is *likely* to prevail, but whether the well-pleaded factual allegations *plausibly* give rise to an inference of unlawful discrimination, *i.e.*, whether plaintiffs allege enough to 'nudge their claims across the line from conceivable to plausible.'" *Vega*, 801 F.3d at 87 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (alteration accepted). The plausibility standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegality." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 556) (alteration accepted).[10]

---

[10] *See also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-12 (2002) (concluding that "under a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a prima facie case"); *Citizens United v. Schneiderman*, 882 F.3d 374, 380 (2d Cir. 2018) (for plaintiffs to "'nudge[] their claims across the line from conceivable to plausible,' they must 'raise a reasonable expectation that discovery will reveal evidence' of the wrongdoing alleged") (quoting *Twombly*, 550 U.S. at 556); *Doe v. Columbia Univ.*, 831 F.3d 46, 59 (2d Cir. 2016) ("The role of the court . . . is not in any way to evaluate the truth as to what really happened, but merely to determine whether plaintiff's factual allegations are sufficient to allow the case to proceed.").

## II.   ARGUMENT

### A.   Plaintiff Plausibly Alleges That Defendant DeRosa Aided and Abetted Sexual Harassment and Gender Discrimination

In seeking dismissal of the Fifth and Ninth Causes of Action for aiding and abetting unlawful conduct under the NY/NYC Laws, Defendant DeRosa claims that she is not subject to liability because she did not actually participate in Defendant Cuomo's harassing conduct, and because she did not possess shared intent with him. This argument is baseless because it ignores the broad nature of the claim and the types of proof recognized as stating such a claim. Plaintiff has alleged that Defendant DeRosa failed to take any investigative or remedial measures upon being informed of Defendant Cuomo's unlawful conduct. This, in and of itself, is sufficient. However, Plaintiff also alleged that Defendant DeRosa witnessed Defendant Cuomo's sexist hazing of her, intentionally directed her to be alone with him, and contributed herself to a sexualized work environment. This is more than sufficient to state a claim that Defendant DeRosa aided and abetted prohibited acts under the NY/NYC Laws.

As a preliminary matter, the NY/NYC Laws were designed to rid the workplace of all unlawful discrimination. The New York Court of Appeals emphasized that the NYSHRL "should be construed broadly" to effectuate its purpose: "to bring within the orbit of the bill all persons, no matter what their status, who aid or abet any of the forbidden practices of discrimination or who attempt to do so." *Griffin v. Sirva, Inc.*, 29 N.Y.3d 174, 187 (2017) (quoting Rep. of N.Y. St. Temp. Comm'n Against Discrimination, 1945 N.Y. Legis. Doc. No. 6 at 31).[11]

---

[11] As discussed *infra*, the pleading requirements for the NYCHRL are even more liberal than for the NYSHRL. *See Chauca v. Abraham*, 841 F.3d 86, 87 (2d Cir.), *as amended* (Nov. 8, 2016). The legislative history to the recent amendments to the NYSHRL reaffirm this purpose, stating: "It is time for New York State law to abandon the protection of those who would discriminate and sexually harass in the workplace and recognize and

The Second Circuit has repeatedly cautioned that "the pleading requirements in discrimination cases are very lenient, even *de minimus*." *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) (citation omitted). To be liable, Defendant DeRosa "need not [her]self take part in the primary violation." *Schaper v. Bronx Lebanon Hosp. Ctr.*, 408 F. Supp. 3d 379, 395 (S.D.N.Y. 2019) (citation omitted). Instead, "an individual . . . can aid, abet, incite, coerce or compel, a primary violation of the HRL committed by another employee." *Lewis v. Triborough Bridge & Tunnel Auth.*, 77 F. Supp. 2d 376, 381 (S.D.N.Y. 1999) (citation omitted).

### i.    *Plaintiff Alleged Defendant DeRosa Held a Position of Authority and Failed to Investigate Her Complaint of Discrimination and Harassment.*

Courts have held defendants liable for aiding and abetting "for failure to take appropriate investigative or remedial measures upon being informed of offensive conduct." *Schaper*, 408 F. Supp. 3d at 396 (citation omitted); *see also Lewis*, 77 F. Supp. 2d at 384 (noting that "the case law establishes beyond cavil" that the failure to take adequate remedial measures can render an official liable for aiding and abetting discrimination, and collecting cases); *Rodriguez v. Metro Elec. Contractors, Inc.*, No. 18-cv-05140 (KAM), 2021 WL 848839, at *8 (E.D.N.Y. Mar. 5, 2021) (concluding that where an official "did nothing" to investigate an employee accused of

---

serve victims of discrimination." State Assemb. A08421 (N.Y. 2019), available at https://nyassembly.gov/leg/?default_fld=&leg_video=&bn=A08421&term=2019&Summary=Y&Actions=Y&Mem o=Y&Chamber%26nbspVideo%2FTranscript=Y.

