**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____
_____

|  |  |  |
|---|---|---|
| CHARLOTTE BENNETT, | ) | 1:22-cv-07846 (VSB) (KHP) |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| ANDREW M. CUOMO, MELISSA | ) |  |
| DEROSA, JILL DESROSIERS, and | ) |  |
| JUDITH MOGUL, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

_____

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT JILL
DESROSIERS' MOTION TO DISMISS**

---

Debra S. Katz
Rachel E. Green
Kayla Morin
Katz Banks Kumin LLP
11 Dupont Circle, NW, Suite 600
Washington, D.C. 20036
Ph:    (202) 299-1140
Email: katz@katzbanks.com
            green@katzbanks.com
            morin@katzbanks.com

Herbert Eisenberg
Laura S. Schnell
Eisenberg & Schnell LLP
233 Broadway, Suite 2704
New York, New York 10279
Ph:    (212) 966-8900
Email: lschnell@eisenbergschnell.com
            heisenberg@eisenbergschnell.com

*Attorneys for Plaintiff Charlotte Bennett*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

RELEVANT FACTUAL BACKGROUND.............................................................................. 2

   I.   DEFENDANT DESROSIERS' INVOLVEMENT IN HARASSMENT OF PLAINTIFF. 2

   II.  DEFENDANT DESROSIERS' RETALIATION AND FAILURE TO REFER
        PLAINTIFF'S REPORT TO GOER ......................................................................... 4

THE INSTANT MOTION...................................................................................................... 8

   I.   STANDARD OF REVIEW.............................................................................................. 8

   II.  ARGUMENT .................................................................................................................. 9

      A.  Plaintiff Plausibly Alleges That Defendant DesRosiers Aided and Abetted Sexual
          Harassment and Gender Discrimination of Plaintiff......................................... 9

      B.  Plaintiff Plausibly Alleges That Defendant DesRosiers Discriminated Against Her on
          the Basis of Gender ....................................................................................... 14

      C.  Plaintiff Plausibly Alleges That Defendant DesRosiers Retaliated Against Her.......... 17

      D.  Defendant DesRosiers is Not Entitled to Qualified Immunity....................................... 22

CONCLUSION.................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alvarez v. N.Y.C. Dep't of Educ.*, No. 20-cv-255,
   2021 WL 1424851 (S.D.N.Y. April 15, 2021) ...................................................... 20

*Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010) ....................................... 8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 8

*Atadzhanov v. City of New York*, No. 21-cv-5098 (LJL),
   2022 WL 4331304 (S.D.N.Y. Sept. 19, 2022)...................................................... 25

*Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107 (2d Cir. 2004)...................... 24

*Baez v. Anne Fontaine USA, Inc.*, No. 14-cv-6621 (KBF),
   2017 WL 57858 (S.D.N.Y. Jan. 5, 2017) ...................................................... 10, 11

*Barrer-Cohen v. Greenburgh Central Sch. Dist.*,
   No. 18 Civ. 1847 (NSR), 2019 WL 3456679 (S.D.N.Y. July 30, 2019)................................. 24

*Bascomb v. Smith Barney Inc.*, No. 96 Civ. 8747 (LAP),
   1999 WL 20853 (S.D.N.Y. 1999), *abrogated on other grounds by*
   *Lauture v. Int'l Bus. Machines Corp.*, 216 F.3d 258, 259 (2d Cir. 2000) ......................... 12, 14

*Behrens v. Pelletier*, 516 U.S. 299 (1996) .................................................................. 23

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................... 8

*Belyea v. City of Glen Cove*, No. 20-cv-5675 (MKB),
   2022 WL 3586559 (E.D.N.Y. Aug. 22, 2022).......................................................... 24

*Bennett v. Progressive Corp.*, 225 F. Supp. 2d 190 (N.D.N.Y. 2002)............................... 10

*Brown v. Coach Stores, Inc.*, 163 F.3d 706 (2d Cir. 1998)............................................ 8

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) ................................. 17

*Carter v. Verizon*, No. 13 Civ. 7579 (KPF),
   2015 WL 247344 (S.D.N.Y. Jan. 20, 2015) .......................................................... 16

*Chamberlain Estate of Chamberlain v. City of White Plains*, 960 F.3d 100 (2d Cir. 2020)........ 22

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) ....................................... 2

*Chauca v. Abraham*, 841 F.3d at 86 (2d Cir.), *as amended* (Nov. 8, 2016) ................................. 9

*Claes v. Boyce Thompson Inst. for Plant Research*,
    88 F. Supp. 3d 121 (N.D.N.Y. 2015) ........................................................................... 19

*Cox v. Onondaga Cnty. Sheriff's Dep't*, 760 F.3d 139 (2d Cir. 2014) ......................................... 20

*De la Cruz v. New York City Human Resources Admin. Dep't of Soc. Servs*,
    82 F.3d 16 (2d Cir. 1996) ........................................................................................... 20

*Delisi v. Nat'l Ass'n of Pro. Women, Inc.*, 48 F. Supp. 3d 492 (E.D.N.Y. 2014) ........................ 10

*Deravin v. Kerik*, 335 F.3d 195 (2d Cir. 2003) .............................................................................. 9

*Dickens v. Hudson Sheraton Corp. LLC*, 689 Fed. App'x 670 (2d Cir. 2017) ............................. 21

*Edelman v. NYU Langone Health Sys.*, No. 21 Civ. 502 (LGS),
    2022 WL 4537972 (S.D.N.Y. Sept. 28, 2022) ........................................................... 15

*Farmer v. Shake Shack Enterprises, LLC*, 473 F. Supp. 3d 309, 330 (S.D.N.Y. 2020) ......... 17, 21

*Feliciano v. City of New York*, No. 14 Civ. 6751 (PAE),
    2015 WL 4393163 (S.D.N.Y. July 15, 2015) ............................................................. 22

*Field Day, LLC v. County of Suffolk*, 463 F.3d 167 (2d Cir. 2006) .............................................. 23

*Griffin v. Sirva, Inc.*, 29 N.Y.3d 174 (2017) ................................................................................... 9

*Harris v. NYU Langone Med. Ctr.*, No. 12 Civ. 0454 (RA) (JLC),
    2013 WL 3487032 (S.D.N.Y. July 9, 2013) ............................................................... 13

*Hernandez v. Kaisman*, 957 N.Y.S.2d 53 (N.Y. App. Div. 2012) ................................................ 15

*Hicks v. IMB*, 44 F. Supp. 2d 593 (S.D.N.Y. 1999) ......................................................... 12, 13, 14

*Johnson v. J. Walter Thompson U.S.A., LLC*, 224 F. Supp. 3d 296 (S.D.N.Y. 2016) ................. 20

*Jones v. Treubig*, 963 F.3d 214 (2d Cir. 2020) ............................................................................. 23

*Lenart v. Coach Inc.*, 131 F. Supp. 3d 61 (S.D.N.Y. 2015) .................................................... 15, 16

*Lewis v. Triborough Bridge & Tunnel Auth.*, 77 F. Supp. 2d 376 (S.D.N.Y. 1999) ................. 9, 10

*Manswell v. Heavenly Miracle Acad. Servs., Inc.*,
No. 14-cv-7114 (MKB) (SMG), 2017 WL 9487194 (E.D.N.Y. Aug. 23, 2017),
*report and recommendation adopted*, No. 14-cv-7114 (MKB) (SMG),
2017 WL 4075180 (E.D.N.Y. Sept. 14, 2017) ................................................................. 12, 13

*McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51 (S.D.N.Y. 2020) ............................. 11

*McKenna v. Wright*, 386 F.3d 432 (2d Cir. 2004) ................................................................. 23, 24

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
715 F.3d 102 (2d Cir. 2013) ................................................................. 14, 15, 16, 18

