**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

_____

|  |  |  |
|---|---|---|
| CHARLOTTE BENNETT, | ) | 1:22-cv-07846 (VSB) (KHP) |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| ANDREW M. CUOMO, MELISSA | ) |  |
| DEROSA, JILL DESROSIERS, and | ) |  |
| JUDITH MOGUL, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

_____

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT JUDITH MOGUL'S MOTION TO DISMISS**

---

Debra S. Katz
Rachel E. Green
Kayla Morin
Katz Banks Kumin LLP
11 Dupont Circle, NW, Suite 600
Washington, D.C. 20036
Ph:     (202) 299-1140
Email:  katz@katzbanks.com
            green@katzbanks.com
            morin@katzbanks.com

Herbert Eisenberg
Laura S. Schnell
Eisenberg & Schnell LLP
233 Broadway, Suite 2704
New York, New York 10279
Ph:     (212) 966-8900
Email:  lschnell@eisenbergschnell.com
            heisenberg@eisenbergschnell.com

*Attorneys for Plaintiff Charlotte Bennett*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................. 1

RELEVANT FACTUAL BACKGROUND............................................................................ 3

I.    PLAINTIFF WAS SUBJECTED TO SEXUAL HARASSMENT WHILE WORKING
FOR DEFENDANT CUOMO.................................................................................. 3

II.    DEFENDANT MOGUL FAILED TO CONDUCT A TIMELY INVESTIGATION
INTO PLAINTIFF'S SEXUAL HARASSMENT COMPLAINT AND FAILED TO
REFER THE COMPLAINT TO GOER.................................................................. 5

THE INSTANT MOTION........................................................................................................ 9

I.    STANDARD OF REVIEW...................................................................................... 9

II.    ARGUMENT............................................................................................................ 10

    A.    Plaintiff Plausibly Alleges That Defendant Mogul Aided and Abetted Unlawful Acts
Under the NY/NYC Laws......................................................................................... 10

        i.    The Threshold for Liability, Contrary to What Defendant Mogul Suggests, Is Low. 10

        ii.    Courts Regularly Find Lawyers Subject to Liability for Aiding and Abetting
Discriminatory Conduct............................................................................................ 13

        iii.    Courts Regularly Hold Individuals Liable for Failing to Investigate a Complaint of
Discrimination........................................................................................................... 14

        iv.  Plaintiff Has Alleged That Defendant Mogul Harbored a Discriminatory Intent. ..... 16

        v.    The Discrimination Was Ongoing at the Time Defendant Mogul Learned of
Plaintiff's Complaint................................................................................................. 18

    B.    Plaintiff Plausibly Alleges That Defendant Mogul Discriminated Against Her on the
Basis of Gender......................................................................................................... 20

    i.    The Court Must Consider the Entire Universe of Plaintiff's Allegations as to
        Defendant Mogul in Determining Whether She Discriminated Against Plaintiff...... 21

    ii.   Plaintiff Has Adequately Alleged She Was Treated Less Well Because of Her
        Gender................................................................................................................ 23

CONCLUSION.............................................................................................................. 25

## TABLE OF AUTHORITIES

**Cases**

*Abe v. New York Univ.*, 94 N.Y.S.3d 17 (2019) ........................................................ 14

*Ananiadis v. Mediterranean Gyros Prod., Inc.*, 54 N.Y.S.3d 155 (2017) ................................... 14

*Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010) ................................... 10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................ 10

*Atadzhanov v. City of New York*, No. 21-cv-5098 (LJL),
    2022 WL 4331304 (S.D.N.Y. Sept. 19, 2022) ................................... 24

*Baez v. Anne Fontaine, USA, Inc.*, No. 14-cv-6621 (KBF),
    2017 WL 57858 (S.D.N.Y. Jan. 5, 2017) ...........................................passim

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................ 10

*Bennett v. Progressive Corp.*, 225 F. Supp. 2d 190 (N.D.N.Y. 2002) ........................ 15, 16, 17, 19

*Brown v. Coach Stores, Inc.*, 163 F.3d 706 (2d Cir. 1998) ................................... 9

*Campisi v. City Univ. of New York*, No. 15 Civ. 4859 (KPF),
    2016 WL 4203549 (S.D.N.Y. Aug. 9, 2016) ................................... 19

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) ................................... 3

*Chauca v. Abraham*, 841 F.3d 86 (2d Cir.), *as amended* (Nov. 8, 2016) ........................ 11, 12

*Delisi v. Nat'l Ass'n of Pro. Women, Inc.*, 48 F. Supp. 3d 492 (E.D.N.Y. 2014) .................. 12, 13

*Deravin v. Kerik*, 335 F.3d 195 (2d Cir. 2003) ........................................................ 11

*Dillon v. Ned Mgmt., Inc.*, 85 F. Supp. 3d 639 (E.D.N.Y. 2015) ........................ 22, 23

*Feingold v. New York*, 366 F.3d 138 (2d Cir. 2004) ........................................................ 11

*Garrigan v. Ruby Tuesday, Inc.*, No. 14 Civ. 155 (LGS),
    2014 WL 2134613 (S.D.N.Y. May 22, 2014) ........................................ 23

*Griffin v. Sirva, Inc.*, 29 N.Y.3d 174 (2017) ........................................................ 12

*Hicks v. IBM*, 44 F. Supp. 2d 593 (S.D.N.Y. 1999) ........................................................ 18

*Ingrassia v. Health & Hosp. Corp.*, 130 F. Supp. 3d 709 (E.D.N.Y. 2015) ........................ 24

*Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC*,
    470 F. Supp. 2d 345 (S.D.N.Y. 2007)............................................................. 17

*Klymn v. Monroe Cnty. Supreme Ct.*, No. 21-cv-6488 (JLS),
    2022 WL 16950048 (W.D.N.Y. Nov. 15, 2022) .................................... 17

*Lenart v. Coach Inc.*, 131 F. Supp. 3d 61 (S.D.N.Y. 2015)................................. 21, 23

*Lewis v. Triborough Bridge & Tunnel Auth.*, 77 F. Supp. 2d 376 (S.D.N.Y. 1999)............. 11, 14

*Loeffler v. Staten Island Univ.*, 582 F.3d 268 (2d Cir. 2009) ...................................... 21

*Manolov v. Borough of Manhattan Community College*,
    952 F. Supp. 2d 522 (S.D.N.Y. 2013)............................................................ 24

*McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51 (S.D.N.Y. 2020).................. 11, 19, 20

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102 (2d Cir. 2013)...................... 21

*Moazzaz v. MetLife, Inc.*, No. 19-cv-10531 (JPO),
    2021 WL 827648 (S.D.N.Y. Mar. 4, 2021) ................................................... 24

*Mondelo v. Quinn, Emanuel, Urquhart & Sullivan, LLP*,
    No. 21 Civ. 02512 (CM), 2022 WL 524551 (S.D.N.Y. Feb. 22, 2022) .................................. 12

*Mondschein v. NY 101, Inc.*, No. 18-cv-05607 (AMD) (CLP),
    2020 WL 1275471 (E.D.N.Y. Mar. 17, 2020) .......................................... 13

*Pachura v. Austin*, No. 621-cv-0316 (LEK/ATB),
    2022 WL 1909546 (N.D.N.Y. June 3, 2022)................................................. 19

*Senese v. Longwood Cent. Sch. Dist.*, No. 15-cv-7234 (ADS) (AYS),
    2016 WL 11744845 (E.D.N.Y. Dec. 23, 2016) ....................................... 13

