**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

CHARLOTTE BENNETT,

                     Plaintiff,

      v.

ANDREW M. CUOMO,
MELISSA DEROSA,
JILL DESROSIERS, and
JUDITH MOGUL,

                  Defendants.

1:22-CV-07846-VSB-KHP

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF GOVERNOR CUOMO'S MOTION TO DISMISS THE RETALIATION CLAIMS OR, IN THE ALTERNATIVE, TO STRIKE CERTAIN ALLEGATIONS**

Rita M. Glavin
GLAVIN PLLC
156 West 56th Street, Ste. 2004
New York, NY 10019
Tel: (646) 693-5505
rglavin@glavinpllc.com

Theresa Trzaskoma
SHER TREMONTE LLP
90 Broad Street, 23rd Floor
New York, New York 10004
Tel.: (212) 202-2600
Fax: (212) 202-4156
ttrzaskoma@shertremonte.com

## <u>TABLE OF CONTENTS</u>

ARGUMENT ................................................................................................................... 1

I.   Plaintiff's Voluntary Transfer was Not Retaliatory............................................. 1

   A.   Plaintiff's "Information and Belief" Pleading Is Insufficient. ...................... 1

   B.   Plaintiff's Complaints About Her Job Do Not Come Close to Establishing
        Constructive Discharge or Retaliatory Transfer. ......................................... 2

   C.   Plaintiff Has Not Adequately Pled Governor Cuomo's Personal Involvement........... 5

II.  Statements Made In Governor Cuomo's Defense Long After Plaintiff's
     Resignation Were Not Retaliatory. ...................................................................... 6

   A.   Plaintiff's Argument that the NYSHRL and NYCHRL Apply to "Any Person"
        Is Misleading and Wrong. ............................................................................ 6

   A.   There Is No Liability for Post-Employment Retaliation Absent an Ongoing
        Employment or Other Economic Relationship, and Cases Cited by Plaintiff
        Validate this Requirement............................................................................. 7

   B.   The Statements Were Reasonable Defensive Measures to Public Allegations
        and the AG Report. ....................................................................................... 8

III. Governor Cuomo Is Entitled to Qualified Immunity. .......................................... 9

IV.  Striking the Identified Allegations is Both Proper and Consistent with Precedent. ........... 9

CONCLUSION............................................................................................................... 10

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adecco USA, Inc. v. Staffworks, Inc.*, No. 6:20-cv-744, 2020 WL 7028872 (N.D.N.Y. Sept. 15, 2020) ..................................................................................................................................... 4

*Anderson v. Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392 (S.D.N.Y. 2012) ....................... 4

*Bianchi v. Rochester City Sch. Dist.*, No. 16-CV-6840-FPG, 2019 WL 4750424 (W.D.N.Y. Sept. 30, 2019) ........................................................................................................................... 3

*Davis v. N.Y.S. Dep't of Corrs. Attica Corr. Facility*, 110 F. Supp. 3d 458 (W.D.N.Y. 2015)...... 3

*Dowrich-Weeks v. Cooper Square Realty, Inc.*, 535 F. App'x 9 (2d Cir. 2013) ........................... 2

*Eckhart v. Fox News Network, LLC*, No. 20-CV-5593, 2022 WL 4579121 (S.D.N.Y. Sept. 29, 2022) ........................................................................................................................................ 7

*Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712 (2d Cir. 2010) .................................. 5

*Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429 (S.D.N.Y. 2018)....................... 8

*J&J Sports Prods., Inc. v. Gonzalez*, No. 18-cv-2319, 2019 WL 3716197 (E.D.N.Y. May 9, 2019) ........................................................................................................................................ 2

*Lipsky v. Commonwealth United Corp.*, 551 F.2d 887 (2d Cir. 1976) ........................................ 10

*Melman v. Montefiore Med. Ctr.*, 98 A.D.3d 107 (1st Dep't 2012) ............................................. 8

*Mendez v. Starwood Hotels & Resorts Worldwide, Inc.*, 746 F. Supp. 2d 575 (S.D.N.Y. 2010)... 9

*Miller v. Praxair, Inc.*, 408 Fed. App'x 408 (2d Cir. 2010) ........................................................ 3

