```
                   UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF NEW YORK
        ----------------------------:
        CHARLOTTE BENNETT,           : Case No.: 22CV7846
                      Plaintiff,     :
             v.                      :
        ANDREW M. CUOMO, et al.,     : New York, New York
                      Defendants.    : August 22, 2023
        ----------------------------:

             TRANSCRIPT OF STATUS CONFERENCE HEARING
             BEFORE THE HONORABLE SARAH L. CAVE
                UNITED STATES MAGISTRATE JUDGE

        APPEARANCES:

        For Plaintiff:        EISENBERG & SCHNELL LLP
                              BY: Laura S. Schnell, Esq.
                                  Herbert Eisenberg, Esq.
                              233 Broadway
                              New York, NY 10279

        For Defendant:        GLAVIN PLLC
        Andrew M. Cuomo       BY:  Rita M. Glavin, Esq.
                                   Leo Korman, Esq.
                              156 West 56th Street - Ste #2004
                              New York, NY 10019

        For Defendant:        MORVILLO PLLC
        Melissa DeRosa        BY:  Gregory R. Morvillo, Esq.
                              1740 Broadway - 15th Floor
                              New York, NY 10019

        For Defendant:        DEBEVOISE & PLIMPTON LLP
        Jill DesRosiers       BY:  Jyotin Hamid, Esq.
                              66 Hudson Boulevard
                              New York, NY 10001

        For Defendant:        ORRICK, HERRINGTON & SUTCLIFFE LLP
        Judith Mogul          BY:  Michael Delikat, Esq.
                              51 West 52nd Street
                              New York, NY 10019


        Proceedings recorded by electronic sound recording;
        Transcript produced by transcription service
```

```
 1              THE COURT:  Good afternoon.  This is
 2    Magistrate Judge Cave.  We're here for a conference
 3    in Bennett versus Cuomo; Case Number: 22-cv-7846.
 4              May I have the appearances starting with
 5    the plaintiff, please.
 6              MS. SCHNELL:  Good afternoon, Your Honor.
 7    This is Laura Schnell at Eisenberg & Schnell for
 8    plaintiff, Charlotte Bennett.  And I believe on the
 9    line also is Herbert Eisenberg, also at Eisenberg &
10    Schnell, and Rachel Green and Kayla Morin at Katz
11    Banks Kumin; all for plaintiff, Charlotte Bennett.
12              THE COURT:  All right.  Good afternoon to
13    all of you.
14              MR. EISENBERG:  Good afternoon.
15              THE COURT:  And for defendant, Cuomo?
16              MS. GLAVIN:  Yes, good afternoon,
17    Your Honor.  Rita Glavin, along with Leo Korman of
18    Glavin PLLC for Governor Cuomo.
19              THE COURT:  Okay.
20              MS. GLAVIN:  And from Sher Tremonte,
21    Allegra Noonan is joining us.  And with respect to
22    my co-counsel, Theresa Trzaskoma, who is at Sher
23    Tremonte, she wants to thank everyone for -- and
24    Your Honor for pushing this to 3 o'clock.  She had a
25    doctor's appointment that she could not move, and
```

```
 1    the doctor is running far behind, so she's still in
 2    the waiting room, as I understand it, so she will
 3    not be calling in.
 4             THE COURT:  Okay.  All right.  I
 5    understand.  Thank you.
 6             All right.  For defendant, DeRosa?
 7             MR. MORVILLO:  Morning -- good afternoon,
 8    Your Honor.  It's Gregory Morvillo on behalf of
 9    Ms. DeRosa.  And my colleague, Anthony Gruppuso,
10    also on behalf of Ms. DeRosa is on the call.
11             THE COURT:  Okay.  Good afternoon.
12             From defendant, DesRosiers?
13             MR. HAMID:  Good afternoon, Your Honor.
14    Joe Hamid at Debevoise & Plimpton.  And, I believe,
15    on the line are my colleagues, Leah Rosenberg and
16    Soren Schwab.
17             THE COURT:  Good afternoon.
18             And for defendant, Mogul?
19             MR. DELIKAT:  Good afternoon, Your Honor.
20    It's Mike Delikat from Orrick, joined by my
21    colleagues, Brianna Messina and Melinda Church.
22             THE COURT:  Okay.  Good afternoon,
23    everyone, and nice to meet all of you.  This is, I
24    believe, my first conference in the case since
25    Judge Broderick referred the case to me for GPT.
```

```
 1              So I have before me the parties'
 2   August 17th letter concerning Ms. Bennett's request
 3   to quash subpoenas to certain non-parties, and so
 4   that will be the focus of our discussion today, as
 5   well as any other issues that the parties want to
 6   raise.
 7              So my first question is -- and unless I
 8   missed it, I don't think the subpoenas themselves
 9   have been filed, so if I could ask -- I'll start
10   with you, Ms. Glavin.
11              Do the subpoenas themselves -- are they
12   just, sort of, plain, vanilla subpoenas, or are
13   there lists of topics that are attached to each of
14   the three subpoenas?
15              MS. GLAVIN:  Well, two of the subpoenas,
16   Your Honor, are testimony subpoenas, and that's the
17   subpoena to John Doe and to David Whitman, who's the
18   Hamilton College president.  The third subpoena at
19   issue is a document subpoena to Hamilton College.
20              THE COURT:  Okay.
21              MS. GLAVIN:  And it has simply one request.
22   I can read that out loud if Your Honor would like.
23              THE COURT:  Okay.  Yes, please.
24              MS. GLAVIN:  Okay.  It calls for all
25   documents or communications concerning any
```

```
1    allegations of sexual harassment or sexual
2    misconduct made by Charlotte Bennett against any
3    member of the Hamilton College community --
4              THE COURT:  Okay.
5              MS. GLAVIN:  -- including, but not limited
6    to any documents concerning a complaint Ms. Bennett
7    made in 2017 against the Hamilton College student
8    known as John Doe in the lawsuit John Doe versus
9    Hamilton College, 17-cv-1202, Northern District of
10   New York; any recordings of John Doe in connection
11   with that complaint; any documents or communications
12   concerning or reflecting Ms. Bennett's interactions
13   with Hamilton College administrators about her
14   allegations; and/or any documents or communications
15   concerning any meetings with the president of
16   Hamilton College and Ms. Bennett concerning any
17   allegations of sexual misconduct.
18             THE COURT:  Okay.  And the testimony
19   subpoenas to John Doe and Mr. Whitman, do those have
20   topics as well, or are they just --
21             MS. GLAVIN:  No.
22             THE COURT:  -- the subpoenas themselves.
23   Okay.
24             And has Hamilton College produced any
25   documents in response to those subpoenas?
```

