# Exhibit A

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Southern District of New York

| | |
|---|---|
| Charlotte Bennett | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 22-cv-7846 |
| Andrew M. Cuomo et al. | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                     Debra Katz

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:  See Schedule A, attached.

| Place: Veritext | Date and Time: |
|---|---|
| 1250 I Street, N.W., Suite 901 Washington, DC 20005 | 09/28/2023 9:30 am |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     09/13/2023

CLERK OF COURT

OR

_____          /s/ Gregory Morvillo
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____

Melissa DeRosa _____ , who issues or requests this subpoena, are:

Gregory Morvillo, 1740 Broadway, 15th Floor, New York, NY 10019, GM@MorvilloPLLC.com

### Notice to the person who issues or requests this subpoena
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  22-cv-7846

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $  0.00  .

I declare under penalty of perjury that this information is true.

Date: _____          _____
                                                 *Server's signature*

                                        _____
                                                 *Printed name and title*

                                        _____
                                                 *Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

### DEFINITIONS

Unless otherwise defined, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary sense. As used in the Requests, the words set forth below shall be defined as follows:

1.     "All," "any," and "each" shall each be construed as encompassing any and all.

2.     "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Request all responses that might otherwise be construed to be outside of its scope.

3.     "Bennett" means the natural person Charlotte Bennett, and any Person authorized to act, acting, or purporting to act on behalf of Charlotte Bennett, including but not limited to her attorneys, agents, representatives, advisors, consultants, predecessors, successors, and assigns.

4.     "Benton" means the natural person Stephanie Benton, and any Person authorized to act, acting, or purporting to act on behalf of or at the direction of Stephanie Benton, including but not limited to her attorneys, agents, representatives, advisors, consultants, predecessors, successors, and assigns.

5.     "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

6.     "Commisso" means the natural person Brittany Commisso, and any Person authorized to act, acting, or purporting to act on behalf of or at the direction of Brittany Commisso, including but not limited to her attorneys, agents, representatives, advisors, consultants, predecessors, successors, and assigns.

7.     "Concerning" means relating to, referring to, describing, evidencing. or constituting.

1

8.      "Cuomo" means the natural person Andrew Cuomo, and any Person authorized to act, acting, or purporting to act on behalf of Andrew Cuomo, including but not limited to his attorneys, agents, representatives, advisors, consultants, predecessors, successors, and assigns.

9.      "DeRosa" means the natural person Melissa DeRosa, and any Person authorized to act, acting, or purporting to act on behalf of Melissa DeRosa, including but not limited to her attorneys, agents, representatives, advisors, consultants, predecessors, successors, and assigns.

10.     "DesRosiers" means the natural person Jill DesRosiers. and any Person authorized to act, acting, or purporting to act on behalf of Jill DesRosiers, including but not limited to her attorneys, agents, representatives, advisors, consultants, predecessors, successors, and assigns.

11.     "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "Documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). **A draft or non-identical copy is a separate Document within the meaning of this term.** For purposes of these Requests, the meaning and scope of Document captures the meaning and scope of Communication. **Accordingly, a Request that demands the production of "all Documents" by definition demands the production of "all Communications" responsive to the Request.** That a Request may specifically seek "all Communications" does not in any way limit or alter the definitions given to Document and Communication, respectively.

12.     "Governmental Body" means any government or governmental or regulatory body thereof, or political subdivision thereof, whether federal, state, local, national, international, multinational, supranational, or foreign, or any agency, instrumentality or authority thereof (to the extent that the rules, regulations or orders of such organization or authority have the force of law), or any court or arbitrator (public or private).

2

13.     "McGrath" means the natural person Alyssa McGrath, and any Person authorized to act, acting, or purporting to act on behalf of Alyssa McGrath, including but not limited to her attorneys, agents, representatives, advisors, consultants, predecessors, successors, and assigns.

14.     ██████ means the natural person Kaitlin ████, and any Person authorized to act, acting, or purporting to act on behalf of Kaitlin ████, including but not limited to her attorneys, agents, representatives, advisors, consultants, predecessors, successors, and assigns.

15.     "Mogul" means the natural person Judith Mogul, and any Person authorized to act, acting, or purporting to act on behalf of Judith Mogul, including but not limited to her attorneys, agents, representatives, advisors, consultants, predecessors, successors, and assigns.

16.     "Person" means any natural person or any legal entity, including, without limitation, any business entity or association or Governmental Body.

17.     "Requests" means the Document Requests set forth below.

18.     "Schacter" means the natural person Megan Schacter, and any Person authorized to act, acting, or purporting to act on behalf of Megan Schacter, including but not limited to her attorneys, agents, representatives, advisors, consultants, predecessors, successors, and assigns.

19.     "Walsh" means the natural person Annabel Walsh, and any Person authorized to act, acting, or purporting to act on behalf of Annabel Walsh, including but not limited to her attorneys, agents, representatives, advisors, consultants, predecessors, successors, and assigns.

20.     "Katz," "You," and "Your" mean the natural person Debra Katz, and any Person authorized to act, acting, or purporting to act on behalf of Debra Katz, including but not limited to her attorneys, agents, representatives, advisors, consultants, predecessors, successors, and assigns.

