# KATZ BANKS KUMIN

**Debra S. Katz, Partner**
**Direct Dial:   202-299-1143**
**Email:    katz@katzbanks.com**

By Electronic Case Filing<br>October 27, 2023

Honorable Sarah L. Cave
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

   Re: Charlotte Bennett v. Andrew M. Cuomo, et al., 22 Civ. 07846 (VSB) (SLC)

Dear Judge Cave:

   We represent Plaintiff Charlotte Bennett ("Plaintiff" or "Ms. Bennett") in the above-captioned matter. I write in compliance with your October 20, 2023 Order, Doc. 114, granting Plaintiff leave to file by October 27, 2023, a Letter-Motion to Quash two subpoenas directed to Plaintiff's counsel, one directed to Debra Katz and one directed to her law firm, Katz Banks Kumin LLP ("KBK") (collectively, the "Subpoenas"). After counsel for Ms. Bennett and for Defendant DeRosa (the "Parties") exchanged letters and unsuccessfully met and conferred regarding the Subpoenas, Ms. Bennett requested a conference with the Court to set a briefing schedule for her Motion to Quash. Your Honor held a conference with the Parties on October 20, 2023 (the "Conference"), and Defendant DeRosa refused to withdraw the improper Subpoenas. Because the Subpoenas seek information entirely protected by attorney-client privilege and work-product doctrine, Ms. Bennett respectfully requests that the Court quash them in full.

## I. FACTUAL BACKGROUND

   On February 27, 2021, Ms. Bennett went public with her experience of sexual harassment by Defendant Governor Andrew Cuomo ("Defendant Cuomo"). The New York Attorney General ("NYAG") Letitia James announced an official investigation (the "Investigation") into Ms. Bennett's and other women's allegations of sexual harassment against Defendant Cuomo. As part of this Investigation, and with her counsel present, Ms. Bennett spoke with investigators on three occasions: March 15, 2021; May 26, 2021; and June 16, 2021. Neither Ms. Bennett nor Ms. Katz disclosed any communications between them during these interviews. At the conclusion of the Investigation, the NYAG published a report (the "Report") that substantiated Ms. Bennett's allegations against Defendant Cuomo. STATE OF NEW YORK OFFICE OF THE ATTORNEY GENERAL, *Report of Investigation into Allegations of Sexual Harassment by Governor Andrew M. Cuomo* (Aug. 3, 2021), https://ag.ny.gov/sites/default/files/2021.08.03_nyag_-investigative_report.pdf. Ms. Bennett filed this lawsuit on September 14, 2022. Doc. 1.

   On September 14, 2023, Defendant DeRosa served the Subpoenas at issue on counsel for Ms. Bennett: one on Debra Katz, Doc. 118 at Ex. A, and one on KBK, *id.* at Ex. B. The Subpoenas each contain the same sixteen document requests, which fall into two categories:

Case 1:22-cv-07846-VSB-SLC   Document 121   Filed 10/27/23   Page 2 of 5

# KATZ BANKS KUMIN

Requests Nos. 7, 9, 10, and 16 seek categories of documents potentially covered by attorney-client privilege and attorney work product doctrine ("Category 1"), and Requests Nos. 1-6, 8, and 11-15 seek categories of documents entirely covered by the attorney-client privilege and/or the work product doctrine ("Category 2").[1]

On September 19, 2023, counsel for Ms. Bennett wrote Defendant DeRosa asserting attorney-client privilege and work product doctrine over all documents responsive to Category 2 and explaining that they would run a thorough search for non-privileged and non-work product documents responsive to Category 1. On September 21, counsel for Ms. Bennett informed Defendant DeRosa they had completed their search and found only one responsive document, a medical document they already intended to provide when the parties exchange documents, that was not privileged or work product.[2] Counsel reiterated that they would therefore not produce any documents in response to the Subpoenas, which they requested be withdrawn. *Id.*

On September 22, 2023, Defendant DeRosa wrote counsel for Ms. Bennett, Doc. 118 at Ex. C, refusing to rescind the Subpoenas and furnishing a copy of a previously unknown memorandum[3] ("the Memorandum"), authored by Vladeck, Raskin & Clark P.C., one of the law firms retained to conduct the Investigation, purporting to summarize[4] Ms. Bennett's March 15,

---

[1] These requests demand "[a]ll Documents and Communications between [Ms. Katz/KBK] and [Plaintiff] Bennett," squarely targeting privileged information and work product.

