

17 State Street
34 Floor
New York, NY 10004
Tel: 212.425.9300
Fax: 212.425.9337

A PROFESSIONAL CORPORATION

David H. Pikus
Principal

Direct: 212.235.6422
Email: dpikus@bressler.com

October 27, 2023

Hon. Sarah L. Cave, U.S.M.J.
United States District Court, Southern District of New York
500 Pearl Street
New York, NY 10007

### Re: Bennett v. Cuomo (No. 22 Civ. 07846 [VSB-SLC])

Dear Judge Cave:

  This firm, together with Brian O'Donoghue, Esq., represents a nonparty recipient of a 12-page subpoena duces tecum, Madeline C. Cuomo. We are responding to plaintiff's counsel Debra Katz, Esq.'s letter dated October 23, 2023, for which we accepted email service the following day. Plaintiff seeks enforcement of the nonparty subpoena. If the Court finds motion practice appropriate at this time, we will cross-move to quash.

  The nonparty subpoena stands as a paragon of burden and oppression of a nonparty individual. It spans 12 pages, includes 26 requests (counting subparts) and incorporates 28 separate instructions and definitions, some in violation of Local Civil Rules 26.3 and 26.5. Further, a comparison of the subpoena with the complaint, and the surrounding circumstances, demonstrate that the primary purpose of the subpoena is "annoyance, embarrassment, oppression [and] undue burden or expense," all of which are forbidden by Fed. R. Civ. P. 26(c)(1).

  Madeline Cuomo, though a lawyer, has been a stay-at-home mother for the past 30 years. She has no office, has no meaningful income and depends financially upon the support of her spouse. She happens to be the sister of former Governor Andrew M. Cuomo, a defendant in this action. That is where her relationship to this case – albeit more spin than substance – ends.

  Ms. Cuomo is neither named nor implicated in the underlying complaint, which we have retrieved via ECF. The gravamen of the complaint, as summarized by plaintiff herself, is "discrimination on the basis of gender in employment in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution ('Equal Protection Clause') and 42 U.S.C. § 1983; and for sexual harassment, discrimination, and retaliation in violation of the New York State Human Rights Law, N.Y. Exec. Law § 290, et seq. ('NYSHRL') and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. ('NYCHRL')." Ms. Cuomo was not a State employee. Plaintiff does not allege that Ms. Cuomo has any unique information about the alleged harassment. Even the complaint itself does not assert that she acted at the Governor's instruction to deprive plaintiff of her State job. In any event, the only theoretical relevance of Ms. Cuomo to the action would necessarily be limited to the retaliation claim.



Hon. Sarah L. Cave
October 27, 2023
Page 2

Distilled to its core, the justification proffered for the subpoena is that our client supposedly joined with other supporters of her brother to undermine the credibility of plaintiff's allegations while Andrew Cuomo was still in office. Plaintiff ladens Ms. Cuomo with this massive subpoena in a quest to determine who led whom in this endeavor.[1] But, as plaintiff implicitly conceded during counsel's discovery conference, the only probative value of Ms. Cuomo's discovery would arise if the Governor had directed her activities as an instrument of retaliation against plaintiff's State employment. This threshold exploration could be accomplished by subpoena category number 1 alone – "All documents or Communications between [her] and Defendant Cuomo in the relevant time period relating to or naming Ms. Bennett . . ." And, in this respect, plaintiff's counsel were informed during our discovery conference that our client has no such documents. Similarly, opposing counsel informed us that they have yet to examine Governor Cuomo himself, who presumably could answer this threshold question.

Importantly, defendants' motion to dismiss the retaliation claims is pending before the district judge. If that motion is granted, even plaintiff's speculative basis for demanding documents from Ms. Cuomo will necessarily fall. Plaintiff rejoins by citing the district court's earlier denial of a motion to stay discovery filed by the **defendant parties**. The court's central reason for denying the stay was that "the burdens of discovery are unlikely to change substantially regardless of how the motions to dismiss are decided. Bennett's harassment and retaliation claims against Cuomo both arise out of the same core facts so discovery against Cuomo will likely be similar even if the retaliation claims are dismissed." Because Ms. Cuomo is a nonparty whose colorable relevance is limited to the retaliation claims, the reasoning of the district court does not apply. If anything, it serves as a counterpoise that justifies a stay here.

