

GREGORY MORVILLO
(646) 831-1531
GM@MorvilloPLLC.com
www.MorvilloPLLC.com

October 10, 2023

**VIA ECF**
Honorable Sarah L. Cave, U.S.M.J.
United States District Court for the
  Southern District of New York
500 Pearl Street
New York, New York 10007

Re:  *Bennett v. Cuomo et al.*, 22-cv-7846

Dear Judge Cave:

The undersigned represents defendant Melissa DeRosa in the above-captioned action.[1]  We write respectfully to respond to the letter submitted October 6, 2023, by Debra S. Katz, Esq. and her law firm, Katz Banks Kumin LLP ("KBK"), counsel for plaintiff Charlotte Bennett ("Plaintiff"), informing the Court of Plaintiff's intent to move to quash two Rule 45 subpoenas *duces tecum* served upon Katz and KBK (the "Subpoenas") and to request a conference to establish a briefing schedule on that motion.  DeRosa does not oppose Plaintiff's request and joins in the request for a conference, as DeRosa intends to move to enforce the Subpoenas.

## I.      Brief Statement of Factual Basis for Subpoenas

On March 15, 2021, Plaintiff sat for an interview by special counsel to the New York Attorney General ("NYAG") as part of the NYAG's investigation of allegations of sexual harassment against the former Governor of the State of New York, Andrew Cuomo.  Special counsel present for the interview were Joon Kim and Jennifer Park of Cleary Gottlieb Steen & Hamilton LLP and Anne Clark and Emily Miller of Vladeck, Raskin & Clark P.C.  Plaintiff's attorneys—*i.e.*, Jessica Westerman and Katz of KBK—were present for the interview.  The Vladeck firm prepared a memorandum describing the conduct and substance of the interview (the "Memo").

The Memo attributes to Katz (and thus KBK) numerous statements made during the interview that effected a waiver of the attorney-client privilege between Katz, KBK, and Plaintiff. No fewer than seventeen of Katz's statements serve as factual predicates for the Subpoenas, as set forth in the attached Table.  Katz's statements addressed several material aspects of Plaintiff's allegations and claims, including Plaintiff's experiences in the Executive Chamber; alleged interactions between Plaintiff and the Governor; commentary that Governor Cuomo encouraged a

---

[1] Gruppuso Legal and Gelber & Santillo also represent Ms. DeRosa in this matter.

Hon. Sarah L. Cave, U.S.M.J.
October 10, 2023

sexual rivalry among various state employees; Plaintiff's views on co-defendants Judith Mogul's and Jill DesRosiers's response to her allegations in July 2020; and Katz's review and description of Plaintiff's psychiatrist's notes.[2]  The information attributed to Katz could only have come from communications with Plaintiff,[3] or otherwise reflected Katz's thoughts and opinions.[4]

Accordingly, each Subpoena Request is narrowly tailored to seek relevant and material discovery and is supported by a specific statement attributed to Katz in the Memo.  Each statement Katz made effected a waiver of the attorney-client privilege and the work product doctrine that entitles DeRosa to the discovery sought.[5]

## II.      Brief Statement of Legal Position

Plaintiff contends that Katz's "*factual* statements" to the NYAG did not reveal the contents of any privileged communications because facts, unlike communications, are not privileged.  (Pl.'s Ltr. at 3 (emphasis in original).)  In reality, however, Katz made both statements of purported fact and statements of opinion to the NYAG.    Moreover, Plaintiff's argument shows a misunderstanding of the law of privilege and a refusal to accept the legal consequences of her counsel's conduct at the interview.  Assuming *arguendo* that Plaintiff's communications with Katz/KBK before the NYAG's interview were privileged,[6] when Katz revealed the contents of those communications she thereby waived the privilege by making the below listed statements to the NYAG, in Plaintiff's presence and with her acquiescence.

In challenging the subpoena, Plaintiff invokes *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981), to argue that Katz's disclosure of facts cannot waive privilege. (Pl.'s Ltr. at 3 (emphasis in original)).    However, Plaintiff misstates and misapplies *Upjohn* to these circumstances.  Of course, a <u>client</u> may disclose facts known to <u>the client</u>—notwithstanding that the client told those facts to her attorney—without waiving the privilege.  449 U.S. at 395; *United States v. El Paso Co.*, 682 F.2d 530, 538-39 n.10 (5th Cir 1982) ("The attorney-client privilege does not protect against discovery of underlying facts <u>from their source</u> merely because those facts

---

[2] In an obvious and misleading attempt to downplay the significance of Katz's statements and importance of the discovery at issue, Plaintiff and her counsel refer only to Katz's statement concerning Plaintiff's travel with the Governor by helicopter on June 30, 2019, and the attendant Subpoena Request based on that statement.

[3] *See, e.g.,* Memo at 11 (*Katz stating* what "Bennett understood"), 12 (*Katz stating* what "Bennett experienced"), 18 (*Katz stating* what "Bennett was trying to [do]" and what she "experienced"), 23 (*Katz stating* what "Bennett wishes").

