# KATZ BANKS KUMIN

**Debra S. Katz, Partner**
**Direct Dial: 202-299-1143**
**Email:** katz@katzbanks.com

By Electronic Case Filing<br>November 14, 2023

Honorable Sarah L. Cave
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

      RE:  Charlotte Bennett v. Andrew M. Cuomo et al., 22 Civ. 07846 (VSB)

Dear Judge Cave:

    We represent Plaintiff Charlotte Bennett in this matter. We write jointly with counsel for non-party Madeline Cuomo pursuant to the Court's October 30, 2023, Order. Doc. 127. Counsel met and conferred via Zoom on November 9, 2023, at 9:30 AM ET, for approximately thirty minutes. Counsel were unable to come to an agreement on the timeframe and search terms for the search, and most specifically, whether Ms. Cuomo would produce the sole document she claims to still be in possession of – an 87-page compilation of emails she exchanged with members of We Decide New York, Inc. ("WDNY") that are relevant to this matter. We request that the Court hold a conference to assist us in resolving this dispute.

## I.  PLAINTIFF'S POSITION

    At our November 9, 2023, meet and confer, counsel for Ms. Cuomo stated that the only potentially responsive document Ms. Cuomo has in her possession is an approximately 87-page document that her counsel received from the attorney for WDNY. The document includes communications between Ms. Cuomo and two WDNY leaders, Sandy Behan and Anna Vavare. Further, Ms. Cuomo's counsel represented that they had performed a thorough search of Ms. Cuomo's email accounts, laptop, and phone, and that she possessed no potentially responsive documents or communications other than this 87-page document.[1] In an effort to resolve this dispute, we asked whether Ms. Cuomo would voluntarily produce that document in exchange for Plaintiff withdrawing her subpoena *duces tecum*.[2] We also reiterated that the document could potentially be deemed confidential pursuant to the so-ordered protective order in this case. Doc. 120. Ms. Cuomo's counsel refused to make this voluntary production, claiming that the document was not relevant to this litigation and that producing it would be overly burdensome.

---

[1] Although Ms. Cuomo stated in her letter-opposition that Plaintiff has already obtained the communications in the document, we have not seen the document and do not know if it contains new information.

[2] Plaintiff intends to depose Ms. Cuomo regardless of whether Ms. Cuomo voluntarily produces this document.

Instead of agreeing to produce this single document, Ms. Cuomo's counsel insisted on first agreeing to a list of search terms and then applying those search terms to the document. The document is directly responsive to the subpoena's requests for communications between Ms. Cuomo and WDNY leaders, and so applying search terms to it is entirely unnecessary. Nevertheless, in the spirit of complying with the Court's Order, we attempted to reach an agreement on the terms, but Ms. Cuomo's insupportable positions made that impossible. For example, her counsel argued that our proposed search term "Andrew Cuomo" was overly broad, an incomprehensible position given that Ms. Cuomo's actions on behalf of her brother are at the heart of her involvement with this case. These documents are directly relevant to Plaintiff's claims of retaliation. Regardless, we need not agree on search terms to resolve this impasse. Ms. Cuomo claims that she possesses only *one* responsive document. If she produces that document, we will withdraw our subpoena *duces tecum* and put an end to this dispute. We are confident that this is a reasonable resolution that relieves the Court of adjudicating our anticipated motions.

## II.     MS. CUOMO'S POSITION

Ms. Cuomo submits that Plaintiff's subpoena was issued solely to harass her and her family, and to put pressure on her brother, the former governor. Indeed, there is no better evidence than the media frenzy started by plaintiff and her counsel, feeding incorrect information for a *New York Times* article and then appearing on CNN immediately after the article was published, maligning Ms. Cuomo and falsely depicting her as an instrument of retaliatory action on behalf of her brother. According to *The Times*, "Ms. Bennett's lawyer, Debra Katz, called Ms. Cuomo's role 'shocking but not surprising' and said she would seek to depose her and other potential witnesses in her client's lawsuit against the former governor."

