```
               UNITED STATES DISTRICT COURT
               SOUTHERN DISTRICT OF NEW YORK
----------------------------:
CHARLOTTE BENNETT,          : Case No.: 22-cv-7846
               Plaintiff,   :
     v.                     :
ANDREW M. CUOMO, et al.,    : New York, New York
               Defendants.  : January 4, 2024
----------------------------:
```

                TRANSCRIPT OF STATUS CONFERENCE HEARING
                 BEFORE THE HONORABLE SARAH L. CAVE
                   UNITED STATES MAGISTRATE JUDGE

    APPEARANCES:

    For Plaintiff:        EISENBERG & SCHNELL LLP
                          BY: Laura S. Schnell, Esq.
                          233 Broadway
                          New York, NY 10279

    For Defendant:        SHER TREMONTE
    Andrew M. Cuomo       BY:  Theresa Trzaskoma, Esq.
                          90 Broad Street
                          New York, New York 10004

    For Defendant:        GLAVIN PLLC
    Andrew M. Cuomo       BY:  Rita M. Glavin, Esq.
                               Leo Korman, Esq.
                          156 West 56th Street - Ste #2004
                          New York, NY 10019

    For Defendant:        MORVILLO PLLC
    Melissa DeRosa        BY:  Gregory R. Morvillo, Esq.
                               Sarah Sulkowski, Esq.
                               Anthony Grupposo, Esq.
                          1740 Broadway - 15th Floor
                          New York, NY 10019

    For Defendant:        DEBEVOISE & PLIMPTON LLP
    Jill DesRosiers       BY:  Soren Schwab, Esq.
                               Leah Rosenberg, Esq.
                          66 Hudson Boulevard
                          New York, NY 10001


    Proceedings recorded by electronic sound recording;
    Transcript produced by transcription service

        AMM TRANSCRIPTION SERVICE - 631.334.1445

```
 1                    APPEARANCES (Continued)

 2

 3    For Defendant:       ORRICK, HERRINGTON & SUTCLIFFE LLP
      Judith Mogul        BY:  Michael Delikat, Esq.
 4                             Brianna Messina, Esq.
                          51 West 52nd Street
 5                        New York, NY 10019

 6

 7    For Defendant:       PERRY LAW
      Lindsey Boylan      BY:  E. Danya Perry, Esq.
 8                             Krista Oehlke, Esq.
                               Julie Gerchik, Esq.
 9                        157 East 86th Street
                          New York, New York 10028
10

11    For Defendant:       OFFICE OF THE NY STATE
                          ATTORNEY GENERAL
12    NY Attorney         BY:  Serena Longley, Esq.
      General                  Michael Jaffe, Esq.
13                             James Cooney, Esq.
                          28 Liberty Street
14                        New York, New York 10005

15

16

17

18

19

20

21

22

23

24

25
```

```
 1
 2              THE COURT:  Good afternoon.  This is
 3   Magistrate Judge Cave.  We're here for a discovery
 4   conference in Bennett versus Cuomo; Case Number:
 5   22-cv-7846.
 6              May I have the appearances, starting with
 7   the plaintiff, please.
 8              Do we have plaintiff's counsel on the line?
 9   Please state your appearance.
10              MS. SCHNELL:  Sorry, Your Honor.  Laura
11   Schnell for plaintiff, Charlotte Bennett.
12              THE COURT:  Okay.  Good afternoon.
13              Counsel for Mr. Cuomo?
14              MS. TRZASKOMA:  Good afternoon, Your Honor.
15   Theresa Trzaskoma from Sher Tremonte on behalf of
16   Former Governor Cuomo.  I'm in my office, joined by
17   my colleague, Allegra Noonan and my co-counsel, Rita
18   Glavin of Glavin PLLC is also here.
19              THE COURT:  Thank you.
20              For Ms. DeRosa?  Counsel for Ms. DeRosa?
21              Do we have counsel for Ms. DeRosa on the
22   line?  If so, please state your appearance.
23              MR. MORVILLO:  Good afternoon, Your Honor.
24   This is Gregory Morvillo.  I'm sorry, I was on mute.
25   Sarah Sulkowski and Anthony Gruppuso are also on the
```

1    call.  Ms. Sulkowski will be taking the lead for Ms.
2    DeRosa today.
3              THE COURT:  Okay.  Thank you.
4              Ms. DesRosiers?
5              MR. SCHWAB:  Hello.  You've got Soren
6    Schwab of Debevoise & Plimpton, on behalf of
7    defendant, Jill DesRosiers.  And I'm joined on the
8    line by my colleague, Leah Rosenberg.
9              THE COURT:  I'm sorry, who was the other
10   person?
11             MR. SCHWAB:  Leah Rosenberg.
12             THE COURT:  Okay.  Thank you.
13             For Ms. Mogul?  Counsel for Ms. Mogul?
14             MS. MESSINA:  This is Brianna Messina from
15   Orrick Herrington & Sutcliffe.  And I believe Mike
16   Delikat will be joining as well.
17             THE COURT:  Okay.  Thank you.
18             Counsel for Ms. Boylan?
19             MS. PERRY:  Good afternoon, Your Honor.
20   This is Danya Perry.  I am joined by my colleague,
21   Krista Oehlke and by my co-counsel, Julie Gerchik.
22             THE COURT:  Okay.  Good afternoon.
23             And for the Attorney General's Office?
24             MS. LONGLEY:  Hi.  Good afternoon,
25   Your Honor.  This is Serena Longley from the

```
 1    Attorney General's Office.  I'm also joined by my
 2    colleagues on the phone, Michael Jaffe and James
 3    Cooney.  We may have another colleague join, but
 4    he's currently not on.
 5             THE COURT:  Okay.  Thank you.
 6             Is there anyone else who's joined who
 7    wishes to state their appearance?
 8             MR. DELIKAT:  Yes, Your Honor.  It's Mike
 9    Delikat, and I'm going to stand up for --
10             THE COURT:  I'm sorry, sir.  I can't hear
11    any of what you're saying.  Your line is breaking
12    up.
13             MR. DELIKAT:  Is that better?
14             THE COURT:  Slightly.
15             MR. DELIKAT:  Mike Delikat.  And --
16             THE COURT:  I'm sorry.  I'm not hearing.  I
17    think you said "Mr. Delikat," but it's very
18    difficult to hear you, sir.
19             MR. DELIKAT:  I'll call on a landline.
20             THE COURT:  If you could, please.  Thank
21    you.
22             We'll wait for him to rejoin.  In the
23    meantime, anyone else?
24             Okay.  Thank you.  We'll begin once we have
25    Mr. Delikat rejoin us.
```

```
1              Was that Mr. Delikat who just rejoined?
2              MR. DELIKAT:  Yes.  I'm back in on a
3    landline, Your Honor, for Defendant Mogul, and I'm
4    joined by my colleague, Brianna Messina.
5              THE COURT:  Okay.  Thank you very much.
6    All right.
7              Well, we're here today because Mr. Cuomo
8    requested a conference with respect to his subpoenas
9    to Ms. Boylan and the Attorney General's Office.  I
10   did just first want to say, though, that the Court
11   received a barrage of filings from the parties and
12   the non-parties over the last 24 hours, including as
13   recently as 19 minutes before the conference, which
14   is very much unappreciated.  Some of the filings
15   were the transcripts, which the Court had to request
16   because there were transcripts from the proceedings
17   in front of Judge Merkl that the parties referred to
18   or were otherwise relevant to this and the parties
19   neglected to provide them.  And then, otherwise,
20   last minute requests to appear, which the Court has
21   granted, and then an additional submission of
22   documents that I was somehow expected to review in
23   the 19 minutes before this conference began.  That's
24   unappreciated.  It's disappointing, given the
25   quality of the federal practitioners who are
```

AMM TRANSCRIPTION SERVICE - 631.334.1445

1    appearing on this call, and the Court does not

2    countenance it.

3         Going forward, we will put additional

4    restrictions on the deadlines for the parties to

5    comply with before conferences, but we will not

6    countenance chaos, and the parties should be aware

7    of that and should comport themselves accordingly.

8         Now, I'd like to begin with the subpoena to

9    Ms. Boylan, but what I would like to start with on

10   that issue, though, is the question of the status of

11   Ms. Bennett's production of documents; specifically,

12   her communications with Ms. Boylan to date.

13        So, Ms. Schnell, could I ask you to start

14   with that, please.

15        MS. SCHNELL:  I believe we have produced

16   those documents, Your Honor.

17        THE COURT:  Okay.  So there are no

18   remaining communications between Ms. Bennett and

19   Ms. Boylan that remain to be produced?

20        MS. SCHNELL:  Not that I'm aware of.  I

21   will double-check, but I am pretty confident of

22   that.

23        THE COURT:  Okay.  And are there any other

24   documents that Ms. Bennett has that are somehow

25   communications or other correspondence relating to

AMM TRANSCRIPTION SERVICE - 631.334.1445

1    Ms. Boylan?

2              MS. SCHNELL:  No.

3              THE COURT:  All right.  Thank you.  Okay.

4         Would Mr. Cuomo's counsel like to start,

5    specifically, now that you do have documents that

6    Ms. Bennett has produced, or communications that Ms.

7    Bennett has produced with respect to Ms. Boylan, who

8    is obviously not a party to this case, why anything

9    further from Ms. Boylan is relevant and necessary?

10             MS. TRZASKOMA:  Good afternoon, Your Honor.

11   Theresa Trzaskoma, and I will start by apologizing

12   for any chaos.  That is certainly not our intention,

13   and we appreciate a no-chaos rule and will abide by

14   it.  I think, you know, the last minute -- the very

15   last-minute filing was simply to put before

16   Your Honor, not expecting Your Honor to have an

17   opportunity to review it before this conference, but

18   so that you would have it available afterwards.