In 2004, the Second Circuit noted that "[t]he same standards of analysis used to evaluate aiding and abetting claims under the NYSHRL apply to such claims under the NYCHRL because the language of the two laws is 'virtually identical.'" *Feingold v. New York*, 366 F.3d 138, 158-59 (2d Cir. 2004) (collecting cases) (citation omitted). Since then, the NYCHRL was amended to ensure that "the provisions of the NYCHRL shall be construed liberally regardless of whether related federal or New York State civil and human rights laws have been so construed." *Chauca*, 841 F.3d at 87 (quoting N.Y.C. Admin. Code § 8-130) (alterations accepted). Even after this amendment, district courts continue to cite to *Feingold* for the proposition that aiding and abetting claims under the NYSHRL and NYCHRL are subject to the same standard. *See, e.g.*, *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020). In 2019, the NYSHRL was amended to require courts to construe the NYSHRL, like the NYCHRL, "liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws including those laws with provisions worded comparably to the provisions of [the NYSHRL] have been so construed." N.Y. Exec. Law § 300. The effect of the amendment "is to render the standard for claims [brought under the NYSHRL] closer to the standard under the NYCHRL." *Weekes v. JetBlue Airways Corp.*, No. 21-cv-1965 (MKB), 2022 WL 4291371, at *7 (E.D.N.Y. Sept. 16, 2022) (citation omitted).

discriminatory conduct, he aided and abetted the conduct); *Delisi v. Nat'l Ass'n of Pro. Women, Inc.*, 48 F. Supp. 3d 492, 496 (E.D.N.Y. 2014) (denying motion to dismiss aiding and abetting claim under NYSHRL and collecting cases concluding that a "failure to investigate [discrimination] can constitute 'active participation' to support an 'aiding and abetting claim'") (citation omitted); *Ananiadis v. Mediterranean Gyros Prods., Inc.*, 54 N.Y.S.3d 155, 159 (N.Y. App. Div. 2017) (denying summary judgment on aiding and abetting claim where defendants failed to respond to complaints of sexual harassment, "despite their awareness and understanding of the [employer's sexual harassment] policy").  Failure to investigate can constitute aiding and abetting unlawful conduct because it demonstrates the defendant's contribution to, and infers the defendant's condoning of, the primary violator's discriminatory conduct.

Plaintiff reported Defendant Cuomo's sexual harassment to Defendant DesRosiers on June 10, 2020; Defendant DesRosiers in turn relayed Plaintiff's report to Defendant DeRosa around the same day.  Defendant DeRosa was required to report the conduct to GOER for investigation, but she did not.  Instead, she confronted Defendant Cuomo himself, despite Plaintiff's request to ensure Defendant Cuomo not learn of her report.[12]  Then, she and Defendant Mogul changed protocols and staffing "really more for the Governor's protection"[13] in an attempt to insulate him from contact with female staffers.  These allegations are sufficient to plead aiding and abetting liability under the NY/NYC Laws.  *See Schaper*, 408 F. Supp. 3d at 396; *Lewis*, 77 F. Supp. 2d at 384; *Delisi*, 48 F. Supp. 3d at 496; *see also Baez v. Anne Fontaine USA, Inc.* No. 14-cv-6621 (KBF), 2017 WL 57858, at *5-6 (S.D.N.Y. Jan. 5, 2017) (denying

---

[12] AG Report at 62 (citing to DeRosa transcript, at 383:20-25).

[13] *Id.* (citing to DeRosa transcript, at 423:3-21, and Mogul transcript, at 254:13-17).

summary judgment on aiding and abetting claim where official failed to sufficiently investigate a claim of discrimination, and where official did issue a written warning).

Even the Attorney General's Report concluded that Defendant DeRosa's failure to take remedial action in response to Plaintiff's complaint was wrong: "We also conclude that it is not a fair reading of the Executive Chamber policy that . . . any supervisor to whom allegations are reported should serve a screening role in the way that . . . Ms. DeRosa . . . did." AG Report at 152.