*Moazzaz v. MetLife, Inc.*, No. 19-cv-10531 (JPO),
2021 WL 827648 (S.D.N.Y. Mar. 4, 2021) ............................................................. 17

*Mooney v. City of New York*, No. 18 Civ. 328 (DLC),
2018 WL 4356733 (S.D.N.Y. Sept. 12, 2018) ......................................................... 21

*Pachura v. Austin*, No. 621-cv-0316 (LEK/ATB),
2022 WL 1909546 (N.D.N.Y. June 3, 2022) ........................................................... 10

*Pearson v. Callahan*, 555 U.S. 223 (2009) ......................................................................... 23

*Raspardo v. Carlone*, 770 F.3d 97 (2d Cir. 2014) ......................................................... 23, 24

*Resetar v. Phillips Feed Serv., Inc.*, No. CV 16-3428,
2017 WL 1092345 (E.D. Pa. Mar. 23, 2017) ......................................................... 14, 15

*Schaper v. Bronx Lebanon Hosp. Ctr.*, 408 F. Supp. 3d 379 (S.D.N.Y. 2019) ............ 9, 10, 12, 14

*Sotomayor v. City of New York*, 862 F. Supp. 2d 226 (E.D.N.Y. 2012),
*aff'd*, 713 F.3d 163 (2d Cir. 2013) ...................................................................... 14

*Trujillo v. City of New York*, No. 14 Civ. 8501 (PGG),
2016 WL 10703308 (S.D.N.Y. Mar. 29, 2016) ....................................................... 21

*United States v. N.Y.C. Dep't of Educ.*, No. 16 Civ. 4291 (LAK) (JCF),
2017 WL 435940 (S.D.N.Y. Jan. 31, 2017), *report and recommendation adopted*,
No. 16-cv-4291 (LAK), 2017 WL 1319695 (S.D.N.Y. Apr. 4, 2017) ............................. 19, 20

*Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72 (2d Cir. 2015) ...............................passim

*Weekes v. JetBlue Airways Corp.*, No. 21-cv-1965 (MKB),
2022 WL 4291371 (E.D.N.Y. Sept. 16, 2022) ......................................................... 18

*White v. Pauly*, 137 S. Ct. 548 (2017) ................................................................................. 23

iv

*Williams v. Rosenblatt Sec. Inc.*, No. 14-cv-4390 (JGK),
    2016 WL 412054 (S.D.N.Y. July 22, 2016) ............................................................ 13

*Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834 (2d Cir. 2013).............................................. 21, 22

**Statutes**

42 U.S.C. § 1983.................................................................................................................. 1, 17, 22

New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ............................. 1, 18

New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ....................................... 1, 18

**Other Authorities**

State of New York Office of the Attorney General Letitia James, *Report of Investigation into
    Allegations of Sexual Harassment by Governor Andrew M. Cuomo*, available at
    https://ag.ny.gov/sites/default/files/2021.08.03_nyag_-_investigative_report.pdf......... 2, 11, 12

In four separately filed motions, all Defendants have moved to dismiss most counts in Plaintiff Charlotte Bennett's Complaint.[1]  Doc. 28, 33, 34, 38.  Throughout her motion to dismiss, Defendant Jill DesRosiers attempts to pull Plaintiff into a factual dispute best suited for trial, after the parties have completed discovery and fully briefed all legal disputes.  Defendant DesRosiers' efforts to concoct additional legal hurdles must be rejected, and for the reasons set forth below, this Court must deny Defendant Jill DesRosiers' motion to dismiss.[2]

## PRELIMINARY STATEMENT

Defendant Jill DesRosiers ("Defendant DesRosiers"), one of former Governor Andrew Cuomo's highest-ranking aides, used her seniority and authority to contribute to an office environment where Charlotte Bennett was sexualized and forced to perform demeaning tasks to please former Governor Cuomo.  When Ms. Bennett reported then-Governor Cuomo's sexual harassment of her to Defendant DesRosiers, she failed to investigate her allegations or report them to the Governor's Office of Employee Relations ("GOER"), as she was required by internal policy and by law.  Instead, after Ms. Bennett stated that she could no longer work with Defendant Cuomo because she feared his escalating sexual harassment, Defendant DesRosiers transferred her to a "do nothing" position with significantly reduced work responsibilities.

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983 ("§ 1983") protect plaintiffs from violations of their federal rights, and the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL") and New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL")

---

[1] Plaintiff addresses only those arguments raised in Defendant Jill DesRosiers' motion to dismiss, Doc. 34, in this opposition.

[2] Plaintiff also incorporates by reference the arguments set forth in her memoranda of law in opposition to Defendant Andrew Cuomo's, Defendant Melissa DeRosa's, and Defendant Judith Mogul's motions to dismiss.

(collectively, "the NY/NYC Laws") provide broad protections for employees seeking to hold powerful people like Defendant DesRosiers accountable for aiding and abetting others' unlawful conduct, as well as for retaliating against employees after they report it.

As the New York Attorney General's investigation into Defendant Cuomo's alleged sexual harassment expressly concluded, Defendant DesRosiers' "purported determination" that his sexist and sexualized comments "did not constitute sexual harassment, or were not even of a 'sexually harassing nature' under the policies, was wrong." *See* State of New York Office of the Attorney General Letitia James, *Report of Investigation into Allegations of Sexual Harassment by Governor Andrew M. Cuomo* ("AG Report") at 152, available at https://ag.ny.gov/sites/default/ files/ 2021.08.03_nyag_-_investigative_report.pdf. It further concluded that Defendant DesRosiers' decision to "serve a screening role" instead of referring Plaintiff's complaint to GOER, which she was required to do, was also wrong. *Id.* at 152-53.[3] Defendant DesRosiers' motion to dismiss must be denied.

## **RELEVANT FACTUAL BACKGROUND**

I. **DEFENDANT DESROSIERS' INVOLVEMENT IN HARASSMENT OF PLAINTIFF**

Defendant DesRosiers served as Chief of Staff for former Governor Andrew M. Cuomo[4] ("Defendant Cuomo") from around January of 2019 until around December of 2020. Doc. 1

---

[3] Defendants cite to the materials collected during the New York Attorney General's investigation into Defendant Cuomo's alleged sexual harassment. Doc. 33 at 23 n.7; Doc. 34 at 16, 23; Doc. 38 at 1. For the purposes of a motion to dismiss "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citation omitted). When a document is not incorporated by reference, the Court may "consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Id.* (citation omitted). Given that Plaintiff refers to that report in her Complaint, *see, e.g.*, Doc. 1 ¶¶ 135-38, she does not oppose consideration of that investigation and report.

[4] Plaintiff incorporates by reference all allegations against all Defendants, including Defendant Cuomo, in her Complaint (Doc. 1), to the extent those allegations apply to this Opposition to Defendant DesRosiers' motion to dismiss.

¶ 12.  In that role, she worked on the 39th floor of the Executive Chamber's New York City office, where Defendant Cuomo's office was located.

Charlotte Bennett ("Plaintiff") started working for the State of New York in January 2019 as a Briefer. *Id.* ¶ 15.  At that time, she was 23 years old. *Id.*  It was well-known that Defendant Cuomo preferred to work with women who were pretty and dressed in a stereotypically feminine and sexy manner, and female employees were pressured to conform to meet this preference. *Id.* ¶ 16.  Plaintiff observed Defendant Melissa DeRosa ("Defendant DeRosa"), then-Secretary to the Governor, Defendant DesRosiers, and other female staffers who worked on the 39th floor wearing dresses and high heels when Defendant Cuomo was in the office. *Id.*  When Plaintiff was a Briefer, she worked on the 38th floor, where female staffers typically wore business casual attire, and she usually wore business attire pants (not dresses). *Id.*  But when Defendant Cuomo hired Plaintiff as his Executive Assistant later in 2019 and she relocated to the 39th floor, Plaintiff felt compelled to wear dresses or other traditionally feminine attire, including high-heeled shoes, when Defendant Cuomo was in the office.  Defendant DesRosiers and others set the tone where women were pressured to wear traditional feminine attire when working near Defendant Cuomo. *Id.* ¶¶ 21, 185, 220.