*Sletten v. LiquidHub, Inc.*, No. 13 Civ. 1146 NRB,
    2014 WL 3388866 (S.D.N.Y. July 11, 2014) .............................................. 23

*Sotomayor v. City of New York*, 862 F. Supp. 2d 226 (E.D.N.Y. 2012),
    *aff'd*, 713 F.3d 163 (2d Cir. 2013) ............................................................... 21

*Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72 (2d Cir. 2015).................................. 9, 10

*Weekes v. JetBlue Airways Corp.*, No. 21-cv-1965 (MKB),
    2022 WL 4291371 (E.D.N.Y. Sept. 16, 2022) ......................................... 11

*Williams v. New York City Hous. Auth.*, 872 N.Y.S. 2d 27 (2009)........................................ 21, 24

*Williams v. Wellness Medical Care, P.C.*, No. 11-cv-5566 KMK,
   2013 WL 5420985 (S.D.N.Y. Sept. 27, 2013).......................................................... 23

**Statutes**

New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ....................... 2, 11, 21

New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ...................................... 2, 11

**Other Authorities**

Rep. of N.Y. St. Temp. Comm'n Against Discrimination, 1945 N.Y. Legis. Doc. No. 6 .......... 12

State of New York Office of the Attorney General Letitia James, *Report of Investigation into
   Allegations of Sexual Harassment by Governor Andrew M. Cuomo*, available at
   https://ag.ny.gov/sites/default/files/2021.08.03_nyag_-_investigative_report.pdf.............passim

In four separately filed motions, all Defendants have moved to dismiss most counts in Plaintiff Charlotte Bennett's ("Plaintiff") Complaint.[1]  Doc. 28, 33, 34, 38.  Throughout her motion to dismiss, Defendant Mogul attempts to manufacture an onerous test for liability and asks the Court to issue a ruling that would unconditionally protect attorneys from the consequences of their own actions.  Her arguments are contrary to law and ignore the minimal pleading requirements at this stage, which Plaintiff readily met.  For the reasons set forth below, Plaintiff respectfully requests that this Court deny Defendant Judith Mogul's motion to dismiss.[2]

## PRELIMINARY STATEMENT

Defendant Judith Mogul ("Defendant Mogul") – an attorney well-acquainted with anti-discrimination law – urges the Court to find her blameless for her attempt to cover up former Governor Andrew Cuomo's sexual harassment at Ms. Bennett's expense.  The Court should permit a jury to determine whether she is at fault for her illegal actions.

Defendant Mogul, one of former Governor Cuomo's highest-ranking aides, facilitated a sexually hostile work environment; failed to investigate a claim of sexual harassment against a sitting Governor for nearly *three weeks*; conducted a delayed interview into Ms. Bennett's complaints that the Governor had made sexual advances toward her where she neglected to advise Ms. Bennett of her legal rights; and downplayed then-Governor Cuomo's conduct as mere "grooming."  Defendant Mogul contends that this "legal determination" gave her license to forego reporting his conduct to the Governor's Office of Employee Relations ("GOER") or conducting her own investigation as to whether then-Governor Cuomo sexually harassed Ms.

---

[1] Plaintiff addresses only those arguments raised in Defendant Judith Mogul's motion to dismiss, Doc. 33, in this opposition.

[2] Plaintiff also incorporates by reference the arguments set forth in her memoranda of law in opposition to Defendant Andrew Cuomo's, Defendant Melissa DeRosa's, and Defendant Jill DesRosiers's motions to dismiss.

Bennett, but her failure to take appropriate remedial action subjects her to aiding and abetting liability.  In the aftermath of Ms. Bennett's complaints of sexual harassment against then-Governor Cuomo, Defendant Mogul helped institute a sexist policy pursuant to which female staffers in the Executive Chamber could not work one-on-one with Defendant Cuomo. Defendant Mogul's omissions and actions render her liable under the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL") and New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL") (collectively "the NY/NYC Laws").

Defendant Mogul's sweeping assertion that her legal determinations shield her from liability fundamentally misstates the law.  Were the court to adopt this extreme legal standard, it would set a dangerous precedent allowing government attorneys to claim immunity from liability based on purported legal judgments.  Employers could funnel reports of sexual harassment to counsel, who, based on assertions of a legal determination, could refuse to investigate or act on these reports with no individual repercussions.  That is exactly what happened here, which left Governor Cuomo free to continue sexually harassing women with impunity.

As the New York Attorney General's investigation into then-Governor Cuomo's alleged sexual harassment expressly concluded, Defendant Mogul's "purported determination" that his sexist and sexualized comments to Ms. Bennett and sexual advances "did not constitute sexual harassment, or were not even of a 'sexually harassing nature' under the policies, was wrong."  It further concluded that Defendant Mogul's decision to "serve a screening role" in lieu of referring Plaintiff's complaint to GOER – which she was bound by internal policy and the law to do – was also wrong. *See* State of New York Office of the Attorney General Letitia James, *Report of Investigation into Allegations of Sexual Harassment by Governor Andrew M. Cuomo* ("AG Report") 152-53, available at https://ag.ny.gov/sites/default/files/2021.08.03_nyag_-

_investigative_report.pdf.[3]  Because Plaintiff has properly plead allegations in support of her

claims, Defendant Mogul's motion to dismiss must be denied.

## RELEVANT FACTUAL BACKGROUND

### I.  PLAINTIFF WAS SUBJECTED TO SEXUAL HARASSMENT WHILE WORKING FOR DEFENDANT CUOMO

Defendant Mogul served as Special Counsel to Defendant Andrew M. Cuomo[4]

("Defendant Cuomo"), then the Governor of the State of New York, from January 2019 until her

resignation in August 2021.  Doc. 1 ¶ 13.  Plaintiff started working for the State of New York in

January 2019 as a Briefer.  *Id.* ¶ 15.  At that time, she was 23 years old.  *Id.*  When Plaintiff was

a Briefer, she worked on the 38th floor, where female staffers typically wore business casual

attire, and she usually wore business attire pants (not dresses).  *Id.* ¶ 16.  But when Defendant

Cuomo hired Plaintiff as his Executive Assistant later in 2019 and she relocated to the 39th floor,

Plaintiff felt compelled to wear dresses or other traditionally feminine attire, including high-

heeled shoes, when Defendant Cuomo was in the office.  *Id.* ¶ 21.

Over the course of Plaintiff's employment as Executive Assistant for Defendant Cuomo,

he made numerous sexually harassing and gender-based comments about her body, clothing,

appearance, and femininity.  *Id.* ¶¶ 39-41, 69, 76, 79.  Defendant Cuomo thus made it clear that

he expected his female employees to dress femininely, and he made it painfully clear that he paid

---

[3] Defendants cite to the materials collected during the New York Attorney General's investigation into Defendant Cuomo's alleged sexual harassment. Doc. 33 at 23 n.7; Doc. 34 at 16, 23; Doc. 38 at 1.  For the purposes of a motion to dismiss "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citations omitted).  When a document is not incorporated by reference, the Court may "consider it where the complaint relies heavily upon its terms and effect, which renders the document 'integral' to the complaint."  *Id.* (citation omitted).  Given that Plaintiff refers to that report in her Complaint, *see, e.g.*, Doc. 1 ¶¶ 135-38, she does not oppose consideration of that investigation and report.