*Milne v. Navigant Consulting*, 08-cv-8964, 2010 WL 4456853 (S.D.N.Y. Oct. 27, 2010) ........... 4

*Mira v. Kingston*, 218 F. Supp. 3d 229 (S.D.N.Y. 2016) ............................................................ 8

*Moore v. City of N.Y.*, No. 15-cv-6600, 2017 WL 35450 (S.D.N.Y. Jan. 3, 2017) ...................... 3

*Murphy v. Spaulding*, No. 1:20-CV-9013, 2020 WL 7248855 (S.D.N.Y. Dec. 7, 2020) ............. 6

*Nat'l Rifle Ass'n of Am. v. Vullo*, 49 F.4th 700 (2d Cir. 2022).............................................. 9, 10

*Nobler v. Beth Israel Med. Ctr.*, 702 F. Supp. 1023 (S.D.N.Y. 1988).......................................... 3

*Pacheco v. N.Y. Presbyterian Hosp.*, 593 F. Supp. 2d 599 (S.D.N.Y. 2009) ................................ 5

*Petrosino v. Bell Atl.*, 385 F.3d 210 (2d Cir. 2004) .................................................................... 4

*Schmitt v. Artforum Int'l Mag., Inc.*, 178 A.D.3d 578 (1st Dep't 2019).................................... 7, 8

*Shakerdge v. Tradition Fin. Servs., Inc.*, No. 16-cv-01940, 2017 WL 4273292 (D. Conn. Sept. 26, 2017) ........................................................................................................................... 8

*Silberman v. Atl. Dialysis Mgmt. Servs., LLC*, No. 17-cv-7019, 2018 WL 4335510 (S.D.N.Y. Sept. 11, 2018) ........................................................................................................................... 5

*Silver v. Mohasco*, 602 F.2d 1083 (2d Cir. 1979)....................................................................... 8

*Stetson v. NYNEX Serv. Co.*, 995 F.2d 355 (2d Cir. 1993) ......................................................... 4

*Tel. Mgmt. Corp. v. Barclays Servs. Corp.*, No. 11-cv-8570, 2013 WL 1344706 (S.D.N.Y. Mar. 28, 2013) ........................................................................................................................ 2

*United States v. N.Y.C. Dep't of Educ.*, 16 Civ. 4291, 2017 WL 435940 (S.D.N.Y. Jan. 31, 2017), *report and recommendation adopted*, 2017 WL 1319695 (Apr. 4, 2017) ...................... 4

*United States v. N.Y.C. Trans. Auth.*, 97 F.3d 672 (2d Cir. 1996) ................................................ 9

*Wermann v. Excel Dentistry, P.C.*, 13-cv-7028, 2014 WL 846723 (S.D.N.Y. Feb. 25, 2014) ...... 9

**Statutes**

N.Y. Exec. L. § 296 .......................................................................................................................... 7

N.Y.C. Admin. Code § 8-107 ........................................................................................................... 7

Plaintiff's Opposition to Governor Cuomo's Motion deflects the argument at the Motion's core: the Retaliation Claims fail not as a matter of fact, but as a *matter of law*. Plaintiff principally defends her claims by relying on allegations that are neither in the Complaint nor fairly inferred, and by mischaracterizing her original allegations beyond recognition. As reflected in her Complaint, Plaintiff's transfer to and resignation from the health policy team were both entirely voluntary decisions made upon her own request and by her own volition. Further, statements made by Governor Cuomo and his counsel following Plaintiff's lengthy public interviews, long after she had resigned and after the AG Report's release, were not retaliatory as a matter of law because: (i) Governor Cuomo had no ongoing employment or economic relationship with Plaintiff; (ii) the statements were reasonable defensive measures; and (iii) Plaintiff has failed to (and cannot) allege any injury stemming from those statements.  Plaintiff also argues that the motion to strike should be denied because the allegations "provid[e] background facts." That is not accurate because each of these inflammatory allegations post-dates the facts giving rise to Plaintiff's claims and serves solely to impugn Governor Cuomo and his counsel. The Retaliation Claims should be dismissed.