AMM TRANSCRIPTION SERVICE - 631.334.1445

1            MS. GLAVIN:  No, Your Honor.  With respect

2    to Hamilton -- Hamilton and David Whitman are

3    represented by the same attorney.  And with respect

4    to the college, they are aware of this motion, and

5    they're waiting on, you know, resolution for it.

6            THE COURT:  Okay.

7            MS. GLAVIN:  With respect to the Hamilton

8    College president, David Whitman, we had agreed with

9    Mr. Whitman and his counsel for a deposition date of

10   September 21st.

11           THE COURT:  Okay.

12           MS. GLAVIN:  And with respect to John Doe,

13   we're going to have a call with his lawyer.  It

14   looks like it's going to be for next Monday.

15           THE COURT:  Okay.  All right.  Thank you.

16   And do we have a sense of what, if anything,

17   Hamilton College has?  You listed several categories

18   of types of documents, but do the defendants in this

19   case have any information or reason to believe that

20   Hamilton College actually does have, you know, any

21   documents specific to Ms. Bennett?

22           MS. GLAVIN:  We do.  So John Doe was a

23   Hamilton College student.  And in May of 2017,

24   approximately two weeks before graduation, Ms.

25   Bennett and several other women made complaints

```
 1   about him for sexual misconduct, non-consensual
 2   sexual contact, made formal complaints.  We
 3   believe -- we don't know for sure, but we believe
 4   that these were (indiscernible) --
 5            THE COURT:  I'm sorry --
 6            MS. GLAVIN:  And --
 7            THE COURT:  -- Ms. Glavin, you're cutting
 8   in and out.  I don't know if you can get a little
 9   bit closer to the phone that you're speaking into.
10   I just want to make sure --
11            MS. GLAVIN:  Sure.
12            THE COURT:  I assume we'll be getting a
13   transcript of this conference, and I want to make
14   sure we have a clear record.  So if you could -- I
15   heard May '17 there were allegations made, and then
16   it, kind of, cut out from there.
17            MS. GLAVIN:  Sure.  Is this better?  I just
18   picked --
19            THE COURT:  That's much better.  Yes,
20   that's much better.
21            MS. GLAVIN:  Okay.  So Mr. Doe alleged in a
22   federal lawsuit, which is public, it was filed in
23   the Northern District of New York.
24            THE COURT:  Right.
25            MS. GLAVIN:  He alleged that in May of
```

```
 1   2017, within about two weeks of his graduating from
 2   Hamilton, Ms. Bennett, along with several women,
 3   made false accusations against him of sexual
 4   misconduct.  And my read of that complaint is
 5   that -- they were written complaints, that they
 6   (indiscernible) to administrators.
 7            THE COURT:  I'm so sorry.
 8            MS. GLAVIN:  And --
 9            THE COURT:  I'm so sorry to interrupt you
10   again.  I'm now getting, like, a beep when you're
11   speaking that's blanking out what you're saying.
12            If I could just ask in the first instance,
13   for anybody other than Ms. Glavin who's not
14   speaking, if you could, please, mute your line.
15   Let's start with that first.
16            Okay.  All right.  And so you inferred that
17   there was a written complaint, Ms. Glavin.  That's
18   what you --
19            MS. GLAVIN:  Yeah, I do infer there was a
20   written complaint, or, at a minimum, that the
21   administrative official at Hamilton that took these
22   complaints, you know, would have documented those
23   complaints.
24            Then John Doe further alleges that Ms.
25   Bennett, either once he was kicked off campus or
```