21.     The use of the singular form of any word includes the plural and vice versa.

3

## GENERAL INSTRUCTIONS

In responding to these Requests, the following instructions shall apply:

1. Each Request shall be deemed to be continuing as far as to require further and supplemental production of Documents that originate or fall within the scope of the following Requests at any time prior to the conclusion of this litigation. If, between the date hereof and the time of hearing or trial, after responding to the Requests herein, You obtain or become aware of any additional Documents responsive to these Requests, please produce all such further Documents as they are received or discovered.

2. Each Request applies to all Documents in Your possession, custody, or control, whether located at Your home or any of Your offices, or at the offices of Your accountants, attorneys, agents, or representatives, or at any other place.

3. If any Request calls for the production of any Document that is claimed to be privileged or otherwise protected from discovery, in lieu of production, set forth for each such Document:

    (a)    the precise ground or privilege for withholding the Document;

    (b)    the title, type, and general subject matter of the Document;

    (c)    the nature of the Document (e.g., letter, memorandum, tape recording);

    (d)    the author of the Document;

    (e)    each person to whom the Document was shown or who was informed about the Document;

    (f)    the sender and/or informer of the Document;

    (g)    the date of the Document;

    (h)    the length of the Document in pages or other physical descriptions to permit accurate identification thereof;

4

(i)     the custodian of the Document;

(j)     when not apparent, the relationship of the Document's author(s) and addressee(s) to each other; and

(k)     any other information as is sufficient to identify the Document for a subpoena *duces tecum*.

4.      If any Document within the scope of these Requests has been destroyed, discarded, misplaced, or otherwise disposed of (collectively, "Destruction"):

> (a)     describe the circumstances of such Destruction in accordance with the information requested in subparagraphs 3(b)-3(k), above;
>
> (b)     describe the efforts made to locate the Document;
>
> (c)     state the date and manner of the Document's Destruction;
>
> (d)     state the name, title, and address of the person who ordered the Destruction of the Document and, if different, the person who carried out the Destruction of the Document;
>
> (e)     state the names of persons having knowledge of the Document's Destruction;
>
> (f)     state the reason for the Document's Destruction;
>
> (g)     state whether such Destruction was in accordance with a written document retention and destruction policy and, if so, describe such policy; and
>
> (h)     produce any Documents concerning such Destruction.

5

5.     If a Document or other thing is responsive to more than one Request, it shall be labeled to correspond to the Request to which it is first responsive.

6.     If You object to any Request contained herein on the ground that it is too broad (i.e., that it calls for Documents that are within the relevant scope of the action, as well as Documents that are not), please provide such Document(s) as are concededly relevant. In addition, please provide a statement identifying any Document(s) withheld due to such objection.

7.     If You object to any Request contained herein on the ground that to provide responsive Documents would constitute an undue burden, please provide such Document(s) as can be provided without undertaking an undue burden. In addition, please provide a statement specifying any Document(s) or partial Document(s) withheld due to such objection.

8.     For those Requests and/or portions thereof to which You object or otherwise decline to respond, please provide a statement specifying each responsive Document or partial Document and state the reason for so objecting or declining.

9.     By requesting copies of Documents, DeRosa expressly reserves the right to inspect the original Documents.

10.     Unless otherwise indicated in the request, the relevant time period for Documents requested herein shall be the period from January 1, 2019 to the present (the "Relevant Time Period").

## ELECTRONIC DISCOVERY INSTRUCTIONS

1.     The Documents or other things responsive to the Requests shall be produced as they are kept in the usual course of business or shall be organized and labeled to correspond to the Request to which they are responsive. All Documents are to be produced in TIFF image format according to the following specifications:

6

(a) Single-page TIFF images rendered at 300x300 dpi resolution;

(b) Each TIFF image file named for the Bates production number reflected on the face of the image;

(c) Image Load File containing document unitization information provided in Concordance Opticon format (*.opt);

(d) Data Load File containing document and family group unitization and reference data, select metadata provided with standard Concordance data delimiters and UTF-8 encoding in Concordance format (*.dat). OCR and extracted text (UTF-8 encoded) shall be delivered in separate text files, as follows:

> (i)     Document unitization and reference data provided in the Data Load File:  BEGBATES,  ENDBATES,  PGCOUNT,  CUSTODIAN, NATIVELINK, DOCTYPE;
>
> (ii)    Family group unitization data provided in the Data Load File: BEGATTACH and ENDATTACH, or FAMILYID, and ATTACHCOUNT;
>
> (iii)   Selected Email metadata provided in the Data Load File: DATESENT, TIMESENT, DATERCVD, TIMERCVD, TO, FROM, CC, BCC, SUBJECT, SOURCE/PSTNAME, FOLDERNAME, MSGID, ENTRYID, MD5HASH, ROLE ("Email");
>
> (iv)    Selected Attachment metadata provided in the Data Load File: DATESENT (of parent email), TIMESENT (of parent email), DATERCVD (of parent email), TIMERCVD (of parent email), DATECREATED, LASTDATEMOD, TITLE, APPLICATION, FILENAME, FILEEXT, NATIVEPATH, ROLE ("Attachment"), MD5HASH; and

7

(v) Selected Loose eDoc metadata provided in the Data Load File: same as for Attachments, except no parent email sent/received data.

(e) Extracted Text in document-level TXT files named for each document's Beginning Bates No.; and

(f) OCR text should be provided in document-level TXT files named for each document's Beginning Bates No.

2. If a party is unable to produce metadata for a particular field, that party shall provide an explanation of that inability with its document production.

3. If an electronic Document needs to be redacted before production, the file will be rendered in TIFF, and the TIFF will be redacted and produced. However, to the extent that the text is searchable in the native format, the producing party will still provide searchable text for those portions of the Document that have not been redacted.