[2] Based on our thorough search, all files responsive to the Category 1 requests are either covered by the attorney-client privilege or work product doctrine. All files responsive to Requests Nos. 7 (requesting documents and communications between Ms. Katz/KBK and "any Person concerning Cuomo's allegedly looking down such Person's shirt and/or whether such conduct would constitute sexual harassment") and 10 (requesting documents and communications "concerning Bennett's psychiatry notes from June 25, 2020") are internal attorney communications or documents conveying legal opinions and mental impressions. Ms. Katz and KBK have no files responsive to the first clause of Request No. 9 (requesting documents and communications between Ms. Katz/KBK and Schacter); the second half (requesting documents between Ms. Katz/KBK and Ms. Bennett concerning Schacter) falls within Category 2. To the extent Request No. 16 (requesting all documents or communications "memorializing or evidencing" communications in Requests 1-15) pertains to Category 2 requests, those documents all memorialize privileged conversations. To the extent Request No. 16 pertains to Category 2 Requests, all responsive files reflect attorney-client communications and memorializations thereof. Therefore, none of these documents is discoverable.

[3] Ms. Bennett is concerned about how the Memorandum was obtained, and Defendant DeRosa has so far refused to shed any light on the matter. Memoranda like this one were the subject of a discovery dispute between the NYAG and defendant Cuomo in the related *Trooper 1* litigation, where the court granted the NYAG's motion to quash defendant Cuomo's subpoena seeking, *inter alia*, NYAG's "records of communications with third-party witnesses or their attorneys." Memorandum and Order at 7, *Trooper 1 v. Cuomo et al.*, No. 22-cv-00893-LDH-TAM (E.D.N.Y. July 21, 2023), ECF No. 31.

[4] The Memorandum does not claim to be, nor is it, a transcript of the interview. Prior to Defendant DeRosa's furnishing the Memorandum in connection with these Subpoenas, Plaintiff had never seen it and therefore never reviewed it for accuracy contemporaneously with the interview. Plaintiff objects to any insinuation or claim that the Memorandum is an accurate representation of the interview and contests that the Memorandum in any way implicates waiver of privilege.

2021, interview with NYAG investigators. Defendant DeRosa claims that "[t]he Memo attributes to [Ms.] Katz (and thus KBK) many statements made during the interview that effectuated a waiver of the attorney-client privilege." *Id.* There was never any such waiver.

## II.   LEGAL ARGUMENT

Because the only documents responsive to the Subpoenas are privileged and/or work product, and there has been no waiver of privilege, the Subpoenas must be quashed. Fed. R. Civ. P. 45(d)(3)(A)(iii) ("On timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies.").

### A. Attorney-Client Privilege Never Attached to Facts Disclosed to the NYAG, Precluding Waiver.

It is axiomatic that attorney-client privilege protects communications, not underlying facts. *Upjohn Co. v. United States*, 449 U.S. 383, 394 (1981); *Putnam at Tinton Falls, LLC v. Annunziata*, 2021 WL 5919418, at *3 (S.D.N.Y. Dec. 15, 2021); *Women's InterArt Ctr., Inc. v. N.Y.C. Econ. Dev.*, 223 F.R.D. 156, 159 (S.D.N.Y. 2004); *Astra Aktiebolag v. Andrx Pharms., Inc.*, 208 F.R.D. 92, 103 (S.D.N.Y. 2002) (internal citations omitted); *Hardy v. New York News, Inc.*, 114 F.R.D. 633, 644 (S.D.N.Y. 1987) (internal citations omitted). As such, "the cloak of privilege . . . protects the communication from discovery" but does not protect "the underlying information contained in the communication."[5] *In re Six Grand Jury Witnesses*, 979 F.2d 939, 943 (2d Cir. 1992) (internal citations omitted).