Ms. Cuomo has stated, without rebuttal, that she has maintained a practice for many years of deleting text messages and emails after review. The only documents that remain accessible to her are those that her co-counsel obtained from the attorney for the WDNY group, which plaintiff's counsel acknowledge they have already. Ms. Cuomo and her attorneys should not suffer the burden of review and coding of the many pages in miniscule-point type to extract responsive materials. Response to the subpoena has already been unduly expensive for our client, an unemployed mother. Plaintiff already has the documents from other sources and has yet to conduct depositions of Andrew Cuomo himself.

Critically, we ask the Court to review plaintiff's letter motion in the context of her and her attorneys' broader aims and actions. They are attempting through this subpoena to use the Court as an instrument in their unabashed publicity crusade against the Cuomo family.

---

[1] Will the Court's next exercise involve subpoenas to be served on dozens of Andrew Cuomo's political supporters to determine which were influenced by his sister or WDNY and which independently admire the Governor's record of accomplishment?



Hon. Sarah L. Cave
October 27, 2023
Page 3

Plaintiff ties our client to the Governor's alleged retaliatory actions through a *New York Times* article that discusses Ms. Cuomo's communications with the WDNY group. Plaintiff's counsel is prominently quoted in the article, which she no doubt had a hand in promoting. The article, of course, is pure hearsay imbued with the reporter's spin, hardly the basis for invoking the powers of the federal courts without more substantial reason.[2] Within hours of the publication, plaintiff's lead attorney appeared on CNN maligning Ms. Cuomo and vowing to drag her through the subpoena process, depositions and other proceedings. A transcript of the interview is annexed hereto as Exhibit A. And this is far from the only time that the attorneys have used the media to disparage Andrew Cuomo's siblings. A gratuitous press release disparaging Chris Cuomo is annexed as Exhibit B. This subpoena is the work of a publicity machine, not that of proper discovery. While counsel offers in her letter a willingness to "use any documents produced solely for litigation purposes," the assurance in the letter, like the one offered at our meeting, is unacceptably vague, belated and ineffective, as her campaign to vilify the former Governor's family is now well underway.

Finally, contrary to plaintiff's unsupported statement, relevance of the nonparty discovery is a factor to be considered, especially when linked to a burden on the witness. The lack of relevance, the pendency of the motion to dismiss, the burden and expense imposed and the impure motives of the plaintiff and her team conjoin to render this nonparty subpoena inappropriate.

We respectfully suggest several options. We most strongly prefer that the subpoena be quashed with prejudice, as our client has no documents beyond those already in plaintiff's possession and has already confirmed that she has no documents or information supporting the threshold proposition that her actions were directed by the Governor. Another option is to quash the subpoena without prejudice in the event that new information is developed in the case. Or the subpoena can be stayed pending determination of the outstanding motion to dismiss the retaliatory claim. A final option is to sharply curtail the scope of the subpoena, which seems unproductive because her only documents are those that plaintiff already has. We are prepared to respond to a motion and file a cross-motion if necessary, but ask that the Court simply deny permission at this time.

Respectfully yours,

David H. Pikus

DHP/1
cc: Debra Katz, Esq.

---

[2] The Court should note that other diverse publications, including the *Washington Post,* the *Daily News,* the *New York Post* and a recently released book authored by Melissa DeRosa, have called into question *The Times'* reporting on these issues. Obviously, it is not a court's job to referee journalistic reports and opinions about matters before it.

# EXHIBIT A

Debra Katz interview CNN 8/8/2023:

JAKE TAPPER:

Representing Charlotte Bennett, Debra Katz. Miss Katz, thanks for joining us. You called Madeline Cuomo's role in all of this, "shocking, but not surprising" unquote...you say you planning to use some of the New York Times reporting in Charlotte Bennett's lawsuit against the Governor, how?