[4] *See, e.g.,* Memo at 7 (*Katz opining* on Bennett's physical and mental condition), 8 (*Katz comparing* Bennett's compensation to that of others in Executive Chamber), 10 (*Katz opining* on the singing of "Danny Boy" as "evidence of an environment where employees were expected to do anything the Governor asked them to do"), 12 (*Katz revealing her conversations* with a former state employee and that employee's thoughts), and 22 (*Katz opining* on Bennett's psychiatrist's notes).

[5] Plaintiff purports to express "concerns as to the potential chilling effect that relying on statements made and documents created pursuant to lawful state investigations could provide the basis for waiving privilege."  (Pl.'s Ltr. at n.3.)  Of greater concern, we submit, is the prospect that plaintiff's counsel may use the various privileges as both sword and shield, to reveal client confidences offensively but assert privileges despite the waiver of those privileges.

[6] *United States v. International Bhd. of Teamsters*, 119 F.3d 210, 214 (2d Cir. 1997) ("The burden of establishing the existence of an attorney-client privilege, in all of its elements, rests with the party asserting it.").

Hon. Sarah L. Cave, U.S.M.J.
October 10, 2023

have been communicated to an attorney.") (emphasis added).[7]  But Plaintiff fails to recognize that when the client communicates "underlying facts" to the attorney in confidence, and the attorney discloses those "facts," *i.e.*, the substance of the confidential communications, to a third party, it effectuates a waiver of privilege.

Plaintiff's argument thus wholly misses the point.  DeRosa is not asserting a privilege waiver based on Plaintiff's disclosures to the NYAG.  It is Katz's statements to the NYAG that waived the privilege.  Katz—who does not deny making the 17 separate statements attributed to her in the Memo—waived the attorney-client privilege when she revealed information she could only have obtained from Bennett.  Katz had no personal knowledge of any purported "facts" that she disclosed to the NYAG.  Indeed, Katz does not deny (nor could she) that the statements she made to the NYAG revealed information Katz obtained only through her/KBK's communications with Plaintiff.  But what Plaintiff (and Katz and KBK, too) refuse to recognize is that **Katz, by making the statements attributed to her, voluntarily disclosed to the NYAG, in Plaintiff's presence, the substance and contents of her and Plaintiff's communications**.  The question for the Court is therefore not whether Katz waived the attorney-client privilege and work product protection—she clearly did[8]—but rather the scope of the waiver that resulted.[9]

We are available at Your Honor's convenience to set a briefing schedule.

Very truly yours,

*/s/ Gregory Morvillo*
Gregory Morvillo

---

[7] Neither *El Paso* nor any of the other cases cited in footnote 6 of Katz's letter to the Court support Plaintiff's position. None of those decisions held that an attorney who discloses the contents of confidential communications does not thereby waive the privilege because the attorney disclosed only facts the client conveyed to the attorney in confidence.

[8] *See, e.g.*, Fed. R. Evid. 502(b) (providing that a disclosure operates as a waiver unless each of the following is shown: "(1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error ….").

[9] On that issue, which DeRosa will address fully in her briefing, the Second Circuit's seminal decision in *In re von Bulow*, 828 F.2d 94 (2d Cir. 1987), guides the scope-of-waiver analysis.  DeRosa submits that, although grounds exist to pursue a broader subject matter waiver based on Katz's statements, the Subpoenas appropriately seek discovery permitted by *von Bulow*'s reasoning and  holding.

Hon. Sarah L. Cave, U.S.M.J.
October 10, 2023

## TABLE

| Katz Statement | Subpoena Request |
|---|---|
| "*Katz stated* that Bennett first traveled with the Governor on his helicopter for a Pride event in Albany on June 30, 2019."   Memo at 6 (emphasis added). | 1. All Documents and Communications between Katz and Bennett concerning Bennett's travel with Cuomo to Albany, New York on or about July 1, 2019. |
| Speaking about Ms. Bennett's alleged physical and mental condition in August 2019, "*Katz added* that Bennett was so obviously exhausted at this point that a staffer left flowers for Bennett on her desk with a note that says 'you got this' to cheer Bennett up."   Memo at 7 (emphasis added). | 2. All Documents and Communications between Katz and Bennett concerning Bennett's physical and/or mental state or health in August 2019. |
| Speaking about Ms. Bennett's compensation in or from January 2019 to October 2019, "*Katz noted* that this was $80,000 less than what Kaitlin ███████ ('███████'), who had fewer responsibilities, was paid."   Memo at 7 (emphasis added).<br><br>"*Katz noted* that Bennett, despite her low salary, was expected to buy the Governor coffee every day without being reimbursed." Memo at 8 (emphasis added). | 3. All Documents and Communications between Katz and Bennett concerning Bennett's compensation as an employee of the State of New York in 2019. |
| Speaking about the alleged recitation and singing of the lyrics to "Danny Boy" by Ms. Bennett and the Governor, "*Katz stated* that the incident was evidence of an environment where employees were expected to do anything the Governor asked them to do." Memo at 10 (emphasis added). | 4. All Documents and Communications between Katz and Bennett concerning the events of May 16, 2019, involving Bennett's recitation and/or singing of the lyrics to the song "Danny Boy." |
| Speaking about an alleged conversation between Ms. Bennett and Gov. Cuomo concerning his hands, "*Katz added* that Bennett understood this conversation to be sexual in nature and Bennett confirmed that she understood that he was trying to get her to say something about the size of his penis." Memo at 11 (emphasis added). | 5. All Documents and Communications between Katz and Bennett concerning Bennett's interaction with Cuomo during which he asked Bennett questions about his hands. |