As Plaintiff's counsel conceded at our meeting, Ms. Cuomo's alleged involvement could be relevant only to the retaliation claims in this action, which are presently the subject of a *sub judice* motion to dismiss. The fatal flaw in this grasp for relevancy is that our client was never a state employee, was never a member of WDNY and was mentioned in the *Times* article only in connection with documents written and acts allegedly taken only long after Andrew Cuomo resigned from office – thereby immaterial to any cognizable retaliation claim.

We did exactly as the Court ordered. We came to the meeting with a proposed timeframe and search terms. In advance of the meeting, our client and co-counsel performed a thorough search of her records and electronic devices. The only material located comprised 1,200 separate text entries, part of which is in miniscule typeface, compiled on 87 pages that co-counsel had previously received from the WDNY organization – materials that Plaintiff and her attorneys already obtained directly from WDNY pursuant to a subpoena, which they mischaracterize as a "single document."

It is particularly telling that Plaintiff focuses on the search term "Andrew Cuomo." Andrew Cuomo is her brother. Does Plaintiff seriously contend that Ms. Cuomo must search for every reference to her sibling? What would that conceivably prove to advance her case?

Our client's major concerns include burden and expense. She is not employed, has no office or support structure and has no technological assistance. Rule 26 explicitly prohibits

# KATZ BANKS KUMIN

discovery that is burdensome, annoying, expensive or embarrassing.  That is especially true of a nonparty.  Plaintiff has already proven correct our fears that this subpoena is just one more step with many to come in a continuing campaign to harass and burden Ms. Cuomo.  In her CNN appearance, Plaintiff's lead attorney vituperatively denounced Ms. Cuomo and vowed to drag her through the subpoena process, depositions and other proceedings.  Then, within hours of our earlier letter to Your Honor, Plaintiff served us with a deposition subpoena for **testimony**.  This imposition by Plaintiff for no meaningful purpose will never end and has already cost our client thousands of dollars in legal fees.

Plaintiff continues incorrectly to insist that relevance is not a proper consideration in evaluating a nonparty subpoena.  She is wrong.  Relevancy and proportionality are important factors.  *See, e.g., Wahoo Int'l Inc. v. Phix Doctor Inc.,* 2014 U.S. Dist. LEXIS 98044 (S.D. Cal. July 18, 2014) ("evaluating whether a subpoena is unduly burdensome, the court balances the burden imposed on the party subject to the subpoena by the discovery request, the relevance of the information sought to the claims or defenses at issue, the breadth of the discovery request, and the litigant's need for the information."); *Miceli v. Mehr*, 2018 U.S. Dist. LEXIS 136996 (D. Conn. Aug. 14, 2018) (plaintiff's nonparty subpoena quashed where "insufficiently related to any of his claims or defenses, and where not irrelevant, it is disproportional to the value of the requested information and the needs of the case").

We therefore proposed that the subpoena should be withdrawn without prejudice or deferred pending determination of the pending motion to dismiss the retaliation claims and the deposition of Governor Cuomo himself.  Our proposal was categorically rejected, without giving any legitimate reason.

In closing, we were faithful to the Court's direction.  We proposed 12 discrete search terms, taken directly from Plaintiff's own subpoena, for example:  "Charlotte Bennett," "Charlotte," "Bennett," "CB," "Just spoke and he thinks a distraction could be helpful today," "sex kitten," "No respectable woman would EVER pose like that," "Bimbo," "Really despicable," and "Unsophisticated girls."  Plaintiff, by contrast, responded with 54 terms, many hopelessly generic such as "twitter," "negative," "victim" and silence."

We agreed on the start date for the timeframe, February 27, 2021 (when Plaintiff launched her publicity crusade against the Governor).  Our side then proposed August 23, 2021 as the end date (the date of Andrew Cuomo's resignation).  Plaintiff, however, has insisted that any search run through the current date.

Dated: November 14, 2023                                  Respectfully submitted,

**EISENBERG & SCHNELL LLP**                               **KATZ BANKS KUMIN LLP**

*/s/ Herbert Eisenberg*                                   */s/ Debra S. Katz*
Herbert Eisenberg                                          Debra S. Katz
Laura S. Schnell                                           Rachel E. Green, Kayla Morin, Sarah E. Nesbitt

*Attorneys for Plaintiff Charlotte Bennett*               *Attorneys for Plaintiff Charlotte Bennett*