19             But we have received from Ms. Bennett

20   certain communications with Ms. Boylan which confirm

21   what we believed, which is that Ms. Bennett and

22   Ms. Boylan were in communication.  We thought it was

23   at least as early as January of 2021, but we now

24   know that it was a month earlier, in early December,

25   right around the time that Ms. Boylan first made

1    public allegations against Governor Cuomo.

2         We know from those communications that they

3    were coordinating with each other, with others, with

4    PR consultants, with Ms. Boylan's campaign staff,

5    with reporters.  And, you know, our view -- and we

6    don't know whether Ms. Bennett retained everything

7    that Ms. Boylan retained.

8         For example, we believe that they may have

9    been communicating on self-deleting -- you know,

10   apart from what we got, which are communications

11   across a variety of platforms, like Instagram,

12   Twitter, other forms of communication.  We think

13   that they were -- they may have been communicating

14   on encrypted apps, like Confide and Signal, that are

15   self-deleting.  I don't know.

16        It appears, perhaps, Ms. Bennett didn't

17   retain any of that, if it existed.  I don't know if

18   it exists with Ms. Boylan.  I know it appears, for

19   example, from the discovery that we've seen, that

20   Ms. Boylan was or is writing a book.  We believe

21   that she likely retained -- she probably kept notes

22   of her calls.

23        For example, we know that there was a

24   call -- at least one, probably many more -- calls

25   between Ms. Bennett and Ms. Boylan.  I don't know if

1    Ms. Boylan took notes of those calls, if she

2    conveyed to other third parties, including the

3    reporters, the PR folks, other complainants,

4    information that she was getting from Ms. Bennett or

5    information she was conveying to Ms. Bennett.

6            So, in short, I don't have any confidence

7    that the entire universe of their communications you

8    know, has been provided to us.  And Ms. Boylan is a

9    non-party, but she is a highly relevant witness for

10   purposes of discovery.  I will note that she --

11   Ms. Boylan was identified in both our initial

12   disclosures and in Ms. Bennett's initial

13   disclosures.

14           I know that Ms. Boylan is relying on a

15   letter that Ms. Bennett's counsel sent saying that

16   they do not intend at this time to call Ms. Boylan

17   as a witness at trial.  I don't think that has any

18   bearing on whether we're entitled to take discovery

19   from Ms. Boylan.  But I would note that Governor

20   Cuomo may well call Ms. Boylan as a witness at

21   trial, and, you know, in large part because it's

22   hard to understand -- you know, almost impossible to

23   understand the circumstances of Ms. Bennett's coming

24   forward with her public allegations against the

25   governor without understanding what was going on

```
1   with Ms. Boylan.
2          And there are other -- you know, I'm happy
3   to address the relevance issues, but just in terms
4   of the question that Your Honor posed, which is, why
5   do we need additional discovery, document discovery
6   from Ms. Boylan, I think there is likely a treasure
7   trove there, and we're entitled to it.
8          THE COURT:  Well, I'd just like to
9   understand, with respect to Mr. Cuomo's subpoena to
10  Ms. Boylan, though.  I'm just pulling it up here.
11  It's pretty broad.  You know, there are 19 different
12  requests here, and they don't just relate to
13  Ms. Bennett.  Number 1 and number 17 do, but there's
14  a lot here as to Ms. Boylan, who is not a party to
15  this case.  And although there's a reference, two
16  references in paragraphs 5 and 125 to her
17  announcement of her allegations against Mr. Cuomo.
18  She's otherwise -- those are not described in
19  detail.  So I'm just -- I'm struggling with why
20  anything other than her communications with
21  Ms. Bennett, which you may have some, but admittedly
22  maybe not all, of why there's anything else here
23  that's relevant in that regard.
24          MS. TRZASKOMA:  Yeah, I mean, I think this
25  goes to Governor Cuomo's -- it, in part -- so it
```

1    goes to two things, Your Honor.  One, it goes to

2    what I would say is Ms. Bennett's credibility and

3    her motivations in coming forward.  And so, you

4    know, Ms. Bennett -- or Ms. Boylan was making

5    allegations, and Ms. Bennett was coordinating with

6    her.

7           And as we discussed on the call relating to

8    Hamilton College, we do think that there is a theme

9    with Ms. Bennett, which is that she made supporting

10   victims of sexual harassment and sexual assault,

11   kind of, her personal brand.  And I'm not saying

12   that lightly.  I'm saying that based on a résumé

13   that I have seen, and on, you know, her e-mails to

14   others.

15          And I think, you know, we're entitled to

16   explore what motivated Ms. Bennett to come forward,

17   which were Ms. Boylan's allegations.  At some point,

18   information started to come out that Ms. Boylan was

19   unreliable and untruthful.  And Ms. Boylan -- I

20   mean, Ms. Bennett, nevertheless, continued to stand

21   shoulder to shoulder with Ms. Boylan.  And I think

22   that is very important information relevant to Ms.

23   Bennett's motivations and her credibility.  And, you

24   know, we believe that Ms. Bennett embellished her

25   allegations in order to support Ms. Boylan and

1    continued to do so even after it became clear that

2    Ms. Boylan had not been truthful.

3            And so it's all those circumstances around

4    what was happening in late 2020, in the beginning of

5    2021, where, you know, they are all -- where

6    Ms. Bennett and Ms. Boylan are communicating with

7    reporters, they're communicating with PR folks, and

8    they're communicating with other complainants to

9    recruit others to come forward.  And the fact that

10   Ms. Boylan was not truthful, had ulterior motives,

11   and, you know, either hoodwinked Ms. Bennett or

12   manipulated her is an important part of Governor

13   Cuomo's defense.

14           THE COURT:  Right.  But all of that is

15   going to be in their communications with each other.

16   There's not going to be a mini trial in this case

17   about Ms. Boylan.  She's not a party to this case.

18   And Mr. Cuomo doesn't have any claims against

19   Ms. Boylan in this case.  So going for the --

20           MS. TRZASKOMA:  Well, I --

21           THE COURT:  -- throat of the truth or

22   falsity of what Ms. Boylan was alleging, even if

23   what Ms. Boylan was alleging was false, and I have

24   no finding on that one way or the other, that

25   doesn't mean that what Ms. Bennett said was true or

1    false.  Those two things are totally independent of

2    each other.

3         MS. TRZASKOMA:  Well, I'm not proposing a

4    mini trial, certainly, Your Honor, but what I am

5    proposing -- what we are seeking is, you know, under

6    the broad ambit of what's discoverable, we are

7    seeking information about the reliability of

8    Ms. Boylan's own allegations and the fact that

9    Ms. Bennett willingly jumped on that bandwagon

10   and -- and so, you know, Your Honor -- I mean, they

11   coordinated with each other.  And the fact that

12   Ms. Bennett was coordinating with a person who was

13   not being truthful is, you know -- and who was doing

14   so -- Ms. Boylan was doing so for the purpose of,

15   you know, furthering her political campaign is

16   just -- it's really all part of the atmosphere of

17   what prompted Ms. Bennett to come forward.

18         And it's not a mini trial.  It is, as I

19   said, like, you know, it's very relevant to what

20   Ms. Bennett was doing.  And, you know, to the point

21   of -- I don't think this is all in their

22   communications necessarily.  I think there's going

23   to be a lot of information about the nature and

24   reach and scope of their joint effort to coordinate,

25   recruit and encourage others is absolutely going to

1    be part of what's in Ms. Boylan's documents and not

2    necessarily part of what's in Ms. Bennett's.

3            THE COURT:  I appreciate that, but there

4    has to be a tie to Ms. Bennett and her claim.  And

5    what Ms. Boylan -- that Ms. Boylan may have

6    encouraged some other complainant to do something

7    independent of Ms. Bennett, that doesn't have

8    anything to do with this case.  That's not relevant.

9            MS. TRZASKOMA:  Well, I guess I -- I mean,

10   I hear that, but I vehemently disagree because I

11   think -- you know, for example, part of what we

12   think was motivating Ms. Bennett is that Ms. Boylan

13   was running for political office at the time this

14   all came out.  Ms. Bennett may have been looking for

15   a job.  I don't know.  Maybe she wanted to work with

16   Ms. Boylan.

17           We have -- you know, part of the

18   information that we submitted to the Court is a

19   calendar invite between -- in December of 2020

20   between Ms. Bennett, Ms. Boylan and Ms. Boylan's

21   campaign manager, or who we believe is Ms. Boylan's

22   campaign manager.