Defendant DeRosa selectively cites caselaw to argue she *must* be Plaintiff's direct supervisor to be held liable under an aiding and abetting theory.[14] This is a misrepresentation of the law.[15] Even though Defendant DeRosa was not "technically [plaintiff's] supervisor," she, like the defendant in *Mondelo*, may be held liable for aiding and abetting under the NY/NYC Laws for failing to report Plaintiff's sexual harassment claims because she, a senior official in the Executive Chamber, was in a "position of authority." *Mondelo v. Quinn, Emanuel, Urquhart & Sullivan, LLP*, No. 21 Civ. 02512 (CM), 2022 WL 524551, at *13 (S.D.N.Y. Feb. 22, 2022); *see also Delisi*, 48 F. Supp. 3d at 497 (defendant had invited plaintiff to "turn to him" if she had work-related concerns) (citation omitted). Plaintiff alleged that Defendant DeRosa was one of the "former Governor's top aides," Doc. 1 ¶ 1, 14, and that at least once, Defendant DeRosa gave

---

[14] Defendant DeRosa's reliance on *Warren* is misplaced. First, that court considered a motion to amend to add an aiding and abetting claim against the Florida Defendants under Rule 15 of the Federal Rules of Civil Procedure, not on a motion to dismiss. Second, the court noted that plaintiff failed to allege that the Florida Defendants held *any* supervisory or managerial authority. The court noted that plaintiff only alleged that she reported sexual harassment through the Florida Defendant's Facebook page and failed to allege that they participated in any of the alleged discriminatory or retaliatory conduct of the New York Defendants. In short, there was no meaningful interaction between plaintiff and the Florida Defendants such that they served in a supervisory or managerial role and thus could be liable for failing to investigate or report sexual harassment. *See Warren v. Ultimate Fitness Grp., LLC*, No. 19-cv-10315 (KMK), 2021 WL 4239246, at *5-6 (S.D.N.Y. Sept. 17, 2021).

[15] If, as Defendant DeRosa argues, only a direct supervisor could be held liable for aiding and abetting harassment, then here, because Defendant Cuomo was Plaintiff's direct supervisor, Doc. 1 ¶ 11, no one else could aid and abet his harassment. This warped reading of the law would eliminate aiding and abetting liability for an entire class of employees, and is contrary to the broad, remedial purposes of the NY/NYC Laws.

Plaintiff instructions in the context of her work duties. *Id.* ¶ 74. Plaintiff has demonstrated that Defendant DeRosa had authority sufficient to render her liable for aiding and abetting liability under the NY/NYC Laws. *See Mondelo*, 2022 WL 524551, at *13.

Finally, Defendant DeRosa argues that she was unaware of Defendant Cuomo's sexual harassment until "after it had ended" and that Plaintiff has therefore failed to state a claim for aiding and abetting. Doc. 28 at 12-13. First, Plaintiff did allege that Defendant DeRosa had contemporaneous knowledge: she alleged that Defendant DeRosa witnessed Defendant Cuomo's sexist hazing of her, recognized aloud that his actions were "hazing," and yet failed to protect Plaintiff, and even subsequently left her alone with him on at least one occasion despite what she witnessed. Doc. 1 ¶¶ 24-25, 73-74. And second: contemporaneous knowledge is not a requirement of an aiding and abetting claim.[16] Plaintiff can withstand a motion to dismiss an aiding and abetting claim by alleging, as she did, that Defendant DeRosa failed to investigate her report of unlawful action. Third, inaction can confer liability "even if the harasser unilaterally decides to cease the harassment." *Pachura v. Austin*, No. 621-cv-0316 (LEK/ATB), 2022 WL 1909546, at *7 (N.D.N.Y. June 3, 2022) (inaction can confer liability even under the higher standard of Title VII).[17] Further: courts find plaintiffs to have sufficiently alleged claims against defendants even without determining whether the harassment had ceased. *See, e.g.*, *Baez*, 2017

---

[16] Defendant DeRosa's reliance on *Olsen* is unavailing. The court in *Olsen* concluded that plaintiff failed to allege that either defendant was aware of any harassment *or* complaints. *Olsen v. Suffolk Cnty.*, No. 15-cv-4064 (JS) (AYS), 2016 WL 5395846, at *17 (E.D.N.Y. Sept. 27, 2016). The court did not require the plaintiff to allege that either defendant was aware of the harassment while it was "on-going," as Defendant DeRosa portrays. Doc. 28 at 12. In any event, Plaintiff alleged that Defendant DeRosa was aware of Defendant Cuomo's harassment while it was ongoing, was aware of Plaintiff's report (and transfer), and failed to investigate or take any remedial action.