Over the course of Plaintiff's employment as Executive Assistant for Defendant Cuomo, he made numerous harassing and gender-based comments about her body, clothing, appearance, and femininity. *See id.* ¶¶ 39-41, 69, 76, 79.  Defendant Cuomo thus made it clear that he expected his female employees to dress femininely, and he made it painfully clear that he paid attention to Plaintiff's appearance and was displeased when she did not dress femininely. *Id.*  He also repeatedly asked her questions about her sex life, romantic interests, and history of sexual

assault.  *Id.* ¶¶ 23, 31, 48, 53, 65-68.  This made Plaintiff feel extremely uncomfortable, distressed, and demeaned.  *Id.*

On May 15, 2020, Plaintiff had a conversation alone with Defendant Cuomo in his office.  *Id.* ¶ 52.  Defendant Cuomo made Plaintiff extremely uncomfortable when he asked Plaintiff who she was "hitting on," who was hitting on her, and whether she was interested in any male staffers.  *Id.* ¶ 53.  When Plaintiff tried to change the subject and asked how Defendant Cuomo was coping with the pandemic, he told Plaintiff that he wanted a girlfriend and that he wanted to ride into the mountains with a beautiful woman on the back of his motorcycle.  *Id.* ¶ 56.

The harassment reached a tipping point on June 5, 2020, when his invasive questions turned into what she reasonably understood to be a sexual advance.  Defendant Cuomo told Plaintiff he was "lonely" and that he wanted a girlfriend, and asked Plaintiff what her longest relationship had been and whether she had been monogamous.  *Id.* ¶¶ 63-66.  He also asked whether she enjoyed herself physically during sex, whether she slept with older men, and whether age mattered in a relationship.  *Id.* ¶¶ 67-68.  Defendant Cuomo said that he would be willing to date someone very young – as long as she was over the age of 21 years old.  *Id.* ¶ 68.  Plaintiff was 25 years old at the time.  *Id.* ¶ 2.  The next day, while Plaintiff was working alone with Defendant Cuomo at the Capitol, he asked her if she had found him a girlfriend and told her she looked like Daisy Duke, a television character well-known as a sex symbol.  *Id.* ¶ 76.

## II.   DEFENDANT DESROSIERS' RETALIATION AND FAILURE TO REFER PLAINTIFF'S REPORT TO GOER

On June 10, 2020, Plaintiff reported Defendant Cuomo's sexual harassment to Defendant DesRosiers.  *Id.* ¶ 81.  She informed Defendant DesRosiers that Defendant Cuomo had "crossed a boundary" and had told her that he was lonely and wanted a girlfriend and asked repeated questions about her sex life.  *Id.*  Defendant DesRosiers did not ask any follow-up questions

4

about Defendant Cuomo's conduct.  *Id.* ¶¶ 81-82.  Plaintiff also told her that she was no longer

comfortable serving as his Executive Assistant.  *Id.* ¶ 81.  Defendant DesRosiers did not

encourage Plaintiff to remain in her position, ensure that corrective action would be taken,

explain the sexual harassment policies of the Executive Chamber, or assure Plaintiff that she

would be protected against retaliation because of her report.  *Id.* ¶¶ 81-82.  Instead, on or around

that day, Defendant DesRosiers relayed Plaintiff's complaint to Defendant DeRosa and Judith

Mogul ("Defendant Mogul"), and either or both in turn informed Defendant Cuomo shortly

thereafter.  *Id.* ¶ 83.

Two days later, Defendant DesRosiers informed Plaintiff she could transfer to the

Executive Chamber's Health Policy team.  *Id.* ¶ 84.  Defendant DesRosiers then asked Plaintiff if

she could share her complaint with Defendant DeRosa and Stephanie Benton, the Director of the

Governor's Offices, even though she had already informed Defendants DeRosa and Mogul.

*Id.* ¶¶ 83, 85.  Plaintiff agreed but made clear she did not want Defendant Cuomo informed

because she feared his retaliation.  *Id.*  Defendant DesRosiers did not inform Plaintiff that she

was protected from retaliation and did not reveal that Defendant Cuomo was already aware of

her complaint.  From June 10, 2020, until June 30, 2020, Defendant DesRosiers took no action to

investigate Plaintiff's sexual harassment complaint, even though GOER policy mandated that she

report conduct potentially constituting sexual harassment.  *Id.* ¶¶ 83, 91, 97.[5]

Meanwhile, Plaintiff began her new role on the Health Policy team.  She reported for her

first day on June 15, 2020, but her supervisor was not available to meet until the next day.  *Id.*

¶ 86.  Less than one month later, Defendant Cuomo announced his replacement of Plaintiff's

supervisor, who, upon learning this news, abruptly stopped coming to work for more than a

---

[5] Plaintiff's Complaint reproduces the relevant portions of the Executive Department's Equal Opportunity Employee Handbook ("the Handbook").  *See id.* ¶ 101.

week, leaving Plaintiff without meaningful work assignments. *Id.* ¶ 108. When Plaintiff's supervisor returned to work, she was largely unresponsive to Plaintiff's questions and requests. *Id.* ¶ 111. Her replacement similarly gave Plaintiff very few assignments. *Id.* ¶ 113.

On June 29, 2020, Plaintiff told several staffers she had left her role as Defendant Cuomo's Executive Assistant because he had made sexual advances toward her. *Id.* ¶ 90. One of these staffers relayed Plaintiff's complaints to Defendant DesRosiers on June 30, 2020, who in turn told Defendants DeRosa and Mogul. *Id.* ¶ 91.

It was only after Defendant DesRosiers knew of internal gossip circulating in the Executive Chamber – and not when Plaintiff had first reported the sexual harassment – that she made plans to interview Plaintiff on June 30, 2020. *Id.* Over the course of approximately ninety minutes, Plaintiff detailed Defendant Cuomo's conduct to Defendants DesRosiers and Mogul. *Id.* ¶ 93. She told them, among other things, that Defendant Cuomo had asked her questions about her sex life, that he said he was willing to date someone if she was over the age of 21, knowing that Plaintiff was then 25 years old, and asked if she had been monogamous in past relationships. *Id.* ¶ 93. Both Defendants DesRosiers and Mogul took contemporaneous notes during the interview, and both concluded that Plaintiff was credible. *Id.* ¶ 95. Defendant DesRosiers was concerned by what Plaintiff had told her and believed that what Plaintiff had experienced was not "trivial." *Id.* At the end of the interview, Plaintiff told Defendants DesRosiers and Mogul that she was afraid of Defendant Cuomo's retaliation and repeated that she did not want him to be informed of her complaint. *Id.* ¶ 96. Instead of assuring Plaintiff that she would be protected from retaliation, as she was legally required to do, Defendant DesRosiers neglected to tell Plaintiff the truth, that he had already been informed. *Id.*

6

After this interview, Plaintiff examined the Executive Department's Equal Opportunity Employee Handbook ("the Handbook") and concluded that Defendants DesRosiers and Mogul were required to refer her complaint to GOER. *Id.* Plaintiff was understandably terrified at the prospect of an investigation. She had witnessed Defendant Cuomo's, and the other Defendants', tempers flare when they were frustrated or angry, and she feared the retaliation she might face. *Id.* ¶ 102. That evening, Plaintiff spoke with Defendants DesRosiers and Mogul and expressed concern that the Handbook required GOER to investigate her complaint. *Id.* ¶ 103. Neither Defendant confirmed that an investigation was mandatory; nor did they assure Plaintiff she would be protected from retaliation.