[4] Plaintiff incorporates by reference all allegations against all Defendants, including Defendant Cuomo, in her Complaint (Doc. 1), to the extent those allegations apply to this Opposition to Defendant Mogul's motion to dismiss.

attention to Plaintiff's appearance and was displeased when she did not dress femininely.  *Id.*  He also repeatedly asked her questions about her sex life, romantic interests, and history of sexual assault.  *Id.* ¶¶ 23, 31, 48, 53, 65-68.  This made Plaintiff feel extremely uncomfortable, distressed, and demeaned.  *Id.*

On May 15, 2020, Plaintiff had a conversation alone with Defendant Cuomo in his office.  *Id.* ¶ 53.  Defendant Cuomo made Ms. Bennett extremely uncomfortable when he asked her who she was "hitting on," who was hitting on her, and whether she was interested in any male staffers.  *Id.*  After Defendant Cuomo pressed Plaintiff to tell him something "new," she confided that she was writing a speech about the pain she experienced in reporting her sexual assault to her school.  *Id.* ¶ 54.  He cut her off and, without breaking eye contact, repeated "You were raped! You were abused! You were assaulted! You were betrayed!" for 10-15 seconds.  *Id.* ¶ 55.  When she tried to change the subject and asked Defendant Cuomo how he was coping with the pandemic, he told Plaintiff that he wanted a girlfriend in Albany and that he wanted to ride into the mountains with a beautiful woman on the back of his motorcycle.  *Id.* ¶ 56.

The harassment reached a tipping point on June 5, 2020, when Defendant Cuomo's invasive questions turned into what Plaintiff reasonably understood to be a sexual advance.  *Id.* ¶ 58.  This time, Defendant Cuomo told Plaintiff he was "lonely" and that he wanted a girlfriend, and asked Plaintiff what her longest relationship had been and whether she had been monogamous.  *Id.* ¶¶ 63-66.  He also asked, among other things, whether she enjoyed herself physically during sex, whether she slept with older men, and whether age mattered in a relationship.  *Id.* ¶¶ 67-68.  Defendant Cuomo said that he did not think age mattered in a relationship and would be willing to date someone very young – as long as she was over the age of 21 years old.  *Id.* ¶ 68.  Plaintiff was 25 years old at the time.  *Id.* ¶ 2.

The morning after Defendant Cuomo told Plaintiff he would be willing to date someone over the age of 21 years old, Plaintiff received an email instructing her to perform a task at the Capitol. *Id.* ¶ 73. It was clear to Plaintiff that she was there because Defendant Cuomo wanted to be alone with her, and she started to panic. *Id.* ¶ 75. Defendant Cuomo called her into his office to help with his iPhone twice but otherwise did not assign her any work. *Id.* When he finally called her into his office a third time and told her he was ready to leave, he asked Plaintiff if she had found him a girlfriend and told her she looked like Daisy Duke, a television character well-known as a sex symbol. *Id.* ¶ 76.

Following this conversation, Plaintiff realized that Defendant Cuomo or one of his aides could summon her to be alone with him at his office at any time of the day or night, putting her in even more uncomfortable situations. Plaintiff feared that Defendant Cuomo would continue to escalate his advances toward her. *Id.* ¶ 77. As a result, Plaintiff made the painful decision that she could no longer work as Defendant Cuomo's Executive Assistant, and she resolved to speak to Defendant Jill DesRosiers ("Defendant DesRosiers"), Defendant Cuomo's Chief of Staff, about resigning her position as soon as she could. *Id.*

## II.   DEFENDANT MOGUL FAILED TO CONDUCT A TIMELY INVESTIGATION INTO PLAINTIFF'S SEXUAL HARASSMENT COMPLAINT AND FAILED TO REFER THE COMPLAINT TO GOER

On June 10, 2020, Plaintiff reported Defendant Cuomo's sexual harassment to Defendant DesRosiers. *Id.* ¶ 81. She told Defendant DesRosiers that Defendant Cuomo had "crossed a boundary" and had told her that he was lonely and wanted a girlfriend and asked repeated questions about her sex life. Plaintiff also told her that she was no longer comfortable serving as his Executive Assistant. *Id.* Defendant DesRosiers did not ask any follow-up questions about his conduct. *Id.* ¶ 82. Defendant DesRosiers relayed Plaintiff's report of sexual harassment to

Defendant Mogul and Defendant Melissa DeRosa ("Defendant DeRosa"), then-Secretary to the Governor, on or around that same day. *Id.* ¶ 83.

From June 10, 2020, until June 30, 2020, Defendant Mogul took no action to investigate Plaintiff's sexual harassment complaint even though GOER policy mandated that she report conduct potentially constituting sexual harassment. *Id.* ¶¶ 83, 91, 97. On June 29, 2020, Plaintiff told several Executive Chamber staffers she had left her role as Defendant Cuomo's Executive Assistant because Defendant Cuomo had made sexual advances towards her. *Id.* ¶ 90. One of these staffers relayed Plaintiff's complaints to Defendant DesRosiers on June 30, 2020, who in turn told Defendants DeRosa and Mogul. *Id.* ¶ 91.

It was only after Defendant Mogul knew of internal gossip circulating in the Executive Chamber – and not when Plaintiff had first reported the sexual harassment – that she made plans to interview Plaintiff on June 30, 2020. *Id.* Over the course of approximately ninety minutes, Plaintiff detailed Defendant Cuomo's conduct to Defendant DesRosiers and Defendant Mogul. *Id.* ¶ 93. She told them, among other things, that Defendant Cuomo had asked her questions about her sex life, that he said he was willing to date someone if she was over the age of 21, knowing that Plaintiff was then 25 years old, and asked if she had been monogamous in her past relationships. *Id.* Plaintiff told Defendants DesRosiers and Mogul that Defendant Cuomo had been "grooming" her, which is the process of establishing an emotional connection or relationship of trust with an individual prior to exploiting her sexually. *Id.* ¶ 94. Both Defendants DesRosiers and Mogul took contemporaneous notes during the interview, and both concluded that Plaintiff was credible. *Id.* ¶ 95.

At the end of the interview, Plaintiff told Defendants DesRosiers and Mogul that she was afraid of what might happen if Defendant Cuomo knew she had reported his sexual harassment

and did not want him to find out. *Id.* ¶ 96.  Instead of assuring Plaintiff that she would be protected from retaliation because of her protected activity – as she was legally required to do – Defendant Mogul told Plaintiff that she needed time to process the information and would contact her about what would happen next. *Id.*  Defendant Mogul also neglected to tell Plaintiff the truth – that Defendant Cuomo had already been informed of Plaintiff's complaint. *Id.*

The next day, July 1, 2020, Defendant Mogul requested a copy of the Executive Department's Equal Opportunity Employee Handbook ("the Handbook"). *Id.* ¶ 100.  Plaintiff also received a copy of the Handbook from an Executive Chamber staffer that day. *Id.*  Based on Plaintiff's review of the Handbook's provisions related to sexual harassment, she concluded that Defendants DesRosiers and Mogul were required to refer her complaint to GOER for investigation. *Id.* ¶ 101.  Plaintiff was understandably terrified at the prospect of an investigation.  She had witnessed Defendant Cuomo's, and the other Defendants', tempers flare when they were frustrated or angry, and she feared the retaliation she would face if her complaint were investigated. *Id.* ¶ 102.  That evening, Plaintiff spoke with Defendants DesRosiers and Mogul and expressed concern that the Handbook appeared to require GOER to investigate her complaint. *Id.* ¶ 103.  Rather than confirming that an investigation was mandatory and assuring Plaintiff she would be protected from retaliation, Defendant Mogul claimed that Defendant Cuomo's actions did not rise to the level of sexual harassment because he was still "grooming" Plaintiff when she made her complaint, and so no investigation was necessary. *Id.*

The AG Report concluded that Defendant Mogul's determination that Defendant Cuomo had not sexually harassed Plaintiff – and her attendant failure to report the complaint to GOER – violated internal policy and the law:

> Ms. Mogul testified that she determined that she did not have to report Ms. Bennett's concerns to GOER, even though the policy on its face required that any

supervisor who becomes aware of conduct of a "sexually harassing nature" must report it to GOER. Ms. Mogul decided that rather than reporting Ms. Bennett's concerns to GOER, she would do her own screening first to determine if what Ms. Bennett described constituted unlawful sexual harassment. She concluded it did not, although she believed and acknowledged in her testimony that some of the Governor's conduct was inappropriate. In doing so, rather than looking at the "totality of the circumstances," she parsed each comment or incident. She also failed to acknowledge the breadth of the definition of harassment.