## ARGUMENT

### I.   PLAINTIFF'S VOLUNTARY TRANSFER WAS NOT RETALIATORY.

Plaintiff's Retaliation Claims based upon her voluntary transfer to the health policy team do not constitute constructive discharge under any standard and should be dismissed.[1]

#### A.  Plaintiff's "Information and Belief" Pleading Is Insufficient.

Plaintiff's Retaliation Claims against Governor Cuomo in connection with her transfer are premised entirely on allegations made upon "information and belief." But a litigant cannot use "information and belief" as magic words to render a conclusory allegation non-conclusory,

---

[1]     The Second Circuit has repeatedly found it proper to dismiss constructive discharge claims at this stage. *See, e.g.*, *Dowrich-Weeks v. Cooper Square Realty, Inc.*, 535 F. App'x 9, 13 (2d Cir. 2013).

especially regarding critical elements of a claim or legal conclusions. *J&J Sports Prods., Inc. v. Gonzalez*, No. 18-cv-2319, 2019 WL 3716197, at *5 (E.D.N.Y. May 9, 2019). And while such pleading might be proper if the facts were "peculiarly" within Governor Cuomo's control, that is not the case here. Rather, Plaintiff has access to (and has relied upon) a significant factual record concerning her transfer, including a 165-page Report, transcripts of Defendants' (and others') sworn testimony, and related documentary evidence. *See, e.g.*, ECF 53 at 7 n.7, 8 n.8. These "matters of public record" are "presumptively within [Plaintiff's] personal knowledge." *Tel. Mgmt. Corp. v. Barclays Servs. Corp.*, No. 11-cv-8570, 2013 WL 1344706, at *4 (S.D.N.Y. Mar. 28, 2013). None of these materials even suggests that Governor Cuomo was involved in the transfer. Plaintiff cannot plead a fact on "information and belief" when that "fact" is inconsistent with the public record that she has specifically incorporated by reference into her Complaint, *see* Opp. at 9 n.5, and she should not be permitted to cherry-pick the public record in this way.

Plaintiff has no information that could support a belief that Governor Cuomo played any role in her transfer, much less the sort that could give rise to liability for retaliation. The allegation regarding Governor Cuomo's involvement in her transfer, Compl. ¶ 84, is thus nothing more than a bare legal conclusion disguised as a properly pleaded fact. *See Moore v. City of N.Y.*, No. 15-cv-6600, 2017 WL 35450, at *23–24 (S.D.N.Y. Jan. 3, 2017).

### B.  Plaintiff's Complaints About Her Job Do Not Come Close to Establishing Constructive Discharge or Retaliatory Transfer.

To explain why she voluntarily agreed to a transfer and to resign, Plaintiff argues that her transfer and resignation were both the result of a constructive discharge. As a threshold matter, Plaintiff mischaracterizes the standard for constructive discharge: the inquiry is not, as Plaintiff suggests, whether Plaintiff subjectively felt that her work conditions were of such an "intolerable nature" that she felt compelled to resign, but whether an objective, reasonable person would have

felt that way. *See Nobler v. Beth Israel Med. Ctr.*, 702 F. Supp. 1023, 1030 (S.D.N.Y. 1988). Establishing that working conditions are "so intolerable that a reasonable [employee] . . . would have felt compelled to resign" is a demanding standard that Plaintiff's allegations do not come close to meeting. *Miller v. Praxair, Inc.*, 408 Fed. App'x 408, 410 (2d Cir. 2010).

In any event, as a matter of law, an allegation that Plaintiff felt "forced" to transfer—even to "a very undesirable new position"—does not support a claim for retaliation where the actual transfer was voluntary. *See Bianchi v. Rochester City Sch. Dist.*, No. 16-CV-6840-FPG, 2019 WL 4750424, at *8, 10 (W.D.N.Y. Sept. 30, 2019) (citing *Davis v. N.Y.S. Dep't of Corrs. Attica Corr. Facility*, 110 F. Supp. 3d 458, 464 (W.D.N.Y. 2015) (similar result)). In this case, the Complaint makes clear both that Plaintiff's transfer was voluntary and that any subsequent work conditions were entirely unrelated to her claims of discrimination. Indeed, Plaintiff does not allege that she feared termination if she did not accept the transfer, but instead specifically alleges that she was transferred upon her own request. Compl. ¶¶ 81–82. And the public record confirms the voluntary nature of the transfer, including that Plaintiff had been lobbying internally for the new position for some time.[2] *See* DeRosiers Tr. at 230:4-20, 232:8-12, 239:5-7.