1   shortly before he was expelled, withdrew her

2   complaint, formally withdrew that complaint.  Again,

3   I think there would be documentation at Hamilton

4   College regarding this.

5          Mr. Doe further alleges that the allegation

6   of sexual misconduct that Ms. Bennett made against

7   him was something that she alleges occurred in 2014,

8   I think when they were freshmen, and that

9   Ms. Bennett had a recording of a conversation with

10  John Doe in which Mr. Doe alleges on the recording,

11  Ms. Bennett acknowledged that she had not been

12  sexually assaulted.  So I do think that there is --

13  that there are documents at Hamilton on this, just

14  from my own knowledge of colleges, that they -- this

15  would have been written up.

16         Mr. -- John Doe -- there was a disciplinary

17  hearing.  I think two of the women ended up dropping

18  their complaints.  One of them was unsubstantiated,

19  and the last, I think, was substantiated, which I

20  don't know what portion was, but he alleges, you

21  know, was false, so he sued the college.  And based

22  on that, I do believe that, given the complaints, I

23  just can't imagine that Hamilton would not have

24  documented all of this.

25         THE COURT:  Sure.  But to your knowledge,

AMM TRANSCRIPTION SERVICE - 631.334.1445

1  is there any finding or report as to the allegations

2  that were made, as to whether they were

3  substantiated or true or false?

4          MS. GLAVIN:  Don't know.

5          THE COURT:  Okay.

6          MS. GLAVIN:  Other than I know that

7  Ms. Bennett withdrew her allegation, and the

8  lawsuit -- in the lawsuit, John Doe alleges that two

9  women went to Ms. Bennett in May of 2017 because

10  Ms. Bennett was active in a sexual harassment/sexual

11  assault task force, that those women went to

12  Ms. Bennett for advice.  And it was at that point

13  that Ms. Bennett said that she would make an

14  allegation as well against John Doe -- this is the

15  allegation -- and that it was a false allegation.

16  And that John Doe alleged that Ms. Bennett did this

17  to bolster the other women's complaints, and then

18  withdrew her complaint.

19          THE COURT:  Okay.  And then my

20  understanding is that the case involving John Doe in

21  the Northern District, that's been settled, right?

22  So there's no finding as to the truth or falsity of

23  any of the allegations there, correct?

24          MS. GLAVIN:  Not that we know of, no.  It

25  appears that it settled in 2018.

1           THE COURT:  Okay.  All right.  And have the
2    defendants deposed Ms. Bennett as yet?
3           MS. GLAVIN:  No.  There's not a date for
4    her deposition.
5           THE COURT:  Okay.  Thank you, Ms. Glavin.
6           All right.  So let me turn back to you,
7    Ms. Schnell, and start with your position as to each
8    of the subpoenas, which, you know, you're, sort of,
9    in the position of moving to quash.  So I will give
10   you the floor first, now that I have the background
11   questions answered by Ms. Glavin.
12          MS. SCHNELL:  Thank you, Your Honor.
13          With respect to the subpoena to Hamilton,
14   there are, as defendant -- I believe defendants know
15   there were -- there was a -- another sexual --
16   Title IX complaint that she filed as well, and
17   there's extensive -- we believe there will be
18   extensive, probably, documentation about that
19   complaint and the investigation and all sorts of
20   things.  That's actually the complaint that she told
21   Governor Cuomo about, as alleged in her complaint,
22   and he asked her probing questions about.
23          And so for her to -- for this to -- you
24   know, to go into, essentially, you know, a fishing
25   expedition into sexual harassment complaints she's

1    made while she was a student, I mean, there's just

2    absolutely no showing of relevance at all to any of

3    the claims or even of the defenses.  We don't have

4    an answer, but, I mean, there's no defense that the

5    fact that these -- of these other claims would make

6    that would be relevant to.

7            With respect to John Doe's complaint, you

8    know, again, the intimate details of both of those

9    complaints are something she should really not have

10   to talk about and they shouldn't get -- be able to

11   get discovery about.  And are we going to have a

12   mini trial about whether she was sexually harassed

13   by students in 2014 and 2015?

14           The unverified federal court -- with

15   respect to John Doe, the unverified federal court

16   complaint, again, it's a federal court complaint --

17   it's not under oath -- alleging Title IX claims,

18   breach of contract and reverse gender

19   discrimination.  Again, that -- there's nothing in

20   that complaint that would indicate that John Doe has

21   any personal knowledge of, you know, Charlotte

22   Bennett's -- anything that would be relevant to this

23   case.  The case is 291 paragraphs long, only six

24   have anything to do with Ms. Bennett.