4. Documents that are not practical to convert to TIFF (e.g., spreadsheets) may be produced in an electronic format suitable for loading to a litigation support database with links to the native files.

5. For any Documents that are encrypted or password-protected, the producing party will provide the propounding party with a means to gain access to those native files (e.g., by supplying passwords).

6. Any photographic images created and/or maintained in electronic format will be produced in that format.

## REQUESTS FOR PRODUCTION

1. All Documents and Communications between You and Bennett concerning Bennett's travel with Cuomo to Albany, New York on or about July 1, 2019.

8

2.     All Documents and Communications between You and Bennett concerning Bennett's physical and/or mental state or health in August 2019.

3.     All Documents and Communications between You and Bennett concerning Bennett's compensation as an employee of the State of New York in 2019.

4.     All Documents and Communications between You and Bennett concerning the events of May 16, 2019, involving Bennett's recitation and/or singing of the lyrics to the song "Danny Boy."

5.     All Documents and Communications between You and Bennett concerning Bennett's interaction with Cuomo during which he asked Bennett questions about his hands.

6.     All Documents and Communications between You and Bennett concerning Bennett's interaction with Cuomo on or about November 18, 2019, during which he commented about Bennett wearing her hair in a "bun."

7.     All Documents and Communications between You and any Person concerning Cuomo's allegedly looking down such Person's shirt and/or whether such conduct would constitute sexual harassment.

8.     All Documents and Communications between You and Bennett concerning Bennett's interaction with Cuomo on June 5, 2020.

9.     All Documents and Communications between You and Schacter, and all Communications between You and Bennett concerning Schacter.

10.    All Documents and Communications concerning Bennett's psychiatrist's notes from June 25, 2020.

11.    All Documents and Communications between You and Bennett concerning Bennett's phone conversation with Mogul and DesRosiers on July 1, 2020.

9

12.     All Documents and Communications between You and Bennett concerning Mogul's and DesRosiers's respective responses (and/or lack thereof) to Bennett's allegations of sexual harassment and/or discrimination conveyed by Bennett to Mogul and DesRosiers on July 1, 2020.

13.     All Documents and Communications between You and Bennett concerning Bennett's communications with Commisso, McGrath, and ██████ concerning their respective employment experiences with the State of New York.

14.     All Documents and Communications between You and Bennett concerning Cuomo's alleged personal relationships with certain women staff members.

15.     All Documents and Communications between You and Bennett concerning any characterization or discussion of any "sexual rivalry" in the Executive Chamber during the period of Bennett's employment with the State of New York.

16.     All Documents memorializing or evidencing the Communications described in Requests ##1-15.

10

Exhibit B

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Southern District of New York

| | |
|---|---|
| Charlotte Bennett | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.  22-cv-7846 |
| Andrew M. Cuomo et al. | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                   Katz Banks Kumin LLP

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:  See Schedule A, attached.

| Place:  Veritext 1250 I Street, N.W., Suite 901 Washington, DC 20005 | Date and Time: 09/28/2023 9:30 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     09/13/2023

*CLERK OF COURT*

OR

_____          /s/ Gregory Morvillo
     *Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____

Melissa DeRosa                                              , who issues or requests this subpoena, are:
Gregory Morvillo, 1740 Broadway, 15th Floor, New York, NY 10019, GM@MorvilloPLLC.com

**Notice to the person who issues or requests this subpoena**
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 22-cv-7846

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
      (i) is a party or a party's officer; or
      (ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
   (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
   (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises— or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*
   (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      (i) fails to allow a reasonable time to comply;
      (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
      (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      (iv) subjects a person to undue burden.
   (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      (i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
   (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      (i) expressly make the claim; and
      (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

### DEFINITIONS

Unless otherwise defined, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary sense. As used in the Requests, the words set forth below shall be defined as follows:

1.    "All," "any," and "each" shall each be construed as encompassing any and all.

2.    "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Request all responses that might otherwise be construed to be outside of its scope.

3.    "Bennett" means the natural person Charlotte Bennett, and any Person authorized to act, acting, or purporting to act on behalf of Charlotte Bennett, including but not limited to her attorneys, agents, representatives, advisors, consultants, predecessors, successors, and assigns.

4.    "Benton" means the natural person Stephanie Benton, and any Person authorized to act, acting, or purporting to act on behalf of or at the direction of Stephanie Benton, including but not limited to her attorneys, agents, representatives, advisors, consultants, predecessors, successors, and assigns.

5.    "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

6.    "Commisso" means the natural person Brittany Commisso, and any Person authorized to act, acting, or purporting to act on behalf of or at the direction of Brittany Commisso, including but not limited to her attorneys, agents, representatives, advisors, consultants, predecessors, successors, and assigns.

7.    "Concerning" means relating to, referring to, describing, evidencing, or constituting.

1

8.      "Cuomo" means the natural person Andrew Cuomo, and any Person authorized to act, acting, or purporting to act on behalf of Andrew Cuomo, including but not limited to his attorneys, agents, representatives, advisors, consultants, predecessors, successors, and assigns.

9.      "DeRosa" means the natural person Melissa DeRosa, and any Person authorized to act, acting, or purporting to act on behalf of Melissa DeRosa, including but not limited to her attorneys, agents, representatives, advisors, consultants, predecessors, successors, and assigns.