The statements attributed to Ms. Katz by the Memorandum contain not a single mention of or excerpt from any communication.[6] They concern only underlying facts of Ms. Bennett's

---

[5] At the Conference, counsel for Defendant DeRosa insisted that if Plaintiff's position—which comes directly from the Supreme Court in *Upjohn*—holds, then Plaintiff's counsel should turn over *all* communications, because the underlying facts are not privileged. This nonsensical position entirely misses the mark: a communication does not lose its privilege simply because it contains underlying information that is not privileged. *Astra Aktiebolag v. Andrx Pharms., Inc.*, 208 F.R.D. 92, 103 (S.D.N.Y. 2002) ("However, the mere fact that a document contains some public or nonconfidential information does not necessarily make the document discoverable.") (citing *Knogo Corp. v. United States*, 213 U.S.P.Q. 936, 941, 1980 WL 39083 (1980)); *ECDC Env't v. N.Y. Marine & Gen. Ins. Co.*, 1998 WL 614478, at *16 (S.D.N.Y. June 4, 1998) ("That does not mean, however, that otherwise protected documents lose their work product status merely because they contain factual information.").

[6] At the Conference, counsel for Defendant DeRosa also suggested, without evidence, that Ms. Katz did not say anything to protect against waiver of privilege in the March 15, 2021. Notwithstanding that the Memorandum is merely a summary of the interview and is heavily redacted, the publicly available transcript of Plaintiff's separate May 26, 2021, interview demonstrates Ms. Katz's keen awareness of privilege and her caution against waiver. N.Y. Off. of the Attorney Gen., *Videoconference Investigation of Charlotte Bennett*, N.Y. OFF. OF THE ATTORNEY GEN., 199:19-201:4 (May 26, 2021), https://ag.ny.gov/sites/default/files/2023-01/2021.05.26_charlotte_bennett_10.05.2021.pdf. ("I don't want any arguments of waiver of privilege, so I'm going to move to strike.").

# KATZ BANKS KUMIN

claims. *See* Doc. 118 at Ex. C. Because the privilege cannot attach to facts, sharing certain facts in the NYAG interview simply could not implicate waiver. *See Gruss v. Zwirn*, 276 F.R.D. 115, 140 (S.D.N.Y. 2011), *rev'd in part*, 2013 WL 3481350 (S.D.N.Y. July 10, 2013) ("[E]ven if certain facts were once the subject of a privileged attorney-client communication, disclosure of those facts does not waive the privilege in the communication.")

*Solomon v. Scientific American*, 125 F.R.D. 34, 35 (S.D.N.Y. 1988) is instructive on this point. In *Solomon*, plaintiff Dr. Arthur Solomon consulted attorney John Gilmore about his rights against the defendant company, in which he was formerly a shareholder, but which he suspected had defrauded him. *Id.* Solomon sent Gilmore a summary memorandum, which Gilmore used in preparing a demand letter he sent to the opposing party. *Id.* Assuming that privileged communications were the source of Gilmore's factual assertions, the defendant argued that Gilmore's letter waived privilege as to the memorandum. This Court rejected that argument, reasoning that the letter did not disclose the *existence*, much less the "contents," of the memo; "all that was 'disclosed' . . . was the underlying *facts* to which the privilege never attached." *Id.* at 38 (internal citations omitted). The Court clarified: "just as facts cannot be invested with privilege merely by [a client's] communicating them to an attorney, so [*sic*] the confidentiality of the communication is not destroyed by disclosure of the underlying facts." *Id.* at 37.

The Second Circuit recently upheld this principle. In *American Civil Liberties Union v. National Security Agency*, the ACLU submitted Freedom of Information Act requests for certain documents, some of which the NSA withheld as privileged, pertaining to national security programs. 925 F.3d 576 (2d Cir. 2019). The ACLU argued that the government had waived privilege as to communications regarding the programs when it publicly explained its legal basis for the programs, testified before Congress regarding them, and published other documents containing information about them. *Id.* at 587-88. The Second Circuit rejected this argument on the grounds that "informational disclosures have no effect on whether a communication is protected by attorney-client privilege." *Id.* at 590. Because the privilege "protects communications rather than information," it "is not lost by the mere fact that the information communicated . . . is otherwise available to the public." *Id.* at 591 (internal quotations omitted).