DEBRA KATZ:

*"Well, we know from this reporting that the, uh, Madeline Cuomo did what we knew was happening which was part of concerted campaign to try and smear and intimidate complainants from coming forward.  Ummm. Andrew Cuomo was a bully. He surrounded himself with people who tried to intimidate and bully women who came forward and this is shocking this behavior exists, but it's not surprising because this is the hallmark of the Cuomo Administration. He was a bully. And his sister was too."*

JAKE TAPPER:

You heard in the statement to CNN that Madeline Cuomo denies that any of this was at her brother's direction and obviously that's not the suggestion made in the trove of emails and phone messages such, as the like, that the New York Times reviews, so which do you believe?

DEBRA KATZ:

*"I believe what she said to the members of the group, but we will take discovery, we will depose Madeline Cuomo, we will depose Andrew Cuomo, and we will depose members of this group. It is clear to to us that Andrew Cuomo had a group of advisors who were doing everything that they could to try beat back the women who were coming forward and this was just part of the campaign. No one took action without it being sanctioned and directed by the Governor, the then Governor, the former Governor and his inner circle"*

1

JAKE TAPPER:

You know, I will say having seen a lot of online activity and mobs going after people, especially women who make accusations against powerful men, it really makes you wonder how much, if any of it, is organic vs. how much of it is being pushed by these high profile men.

DEBRA KATZ:

*"Well I think it's a really key point here, obviously in terms of Charlotte Bennett's case, this is a watershed moment because we have now peeked behind the screen and see what actually happened. But as someone who represents victims of sexual violence and sexual harassment, this is what everyone fears if they come forward. And now we have the most concrete record of exactly what happens…4,000 texts from Madeline Cuomo and these individuals, coordinating efforts to smear the women who came forward…"*

*"…and the timing of everything, every time Andrew Cuomo was in trouble there would be efforts to smear the women. It was coordinated. And we see that and that's exactly what women fear coming forward against the powerful, because they don't want to be treated like this."*

JAKE TAPPER:

Does this make your client, Charlotte Bennett, feel, uh, relieved in anyway, in a weird way? The fact that this wasn't necessarily really organic? The was basically a political army on the internet of trolls?

2

DEBRA KATZ:

"I think Charlotte knew from the very beginning that this wasn't organic, this was, ah, a coordinated effort. This was exactly what, uh, that Governor Cuomo, former Governor Cuomo, did to people who came forward. He would just try to smear them, discredit them and it was a shot at other people who would come forward to not do that. Because who would want to be treated this way?"

"One of the trolls put something on the internet saying 'your life is gonna be dissected like a frog in a High School science class' Who would want that kind of scrutiny? Consider that image. It's so, such a violent image"

https://www.youtube.com/watch?v=biHjXIM1W58

3

**EXHIBIT B**

# KATZ BANKS KUMIN

About Us   Our Team   Practice Areas   Resources   Offices   Contact   

## NEWS

### Debra S. Katz Statement Regarding CNN Firing of Chris Cuomo

December 5, 2021

Attorney Debra Katz issued a statement this morning following CNN's termination of Chris Cuomo Saturday evening.

"In the wake of public sexual harassment allegations against former Governor Andrew Cuomo, Chris Cuomo looked directly into the camera and told viewers of Cuomo Prime Time, 'I have always cared very deeply about these issues and profoundly so. I just wanted to tell you that.' Subsequently, the Attorney General released jaw-dropping documentary evidence demonstrating that Chris Cuomo played an active role in attempting to smear women whom the Attorney General concluded had made serious allegations of sexual harassment and sexual misconduct against the Governor. Hearing the hypocrisy of Chris Cuomo's on-air words and disgusted by his efforts to try to discredit these women, my client retained counsel to report his serious sexual misconduct against her to CNN.

On Wednesday, December 1, 2021, I contacted CNN to report my client's allegations of misconduct against Chris Cuomo. By Friday, I was in discussions with CNN about providing documentary evidence of my client's allegations and making my client available for an interview with CNN's outside counsel. Last night, CNN acted promptly on my client's complaint and fired Mr. Cuomo.

My client came forward at this time because she felt in sharing her story and related documentation, she could help protect other women. She will continue to cooperate with CNN's investigation into her allegations. Given the nature of her allegations, she wishes to remain anonymous, and we ask that you respect this decision."

Read more from **The New York Times**, The Washington Post, and NPR.