Hon. Sarah L. Cave, U.S.M.J.
October 10, 2023

| Katz Statement | Subpoena Request |
|---|---|
| Speaking about an alleged conversation between Ms. Bennett and Gov. Cuomo concerning Ms. Bennett wearing her hair in "a bun" in the office, "*Katz noted* that although Bennett has had inappropriate encounters with the Governor, this was the first event that Bennett experienced as sexual harassment." Memo at 12 (emphasis added). | 6. All Documents and Communications between Katz and Bennett concerning Bennett's interaction with Cuomo on or about November 18, 2019, during which he commented about Bennett wearing her hair in a "bun." |
| "*Katz noted that she has spoken* to a former employee who did not know whether the Governor looking down her shirt constituted sexual harassment." Memo at 12 (emphasis added). | 7. All Documents and Communications between Katz and any Person concerning Cuomo's allegedly looking down such Person's shirt and/or whether such conduct would constitute sexual harassment. |
| Speaking about Ms. Bennett's alleged interaction with the Governor on June 5, 2020, "*Katz noted* that Bennett was trying to protect herself by making this an academic discussion, but that in reality Bennett experienced the conversation as if the Governor were trying to interview her to be his girlfriend." Memo at 18 (emphasis added). | 8. All Documents and Communications between Katz and Bennett concerning Bennett's interaction with Cuomo on June 5, 2020. |
| "*Katz volunteered* that Schacter sent Bennett emails talking about the working environment in the Executive Chamber [redacted in Memo]." Memo at 2 n.2 (emphasis added). | 9. All Documents and Communications between Katz and Schacter, and all Communications between Katz and Bennett concerning Schacter. |
| "*Katz noted* that she has seen Bennett's psychiatrist notes from June 25, 2020; *she described them* as showing that Bennett was suffering psychologically as a result of these work events." Memo at 22 (emphases added). | 10. All Documents and Communications concerning Bennett's psychiatrist's notes from June 25, 2020. |

Hon. Sarah L. Cave, U.S.M.J.
October 10, 2023

| Katz Statement | Subpoena Request |
|---|---|
| "*Katz noted* that Mogul was trying to flatter Bennett at this point, saying, 'you're very smart, coming to us.  I would hope that my daughter would do the same thing in your situation.'" Memo at 23 (emphasis added).<br><br>"*Katz noted* that the press had made references to Bennett being happy with DesRosiers's and Mogul's handling of the complaints and that this is false.  *Katz stated* that particularly now that allegations have come to light that the Governor groped an employee, Bennett wishes that DesRosiers and Mogul had done something to stop the Governor's conduct." Memo at 23 (emphases added). | 11. All Documents and Communications between Katz and Bennett concerning Bennett's phone conversation with Mogul and DesRosiers on July 1, 2020.<br><br>12. All Documents and Communications between Katz and Bennett concerning Mogul's and DesRosiers's respective responses (and/or lack thereof) to Bennett's allegations of sexual harassment and/or discrimination conveyed by Bennett to Mogul and DesRosiers on July 1, 2020. |
| "*Katz stated* that Bennett has also been in touch with other former staffers, including Commisso, McGrath, and Kaitlin ████, who have been called and talked to Bennett about their experiences."  Memo at 26 (emphasis added). | 13. All Documents and Communications between Katz and Bennett concerning Bennett's communications with Commisso, McGrath, and ████ concerning their respective employment experiences with the State of New York. |
| "*Katz stated* that Benton was the protector of the Governor and saw other women as sexual rivals.  Katz further stated that the Governor was aware of this dynamic and encouraged the rivalry." Memo at 26 (emphases added). | 14. All Documents and Communications between Katz and Bennett concerning Cuomo's alleged personal relationships with certain women staff members.<br><br>15. All Documents and Communications between Katz and Bennett concerning any characterization or discussion of any "sexual rivalry" in the Executive Chamber during the period of Bennett's employment with the State of New York. |
| All preceding statements | 16. All Documents memorializing or evidencing the Communications described in Requests ##1-15. |