23           And I do think that Governor Cuomo's

24   defense -- we don't want a mini trial, but we are

25   entitled to explore whether Ms. Boylan's allegations

```
 1    were true or not and what Ms. Bennett knew or didn't
 2    know about that.  And I think, you know -- and
 3    just --
 4           THE COURT:  When is --
 5           MS. TRZASKOMA:  -- there's a very big
 6    difference between -- yeah.  Sorry.
 7           THE COURT:  When is Ms. Bennett's
 8    deposition?
 9           MS. TRZASKOMA:  I'm sorry?
10           THE COURT:  When is Ms. Bennett's
11    deposition?
12           MS. TRZASKOMA:  We have not scheduled it.
13    Ms. Bennett has not completed her production of
14    documents.  On a call last week, I think, they were
15    not able -- Ms. Schnell was not able to tell us when
16    that would be completed.  But we -- you know, but we
17    do want and are entitled to this non-party discovery
18    in advance of that deposition so that we have, you
19    know, as much information as we can get about what
20    was going on so that we are able to intelligently
21    and fully and capably question her on these issues.
22           THE COURT:  Right.  But why do you need it
23    before Ms. Bennett's deposition?  I mean, Ms. Boylan
24    is a non-party, so necessarily the burden on her
25    should be minimized as much as possible.  She's not
```

```
 1    required to carry the load for Ms. Bennett.  You
 2    guys have to do your work.  The defendants have to
 3    do their work as to Ms. Bennett and bring out -- if
 4    there are things that Ms. Bennett says about
 5    Ms. Boylan, then you have a much stronger case -- or
 6    much stronger argument why a further discovery from
 7    Ms. Boylan might be relevant, but you're inverting
 8    it in a way that's unfair to somebody who's a
 9    non-party.
10         MS. TRZASKOMA:  I don't think we are,
11    Your Honor.  And I would note that plaintiff has
12    already taken non-party discovery, and Your Honor
13    has enforced non-party discovery without her having
14    taken a single deposition.  So I don't -- I think,
15    you know, this is a normal discovery practice, which
16    is to gather as much information as possible about
17    the topics that you're going to depose a witness or,
18    you know, a party on, and to have that all available
19    to us.  And I don't think Rule 26 put -- imposes a
20    particular order on us.  And it's --
21         THE COURT:  I wasn't saying that it did.
22    But in terms of somebody who has come forward and
23    objected, in part, on the grounds of burden, it
24    makes sense to --
25         MS. TRZASKOMA:  Well --
```

```
 1              THE COURT:  -- pursue the information from
 2    the parties first, and then see what's left and
 3    what's needed from the non-parties.
 4              MS. TRZASKOMA:  Well, it's hard -- I mean,
 5    part of this issue, Your Honor, is we have no idea
 6    what Ms. Boylan has or what the burden is on her.
 7    And I would say, you know, she has made this burden
 8    argument without actually meeting her burden to show
 9    it's some undue burden.
10              And, frankly, if she says, I have a million
11    communications with Ms. Bennett, and it's going to
12    require -- or with Ms. Bennett and about
13    Ms. Bennett, and it's going to take me a lot of time
14    to gather and produce them, that makes me want them
15    all the more.  But I don't understand why she
16    cannot, for example, run simple search terms through
17    her communications and turn those over to us in
18    advance of our having to take Ms. Bennett's
19    deposition.  And, likewise, I don't know why
20    Ms. Boylan cannot sit for a day-long deposition in
21    this matter.
22              THE COURT:  All right.
23              MS. TRZASKOMA:  And --
24              THE COURT:  Go ahead.  Finish your
25    statement, and then I want to hear from Ms. Boylan's
```

```
 1    counsel.
 2              MS. TRZASKOMA:  Yeah.  Again, just to go
 3    back to the disclosures, both parties have
 4    identified her as a witness with relevant
 5    information, and under those circumstances, and
 6    under all the circumstances here, you know, the
 7    subpoena is proper and it should be enforced.
 8              THE COURT:  Thank you.  All right.
 9              Ms. Perry, do you or one of your colleagues
10    want to address the points that Ms. Trzaskoma has
11    made?
12              MS. PERRY:  Yes.  Thank you, Your Honor.
13    This is Danya Perry.
14              So just to, I guess, take the last point
15    made by Ms. Trzaskoma first, it's not the case that
16    both parties have identified her as a witness.  As
17    Your Honor is aware, Ms. Katz, on behalf of the
18    plaintiff, has said they do not anticipate calling
19    Ms. Boylan as a witness.  And it's certainly the
20    case that Mr. Cuomo does not want Ms. Boylan in this
21    case.
22              He has said in the Trooper 1 case that he
23    does not believe Ms. Boylan has relevant
24    information, as much as he's been hounding her with
25    subpoenas -- I believe we're up to 15.  I may have
```

1    lost count -- in the other case, what he's trying to

2    do, and he said the quiet part out loud in that case

3    is relitigate the Attorney General's investigation

4    and prove himself, essentially, to be innocent.

5            In this case -- and he's also said another

6    quiet part out loud in that case, which is that he

7    does not -- you know, he had said in that case that

8    if Ms. Boylan had not been all over the complaint,

9    he would not be subpoenaing her.

10           Well, she really does not feature

11   prominently in this case.  And, again, the plaintiff

12   has said that they're willing to take her out of the

13   case.  But, nevertheless, he wants her in this case,

14   and it really is so that, as Ms. Trzaskoma just

15   said, they can impeach her.  But there's no real

16   reason to impeach her.  And it really is the

17   convoluted explanation that we just heard, was -- I

18   mean, in their letter they said it was to impeach

19   Ms. Boylan.  They actually said that.  And now,

20   under Your Honor's questioning, it was, well, it was

21   more indirect.  It was to impeach Ms. Boylan to

22   somehow indirectly impeach Ms. Bennett.

23           That really is a bridge too far.  It really

24   is to get campaign records and records about sexual

25   history and personnel records to somehow impeach

AMM TRANSCRIPTION SERVICE - 631.334.1445

1    Ms. Boylan, which somehow would impugn Ms. Bennett

2    really, really is going too far afield.

3         But if we had been able to have a

4    productive meet and confer, I think we -- and

5    they've been willing to narrow the subpoena in some

6    ways -- I think we probably could have gotten to a

7    place where I do agree with Your Honor that

8    arguably, at least, requests number 1 and 17 are the

9    only requests that are moderately theoretically

10   relevant.  Of course, they're overbroad because they

11   request all communications and all documents.

12        And I think, though, if the parties could

13   sit down and, you know, come to discussions, perhaps

14   communications that involve just sexual harassment

15   allegations against Mr. Cuomo, not all

16   communications with Ms. Bennett, perhaps there

17   are -- I don't know this, but perhaps there are

18   documents that would be relevant that have not been

19   produced.  And so we would be willing -- as

20   Ms. Trzaskoma just said, we would be willing to run

21   limited searches for that.  And I do agree it's

22   potentially relevant.  I --

23        THE COURT:  But can I interrupt -- can I

24   interrupt you for a second?

25        MS. PERRY:  Of course.

1          THE COURT:  Has Ms. Boylan done a search of
2  her communications to know what the universe is of
3  her communications with Ms. Bennett, what the volume
4  is?
5          MS. PERRY:  Not just with Ms. Bennett.  We
6  have -- in the other case, we had run a search and
7  there's a large volume of documents.  I think we're
8  at about 500,000 that have been potentially relevant
9  in that case.
10         THE COURT:  Okay.
11         MS. PERRY:  And the subpoena in this case
12  is largely duplicative of that one, but I think if
13  the parties can come to terms, obviously, it would
14  be a much, much smaller universe of documents, and I
15  think that could be somewhat reasonable.
16         It is the case that Ms. Bennett and
17  Ms. Boylan are -- have become friendly, and they
18  talk about a lot of other things.  I just reviewed
19  the communications that we got minutes before the
20  conference, and there are just a lot of, you know,
21  heart emojis, I think, and likes and that kind of
22  thing.  So there are a lot of things I think would
23  be nonresponsive if we can just talk about, you
24  know, sexual allegations -- sexual misconduct
25  allegations.  So I would like to think that

AMM TRANSCRIPTION SERVICE - 631.334.1445

1    reasonable people can come to terms.

2         THE COURT:  Do you know when Ms. Boylan and

3    Ms. Bennett began communicating about the

4    allegations against Mr. Cuomo?

5         MS. PERRY:  Yes.  I'm glad you asked,

6    Your Honor, because I did want to come to that

7    because Mr. Cuomo's papers -- the letter motion

8    requesting this conference says at least twice, and

9    it has been a theory of the case, that Ms. Boylan is

10   the provocateur in this case, that she induced other

11   people, including Ms. Bennett to the point here to

12   come forward; that she was the person that created

13   this domino effect.

14        And with regard specifically to

15   Ms. Bennett -- and from what I've seen in the

16   seconds that I had to look at these communications,

17   Ms. Bennett, it seems, from the complaint, came

18   forward with her sexual harassment allegations in

19   the spring or summer of 2020.  She did not know

20   Ms. Boylan at the time.  They had never met.  They

21   knew nothing about each other.  They were

22   completely, you know, parallel, had their own

23   independent, traumatic sexual harassment experiences

24   with the then-governor, and did not know each other,

25   had not spoken until Ms. Boylan came forward in

1    December of 2020.  This is my understanding with
2    public tweets.
3         And then it was Ms. Bennett, as I
4    understand it, who came forward and reached out to
5    Ms. Boylan.  This is my understanding.  And, again,
6    I have an imperfect understanding, and I just saw
7    these records.
8         THE COURT:  You're not under oath.
9         MS. PERRY:  Thank you, Your Honor.
10        And so I think that's an inaccurate
11   rendition of the facts here, to say that Ms. Boylan
12   was the instigator here who created, you know, this
13   whole domino effect that took the governor down.
14        But, in any event, I think that, you know,
15   these -- I believe it's 19 categories of
16   documents -- really has nothing whatsoever to do
17   with the facts in this case -- I'm sorry, 17
18   categories of documents -- other than, as I
19   mentioned, you know, the communications and the
20   documents that go specifically to communications
21   with the plaintiff in this case and to her lawsuit.
22        And so I certainly would be willing to sit
23   down with Ms. Glavin and Ms. Trzaskoma and see if we
24   can work out reasonable search terms.  I would like
25   to think that we can and wouldn't have to burden the

1     Court with that.

2              THE COURT:  Okay.  Thank you.

3              I do want to give Ms. Trzaskoma a chance to

4     respond, but I should hear from Ms. Sulkowski next

5     on behalf of Ms. DeRosa.

6              MS. SULKOWSKI:  Thank you, Your Honor.

7     Sarah Sulkowski.

8              Your Honor, we agree with Governor Cuomo's

9     counsel, that it's clear that Ms. Boylan was the

10    instigator of the process that led to the filing of

11    this complaint.  And importantly, the plaintiff, in

12    re-tweeting Ms. Boylan's initial allegations against

13    the governor, said expressly that these allegations

14    are emblematic of what the executive chamber under

15    Governor Cuomo was like, and, it appears, tailored

16    her own accusations to match those.