[17] The allegations here sharply contrast from those in *McHenry*, upon which Defendant DeRosa and the other Defendants heavily rely, wherein the alleged harassment occurred prior to plaintiff's complaint, and the plaintiff's complaint resulted in an investigation by outside counsel. 510 F. Supp. 3d at 78-79. Here, Defendant DeRosa had contemporaneous knowledge of the sexist office environment – including personally witnessing at least one instance of hazing – prior to Plaintiff's complaint, and took no action to investigate or report Plaintiff's allegations to GOER.

WL 57858, at *5 (finding the failure to take remedial action established aiding and abetting

liability without mentioning whether the harassment ceased); *Bennett v. Progressive Corp.*, 225

F. Supp. 2d 190, 213-15 (N.D.N.Y. 2002) (same).[18]

### ii. *Plaintiff Alleged Defendant DeRosa's Actions and Inactions Demonstrate Actual Participation in Unlawful Conduct.*

To be liable for aiding and abetting under the NY/NYC Laws, Defendant DeRosa "need

not [her]self take part in the primary violation." *Schaper*, 408 F. Supp. 3d at 395 (citation

omitted). Plaintiff need only allege facts demonstrating that Defendant DeRosa "approv[ed] of

the conduct," *Bascomb v. Smith Barney Inc.*, No. 96 Civ. 8747 (LAP), 1999 WL 20853, at *6

(S.D.N.Y. Jan. 15, 1999) (concluding that defendant's alleged "approval of the conduct" may

rise to level of participation required for NYSHRL aiding and abetting liability), *abrogated on*

*other grounds by Lauture v. Int'l Bus. Machines Corp.*, 216 F.3d 258, 259 (2d Cir. 2000), or

"encouraged, condoned or approved [defendant's] conduct." *Hicks v. IMB*, 44 F. Supp. 2d 593,

600 (S.D.N.Y. 1999) (denying motion to dismiss aiding and abetting claims and concluding

plaintiff alleged defendants "encouraged, condoned or approved [defendant's] conduct" by

failing to correct discriminatory actions). Plaintiff has done so.

Defendant DeRosa relies selectively on inapposite cases where the plaintiffs, unlike

Plaintiff here, failed to allege any facts to support their claims. For example, Defendant DeRosa

cites to *Friederick*, where the court concluded the plaintiff failed to plead facts giving rise to the

inference that the defendant was "ever aware" of how the primary violator was treating the

plaintiff, or that the defendant "encouraged or attempted to coerce him into treating her

---

[18] *Cf. Cid v. ASA Inst. of Bus. & Computer Tech., Inc.*, No. 12-cv-2947 (DLI) (VMS), 2013 WL 1193056, at *5 (E.D.N.Y. Mar. 22, 2013), where the court found that the failure to investigate or take remedial action in response to plaintiff's claims established aiding and abetting liability where it was unclear whether the harassment ceased. As discussed in Plaintiff's Opposition to Defendant Mogul's Motion to Dismiss, Plaintiff does not concede that the harassment ceased at the time of her transfer.

inappropriately." *Friederick v. Passfeed, Inc.*, No. 21-cv-2066 (RA), 2022 WL 992798, at *10 (S.D.N.Y. Mar. 31, 2022). Defendant DeRosa also cites to *Gittens*, where the court found the plaintiff failed to plead any facts suggesting the defendant's involvement in misconduct "whatsoever." *Gittens v. Winthrop Hospitalist Assocs., P.C.*, No. 19-cv-5070 (LDH) (LB), 2022 WL 504490, at *8 (E.D.N.Y. Feb. 18, 2022).

Unlike the plaintiffs in *Friederick* and *Gittens*, Plaintiff alleged specific facts demonstrating Defendant DeRosa was personally "aware" of how Defendant Cuomo was treating her. For example, Plaintiff alleged that Defendant DeRosa witnessed Defendant Cuomo's sexist hazing of Plaintiff, recognized aloud that his actions were "hazing," and yet failed to protect Plaintiff, and even subsequently left her alone with him on at least one occasion in spite of what she witnessed. Doc. 1 ¶¶ 24-25, 73-74. Further, Plaintiff alleged that Defendant DeRosa directly participated in discriminatory misconduct when she failed to report Plaintiff's complaint of sexual harassment and instead changed Executive Chamber protocols to insulate Defendant Cuomo from interaction with female staffers "really more for the Governor's protection."[19] *Id.* ¶ 107; AG Report at 62 (citation omitted). Drawing all inferences in Plaintiff's favor, she has properly plead that Defendant DeRosa "actively participated." *See Bascomb*, 1999 WL 20853, at *6; *Hicks*, 44 F. Supp. 2d at 600.