Meanwhile, Plaintiff's health, which had suffered throughout Defendant Cuomo's harassment of her, continued to deteriorate. She had very little work and few meaningful assignments in her new role, which exacerbated her feelings of anxiety, depression, tearfulness, irritability, difficultly concentrating, and excessive sleepiness. *Id.* ¶¶ 108-14. After speaking with her medical provider and therapist, she concluded that Defendant Cuomo's sexual harassment and her resulting transfer to a "do nothing" position was damaging her health, and she made the difficult decision that she needed to resign. *Id.* ¶ 114. Plaintiff notified Defendant DesRosiers of her resignation on October 23, 2020. *Id.* ¶ 122. Defendant DesRosiers half-heartedly offered to find Plaintiff another job but acknowledged she might want to "get away." *Id.* Plaintiff told her she wanted to get away from Defendant Cuomo.

After Plaintiff's allegations and those of other women harassed by Defendant Cuomo became public, New York Attorney General Letitia James was tasked to investigate. *Id.* ¶ 129. She released her report on August 3, 2021, which found, among other things, that Defendant

Cuomo had harassed Plaintiff and that Defendant DesRosiers' failure to refer Plaintiff's complaint violated the Executive Chamber's internal sexual harassment policy. *Id.* ¶ 138.

## THE INSTANT MOTION

Defendant DesRosiers moves to dismiss all claims against her, claiming that Plaintiff did not allege that she aided and abetted any unlawful conduct, that Plaintiff did not allege that she committed any discriminatory acts against Plaintiff; that Plaintiff did not allege that she retaliated against Plaintiff; and that all of Plaintiff's claims fail on the basis of qualified immunity. Her arguments are unavailing, and her motion must be denied.

## I.   STANDARD OF REVIEW

The burden placed on the plaintiff on a Rule 12(b)(6) motion is exceedingly minimal, especially for discrimination cases. *See Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998) ("[T]he pleading requirements in discrimination cases are very lenient, even *de minimis*."). A court must accept as true the plaintiff's allegations and draw all reasonable inferences in her favor. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78 (2d Cir. 2015). A court must deny the motion to dismiss where the plaintiff plausibly alleges that the defendants violated the law. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[T]he question is . . . whether the well-pleaded factual allegations *plausibly* give rise to an inference of unlawful discrimination.'" *Vega*, 801 F.3d at 87 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegality." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 556) (alteration accepted).

## II.    ARGUMENT

### A.    Plaintiff Plausibly Alleges That Defendant DesRosiers Aided and Abetted Sexual Harassment and Gender Discrimination of Plaintiff

Defendant DesRosiers seeks to dismiss the Fifth and Ninth Causes of Action for aiding and abetting unlawful conduct under the NY/NYC Laws, claiming that she is not subject to liability because she did not actually participate in unlawful conduct and because the actions she took after learning of Plaintiff's complaints were "effective." Her arguments must be rejected.

As a preliminary matter, the NY/NYC Laws were designed to rid the workplace of all unlawful discrimination.  The New York Court of Appeals emphasized that the aiding and abetting provision "should be construed broadly" to effectuate its purpose:  "to bring within the orbit of the bill all persons, no matter what their status, who aid or abet any of the forbidden practices of discrimination or who attempt to do so." *Griffin v. Sirva, Inc.*, 29 N.Y.3d 174, 187 (2017) (citation omitted).[6]  The Second Circuit has cautioned that "the pleading requirements in discrimination cases are very lenient, even *de minimis*." *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) (citation omitted).  To be liable, Defendant DesRosiers "need not [her]self take part in the primary violation." *Schaper v. Bronx Lebanon Hosp. Ctr.*, 408 F. Supp. 3d 379, 395 (S.D.N.Y. 2019) (citation omitted).  Instead, "an individual . . . can aid, abet, incite, coerce or compel, a primary violation of the HRL committed by another employee." *Lewis v. Triborough Bridge & Tunnel Auth.*, 77 F. Supp. 2d 376, 381 (S.D.N.Y. 1999).

### i.    Plaintiff Alleged Defendant DesRosiers' Actions and Inaction Shielded Defendant Cuomo from Repercussions.

Courts have acknowledged that a defendant is liable for aiding and abetting "for failure to take appropriate investigative or remedial measures upon being informed of offensive conduct."

---

[6] As discussed *infra*, the pleading requirements for the NYCHRL are even more liberal than for the NYSHRL.  *See Chauca v. Abraham*, 841 F.3d at 86, 87 (2d Cir.), *as amended* (Nov. 8, 2016).

*Schaper*, 408 F. Supp. 3d at 396; *see also Delisi v. Nat'l Ass'n of Pro. Women, Inc.*, 48 F. Supp. 3d 492, 496 (E.D.N.Y. 2014) (concluding that a "failure to investigate [discrimination] can constitute 'active participation' to support an 'aiding and abetting' claim"); *Lewis*, 77 F. Supp. 2d at 384 (noting that "the case law establishes beyond cavil" that failure to take adequate remedial measures can render an official liable for aiding and abetting discrimination).

Plaintiff reported Defendant Cuomo's sexual harassment to Defendant DesRosiers on June 10, 2020. The meeting lasted only a few minutes: Defendant DesRosiers did not ask any follow-up questions. Doc. 1 ¶¶ 81-82. Defendant DesRosiers knew that it was GOER's responsibility to conduct investigations into allegations of sexual harassment and she was required to report the conduct to GOER for investigation. But she did not. That allegation alone is sufficient to plead aiding and abetting liability under the NY/NYC Laws. *See Schaper*, 408 F. Supp. 3d at 396; *Delisi*, 48 F. Supp. 3d at 496; *Lewis*, 77 F. Supp. 2d at 384.

Defendant DesRosiers asserts her actions were sufficient and that even if they were not, that inadequacy does not render her liable.[7] Doc. 34 at 11-12. But a defendant does not automatically receive a free pass from aiding and abetting liability if they merely took *some* action. Courts consider a defendant's actions as well as inactions and have recognized that the judgments officials make about whether an investigation is necessary can create liability for aiding and abetting unlawful conduct, even where *some* investigation or remedial steps were

---

[7] Along similar lines, Defendant DesRosiers argues that Plaintiff's transfer to the Health Policy team was "effective" to stop Defendant Cuomo's harassment and therefore she cannot be liable. As discussed in Plaintiff's Opposition to Defendant Mogul's Motion to Dismiss, Plaintiff does not concede that the harassment ceased at the time of her transfer. In any event, inaction can confer liability "even if the harasser unilaterally decides to cease the harassment." *Pachura v. Austin*, No. 621-cv-0316 (LEK/ATB), 2022 WL 1909546, at *7 (N.D.N.Y. June 3, 2022) (holding that inaction can confer liability even in the higher standard of Title VII); *see also Baez v. Anne Fontaine USA, Inc.*, No. 14-cv-6621 (KBF), 2017 WL 57858, at *5 (S.D.N.Y. Jan. 5, 2017) (finding the failure to take remedial action established aiding and abetting liability without mentioning whether the harassment ceased); *Bennett v. Progressive Corp.*, 225 F. Supp. 2d 190, 213-15 (N.D.N.Y. 2002) (same).

taken.  For example, in *Baez v. Anne Fontaine USA, Inc.*, the court denied summary judgment on

an aiding and abetting claim where an official failed to sufficiently investigate a claim of

discrimination, even though the official *actually did* issue a written warning.  No. 14-cv-6621

(KBF), 2017 WL 57858, at *5-6 (S.D.N.Y. Jan. 5, 2017).[8]

Furthermore, Defendant DesRosiers' actions were woefully inadequate.  After Plaintiff's

June 10 report, Defendant DesRosiers took no further action to investigate or report Plaintiff's

allegations to GOER, despite being required to do so.[9]  It was only after she learned of office

gossip circulating that she interviewed Plaintiff – a full three weeks later.  Doc. 1 ¶ 91.  That

interview lasted merely ninety minutes, and during it, Defendant DesRosiers failed to assure

Plaintiff that she would be protected from retaliation or that an investigation was mandatory

under the Executive Chamber policy.  At no point did Defendant DesRosiers take active steps to

investigate Plaintiff's allegations or to ensure Defendant Cuomo would face repercussions.