AG Report at 150-51.

Rather than taking appropriate corrective action, Defendant Mogul and Defendant DeRosa changed Executive Chamber protocols after transferring Plaintiff to the health policy team "really more for the Governor's protection,"[5] presumably to protect him from female employees since he demonstrated that he was incapable of restraining himself. One protocol change instructed staff to leave materials for Defendant Cuomo at the Executive Mansion trooper station, rather than inside the mansion where they could encounter Defendant Cuomo. Another change barred female staffers from staffing Defendant Cuomo by themselves, to avoid being alone with him where he made sexualized and inappropriate comments to women. Doc. 1 ¶ 107.

While Defendant Mogul worked to protect Defendant Cuomo, Plaintiff struggled to cope in the aftermath of being sexually harassed by him. Unfortunately, Plaintiff's health continued to deteriorate. She had very little work and few meaningful assignments in her new role, which exacerbated her health issues. *Id.* ¶¶ 108-14. After speaking with her medical provider and therapist, she concluded that Defendant Cuomo's sexual harassment and her resulting transfer to a "do nothing" position was damaging her health, and she made the difficult decision that she needed to resign. *Id.* ¶ 114. When Defendant Mogul learned about Plaintiff's resignation, she called her on October 6, 2020. *Id.* ¶ 119. As soon as Plaintiff knew it was Defendant Mogul, she

---

[5] AG Report at 62 (citing to DeRosa transcript, at 423:3-21, and Mogul transcript, at 254:13-17, available at https://ag.ny.gov/CuomoIndependentInvestigation).

became emotional and started to cry.  *Id.*  Defendant Mogul asked if "what happened with the Governor" was the reason she was leaving, revealing her understanding of just how impactful the sexual harassment had been.  Plaintiff confirmed that it was.  *Id.* ¶ 121.

After Plaintiff's allegations and those of other women harassed by Defendant Cuomo became public, New York Attorney General Letitia James was tasked to investigate.  *Id.* ¶ 129. At the end of July 2021, shortly after her deposition under oath with investigators from the Attorney General's Office, Defendant Mogul resigned.  *Id.* ¶ 134.  Attorney General James released her report on August 3, 2021, which found that Defendant Cuomo had harassed Plaintiff and that Defendant Mogul's failure to refer Plaintiff's complaint violated the Executive Chamber's internal sexual harassment policy and the law.  The report further concluded that Defendant Mogul's determination that Defendant Cuomo's conduct did not rise to the level of sexual harassment was wrong.  *Id.* ¶¶ 137-38.

## THE INSTANT MOTION

Defendant Mogul moves to dismiss all claims against her under the State and City Laws, claiming that Plaintiff did not allege that she aided and abetted any unlawful conduct or that she committed any discriminatory acts against Plaintiff.  Her motion is meritless and must be denied.

## I.     STANDARD OF REVIEW

The burden placed on the plaintiff on a Rule 12(b)(6) motion is exceedingly minimal, especially for discrimination cases.  *See Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998) ("[T]he pleading requirements in discrimination cases are very lenient, even *de minimis*."). A court must accept as true the plaintiff's allegations and draw all reasonable inferences in her favor.  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78 (2d Cir. 2015).  A court must deny the motion to dismiss where the plaintiff plausibly alleges that the defendants violated the

law. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "[T]he question is not whether a plaintiff is *likely* to prevail, but whether the well-pleaded factual allegations *plausibly* give rise to an inference of unlawful discrimination, *i.e.*, whether plaintiffs allege enough to 'nudge their claims across the line from conceivable to plausible.'"  *Vega*, 801 F.3d at 87 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (alteration accepted).  The plausibility standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegality." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 556) (alteration accepted).

II.     **ARGUMENT**

### A. Plaintiff Plausibly Alleges That Defendant Mogul Aided and Abetted Unlawful Acts Under the NY/NYC Laws

In seeking dismissal of the Fifth and Ninth Causes of Action for aiding and abetting unlawful conduct under the NY/NYC Laws, Defendant Mogul claims that she is not subject to liability because she did not actually participate in Defendant Cuomo's harassing conduct.  This argument is baseless because it ignores the broad nature of the claim and types of proof that are recognized as stating such a claim.  Here, Plaintiff has sufficiently alleged that Defendant Mogul, a lawyer well aware of the law and the Executive Chamber's internal policies, aided and abetted forbidden acts under the NY/NYC Laws by failing to take appropriate investigative or remedial measures upon being informed of Defendant Cuomo's unlawful conduct.

### i. *The Threshold for Liability, Contrary to What Defendant Mogul Suggests, Is Low.*

Defendant Mogul baldly argues that "the threshold for liability" for aiding and abetting is high. Doc. 33 at 9.  It is not.  Indeed, the Second Circuit has repeatedly cautioned that "the pleading requirements in discrimination cases are very lenient, even *de minimis*." *Deravin v.*

*Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) (citation omitted).  To establish a claim for aiding and

abetting liability under the NY/NYC Laws, the critical question is whether the plaintiff plausibly

alleged that the defendant aided and abetted the creation of a workplace environment that was

discriminatory as a whole.  *See* N.Y. Exec. Law § 296(6); N.Y.C. Admin. Code § 8-107(6).[6]  To

be liable, Defendant Mogul "need not [her]self take part in the primary violation." *Schaper v.*

*Bronx Lebanon Hosp. Ctr.*, 408 F. Supp. 3d 379, 395 (S.D.N.Y. 2019) (citation omitted).

Instead, "an individual . . . can aid, abet, incite, coerce or compel, a primary violation of the HRL

committed by another employee." *Lewis v. Triborough Bridge & Tunnel Auth.*, 77 F. Supp. 2d

376, 381 (S.D.N.Y. 1999) (citation omitted).  In this vein, a defendant may be held liable for a

"failure to take appropriate investigative or remedial measures upon being informed of offensive

conduct." *Schaper*, 408 F. Supp. 3d at 396.

Defendant Mogul also tries to gin up a requirement that she *must* be Plaintiff's supervisor

to be held liable under an aiding and abetting theory.  Again, this is not what the law says.