Nor does Plaintiff allege any facts giving rise to an inference that, at the time of the transfer, the position on the health policy team was materially inferior, as would be required to establish that a voluntary transfer constituted constructive discharge. *See United States v. N.Y.C. Dep't of Educ.*, 16 Civ. 4291, 2017 WL 435940, at *7–8 (S.D.N.Y. Jan. 31, 2017), *report and recommendation adopted*, 2017 WL 1319695 (Apr. 4, 2017). Plaintiff does not allege a reduction

---

[2]     Plaintiff vaguely contends in her Opposition—though she does not directly allege in her Complaint—that Governor Cuomo replaced Ms. Baldwin to retaliate against Plaintiff. Opp. at 16. It is patently unreasonable to infer that Governor Cuomo would upend an entire health team in the middle of a pandemic to punish Plaintiff. *See Anderson v. Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392, 407 (S.D.N.Y. 2012) (conclusory assertions "are 'not entitled to the assumption of truth.'") (citations omitted). Furthermore, such conduct is not retaliatory. *See Adecco USA, Inc. v. Staffworks, Inc.*, No. 6:20-cv-744, 2020 WL 7028872, at *7 (N.D.N.Y. Sept. 15, 2020).

in pay; reduced status; or that the work done by the health policy team during the early months of COVID-19 was lesser than the administrative tasks, like dictation or transferring calls, for which she was previously responsible. *See* Compl. ¶ 20.

Rather, the circumstances described in the Complaint—unsatisfying assignments, lack of contact with her supervisor, an unhappy supervisor, a change in management, *see* Compl. ¶¶ 81, 87, 108, 111–14—are insufficient as a matter of law to sustain a claim for retaliatory transfer.[3] *See Stetson v. NYNEX Serv. Co.*, 995 F.2d 355, 360 (2d Cir. 1993) (no retaliatory transfer based on "dissatisf[action] with the nature of [employee's] assignments"); *Milne v. Navigant Consulting*, 08-cv-8964, 2010 WL 4456853, at \*8 (S.D.N.Y. Oct. 27, 2010) (same regarding "supervisor's unavailability" and "apparent avoidance"); *Adecco USA, Inc.*, 2020 WL 7028872, at \*7 (same regarding termination of upper-level managers during COVID-19); *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010) ("failure to investigate a complaint of discrimination" not retaliation for filing that complaint). *Pacheco* is precisely on point: common workplace complaints like disappointing or inadequate work assignments do not sufficiently establish that a plaintiff's new position was "less desirable or disadvantageous than his prior job." *Pacheco v. N.Y. Presbyterian Hosp.*, 593 F. Supp. 2d 599, 627 (S.D.N.Y. 2009).

In addition, Plaintiff's contention that either of her jobs was objectively "intolerable" is undermined by the fact that she (i) continued to work in the Executive Chamber following her complaint of harassment, and (ii) stayed on the health policy team for six weeks after notifying Ms. Baldwin of her intent to quit. Compl. ¶¶ 116–17, 122. Remaining in the complained-of position for such a length of time indicates that the conditions were, in fact, not intolerable.

---

[3]      In seeking to bolster the Complaint, Plaintiff argues that she had fewer "career development" opportunities in her new role. This unpled allegation should be disregarded, *see* Opp. at 13, but even if the Court did consider it, such a vague complaint regarding "little chance of promotion" also does not support a constructive discharge claim. *See Petrosino v. Bell Atl.*, 385 F.3d 210, 231 (2d Cir. 2004).

*Silberman v. Atl. Dialysis Mgmt. Servs., LLC*, No. 17-cv-7019, 2018 WL 4335510, at *4 (S.D.N.Y. Sept. 11, 2018) (no constructive discharge where plaintiff gave four weeks' notice).