25           And contrary to what Ms. Glavin said, he

1    admits in his complaint that her complaint against
2    him was not a claim of assault.  It was a
3    complaint -- a claim of "non-consensual sexual
4    contact."  And the tape that he refers to was --
5    also said that she acknowledged that he didn't
6    assault her, but did not agree that what he did was
7    okay.  In fact -- anyway.  The --
8              THE COURT:  Do you have that tape, or does
9    Ms. Bennett have that tape?
10             MS. SCHNELL:  I don't know, Your Honor.
11             THE COURT:  Okay.
12             MS. SCHNELL:  I suspect she does, but I do
13   not know.
14             So, you know, again, do we end up having
15   full discovery on what exactly Ms. Bennett accused
16   John Doe of and require her to prove her claims
17   against him in this forum?  Where are we going with
18   this?
19             His allegation that she did so to bolster
20   other allegations in his complaint has absolutely no
21   facts to support it, not one fact to support it.
22   And, again, do we depose the three other women who
23   also complained against -- about John Doe as to
24   their interactions with Ms. Bennett and why they
25   filed their complaints?  I mean, there's just no end

```
 1   to it.
 2           THE COURT:  Well, there are subpoenas to
 3   the women.  We're just dealing with the three that
 4   we're talking about here, so...
 5           MS. SCHNELL:  No, I know, but, you know,
 6   again, if we're -- they say they want to depose
 7   John Doe so he can repeat his unfounded allegation
 8   that -- about Ms. Bennett.  And so if -- how are we
 9   then going to deal with that?  Do we then have to
10   get all those other people in to depose them?
11           THE COURT:  Well, where are you in --
12           MS. SCHNELL:  There's no end to it.
13           THE COURT:  What's the status of
14   Ms. Bennett producing all of her documents and
15   sitting for her deposition?
16           MS. SCHNELL:  Well, they haven't asked for
17   a deposition.  I mean, our document responses, I
18   believe, are due in a week or two.
19           THE COURT:  Okay.
20           MS. SCHNELL:  And we're working on it.
21   They haven't noticed her deposition.
22           THE COURT:  Okay.  But that's inevitably
23   coming.
24           MS. SCHNELL:  Of course.  Of course.
25           THE COURT:  Okay.  And will you be make --
```

1  do you have documents that you've collected and will

2  be producing on behalf of Ms. Bennett?

3          MS. SCHNELL:  Of course, yes.

4          THE COURT:  Okay.  Okay.  What about the

5  president of Hamilton, Mr. Whitman?

6          MS. SCHNELL:  David Whitman.  Again, there

7  is no showing that he has -- and, again, the

8  subpoena isn't limited at all.  It's just a

9  deposition to him, okay.  There is no showing that

10  he has any personal knowledge at all of

11  Ms. Bennett's Title IX claims while at Hamilton --

12  again, if that would be relevant.  It isn't.

13          And then there -- the only -- I guess it's

14  not evidence.  They -- Ms. Glavin cites an unnamed

15  person in an unsworn letter supposedly sent to

16  Andrew Cuomo from someone who is -- was,

17  quote/unquote, close to the president of Hamilton

18  College, who made assertions about a meeting that

19  Ms. Bennett had with the President of Hamilton

20  College that this person did not attend.

21          That's the only basis for looking for a

22  deposition from the president of Hamilton College.

23          THE COURT:  Okay.  All right.

24          Ms. Glavin, as I understand it, the

25  principal basis for seeking all this discovery in --

1    at the highest level goes to Ms. Bennett's

2    credibility; is that right?

3         MS. GLAVIN:  Yes, Your Honor.  Her

4    credibility is going to be one of the most central

5    issues in this lawsuit because Governor Cuomo, you

6    know, denies her sexual harassment allegations and

7    vehemently disputes descriptions that Ms. Bennett

8    has made publicly in her lawsuit, as well in various

9    media interviews and on her Twitter account, about

10    her interactions with Governor Cuomo.  So her

11    credibility is going to be key.

12         And one thing that I should mention for the

13    Court is that there was not just one allegation of

14    sexual misconduct that Ms. Bennett made at Hamilton.