10.     "DesRosiers" means the natural person Jill DesRosiers, and any Person authorized to act, acting, or purporting to act on behalf of Jill DesRosiers, including but not limited to her attorneys, agents, representatives, advisors, consultants, predecessors, successors, and assigns.

11.     "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "Documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). **A draft or non-identical copy is a separate Document within the meaning of this term.** For purposes of these Requests, the meaning and scope of Document captures the meaning and scope of Communication. **Accordingly, a Request that demands the production of "all Documents" by definition demands the production of "all Communications" responsive to the Request.** That a Request may specifically seek "all Communications" does not in any way limit or alter the definitions given to Document and Communication, respectively.

12.     "Governmental Body" means any government or governmental or regulatory body thereof, or political subdivision thereof, whether federal, state, local, national, international, multinational, supranational, or foreign, or any agency, instrumentality or authority thereof (to the extent that the rules, regulations or orders of such organization or authority have the force of law), or any court or arbitrator (public or private).

2

13.    "Katz" means the natural person Debra Katz, and any Person authorized to act, acting, or purporting to act on behalf of Debra Katz, including but not limited to her attorneys, agents, representatives, advisors, consultants, predecessors, successors, and assigns.

14.    "McGrath" means the natural person Alyssa McGrath, and any Person authorized to act, acting, or purporting to act on behalf of Alyssa McGrath, including but not limited to her attorneys, agents, representatives, advisors, consultants, predecessors, successors, and assigns.

15.    ▮▮▮ means the natural person Kaitlin ▮▮▮, and any Person authorized to act, acting, or purporting to act on behalf of Kaitlin ▮▮▮, including but not limited to her attorneys, agents, representatives, advisors, consultants, predecessors, successors, and assigns.

16.    "Mogul" means the natural person Judith Mogul, and any Person authorized to act, acting, or purporting to act on behalf of Judith Mogul, including but not limited to her attorneys, agents, representatives, advisors, consultants, predecessors, successors, and assigns.

17.    "Person" means any natural person or any legal entity, including, without limitation, any business entity or association or Governmental Body.

18.    "Requests" means the Document Requests set forth below.

19.    "Schacter" means the natural person Megan Schacter, and any Person authorized to act, acting, or purporting to act on behalf of Megan Schacter, including but not limited to her attorneys, agents, representatives, advisors, consultants, predecessors, successors, and assigns.

20.    "Walsh" means the natural person Annabel Walsh, and any Person authorized to act, acting, or purporting to act on behalf of Annabel Walsh, including but not limited to her attorneys, agents, representatives, advisors, consultants, predecessors, successors, and assigns.

3

21.    "You" and "Your" mean Katz Banks Kumin LLP, and any Person authorized to act, acting, or purporting to act on behalf of Katz Banks Kumin LLP, including but not limited to its attorneys, agents, representatives, advisors, consultants, predecessors, successors, and assigns.

22.    The use of the singular form of any word includes the plural and vice versa.

## GENERAL INSTRUCTIONS

In responding to these Requests, the following instructions shall apply:

1.    Each Request shall be deemed to be continuing as far as to require further and supplemental production of Documents that originate or fall within the scope of the following Requests at any time prior to the conclusion of this litigation. If, between the date hereof and the time of hearing or trial, after responding to the Requests herein, You obtain or become aware of any additional Documents responsive to these Requests, please produce all such further Documents as they are received or discovered.

2.    Each Request applies to all Documents in Your possession, custody, or control, whether located at any of Your offices, or at the homes or offices of Your accountants, attorneys, agents, or representatives, or at any other place.

3.    If any Request calls for the production of any Document that is claimed to be privileged or otherwise protected from discovery, in lieu of production, set forth for each such Document:

(a)    the precise ground or privilege for withholding the Document;

(b)    the title, type, and general subject matter of the Document;

(c)    the nature of the Document (e.g., letter, memorandum, tape recording);

(d)    the author of the Document;

(e)    each person to whom the Document was shown or who was informed about the Document;

4

(f)     the sender and/or informer of the Document;

(g)     the date of the Document;

(h)     the length of the Document in pages or other physical descriptions to permit accurate identification thereof;

(i)     the custodian of the Document;

(j)     when not apparent, the relationship of the Document's author(s) and addressee(s) to each other; and

(k)     any other information as is sufficient to identify the Document for a subpoena *duces tecum*.

4.     If any Document within the scope of these Requests has been destroyed, discarded, misplaced, or otherwise disposed of (collectively, "Destruction"):

> (a)     describe the circumstances of such Destruction in accordance with the information requested in subparagraphs 3(b)-3(k), above;
>
> (b)     describe the efforts made to locate the Document;
>
> (c)     state the date and manner of the Document's Destruction;
>
> (d)     state the name, title, and address of the person who ordered the Destruction of the Document and, if different, the person who carried out the Destruction of the Document;
>
> (e)     state the names of persons having knowledge of the Document's Destruction;
>
> (f)     state the reason for the Document's Destruction;

5

(g)     state whether such Destruction was in accordance with a written document retention and destruction policy and, if so, describe such policy; and

(h)     produce any Documents concerning such Destruction.

5.     If a Document or other thing is responsive to more than one Request, it shall be labeled to correspond to the Request to which it is first responsive.

6.     If You object to any Request contained herein on the ground that it is too broad (i.e., that it calls for Documents that are within the relevant scope of the action, as well as Documents that are not), please provide such Document(s) as are concededly relevant. In addition, please provide a statement identifying any Document(s) withheld due to such objection.