*Solomon* and *ACLU*, which mirror the present situation, stand in stark contrast to the scenario in *In re von Bulow*, 828 F.2d 94 (2d Cir. 1987), which Defendant DeRosa claims supports her argument. She is wrong. In *In re von Bulow*, the party's attorney disclosed excerpts of attorney-client communications. Plaintiff Martha von Bulow sued her husband, who had been acquitted of attempted murder of her. *Id.* Mr. von Bulow's criminal attorney, Alan Dershowitz, published a book recounting the criminal case, and the two men appeared on multiple television shows to promote the book. Ms. Von Bulow moved to compel, arguing that Mr. Dershowitz and Mr. von Bulow waived attorney client privilege when they disclosed certain communications both in the book and during the television promotions. *Id.* The Second Circuit agreed that "[b]y allowing publication of confidential *communications* in his attorney's book," Mr. von Bulow waived privilege as to those communications. *Id.* at 100, 101 (emphasis added).

*Von Bulow* is inapposite to the case at bar. Unlike Mr. von Bulow, Ms. Bennett did not allow her counsel to "disclose[] numerous confidential communications" between them. *Von Bulow by Auersperg v. von Bulow*, 114 F.R.D. 71, 73 (S.D.N.Y. 1987), *vacated*, 828 F.2d 94 (2d

# KATZ BANKS KUMIN

Cir. 1987). It is undisputed that the Memorandum at no point suggests Ms. Katz excerpted, quoted, or even referenced any communications with Ms. Bennett. *See Ambrose v. City of White Plains*, No. 10 CIV. 4946 (CS), 2011 WL 13290651, at *5 (S.D.N.Y. Sept. 30, 2011) (finding no waiver where defendants failed "to established that the information expressed in the disputed paragraphs reveal[ed] communications" rather than mere facts) (internal citations omitted). There has been no waiver here, and the Subpoenas must be quashed.

### B. The Consequences of Finding Privilege or Waiver Thereof Would Be Disastrous.

Notwithstanding that it defies logic and precedent, Defendant DeRosa's concept of privilege and waiver would have disastrous and nonsensical consequences for the practice of law. "Both common law principles embodied in the attorney-client privilege and the work product doctrine are to be applied in a common sense way in light of reason and experience as determined on a case-by-case basis." *In re Six*, 979 F.2d at 944. If disclosure of facts waived privilege as to communications concerning those facts, "the attorney-client privilege could be easily destroyed by the simple expedient of deposing the client about the facts of the case." *Gruss*, 276 F.R.D. at 140. Particularly apt here, "the government would never be able to conduct a full and complete investigation [into any issue] because the critical witnesses would have been effectively silenced." *In re Six*, 979 F.2d at 944-45. Indeed, the mere act of filing a civil complaint detailing the facts of a case would waive privilege. *Am. Broad. Co., Inc. v. Aereo, Inc.*, No. 12 CIV. 1540 AJN HBP, 2013 WL 5526282, at *6 (S.D.N.Y. Oct. 7, 2013). The Court should reject Defendant DeRosa's argument, the consequences of which would both flout precedent and eviscerate the legal system. We respectfully move to quash the Subpoenas.

Dated: October 27, 2023                                      Respectfully submitted,

**EISENBERG & SCHNELL LLP**                                  **KATZ BANKS KUMIN LLP**

*/s/ Herbert Eisenberg*                                      */s/ Debra S. Katz*
Herbert Eisenberg                                            Debra S. Katz
Laura S. Schnell                                             Rachel E. Green
233 Broadway, Suite 2704                                     Kayla Morin
New York, New York 10279                                     Sarah E. Nesbitt
Ph:   (212) 966-8900                                         11 Dupont Circle, NW, Suite 600
Email: lschnell@eisenbergschnell.com                         Washington, D.C. 20036
       heisenberg@eisenbergschnell.com                       Ph: (202) 299-1140
                                                             Email: katz@katzbanks.com
                                                                    green@katzbanks.com
                                                                    morin@katzbanks.com
                                                                    nesbitt@katzbanks.com

*Attorneys for Plaintiff Charlotte Bennett*                  *Attorneys for Plaintiff Charlotte Bennett*

cc:   All Counsel of Record (via ECF)