17             And so evidence that Ms. Boylan's

18    allegations were false and that she had -- her

19    credibility is at issue and that she had a motive to

20    lie, or perhaps multiple motives to lie, would go

21    directly to plaintiff's own credibility and the

22    credibility of her allegations.  I don't think that

23    should be overlooked.

24             Again, you know, plaintiff's initial

25    disclosures named Ms. Boylan, not as a witness, but

1    as an individual likely to have discoverable

2    information relevant to this action.  And those

3    initial disclosures have not been revised or

4    corrected.  They're still extant, as well as

5    Ms. DeRosa's and Governor Cuomo's initial

6    disclosures, all of which identify Ms. Boylan as

7    having discoverable information.

8           THE COURT:  All right.  Well, it's

9    basically undisputed, and there's evidence now

10    before the Court that she had communications with

11    Ms. Bennett about her allegations concerning

12    Governor Cuomo.  So I don't think there's any

13    dispute that the initial disclosures are correct in

14    including Ms. Boylan, but I think you're placing a

15    lot more weight on that than is warranted.

16           MS. SULKOWSKI:  Well, the concept of

17    relevant information under Rule 26 is broad for a

18    reason:  Because parties should be able to explore,

19    you know, what a plaintiff -- particularly what a

20    plaintiff herself denominates as relevant

21    information.

22           I know the Court doesn't have Ms. DeRosa's

23    document subpoena in front of it.  I apologize for

24    that, but we didn't want to submit it at the last

25    minute.  But it does seek categories of documents

1    extremely similar to those sought by Governor Cuomo;

2    for example, communications with or about Ms. DeRosa

3    and Governor Cuomo during the relevant period.

4            These, even if not directly with plaintiff,

5    go to the working environment in the executive

6    chamber, which is a core part of the allegations of

7    both women and, thus, to plaintiff's claims and

8    Ms. DeRosa's defense for those claims.

9            Communications concerning investigations of

10   allegations against Governor Cuomo -- you know,

11   again, if Ms. Boylan was orchestrating a campaign

12   against the governor, as we believe she was, these

13   communications may reveal that, and that would go to

14   Ms. Bennett's credibility as well.

15            THE COURT:  How?

16            MS. SULKOWSKI:  Well, again, if Ms. Boylan

17   persuaded Ms. Bennett to join her, or if

18   Ms. Bennett, on her own conformed to what we think

19   is her pattern of behavior, which is to see a woman

20   alleging sexual harassment or assault and to try to

21   buttress her claims with her own allegations,

22   perhaps by exaggerating things she experienced that

23   were de minimus, you know, the -- Ms. Boylan's

24   communications evidencing that orchestrated campaign

25   or the falseness of her own allegations that

1    Ms. Bennett then tailored her own to match would be

2    highly relevant.

3            THE COURT:  Then all falls into the two

4    that we've been talking about, that Ms. Boylan's

5    counsel just said she was willing to work with you

6    about, which is the communications between

7    Ms. Bennett and Ms. Boylan.

8            MS. SULKOWSKI:  Respectfully --

9            THE COURT:  Yet that doesn't get you to all

10   of her communications with anybody else in the

11   governor's office about other complainants, for

12   example.

13           MS. SULKOWSKI:  We think those would be

14   relevant because, again, if Ms. Boylan's

15   allegations, which Ms. Bennett has referred to as

16   emblematic, as indicative of what it was like in the

17   executive chamber, before she ever aired her own, if

18   those are false and her communications with others

19   demonstrate that they're false or they're

20   exaggerated or they're trumped up, that's relevant

21   to what plaintiff subsequently did and why she did

22   it.

23           I would like to mention at this point that,

24   you know, we had a meet and confer with Ms. Boylan's

25   counsel.  They said they would take our requests

1    under consideration.  They later came back to us and

2    reiterated that they would not produce anything to

3    us.  And I would note that I believe

4    Governor Cuomo's counsel has received a de minimus,

5    you know, 25 pages.  We haven't even received that.

6    We've received nothing.  And they've told us we will

7    receive nothing.  I appreciate their expressed

8    willingness today to reconsider that position, but I

9    don't think we should be forced to go back into a

10   meet and confer with counsel who could have made

11   these offers long ago without getting a ruling and

12   potentially, quite likely, have to be back before

13   the Court in short order.

14        THE COURT:  Well, it's not shocking to me

15   that this group is not able to reach agreement among

16   themselves without Court intervention.  So you're

17   here now, and I'm going to give you guidelines for

18   how you're going to meet and confer and what the

19   scope is going to be.  But let me hear from Ms.

20   Trzaskoma again.  In particular, if you could

21   address, you know, if the date range were to begin

22   in December 2020, for example, you know, tell me why

23   that's not sufficient.

24        MS. TRZASKOMA:  Oh, that for us, is

25   sufficient.  That is when -- I mean, we didn't know

AMM TRANSCRIPTION SERVICE - 631.334.1445

1    when -- so, you know, as Ms. Perry said -- I think

2    she said that they didn't know each other, that

3    Ms. Bennett and Ms. Boylan didn't know each other

4    before then or, you know, may not have been

5    communicating.

6            But, in any event, it's really about the --

7    it's really about that time frame.  We now know

8    that's basically when they started communicating, so

9    we're -- so, you know, we thought that the request

10   was not overly broad because it would be naturally

11   limited in time by the -- you know, when they were

12   communicating.

13           But I -- you know, I wanted -- I appreciate

14   Ms. Sulkowski's comments because I think they mirror

15   ours, which is -- so Ms. Bennett had complaints.  As

16   I understand it, those -- the nature of her

17   complaints changed significantly and dramatically

18   after she started communicating with Ms. Boylan and

19   after -- she never said previously -- and I know --

20   she's going to disagree, I'm sure.  It's not what

21   her complaint reflects, but I believe it's what the

22   evidence will reflect -- that she did not previously

23   complain that she was sexually harassed.  And that

24   changed after she started speaking with Ms. Boylan.

25           And, you know, for Governor Cuomo's defense

1    of this case, I do not -- he is going to rely on

2    Ms. Boylan and the fact that she was out in public

3    making false accusations and using those false

4    accusations to recruit others to embellish their own

5    claims.  And that is his defense.  And I appreciate

6    that Ms. Boylan doesn't like it, Ms. Bennett doesn't

7    like it, a lot of the other complainants don't like

8    it, but that is his defense.

9           And just to Ms. Perry's point about the

10   issues in Trooper 1, as Your Honor knows, that

11   complaint is very different than this complaint; but

12   they both share a reliance on the Attorney General's

13   report.  The Attorney General's report is part of

14   Ms. Bennett's complaint, just as it is Trooper 1's.

15   They have slightly different consequences.  But

16   Ms. Bennett's entire retaliation claim has to do

17   with statements that were made on Governor Cuomo's

18   behalf after the AG report came out.  And you cannot

19   understand the purpose of those statements and the

20   defense of him without understanding that the AG

21   report and investigation were deeply flawed, were

22   full of inaccuracies, and contained, you know,

23   allegations, credited allegations, including

24   Ms. Boylan's.

25          So, you know, to try to disentangle -- and

```
 1    in Trooper 1, Judge Merkl, you know, I think
 2    approached that case -- and you can see it,
 3    Your Honor, I think, in the transcripts, which,
 4    again, I apologize for not providing to Your Honor
 5    earlier.  I think you can see it there, that
 6    Judge Merkl was hoping that case would get whittled
 7    down, but it is as broad as it ever was.
 8          And, you know, so to say that we wanted to
 9    relitigate the Attorney General's report, yeah,
10    because it is front and center in that case, and it
11    is inevitably, unless the retaliation claims get
12    dismissed, it is going to be part of this case.
13          So it's not -- it is chopping us off at the
14    knees to say there can be a lawsuit that complains
15    about a defendant's reaction to a public report and,
16    you know, about statements that were made about how
17    unreliable it was and not for -- for Governor Cuomo
18    not to be able to explain to a jury why he believed
19    that and why it is true that it's unreliable.
20          So, you know, I think, and I appreciate
21    that Your Honor is going to give some guidance, but
22    I don't think that it is appropriate to say that
23    we're getting only the communications directly
24    between Ms. Bennett and Ms. Boylan because I do
25    think that Ms. Boylan was communicating with a lot
```

```
 1   of other people around Ms. Bennett and Ms. Bennett's
 2   allegations, and we were entitled to that as well.
 3            THE COURT:  Okay.  Thank you.
 4            MS. TRZASKOMA:  And the final thing I would
 5   say is I know that there is this letter, as I
 6   mentioned, that, you know, Ms. Bennett is not going
 7   to call Ms. Boylan as a trial witness.  But in her
 8   initial disclosures, she says she is going to rely
 9   on Ms. Boylan's and Trooper 1's allegations.  And if
10   Ms. Bennett is going to rely -- even if not calling
11   her as a trial witness, if she is planning to rely
12   in any way, shape, or form on Ms. Bennett's
13   allegations, we are entitled to full discovery about
14   those allegations.
15            THE COURT:  Okay.  Thank you.
16            Ms. Schnell, can you speak to that last
17   point about the suggestion that Ms. Bennett may be
18   relying on Trooper 1's or Ms. Boylan's allegations
19   to support her?
20            MS. SCHNELL:  No.  If you look -- we don't.
21   If you look at the complaint, we do not -- unlike
22   the Trooper 1 complaint, which if you looked at it,
23   Your Honor, it includes lengthy sections on each of
24   the women who made complaints about Governor Cuomo.
25   Ms. Bennett's complaint does not.  Ms. Bennett's
```