Defendant DeRosa argues that the aider and abettor must share "community of purpose" with the harasser. Doc. 28 at 6. No Second Circuit case says this. But even if discriminatory intent is a requirement, it is a low burden. *See, e.g.*, *Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC*, 470 F. Supp. 2d 345, 363 (S.D.N.Y. 2007) (discussing the flexible approach taken by several courts as to community of purpose for aider and abettor liability).

---

[19] AG Report at 62 (citing to DeRosa transcript, at 423:3-21, and Mogul transcript, at 254:13-17).

District courts have required some showing of shared intent only to demonstrate the degree of the aider-abettor's participation, nearly universally in cases where the plaintiff has failed to allege aider-abettor participation in or contribution to discriminatory conduct whatsoever. In other words, 'shared intent' is used to show a degree of participation; it is not a standalone requirement alongside "actual participation." Notably, cases with parallel facts do not discuss intent in their disposition of aiding and abetting claims at all. *See, e.g.*, *Baez*, 2017 WL 57858, at *5; *Bennett*, 225 F. Supp. 2d at 213-15.

Defendant DeRosa cites to *Fried* as an example of the "shared intent" requirement. But, following well-established caselaw requiring actual participation, the court in *Fried* focused on whether either corporate entity defendant had "actually participated" in discriminatory conduct and concluded plaintiff failed to allege actual participation. *Fried v. LVI Servs., Inc.*, No. 10 Civ. 9308 (JSR), 2011 WL 2119748, at *7-8 (S.D.N.Y. May 23, 2011). *Only then*, as a secondary consideration, did the court consider whether a spirit of shared intent existed such that the defendants, against whom no allegations of actual participation had been raised, shared discriminatory animus with other defendants sufficient to support aiding and abetting claims. *Id.* at *8. The court concluded that the plaintiff did not allege such shared intent and dismissed the claims. *Id.* Again: shared intent is not a standalone requirement alongside "actual participation," but is a stand-in for a demonstration of degree of participation.[20]

---

[20] Defendant DeRosa's reliance on *Lewis* and *Heron* for this principle is similarly misplaced. Doc. 28 at 9-10. In *Lewis*, the court concluded that plaintiff must *either* allege a defendant's involvement "in any way" in the discriminatory scheme *or* "facts suggesting that a defendant displayed any intent to discriminate": the court did not impose a standalone 'shared intent' requirement. *Lewis*, 77 F. Supp. 2d at 381. And in *Heron*, the court considered whether plaintiff alleged that either defendant shared discriminatory intent of a principal actor *only after* concluding that plaintiff failed to establish liability for a principal actor in the first place: "[T]here is nothing for [d]efendants to have aided or abetted. That fact alone is enough to dismiss [p]laintiff's aiding and abetting claims altogether." *Heron v. Medrite Testing, LLC*, No. 21 Civ. 9471 (CM), 2022 WL 1214179, at *7 (S.D.N.Y. Apr. 25, 2022).

Even if 'shared intent' were to be deemed to be a standalone requirement, Plaintiff has alleged sufficient facts to infer Defendant DeRosa's discriminatory intent.  In contributing to a work environment where female employees were pressured to wear traditionally feminine attire, refusing to protect Plaintiff when she was subjected to humiliating tasks, and instituting a sexist policy that prevented women from working alone with Defendant Cuomo, not to protect women, but "for the Governor's protection,"[21] Defendant DeRosa actively participated in the creation of an environment that emboldened Defendant Cuomo to harass Plaintiff without repercussions. *See, e.g.*, *Klymn v. Monroe Cnty. Supreme Ct.*, No. 21-cv-6488 (JLS), 2022 WL 16950048, at *17 (W.D.N.Y. Nov. 15, 2022) (finding that plaintiff sufficiently alleged shared intent where defendants failed to remedy discriminatory behavior) (citation omitted); *Hicks*, 44 F. Supp. 2d at 600 (finding that defendants, supervisory personnel, failed to take adequate actions to correct the discrimination and "thereby encouraged, condoned or approved" the primary violator's conduct); *Manswell v. Heavenly Miracle Acad. Servs., Inc.*, No. 14-cv-7114 (MKB) (SMG), 2017 WL 9487194, at *7 (E.D.N.Y. Aug. 23, 2017), *report and recommendation adopted*, No. 14-cv-7114 (MKB) (SMG), 2017 WL 4075180 (E.D.N.Y. Sept. 14, 2017) (finding that "an employer's calculated inaction in response to discriminatory conduct may, as readily as affirmative conduct, indicate condonation") (citation omitted) (alteration accepted); *cf. Resetar v. Phillips Feed Serv., Inc.*, No. CV 16-3428, 2017 WL 1092345, at *4 (E.D. Pa. Mar. 23, 2017) (finding that a female official's "selective enforcement of a female-only dress policy shows a general hostility toward women in the workplace").  At this stage, where the Court must draw all inferences in Plaintiff's favor, she has plausibly alleged Defendant DeRosa's actions and "calculated inaction[s]"