Indeed, even the Attorney General's Report confirmed that Defendant DesRosiers' failure to take

remedial action – based on the erroneous premise that Plaintiff's complaint did not rise to the

level of sexual harassment – was wrong.  AG Report at 152.[10]  This level of inaction is a "failure

---

[8] The allegations here sharply contrast to those in *McHenry*, upon which Defendant DesRosiers and the other Defendants heavily rely.  In *McHenry*, the plaintiff's complaint resulted in an investigation by outside counsel. *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 78-79 (S.D.N.Y. 2020).  Here, Defendant DesRosiers took no action to report Plaintiff's allegations to GOER.

[9] Defendant DesRosiers argues that Plaintiff's allegations about her failure to report to GOER are invalid because Plaintiff requested that no referral to GOER be made.  Doc. 34 at 12.  This argument holds no water.  For one, the GOER handbook contains no reference to the complainant's wishes in determining whether an investigation is warranted.  Doc. 1 ¶ 101.  And more importantly, because Defendant DesRosiers had not assured Plaintiff that she would face no retaliation, it is self-evident why Plaintiff would not want an investigation.  To state the obvious: Plaintiff was a twenty-five-year-old junior employee who had just accused Defendant Cuomo, a powerful Governor with a reputation for angry outbursts, of sexual harassment.

[10] The AG Report concluded:

Given the legal standard under state law and the sexual harassment policy, we conclude that the purported determination by Ms. Mogul, Ms. DesRosiers, and Ms. DeRosa—and others informed

to take appropriate investigative or remedial measures upon being informed of offensive conduct" sufficient to establish aiding and abetting liability. *Schaper*, 408 F. Supp. 3d at 396.

### ii.     *Plaintiff Alleged Defendant DesRosiers Approved, Condoned, or Encouraged Defendant Cuomo's Unlawful Actions.*

Courts have recognized a wide range of behavior falls under the umbrella of aiding and abetting unlawful conduct. A defendant's "approval of the conduct" can demonstrate the participation required for NYSHRL aiding and abetting liability. *Bascomb v. Smith Barney Inc.*, No. 96 Civ. 8747 (LAP), 1999 WL 20853, at *6 (S.D.N.Y. 1999), *abrogated on other grounds by Lauture v. Int'l Bus. Machines Corp.*, 216 F.3d 258, 259 (2d Cir. 2000). Courts regularly find that failing to correct discriminatory actions renders an individual liable because it demonstrates that they "encouraged, condoned or approved [defendant's] conduct." *Hicks v. IMB*, 44 F. Supp. 2d 593, 600 (S.D.N.Y. 1999); *cf. Manswell v. Heavenly Miracle Acad. Servs., Inc.*, No. 14-cv-7114 (MKB) (SMG), 2017 WL 9487194, at *7 (E.D.N.Y. Aug. 23, 2017), *report and recommendation adopted*, No. 14-cv-7114 (MKB) (SMG), 2017 WL 4075180 (E.D.N.Y. Sept. 14, 2017) (finding that "an employer's calculated inaction in response to discriminatory conduct may, as readily as affirmative conduct, indicate condonation") (citation omitted) (alteration accepted).

---

of Ms. Bennett's allegations at the time—that the comments reported by Ms. Bennett did not constitute sexual harassment, or were not even of a 'sexually harassing nature' under the policies, was wrong.

*Id.* Furthermore, the AG Report found that:

> [A]ll of these aspects of the Executive Chamber's culture—*e.g.*, the use of fear, intimidation and retribution, the acceptance of everyday flirtation and gender-based comments by the Governor as just "old fashioned," the overriding focus on loyalty and protecting the Governor and attacking any detractors . . . contributed to creating an environment where the Governor's sexually harassing conduct was allowed to flourish and persist. It also interfered with the Executive Chamber's ability—and responsibility—to respond to allegations of sexual harassment in a proper way by taking them seriously, reporting them, and having GOER investigate them.

AG Report at 164.

Drawing all inferences in Plaintiff's favor, she has sufficiently alleged that Defendant DesRosiers participated in Defendant Cuomo's sexual harassment of and gender discrimination against Plaintiff:  Defendant DesRosiers "encouraged, condoned, or approved [defendant's] conduct" by participating in a workplace environment in which sexualization of Plaintiff's body was normalized, expected, and permitted; by failing to properly investigate and report Defendant Cuomo's discriminatory actions; and by arranging to transfer Plaintiff to a "do nothing" position rather than meaningfully address Defendant Cuomo's sexual harassment of Plaintiff. *See Hicks*, 44 F. Supp. 2d at 600.  Defendant DesRosiers' participation in the creation of an environment that emboldened Defendant Cuomo to harass Plaintiff without repercussions properly alleges that she harbored discriminatory intent. *See, e.g.*, *id.* at 593.  Plaintiff has plausibly alleged that Defendant DesRosiers' "calculated inaction[s]" indicate she condoned Defendant Cuomo's behavior and thus shared his discriminatory intent. *Manswell*, 2017 WL 9487194, at *7.[11]

In sum, at this stage, where the court must draw all inferences in Plaintiff's favor, she has plausibly alleged that Defendant DesRosiers aided and abetted Defendant Cuomo's unlawful conduct.  Plaintiff alleged that Defendant DesRosiers encouraged, condoned, approved, accommodated, and acquiesced to Defendant Cuomo's gender-based discrimination and sexual harassment of Plaintiff, and in so doing "actively participated" in contributing to an office

---

[11] Defendant DesRosiers relies selectively on inapposite cases where the plaintiffs, unlike Plaintiff here, failed to allege any facts to support their claims.  For example, Defendant DesRosiers cites to *Harris*, where the plaintiff failed to mention many of the defendants in her second amended complaint whatsoever, failed to allege any participation in conduct giving rise to a claim of discrimination for another defendant, and only asserted vague allegations against two other defendants. Doc. 34 at 9 (citing *Harris v. NYU Langone Med. Ctr.*, No. 12 Civ. 0454 (RA) (JLC), 2013 WL 3487032, at *30 (S.D.N.Y.  July 9, 2013) (permitting plaintiff to file a third amended complaint to provide specific allegations as to how each defendant participated)).  The plaintiff in *Williams*, upon which Defendant DesRosiers similarly misplaces her reliance, Doc. 34 at 10, also failed to make any non-conclusory allegations of defendant's involvement in unlawful conduct. *Williams v. Rosenblatt Sec. Inc.*, No. 14-cv-4390 (JGK), 2016 WL 412054, at *4 (S.D.N.Y.  July 22, 2016).  Notably, the *Williams* court denied the motions to dismiss for one defendant against whom plaintiff alleged participation in imposing upon plaintiff a condition of psychiatric treatment:  that single allegation was sufficient. *Id.* at *5.