Defendant Mogul was a senior official in the Executive Chamber who had the responsibility to

investigate complaints of sexual harassment and report them appropriately, and, as explicitly

alleged in the Complaint, held a supervisory position.  Doc. 1 ¶ 105.  Courts have found similarly

---

[6] In 2004, the Second Circuit noted that "[t]he same standards of analysis used to evaluate aiding and abetting claims under the NYSHRL apply to such claims under the NYCHRL because the language of the two laws is 'virtually identical.'" *Feingold v. New York*, 366 F.3d 138, 158-59 (2d Cir. 2004) (collecting cases) (citation omitted).  Since then, the Local Civil Rights Restoration Act of 2005 amended the NYCHRL to ensure that "the provisions of the NYCHRL shall be construed liberally regardless of whether related federal or New York State civil and human rights laws have been so construed." *Chauca v. Abraham*, 841 F.3d 86, 87 (2d Cir.), *as amended* (Nov. 8, 2016) (citing N.Y.C. Admin. Code § 8-130) (alterations accepted).  Even after this amendment, district courts continue to cite to *Feingold* for the proposition that aiding and abetting claims under the NYSHRL and NYCHRL are subject to the same standard. *See, e.g.*, *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020).  In 2019, the NYSHRL was amended to require courts to construe the NYSHRL, like the NYCHRL, "liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws including those laws with provisions worded comparably to the provisions of [the NYSHRL] have been so construed." N.Y. Exec. Law § 300.  The effect of the amendment "is to render the standard for claims [brought under the NYSHRL] closer to the standard under the NYCHRL." *Weekes v. JetBlue Airways Corp.*, No. 21-cv-1965 (MKB), 2022 WL 4291371, at *7 (E.D.N.Y. Sept. 16, 2022) (citation omitted).

11

situated senior employees liable for aiding and abetting, even when they were not the
complaining employee's direct supervisor.   *See, e.g.*, *Mondelo v. Quinn, Emanuel, Urquhart &*
*Sullivan, LLP*, No. 21 Civ. 02512 (CM), 2022 WL 524551, at *13 (S.D.N.Y. Feb. 22, 2022)
(finding that an employee could be held liable, "even if he was not technically [plaintiff's]
supervisor" because he was in a "position of authority"); *Delisi v. Nat'l Ass'n of Pro. Women,*
*Inc.*, 48 F. Supp. 3d 492, 497 (E.D.N.Y. 2014) (denying a motion to dismiss where the defendant
was not a supervisor, but was general counsel and had invited the plaintiff to "turn to him" if he
had work-related concerns).[7]

The Court must reject Defendant Mogul's attempt to impose a higher pleading
requirement than actually exists.  The NY/NYC Laws were designed to rid the workplace of all
unlawful discrimination, and the legislative history for the NYSHRL highlights just how far
lawmakers intended for it to reach.[8]  The New York Court of Appeals, in citing this legislative
history, reiterated that the aiding and abetting provision "should be construed broadly" to
effectuate that provision's purpose: "to bring within the orbit of the bill all persons, no matter
what their status, who aid or abet any of the forbidden practices of discrimination or who attempt
to do so." *Griffin v. Sirva, Inc.*, 29 N.Y.3d 174, 187 (2017) (quoting Rep. of N.Y. St. Temp.
Comm'n Against Discrimination, 1945 N.Y. Legis. Doc. No. 6 at 31).  The Court must evaluate
Plaintiff's claims with this purpose in mind, and it should reject Defendant Mogul's attempt to
patch together quotations from district court cases to create an onerous burden for pleading

---

[7] If, as Defendant Mogul argues, only a direct supervisor could be held liable for aiding and abetting
harassment, then here, because Defendant Cuomo was Plaintiff's direct supervisor, Doc. 1 ¶ 11, no one else could
aid and abet his harassment.  This warped reading of the law would eliminate aiding and abetting liability for an
entire class of employees and is contrary to the broad, remedial purposes of the NY/NYC Laws.

[8] As discussed *infra*, the pleading requirements for the NYCHRL are even more liberal than for the
NYSHRL.  *See Chauca v. Abraham*, 841 F.3d 86, 87 (2d Cir. 2016), *as amended* (Nov. 8, 2016).

aiding and abetting that simply does not exist. Rather, courts have emphasized that the NY/NYC

Laws serve broad, remedial that encompass actions of someone like Defendant Mogul, an

official who failed in her duty to report sexual harassment and keep the workplace safe.[9]

> ### ii.    Courts Regularly Find Lawyers Subject to Liability for Aiding and Abetting Discriminatory Conduct.

Defendant Mogul urges the Court to set a disturbing precedent: that attorneys cannot be

held civilly liable for giving legal advice on complaints of harassment. This is not the law, nor

should it be. A holding of this nature would allow attorneys legally charged with investigating

complaints of harassment to circumvent aiding and abetting liability by couching their

determinations as legal advice. It would also allow employers to direct complaints of harassment

and discrimination to attorneys, who could unilaterally determine whether an investigation was

warranted and then face no liability for their decision.

Defendant Mogul points to no binding precedent to support her theory. Instead, she cites

cases to suggest that courts can and do regularly determine on a case-by-case basis whether a

lawyer can be held liable for failure to take remedial measures. *See, e.g.*, *Mondschein v. NY 101,

Inc.*, No. 18-cv-05607 (AMD) (CLP), 2020 WL 1275471, at *5 (E.D.N.Y. Mar. 17, 2020);

*Delisi*, 48 F. Supp. 3d at 496. Even the cases that Defendant Mogul cites that decline to hold a

lawyer liable under an aiding and abetting theory base their rulings on the specific facts of the

lawyers' conduct, and not a sweeping rule that lawyers can never be held liable for rendering

legal advice. *See Senese v. Longwood Cent. Sch. Dist.*, No. 15-cv-7234 (ADS) (AYS), 2016 WL

11744845, at *7 (E.D.N.Y. Dec. 23, 2016) (finding a lawyer not liable where he was merely

---

[9] In the same vein, Defendant Mogul also tries to divide Plaintiff's aiding and abetting claim into two separate theories: one that Defendant Mogul aided and abetted sexual harassment by contributing to a sexist office environment, and another that she did so by failing to report Plaintiff's complaint. Doc. 33 at 8-9. This artificial segmentation of Plaintiff's arguments misses the broader point – whether Defendant Mogul's actions, when considered as a whole, support a claim of aiding and abetting unlawful activity under the statutes. As discussed *infra*, they do.

complying with the legal requirement to report abuse of special needs children); *Abe v. New York Univ.*, 94 N.Y.S.3d 17, 22-23 (2019).

In any event, contrary to what Defendant Mogul suggests, Plaintiff has not alleged that Defendant Mogul "merely render[ed] after-the-fact legal advice," Doc. 33 at 2, but that she engaged in other acts – ignoring the sexist office environment, delaying an investigation into Plaintiff's sexual harassment complaint for three weeks, and instituting a sexist policy to prevent female staffers from working with Defendant Cuomo one-on-one – that demonstrate a coordinated effort to minimize Plaintiff's complaint and shield Defendant Cuomo from scrutiny, and that, together, subject her to aiding and abetting liability.

> ### iii. Courts Regularly Hold Individuals Liable for Failing to Investigate a Complaint of Discrimination.

The failure to respond to a complaint of discrimination – either completely or inadequately – is a well-recognized reason to hold an individual liable under an aiding and abetting theory. As one court summarized, "the case law establishes beyond cavil" that the failure to take adequate remedial measures can render an official liable for aiding and abetting discrimination. *Lewis*, 77 F. Supp. 2d at 384 (collecting cases); *see also Ananiadis v. Mediterranean Gyros Prod., Inc.*, 54 N.Y.S.3d 155, 159 (2017) (denying summary judgment on aiding and abetting theory where officials failed to respond to complaints of sexual harassment in accordance with their employer's sexual harassment policy, "despite their awareness and understanding of the policy").