### C.  Plaintiff Has Not Adequately Pled Governor Cuomo's Personal Involvement.

Plaintiff's contention that she has pleaded sufficient facts to support an inference that Governor Cuomo was personally involved in her transfer, Opp. at 16, fails for at least two reasons.

First, Plaintiff improperly relies on a series of vague and conclusory assumptions regarding Governor Cuomo's conduct. *See id.* But some of these allegations are nowhere in the Complaint. Plaintiff contends, for example, that Governor Cuomo "naturally was involved in the decision to decline to investigate her claims of sexual harassment." *Id.* at 16. But nothing in the Complaint supports such an inference. Other allegations, including that Governor Cuomo approved Plaintiff's transfer, Compl. ¶ 84, which is pled on mere information and belief, *supra* Part I.A, are inconsistent with the public record that Plaintiff herself relies on. An inference that Governor Cuomo was personally involved in the transfer is particularly unwarranted given that publicly released sworn testimony makes clear that Governor Cuomo had no involvement whatsoever in approving it. *See* DeRosiers Tr. at 231:17-18, 236:9-21, 238:23-239:7, 286:17-20 (explaining her actions to effectuate the transfer, and making no mention of informing Governor Cuomo or requesting his approval); Mogul Tr. at 124:21-125:12 (stating that Ms. DesRosiers arranged for the transfer); DeRosa Tr. at 358:13-359:1 (stating her recollection that, between Plaintiff's transfer and June 30, 2020, Governor Cuomo was told that Plaintiff had moved positions, but otherwise did not discuss Plaintiff). Under these circumstances, where Plaintiff does not allege any involvement by Governor Cuomo in Plaintiff's post-transfer working conditions or assignments, and where there is no reason to infer even his supposed approval of the transfer, the Complaint does not plead the sort of personal involvement required to establish a claim for retaliatory transfer under *Tangreti*.

Second, Plaintiff argues that Governor Cuomo was personally involved in her transfer because he "caused" it by harassing her in the first place. But even assuming the harassment allegations to be true for purposes of this Motion, personal involvement in the underlying harassment does not create personal involvement in any subsequent alleged retaliation. And even if there was some sort of link between the two, an allegation that a defendant "fostered an atmosphere that made it possible" for constitutional violations to occur is by itself insufficient to establish the defendant's personal involvement in the alleged retaliation. *See Murphy v. Spaulding*, No. 1:20-CV-9013, 2020 WL 7248855, at *3 (S.D.N.Y. Dec. 7, 2020).

II.    **STATEMENTS MADE IN GOVERNOR CUOMO'S DEFENSE LONG AFTER PLAINTIFF'S RESIGNATION WERE NOT RETALIATORY.**

A.    **Plaintiff's Argument that the NYSHRL and NYCHRL Apply to "Any Person" Is Misleading and Wrong.**

Plaintiff's argument that the NYSHRL and NYCHRL broadly apply to "any person" engaged in enumerated misconduct is simply wrong. Opp. at 19. The NYCHRL and NYSHRL retaliation provisions apply, instead, only to "any person *engaged in activity to which this [chapter or section] applies*" (emphasis added), namely those who are engaged in employment, who control or manage apprentice training programs, housing, and public accommodations, and commercial and residential lenders. N.Y. Exec. L. § 296(7); N.Y.C. Admin. Code § 8-107(7). Plaintiff attempts to misdirect the Court by citing not to those provisions, but to provisions regarding *entirely different causes of action*. *See* Opp. at 19. N.Y.C. Admin. Code § 8-107(19) prohibits interference in efforts to engage in protected conduct, like reporting harassment, which Plaintiff did without opposition. Section 8-107(6) (which Plaintiff quotes, but incorrectly cites as § 8-107(7)) and N.Y. Exec. L. § 296(6) both relate to aiding and abetting, which is not pled here. And finally, Plaintiff's case law in support discusses liability for aiding and abetting *discrimination*, not direct liability for retaliation. *See* Opp. at 19 n.9 and cases cited therein. The NYSHRL and NYCHRL, by their

6

own text, require some employment nexus between the parties to impose direct liability for retaliation. *Schmitt v. Artforum Int'l Mag., Inc.*, 178 A.D.3d 578, 584–85 (1st Dep't 2019).