15    We are aware of two, and Ms. Schnell mentioned the

16    second one.  Ms. Bennett -- the reason we know

17    about -- so, basically, there is the first one that

18    was made in 2014 or 2015 or 2016 while she was at

19    Hamilton.  She spoke very publicly about that

20    misconduct allegation, and she spoke about it at a

21    student assembly and complained that most of her

22    allegations were not found to be substantiated or

23    founded.  And we're seeking information related to

24    that as well.  And with respect to, you know, John

25    Doe, we think it is the same credibility issue.

```
 1              And I just point out, look, ultimately, I
 2    fully expect that there will be a motion in limine
 3    on this, but for discovery purposes now, we believe
 4    it couldn't be more relevant given that Ms. Bennett
 5    is making these allegations about when she worked
 6    with Governor Cuomo, you know, between 2019 and
 7    2020.  And then there are these allegations that are
 8    purported that we believe to be false that were made
 9    while she was at Hamilton College, you know, just
10    before she joined the executive chamber.
11              With respect to -- with respect to David
12    Whitman, the reason we noticed his deposition --
13    it's twofold.  One is Ms. Bennett publicly tweeted
14    in 2019 that when she met with the president of
15    Hamilton College to discuss her sexual misconduct
16    allegations or sexual assault story, that he
17    "laughed in her face."  And, you know, that, I find
18    very difficult to believe, that the Hamilton College
19    president laughed in her face.
20              THE COURT:  Okay.  But let's say he did.
21    Why does it matter?  What does that tell us?
22    Anything about the claims or defenses in this case?
23              MS. GLAVIN:  It tells us that
24    Ms. Bennett -- when it comes to making sexual
25    misconduct allegations, Ms. Bennett, in this case,
```

1    we think, has lied and embellished her allegations,

2    similar to what she has done in (indiscernible)

3    instances with Hamilton.

4              THE COURT:  What makes Mr. Whitman the

5    arbiter of truth in this court?  You know, just

6    because --

7              MS. GLAVIN:  He's not.

8              THE COURT:  -- he laughed at her doesn't

9    tell us anything.

10             MS. GLAVIN:  Well, in the meeting,

11   apparently, Mr. Whitman -- we learned this.

12   Governor Cuomo received a letter from a woman who

13   was close to David Whitman (indiscernible), and he

14   received this letter in 2021, who said that

15   Charlotte Bennett -- the administration or

16   administrators or staff believed that she was not

17   credible and advised the president of Hamilton

18   College never to meet alone with her; that they had

19   a meeting, and then following that meeting where

20   they discussed the fact that Ms. Bennett

21   (indiscernible) student removed from campus without

22   due process, or expelled from campus without due

23   process, that made public false statements

24   mischaracterizing what happened at the meeting.