7.     If You object to any Request contained herein on the ground that to provide responsive Documents would constitute an undue burden, please provide such Document(s) as can be provided without undertaking an undue burden. In addition, please provide a statement specifying any Document(s) or partial Document(s) withheld due to such objection.

8.     For those Requests and/or portions thereof to which You object or otherwise decline to respond, please provide a statement specifying each responsive Document or partial Document and state the reason for so objecting or declining.

9.     By requesting copies of Documents, DeRosa expressly reserves the right to inspect the original Documents.

10.     Unless otherwise indicated in the request, the relevant time period for Documents requested herein shall be the period from January 1, 2019 to the present (the "Relevant Time Period").

6

## ELECTRONIC DISCOVERY INSTRUCTIONS

1.     The Documents or other things responsive to the Requests shall be produced as they are kept in the usual course of business or shall be organized and labeled to correspond to the Request to which they are responsive. All Documents are to be produced in TIFF image format according to the following specifications:

(a) Single-page TIFF images rendered at 300x300 dpi resolution;

(b) Each TIFF image file named for the Bates production number reflected on the face of the image;

(c) Image Load File containing document unitization information provided in Concordance Opticon format (*.opt);

(d) Data Load File containing document and family group unitization and reference data, select metadata provided with standard Concordance data delimiters and UTF-8 encoding in Concordance format (*.dat). OCR and extracted text (UTF-8 encoded) shall be delivered in separate text files, as follows:

(i)     Document unitization and reference data provided in the Data Load File: BEGBATES, ENDBATES, PGCOUNT, CUSTODIAN, NATIVELINK, DOCTYPE;

(ii)    Family group unitization data provided in the Data Load File: BEGATTACH and ENDATTACH, or FAMILYID, and ATTACHCOUNT;

(iii)   Selected Email metadata provided in the Data Load File: DATESENT, TIMESENT, DATERCVD, TIMERCVD, TO, FROM, CC, BCC, SUBJECT, SOURCE/PSTNAME, FOLDERNAME. MSGID, ENTRYID, MD5HASH, ROLE ("Email");

7

(iv)    Selected Attachment metadata provided in the Data Load File: DATESENT (of parent email), TIMESENT (of parent email), DATERCVD (of parent email), TIMERCVD (of parent email), DATECREATED, LASTDATEMOD, TITLE, APPLICATION, FILENAME, FILEEXT, NATIVEPATH, ROLE ("Attachment"), MD5HASH; and

(v)    Selected Loose eDoc metadata provided in the Data Load File: same as for Attachments, except no parent email sent/received data.

(e) Extracted Text in document-level TXT files named for each document's Beginning Bates No.; and

(f) OCR text should be provided in document-level TXT files named for each document's Beginning Bates No.

2.    If a party is unable to produce metadata for a particular field, that party shall provide an explanation of that inability with its document production.

3.    If an electronic Document needs to be redacted before production, the file will be rendered in TIFF, and the TIFF will be redacted and produced. However, to the extent that the text is searchable in the native format, the producing party will still provide searchable text for those portions of the Document that have not been redacted.

4.    Documents that are not practical to convert to TIFF (e.g., spreadsheets) may be produced in an electronic format suitable for loading to a litigation support database with links to the native files.

5.    For any Documents that are encrypted or password-protected, the producing party will provide the propounding party with a means to gain access to those native files (e.g., by supplying passwords).

8

6.      Any photographic images created and/or maintained in electronic format will be produced in that format.

## REQUESTS FOR PRODUCTION

1.      All Documents and Communications between Katz and Bennett concerning Bennett's travel with Cuomo to Albany, New York on or about July 1, 2019.

2.      All Documents and Communications between Katz and Bennett concerning Bennett's physical and/or mental state or health in August 2019.

3.      All Documents and Communications between Katz and Bennett concerning Bennett's compensation as an employee of the State of New York in 2019.

4.      All Documents and Communications between Katz and Bennett concerning the events of May 16, 2019, involving Bennett's recitation and/or singing of the lyrics to the song "Danny Boy."

5.      All Documents and Communications between Katz and Bennett concerning Bennett's interaction with Cuomo during which he asked Bennett questions about his hands.

6.      All Documents and Communications between Katz and Bennett concerning Bennett's interaction with Cuomo on or about November 18, 2019, during which he commented about Bennett wearing her hair in a "bun."

7.      All Documents and Communications between Katz and any Person concerning Cuomo's allegedly looking down such Person's shirt and/or whether such conduct would constitute sexual harassment.

8.      All Documents and Communications between Katz and Bennett concerning Bennett's interaction with Cuomo on June 5, 2020.

9.      All Documents and Communications between Katz and Schacter, and all Communications between Katz and Bennett concerning Schacter.

9

10. All Documents and Communications concerning Bennett's psychiatrist's notes from June 25, 2020.

11. All Documents and Communications between Katz and Bennett concerning Bennett's phone conversation with Mogul and DesRosiers on July 1, 2020.

12. All Documents and Communications between Katz and Bennett concerning Mogul's and DesRosiers's respective responses (and/or lack thereof) to Bennett's allegations of sexual harassment and/or discrimination conveyed by Bennett to Mogul and DesRosiers on July 1, 2020.

13. All Documents and Communications between Katz and Bennett concerning Bennett's communications with Commisso, McGrath, and ████ concerning their respective employment experiences with the State of New York.