1  complaint stands on whether she was sexually
2  harassed by Mr. Cuomo, not whether any of these
3  other women were.
4          THE COURT:  Okay.  Thank you.
5          Ms. Perry, any points that you want to
6  respond to before we try to have a more focused
7  discussion of the scope guidance that I'm going to
8  give you?  And let me just say before you do that,
9  Ms. Longley, I appreciate that you've been waiting
10  here for 45 minutes.  We will get to you very
11  shortly.
12          Go ahead, Ms. Perry.  Any points you want
13  to make in response to what either Ms. DeRosa's or
14  Mr. Cuomo's counsel said?
15          MS. PERRY:  I don't think I do, Your Honor.
16  Ordinarily, I do, but it's almost impossible to
17  respond to because there's nothing focused there.
18  They're basically just saying -- I mean, they have
19  said very explicitly, we want to relitigate the
20  entirety of the AG's report and that wasn't fair to
21  the governor, and, therefore, we get to take
22  incredibly broad, incredibly damaging, incredibly
23  burdensome, not particularly relevant discovery of a
24  non-party.  And how can I really even respond to
25  that?

```
 1              You know, I've made my points.  If Your
 2     Honor is even considering it, I certainly would
 3     request some process and the opportunity to brief
 4     that, but it just seems to me so outlandish and so
 5     beyond the pale that it's hard to respond to at this
 6     point any more than that.
 7              THE COURT:  Okay.  Well, before we end
 8     up -- I'm hoping to avoid any motion practice
 9     altogether, so that's why I want to give you
10     guidance about what I want you to meet and confer
11     about, and hope that we can come to a resolution
12     through that process without there having to be
13     motion practice as to the other request.
14              So what the -- what I think the scope
15     should be, focusing on request number 1, which is
16     communications with Ms. Bennett about any
17     allegations of sexual harassment or misconduct by
18     Governor Cuomo, and number 17, which is
19     non-privileged communications concerning this
20     lawsuit -- this lawsuit or Ms. Bennett's lawsuit
21     against New York State, which, obviously, is not
22     before me, but I think the parties should focus on
23     those two requests.
24              To Ms. Trzaskoma's point, is not limited to
25     just communications between Ms. Bennett and
```

1    Ms. Boylan, but if Ms. Boylan had any communications

2    about Ms. Bennett or Ms. Bennett's allegations with

3    someone else, then the search terms should -- that

4    the parties agree on should capture those

5    communications as well.

6            And then the time period would be from

7    December 2020.  I don't know the exact date in

8    December, but the parties should have that.

9    December 2020 through, I believe it's September 14,

10   2022, which is the date Ms. Bennett filed her

11   complaint in this case, and that was the same

12   limitation that we put on the non-party subpoena to

13   Mr. Cuomo's sister back in November.

14           So let me just first ask Ms. Perry if those

15   scope limitations need any clarification.

16           MS. PERRY:  No.  I think that's clear,

17   Your Honor.  Thank you.

18           THE COURT:  Okay.  Ms. Trzaskoma?

19           MS. TRZASKOMA:  I think we would just want

20   to make sure that it's through the date of the

21   subpoena, so from December 2020 through the date of

22   the subpoena.  And I appreciate Your Honor's

23   clarification of that.

24           THE COURT:  Why?  Why past the date that

25   the complaint was filed?

AMM TRANSCRIPTION SERVICE - 631.334.1445

```
 1              MS. TRZASKOMA:  Because I believe they -- I
 2    mean, look, I don't know if there's a representation
 3    that they did not communicate about Ms. Bennett's
 4    lawsuit or allegations after the lawsuit was filed.
 5    Then there should be no issue.  But if there were
 6    communications about the lawsuit afterwards, that's,
 7    you know, also relevant.
 8              MS. PERRY:  Your Honor, why don't we look
 9    at that and --
10              THE COURT:  Yes.  Why don't you see what
11    the volume is.
12              MS. PERRY:  -- something we can talk about.
13    Yes.
14              THE COURT:  Maybe you can do a -- yeah,
15    Ms. Perry, maybe you can do a cutoff at the date of
16    the complaint and then afterwards and see what the
17    volume is after.  I'm trying to be consistent with
18    respect to the non-parties, and I'm also, again,
19    mindful of the burden on Ms. Boylan, so, hence, the
20    desire to -- I mean, that already is an almost
21    two-year time period that we're imposing on her.
22              So, for now I'm going to limit it to the
23    same cutoff date of September 14, 2022 as we imposed
24    with respect to Ms. Cuomo, but the parties can meet
25    and confer about that.  If there are, you know, two
```

1   things in January 2023 or something, then it's
2   presumably not very burdensome, but a -- well, for
3   now, the cutoff date will be September 14, 2022.
4        Okay.  With that guidance -- I'm sorry.
5   Ms. Sulkowski, did you want any clarification or
6   comment on the proposed scope limitation?
7        MS. SULKOWSKI:  No.  That's clear,
8   Your Honor.  Thank you.
9        THE COURT:  Okay.
10       All right.  I appreciate the parties'
11  willingness to meet and confer about that.  And at
12  the end of this conference, we'll talk about a date
13  by which I'll want a report back from you on that.
14       Any other issues with respect to the
15  subpoena to Ms. Boylan at this time?
16       MS. TRZASKOMA:  Your Honor, this is Theresa
17  Trzaskoma.
18       Not with respect to the subpoena to
19  Ms. Boylan or directly, but just to what Ms. Schnell
20  represented to the Court in terms of Ms. Bennett not
21  relying on Ms. Boylan's allegations.  And, you know,
22  I just want to clarify that she -- that what I
23  understood Ms. Schnell to be saying is that she was
24  relying solely on -- Ms. Bennett was going to rely
25  solely on her own allegations, and that she was not

1    going to rely on the allegations of Ms. Boylan or

2    anyone else, to include, for example, Trooper 1, in

3    connection with establishing her claim.

4          And so it would be helpful to get clarity

5    on that because that's not what the -- you know,

6    that's not what's in the complaint and it's not

7    what's in their initial disclosures.  And so I --

8    you know, I want to make sure, as we're going

9    forward with discovery, that we have a clear

10    understanding of what this is going to look like as

11    we go forward.

12          THE COURT:  Well, I mean, you can get a

13    transcript of this conference, and you'll have

14    Ms. Schnell's words.

15          But, Ms. Schnell, if there's anything you

16    want to elaborate on or clarify, you're welcome to.

17          MS. SCHNELL:  You know, if you look at the

18    complaint, we certainly reference the fact that

19    Lindsey Boylan came forward and made a blog post.

20    And that is a fact that, then, Charlotte came --

21    Ms. Bennett came forward as well.

22          So are we not going to refer to that fact

23    in terms of the chronology of what happened here?

24    But we are not going to call her, we are not going

25    to try to prove that Governor Cuomo sexually

AMM TRANSCRIPTION SERVICE - 631.334.1445

```
 1    harassed her at all.
 2            MS. TRZASKOMA:  Your Honor, this is --
 3    again, this is Theresa Trzaskoma.
 4            This is exactly my concern, is that if
 5    Ms. Bennett is going to get up and say Ms. Boylan
 6    made allegations against Governor Cuomo and I
 7    decided to come forward too, we're entitled to show
 8    that these other allegations are not true.
 9            THE COURT:  But Ms. Bennett is not saying
10    that what Ms. Boylan alleged is true.  She's saying
11    that she said it.  And all of this -- that's all a
12    question for Judge Broderick, if and when any of
13    these claims get to trial, what the scope of the
14    evidence will be that is actually before the jury.
15    So --
16            MS. TRZASKOMA:  Well, I -- I think that it
17    is --
18            THE COURT:  I'm not going to --
19            MS. TRZASKOMA:  I just want to make a
20    record that Governor Cuomo is being denied discovery
21    into that point because I do not -- because it is
22    extremely prejudicial if this is supposed to be a
23    case solely about Ms. Bennett and Ms. Bennett gets
24    in the side door someone else's -- the fact that
25    someone else made an allegation, which the jury,
```

AMM TRANSCRIPTION SERVICE - 631.334.1445

1    inevitably, without -- you know, without our ability

2    to say that that allegation turned out to be totally

3    fabricated and hogwash, you know, and to prove it,

4    to back it up, I think that's just -- that's exactly

5    the point, that this -- you know, we're not even

6    going to be in a position to move in limine properly

7    if we cannot show the incredible prejudice that

8    would result.

9         I mean, just imagine the motion in limine,

10   which is, you know, without the benefit of being

11   able to establish through discovery that Ms. Boylan,

12   you know, fabricated, lied, threatened witnesses

13   and, you know, lied about the circumstances under

14   which she left EFD.