---

[21] AG Report at 62 (citing to DeRosa transcript, at 423:3-21, and Mogul transcript, at 254:13-17).

demonstrate – at the very least, strongly suggest – that she harbored discriminatory intent. *Manswell*, 2017 WL 9487194, at \*7.

In sum, Plaintiff has alleged more than enough to "nudge" her claims "across the line from conceivable to plausible." *Vega*, 801 F.3d at 87 (citation omitted). Accordingly, this Court should deny her motion to dismiss Plaintiff's aiding and abetting claims under the NY/NYC Laws.

### B.    Plaintiff Plausibly Alleges That Defendant DeRosa Discriminated Against Her on the Basis of Gender

Defendant DeRosa seeks to dismiss Count Nine for gender discrimination under the NYCHRL, claiming that she is not subject to liability because she did not discriminate against Plaintiff and because Plaintiff did not allege discrimination because of her gender. But Defendant DeRosa ignores the lenient standard applicable under the NYCHRL, and under that standard, Plaintiff has definitively plead sufficient facts to demonstrate that Defendant DeRosa discriminated against her on the basis of her gender in violation of the NYCHRL.

### i.    *The Court Must Consider the Entire Universe of Plaintiff's Allegations as to Defendant DeRosa in Determining Whether She Discriminated Against Plaintiff.*

Courts must afford the NYCHRL an "independent and more liberal construction" than other federal and state laws and construe the statute "broadly in favor of discrimination plaintiffs." *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 257 (E.D.N.Y. 2012), *aff'd*, 713 F.3d 163 (2d Cir. 2013) (citation omitted); *see also Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009) (claims under the NYCHRL must be analyzed "more liberally" than those under federal or state anti-discrimination statutes). A plaintiff need only prove that "she has been treated less well than other employees because of her gender." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) (citation omitted); *see also Edelman v. NYU Langone Health Sys.*, No. 21 Civ. 502 (LGS), 2022 WL 4537972, at \*12

19

(S.D.N.Y. Sept. 28, 2022) ("The NYCHRL is less demanding of plaintiffs than Title VII, and Plaintiff may prove an adverse employment action simply by showing that she was treated less well.") (citation omitted).

Under the NYCHRL, "the overall context in which the challenged conduct occurs cannot be ignored." *Mihalik*, 715 F.3d at 113 (citing *Hernandez v. Kaisman*, 957 N.Y.S.2d 53, 59 (N.Y. App. Div. 2012) (courts must consider the "totality of the circumstances")) (alterations accepted); *see generally Vega*, 801 F.3d at 86-87 (noting that plaintiff can show discriminatory intent for Title VII claims, which require a higher showing, by pointing to "bits and pieces of information to support an inference of discrimination, i.e. a mosaic of intentional discrimination"). Given this especially low threshold for liability, at the motion to dismiss stage, a plaintiff need only set forth evidence of "unwanted gender-based conduct." *Lenart v. Coach Inc.*, 131 F. Supp. 3d 61, 69 (S.D.N.Y. 2015).

### ii.    *Plaintiff Has Adequately Alleged Defendant DeRosa Treated Her Less Well Because of Her Gender.*

Courts have recognized that, for purposes of the NYCHRL, it is important to consider the "social context" in which discriminatory acts occur. *See Hernandez*, 957 N.Y.S.2d at 57 (concluding that a jury could reasonably determine that emails sent to both male and female employees, in the context of an office environment where comments were routinely made sexualizing female employees, were sent to provoke a reaction from the women in the office). Defendant DeRosa's participation in normalizing the "social context," the expectation that female employees working on the 39th floor wear feminine attire when Defendant Cuomo was in the office, contributed to an office environment in which Plaintiff was treated differently from and "less well" than male employees. In *Mihalik*, for example, the Second Circuit reversed the trial court's grant of summary judgment and concluded that a jury could reasonably find that

Mihalik was treated "less well" than her male colleagues because of her gender, where the evidence provided included comments by other employees about female employees' appearances, outfits, and bodies. *Mihalik*, 715 F.3d at 113.