13

environment that was discriminatory as a whole. *See Bascomb*, 1999 WL 20853, at *6; *Hicks*, 44 F. Supp. 2d at 600; *cf. Resetar v. Phillips Feed Serv., Inc.*, No. CV 16-3428, 2017 WL 1092345, at *4 (E.D. Pa. Mar. 23, 2017) (finding that a female official's "selective enforcement of a female-only dress policy shows a general hostility toward women in the workplace"). Further, Plaintiff alleged that, in addition to transferring Plaintiff to a "do nothing" position after she shared her complaints, Defendant DesRosiers failed "to take appropriate investigative or remedial measures." *Schaper*, 408 F. Supp. 3d at 396 (citation omitted). These allegations are more than enough to "nudge" her claims "across the line from conceivable to plausible." *Vega*, 801 F.3d at 87 (citation omitted) (alteration accepted). Accordingly, the Court should deny Defendant DesRosiers' motion to dismiss Plaintiff's aiding and abetting claims under the NY/NYC Laws.

### B. Plaintiff Plausibly Alleges That Defendant DesRosiers Discriminated Against Her on the Basis of Gender

Defendant DesRosiers seeks to dismiss the Ninth Cause of Action for gender discrimination under the NYCHRL. The Court should deny her motion because Plaintiff has plead sufficient facts to demonstrate that Defendant DesRosiers discriminated against her because of her gender, especially under the permissive NYCHRL standard.

Courts must afford the NYCHRL an "independent and more liberal construction" than other federal and state laws and construe the statute "broadly in favor of discrimination plaintiffs." *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 257 (E.D.N.Y. 2012), *aff'd*, 713 F.3d 163 (2d Cir. 2013) (citation omitted). The threshold for defendant liability under the NYCHRL is low: a plaintiff must merely show that she was "treated less well than her male colleagues because of her gender." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 113 (2d Cir. 2013); *see also Edelman v. NYU Langone Health Sys.*, No. 21 Civ. 502 (LGS),

2022 WL 4537972, at *12 (S.D.N.Y. Sept. 28, 2022) ("The NYCHRL is less demanding of

plaintiffs than Title VII, and Plaintiff may prove an adverse employment action simply by

showing that she was treated less well.") (citation omitted); *see generally Vega*, 801 F.3d at 86-

87 (noting that plaintiff can show discriminatory intent for Title VII claims, which require a

higher showing, by pointing to "bits and pieces of information to support an inference of

discrimination, *i.e.*, a mosaic of intentional discrimination") (citation omitted).  Given this

especially low threshold for liability, at the motion to dismiss stage where all facts are viewed in

the light most favorable to the plaintiff, a plaintiff need only set forth evidence of "unwanted

gender-based conduct." *Lenart v. Coach Inc.*, 131 F. Supp. 3d 61, 69 (S.D.N.Y. 2015).

      The context of the office environment in which Plaintiff worked lends itself to a strong

inference that Defendant DesRosiers participated in discrimination.  Courts have recognized the

importance of considering the "social context" in which discriminatory acts occur.  *See*

*Hernandez v. Kaisman*, 957 N.Y.S.2d 53, 57 (N.Y. App. Div. 2012) (concluding that a jury

could reasonably determine that emails sent to both male and female employees, in the context of

an office environment where comments were routinely made sexualizing female employees,

were sent to provoke a reaction from the women in the office).  Contrary to Defendant

DesRosiers' arguments, her participation in normalizing the "social context," the expectation that

female employees working on the 39th floor wear feminine attire when Defendant Cuomo was in

the office, contributed to an office environment in which Plaintiff was treated differently from

and "less well" than male employees. *See Mihalik*, 715 F.3d at 113; *cf. Resetar*, 2017 WL

1092345, at *4.

      Defendant DesRosiers' refusal to investigate and report Plaintiff's complaint to GOER,

as well as her transfer of Plaintiff to a "do nothing" position, happened because of Plaintiff's

gender. Both actions only occurred because Plaintiff reported Defendant Cuomo's sexual harassment of her – sexual harassment which occurred *because of her gender*. To that end, courts can infer a connection between the conduct alleged and that conduct occurring "because of" a plaintiff's gender. *See Carter v. Verizon*, No. 13 Civ. 7579 (KPF), 2015 WL 247344, at *12 (S.D.N.Y. Jan. 20, 2015) (denying motion to dismiss where plaintiff inferred conduct took place because of his gender by making allegations about the "potentially gender-charged physicality of the conduct"); *see also Lenart*, 131 F. Supp. 3d at 69 (concluding plaintiff alleged "unwanted gender-based conduct" and denying motion to dismiss NYCHRL hostile work environment claim, where plaintiff claimed he had to undergo extra interviews and testing and his female colleagues did not and that he heard the defendant had a preference for working with women). Construing the allegations liberally and in Plaintiff's favor, she has alleged Defendant DesRosiers' conduct occurred "because of" her gender.

As a last-ditch effort to dispose of the gender discrimination claim, Defendant DesRosiers argues that because Plaintiff's transfer was voluntary, it was not an adverse employment action, and cannot support a claim of discrimination. Again, the standard for NYCHRL gender discrimination liability is whether the plaintiff alleges she was treated "less well" than male employees, *Mihalik*, 715 F.3d at 113, which Plaintiff has alleged: Defendant DesRosiers treated Plaintiff "less well" when she transferred Plaintiff to a "do nothing" position after she reported sexual harassment to her, while the male employee whom she accused remained in his job. Furthermore, as discussed *infra*, courts have found transfers initiated at a plaintiff's request to constitute adverse employment actions.

Taken as a whole, Defendant DesRosiers' actions are enough for the Court, at this stage, to reasonably infer that gender-based animus infected her conduct. *See Moazzaz v. MetLife, Inc.*,

No. 19-cv-10531 (JPO), 2021 WL 827648, at *8 (S.D.N.Y. Mar. 4, 2021) (concluding the claims may proceed where plaintiff alleged sufficient facts to infer gender animus). Plaintiff alleged that Defendant DesRosiers contributed to an office environment in which Plaintiff was treated differently from and "less well" than male employees: she alleged Defendant DesRosiers participated in normalizing the "social context" that female employees wear feminine attire when Defendant Cuomo was in the office, that Defendant DesRosiers failed to report or investigate Plaintiff's complaint of sexual harassment, and that she transferred her to a "do nothing" position rather than ensuring Defendant Cuomo face repercussions for his actions. Accordingly, the Court should deny Defendant DesRosiers' motion to dismiss the Ninth Cause of Action.

### C. **Plaintiff Plausibly Alleges That Defendant DesRosiers Retaliated Against Her**

Defendant DesRosiers seeks to dismiss the Third, Sixth, and Tenth Causes of Action for retaliation, claiming that Plaintiff's transfer was not an adverse employment action, and that Plaintiff did not allege a causal connection between Defendant DesRosiers' actions and her transfer to a "do nothing" position. As with her other arguments, these are unavailing.

To state a claim for retaliation under § 1983 or the NYSHRL, Plaintiff must plausibly allege that "(1) defendants discriminated—or took an adverse employment action—against [her], (2) because [she] has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90 (internal quotations omitted) (concluding that the same standards govern retaliation claims under § 1983 and Title VII); *Farmer v. Shake Shack Enterprises, LLC*, 473 F. Supp. 3d 309, 330 (S.D.N.Y. 2020) (concluding that the same standards govern retaliation claims under both the NYSHRL and Title VII). Courts define "adverse employment actions" for retaliation claims under § 1983 or NYSHRL as "any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Vega*, 801 F.3d at 90 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)).

The retaliation inquiry is significantly broader for claims brought under the NYCHRL. The New York City Council amended the law in 2005 to emphasize that "interpretations of state and federal civil rights statutes can serve only as a *floor* below which the [NYCHRL] cannot fall" and that the NYCHRL should "be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof." *Mihalik*, 715 F.3d at 109 (citations omitted). Retaliation in violation of the NYCHRL "need not result in an ultimate action with respect to employment . . . or in a materially adverse change in the terms and conditions of employment." N.Y.C. Admin. Code § 8-107(7). A plaintiff need only allege that something happened that would "be reasonably likely to deter a person from engaging in protected activity." *Id.*

In 2019, the NYSHRL was amended to require courts to construe the NYSHRL, like the NYCHRL, "liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws including those laws with provisions worded comparably to the provisions of [the NYSHRL] have been so construed." N.Y. Exec. Law § 300. The effect of the amendment "is to render the standard for claims [brought under the NYSHRL] closer to the standard under the NYCHRL." *Weekes v. JetBlue Airways Corp.*, No. 21-cv-1965 (MKB), 2022 WL 4291371, at *7 (E.D.N.Y. Sept. 16, 2022) (citation omitted).