By the same token, courts have recognized that the types of judgments officials make about whether remedial action is necessary can create liability for aiding and abetting unlawful conduct. For instance, in *Baez v. Anne Fontaine USA, Inc.*, an employee complained to an official with human resources responsibilities that other employees circulated a rumor that she

exposed her breasts to the company's president and CEO. No. 14-cv-6621 (KBF), 2017 WL 57858, at *5 (S.D.N.Y. Jan. 5, 2017). The plaintiff subsequently accused the official of failing to take appropriate remedial action and cited an email where the official wrote that she "didn't think there's anything more that I need to be included in . . . . I don't think escalating to a written warning would be recommended, or necessary, at this time." *Id.* (citation omitted) (alteration accepted). The court found this evidence sufficient to overcome summary judgment on an aiding and abetting claim against the official, even where the official proffered evidence that she *actually did give a written warning* to the employee who allegedly spread the rumor. *Id.* at *5-6 (concluding that because the parties disagreed over whether the response to harassment was adequate, the court could not determine whether a jury would find the defendant liable).[10]

Similarly, in *Bennett v. Progressive Corp.*, the court considered whether company leaders' alleged "participation in the sham investigation of plaintiff's complaint" supported a finding that they were liable under the aiding and abetting provision of the NYSHRL. 225 F. Supp. 2d 190, 214 (N.D.N.Y. 2002). For purposes of the motion, the court assumed that the *investigation itself* was part of the sexual harassment because there remained questions of fact as to whether "the manner in which the investigation was carried out, in effect, signaled [the employer's] condoning of [the harasser's] conduct." *Id.* at 215 n.12. In concluding that the leaders were liable, the court cited to evidence that the leaders were involved in the investigation and were present for a call in which the investigator presented her report, and to their subsequent determination that "no sexual harassment had occurred." *Id.* at 215.

---

[10] Plaintiff recognizes that the plaintiff in *Baez* was terminated, and that her termination factored into her retaliation claims. However, the court's discussion of the plaintiff's aiding and abetting a hostile work environment claim rested solely on the failure to investigate, and not the later termination. *See Baez*, 2017 WL 57858, at *5-6.

15

Here, Defendant Mogul, after conducting her own "sham investigation" that consisted of a single phone call with Plaintiff after a three-week delay, likewise – conveniently – concluded that no sexual harassment had occurred.[11]  Her actions following that phone call, which included instituting a sexist office policy wherein female employees could not work one-on-one with Defendant Cuomo in order to prevent future harassment, and her recognition that Defendant Cuomo's conduct led to Plaintiff's forced resignation, belie that conclusion.  As the Attorney General expressly concluded, "[g]iven the legal standard under state law and the sexual harassment policy," Defendant Mogul's "purported determination" that no sexual harassment had occurred was "wrong."  AG Report at 152.

Accordingly, Plaintiff's allegations are more than sufficient to state a claim at this stage.  She alleged that Defendant Cuomo, the most powerful government official in the state, harassed her, a twenty-five-year-old executive assistant decades his junior, and that when she reported this harassment to Defendant Mogul – who was bound by law and internal policy to do *something*, yet did nothing – Defendant Cuomo faced no repercussions.   Allowing a senior attorney with the explicit duty to report sexual harassment avoid liability when she failed to discharge that duty, as Defendant Mogul asks the Court to do here, would allow those adjacent to powerful people to shield them from accountability with impunity.

    **iv.**    ***Plaintiff Has Alleged That Defendant Mogul Harbored a Discriminatory Intent.***

Defendant Mogul attempts to distract from these damning facts by arguing that she is blameless because she did not hold the necessary intent to aid and abet Defendant Cuomo's

---

[11] In its disposition of the plaintiff's Title VII claim, the *Bennett* court also took issue with the length of the investigation, which lasted four days. *Bennett*, 225 F. Supp. 2d at 201-02 (noting that the human resources official tasked with the investigation "perhaps amazingly, concluded the investigation in four short days," and that, given this fact, a jury might believe that "a four-day investigation would lack depth").  In stark contrast, here, Defendant Mogul's investigation was all of ninety minutes, and consisted of one interview of Plaintiff.

harassment.  But Defendant Mogul has failed to cite a single binding case that sets forth a

requirement that a defendant must share a "community of purpose" with the harasser in order to

be held liable under an aiding and abetting theory.[12]  And even if discriminatory intent is a

requirement, it is a low burden, especially at the motion to dismiss stage.  *See, e.g.*, *Int'l*

*Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC*, 470 F. Supp. 2d 345, 363 (S.D.N.Y.

2007) (discussing the flexible approach courts take as to "community of purpose," including

considering the failure to take remedial action as indicative of intent).

 Regardless, Plaintiff has alleged sufficient facts to show that Defendant Mogul *did* in fact

intend to aid and abet Defendant Cuomo's unlawful conduct.  She has alleged that Defendant

Mogul acquiesced in a work environment where female employees were subjected to humiliating

and demeaning tasks, an environment that emboldened Defendant Cuomo to harass Plaintiff

without repercussions.  Then, after finding out about the complaint Plaintiff had lodged about

sexual harassment, Defendant Mogul took *no action to even investigate* Plaintiff's allegations

until internal gossip began to spread.  When Defendant Mogul did finally interview Plaintiff, she

mislabeled Defendant Cuomo's conduct as "grooming" to avoid having to report Plaintiff's

complaint.  On top of all that, Defendant Mogul helped create and institute a sexist policy that

prevented women from working alone with Defendant Cuomo, not to protect women, but, in

Defendant Mogul's own words, "for the Governor's protection."  AG Report at 62.

 Drawing all inferences in Plaintiff's favor, this series of actions properly alleges that

Defendant Mogul harbored a discriminatory intent.  *See, e.g.*, *Klymn v. Monroe Cnty. Supreme*

*Ct.*, No. 21-cv-6488 (JLS), 2022 WL 16950048, at *17 (W.D.N.Y. Nov. 15, 2022) (finding that

plaintiff had sufficiently alleged shared intent where she alleged that the individual defendants

---

[12] Notably, cases with parallel facts do not discuss intent in their disposition of aiding and abetting claims at all.  *See, e.g.*, *Baez*, 2017 WL 57858, at *5; *Bennett*, 225 F. Supp. 2d at 213-215.

failed to remedy discriminatory behavior "pursuant to a policy or practice designed and implemented to protect judges from discipline") (citation omitted); *Hicks v. IBM*, 44 F. Supp. 2d 593, 600 (S.D.N.Y. 1999) (finding that the plaintiff had adequately stated a claim that supervisory personnel, after failing to take adequate actions to correct discrimination, "encouraged, condoned or approved" the discriminatory conduct).  At this stage, where the Court must view Plaintiff's allegations and all reasonable inferences in light favorable to Plaintiff, she has plausibly alleged that Defendant Mogul's coordinated inaction indicates that she condoned Defendant Cuomo's behavior, and therefore shared his discriminatory intent.