### A. There Is No Liability for Post-Employment Retaliation Absent an Ongoing Employment or Other Economic Relationship, and Cases Cited by Plaintiff Validate this Requirement.

State and federal laws do not protect against any and all misconduct by a former employer toward a former employee at any given time after the termination of the employment relationship, *ad infinitum*. Rather, "[r]etaliation claims under [the NYSHRL and NYCHRL] are confined to the employment context, or at the very least, to situations where the parties had an 'ongoing economic relationship.'" *Eckhart v. Fox News Network, LLC*, No. 20-CV-5593, 2022 WL 4579121, at \*2 (S.D.N.Y. Sept. 29, 2022).

Plaintiff ignores *Eckhart* entirely, but even the cases Plaintiff does cite also confirm the ongoing economic relationship requirement. For example, in *Schmitt v. Artforum Int'l Mag., Inc.*, the First Department held that to plausibly plead a post-employment retaliation claim under the NYCHRL—the broadest of the laws at issue—a former employee "should be shown to occupy a subordinate position in an ongoing economic relationship that is threatened by the 'employer's' retaliation, and the nature of the retaliation itself should have a demonstrable nexus to the harm being alleged." 178 A.D.3d at 584–85. And in *Mira v. Kingston*, the court ruled that a plaintiff could not recover for allegations that "do not relate to her new job or to any inability to procure employment." 218 F. Supp. 3d 229, 235–36 (S.D.N.Y. 2016) (McMahon, J.).

And in those cases where courts find actionable post-employment retaliation, none concern defensive statements made in response to the sort of high-profile public allegations involved here, including public statements by Plaintiff and other complainants, and the highly publicized AG Report. Instead, the cases cited by Plaintiff involve employment-related retaliatory measures, including industry blacklisting or negative references. *See, e.g.*, *Silver v. Mohasco*, 602 F.2d 1083,

1086 (2d Cir. 1979); *Shakerdge v. Tradition Fin. Servs., Inc.*, No. 16-cv-01940, 2017 WL 4273292, at *5 (D. Conn. Sept. 26, 2017). The statements at issue here were not targeted at Plaintiff's future employment and had nothing to do with her performance as an employee or her employment relationship with New York State. This is precisely why Plaintiff is not able to plead a single, tangible consequence of the alleged retaliation—no lost job opportunities, rescinded interview offers, or negative references—and why all she can allege is speculative future harm.[4]

### B. The Statements Were Reasonable Defensive Measures to Public Allegations and the AG Report.

Initially, Plaintiff claims that the "reasonable defensive measures" doctrine does not apply to actions under the NYSHRL and NYCHRL. Opp. at 19-20. This is incorrect, as courts have applied the doctrine in such cases. *See, e.g.*, *Melman v. Montefiore Med. Ctr.*, 98 A.D.3d 107, 129 (1st Dep't 2012); *Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 449 (S.D.N.Y. 2018).

Next, Plaintiff argues that Governor Cuomo's statements were unreasonable, and that they could cause her future harm. This argument misstates the law: whether or not statements caused or could cause harm has absolutely no bearing on whether those statements are "reasonable defensive measures." *See United States v. N.Y.C. Trans. Auth.*, 97 F.3d 672, 677 (2d Cir. 1996). And though Plaintiff points to two cases as comparators, both are inapposite. *Wermann v. Excel Dentistry, P.C.*, 13-cv-7028, 2014 WL 846723, at *4 (S.D.N.Y. Feb. 25, 2014), involved offensive counterclaims accusing the plaintiff of fraud without a factual basis for such claims, and *Mendez v. Starwood Hotels & Resorts Worldwide, Inc.*, 746 F. Supp. 2d 575, 596–97 (S.D.N.Y. 2010),

---

[4]     *Compare, e.g.*, Opp. at 17 (statements "diminished her ability to attain future job opportunities"), 21 (statements "*led to tangible harm*" to future employment prospects") *with* Compl. ¶¶ 132 (statements "*will* harm Plaintiff's future employment prospects"), 144 (same) (emphasis added).

involved the secret installation of a security camera above plaintiff's workstation, which cannot, as Plaintiff urges, reasonably be compared to monitoring public social media.