25             I think with respect to David Whitman --

                AMM TRANSCRIPTION SERVICE - 631.334.1445

```
 1   look, we may ultimately not (indiscernible), but we
 2   think he may have discoverable information that
 3   could lead us to, you know, other avenues of
 4   questioning.  But certainly, we know that
 5   Ms. Bennett met with him, that she wanted this
 6   person kicked off campus, that she's made very
 7   public sexual misconduct allegations against that
 8   were unfounded or deemed to be unfounded, and that
 9   he didn't go along with her, and that she retaliated
10   against the president of Hamilton College.
11           And we think -- look, it (indiscernible)
12   relevance is a very broad concept, but it certainly
13   (indiscernible) looking to the credibility, bias,
14   motive and intent that Ms. Bennett (indiscernible)
15   her allegations against Governor Cuomo within a year
16   or two -- within two, three years after her time at
17   Hamilton.
18           THE COURT:  Sorry.  Do you still have that
19   letter?
20           MS. GLAVIN:  We think we should be allowed
21   to explore it.
22           THE COURT:  Do you still have the letter
23   that Mr. Cuomo received?
24           MS. GLAVIN:  We do.  We do have the letter.
25           THE COURT:  And do you have the tweet,
```

```
 1    Ms. Bennett's tweet from 2019?

 2              MS. GLAVIN:  We do.

 3              THE COURT:  I think I would like to see

 4    those.

 5              MS. GLAVIN:  Okay.

 6              THE COURT:  I mean, the other issue that

 7    I'm wrestling with is, as I mentioned at the outset,

 8    you know, I don't even have these subpoenas that

 9    somebody's asking me to quash.  And so, you know,

10    that to me is a big hurdle here.  And then even

11    assuming I did, as it sounds, the documentary

12    subpoena to Hamilton sounds rather broad, and

13    there's no limit on the testimony to -- the

14    testimony sought from John Doe and Mr. Whitman.  So

15    I really -- given the sensitivity -- even assuming

16    that the defendants were entitled to get this

17    information -- and I haven't made a decision on

18    that -- the scope here, as it's been presented to

19    me, just on the, you know, six-page letter, is

20    potentially very broad and, you know, sort of, a

21    blanket license to let the defendants just go

22    searching through Hamilton's records and asking

23    Mr. Doe and Mr. Whitman any question under the sun

24    is not appropriate legally, given the sensitivity of

25    this case.
```

```
 1              So I don't know if -- Ms. Glavin, if you're
 2     willing to undertake to tailor the two testimony
 3     subpoenas and propose a set of topics about which
 4     you can meet and confer with Ms. Bennett's counsel
 5     and see if you can reach agreement.  And if you
 6     can't, then we could revisit this discussion.  But
 7     as it stands right now, the breadth of what the
 8     defendants are seeking from these individuals is
 9     troubling.
10              And then the second issue that I have at
11     this point in time is, you know, why we're going
12     after discovery from these non-parties when we don't
13     even -- we haven't even taken Ms. Bennett's
14     deposition or gotten her documents, to be frank.
15     And so, you know, the fact that we're talking about
16     non-parties before we've even gotten to party
17     depositions lends credibility to Ms. Bennett's
18     assertions about the purposes that the defendants
19     are (indiscernible) have in mind by seeking this
20     kind of discovery from non-parties (indiscernible).
21              I'm not casting aspersions on the
22     defendants for aggressively defending themselves,
23     but the timing does give me some pause about whether
24     this is appropriate at this particular point in time
25     in the case, especially given --
```

```
 1              MS. GLAVIN:  Your Honor --

 2              THE COURT:  Yes.  Go ahead.

 3              MS. GLAVIN:  I apologize.  Yeah, I just

 4      would like to be heard on that point.

 5              One of the reasons -- there's two reasons

 6      why we are moving quickly on the subpoenas here.  We

 7      have a June discovery deadline in this case, and we

 8      would like the documents from Hamilton before the

 9      deposition of Ms. Bennett because we think they're

10      relevant to questions we may (indiscernible) that

11      deposition.  So that's one reason why we did this.

12              But a second reason why we have been moving

13      on non-party subpoenas is because, as Your Honor

14      probably is aware, there is a case in

15      (indiscernible) District of New York, Trooper 1

16      versus New York State Police (indiscernible) Cuomo,

17      Melissa DeRosa, Richard Azzopardi.  (Indiscernible)

18      case, we have been basically halted in discovery now

19      for almost four months because of objections by

20      non-parties to subpoenas.  It has been months of

21      briefing.

22              I would say that there are about 10 to 15

23      (indiscernible) in that case, documents we need that

24      have been held up because of all of the litigation,

25      and we don't want to run into that situation here.
```

```
 1      I'm very conscious of what is happening there.  And
 2      in that case, discovery began, I think, last August,
 3      and neither Trooper 1's deposition (indiscernible)
 4      deposition has been taken yet because of all the
 5      third-party discovery and documents that everyone --
 6      I just -- I wanted to flag that for the Court, just
 7      so you understand, sort of, what the thinking was.
 8      And then --
 9              THE COURT:  Sure.  I mean, I can understand
10      non-parties can be difficult, but, as you explained
11      to me at the beginning of the call, Mr. Whitman
12      offered you a date in September.  You haven't
13      indicated that John Doe is unwilling to cooperate
14      with you.  And Hamilton College said it's willing --
15      it's waiting to hear from me on Ms. Bennett's
16      application.  So it doesn't seem like you're going
17      to have the same problem with non-parties throwing
18      up roadblocks that you do in the Trooper 1 case.
19              MS. GLAVIN:  Well, Your Honor, I just -- I
20      want to make the Court aware, we did not know that
21      these were going to be the reactions.  We didn't
22      know if Hamilton would move to quash.
23              THE COURT:  Of course.  Of course.  But
24      I'm --
25              MS. GLAVIN:  I should -- but I know that
```

```
1    we're going to have disagreement with respect to --
2    like, for instance, we noticed a subpoena to the
3    Attorney General's Office today.
4              THE COURT:  Yes.
5              MS. GLAVIN:  And I fully expect that we're
6    going to be litigating that for some period of time.
7    And so I just wanted the Court to be aware that we
8    are trying to be forward leaning and getting the
9    documents that we think we need.
10             On the issue of the breadth of the
11   subpoenas, obviously, for John Doe -- and we can
12   talk about it -- of course, we're willing to limit
13   it on the topics.  We just intend to ask John Doe
14   about the allegations and what happened.  There's
15   about -- I think Ms. Schnell said it was six
16   paragraphs of that complaint were related to
17   Ms. Bennett, and I do disagree.  I think it's about
18   17 or 18 paragraphs.  But that's what we plan to ask
19   Mr. Doe about, and I don't think it would be -- it's
20   going to be a lengthy deposition.
21             THE COURT:  Make sure to use "Doe."  Make
22   sure to use "Doe," please.
23             MS. GLAVIN:  Sorry.  Sorry.
24             THE COURT:  Make sure you use "Doe."
25             MS. GLAVIN:  Sorry.  Mr. Doe -- or Mr. Doe.
```

1    Apologize.

2         With the --

3         THE COURT:  The Court will strike the last

4    two references to a name from the record, so in the

5    event that a court reporter is transcribing this,

6    that only the name Doe should be used for the

7    gentleman that Ms. Glavin was just referring to.

8         MS. GLAVIN:  Yep.  Thank you, Your Honor.

9    I didn't catch that.

10        And with respect to -- with Mr. Doe, so

11   that's -- you know, we would limit it to that.  And

12   with respect to the president of Hamilton, I think

13   we would -- I don't think it would be long, but I

14   think we would be limiting it to his interactions

15   with Ms. Bennett, that we know, at least, he had one

16   meeting with her.  And also, you know, to what we

17   received in -- the information we received in the

18   letter from the woman who was close to the president

19   of Hamilton.  So I think it would be limited to

20   that.