14. All Documents and Communications between Katz and Bennett concerning Cuomo's alleged personal relationships with certain women staff members.

15. All Documents and Communications between Katz and Bennett concerning any characterization or discussion of any "sexual rivalry" in the Executive Chamber during the period of Bennett's employment with the State of New York.

16. All Documents memorializing or evidencing the Communications described in Requests ##1-15.

Exhibit C



**MORVILLO** PLLC

GREGORY MORVILLO
(646) 831-1531
GM@MorvilloPLLC.com
www.MorvilloPLLC.com

September 22, 2023

**VIA EMAIL**

Debra S. Katz, Esq.
Katz Banks Kumin LLP
11 Dupont Circle NW, Suite 600
Washington, DC 20036
katz@katzbanks.com

Re:  *Bennett v. Cuomo et al.*, 22-cv-7846

Dear Ms. Katz:

I write in response to your letter dated September 19, 2023, and your email dated September 21, 2023, in which you and your law firm, Katz Banks Kumin LLP ("KBK," and together with you, "Respondents"), responded and objected to the respective subpoenas *duces tecum* served on them by defendant Melissa DeRosa pursuant to Federal Rule of Civil Procedure 45 (the "Subpoenas"). Respondents have demanded, under threat of seeking sanctions against Ms. DeRosa <u>and</u> her counsel, that she rescind the Subpoenas as seeking "exclusively" privileged documents and "served for the sole purpose of further harassing Plaintiff and her counsel." For the following reasons, Ms. DeRosa will not and does not rescind the Subpoenas in any way and demands full and complete compliance with each Request.

**I.    Brief Statement of Factual Basis for Subpoenas**

On March 15, 2021, plaintiff Charlotte Bennett was interviewed by special counsel to the New York Attorney General ("NYAG") as part of the NYAG's investigation of allegations of sexual harassment against the former Governor of the State of New York, Andrew Cuomo. Special counsel present for the interview were Joon Kim and Jennifer Park of Cleary Gottlieb Steen & Hamilton LLP and Anne Clark and Emily Miller of Vladeck, Raskin & Clark P.C. Ms. Bennett's attorneys—*i.e.*, Jessica Westerman and you—were present for the interview. The Vladeck firm prepared a memorandum describing the conduct and substance of the interview (the "Memo"), a copy of which is attached as <u>Exhibit A</u> to this letter.

The Memo attributes to you (and thus KBK) many statements made during the interview that effectuated a waiver of the attorney-client privilege between Respondents and Ms. Bennett.

Debra S. Katz, Esq.
September 22, 2023

No fewer than seventeen of your statements serve as factual predicates for the Subpoenas and correspond directly to the Subpoenas' Requests, as follows:

| Katz Statement | Subpoena Request |
|---|---|
| "*Katz stated* that Bennett first traveled with the Governor on his helicopter for a Pride event in Albany on June 30, 2019." Memo at 6 (emphasis added). | 1.   All Documents and Communications between Katz and Bennett concerning Bennett's travel with Cuomo to Albany, New York on or about July 1, 2019. |
| Speaking about Ms. Bennett's alleged physical and mental condition in August 2019, "*Katz added* that Bennett was so obviously exhausted at this point that a staffer left flowers for Bennett on her desk with a note that says 'you got this' to cheer Bennett up." Memo at 7 (emphasis added). | 2.   All Documents and Communications between Katz and Bennett concerning Bennett's physical and/or mental state or health in August 2019. |
| Speaking about Ms. Bennett's compensation in or from January 2019 to October 2019, "*Katz noted* that this was $80,000 less than what Kaitlin ████████, who had fewer responsibilities, was paid." Memo at 7 (emphasis added).<br><br>"*Katz noted* that Bennett, despite her low salary, was expected to buy the Governor coffee every day without being reimbursed." Memo at 8 (emphasis added). | 3.   All Documents and Communications between Katz and Bennett concerning Bennett's compensation as an employee of the State of New York in 2019. |
| Speaking about the alleged recitation and singing of the lyrics to "Danny Boy" by Ms. Bennett and the Governor, "*Katz stated* that the incident was evidence of an environment where employees were expected to do anything the Governor asked them to do." Memo at 10 (emphasis added). | 4.   All Documents and Communications between Katz and Bennett concerning the events of May 16, 2019, involving Bennett's recitation and/or singing of the lyrics to the song "Danny Boy." |
| Speaking about an alleged conversation between Ms. Bennett and Gov. Cuomo concerning his hands, "*Katz added* that Bennett understood this conversation to be sexual in nature and Bennett confirmed that she understood that he was trying to get her to say something about the size of his penis." Memo at 11 (emphasis added). | 5.   All Documents and Communications between Katz and Bennett concerning Bennett's interaction with Cuomo during which he asked Bennett questions about his hands. |