15        You know, her initial allegation is that

16   she left because Governor Cuomo harassed her, and

17   that's not true.  That's the allegation that

18   Charlotte Bennett is going to be referring to.

19        THE COURT:  Okay.  But it is not correct

20   for you, your statement, Ms. Trzaskoma, that

21   Mr. Cuomo is being denied discovery.  I just ordered

22   that he's being allowed to get discovery and I

23   circumscribed the scope of it.  So don't distort the

24   record and don't put words in my mouth.  If --

25        MS. TRZASKOMA:  Well, I -- so I -- Your

```
 1   Honor --
 2           THE COURT:  Ms. Bennett does not need to
 3   even mention Ms. Boylan.  The question is whether
 4   what she alleged Mr. Cuomo did, whether that
 5   happened or not.  The only thing that matters is
 6   what Ms. Bennett says about that.
 7           MS. TRZASKOMA:  I --
 8           THE COURT:  So I realize that the
 9   allegation is in the complaint that Ms. Boylan said
10   something first, but it's not relevant to whether
11   what Ms. Bennett is alleging is true or not; and
12   continually trying to shove that door open is not
13   going to work.
14           MS. TRZASKOMA:  No.  Your Honor, I am not
15   trying -- I would like the door to be slammed firmly
16   shut, and Ms. Schnell has left the door wide open.
17   And I apologize for overstating that the Court is
18   not denying us discovery, but has limited the
19   discovery such that we, Governor Cuomo is not going
20   to be in a position to be able to establish, you
21   know, in the event that Ms. Bennett gets up and says
22   Ms. -- I saw this tweet from Ms. Boylan, she said
23   this happened to her, and we have to be able to meet
24   that.  And I don't have any -- you know, we're
25   not -- this is still early discovery.  I don't have
```

```
 1   a crystal ball.  I can't foresee the future, but
 2   I -- you know, I think it -- to allow Ms. Bennett
 3   even to make that statement or even to contemplate
 4   that she's going to be able to make -- or try to
 5   make that statement without giving Governor Cuomo
 6   discovery into that issue is very problematic.
 7            THE COURT:  Well, at this time, I have not
 8   been persuaded that requests 2 through 16 and 18 and
 9   19 are relevant and proportionate to the needs of
10   this case.  So at this time, based on the record
11   before me, the only request to which Ms. Boylan is
12   going to be required to respond, and the parties
13   have been given guidance about how to meet and
14   confer about a scope for that response, are numbers
15   1 and 17.
16            If something changes and Mr. Cuomo thinks
17   that he has good cause to have me broaden the scope
18   of what I have permitted as to Ms. Boylan, you can
19   come back and show me that.  That's always the case.
20   But in -- for now, you have this transcript.  And if
21   something changes and you have good reason to come
22   back to me and show me that something more is
23   warranted, you can do so.  But we need to move on.
24            MS. TRZASKOMA:  I appreciate that,
25   Your Honor.
```

```
 1              THE COURT:  We need to move on to the
 2     Attorney General folks who have been very, very
 3     patient.
 4              So do you want to address -- to start with
 5     that, Ms. Trzaskoma, the issues with respect to the
 6     AG and, in particular, their suggestion that we stay
 7     that while Judge Merkl is completing her
 8     consideration of the motion for reconsideration?
 9              MS. TRZASKOMA:  So as I -- so I don't think
10     that there's any reason for this Court to defer to
11     what is happening in the Trooper 1 action.  And as I
12     understand it, I don't -- that motion for
13     reconsideration was fairly limited to the July 2023
14     order on our motion to compel, which has -- you
15     know, is no longer relevant because what we're
16     talking about and what Judge Merkl is considering
17     now with respect to the documents from the AG's
18     Office is a completely different universe of
19     materials, much narrower.
20              And, you know, so I don't actually know
21     that Judge Merkl is considering the motion for
22     reconsideration, but the issues that the AG has
23     raised in any event, were never decided by
24     Judge Merkl's July 2023 order.  They are presenting
25     in this case in a completely different way, and I
```

```
 1    think that we should move on to briefing those
 2    issues.  They are, you know, complicated issues.
 3    The Attorney General has claimed, you know,
 4    sovereign immunity from any subpoena and has also --
 5              THE COURT:  Let's just -- let's back way
 6    up, though.
 7              MS. TRZASKOMA:  Yes.
 8              THE COURT:  Have there been any discussions
 9    about what the AG may be willing to produce to you?
10              MS. TRZASKOMA:  Our understanding is the AG
11    is willing to produce nothing to us.
12              THE COURT:  All right.
13              Ms. Longley, is that the case?  Or is there
14    some universe -- and I know you had lengthy
15    discussions with Judge Merkl in the Trooper 1 case
16    about what narrow range of materials that the AG was
17    willing to explore.
18              To the extent that I'm right about that, is
19    there any universe of documents with respect to
20    Ms. Bennett; and you've just heard the lengthy
21    discussion about how we're trying to focus non-party
22    discovery on Ms. Bennett's allegations here.  Is
23    there anything that the AG has that it would be
24    willing to consider providing?
25              MS. LONGLEY:  Hi.  Yes, Your Honor.  Our
```

1    office is always willing to consider anything

2    reasonable and proportional and relevant to the case

3    if it will resolve the subpoena and not require us

4    to engage, continually engage in this burdensome

5    litigation.  We were willing to try that in

6    Trooper 1.  Unfortunately, it did not result in

7    resolving the subpoena.

8         We are -- you know, we -- I would say, as a

9    general matter we would -- we were open to a similar

10   approach to the Bennett subpoena; however, when we

11   said, are there any path forward where we give you

12   non-privileged materials that are tailored to the

13   complaint and the legal claims in the Bennett case,

14   the answer was, we want the interview memos, and

15   they will not agree to any resolution that doesn't

16   include interview memos.  And given the extensive

17   litigation we've had with them on multiple fronts,

18   we're not willing to give it piecemeal and just give

19   them some materials if it's not going to resolve the

20   subpoena.

21        So in Trooper 1, we did voluntarily give

22   them in an act of good faith -- in an opening act of

23   good faith, we said, here, we'll look at documents

24   that were collected by the investigators that

25   reference Trooper 1 by name.  And we believe you

1    could get these materials under the FOIL statute,

2    which is the way the State has waived sovereign

3    immunity in the context of -- you know, as it would

4    relate to this case.

5        So we offered that.  We thought it was

6    reasonable.  It didn't go -- you know, it didn't go

7    as we would have liked it to go.  So I think in this

8    case, you know, we would be willing to do that if

9    Defendant Cuomo would agree that that would resolve

10   the subpoena and he wouldn't move to compel

11   compliance and seek our privileged material.

12       THE COURT:  So, Ms. Trzaskoma, is the

13   interview memo do or die?

14       MS. TRZASKOMA:  Yeah, that's what we're

15   seeking, Your Honor.  And we don't agree that they

16   are privileged.  And we don't agree that the

17   Attorney General's Office enjoys sovereign immunity

18   from federal subpoena.

19       And I don't -- you know, what we got in

20   Trooper 1 were four documents with Trooper 1's name

21   on them.  They were, like, telephone records or

22   something.  And, you know, it's not it -- it's not

23   the material that we're looking for.  We're looking

24   for prior statements by witnesses with information

25   relevant to Ms. Bennett's claims.

```
 1              And so I don't think there's any point in
 2    delaying.  I think, you know, we need to move on
 3    with briefing this.  And we just vehemently disagree
 4    on the law here.
 5              THE COURT:  Okay.  But how is Judge Merkl's
 6    ruling -- she quashed your subpoena in --
 7              MS. TRZASKOMA:  She did not quash it.
 8              THE COURT:  Well, she denied your motion to
 9    compel, I guess, so --
10              MS. TRZASKOMA:  She did.  She found it was
11    too broad, and it has since been narrowed.  And she
12    now then directed the Attorney General's Office to
13    provide a privilege log of the interview memos,
14    which the AG's Office did.  Judge Merkl then
15    directed the AG's Office to provide her with those
16    interview memos for in camera review, which the
17    Attorney General did in late -- or, like, mid- to
18    late December.
19              I don't know how Judge Merkl -- what
20    Judge Merkl's plan is, but I don't think it involves
21    resolving the objections that the Attorney General's
22    Office has -- is asserting here, and including, you
23    know, sovereign immunity, so -- and the universe of
24    documents is different.  And --
25              THE COURT:  But it's the interview memo.
```

```
 1    It's the same thing you're asking for here.  Why --
 2          MS. TRZASKOMA:  Well, it's a different
 3    universe of interview memo.
 4          It's a different universe of interview
 5    memos.  I mean, look, our dispute with the Attorney
 6    General has been going on for more than a year in
 7    front of -- in the Trooper 1 action.  And, you know,
 8    I don't know what to say, except I think -- I don't
 9    think -- I think we have an independent lawsuit
10    here.  It is related, but it is not the same.  And
11    Judge Merkl, you know, she has indicated, as you
12    probably saw in the prior transcript, that she would
13    need additional briefing on the sovereign immunity
14    issue.  And that hasn't --
15          THE COURT:  Okay.  But why should we
16    be briefing it twice?
17          MS. LONGLEY:  Your Honor --
18          MS. TRZASKOMA:  We haven't briefed it.
19          MS. LONGLEY:  This is Serena from the AG's
20    Office.
21          I'd like to just jump in, if I can, to say
22    that the materials and the briefing that are at
23    issue right now and that Judge Merkl ordered a
24    privilege log and in camera review of are the exact
25    same category of materials that Cuomo is seeking in
```

1    the Bennett case.  And those two categories are

2    unredacted transcripts and interview memos.

3        And we have raised the same objections in

4    both cases to those categories of documents.  And

5    it, you know, I can't predict 100 percent when Judge

6    Merkl will rule, but based on her asking for in

7    camera review, it appears that she is at least

8    considering ruling on the privilege issue of the

9    interview memos and the unredacted transcript.

10        And it is our position that -- again, not

11   knowing the exact scope of her ruling, that it could

12   have some preclusive effect on Defendant Cuomo in

13   this case, and that it makes sense, given our

14   non-party status, given the state of affairs in the

15   Bennett case and where it is, you know, in

16   discovery, that it's appropriate to wait and see

17   what Judge Merkl does, and see if there is any

18   preclusive effect or narrowing or limiting of the

19   issues before we have to go through the burden as a

20   non-party of litigating the same objections with

21   Defendant Cuomo in the Southern District.

22        THE COURT:  Okay.  Thank you.

23        Ms. Trzaskoma?

24        MS. TRZASKOMA:  May I just be heard briefly

25   on that, Your Honor, because I don't -- because it's

1    not -- I don't think that's entirely accurate.

2            THE COURT:  Yes.  Go ahead.

3            MS. TRZASKOMA:  So --

4            THE COURT:  I mean, you don't know whether

5    it's accurate or not.  I mean -- go ahead.