Defendant DeRosa claims Plaintiff did not allege facts related to her treatment of Plaintiff and that she did not allege that male employees were given preferential treatment. This is not true. Plaintiff alleged that Defendant DeRosa participated in "unwanted gender-based conduct" resulting in Plaintiff being treated "less well" than male employees. *See* Doc. 1 ¶¶ 16, 21, 24-26, 185, 220. Courts can infer a connection between the conduct alleged and that conduct occurring "because of" a plaintiff's gender. *See, e.g.*, *Carter v. Verizon*, No. 13 Civ. 7579 (KPF), 2015 WL 247344, at *12 (S.D.N.Y. Jan. 20, 2015) (denying motion to dismiss where plaintiff inferred that conduct took place because of his gender by making allegations about "his training in sexual harassment and the potentially gender-charged physicality of the conduct alleged"). One plaintiff alleged that defendant "treated Plaintiff less well by spreading rumors about her at work," *Garrigan v. Ruby Tuesday, Inc.*, No. 14 Civ. 155 (LGS), 2014 WL 2134613, at *4 (S.D.N.Y. May 22, 2014) (denying motion to dismiss hostile work environment claim under the NYCHRL); another plaintiff claimed he had to undergo extra interviews and testing his female colleagues did not, and that he heard the defendant had a preference for working with women, *Lenart*, 131 F. Supp. 3d at 69 (concluding plaintiff alleged "unwanted gender-based conduct" and denying motion to dismiss NYCHRL hostile work environment claim); and another plaintiff alleged he heard other employees were mocking him based on his sexual orientation, which adversely affected his work environment and "meant that he was treated less well than other employees based on his sexual orientation," *Sletten v. LiquidHub, Inc.*, No. 13 Civ. 1146 (NRB),

2014 WL 3388866, at *8 (S.D.N.Y. July 11, 2014) (denying motion to dismiss NYCHRL hostile work environment claim).

Plaintiff alleged a link between Defendant DeRosa's conduct and that her conduct occurred "because of" Plaintiff's gender.  In addition to her allegations about the traditionally feminine attire expected of female employees, Plaintiff alleged that Defendant Cuomo never forced other male Executive Chamber employees or the outgoing Executive Assistant (also male) to memorize and sing the lyrics to "Danny Boy" or any other song during their employment. Doc. 1 ¶ 26.  Defendant DeRosa, in witnessing Defendant Cuomo's sexist hazing of Plaintiff, failing to protect Plaintiff, and leaving Plaintiff alone with Defendant Cuomo on at least one occasion subsequently in spite of what she witnessed, demonstrated that she acquiesced to Defendant Cuomo's gender-based discrimination of Plaintiff, which is sufficient to at least infer, if not demonstrate, that Defendant DeRosa's conduct occurred because of Plaintiff's gender.

And indeed, after Defendant DeRosa learned of Plaintiff's report of sexual harassment, instead of referring the report to GOER, Defendant DeRosa coordinated with Defendant Mogul to change Executive Chamber protocols and staffing to "protect[]" the Governor from being in situations in which he might sexually harass a female member of his staff.[22]  One change barred female staffers from staffing Defendant Cuomo by themselves, Doc. 1 ¶ 107, reducing female staffers' (as compared to male staffers) ability to seek the guidance and career-building interactions more readily available one-on-one.  By admitting her role in changing Executive Chamber protocols and staffing to "protect[]" the Governor from being in situations in which he might sexually harass a female staffer, Defendant DeRosa admitted that she participated actively

---

[22] AG Report at 62 (citing to DeRosa transcript, at 423:3-21, and Mogul transcript, at 254:13-17).

in condoning and contributing to an office environment in which female employees are treated "less well" than male employees because of their gender.