### i. *Plaintiff Has Alleged Defendant DesRosiers Took Adverse Actions Against Her and that Defendant DesRosiers Took Actions Likely to Deter a Person from Engaging in Protected Activity.*

Defendant DesRosiers attempts to style Plaintiff's transfer as a "voluntary transfer" and argues that the transfer cannot be an adverse employment action, or something that would "be reasonably likely to deter a person from engaging in protected activity." N.Y.C. Admin. Code § 8-107(7). Defendant DesRosiers is wrong. When she reported Defendant Cuomo's sexual harassment, Plaintiff told Defendant DesRosiers she could no longer interact with him and

18

requested a transfer.  Doc. 1 ¶ 81.  Plaintiff did not request this transfer because she wanted a different position; she sought to escape regular, and escalating, sexual harassment.  *Id.*

   Courts consistently find "voluntary transfers" to constitute adverse employment actions in the context of constructive transfer claims under Title VII, which again marks the floor for Plaintiff's claims.  *See United States v. N.Y.C. Dep't of Educ.*, No. 16 Civ. 4291 (LAK) (JCF), 2017 WL 435940, at *8 (S.D.N.Y. Jan. 31, 2017), *report and recommendation adopted*, No. 16-cv-4291 (LAK), 2017 WL 1319695 (S.D.N.Y. Apr. 4, 2017) ("[A] voluntary transfer to a materially inferior position becomes actionable as a constructive involuntary transfer when an employer creates conditions so difficult or unpleasant that a reasonable person . . . would have been compelled to request and accept the transfer." (citation omitted) (alteration accepted)); *Claes v. Boyce Thompson Inst. for Plant Research*, 88 F. Supp. 3d 121, 127 (N.D.N.Y. 2015) (noting that "a reasonable person in plaintiff's shoes would have felt compelled to request the transfer rather than risk termination," and concluding plaintiff plausibly alleged constructive demotion).  Plaintiff alleges facts sufficient to demonstrate that she only requested to transfer to a different role because her employer Defendant Cuomo created conditions "so difficult or unpleasant that a reasonable person . . . would have been compelled to request and accept the transfer." *N.Y.C. Dep't of Educ.*, 2017 WL 435940, at *8.  Drawing all inferences in her favor, that is enough to demonstrate this transfer was involuntary.

   Plaintiff similarly alleged facts sufficient to demonstrate that Plaintiff was transferred to a materially inferior position where she received little supervisor guidance (if any), significantly reduced job responsibilities which decreased markedly over time, and fewer opportunities for meaningful career development.  Doc. 1 ¶¶ 86, 108-14.  A "reduction in pay is not required for a transfer to be an adverse employment action." *N.Y.C. Dep't of Educ.*, 2017 WL 435940, at *8

(citing *De la Cruz v. New York City Human Resources Admin. Dep't of Soc. Servs*, 82 F.3d 16, 21 (2d Cir. 1996) (finding transfer to "less prestigious unit with little opportunity for professional growth" was an adverse employment action)); *Alvarez v. N.Y.C. Dep't of Educ.*, No. 20-cv-255, 2021 WL 1424851, at *8 (S.D.N.Y. April 15, 2021) (finding transfer could be adverse employment action because it "resulted in a less distinguished title and significantly diminished material responsibilities," even absent pay reduction).

Shortly after Plaintiff, desperate to escape Defendant Cuomo's escalating sexual harassment, requested a transfer, Defendant DesRosiers arranged for her transfer into a position that immediately offered reduced responsibilities. These conditions materially worsened over time, simultaneously as Defendant DesRosiers refused to report Plaintiff's allegations to GOER, failed to investigate her allegations, and neglected to inform Plaintiff of her right to be free from retaliation or that Defendant Cuomo, of whose retaliation she specifically stated she was afraid, had already been informed of her allegations. These actions collectively qualify as an "adverse employment action" as well as behavior that might dissuade a reasonable worker from complaining of discrimination. *See Johnson v. J. Walter Thompson U.S.A., LLC*, 224 F. Supp. 3d 296, 314-15 (S.D.N.Y. 2016) (concluding that defendants' conduct "considered as a whole" qualified as "employment consequences of a negative nature" resulting from making a complaint that could chill other employees from speaking up) (quoting *Cox v. Onondaga Cnty. Sheriff's Dep't*, 760 F.3d 139, 147 (2d Cir. 2014)).

### ii.      *Plaintiff Has Alleged a Causal Connection Between Her Complaint of Sexual Harassment and Her Transfer to a "Do Nothing" Position.*

Defendant DesRosiers' claim that Plaintiff failed to allege a causal connection between her complaint and an adverse employment action lacks merit. For federal, NYSHRL, and NYCHRL retaliation claims, to show causation between the adverse action and the protected

activity, a claimant must plead a connection between the two, which may be done using temporal proximity.  *See Vega*, 801 F.3d at 91 ("A retaliatory purpose can be shown indirectly . . . protected activity followed closely in time by adverse employment action."); *Mooney v. City of New York*, No. 18 Civ. 328 (DLC), 2018 WL 4356733, at *9 (S.D.N.Y. Sept. 12, 2018).

Defendant DesRosiers attempts to make much of the "but-for" causation standard applied by the Second Circuit in *Vega*, but the court made clear that "the but-for causation standard does not alter the plaintiff's ability to demonstrate causation . . . through temporal proximity."  801 F.3d at 91 (quoting *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845-46 (2d Cir. 2013)).[12] Indeed, in *Vega* the Second Circuit concluded that the plaintiff plausibly alleged temporal proximity for each of the retaliatory actions he alleged, which occurred between two and three months after his protected activity.  *Id.* at 92.  Meanwhile, Plaintiff has alleged that Defendant DesRosiers' retaliatory action occurred a mere two days after her protected activity, when she was transferred into a role with significantly less work responsibilities and less challenging opportunities to advance her career and skills.  And less than a month later, her supervisor abruptly stopped coming to work after Defendant Cuomo announced that he replaced her, leaving Plaintiff entirely without meaningful work assignments.  Doc. 1 ¶ 108.  Accordingly, Plaintiff has sufficiently plead an indirect causal connection for all of her retaliation claims

---

[12] Defendant DesRosiers ignores the availability of "indirect" causal connection and focuses primarily on cases where the court examined a causal connection directly, "through evidence of retaliatory animus directed against the plaintiff," instead of indirectly, "by showing that the protected activity was followed closely by the discriminatory treatment."  *Farmer*, 473 F. Supp. 3d at 333 (finding insufficient direct evidence to establish a causal connection, but sufficient indirect evidence based on the proximity of the relevant events, "[a]t most, three weeks") (citation omitted).  She cites to *Trujillo v. City of New York*, No. 14 Civ. 8501 (PGG), 2016 WL 10703308, at *17-20 (S.D.N.Y. Mar. 29, 2016), where the court concluded that a seven-month period during which the plaintiff made his complaints of unlawful discrimination, among other things, was insufficient to show a causal connection.  Doc. 34 at 19.  Plaintiff alleges significantly greater proximity in time and easily passes even the bar set in *Trujillo*.  Defendant DesRosiers later cites to *Dickens v. Hudson Sheraton Corp. LLC*, 689 Fed. App'x 670, 673 (2d Cir. 2017), where the court concluded the plaintiff failed to "provide enough information" to draw even an indirect inference of causal connection.  Plaintiff here has alleged more than sufficient information about the temporal proximity of her claims to draw an indirect inference of causal connection.

against Defendant DesRosiers. *See Zann Kwan*, 737 F.3d at 845 (three-week period between complaint and termination sufficient to show causal connection); *see also, e.g.*, *Feliciano v. City of New York*, No. 14 Civ. 6751 (PAE), 2015 WL 4393163, at *10 (S.D.N.Y. July 15, 2015) (collecting cases requiring adverse action occur within about two months of protected activity).