### v. *The Discrimination Was Ongoing at the Time Defendant Mogul Learned of Plaintiff's Complaint.*

Finally, Defendant Mogul's argument that she escapes liability because the alleged harassment had ceased before she was aware of it is unavailing.  Indeed, the gravamen of Plaintiff's allegations is that even after Defendant Mogul learned of her complaint on or around June 10, 2020, Plaintiff continued to face harassment, discrimination, and retaliation in the form of a sham investigation, a transfer to a "do nothing" position, and a forced resignation. Defendant Mogul was immediately made aware of Plaintiff's allegations, and instead of reaching out to see whether Plaintiff was okay or ensuring that she was satisfied with her new position, she isolated Plaintiff and left her to fend for herself.   Only when internal gossip began to circulate did Defendant Mogul take Plaintiff's complaint of sexual harassment seriously enough to contact Plaintiff, and even then, she cabined her "investigation" to a ninety-minute phone call and concluded that Defendant Cuomo's actions did not rise to the level of sexual harassment because he was merely "grooming" Plaintiff. Tellingly,  when Defendant Mogul asked Plaintiff whether "what happened with the Governor" was the reason for Plaintiff's resignation, she

herself recognized and admitted that Defendant Cuomo's harassment of Plaintiff had longstanding effects that stretched well beyond Plaintiff's initial complaint on June 10, 2020.

Even if the unlawful activity had ceased by the time Plaintiff made her complaint (which is plainly contradicted by the allegations in the Complaint), Defendant Mogul has pointed to no binding authority that makes this knowledge a required component of an aiding and abetting claim, and courts find plaintiffs to have sufficiently alleged claims against defendants even without determining whether the harassment had ceased. *See, e.g.*, *Baez*, 2017 WL 57858, at *5; *Bennett*, 225 F. Supp. 2d at 213-215.[13] Here, the fact that Plaintiff transferred to a "do nothing" position to avoid additional harassment by Defendant Cuomo does not absolve Defendant Mogul of liability, especially where Defendant Mogul herself contributed to further acts of harassment, discrimination, and retaliation by mishandling Plaintiff's complaint of sexual harassment. As discussed *supra*, at least one court has considered a botched investigation as part of the sexual harassment *itself* given questions about the efficacy of the investigation and whether it signaled the employer's condonation of the harassment. *Bennett*, 225 F. Supp. 2d at 215 n.12.

For these reasons, Defendant Mogul's reliance on *McHenry v. Fox News Network, LLC* is misplaced. 510 F. Supp. 3d 51 (S.D.N.Y. 2020). *McHenry* makes clear that even if Defendant Cuomo's harassment ended before Defendant Mogul knew of the harassment, which Plaintiff does not concede, Defendant Mogul can still be held liable for aiding and abetting other forbidden acts under the statutes – for instance, by discriminating and retaliating against Plaintiff by conducting a sham investigation. *See id. at* 77 (noting that a failure by a defendant to take

---

[13] Courts have cautioned that the risk of *future* harassment also matters. *See, e.g.*, *Pachura v. Austin*, No. 621-cv-0316 (LEK/ATB), 2022 WL 1909546, at *7 (N.D.N.Y. June 3, 2022) (noting, in the context of Title VII, that in certain cases, inaction can confer liability "even if the harasser unilaterally decides to cease the harassment"); *Campisi v. City Univ. of New York*, No. 15 Civ. 4859 (KPF), 2016 WL 4203549, at *8 (S.D.N.Y. Aug. 9, 2016). As to the risk of future harassment, the AG Report concluded: "While no one can state how, if at all, the Governor's conduct would have changed had formal action been taken in response to Ms. Bennett's complaint, we note that it was about five months later that the Governor groped the breast of Executive Assistant #1." AG Report at 153.

remedial measures could expose him to aiding and abetting liability), 78 (suggesting that participating in a "sham investigation" could support liability).

Lastly, Defendant Mogul's repeated emphasis on the fact that Plaintiff herself did not want an investigation is irrelevant and is a twisted attempt to blame Plaintiff for Defendant Mogul's own inaction. For one, the Handbook contains no reference to the complainant's wishes in determining whether an investigation is warranted. Doc. 1 ¶ 101. More importantly, because Defendant Mogul had not assured Plaintiff that she would face no retaliation, it is self-evident why Plaintiff would not want an investigation. To state the obvious: Plaintiff was a twenty-five-year-old executive assistant who had just accused Defendant Cuomo, one of the most powerful government officials in the country – and one with a reputation for angry outbursts – of sexual harassment. Instead of referring Plaintiff's highly concerning complaint of sexual harassment to GOER, as she was duty-bound to do, Defendant Mogul chose to be complicit in a cover-up of the complaint. Plaintiff's allegations as to that conduct sufficiently state a claim that Defendant Mogul aided and abetted unlawful activity.

## B. <u>Plaintiff Plausibly Alleges That Defendant Mogul Discriminated Against Her on the Basis of Gender</u>

Defendant Mogul seeks to dismiss Count Nine for gender discrimination under the NYCHRL, claiming that she is not subject to liability because she did not participate in discrimination or harbor a discriminatory intent. But Plaintiff has definitively plead sufficient facts to demonstrate that Defendant Mogul discriminated against her on the basis of her gender, particularly in the context of the NYCHRL's lenient standard.

The NYCHRL covers a wider range of discriminatory conduct than its federal and state counterparts and was designed to serve the "uniquely broad and remedial purpose" of ensuring that discrimination "plays *no* role in the workplace." *Sotomayor v. City of New York*, 862 F.

20

Supp. 2d 226, 257 (E.D.N.Y. 2012), *aff'd*, 713 F.3d 163 (2d Cir. 2013) (citation omitted); *see also* N.Y.C. Admin. Code § 8-107(1)(a) (making it unlawful for an employer to discriminate against an employee "because of" gender). Claims under the NYCHRL must be analyzed "more liberally" than claims under federal or state anti-discrimination statutes, *see Loeffler v. Staten Island Univ.*, 582 F.3d 268, 278 (2d Cir. 2009), and courts must construe the statute "broadly in favor of discrimination plaintiffs," *Sotomayor*, 862 F. Supp. 2d at 257 (citation omitted).

Accordingly, a plaintiff need only prove "by a preponderance of the evidence that she has been treated less well than other employees because of her gender [or other protected characteristic]." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013); *see also Williams v. New York City Hous. Auth.*, 872 N.Y.S. 2d 27, 41 n.30 (2009) ("One can easily imagine a single comment that objectifies women being made in circumstances where that comment would, for example, signal views about the role of women in the workplace and be actionable."). Given this especially low threshold for liability, at the motion to dismiss stage, a plaintiff need only set forth evidence of "unwanted gender-based conduct." *Lenart v. Coach Inc.*, 131 F. Supp. 3d 61, 69 (S.D.N.Y. 2015) (citation omitted).

### i. *The Court Must Consider the Entire Universe of Plaintiff's Allegations as to Defendant Mogul in Determining Whether She Discriminated Against Plaintiff.*

As an initial matter, the Court should reject Defendant Mogul's attempt to artificially divide Plaintiff's claims in Count Nine. Because of the lower pleading standards under the NYCHRL, Plaintiff styled Count Nine as both a gender discrimination and aiding and abetting claim, and Count Nine reincorporates all of the factual allegations of the Complaint. Doc. 1 ¶ 218. As such, the Court can consider the allegations as to Defendant Mogul's decision to wait three weeks to interview Plaintiff and to fail to refer Plaintiff's complaint to GOER, *id.* ¶ 222,

along with the allegations that Defendant Mogul maintained and contributed to a sexist office environment, *id.* ¶ 220, in determining whether Defendant Mogul can be held liable for gender discrimination under the NYCHRL. *See Baez*, 2017 WL 57858, at *5 n.4 (noting that the parties' interpretation of a claim controls); *Dillon v. Ned Mgmt., Inc.*, 85 F. Supp. 3d 639, 659 (E.D.N.Y. 2015) (noting that plaintiffs can bring *both* claims for direct liability and for aiding and abetting liability against individual defendants "who fail to investigate or take remedial action in the face of a discrimination complaint").