The law simply does not require Governor Cuomo and his attorney to remain silent in the face of Plaintiff's public allegations, levied long after she left state employment, nor does the law prohibit Governor Cuomo and his attorney from criticizing an inaccurate, unreliable, and materially misleading public investigation and report.  Neither Governor Cuomo's statements to the press made in a defensive posture in specific response to Plaintiff's allegations, nor statements made by counsel refuting the AG Report and its underlying investigation are actionable retaliation.

## III.   GOVERNOR CUOMO IS ENTITLED TO QUALIFIED IMMUNITY.

A qualified immunity defense is properly asserted at the motion to dismiss stage. *See Nat'l Rifle Ass'n of Am. v. Vullo*, 49 F.4th 700, 714 (2d Cir. 2022). Plaintiff's only argument in opposition is that because Governor Cuomo signed the 2019 NYSHRL amendments into law, Plaintiff's interpretation of the law is thus "clearly established" for purposes of qualified immunity. Opp. at 22–23. But awareness that a law exists is not the same as awareness of the law's contours or knowledge that one has violated the law through particular conduct. And whether or not law is clearly established bears no relationship to legislative or executive intent, but to judicial interpretation; the conduct's alleged unlawfulness "must be apparent in light of pre-existing case law for qualified immunity to be denied." *Vullo*, 49 F.4th at 719. Governor Cuomo did not violate clearly established law through any purported involvement in Plaintiff's transfer or his statements to the media responding to the allegations.

## IV.   STRIKING THE IDENTIFIED ALLEGATIONS IS BOTH PROPER AND CONSISTENT WITH PRECEDENT.

Plaintiff argues that Governor Cuomo's motion to strike should be denied for several

reasons.[5] First, Plaintiff claims that the allegations regarding statements made by Governor Cuomo's counsel responding to the AG Report and investigation are not immaterial, because post-employment conduct can serve as the basis of a retaliation claim. As discussed *supra*, the alleged post-employment conduct, *i.e.*, reasonable defensive measures responding to public allegations and the AG Report and investigation, is not actionable under federal or state law.

Plaintiff next claims that the identified allegations "provid[e] background facts"—notwithstanding that those "background" allegations long ***post-date*** all of Plaintiff's harassment claims and her state employment. Beyond that, however, Plaintiff provides no reason why the post-employment statements are relevant to her claims of retaliation during her employment, or why such allegations may enable the Court to "better understand" her pre-resignation claims.

Finally, Plaintiff contends that the material is not scandalous, attempting to downplay the nature of the post-employment retaliation allegations, particularly as they relate to statements counsel made to defend Governor Cuomo. Plaintiff's shift in tone in the context of this briefing does not redeem the highly inflammatory allegations in the Complaint, which improperly seek to invade privileged communications and are nothing more than a blatant effort to prevent Governor Cuomo and his counsel from continuing to defend against Plaintiff's claims and the unreliable, inaccurate, and misleading AG Report.  Such irrelevant allegations should be stricken.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in the Motion, Governor Cuomo respectfully requests that the Court dismiss the Retaliation Claims or, in the alternative, strike the requested allegations from the Complaint.

---

[5]      Plaintiff does not engage with, and therefore concedes, that "no evidence in support of [the] allegation[s]" relating to communications between Governor Cuomo and his counsel "would be admissible," which provides further reason for striking the allegations. *See Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976).

Dated:     January 30, 2023           Respectfully submitted,
             New York, New York

                                       */s/  Rita M. Glavin*

Rita M. Glavin
GLAVIN PLLC
156 West 56th Street, Ste. 2004
New York, NY 10019
Tel: (646) 693-5505
rglavin@glavinpllc.com


Theresa Trzaskoma
SHER TREMONTE LLP
90 Broad Street, 23rd Floor
New York, New York 10004
Tel.: (212) 202-2600
Fax: (212) 202-4156
ttrzaskoma@shertremonte.com

*Counsel for former Governor*
*Andrew M. Cuomo*

11