21        With respect to the document subpoena,

22   we're happy to limit it to -- we wanted to catch the

23   two complaints that we know of by Ms. Bennett and

24   the records relating to those two complaints.  As we

25   understand it, there, you know, is a recording, so

```
 1    we would be happy to limit it to that.  I don't
 2    know -- you know, if there were more than that, we
 3    wanted to capture if there was, but that's what, you
 4    know, we were focused on, is we understood there
 5    were two complaints.
 6             THE COURT:  Okay.  Ms. Schnell --
 7             MR. DELIKAT:  Your Honor?
 8             THE COURT:  Yes.
 9             MR. DELIKAT:  I'm sorry if I interrupted.
10    It's Mike Delikat for defendant, Mogul.  I just
11    wanted to make a comment when you're done.
12             THE COURT:  Of course.  No, go ahead.
13             MR. DELIKAT:  So in addition to the points
14    that Ms. Glavin raises -- and, again, for the court
15    reporter, this is Mike Delikat for defendant, Mogul.
16             The plaintiff opened the door on all of
17    these issues in her complaint.  In paragraph 47 and
18    in paragraphs that follow that, she reports a
19    conversation she had with defendant, Cuomo, where
20    she says, "Plaintiff explained that her college
21    boyfriend had sexually assaulted and physically
22    attacked her and that she had reported his conduct
23    to their school.  She also explained that the school
24    investigation of her report had been a horrible
25    experience and that she believed the school's sexual
```

1     assault policy was problematic."

2          She then goes on in other paragraphs of her

3     complaint to say that she repeated what she told

4     Governor Cuomo to defendants, Mogul and DesRosiers,

5     as if somehow that should be relevant to what their

6     response should have been to her complaint.

7          So it's not as if this information was

8     somehow discovered as to what happened at Hamilton

9     College and, now, trying to get discovery on it.

10    You know, this occupies, from paragraph 47 on in the

11    complaint, gets attention in several paragraphs.

12    And because it was raised first by the plaintiff, we

13    believe, you know, there should be an opportunity to

14    explore those allegations as to how it might impact

15    on things such as emotional distress from the

16    allegations in this case.  If she had, as she puts

17    it, a -- you know, a horrible experience and that

18    might have had an impact on her, there might be

19    multiple reasons for emotional distress she may

20    claim in this particular case.  But critically, she

21    brought it up in her complaint, so why is it in

22    there?

23          THE COURT:  Okay.  Thank you, Mr. Delikat.

24          Ms. Schnell, what I was about to ask you is

25    if you're willing -- and this is, sort of, a

```
 1    rhetorical question -- to meet and confer with the
 2    defendants about the three subpoenas.  And in
 3    particular, if the defendants are, as I'm directing
 4    them to do, to undertake to list the topics for the
 5    two testimonial subpoenas and then to, you know,
 6    narrow or clarify the document subpoenas to Hamilton
 7    College, if you would be willing to meet and confer
 8    with them and see if the parties might be able to
 9    agree about a narrower scope of these, you know.
10           MS. SCHNELL:  Of course, Your Honor, we are
11    always willing to meet and confer in good faith.
12           THE COURT:  Okay.  All right.  And then the
13    other thing that -- if this issue gets teed back up
14    to me again, if the parties are not able to reach an
15    agreement, I would want to see the subpoenas
16    themselves, as well as the 2019 tweets from
17    Ms. Bennett, as well as the letter that
18    Governor Cuomo received regarding Hamilton College
19    in 2021.
20           But I think, as I sit here in this moment,
21    I don't need those because what I'm doing is sending
22    the parties back to try to work on this issue
23    further.  And then if -- I'll ask you for another
24    status, and then we can have another conference if
25    there are issues that we need to iron out as to any
```

1    one of the three.

2           So just to be clear, I'm not greenlighting

3    the subpoenas per se, nor am I granting

4    Ms. Bennett's motion to quash, but, rather, asking

5    the parties to see if they can't come to some

6    agreement before we need to go down the road of

7    actually engaging in, you know, actually having me

8    make a ruling on these specific issues.  But

9    hopefully, I've given you some guidance about, you

10   know, possible ways to try to reach a compromise.

11          MS. SCHNELL:  Your Honor, may I make a

12   request?  This is Laura Schnell again.

13          You know, the letter that you have is --

14   was very limited because of the judge's rules about

15   how we were supposed to deal with discovery

16   disputes, and would request that if we are unable to

17   resolve it, we would propose a schedule of some more

18   fulsome papers so that we can set forth our position

19   in more clear detail.

20          THE COURT:  I'll consider your request on

21   this --

22          MS. SCHNELL:  Okay.  Thank you, Your Honor.

23          THE COURT:  Because right now I'm hoping

24   that we don't even need to do briefing because I'm

25   hoping that you might be able to come to some

1    agreement.  But certainly, if I -- if the parties

2    are not able to resolve this issue and we need a

3    fuller record, we'll talk about what might be

4    involved in that.