Debra S. Katz, Esq.
September 22, 2023

| Katz Statement | Subpoena Request |
|---|---|
| Speaking about an alleged conversation between Ms. Bennett and Gov. Cuomo concerning Ms. Bennett wearing her hair in "a bun" in the office, "*Katz noted* that although Bennett has had inappropriate encounters with the Governor, this was the first event that Bennett experienced as sexual harassment." Memo at 12 (emphasis added). | 6.   All Documents and Communications between Katz and Bennett concerning Bennett's interaction with Cuomo on or about November 18, 2019, during which he commented about Bennett wearing her hair in a "bun." |
| "*Katz noted that she has spoken* to a former employee who did not know whether the Governor looking down her shirt constituted sexual harassment." Memo at 12 (emphasis added). | 7.   All Documents and Communications between Katz and any Person concerning Cuomo's allegedly looking down such Person's shirt and/or whether such conduct would constitute sexual harassment. |
| Speaking about Ms. Bennett's alleged interaction with the Governor on June 5, 2020, "*Katz noted* that Bennett was trying to protect herself by making this an academic discussion, but that in reality Bennett experienced the conversation as if the Governor were trying to interview her to be his girlfriend." Memo at 18 (emphasis added). | 8.   All Documents and Communications between Katz and Bennett concerning Bennett's interaction with Cuomo on June 5, 2020. |
| "*Katz volunteered* that Schacter sent Bennett emails talking about the working environment in the Executive Chamber [redacted in Memo]." Memo at 2 n.2 (emphasis added). | 9.   All Documents and Communications between Katz and Schacter, and all Communications between Katz and Bennett concerning Schacter. |
| "*Katz noted* that she has seen Bennett's psychiatrist notes from June 25, 2020; *she described them* as showing that Bennett was suffering psychologically as a result of these work events." Memo at 22 (emphases added). | 10.   All   Documents   and   Communications concerning Bennett's psychiatrist's notes from June 25, 2020. |

Debra S. Katz, Esq.
September 22, 2023

| Katz Statement | Subpoena Request |
|---|---|
| "*Katz noted* that Mogul was trying to flatter Bennett at this point, saying, 'you're very smart, coming to us.  I would hope that my daughter would do the same thing in your situation.'" Memo at 23 (emphasis added).<br><br>"*Katz noted* that the press had made references to Bennett being happy with DesRosiers's and Mogul's handling of the complaints and that this is false.  *Katz stated* that particularly now that allegations have come to light that the Governor groped an employee, Bennett wishes that DesRosiers and Mogul had done something to stop the Governor's conduct." Memo at 23 (emphases added). | 11. All Documents and Communications between Katz and Bennett concerning Bennett's phone conversation with Mogul and DesRosiers on July 1, 2020.<br><br>12. All Documents and Communications between Katz and Bennett concerning Mogul's and DesRosiers's respective responses (and/or lack thereof) to Bennett's allegations of sexual harassment and/or discrimination conveyed by Bennett to Mogul and DesRosiers on July 1, 2020. |
| "*Katz stated* that Bennett has also been in touch with other former staffers, including Commisso, McGrath, and Kaitlin ███████, who have been called and talked to Bennett about their experiences." Memo at 26 (emphasis added). | 13. All Documents and Communications between Katz and Bennett concerning Bennett's communications with Commisso, McGrath, and ███████ concerning their respective employment experiences with the State of New York. |
| "*Katz stated* that Benton was the protector of the Governor and saw other women as sexual rivals. Katz further stated that the Governor was aware of this dynamic and encouraged the rivalry." Memo at 26 (emphases added). | 14. All Documents and Communications between Katz and Bennett concerning Cuomo's alleged personal relationships with certain women staff members.<br><br>15. All Documents and Communications between Katz and Bennett concerning any characterization or discussion of any "sexual rivalry" in the Executive Chamber during the period of Bennett's employment with the State of New York. |
| All preceding statements | 16. All Documents memorializing or evidencing the Communications described in Requests ##1-15. |

Accordingly, each Subpoena Request is supported by, and narrowly tailored to, a specific statement attributed to you in the Memo.  In other words, if not for your statements to the NYAG as memorialized in the Memo, Ms. DeRosa would not have issued the Subpoenas, because your statements effected a waiver of the attorney-client privilege and the work product doctrine that entitles Ms. DeRosa to the discovery sought.

Debra S. Katz, Esq.
September 22, 2023

## II.   Brief Statement of Legal Basis for Subpoenas

Respondents object to these Requests on the asserted basis that they "exclusively seek privileged and confidential documents obviously protected by the attorney-client privilege and/or work product doctrine." That objection is unsustainable.

The information you are attributed as conveying to the NYAG expressly came from conversations with Respondents' client, Ms. Bennett,[1] or otherwise reflected counsel's work product, thoughts, and opinions.[2] Assuming, for purposes of this letter only, that Respondents could establish that documents responsive to the Subpoena were, in the first instance, protected by the attorney-client privilege or work product doctrine, Respondents' statements to the NYAG effected a waiver of those protections under both federal and state law. Federal Rule of Evidence 502(b) provides that a disclosure operates as a waiver unless each of the following is shown: "(1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error …." Similarly, under New York law, the disclosure of a privileged document or communication generally constitutes a waiver of the privilege "unless it is shown that the client intended to maintain the confidentiality of the document [or communication], that reasonable steps were taken to prevent disclosure, that the party asserting the privilege acted promptly after discovering the disclosure to remedy the situation, and that the parties who received the documents [or communication] will not suffer undue prejudice if a protective order against use of the document [or communication] is issued." *N.Y. Times Newspaper Div. v. Lehrer McGovern Bovis, Inc.*, 300 A.D.2d 169, 172 (N.Y. App. Div. 2002) (citations omitted).

Here, Respondents' statements were intentionally and voluntarily made to the NYAG's special counsel in the presence of, and with the implicit (if not express) authorization of, Ms. Bennett.[3] The Memo does not in any way indicate that either you or Ms. Bennett sought to retract or protect your statements from further disclosure. Therefore, the statements were not "inadvertent," and Ms. Bennett neither "intended to maintain the confidentiality" of the information nor did she take any "reasonable steps to prevent disclosure" of it. Ms. Bennett and Respondents thus will have no reasonable argument that your express statements to the NYAG's office did not waive Ms. Bennett's attorney-client privilege and KBK's work-product protection.