6            MS. TRZASKOMA:  Yeah.

7            Well, so Ms. Longley is correct that the

8    types of documents we are seeking in both cases,

9    interview memos, unredacted transcripts, that's the

10   same.  What's different are the, you know, the, kind

11   of, like, the buckets of those.

12           So in the Trooper 1 action, for example, we

13   narrowed our request to all of the interview memos

14   involving any current or former member of the New

15   York State Police and any interview memo of any of

16   the ten other claimants who are in Trooper 1's

17   complaint.

18           And, arguably, most of that material is not

19   relevant to Ms. Bennett's claim, particularly if

20   she's not planning to rely on Trooper 1.

21           THE COURT:  What are you seeking -- which

22   memos are you seeking here?

23           MS. TRZASKOMA:  And here, we're seeking

24   memos of executive chamber employees, current and

25   former who were interviewed, since that relates to

            AMM TRANSCRIPTION SERVICE - 631.334.1445

1    the environment, the work environment at the
2    Executive Chamber, and any interview memos or
3    unredacted transcripts that mention Ms. Bennett.
4            THE COURT:  With that narrowing,
5    Ms. Longley, does it change anything about the
6    Attorney General's position?
7            MS. LONGLEY:  No, Your Honor, it doesn't.
8            And I will say that we heard earlier
9    Ms. Trzaskoma talk about that, yes, what she wants
10   to do here is re-litigate the OAG report.  And I'll
11   just say this was an OAG investigation into sexual
12   harassment by the governor in the Executive Chamber.
13   And so by saying we're only seeking interview memos
14   of current or former executive chamber employees,
15   that doesn't really narrow things very much at all.
16   It's almost all of the witnesses.
17           So it may look on paper like a narrowing.
18   It's not a meaningful narrowing.  And it really goes
19   to, again, what we heard before is that -- and this
20   is exactly what Cuomo argued in Trooper 1
21   unsuccessfully, which is that he wants to
22   re-litigate the OAG report.
23           And if I can go to this concept that was
24   brought up about retaliation, I just want to put on
25   the record that whether or not -- you know,

1    retaliation as a legal matter, does not depend on
2    the validity of the underlying complaint.  So it
3    doesn't depend on whether there was sexual
4    harassment or not, it doesn't depend on if the
5    investigation was thorough.
6            You know, Defendant Cuomo wants to pursue
7    those things for his own political rehabilitation.
8    It's not about the actual legal claim for
9    retaliation, which is just did the person engage in
10   protected activity; and then was there, you know, a
11   retaliatory act in response to engaging in the
12   protected activity.  You don't need to re-litigate
13   the OAG report in order to deal with the retaliation
14   claim as a matter of law.
15           So I think we're getting far afield, and
16   we're talking also about, you know, the scope and
17   the relevance of certain interview memos here as
18   opposed to Trooper 1, but I don't want to lose sight
19   of the fact that we've also asserted a sovereign
20   immunity defense in both cases; the briefing of that
21   is fully submitted.
22           You know, Judge Merkl may want more
23   briefing.  But if she gets to that, I believe it
24   would happen before anything would happen in the
25   Bennett case.  Again, I think it makes sense to see

AMM TRANSCRIPTION SERVICE - 631.334.1445

1    how things play out in the Eastern District, where

2    we're litigating the exact same issues, the exact

3    same sovereign immunity defense.  Relevance also

4    came up.

5         So everything is really still on the table

6    there.  They've sought reconsideration of

7    Judge Merkl's denial of their motion to compel,

8    which she denied on relevance and burden grounds and

9    proportionality, but she hasn't reached the other

10   issues.  She may reach them.  It seems like she is

11   going to reach at least some of them.

12        And really what Defendant Cuomo is trying

13   to do here is get another do-over.  And he even

14   indicated that in the last conference before

15   Judge Merkl, where we brought up the fact that he's

16   now subpoenaing our lawyers who were deputized to

17   carry out a government investigation under Executive

18   Law 63(8).  And he has a novel theory that he can --

19   you know, if he can't get the materials from us

20   because of sovereign immunity, he can just subpoena

21   our deputized lawyers to get the materials that way.

22   And --

23        THE COURT:  We don't need to get into that

24   today.

25        MS. LONGLEY:  Okay.

AMM TRANSCRIPTION SERVICE - 631.334.1445

```
 1                THE COURT:  That's not before me.
 2                But what if the subpoena were limited to
 3    interview memos, the interview memos for Ms.
 4    Bennett's interview and any interview memos that
 5    reference Ms. Bennett, as well as any documents that
 6    the AG received in connection with Ms. Bennett's
 7    allegations, whether from her or from somebody else?
 8                What if it were limited that way; would the
 9    AG still stand on the sovereign immunity objection?
10                MS. LONGLEY:  Yes, Your Honor.  I think
11    because you're going to any interview memos.
12                And, I'm sorry, I didn't catch the second
13    category.  You said plaintiff's interview memo.  And
14    then who were the other -- what were the other
15    interview memos?
16                THE COURT:  The interview memos that
17    discussed -- just the portions of any interview
18    memos that discussed Ms. Bennett.
19                MS. LONGLEY:  Yeah, so we have asserted
20    privilege -- in addition to sovereign immunity,
21    we've asserted privilege over the entirety of the
22    interview memos.  Plaintiff doesn't have her own
23    interview memo.  Nobody has their interview memo.
24    And there's a reason for that.
25                THE COURT:  That's the review that
```

1    Judge Merkl is doing, though.  We're not having two
2    magistrate judges do two privilege reviews.  It's
3    bad enough that one of us has to do it.  And I feel
4    badly that it's Judge Merkl bearing the brunt of it.
5    So, you know we're not going to -- I don't want to
6    risk conflicting privilege decisions either.
7            MS. LONGLEY:  Which is why it makes sense
8    to wait for her to rule on it before, you know, the
9    same thing gets submitted to Your Honor.
10           And I will say that the privilege issues
11   are really important to this office because there's
12   attorney-client privilege in there.  There's
13   attorney work product.  But the biggest thing is
14   probably law enforcement privilege on those
15   documents.  And the documents are full of
16   information about people that's not public,
17   cooperating witnesses.
18           And as we mentioned briefly in our letter,
19   I think it's in footnote 1, which has even been
20   borne out more recently, there has been from the
21   beginning, there were credible fears by cooperating
22   witnesses of retaliation that has been -- there's
23   been a lot in the press.  There's a lot in our
24   briefing in Trooper 1.
25           Just last week, the First Department

1  reinstated a retaliation claim brought by a former

2  executive chamber employee who claimed -- alleged

3  that he was fired because he spoke to the OAG

4  investigators and corroborated sexual harassment by

5  Governor Cuomo.  And that was just reinstated.  And

6  this is why, like, you know, it is very important to

7  our office not to be disclosing to the very person

8  who they're -- who they have credible fears of

9  retaliation exactly what they said.  And it's really

10 not germane to Ms. Bennett's lawsuit here.  It's not

11 relevant, it's not proportional, and there are real

12 privacy interests, privilege interests, sovereign

13 immunity interests.

14         So I think if you weigh -- if you look at

15 the big picture and all the interests on either

16 side, there really is not a compelling case to --

17 for us to consider providing them voluntarily.

18         THE COURT:  Okay.  All right.

19         Let's circle back to the timing with

20 respect to Ms. Boylan because it's going to

21 influence the timing with respect to the AG

22 subpoena.

23         Is two weeks enough time for the parties to

24 meet and confer and be prepared to report to me

25 whether they've been able to reach an agreement with

1    respect to the search terms that Ms. Boylan will

2    implement?

3            Ms. Perry, is that achievable by

4    January 18th?

5            MS. PERRY:  I'm sorry, Your Honor.  I was

6    on mute.  By the 18th?  Was that for me?

7            THE COURT:  Yeah.  Well, the question is

8    for you, and it's --

9            MS. PERRY:  Yes.

10           THE COURT:  -- whether two weeks is enough

11   time for you to meet and confer with Ms. Trzaskoma

12   and Ms. DeRosa's counsel about the search terms that

13   Ms. Boylan would implement using the guidance that I

14   gave earlier?

15           MS. PERRY:  Yes, Your Honor.  That's more

16   than enough time.

17           THE COURT:  And what I would be doing is

18   asking the parties to report to me then as to

19   whether they've been able to reach an agreement or

20   if there's still a dispute.  If there's still a

21   dispute, then we'll have another conference.  And

22   then, I guess, why don't we in an abundance of

23   caution, I'll give you a date for another conference

24   the week after that.