Defendant DeRosa relies only on cases where the plaintiff alleged *no* facts from which gender discrimination might be inferred.  For example, Defendant DeRosa cites to *Simon*, where the plaintiff did not allege that the defendant treated her differently from other employees. Doc. 28 at 13 (citing *Simon v. City of New York*, No. 17 Civ. 9575 (DAB), 2019 WL 916767, at *5 (S.D.N.Y. Feb. 14, 2019)).  Similarly, the plaintiffs in *Harrison v. SUNY Downstate Med. Ctr.*, No. 16-cv-1101 (RRM) (CLP), 2017 WL 4326507, at *5 (E.D.N.Y. Sept. 25, 2017) and *Vaigasi v. Solow Mgmt. Corp.*, No. 11 Civ. 5088 (RMB) (HBP), 2014 WL 1259616, at *10 (S.D.N.Y. Mar. 24, 2014), cases upon which Defendant DeRosa relies, fail to allege that any male employee was treated differently.[23]  Finally, the facts in *Stinnett* sharply contrast from those here: that plaintiff was fired based on a positive drug test.  *Stinnett v. Delta Air Lines*, 803 Fed. App'x 505, 509 (2d Cir. 2020).[24]

Taken as a whole, the allegations plead against Defendant DeRosa are sufficient for the Court, at this stage, to reasonably infer that gender-based animus infected her conduct.  *See*

---

[23] Defendant DeRosa similarly relies upon *Grant v. New York Times Co.*, No. 16-cv-03175 (PKC), 2017 WL 4119279, at *8 (S.D.N.Y. Sept. 14, 2017), where the plaintiff did not allege specific facts demonstrating her differential treatment was because of her gender, and instead provided evidence going against her argument, for example evidence of both male and female employees being allocated higher revenue accounts.  And Defendant DeRosa cites to *Joyce v. Remark Holdings, Inc.*, No. 19-cv-6244 (DLC), 2022 WL 179839, at *6 (S.D.N.Y. Jan. 20, 2022), where the plaintiff failed to provide evidence that, in relation to evidence that the defendant forced plaintiff to take a mixed drink, the defendant "specifically or disproportionately pressured female employees to consume alcohol."  Finally, Defendant DeRosa's reliance on *Anderson v. Davis, Polk & Wardell, LLP*, 850 F. Supp. 2d 392 (S.D.N.Y. 2012) is particularly misplaced: *Anderson* predates the "less well" standard adopted by the Second Circuit in *Mihalik*, 715 F.3d 102 (2d Cir. 2013).

[24] Further, Stinnett alleged that six male flight attendants were reinstated after completing a drug rehabilitation course, but she did not indicate she was sufficiently similarly situated to suggest a discriminatory motive and acknowledged those males had known drug and alcohol abuse disabilities while she suffered from no such disorder, which the court found to "undermine any claim that [plaintiff] is similarly situated to the six men she argued received better treatment." *Id.*

*Moazzaz v. MetLife, Inc.*, No. 19-cv-10531 (JPO), 2021 WL 827648, at *8 (S.D.N.Y. Mar. 4, 2021) (concluding the claims may proceed to discovery where plaintiff alleged sufficient facts to infer gender animus).  Plaintiff alleged that Defendant DeRosa contributed to an office environment in which Plaintiff was treated differently from and "less well" than male employees: she alleged Defendant DeRosa participated in normalizing the "social context" that female employees wear feminine attire when Defendant Cuomo was in the office and that Defendant DeRosa, in witnessing Defendant Cuomo's sexist hazing of Plaintiff and failing to protect her, acquiesced to Defendant Cuomo's gender-based discrimination of Plaintiff.  Further, Plaintiff alleged that Defendant DeRosa failed to report or investigate Plaintiff's complaint of sexual harassment and instead admitted to her role in changing protocols to protect Defendant Cuomo.  Especially given the leniency granted plaintiffs at the motion to dismiss stage, *see Vega*, 801 F.3d at 78, Plaintiff has sufficiently alleged Defendant DeRosa participated in creating, condoning, maintaining, and contributing to an office environment in which female employees were treated "less well" than male employees because of their gender.

## CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court deny Defendant DeRosa's

motion in its entirety.

Dated: December 20, 2022    Respectfully submitted,

         **KATZ BANKS KUMIN LLP**

         */s/ Debra S. Katz*

         Debra S. Katz
         Rachel E. Green
         Kayla Morin
         11 Dupont Circle, NW, Suite 600
         Washington, D.C. 20036
         Ph: (202) 299-1140
         Email: katz@katzbanks.com
           green@katzbanks.com
           morin@katzbanks.com

         **EISENBERG & SCHNELL LLP**

         */s/ Herbert Eisenberg*

         Herbert Eisenberg
         Laura S. Schnell
         233 Broadway, Suite 2704
         New York, New York 10279
         Ph: (212) 966-8900
         Email: lschnell@eisenbergschnell.com
           heisenberg@eisenbergschnell.com

         *Attorneys for Plaintiff Charlotte Bennett*

cc: All Counsel of Record (via ECF)