In short, Plaintiff alleged sufficient facts to demonstrate direct causal connection, even under the "but-for" causation standard applicable only to her § 1983 claim. *See Vega*, 801 F.3d at 90. But for Plaintiff's complaint of Defendant Cuomo's sexual harassment of her, which occurred because of her gender, Defendant DesRosiers would not have transferred her to a "do nothing" position. Instead, had Defendant DesRosiers taken Plaintiff's complaint seriously, she would have, at a minimum, asked follow-up questions, conducted an investigation, and referred Plaintiff's complaint to GOER before hastily transferring her to a new role. Drawing all inferences in Plaintiff's favor, the Court can infer that Defendant DesRosiers took this series of actions in direct response to Plaintiff's complaint of sexual harassment and for the explicit purpose of shielding Defendant Cuomo, burying Plaintiff's complaint, and isolating Plaintiff in a new role where her concerns could be forgotten. Taken together, and construed favorably on a motion to dismiss, these allegations "plausibly paint a mosaic of retaliation and an intent to punish [plaintiff] for complaining of discrimination." *Vega*, 801 F.3d at 92.

### D. **Defendant DesRosiers is Not Entitled to Qualified Immunity**

In a last-ditch effort to protect herself from liability, Defendant DesRosiers argues that she is entitled to qualified immunity. She is not. Indeed, the Second Circuit has warned that "advancing qualified immunity as grounds for a motion to dismiss is almost always a procedural mismatch." *Chamberlain Estate of Chamberlain v. City of White Plains*, 960 F.3d 100, 110-11 (2d Cir. 2020) (noting that "as a general rule, the defense of qualified immunity cannot support the grant of a Rule 12(b)(6) motion") (citation omitted). Such a defense "faces a formidable

hurdle . . . and is usually not successful." *Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 191-92 (2d Cir. 2006) (citation omitted).  Defendant DesRosiers does not clear this high bar.

A defendant raising the defense at the motion to dismiss stage rather than the summary judgment stage "must accept the more stringent standard applicable to this procedural route": the motion may be granted only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief" and only if the facts supporting the defense "appear on the face of the complaint." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).  On a motion to dismiss, "it is the defendant's conduct *as alleged in the complaint* that is scrutinized for 'objective legal reasonableness.'" *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996).  Finally, plaintiffs are "entitled to all reasonable inferences from the facts alleged, not only those that support [their] claim, but also those that defeat the immunity defense." *McKenna*, 386 F.3d at 436.

Qualified immunity only protects government officials from liability "'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Jones v. Treubig*, 963 F.3d 214, 224 (2d Cir. 2020) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  The Supreme Court's two-step framework requires courts to consider whether "the facts, taken in the light most favorable to the party asserting the injury . . . show the officer's conduct violated a federal right" and whether "the right in question was clearly established at the time of the violation." *Raspardo v. Carlone*, 770 F.3d 97, 113 (2d Cir. 2014).  The Supreme Court's caselaw "does not require a case directly on point for a right to be clearly established." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (citation omitted) (alteration accepted).

Plaintiff has demonstrated that she alleged facts, taken "in the light most favorable to the party asserting the injury," *Raspardo*, 770 F.3d at 113, sufficient to show that Defendant DesRosiers violated her rights.  She has also established the second prong of the qualified immunity analysis, because the "right to be free from employment discrimination and retaliation were all clearly established at the time" Defendant DesRosiers acted.  *See Belyea v. City of Glen Cove*, No. 20-cv-5675 (MKB), 2022 WL 3586559, at *21 (E.D.N.Y. Aug. 22, 2022) (citation omitted); *see also Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 130 (2d Cir. 2004) (denying defendants' qualified immunity defense because it was "eminently clear" that "individuals have a constitutional right to be free from sex discrimination").  Defendant DesRosiers attempts to restyle Plaintiff's allegations to depict her as a reasonable and sympathetic supervisor,[13] but Plaintiff is entitled to "all reasonable inferences from the facts alleged, not only those that support [her] claim, but also those that defeat the immunity defense." *McKenna*, 386 F.3d at 436.  As described above, Defendant DesRosiers' actions "plausibly paint a mosaic" sufficient to support all of Plaintiff's claims.  *Vega*, 801 F.3d at 92.

---

[13] Defendant DesRosiers' argument about whether her actions were objectively or subjectively reasonable under the guise of her qualified immunity defense is a transparent attempt to pull Plaintiff into a factual argument best suited for trial, after discovery and after the parties have had the opportunity to brief all legal issues.  Plaintiff is "entitled to all reasonable inferences from the facts alleged, not only those that support [her] claim, but also those that defeat the immunity defense." *McKenna*, 386 F.3d at 436.  Defendant DesRosiers' cites, relying on summary judgment standards or the standards for incomparable legal claims, are inapposite. *See* Doc. 34 at 21-22.  Defendant DesRosiers' reliance on *Barrer-Cohen* is similarly misplaced. Doc. 34 at 21-22.  In this Title VII case, the court held the plaintiff *did* plead an adverse employment action in the form of reassignment to different duties and a desk in a demeaning "fishbowl" environment. *Barrer-Cohen v. Greenburgh Central Sch. Dist.*, No. 18 Civ. 1847 (NSR), 2019 WL 3456679, at *3-4 (S.D.N.Y. July 30, 2019).  One defendant's qualified immunity defense succeeded only because Plaintiff failed to allege involvement in conduct that could be construed as a constitutional violation, where Plaintiff alleged only defendant's involvement in reassigning her, and nothing further. *Id.*

## CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court deny Defendant

DesRosiers' motion in its entirety.[14]

Dated: December 20, 2022                    Respectfully submitted,

                                            **KATZ BANKS KUMIN LLP**

                                            */s/ Debra S. Katz*

                                            Debra S. Katz
                                            Rachel E. Green
                                            Kayla Morin
                                            11 Dupont Circle, NW, Suite 600
                                            Washington, D.C. 20036
                                            Ph:     (202) 299-1140
                                            Email: katz@katzbanks.com
                                                    green@katzbanks.com
                                                    morin@katzbanks.com


                                            **EISENBERG & SCHNELL LLP**

                                            */s/ Herbert Eisenberg*

                                            Herbert Eisenberg
                                            Laura S. Schnell
                                            233 Broadway, Suite 2704
                                            New York, New York 10279
                                            Ph:     (212) 966-8900
                                            Email: lschnell@eisenbergschnell.com
                                                    heisenberg@eisenbergschnell.com

                                            *Attorneys for Plaintiff Charlotte Bennett*

cc:    All Counsel of Record (via ECF)

---

[14] Though Plaintiff believes that her claims are sufficiently plead and does not seek leave to amend at this juncture, should the Court choose to dismiss any of the claims against Defendant DesRosiers, such a dismissal should be without prejudice, because any defects in Plaintiff's complaint are curable. *See Atadzhanov v. City of New York*, No. 21-cv-5098 (LJL), 2022 WL 4331304, at *12 (S.D.N.Y. Sept. 19, 2022) ("Dismissal with prejudice is appropriate when the flaws in pleading are incurable.") (citation omitted).