When viewed cumulatively, Plaintiff's allegations readily exceed the low pleading threshold under the NYCHRL. She adequately alleged that she was treated "less well" because of her gender and subjected to treatment that her male colleagues were not. *See* Doc. 1 ¶¶ 16, 26, 36, 38. And she has alleged, based on Defendant Mogul's high-level role as Special Counsel to Defendant Cuomo, that Defendant Mogul played a role in maintaining that office environment. *Id.* ¶¶ 13, 185, 220. Plaintiff has also alleged that, on top of Defendant Mogul's complicity in this sexist work environment, Defendant Mogul failed to investigate her complaint of harassment for three weeks; when she finally did investigate the complaint, failed to advise Plaintiff of her right to be free from retaliation; and then, determined that Plaintiff's allegations were merely "grooming" and declined to refer the complaint to GOER, as she was mandated to do. *Id.* ¶¶ 91, 94, 96-97. Furthermore, after Defendant Mogul learned of Plaintiff's report of sexual harassment, Defendant Mogul coordinated with Defendant DeRosa to change Executive Chamber protocols to create a sexist policy to protect Defendant Cuomo from being in situations in which he might sexually harass a female member of his staff. *Id.* ¶ 107.

ii.     *Plaintiff Has Adequately Alleged She Was Treated Less Well Because of Her Gender.*

Based on the NYCHRL's low standard for liability, courts have recognized that a wide range of conduct – less severe than what Plaintiff has alleged here – can constitute "unwanted gender-based conduct" that can withstand a motion to dismiss. *See, e.g.*, *Garrigan v. Ruby Tuesday, Inc.*, No. 14 Civ. 155 (LGS), 2014 WL 2134613, at *4 (S.D.N.Y. May 22, 2014) (denying motion to dismiss where plaintiff alleged the defendant co-worker treated her "less well by spreading rumors about her at work"); *Lenart*, 131 F. Supp. 3d at 69 (recognizing that even "thin" allegations that the male plaintiff had to undergo more interviews and testing than his female colleagues, and that he heard that his superior had a preference for working with women, must survive a motion to dismiss); *Sletten v. LiquidHub, Inc.*, No. 13 Civ. 1146 NRB, 2014 WL 3388866, at *8 (S.D.N.Y. July 11, 2014).

Again, *Baez* is instructive. In that case, the court found that the human resources official could be held liable for failing to investigate a rumor that the plaintiff had exposed her breasts to the company's CEO. 2017 WL 57858, at *5. Even though the court did not consider the issue of workplace gossip as "within the heartland" of what anti-discrimination statutes were designed to address, it found that a reasonable jury could find the human resources official liable under *either* an aider-and-abettor theory or a direct liability theory for "failing to investigate the rumor sufficiently." *Id.*; *see also Dillon*, 85 F. Supp. 3d at 659. As discussed above, Plaintiff has set forth facts far more egregious than workplace gossip. Even more importantly, in *Baez*, the official gave a written warning to the alleged harasser; in stark contrast, Defendant Mogul took *absolutely no* remedial action here.[14]

---

[14] Defendant Mogul's reliance on *Williams v. Wellness Medical Care, P.C.* for the proposition that conclusory allegations cannot survive a motion to dismiss is misplaced. No. 11-cv-5566 KMK, 2013 WL 5420985 (S.D.N.Y. Sept. 27, 2013). In that case, the court found the plaintiff's allegations conclusory because he offered "*no*

Taken as a whole, the allegations plead against Defendant Mogul are sufficient for the Court, at this stage, to reasonably infer that gender-based animus infected her conduct. *Cf. Moazzaz v. MetLife, Inc.*, No. 19-cv-10531 (JPO), 2021 WL 827648, at *8 (S.D.N.Y. Mar. 4, 2021) (noting that, given the context of the work environment, the court would "reasonably infer[] that gender animus" was at play in a discrimination claim). Defendant Mogul's comment that Defendant Cuomo's actions were only "grooming" is particularly illuminating and suggests that Defendant Mogul did not take Plaintiff – a vulnerable, young woman – or her complaints, which were lodged at an established, powerful man, at all seriously. It also signaled her view that sexual harassment, when directed at a young woman by a much older man, was acceptable, further underscoring her discriminatory intent. *See Williams*, 872 N.Y.S.2d at 41 n.30 (noting that a "single comment that objectifies women . . . [may] be actionable")

In sum, Plaintiff has alleged that Defendant Mogul contributed to a sexist work environment, mishandled her complaint of sexual harassment, and instituted a sexist work policy in such a way that one man – Defendant Cuomo – was protected at the expense of all women who worked for him. Given these allegations, there can be no doubt that Plaintiff has stated a claim that Defendant Mogul treated her less well because of her gender.[15]

---

facts" and cited "*no* incidents that would support an inference of discrimination." *Id.* at *6. *Manolov v. Borough of Manhattan Community College*, which Defendant Mogul cites for the same proposition, similarly involved a complaint where the plaintiff failed to state "any *facts* from which one could infer discriminatory intent or motivation." 952 F. Supp. 2d 522, 532 (S.D.N.Y. 2013). And *Ingrassia v. Health & Hosp. Corp.* is also inapposite. 130 F. Supp. 3d 709 (E.D.N.Y. 2015). The *Ingrassia* court dismissed the plaintiff's complaint because she failed to allege the threshold issue of whether she suffered an adverse employment action, instead alleging that despite being subject to "constant insults and comments" she "continued to get raises and was given great reviews." *Id.* at *721 (citation omitted).

[15] Though Plaintiff believes that her claims are sufficiently plead and does not seek leave to amend at this juncture, should the court choose to dismiss any of claims against Defendant Mogul, such a dismissal should be without prejudice because any defects in Plaintiff's Complaint are curable. *See Atadzhanov v. City of New York*, No. 21-cv-5098 (LJL), 2022 WL 4331304, at *12 (S.D.N.Y. Sept. 19, 2022) ("Dismissal with prejudice is appropriate when the flaws in pleading are incurable.") (citation omitted).

## **CONCLUSION**

For these reasons, Plaintiff respectfully requests that the Court deny Defendant Mogul's motion in its entirety.

Dated: December 20, 2022                     Respectfully submitted,

**KATZ BANKS KUMIN LLP**

*/s/ Debra S. Katz*

Debra S. Katz
Rachel E. Green
Kayla Morin
11 Dupont Circle, NW, Suite 600
Washington, D.C. 20036
Ph:     (202) 299-1140
Email:  katz@katzbanks.com
        green@katzbanks.com
        morin@katzbanks.com

**EISENBERG & SCHNELL LLP**

*/s/ Herbert Eisenberg*

Herbert Eisenberg
Laura S. Schnell
233 Broadway, Suite 2704
New York, New York 10279
Ph:     (212) 966-8900
Email:  lschnell@eisenbergschnell.com
        heisenberg@eisenbergschnell.com

*Attorneys for Plaintiff Charlotte Bennett*

cc:   All Counsel of Record (via ECF)