5            MS. SCHNELL:  Thank you, Your Honor.

6            THE COURT:  All right.  So I realize that

7    we're in the dog days of summer here, and the

8    parties may have, you know, things that they're

9    doing other than this case, hopefully, but these

10   issues are important, and as Ms. Glavin pointed out,

11   you know, we want to be front-loading our efforts.

12           So if I were to ask the parties to meet and

13   confer over the next, say, two weeks, and then give

14   me just a joint status report as to whether the

15   parties have been able to reach agreement as to any

16   of the three subpoenas, or if not, proposing a

17   briefing schedule.  And I'm not suggesting full

18   briefs, but we would doing -- we would, at most, be

19   doing letter briefs of a limited scope.

20           Ms. Schnell, from your schedule, does a

21   couple of weeks seem like enough time?

22           MS. SCHNELL:  Yes, Your Honor.  I can do

23   that.  Thank you.

24           THE COURT:  Okay.  And, Ms. Glavin, how

25   about you?

```
 1                MS. GLAVIN:  (Indiscernible), Your Honor.

 2                THE COURT:  Okay.  All right.

 3                Any of the defendants' counsel, I'll just

 4      ask you to speak up if you have a problem with

 5      working with Ms. Glavin and Ms. Schnell over the

 6      next (indiscernible) to try to narrow these

 7      subpoenas.  Does anybody have a problem with meeting

 8      that deadline?

 9                MR. MORVILLO:  Your Honor, this is Gregory

10      Morvillo on behalf of Ms. DeRosa.  We have no

11      problem working on that schedule, but I would point

12      out that we support the subpoenas that have been

13      served for Hamilton information.

14                THE COURT:  Of course.  Okay.

15                Mr. Hamid, any issue from Ms. -- from your

16      client's perspective to working over the next couple

17      of weeks?

18                MR. HAMID:  No issue.  It won't be

19      necessary for us.  We're not taking any position

20      on --

21                THE COURT:  Okay.

22                MR. HAMID:  -- on this issue.

23                THE COURT:  All right.  Mr. Delikat?

24                MR. DELIKAT:  No problem with the schedule.

25      And I think you have our position on why we think
```

```
 1    this discovery should be granted.

 2              THE COURT:  Okay.  All right.

 3              So do you think you could let me -- do a

 4    joint status letter?  And, again, the status letter

 5    would just be simply, we've reached an agreement, or

 6    we're continuing to work to try to reach an

 7    agreement, or we've come to an impasse.  And you

 8    wouldn't need to make any argument by the end of the

 9    day on Wednesday, September 6.  It's just a little

10    bit over two weeks, taking into account the

11    Labor Day holiday.

12              MS. SCHNELL:  That's fine, Your Honor.

13              THE COURT:  All right.  Ms. Glavin, you as

14    well?

15              MS. GLAVIN:  Yes, Your Honor.

16              THE COURT:  You're, sort of, taking the

17    lead on this.  Okay.

18              So, as I mentioned, that letter would

19    simply be a status.  It would -- you would -- the

20    parties wouldn't need to be making any arguments in

21    that, so hopefully, we could be relatively brief

22    about it.  And, by all means, if the parties are

23    making progress and just simply need some more time

24    to try to work it out, I am willing to accommodate

25    that, but also to, you know, try to be as helpful to
```

```
 1   you-all as I can in working out the (indiscernible).
 2           All right.  Ms. Schnell, from Ms. Bennett's
 3   perspective, is there anything else you'd like to
 4   raise today?
 5           MS. SCHNELL:  No, Your Honor.
 6           THE COURT:  Okay.  All right.
 7           Ms. Glavin?
 8           MS. GLAVIN:  No, Your Honor.  Thank you.
 9           THE COURT:  Mr. Morvillo?
10           MR. MORVILLO:  No, Your Honor.  Thank you.
11           THE COURT:  Mr. Hamid?
12           MR. HAMID:  No.  Thank you, Your Honor.
13   Nothing from us.
14           THE COURT:  Mr. Delikat?
15           MR. DELIKAT:  Nothing further, Your Honor.
16   Thank you.
17           THE COURT:  All right.  Thank you very
18   much, everyone.  Enjoy the remainder of your summer.
19   I'll look forward to hearing from you on
20   September 6th.  Have a good afternoon.  We're
21   adjourned.
22           MS. SCHNELL:  Thank you, Your Honor.
23
24                       0o0
25
```

```
 1                    C E R T I F I C A T E

 2

 3        I, Adrienne M. Mignano, certify that the

 4   foregoing transcript of proceedings in the case of

 5   Bennett v. Cuomo; Docket #22CV7846 was prepared using

 6   digital transcription software and is a true and

 7   accurate record of the proceedings.

 8

 9

10   Signature   __Adrienne M. Mignano____

11              ADRIENNE M. MIGNANO, RPR

12

13   Date:      August 27, 2023

14

15

16

17

18

19

20

21

22

23

24

25
```