---

[1] *See, e.g.,* Memo at 11 (*Katz stating* what "Bennett understood"), 12 (*Katz stating* what "Bennett experienced"), 18 (*Katz stating* what "Bennett was trying to [do]" and what "Bennett experienced"), 23 (*Katz stating* what "Bennett wishes").

[2] *See, e.g.,* Memo at 7 (*Katz opining* on Bennett's physical and mental condition), 8 (*Katz comparing* Bennett's compensation to that of others in Executive Chamber), 10 (*Katz opining* on the singing of "Danny Boy" as "evidence of an environment where employees were expected to do anything the Governor asked them to do"), 12 (*Katz revealing her conversations* with a former state employee), and 22 (*Katz opining* on her review and analysis of Benett's psychiatrist's notes).

[3] "A client who … publicly discloses [privileged matter] … or permits his attorney to testify regarding the matter is deemed to have impliedly waived the attorney-client privilege." *Jakobleff v. Cerrato, Sweeney & Cohn*, 97 A.D.2d 834, 835 (N.Y. App. Div. 1983) (citation omitted).

Debra S. Katz, Esq.
September 22, 2023

The scope of the waiver is generally determined on a case-by-case basis examining the context in which the waiver was made and the prejudice to the other party if partial disclosure of the privileged communications is permitted. *McGrath v. Nassau County Health Care Corp.*, 204 F.R.D. 240, 245 (E.D.N.Y. 2001) (citing *United States v. Doe (In re Grand Jury Proceedings)*, 219 F.3d 175, 183 (2d Cir. 2000)). While the fact that your statements were made in an extrajudicial context is a factor that has supported a limited waiver of the privilege,[4] other considerations of fairness could nevertheless compel a complete subject matter waiver that encompasses all communications pertaining to the sexual harassment and gender discrimination that Ms. Bennett alleges in her Complaint. For example, you revealed privileged communications to the NYAG's office during an historic, highly publicized official investigation conducted pursuant to New York state law with the goal of influencing that investigation <u>against</u> the Governor and his closest aides, including Ms. DeRosa. You undoubtedly understood that Ms. Bennett's and your statements would result in findings of improper conduct, so that Ms. Bennett and you could subsequently use those findings to support a civil lawsuit against the Governor and others, including Ms. DeRosa.

However, Ms. Bennett and you are now taking positions in that subsequent litigation that are directly contradicted by the statements you made to the NYAG. It would be unfair and prejudicial for Ms. DeRosa to be denied discovery of communications between Ms. Bennett and you concerning the privileged statements you disclosed to the NYAG that are potentially dispositive of Ms. Bennett's claims against Ms. DeRosa.[5]

Although grounds exist to pursue a broader subject matter waiver based on your statements, the Subpoenas instead are reasonably limited to documents (rather than testimony) concerning the particular matters that, in fact, you disclosed to the NYAG. The Subpoenas do not seek <u>any</u> privileged documents but only those documents that are discoverable directly from your waiver, and the Subpoenas thus do not impose any undue burden or expense on Respondents. Again, the Subpoenas arise from your statements to the NYAG's office; Ms. DeRosa would not be seeking discovery from Respondents if you had not waived privilege. That the Subpoenas seek material and relevant information is self-evident.

Lastly, and in all events, your threat of moving for sanctions for Ms. DeRosa's refusal to rescind the Subpoenas is unjustifiable and ill-advised. The Subpoenas are founded on statements that you made waiving the privilege. Respondents' reliance on *Saint-Jean v. Emigrant Mortgage Co.* is misplaced; the facts, analysis, and conclusion of that case are wholly inapposite. To name just a few of the many differences between *Saint-Jean* and this case: the subpoenas in *Saint-Jean* broadly sought *all* documents and communications between certain plaintiffs and their counsel,

---

[4] *See In re von Bulow*, 828 F.2d 94, 101 (2d Cir. 1987) (considering the scope of waiver effected by attorney's extra-judicial publication of a book containing privileged communications).

[5] "A waiver may also be found where the client places the subject matter of the privileged communication in issue or where invasion of the privilege is required to determine the validity of the client's claim or defense and application of the privilege would deprive the adversary of vital information." *Jakobleff*, 97 A.D.2d at 835 (citations omitted).

Debra S. Katz, Esq.
September 22, 2023

despite the fact that one of those counsel had already provided the purportedly necessary information in a declaration, under penalty of perjury, more than a year earlier, and the subpoenas were issued only a week before the close of discovery.  2015 WL 13735434, at *4-5 (E.D.N.Y. Oct. 7, 2015).  Please be assured that Ms. DeRosa will seek an award of fees and costs should she have to defend the frivolous sanctions motion that Ms. Bennett and Respondents have baselessly threatened.

Accordingly, Respondents must withdraw their objections based on the attorney-client privilege and work product doctrine and produce all documents responsive to the Subpoenas.  As a sign of good faith, Ms. DeRosa will extend the time for Respondents' full compliance with the Subpoenas to October 5, 2023.  Respondents are expected to withdraw all objections and produce all documents responsive to all Requests on that date.

Very truly yours,

**MORVILLO PLLC**

Gregory Morvillo