25           How is -- you're on the west coast, right,

AMM TRANSCRIPTION SERVICE - 631.334.1445

```
 1   Ms. Perry?
 2             MS. PERRY:  No, Your Honor.  I'm in
 3   New York.
 4             THE COURT:  Oh, okay.  10 a.m. on Monday,
 5   January 22nd for a conference.
 6             MR. MORVILLO:  Your Honor?
 7             THE COURT:  Yes?
 8             MR. MORVILLO:  This is Greg Morvillo.
 9             Mr. Gruppuso and I are in a Rule 104
10   hearing that day in New Jersey on the 22nd, 23rd and
11   24th.
12             THE COURT:  Okay.  How about 3 o'clock on
13   the 25th?
14             MS. TRZASKOMA:  That's good for me.
15             MR. MORVILLO:  That works.
16             THE COURT:  All right.
17             MS. PERRY:  Actually --
18             THE COURT:  Who is that a problem for?
19             MS. PERRY:  Yeah, I'm going to be out of
20   town for a board meeting.
21             THE COURT:  How about the next day at
22   3 o'clock; Friday the 26th.
23             MS. PERRY:  I'll still be at the board
24   meeting, but I could step out.
25             THE COURT:  Okay.  All right.
```

```
 1              So 3 p.m. on the 26th, then we'll speak.
 2    And what else, since we're not meeting until
 3    Friday --
 4              MS. TRZASKOMA:  Your Honor, this is
 5    Ms. Trzaskoma.  I am not available on the 26th at 3.
 6    I could do earlier that day.
 7              THE COURT:  I'm committed on another case
 8    earlier that day.  How about the 29th?
 9              MS. TRZASKOMA:  The afternoon of the 29th
10    works.
11              THE COURT:  Okay.
12              Anybody else have a problem with the
13    afternoon of the 29th?
14              MS. PERRY:  I do not.
15              THE COURT:  Okay.  All right.  2 o'clock on
16    the 29th.
17              Ms. Longley, I'll get back to you, but --
18    because I will want to by that time see where things
19    have come out with respect to Judge Merkl.  And
20    we'll make a decision at that point whether we will
21    have to do motion practice and, if so, what the
22    scope will be.
23              MS. LONGLEY:  Okay, Your Honor.  Sorry.  So
24    are you asking about my availability on that day?
25              THE COURT:  Yes.
```

```
 1              MS. LONGLEY:  Okay.  Sorry.  Could you --
 2     do you remind repeating the day?
 3              THE COURT:  Yes.  It's Monday, January
 4     29th, at 2 p.m.
 5              MS. LONGLEY:  That should work.
 6              THE COURT:  Okay.  Great.
 7              All right.  So we'll ask the parties to
 8     meet and confer between now and then.  And by
 9     January -- since we're not meeting until the 29th,
10     I'll give you until the 24th to provide me with a
11     joint status letter with respect to the parties
12     meeting and conferring and hopefully reaching an
13     agreement with respect to Ms. Boylan.  And then
14     we'll plan to discuss at that point whether any
15     developments in the Trooper 1 case have occurred
16     and, if so, how that will impact the scope of any
17     briefing that we would need here with respect to the
18     subpoena to the Attorney General; okay?
19              MS. TRZASKOMA:  Okay.  Your Honor, this is
20     Theresa Trzaskoma.
21              Sorry.  I appreciate the Court's patience.
22     I just have two issues that I want -- two points I
23     want to make in response to Ms. Longley because --
24     so the record is clear.
25              THE COURT:  Okay.
```

```
 1              MS. TRZASKOMA:  First of all, we do have
 2      Ms. Bennett's interview memo, which Governor Cuomo
 3      received in the context of discovery in a criminal
 4      investigation, in a criminal case that was
 5      dismissed.
 6              THE COURT:  Okay.
 7              MS. TRZASKOMA:  It's redacted, as I
 8      understand all of the interview memos are, for
 9      information that arguably is -- contains some sort
10      of attorney impressions.
11              And the second -- so I just want to raise
12      that because I think it's not the case that, you
13      know, those interview memos have been kept in a
14      lockbox because they're privileged.
15              And the second issue is that the privilege
16      review that Judge Merkl is doing, there is -- I
17      think there is actually very little overlap between
18      what Judge Merkl is reviewing right now and what
19      Your Honor would be reviewing.  I mean, the
20      privilege log, which I'm -- which the Attorney
21      General's Office produced, the vast majority of the
22      interview memos are from troopers or former troopers
23      and other complainants, so --
24              THE COURT:  Right, but she's reviewing for
25      the same privileges, though.  So that's the point --
```

AMM TRANSCRIPTION SERVICE - 631.334.1445

1    that's my point about not having to do -- make two

2    magistrate judges do two privilege reviews.

3          I understand there may be different

4    documents, but she's reviewing for the same

5    assertions of privilege, of attorney-client work

6    product and law enforcement.  So it's the same.

7    It's the same nature that she's considering.  I

8    realize it may be a different memo, you know, a

9    different name on the memo, but it's the same

10   privileges.

11         MS. TRZASKOMA:  Well, I guess this goes --

12   yeah, I mean, it may be that there's some

13   combination of privilege and relevance.  I don't

14   know what her review is encompassing, but I just --

15   I wanted to make clear that there -- that it's a

16   different universe of materials in this case, and

17   also that the interview -- many -- not many -- a

18   handful of interview memos including Ms. Bennett's,

19   have been disclosed, and we have them, so ...

20         THE COURT:  See, that will go to weight.

21   That will go to -- if there is a privilege, whether

22   there's a waiver, which would be addressed in the

23   context of any briefing if we have to do that, so --

24         MS. TRZASKOMA:  Okay.  Thank you,

25   Your Honor.

```
 1                THE COURT:  Yes.

 2                MS. LONGLEY:  Your Honor?

 3                THE COURT:  Yes?

 4                MS. LONGLEY:  It's Serena Longley from the

 5      AG's office.  Can I just, you know, comment on the

 6      interview memos that Cuomo has?

 7                He got them through criminal discovery.  He

 8      did not get them from us.  And I look forward to --

 9      you know, we can certainly brief the Court if this

10      gets to Your Honor about why the privilege has not

11      been waived on that, but it hasn't, and, you know,

12      he got those in the context of criminal discovery in

13      New York State Criminal Court, which is very

14      different standard than is in place here in the

15      civil court.

16                THE COURT:  I understand.  I'm not making

17      any ruling, and nobody should construe anything that

18      I've said here today, things that are not before me

19      and issues that have not been briefed, we're not

20      making a finding on those.  So that's the reason for

21      deferring this and having, hopefully, a clearer

22      discussion about that.

23                Again, I'm just really trying to minimize

24      the number of issues that have to be briefed because

25      at a -- it does seem -- from what I understand, and
```

```
 1    I've read most, if not all, of what's been presented
 2    to Judge Merkl, obviously, not the documents
 3    themselves, but I've read the transcripts of all of
 4    her discussions with all of you, and a lot of the
 5    issues are overlapping, and it's burdensome for the
 6    parties, and it's burdensome for two courts to have
 7    to resolve the same issue in multiple places,
 8    multiple times.  So that's why I'm trying to
 9    streamline this, so that if we do have briefing,
10    it's going to be on a quick turnaround.
11         I mean, the other issue that we haven't
12    talked about, but we'll have to talk about on the
13    29th, is that the fact discovery cutoff is the end
14    of February.  Clearly, we're not going to make that.
15    So we're going to have to assess -- the parties
16    should be prepared to discuss at that conference,
17    you know, what's still remaining and, you know,
18    what, if any, additional time is going to be needed.
19    So we don't have to get to that today, but, you
20    know, it's out there.  All right.
21         Ms. Schnell, for Ms. Bennett, anything else
22    you would like to raise today while we're assembled?
23         MS. SCHNELL:  No, Your Honor, other than we
24    have been unsuccessful in seeking deposition dates
25    from the defendants.  And if that has not been
```

1  resolved by the 29th, we would like to address that

2  at that conference, Your Honor.

3          THE COURT:  Well, what we'll do is we'll

4  let anybody who has something to say, you need to

5  get a letter to me by January 24th at 5 p.m.  And

6  that's your deadline.  I'm not taking -- nobody is

7  going to be able to raise any issues or pop up or

8  throw something else at me after 5 o'clock on

9  January 24th, so ...

10          MS. SCHNELL:  Absolutely, Your Honor.

11  That's --

12          THE COURT:  If you want to have it be

13  heard -- if you want me consider it at the January

14  29th conference, that's the deadline.

15          MS. SCHNELL:  We will absolutely abide by

16  that, Your Honor.  Not a problem.

17          THE COURT:  Okay.  Thank you.

18          Ms. Trzaskoma, anything else you would like

19  to cover today?

20          MS. TRZASKOMA:  No, Your Honor.  Thank you.

21          THE COURT:  All right.  Thank you.

22          Ms. Sulkowski?

23          MS. SULKOWSKI:  Nothing, Your Honor.  Thank

24  you.

25          THE COURT:  And Ms. Longley?

```
 1              MS. LONGLEY:  Yes.  One thing, Your Honor.
 2              In the event there are any developments in
 3    the Trooper 1 case, as it relates to the subpoena to
 4    the Attorney General's Office, would you like us to
 5    provide a, you know, update by letter to the Court
 6    whenever that happens?
 7              THE COURT:  Yes, I do.  It doesn't have to
 8    be immediate, but you can --
 9              MS. LONGLEY:  Yeah.
10              THE COURT:  -- do it in your January 24th
11    letter.
12              MS. LONGLEY:  Okay.  And in the unlikely
13    event there's a ruling between the 24th and the
14    29th, I would think Your Honor would want us to
15    write anyways to let you know.
16              THE COURT:  You can certainly let me know
17    before then.  Just not after then.
18              MS. LONGLEY:  Okay.  Thanks.
19              THE COURT:  All right.  Either of the other
20    defendants, Ms. DesRosiers or Ms. Mogul, anything
21    else you want to raise?
22              It's nothing or either that they're on
23    mute.  Okay.
24              MR. DELIKAT:  No, Your Honor, for Defendant
25    Mogul.
```

```
 1                    THE COURT:  Okay.  Thank you.
 2               And for Ms. DesRosiers?
 3               MR. SCHWAB:  Nothing to add, Your Honor.
 4               THE COURT:  Okay.  All right.
 5               Thank you very much, everyone.  You'll see
 6    a post-conference order from us.  And we'll be
 7    adjourned.
 8               Thank you.  Have a good afternoon.
 9
10                             0o0
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1

2                          C E R T I F I C A T E

3

4        I, Adrienne M. Mignano, certify that the

5   foregoing transcript of proceedings in the case of

6   Bennett v. Cuomo, et al; Docket #22CV7846 was

7   prepared using digital transcription software and is

8   a true and accurate record of the proceedings.

9

10

11  Signature _____

12                ADRIENNE M. MIGNANO, RPR

13

14  Date:      January 6, 2024

15

16

17

18

19

20

21

22

23

24

25