```
                  UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF NEW YORK
----------------------------:
CHARLOTTE BENNETT,           : Case No.: 22-cv-7846
              Plaintiff,     :
      v.                     :
ANDREW M. CUOMO, et al.,     : New York, New York
              Defendants.    : January 4, 2024
----------------------------:
```

                 TRANSCRIPT OF STATUS CONFERENCE HEARING
                  BEFORE THE HONORABLE SARAH L. CAVE
                    UNITED STATES MAGISTRATE JUDGE

    APPEARANCES:

    For Plaintiff:         EISENBERG & SCHNELL LLP
                           BY: Laura S. Schnell, Esq.
                           233 Broadway
                           New York, NY 10279

    For Defendant:         SHER TREMONTE
    Andrew M. Cuomo        BY:  Theresa Trzaskoma, Esq.
                           90 Broad Street
                           New York, New York 10004

    For Defendant:         GLAVIN PLLC
    Andrew M. Cuomo        BY:  Rita M. Glavin, Esq.
                                Leo Korman, Esq.
                           156 West 56th Street - Ste #2004
                           New York, NY 10019

    For Defendant:         MORVILLO PLLC
    Melissa DeRosa         BY:  Gregory R. Morvillo, Esq.
                                Sarah Sulkowski, Esq.
                                Anthony Grupposo, Esq.
                           1740 Broadway - 15th Floor
                           New York, NY 10019

    For Defendant:         DEBEVOISE & PLIMPTON LLP
    Jill DesRosiers        BY:  Soren Schwab, Esq.
                                Leah Rosenberg, Esq.
                           66 Hudson Boulevard
                           New York, NY 10001


    Proceedings recorded by electronic sound recording;
    Transcript produced by transcription service

        AMM TRANSCRIPTION SERVICE - 631.334.1445

```
 1                     APPEARANCES (Continued)

 2

 3    For Defendant:       ORRICK, HERRINGTON & SUTCLIFFE LLP
      Judith Mogul        BY:  Michael Delikat, Esq.
 4                              Brianna Messina, Esq.
                          51 West 52nd Street
 5                        New York, NY 10019

 6

 7    For Defendant:       PERRY LAW
      Lindsey Boylan      BY:  E. Danya Perry, Esq.
 8                              Krista Oehlke, Esq.
                                Julie Gerchik, Esq.
 9                        157 East 86th Street
                          New York, New York 10028
10

11    For Defendant:       NYC LAW DEPARTMENT
      NY Attorney         BY:  Serena Longley, Esq.
12    General                  Michael Jaffe, Esq.
                                James Cooney, Esq.
13                        100 Church Street
                          New York, New York 10007
14

15

16

17

18

19

20

21

22

23

24

25


             AMM TRANSCRIPTION SERVICE - 631.334.1445
```

```
 1              THE COURT:  Good afternoon.  This is

 2   Magistrate Judge Cave.  We're here for a discovery

 3   conference in Bennett versus Cuomo; Case Number:

 4   22-cv-7846.

 5              May I have the appearances, starting with

 6   the plaintiff, please.

 7              Do we have plaintiff's counsel on the line?

 8   Please state your appearance.

 9              MS. SCHNELL:  Sorry, Your Honor.  Laura

10   Schnell for plaintiff, Charlotte Bennett.

11              THE COURT:  Okay.  Good afternoon.

12              Counsel for Mr. Cuomo?

13              MS. TRZASKOMA:  Good afternoon, Your Honor.

14   Theresa Trzaskoma from Sher Tremonte on behalf of

15   Former Governor Cuomo.  I'm in my office, joined by

16   my colleague, Allegra Noonan and my co-counsel, Rita

17   Glavin of Glavin PLLC is also here.

18              THE COURT:  Thank you.

19              For Ms. DeRosa?  Counsel for Ms. DeRosa?

20              Do we have counsel for Ms. DeRosa on the

21   line?  If so, please state your appearance.

22              MR. MORVILLO:  Good afternoon, Your Honor.

23   This is Gregory Morvillo.  I'm sorry, I was on mute.

24   Sarah Sulkowski and Anthony Gruppuso are also on the

25   call.  Ms. Sulkowski will be taking the lead for Ms.
```

```
1   DeRosa today.
2           THE COURT:  Okay.  Thank you.
3           Ms. DesRosiers?
4           MR. SCHWAB:  Hello.  You've got Soren
5   Schwab of Debevoise & Plimpton, on behalf of
6   defendant, Jill DesRosiers.  And I'm joined on the
7   line by my colleague, Leah Rosenberg.
8           THE COURT:  I'm sorry, who was the other
9   person?
10          MR. SCHWAB:  Leah Rosenberg.
11          THE COURT:  Okay.  Thank you.
12          For Ms. Mogul?  Counsel for Ms. Mogul?
13          MS. MESSINA:  This is Brianna Messina from
14  Orrick Herrington & Sutcliffe.  And I believe Mike
15  Delikat will be joining as well.
16          THE COURT:  Okay.  Thank you.
17          Counsel for Ms. Boylan?
18          MS. PERRY:  Good afternoon, Your Honor.
19  This is Danya Perry.  I am joined by my colleague,
20  Krista Oehlke and by my co-counsel, Julie Gerchik.
21          THE COURT:  Okay.  Good afternoon.
22          And for the Attorney General's Office?
23          MS. LONGLEY:  Hi.  Good afternoon,
24  Your Honor.  This is Serena Longley from the
25  Attorney General's Office.  I'm also joined by my
```

```
 1    colleagues on the phone, Michael Jaffe and James
 2    Cooney.  We may have another colleague join, but
 3    he's currently not on.
 4             THE COURT:  Okay.  Thank you.
 5             Is there anyone else who's joined who
 6    wishes to state their appearance?
 7             MR. DELIKAT:  Yes, Your Honor.  It's Mike
 8    Delikat, and I'm going to stand up for --
 9             THE COURT:  I'm sorry, sir.  I can't hear
10    any of what you're saying.  Your line is breaking
11    up.
12             MR. DELIKAT:  Is that better?
13             THE COURT:  Slightly.
14             MR. DELIKAT:  Mike Delikat.  And --
15             THE COURT:  I'm sorry.  I'm not hearing.  I
16    think you said "Mr. Delikat," but it's very
17    difficult to hear you, sir.
18             MR. DELIKAT:  I'll call on a landline.
19             THE COURT:  If you could, please.  Thank
20    you.
21             We'll wait for him to rejoin.  In the
22    meantime, anyone else?
23             Okay.  Thank you.  We'll begin once we have
24    Mr. Delikat rejoin us.
25             Was that Mr. Delikat who just rejoined?
```

AMM TRANSCRIPTION SERVICE - 631.334.1445

```
 1              MR. DELIKAT:  Yes.  I'm back in on a
 2      landline, Your Honor, for Defendant Mogul, and I'm
 3      joined by my colleague, Brianna Messina.
 4              THE COURT:  Okay.  Thank you very much.
 5      All right.
 6              Well, we're here today because Mr. Cuomo
 7      requested a conference with respect to his subpoenas
 8      to Ms. Boylan and the Attorney General's Office.  I
 9      did just first want to say, though, that the Court
10      received a barrage of filings from the parties and
11      the non-parties over the last 24 hours, including as
12      recently as 19 minutes before the conference, which
13      is very much unappreciated.  Some of the filings
14      were the transcripts, which the Court had to request
15      because there were transcripts from the proceedings
16      in front of Judge Merkl that the parties referred to
17      or were otherwise relevant to this and the parties
18      neglected to provide them.  And then, otherwise,
19      last minute requests to appear, which the Court has
20      granted, and then an additional submission of
21      documents that I was somehow expected to review in
22      the 19 minutes before this conference began.  That's
23      unappreciated.  It's disappointing, given the
24      quality of the federal practitioners who are
25      appearing on this call, and the Court does not
```

1    countenance it.

2            Going forward, we will put additional

3    restrictions on the deadlines for the parties to

4    comply with before conferences, but we will not

5    countenance chaos, and the parties should be aware

6    of that and should comport themselves accordingly.

7            Now, I'd like to begin with the subpoena to

8    Ms. Boylan, but what I would like to start with on

9    that issue, though, is the question of the status of

10   Ms. Bennett's production of documents; specifically,

11   her communications with Ms. Boylan to date.

12           So, Ms. Schnell, could I ask you to start

13   with that, please.

14           MS. SCHNELL:  I believe we have produced

15   those documents, Your Honor.

16           THE COURT:  Okay.  So there are no

17   remaining communications between Ms. Bennett and

18   Ms. Boylan that remain to be produced?

19           MS. SCHNELL:  Not that I'm aware of.  I

20   will double-check, but I am pretty confident of

21   that.

22           THE COURT:  Okay.  And are there any other

23   documents that Ms. Bennett has that are somehow

24   communications or other correspondence relating to

25   Ms. Boylan?

```
 1              MS. SCHNELL:  No.
 2              THE COURT:  All right.  Thank you.  Okay.
 3         Would Mr. Cuomo's counsel like to start,
 4    specifically, now that you do have documents that
 5    Ms. Bennett has produced, or communications that Ms.
 6    Bennett has produced with respect to Ms. Boylan, who
 7    is obviously not a party to this case, why anything
 8    further from Ms. Boylan is relevant and necessary?
 9              MS. TRZASKOMA:  Good afternoon, Your Honor.
10    Theresa Trzaskoma, and I will start by apologizing
11    for any chaos.  That is certainly not our intention,
12    and we appreciate a no-chaos rule and will abide by
13    it.  I think, you know, the last minute -- the very
14    last-minute filing was simply to put before
15    Your Honor, not expecting Your Honor to have an
16    opportunity to review it before this conference, but
17    so that you would have it available afterwards.
18         But we have received from Ms. Bennett
19    certain communications with Ms. Boylan which confirm
20    what we believed, which is that Ms. Bennett and
21    Ms. Boylan were in communication.  We thought it was
22    at least as early as January of 2021, but we now
23    know that it was a month earlier, in early December,
24    right around the time that Ms. Boylan first made
25    public allegations against Governor Cuomo.
```

1          We know from those communications that they
2   were coordinating with each other, with others, with
3   PR consultants, with Ms. Boylan's campaign staff,
4   with reporters.  And, you know, our view -- and we
5   don't know whether Ms. Bennett retained everything
6   that Ms. Boylan retained.
7          For example, we believe that they may have
8   been communicating on self-deleting -- you know,
9   apart from what we got, which are communications
10  across a variety of platforms, like Instagram,
11  Twitter, other forms of communication.  We think
12  that they were -- they may have been communicating
13  on encrypted apps, like Confide and Signal, that are
14  self-deleting.  I don't know.
15         It appears, perhaps, Ms. Bennett didn't
16  retain any of that, if it existed.  I don't know if
17  it exists with Ms. Boylan.  I know it appears, for
18  example, from the discovery that we've seen, that
19  Ms. Boylan was or is writing a book.  We believe
20  that she likely retained -- she probably kept notes
21  of her calls.
22         For example, we know that there was a
23  call -- at least one, probably many more -- calls
24  between Ms. Bennett and Ms. Boylan.  I don't know if
25  Ms. Boylan took notes of those calls, if she

1   conveyed to other third parties, including the

2   reporters, the PR folks, other complainants,

3   information that she was getting from Ms. Bennett or

4   information she was conveying to Ms. Bennett.

5           So, in short, I don't have any confidence

6   that the entire universe of their communications you

7   know, has been provided to us.  And Ms. Boylan is a

8   non-party, but she is a highly relevant witness for

9   purposes of discovery.  I will note that she --

10  Ms. Boylan was identified in both our initial

11  disclosures and in Ms. Bennett's initial

12  disclosures.

13          I know that Ms. Boylan is relying on a

14  letter that Ms. Bennett's counsel sent saying that

15  they do not intend at this time to call Ms. Boylan

16  as a witness at trial.  I don't think that has any

17  bearing on whether we're entitled to take discovery

18  from Ms. Boylan.  But I would note that Governor

19  Cuomo may well call Ms. Boylan as a witness at

20  trial, and, you know, in large part because it's

21  hard to understand -- you know, almost impossible to

22  understand the circumstances of Ms. Bennett's coming

23  forward with her public allegations against the

24  governor without understanding what was going on

25  with Ms. Boylan.

AMM TRANSCRIPTION SERVICE - 631.334.1445

1          And there are other -- you know, I'm happy
2    to address the relevance issues, but just in terms
3    of the question that Your Honor posed, which is, why
4    do we need additional discovery, document discovery
5    from Ms. Boylan, I think there is likely a treasure
6    trove there, and we're entitled to it.
7          THE COURT:  Well, I'd just like to
8    understand, with respect to Mr. Cuomo's subpoena to
9    Ms. Boylan, though.  I'm just pulling it up here.
10   It's pretty broad.  You know, there are 19 different
11   requests here, and they don't just relate to
12   Ms. Bennett.  Number 1 and number 17 do, but there's
13   a lot here as to Ms. Boylan, who is not a party to
14   this case.  And although there's a reference, two
15   references in paragraphs 5 and 125 to her
16   announcement of her allegations against Mr. Cuomo.
17   She's otherwise -- those are not described in
18   detail.  So I'm just -- I'm struggling with why
19   anything other than her communications with
20   Ms. Bennett, which you may have some, but admittedly
21   maybe not all, of why there's anything else here
22   that's relevant in that regard.
23          MS. TRZASKOMA:  Yeah, I mean, I think this
24   goes to Governor Cuomo's -- it, in part -- so it
25   goes to two things, Your Honor.  One, it goes to

1  what I would say is Ms. Bennett's credibility and

2  her motivations in coming forward.  And so, you

3  know, Ms. Bennett -- or Ms. Boylan was making

4  allegations, and Ms. Bennett was coordinating with

5  her.

6         And as we discussed on the call relating to

7  Hamilton College, we do think that there is a theme

8  with Ms. Bennett, which is that she made supporting

9  victims of sexual harassment and sexual assault,

10 kind of, her personal brand.  And I'm not saying

11 that lightly.  I'm saying that based on a résumé

12 that I have seen, and on, you know, her e-mails to

13 others.

14        And I think, you know, we're entitled to

15 explore what motivated Ms. Bennett to come forward,

16 which were Ms. Boylan's allegations.  At some point,

17 information started to come out that Ms. Boylan was

18 unreliable and untruthful.  And Ms. Boylan -- I

19 mean, Ms. Bennett, nevertheless, continued to stand

20 shoulder to shoulder with Ms. Boylan.  And I think

21 that is very important information relevant to Ms.

22 Bennett's motivations and her credibility.  And, you

23 know, we believe that Ms. Bennett embellished her

24 allegations in order to support Ms. Boylan and

25 continued to do so even after it became clear that

1    Ms. Boylan had not been truthful.

2            And so it's all those circumstances around

3    what was happening in late 2020, in the beginning of

4    2021, where, you know, they are all -- where

5    Ms. Bennett and Ms. Boylan are communicating with

6    reporters, they're communicating with PR folks, and

7    they're communicating with other complainants to

8    recruit others to come forward.  And the fact that

9    Ms. Boylan was not truthful, had ulterior motives,

10   and, you know, either hoodwinked Ms. Bennett or

11   manipulated her is an important part of Governor

12   Cuomo's defense.

13           THE COURT:  Right.  But all of that is

14   going to be in their communications with each other.

15   There's not going to be a mini trial in this case

16   about Ms. Boylan.  She's not a party to this case.

17   And Mr. Cuomo doesn't have any claims against

18   Ms. Boylan in this case.  So going for the --

19           MS. TRZASKOMA:  Well, I --

20           THE COURT:  -- throat of the truth or

21   falsity of what Ms. Boylan was alleging, even if

22   what Ms. Boylan was alleging was false, and I have

23   no finding on that one way or the other, that

24   doesn't mean that what Ms. Bennett said was true or

25   false.  Those two things are totally independent of

1    each other.

2             MS. TRZASKOMA:  Well, I'm not proposing a

3    mini trial, certainly, Your Honor, but what I am

4    proposing -- what we are seeking is, you know, under

5    the broad ambit of what's discoverable, we are

6    seeking information about the reliability of

7    Ms. Boylan's own allegations and the fact that

8    Ms. Bennett willingly jumped on that bandwagon

9    and -- and so, you know, Your Honor -- I mean, they

10   coordinated with each other.  And the fact that

11   Ms. Bennett was coordinating with a person who was

12   not being truthful is, you know -- and who was doing

13   so -- Ms. Boylan was doing so for the purpose of,

14   you know, furthering her political campaign is

15   just -- it's really all part of the atmosphere of

16   what prompted Ms. Bennett to come forward.

17             And it's not a mini trial.  It is, as I

18   said, like, you know, it's very relevant to what

19   Ms. Bennett was doing.  And, you know, to the point

20   of -- I don't think this is all in their

21   communications necessarily.  I think there's going

22   to be a lot of information about the nature and

23   reach and scope of their joint effort to coordinate,

24   recruit and encourage others is absolutely going to

25   be part of what's in Ms. Boylan's documents and not

1    necessarily part of what's in Ms. Bennett's.

2              THE COURT:  I appreciate that, but there

3    has to be a tie to Ms. Bennett and her claim.  And

4    what Ms. Boylan -- that Ms. Boylan may have

5    encouraged some other complainant to do something

6    independent of Ms. Bennett, that doesn't have

7    anything to do with this case.  That's not relevant.

8              MS. TRZASKOMA:  Well, I guess I -- I mean,

9    I hear that, but I vehemently disagree because I

10   think -- you know, for example, part of what we

11   think was motivating Ms. Bennett is that Ms. Boylan

12   was running for political office at the time this

13   all came out.  Ms. Bennett may have been looking for

14   a job.  I don't know.  Maybe she wanted to work with

15   Ms. Boylan.

16             We have -- you know, part of the

17   information that we submitted to the Court is a

18   calendar invite between -- in December of 2020

19   between Ms. Bennett, Ms. Boylan and Ms. Boylan's

20   campaign manager, or who we believe is Ms. Boylan's

21   campaign manager.

22             And I do think that Governor Cuomo's

23   defense -- we don't want a mini trial, but we are

24   entitled to explore whether Ms. Boylan's allegations

25   were true or not and what Ms. Bennett knew or didn't

AMM TRANSCRIPTION SERVICE - 631.334.1445

1  know about that.  And I think, you know -- and

2  just --

3          THE COURT:  When is --

4          MS. TRZASKOMA:  -- there's a very big

5  difference between -- yeah.  Sorry.

6          THE COURT:  When is Ms. Bennett's

7  deposition?

8          MS. TRZASKOMA:  I'm sorry?

9          THE COURT:  When is Ms. Bennett's

10 deposition?

11         MS. TRZASKOMA:  We have not scheduled it.

12 Ms. Bennett has not completed her production of

13 documents.  On a call last week, I think, they were

14 not able -- Ms. Schnell was not able to tell us when

15 that would be completed.  But we -- you know, but we

16 do want and are entitled to this non-party discovery

17 in advance of that deposition so that we have, you

18 know, as much information as we can get about what

19 was going on so that we are able to intelligently

20 and fully and capably question her on these issues.

21         THE COURT:  Right.  But why do you need it

22 before Ms. Bennett's deposition?  I mean, Ms. Boylan

23 is a non-party, so necessarily the burden on her

24 should be minimized as much as possible.  She's not

25 required to carry the load for Ms. Bennett.  You

1    guys have to do your work.  The defendants have to

2    do their work as to Ms. Bennett and bring out -- if

3    there are things that Ms. Bennett says about

4    Ms. Boylan, then you have a much stronger case -- or

5    much stronger argument why a further discovery from

6    Ms. Boylan might be relevant, but you're inverting

7    it in a way that's unfair to somebody who's a

8    non-party.

9            MS. TRZASKOMA:  I don't think we are,

10   Your Honor.  And I would note that plaintiff has

11   already taken non-party discovery, and Your Honor

12   has enforced non-party discovery without her having

13   taken a single deposition.  So I don't -- I think,

14   you know, this is a normal discovery practice, which

15   is to gather as much information as possible about

16   the topics that you're going to depose a witness or,

17   you know, a party on, and to have that all available

18   to us.  And I don't think Rule 26 put -- imposes a

19   particular order on us.  And it's --

20           THE COURT:  I wasn't saying that it did.

21   But in terms of somebody who has come forward and

22   objected, in part, on the grounds of burden, it

23   makes sense to --

24           MS. TRZASKOMA:  Well --

25           THE COURT:  -- pursue the information from

1    the parties first, and then see what's left and
2    what's needed from the non-parties.
3          MS. TRZASKOMA:  Well, it's hard -- I mean,
4    part of this issue, Your Honor, is we have no idea
5    what Ms. Boylan has or what the burden is on her.
6    And I would say, you know, she has made this burden
7    argument without actually meeting her burden to show
8    it's some undue burden.
9          And, frankly, if she says, I have a million
10   communications with Ms. Bennett, and it's going to
11   require -- or with Ms. Bennett and about
12   Ms. Bennett, and it's going to take me a lot of time
13   to gather and produce them, that makes me want them
14   all the more.  But I don't understand why she
15   cannot, for example, run simple search terms through
16   her communications and turn those over to us in
17   advance of our having to take Ms. Bennett's
18   deposition.  And, likewise, I don't know why
19   Ms. Boylan cannot sit for a day-long deposition in
20   this matter.
21          THE COURT:  All right.
22          MS. TRZASKOMA:  And --
23          THE COURT:  Go ahead.  Finish your
24   statement, and then I want to hear from Ms. Boylan's
25   counsel.

         AMM TRANSCRIPTION SERVICE - 631.334.1445

1          MS. TRZASKOMA:  Yeah.  Again, just to go
2     back to the disclosures, both parties have
3     identified her as a witness with relevant
4     information, and under those circumstances, and
5     under all the circumstances here, you know, the
6     subpoena is proper and it should be enforced.
7          THE COURT:  Thank you.  All right.
8          Ms. Perry, do you or one of your colleagues
9     want to address the points that Ms. Trzaskoma has
10    made?
11         MS. PERRY:  Yes.  Thank you, Your Honor.
12    This is Danya Perry.
13         So just to, I guess, take the last point
14    made by Ms. Trzaskoma first, it's not the case that
15    both parties have identified her as a witness.  As
16    Your Honor is aware, Ms. Katz, on behalf of the
17    plaintiff, has said they do not anticipate calling
18    Ms. Boylan as a witness.  And it's certainly the
19    case that Mr. Cuomo does not want Ms. Boylan in this
20    case.
21         He has said in the Trooper 1 case that he
22    does not believe Ms. Boylan has relevant
23    information, as much as he's been hounding her with
24    subpoenas -- I believe we're up to 15.  I may have
25    lost count -- in the other case, what he's trying to

1    do, and he said the quiet part out loud in that case

2    is relitigate the Attorney General's investigation

3    and prove himself, essentially, to be innocent.

4         In this case -- and he's also said another

5    quiet part out loud in that case, which is that he

6    does not -- you know, he had said in that case that

7    if Ms. Boylan had not been all over the complaint,

8    he would not be subpoenaing her.

9         Well, she really does not feature

10   prominently in this case.  And, again, the plaintiff

11   has said that they're willing to take her out of the

12   case.  But, nevertheless, he wants her in this case,

13   and it really is so that, as Ms. Trzaskoma just

14   said, they can impeach her.  But there's no real

15   reason to impeach her.  And it really is the

16   convoluted explanation that we just heard, was -- I

17   mean, in their letter they said it was to impeach

18   Ms. Boylan.  They actually said that.  And now,

19   under Your Honor's questioning, it was, well, it was

20   more indirect.  It was to impeach Ms. Boylan to

21   somehow indirectly impeach Ms. Bennett.

22        That really is a bridge too far.  It really

23   is to get campaign records and records about sexual

24   history and personnel records to somehow impeach

25   Ms. Boylan, which somehow would impugn Ms. Bennett

AMM TRANSCRIPTION SERVICE - 631.334.1445

1    really, really is going too far afield.

2           But if we had been able to have a

3    productive meet and confer, I think we -- and

4    they've been willing to narrow the subpoena in some

5    ways -- I think we probably could have gotten to a

6    place where I do agree with Your Honor that

7    arguably, at least, requests number 1 and 17 are the

8    only requests that are moderately theoretically

9    relevant.  Of course, they're overbroad because they

10   request all communications and all documents.

11          And I think, though, if the parties could

12   sit down and, you know, come to discussions, perhaps

13   communications that involve just sexual harassment

14   allegations against Mr. Cuomo, not all

15   communications with Ms. Bennett, perhaps there

16   are -- I don't know this, but perhaps there are

17   documents that would be relevant that have not been

18   produced.  And so we would be willing -- as

19   Ms. Trzaskoma just said, we would be willing to run

20   limited searches for that.  And I do agree it's

21   potentially relevant.  I --

22          THE COURT:  But can I interrupt -- can I

23   interrupt you for a second?

24          MS. PERRY:  Of course.

25          THE COURT:  Has Ms. Boylan done a search of

```
 1    her communications to know what the universe is of
 2    her communications with Ms. Bennett, what the volume
 3    is?
 4          MS. PERRY:  Not just with Ms. Bennett.  We
 5    have -- in the other case, we had run a search and
 6    there's a large volume of documents.  I think we're
 7    at about 500,000 that have been potentially relevant
 8    in that case.
 9          THE COURT:  Okay.
10          MS. PERRY:  And the subpoena in this case
11    is largely duplicative of that one, but I think if
12    the parties can come to terms, obviously, it would
13    be a much, much smaller universe of documents, and I
14    think that could be somewhat reasonable.
15          It is the case that Ms. Bennett and
16    Ms. Boylan are -- have become friendly, and they
17    talk about a lot of other things.  I just reviewed
18    the communications that we got minutes before the
19    conference, and there are just a lot of, you know,
20    heart emojis, I think, and likes and that kind of
21    thing.  So there are a lot of things I think would
22    be nonresponsive if we can just talk about, you
23    know, sexual allegations -- sexual misconduct
24    allegations.  So I would like to think that
25    reasonable people can come to terms.
```

1      THE COURT:  Do you know when Ms. Boylan and

2   Ms. Bennett began communicating about the

3   allegations against Mr. Cuomo?

4      MS. PERRY:  Yes.  I'm glad you asked,

5   Your Honor, because I did want to come to that

6   because Mr. Cuomo's papers -- the letter motion

7   requesting this conference says at least twice, and

8   it has been a theory of the case, that Ms. Boylan is

9   the provocateur in this case, that she induced other

10  people, including Ms. Bennett to the point here to

11  come forward; that she was the person that created

12  this domino effect.

13      And with regard specifically to

14  Ms. Bennett -- and from what I've seen in the

15  seconds that I had to look at these communications,

16  Ms. Bennett, it seems, from the complaint, came

17  forward with her sexual harassment allegations in

18  the spring or summer of 2020.  She did not know

19  Ms. Boylan at the time.  They had never met.  They

20  knew nothing about each other.  They were

21  completely, you know, parallel, had their own

22  independent, traumatic sexual harassment experiences

23  with the then-governor, and did not know each other,

24  had not spoken until Ms. Boylan came forward in

25  December of 2020.  This is my understanding with

AMM TRANSCRIPTION SERVICE - 631.334.1445

1   public tweets.

2           And then it was Ms. Bennett, as I

3   understand it, who came forward and reached out to

4   Ms. Boylan.  This is my understanding.  And, again,

5   I have an imperfect understanding, and I just saw

6   these records.

7           THE COURT:  You're not under oath.

8           MS. PERRY:  Thank you, Your Honor.

9           And so I think that's an inaccurate

10  rendition of the facts here, to say that Ms. Boylan

11  was the instigator here who created, you know, this

12  whole domino effect that took the governor down.

13          But, in any event, I think that, you know,

14  these -- I believe it's 19 categories of

15  documents -- really has nothing whatsoever to do

16  with the facts in this case -- I'm sorry, 17

17  categories of documents -- other than, as I

18  mentioned, you know, the communications and the

19  documents that go specifically to communications

20  with the plaintiff in this case and to her lawsuit.

21          And so I certainly would be willing to sit

22  down with Ms. Glavin and Ms. Trzaskoma and see if we

23  can work out reasonable search terms.  I would like

24  to think that we can and wouldn't have to burden the

25  Court with that.

1        THE COURT:  Okay.  Thank you.

2        I do want to give Ms. Trzaskoma a chance to

3    respond, but I should hear from Ms. Sulkowski next

4    on behalf of Ms. DeRosa.

5        MS. SULKOWSKI:  Thank you, Your Honor.

6    Sarah Sulkowski.

7        Your Honor, we agree with Governor Cuomo's

8    counsel, that it's clear that Ms. Boylan was the

9    instigator of the process that led to the filing of

10   this complaint.  And importantly, the plaintiff, in

11   re-tweeting Ms. Boylan's initial allegations against

12   the governor, said expressly that these allegations

13   are emblematic of what the executive chamber under

14   Governor Cuomo was like, and, it appears, tailored

15   her own accusations to match those.

16       And so evidence that Ms. Boylan's

17   allegations were false and that she had -- her

18   credibility is at issue and that she had a motive to

19   lie, or perhaps multiple motives to lie, would go

20   directly to plaintiff's own credibility and the

21   credibility of her allegations.  I don't think that

22   should be overlooked.

23       Again, you know, plaintiff's initial

24   disclosures named Ms. Boylan, not as a witness, but

25   as an individual likely to have discoverable

AMM TRANSCRIPTION SERVICE - 631.334.1445

```
 1    information relevant to this action.  And those
 2    initial disclosures have not been revised or
 3    corrected.  They're still extant, as well as
 4    Ms. DeRosa's and Governor Cuomo's initial
 5    disclosures, all of which identify Ms. Boylan as
 6    having discoverable information.
 7              THE COURT:  All right.  Well, it's
 8    basically undisputed, and there's evidence now
 9    before the Court that she had communications with
10    Ms. Bennett about her allegations concerning
11    Governor Cuomo.  So I don't think there's any
12    dispute that the initial disclosures are correct in
13    including Ms. Boylan, but I think you're placing a
14    lot more weight on that than is warranted.
15              MS. SULKOWSKI:  Well, the concept of
16    relevant information under Rule 26 is broad for a
17    reason:  Because parties should be able to explore,
18    you know, what a plaintiff -- particularly what a
19    plaintiff herself denominates as relevant
20    information.
21              I know the Court doesn't have Ms. DeRosa's
22    document subpoena in front of it.  I apologize for
23    that, but we didn't want to submit it at the last
24    minute.  But it does seek categories of documents
25    extremely similar to those sought by Governor Cuomo;
```

AMM TRANSCRIPTION SERVICE - 631.334.1445

1      for example, communications with or about Ms. DeRosa
2      and Governor Cuomo during the relevant period.
3              These, even if not directly with plaintiff,
4      go to the working environment in the executive
5      chamber, which is a core part of the allegations of
6      both women and, thus, to plaintiff's claims and
7      Ms. DeRosa's defense for those claims.
8              Communications concerning investigations of
9      allegations against Governor Cuomo -- you know,
10     again, if Ms. Boylan was orchestrating a campaign
11     against the governor, as we believe she was, these
12     communications may reveal that, and that would go to
13     Ms. Bennett's credibility as well.
14             THE COURT:  How?
15             MS. SULKOWSKI:  Well, again, if Ms. Boylan
16     persuaded Ms. Bennett to join her, or if
17     Ms. Bennett, on her own conformed to what we think
18     is her pattern of behavior, which is to see a woman
19     alleging sexual harassment or assault and to try to
20     buttress her claims with her own allegations,
21     perhaps by exaggerating things she experienced that
22     were de minimus, you know, the -- Ms. Boylan's
23     communications evidencing that orchestrated campaign
24     or the falseness of her own allegations that
25     Ms. Bennett then tailored her own to match would be

                AMM TRANSCRIPTION SERVICE - 631.334.1445

```
 1   highly relevant.
 2           THE COURT:  Then all falls into the two
 3   that we've been talking about, that Ms. Boylan's
 4   counsel just said she was willing to work with you
 5   about, which is the communications between
 6   Ms. Bennett and Ms. Boylan.
 7           MS. SULKOWSKI:  Respectfully --
 8           THE COURT:  Yet that doesn't get you to all
 9   of her communications with anybody else in the
10   governor's office about other complainants, for
11   example.
12           MS. SULKOWSKI:  We think those would be
13   relevant because, again, if Ms. Boylan's
14   allegations, which Ms. Bennett has referred to as
15   emblematic, as indicative of what it was like in the
16   executive chamber, before she ever aired her own, if
17   those are false and her communications with others
18   demonstrate that they're false or they're
19   exaggerated or they're trumped up, that's relevant
20   to what plaintiff subsequently did and why she did
21   it.
22           I would like to mention at this point that,
23   you know, we had a meet and confer with Ms. Boylan's
24   counsel.  They said they would take our requests
25   under consideration.  They later came back to us and
```

1    reiterated that they would not produce anything to

2    us.  And I would note that I believe

3    Governor Cuomo's counsel has received a de minimus,

4    you know, 25 pages.  We haven't even received that.

5    We've received nothing.  And they've told us we will

6    receive nothing.  I appreciate their expressed

7    willingness today to reconsider that position, but I

8    don't think we should be forced to go back into a

9    meet and confer with counsel who could have made

10   these offers long ago without getting a ruling and

11   potentially, quite likely, have to be back before

12   the Court in short order.

13          THE COURT:  Well, it's not shocking to me

14   that this group is not able to reach agreement among

15   themselves without Court intervention.  So you're

16   here now, and I'm going to give you guidelines for

17   how you're going to meet and confer and what the

18   scope is going to be.  But let me hear from Ms.

19   Trzaskoma again.  In particular, if you could

20   address, you know, if the date range were to begin

21   in December 2020, for example, you know, tell me why

22   that's not sufficient.

23          MS. TRZASKOMA:  Oh, that for us, is

24   sufficient.  That is when -- I mean, we didn't know

25   when -- so, you know, as Ms. Perry said -- I think

1    she said that they didn't know each other, that

2    Ms. Bennett and Ms. Boylan didn't know each other

3    before then or, you know, may not have been

4    communicating.

5            But, in any event, it's really about the --

6    it's really about that time frame.  We now know

7    that's basically when they started communicating, so

8    we're -- so, you know, we thought that the request

9    was not overly broad because it would be naturally

10   limited in time by the -- you know, when they were

11   communicating.

12           But I -- you know, I wanted -- I appreciate

13   Ms. Sulkowski's comments because I think they mirror

14   ours, which is -- so Ms. Bennett had complaints.  As

15   I understand it, those -- the nature of her

16   complaints changed significantly and dramatically

17   after she started communicating with Ms. Boylan and

18   after -- she never said previously -- and I know --

19   she's going to disagree, I'm sure.  It's not what

20   her complaint reflects, but I believe it's what the

21   evidence will reflect -- that she did not previously

22   complain that she was sexually harassed.  And that

23   changed after she started speaking with Ms. Boylan.

24           And, you know, for Governor Cuomo's defense

25   of this case, I do not -- he is going to rely on

1    Ms. Boylan and the fact that she was out in public

2    making false accusations and using those false

3    accusations to recruit others to embellish their own

4    claims.  And that is his defense.  And I appreciate

5    that Ms. Boylan doesn't like it, Ms. Bennett doesn't

6    like it, a lot of the other complainants don't like

7    it, but that is his defense.

8         And just to Ms. Perry's point about the

9    issues in Trooper 1, as Your Honor knows, that

10   complaint is very different than this complaint; but

11   they both share a reliance on the Attorney General's

12   report.  The Attorney General's report is part of

13   Ms. Bennett's complaint, just as it is Trooper 1's.

14   They have slightly different consequences.  But

15   Ms. Bennett's entire retaliation claim has to do

16   with statements that were made on Governor Cuomo's

17   behalf after the AG report came out.  And you cannot

18   understand the purpose of those statements and the

19   defense of him without understanding that the AG

20   report and investigation were deeply flawed, were

21   full of inaccuracies, and contained, you know,

22   allegations, credited allegations, including

23   Ms. Boylan's.

24        So, you know, to try to disentangle -- and

25   in Trooper 1, Judge Merkl, you know, I think

1    approached that case -- and you can see it,
2    Your Honor, I think, in the transcripts, which,
3    again, I apologize for not providing to Your Honor
4    earlier.  I think you can see it there, that
5    Judge Merkl was hoping that case would get whittled
6    down, but it is as broad as it ever was.
7              And, you know, so to say that we wanted to
8    relitigate the Attorney General's report, yeah,
9    because it is front and center in that case, and it
10   is inevitably, unless the retaliation claims get
11   dismissed, it is going to be part of this case.
12             So it's not -- it is chopping us off at the
13   knees to say there can be a lawsuit that complains
14   about a defendant's reaction to a public report and,
15   you know, about statements that were made about how
16   unreliable it was and not for -- for Governor Cuomo
17   not to be able to explain to a jury why he believed
18   that and why it is true that it's unreliable.
19             So, you know, I think, and I appreciate
20   that Your Honor is going to give some guidance, but
21   I don't think that it is appropriate to say that
22   we're getting only the communications directly
23   between Ms. Bennett and Ms. Boylan because I do
24   think that Ms. Boylan was communicating with a lot
25   of other people around Ms. Bennett and Ms. Bennett's

AMM TRANSCRIPTION SERVICE - 631.334.1445

1    allegations, and we were entitled to that as well.

2              THE COURT:  Okay.  Thank you.

3              MS. TRZASKOMA:  And the final thing I would

4    say is I know that there is this letter, as I

5    mentioned, that, you know, Ms. Bennett is not going

6    to call Ms. Boylan as a trial witness.  But in her

7    initial disclosures, she says she is going to rely

8    on Ms. Boylan's and Trooper 1's allegations.  And if

9    Ms. Bennett is going to rely -- even if not calling

10   her as a trial witness, if she is planning to rely

11   in any way, shape, or form on Ms. Bennett's

12   allegations, we are entitled to full discovery about

13   those allegations.

14             THE COURT:  Okay.  Thank you.

15             Ms. Schnell, can you speak to that last

16   point about the suggestion that Ms. Bennett may be

17   relying on Trooper 1's or Ms. Boylan's allegations

18   to support her?

19             MS. SCHNELL:  No.  If you look -- we don't.

20   If you look at the complaint, we do not -- unlike

21   the Trooper 1 complaint, which if you looked at it,

22   Your Honor, it includes lengthy sections on each of

23   the women who made complaints about Governor Cuomo.

24   Ms. Bennett's complaint does not.  Ms. Bennett's

25   complaint stands on whether she was sexually

1    harassed by Mr. Cuomo, not whether any of these

2    other women were.

3              THE COURT:  Okay.  Thank you.

4              Ms. Perry, any points that you want to

5    respond to before we try to have a more focused

6    discussion of the scope guidance that I'm going to

7    give you?  And let me just say before you do that,

8    Ms. Longley, I appreciate that you've been waiting

9    here for 45 minutes.  We will get to you very

10   shortly.

11             Go ahead, Ms. Perry.  Any points you want

12   to make in response to what either Ms. DeRosa's or

13   Mr. Cuomo's counsel said?

14             MS. PERRY:  I don't think I do, Your Honor.

15   Ordinarily, I do, but it's almost impossible to

16   respond to because there's nothing focused there.

17   They're basically just saying -- I mean, they have

18   said very explicitly, we want to relitigate the

19   entirety of the AG's report and that wasn't fair to

20   the governor, and, therefore, we get to take

21   incredibly broad, incredibly damaging, incredibly

22   burdensome, not particularly relevant discovery of a

23   non-party.  And how can I really even respond to

24   that?

25             You know, I've made my points.  If Your

1    Honor is even considering it, I certainly would

2    request some process and the opportunity to brief

3    that, but it just seems to me so outlandish and so

4    beyond the pale that it's hard to respond to at this

5    point any more than that.

6            THE COURT:  Okay.  Well, before we end

7    up -- I'm hoping to avoid any motion practice

8    altogether, so that's why I want to give you

9    guidance about what I want you to meet and confer

10   about, and hope that we can come to a resolution

11   through that process without there having to be

12   motion practice as to the other request.

13           So what the -- what I think the scope

14   should be, focusing on request number 1, which is

15   communications with Ms. Bennett about any

16   allegations of sexual harassment or misconduct by

17   Governor Cuomo, and number 17, which is

18   non-privileged communications concerning this

19   lawsuit -- this lawsuit or Ms. Bennett's lawsuit

20   against New York State, which, obviously, is not

21   before me, but I think the parties should focus on

22   those two requests.

23           To Ms. Trzaskoma's point, is not limited to

24   just communications between Ms. Bennett and

25   Ms. Boylan, but if Ms. Boylan had any communications

1    about Ms. Bennett or Ms. Bennett's allegations with

2    someone else, then the search terms should -- that

3    the parties agree on should capture those

4    communications as well.

5           And then the time period would be from

6    December 2020.  I don't know the exact date in

7    December, but the parties should have that.

8    December 2020 through, I believe it's September 14,

9    2022, which is the date Ms. Bennett filed her

10   complaint in this case, and that was the same

11   limitation that we put on the non-party subpoena to

12   Mr. Cuomo's sister back in November.

13          So let me just first ask Ms. Perry if those

14   scope limitations need any clarification.

15          MS. PERRY:  No.  I think that's clear,

16   Your Honor.  Thank you.

17          THE COURT:  Okay.  Ms. Trzaskoma?

18          MS. TRZASKOMA:  I think we would just want

19   to make sure that it's through the date of the

20   subpoena, so from December 2020 through the date of

21   the subpoena.  And I appreciate Your Honor's

22   clarification of that.

23          THE COURT:  Why?  Why past the date that

24   the complaint was filed?

25          MS. TRZASKOMA:  Because I believe they -- I

AMM TRANSCRIPTION SERVICE - 631.334.1445

1      mean, look, I don't know if there's a representation
2      that they did not communicate about Ms. Bennett's
3      lawsuit or allegations after the lawsuit was filed.
4      Then there should be no issue.  But if there were
5      communications about the lawsuit afterwards, that's,
6      you know, also relevant.
7              MS. PERRY:  Your Honor, why don't we look
8      at that and --
9              THE COURT:  Yes.  Why don't you see what
10     the volume is.
11             MS. PERRY:  -- something we can talk about.
12     Yes.
13             THE COURT:  Maybe you can do a -- yeah,
14     Ms. Perry, maybe you can do a cutoff at the date of
15     the complaint and then afterwards and see what the
16     volume is after.  I'm trying to be consistent with
17     respect to the non-parties, and I'm also, again,
18     mindful of the burden on Ms. Boylan, so, hence, the
19     desire to -- I mean, that already is an almost
20     two-year time period that we're imposing on her.
21             So, for now I'm going to limit it to the
22     same cutoff date of September 14, 2022 as we imposed
23     with respect to Ms. Cuomo, but the parties can meet
24     and confer about that.  If there are, you know, two
25     things in January 2023 or something, then it's

                AMM TRANSCRIPTION SERVICE - 631.334.1445

1    presumably not very burdensome, but a -- well, for

2    now, the cutoff date will be September 14, 2022.

3              Okay.  With that guidance -- I'm sorry.

4    Ms. Sulkowski, did you want any clarification or

5    comment on the proposed scope limitation?

6              MS. SULKOWSKI:  No.  That's clear,

7    Your Honor.  Thank you.

8              THE COURT:  Okay.

9              All right.  I appreciate the parties'

10   willingness to meet and confer about that.  And at

11   the end of this conference, we'll talk about a date

12   by which I'll want a report back from you on that.

13             Any other issues with respect to the

14   subpoena to Ms. Boylan at this time?

15             MS. TRZASKOMA:  Your Honor, this is Theresa

16   Trzaskoma.

17             Not with respect to the subpoena to

18   Ms. Boylan or directly, but just to what Ms. Schnell

19   represented to the Court in terms of Ms. Bennett not

20   relying on Ms. Boylan's allegations.  And, you know,

21   I just want to clarify that she -- that what I

22   understood Ms. Schnell to be saying is that she was

23   relying solely on -- Ms. Bennett was going to rely

24   solely on her own allegations, and that she was not

25   going to rely on the allegations of Ms. Boylan or

              AMM TRANSCRIPTION SERVICE - 631.334.1445

```
 1   anyone else, to include, for example, Trooper 1, in
 2   connection with establishing her claim.
 3           And so it would be helpful to get clarity
 4   on that because that's not what the -- you know,
 5   that's not what's in the complaint and it's not
 6   what's in their initial disclosures.  And so I --
 7   you know, I want to make sure, as we're going
 8   forward with discovery, that we have a clear
 9   understanding of what this is going to look like as
10   we go forward.
11           THE COURT:  Well, I mean, you can get a
12   transcript of this conference, and you'll have
13   Ms. Schnell's words.
14           But, Ms. Schnell, if there's anything you
15   want to elaborate on or clarify, you're welcome to.
16           MS. SCHNELL:  You know, if you look at the
17   complaint, we certainly reference the fact that
18   Lindsey Boylan came forward and made a blog post.
19   And that is a fact that, then, Charlotte came --
20   Ms. Bennett came forward as well.
21           So are we not going to refer to that fact
22   in terms of the chronology of what happened here?
23   But we are not going to call her, we are not going
24   to try to prove that Governor Cuomo sexually
25   harassed her at all.
```

```
1              MS. TRZASKOMA:  Your Honor, this is --
2     again, this is Theresa Trzaskoma.
3              This is exactly my concern, is that if
4     Ms. Bennett is going to get up and say Ms. Boylan
5     made allegations against Governor Cuomo and I
6     decided to come forward too, we're entitled to show
7     that these other allegations are not true.
8              THE COURT:  But Ms. Bennett is not saying
9     that what Ms. Boylan alleged is true.  She's saying
10    that she said it.  And all of this -- that's all a
11    question for Judge Broderick, if and when any of
12    these claims get to trial, what the scope of the
13    evidence will be that is actually before the jury.
14    So --
15             MS. TRZASKOMA:  Well, I -- I think that it
16    is --
17             THE COURT:  I'm not going to --
18             MS. TRZASKOMA:  I just want to make a
19    record that Governor Cuomo is being denied discovery
20    into that point because I do not -- because it is
21    extremely prejudicial if this is supposed to be a
22    case solely about Ms. Bennett and Ms. Bennett gets
23    in the side door someone else's -- the fact that
24    someone else made an allegation, which the jury,
25    inevitably, without -- you know, without our ability
```

1   to say that that allegation turned out to be totally

2   fabricated and hogwash, you know, and to prove it,

3   to back it up, I think that's just -- that's exactly

4   the point, that this -- you know, we're not even

5   going to be in a position to move in limine properly

6   if we cannot show the incredible prejudice that

7   would result.

8          I mean, just imagine the motion in limine,

9   which is, you know, without the benefit of being

10  able to establish through discovery that Ms. Boylan,

11  you know, fabricated, lied, threatened witnesses

12  and, you know, lied about the circumstances under

13  which she left EFD.

14         You know, her initial allegation is that

15  she left because Governor Cuomo harassed her, and

16  that's not true.  That's the allegation that

17  Charlotte Bennett is going to be referring to.

18         THE COURT:  Okay.  But it is not correct

19  for you, your statement, Ms. Trzaskoma, that

20  Mr. Cuomo is being denied discovery.  I just ordered

21  that he's being allowed to get discovery and I

22  circumscribed the scope of it.  So don't distort the

23  record and don't put words in my mouth.  If --

24         MS. TRZASKOMA:  Well, I -- so I -- Your

25  Honor --

```
 1              THE COURT:  Ms. Bennett does not need to
 2   even mention Ms. Boylan.  The question is whether
 3   what she alleged Mr. Cuomo did, whether that
 4   happened or not.  The only thing that matters is
 5   what Ms. Bennett says about that.
 6              MS. TRZASKOMA:  I --
 7              THE COURT:  So I realize that the
 8   allegation is in the complaint that Ms. Boylan said
 9   something first, but it's not relevant to whether
10   what Ms. Bennett is alleging is true or not; and
11   continually trying to shove that door open is not
12   going to work.
13              MS. TRZASKOMA:  No.  Your Honor, I am not
14   trying -- I would like the door to be slammed firmly
15   shut, and Ms. Schnell has left the door wide open.
16   And I apologize for overstating that the Court is
17   not denying us discovery, but has limited the
18   discovery such that we, Governor Cuomo is not going
19   to be in a position to be able to establish, you
20   know, in the event that Ms. Bennett gets up and says
21   Ms. -- I saw this tweet from Ms. Boylan, she said
22   this happened to her, and we have to be able to meet
23   that.  And I don't have any -- you know, we're
24   not -- this is still early discovery.  I don't have
25   a crystal ball.  I can't foresee the future, but
```

```
 1    I -- you know, I think it -- to allow Ms. Bennett
 2    even to make that statement or even to contemplate
 3    that she's going to be able to make -- or try to
 4    make that statement without giving Governor Cuomo
 5    discovery into that issue is very problematic.
 6               THE COURT:  Well, at this time, I have not
 7    been persuaded that requests 2 through 16 and 18 and
 8    19 are relevant and proportionate to the needs of
 9    this case.  So at this time, based on the record
10    before me, the only request to which Ms. Boylan is
11    going to be required to respond, and the parties
12    have been given guidance about how to meet and
13    confer about a scope for that response, are numbers
14    1 and 17.
15               If something changes and Mr. Cuomo thinks
16    that he has good cause to have me broaden the scope
17    of what I have permitted as to Ms. Boylan, you can
18    come back and show me that.  That's always the case.
19    But in -- for now, you have this transcript.  And if
20    something changes and you have good reason to come
21    back to me and show me that something more is
22    warranted, you can do so.  But we need to move on.
23               MS. TRZASKOMA:  I appreciate that,
24    Your Honor.
25               THE COURT:  We need to move on to the
```

1    Attorney General folks who have been very, very

2    patient.

3              So do you want to address -- to start with

4    that, Ms. Trzaskoma, the issues with respect to the

5    AG and, in particular, their suggestion that we stay

6    that while Judge Merkl is completing her

7    consideration of the motion for reconsideration?

8              MS. TRZASKOMA:  So as I -- so I don't think

9    that there's any reason for this Court to defer to

10   what is happening in the Trooper 1 action.  And as I

11   understand it, I don't -- that motion for

12   reconsideration was fairly limited to the July 2023

13   order on our motion to compel, which has -- you

14   know, is no longer relevant because what we're

15   talking about and what Judge Merkl is considering

16   now with respect to the documents from the AG's

17   Office is a completely different universe of

18   materials, much narrower.

19             And, you know, so I don't actually know

20   that Judge Merkl is considering the motion for

21   reconsideration, but the issues that the AG has

22   raised in any event, were never decided by

23   Judge Merkl's July 2023 order.  They are presenting

24   in this case in a completely different way, and I

25   think that we should move on to briefing those

1    issues.  They are, you know, complicated issues.

2    The Attorney General has claimed, you know,

3    sovereign immunity from any subpoena and has also --

4              THE COURT:  Let's just -- let's back way

5    up, though.

6              MS. TRZASKOMA:  Yes.

7              THE COURT:  Have there been any discussions

8    about what the AG may be willing to produce to you?

9              MS. TRZASKOMA:  Our understanding is the AG

10   is willing to produce nothing to us.

11             THE COURT:  All right.

12             Ms. Longley, is that the case?  Or is there

13   some universe -- and I know you had lengthy

14   discussions with Judge Merkl in the Trooper 1 case

15   about what narrow range of materials that the AG was

16   willing to explore.

17             To the extent that I'm right about that, is

18   there any universe of documents with respect to

19   Ms. Bennett; and you've just heard the lengthy

20   discussion about how we're trying to focus non-party

21   discovery on Ms. Bennett's allegations here.  Is

22   there anything that the AG has that it would be

23   willing to consider providing?

24             MS. LONGLEY:  Hi.  Yes, Your Honor.  Our

25   office is always willing to consider anything

1    reasonable and proportional and relevant to the case

2    if it will resolve the subpoena and not require us

3    to engage, continually engage in this burdensome

4    litigation.  We were willing to try that in

5    Trooper 1.  Unfortunately, it did not result in

6    resolving the subpoena.

7            We are -- you know, we -- I would say, as a

8    general matter we would -- we were open to a similar

9    approach to the Bennett subpoena; however, when we

10   said, are there any path forward where we give you

11   non-privileged materials that are tailored to the

12   complaint and the legal claims in the Bennett case,

13   the answer was, we want the interview memos, and

14   they will not agree to any resolution that doesn't

15   include interview memos.  And given the extensive

16   litigation we've had with them on multiple fronts,

17   we're not willing to give it piecemeal and just give

18   them some materials if it's not going to resolve the

19   subpoena.

20           So in Trooper 1, we did voluntarily give

21   them in an act of good faith -- in an opening act of

22   good faith, we said, here, we'll look at documents

23   that were collected by the investigators that

24   reference Trooper 1 by name.  And we believe you

25   could get these materials under the FOIL statute,

AMM TRANSCRIPTION SERVICE - 631.334.1445

1    which is the way the State has waived sovereign

2    immunity in the context of -- you know, as it would

3    relate to this case.

4            So we offered that.  We thought it was

5    reasonable.  It didn't go -- you know, it didn't go

6    as we would have liked it to go.  So I think in this

7    case, you know, we would be willing to do that if

8    Defendant Cuomo would agree that that would resolve

9    the subpoena and he wouldn't move to compel

10   compliance and seek our privileged material.

11           THE COURT:  So, Ms. Trzaskoma, is the

12   interview memo do or die?

13           MS. TRZASKOMA:  Yeah, that's what we're

14   seeking, Your Honor.  And we don't agree that they

15   are privileged.  And we don't agree that the

16   Attorney General's Office enjoys sovereign immunity

17   from federal subpoena.

18           And I don't -- you know, what we got in

19   Trooper 1 were four documents with Trooper 1's name

20   on them.  They were, like, telephone records or

21   something.  And, you know, it's not it -- it's not

22   the material that we're looking for.  We're looking

23   for prior statements by witnesses with information

24   relevant to Ms. Bennett's claims.

25           And so I don't think there's any point in

AMM TRANSCRIPTION SERVICE - 631.334.1445

```
 1    delaying.  I think, you know, we need to move on
 2    with briefing this.  And we just vehemently disagree
 3    on the law here.
 4            THE COURT:  Okay.  But how is Judge Merkl's
 5    ruling -- she quashed your subpoena in --
 6            MS. TRZASKOMA:  She did not quash it.
 7            THE COURT:  Well, she denied your motion to
 8    compel, I guess, so --
 9            MS. TRZASKOMA:  She did.  She found it was
10    too broad, and it has since been narrowed.  And she
11    now then directed the Attorney General's Office to
12    provide a privilege log of the interview memos,
13    which the AG's Office did.  Judge Merkl then
14    directed the AG's Office to provide her with those
15    interview memos for in camera review, which the
16    Attorney General did in late -- or, like, mid- to
17    late December.
18            I don't know how Judge Merkl -- what
19    Judge Merkl's plan is, but I don't think it involves
20    resolving the objections that the Attorney General's
21    Office has -- is asserting here, and including, you
22    know, sovereign immunity, so -- and the universe of
23    documents is different.  And --
24            THE COURT:  But it's the interview memo.
25    It's the same thing you're asking for here.  Why --
```

AMM TRANSCRIPTION SERVICE - 631.334.1445

1          MS. TRZASKOMA:  Well, it's a different
2     universe of interview memo.
3          It's a different universe of interview
4     memos.  I mean, look, our dispute with the Attorney
5     General has been going on for more than a year in
6     front of -- in the Trooper 1 action.  And, you know,
7     I don't know what to say, except I think -- I don't
8     think -- I think we have an independent lawsuit
9     here.  It is related, but it is not the same.  And
10    Judge Merkl, you know, she has indicated, as you
11    probably saw in the prior transcript, that she would
12    need additional briefing on the sovereign immunity
13    issue.  And that hasn't --
14         THE COURT:  Okay.  But why should we
15    be briefing it twice?
16         MS. LONGLEY:  Your Honor --
17         MS. TRZASKOMA:  We haven't briefed it.
18         MS. LONGLEY:  This is Serena from the AG's
19    Office.
20         I'd like to just jump in, if I can, to say
21    that the materials and the briefing that are at
22    issue right now and that Judge Merkl ordered a
23    privilege log and in camera review of are the exact
24    same category of materials that Cuomo is seeking in
25    the Bennett case.  And those two categories are

1   unredacted transcripts and interview memos.

2           And we have raised the same objections in

3   both cases to those categories of documents.  And

4   it, you know, I can't predict 100 percent when Judge

5   Merkl will rule, but based on her asking for in

6   camera review, it appears that she is at least

7   considering ruling on the privilege issue of the

8   interview memos and the unredacted transcript.

9           And it is our position that -- again, not

10  knowing the exact scope of her ruling, that it could

11  have some preclusive effect on Defendant Cuomo in

12  this case, and that it makes sense, given our

13  non-party status, given the state of affairs in the

14  Bennett case and where it is, you know, in

15  discovery, that it's appropriate to wait and see

16  what Judge Merkl does, and see if there is any

17  preclusive effect or narrowing or limiting of the

18  issues before we have to go through the burden as a

19  non-party of litigating the same objections with

20  Defendant Cuomo in the Southern District.

21          THE COURT:  Okay.  Thank you.

22          Ms. Trzaskoma?

23          MS. TRZASKOMA:  May I just be heard briefly

24  on that, Your Honor, because I don't -- because it's

25  not -- I don't think that's entirely accurate.

AMM TRANSCRIPTION SERVICE - 631.334.1445

```
 1                THE COURT:  Yes.  Go ahead.
 2                MS. TRZASKOMA:  So --
 3                THE COURT:  I mean, you don't know whether
 4      it's accurate or not.  I mean -- go ahead.
 5                MS. TRZASKOMA:  Yeah.
 6                Well, so Ms. Longley is correct that the
 7      types of documents we are seeking in both cases,
 8      interview memos, unredacted transcripts, that's the
 9      same.  What's different are the, you know, the, kind
10      of, like, the buckets of those.
11                So in the Trooper 1 action, for example, we
12      narrowed our request to all of the interview memos
13      involving any current or former member of the New
14      York State Police and any interview memo of any of
15      the ten other claimants who are in Trooper 1's
16      complaint.
17                And, arguably, most of that material is not
18      relevant to Ms. Bennett's claim, particularly if
19      she's not planning to rely on Trooper 1.
20                THE COURT:  What are you seeking -- which
21      memos are you seeking here?
22                MS. TRZASKOMA:  And here, we're seeking
23      memos of executive chamber employees, current and
24      former who were interviewed, since that relates to
25      the environment, the work environment at the
```

1    Executive Chamber, and any interview memos or

2    unredacted transcripts that mention Ms. Bennett.

3           THE COURT:  With that narrowing,

4    Ms. Longley, does it change anything about the

5    Attorney General's position?

6           MS. LONGLEY:  No, Your Honor, it doesn't.

7           And I will say that we heard earlier

8    Ms. Trzaskoma talk about that, yes, what she wants

9    to do here is re-litigate the OAG report.  And I'll

10   just say this was an OAG investigation into sexual

11   harassment by the governor in the Executive Chamber.

12   And so by saying we're only seeking interview memos

13   of current or former executive chamber employees,

14   that doesn't really narrow things very much at all.

15   It's almost all of the witnesses.

16           So it may look on paper like a narrowing.

17   It's not a meaningful narrowing.  And it really goes

18   to, again, what we heard before is that -- and this

19   is exactly what Cuomo argued in Trooper 1

20   unsuccessfully, which is that he wants to

21   re-litigate the OAG report.

22           And if I can go to this concept that was

23   brought up about retaliation, I just want to put on

24   the record that whether or not -- you know,

25   retaliation as a legal matter, does not depend on

1    the validity of the underlying complaint.  So it

2    doesn't depend on whether there was sexual

3    harassment or not, it doesn't depend on if the

4    investigation was thorough.

5          You know, Defendant Cuomo wants to pursue

6    those things for his own political rehabilitation.

7    It's not about the actual legal claim for

8    retaliation, which is just did the person engage in

9    protected activity; and then was there, you know, a

10   retaliatory act in response to engaging in the

11   protected activity.  You don't need to re-litigate

12   the OAG report in order to deal with the retaliation

13   claim as a matter of law.

14         So I think we're getting far afield, and

15   we're talking also about, you know, the scope and

16   the relevance of certain interview memos here as

17   opposed to Trooper 1, but I don't want to lose sight

18   of the fact that we've also asserted a sovereign

19   immunity defense in both cases; the briefing of that

20   is fully submitted.

21         You know, Judge Merkl may want more

22   briefing.  But if she gets to that, I believe it

23   would happen before anything would happen in the

24   Bennett case.  Again, I think it makes sense to see

25   how things play out in the Eastern District, where

1    we're litigating the exact same issues, the exact
2    same sovereign immunity defense.  Relevance also
3    came up.
4           So everything is really still on the table
5    there.  They've sought reconsideration of
6    Judge Merkl's denial of their motion to compel,
7    which she denied on relevance and burden grounds and
8    proportionality, but she hasn't reached the other
9    issues.  She may reach them.  It seems like she is
10   going to reach at least some of them.
11          And really what Defendant Cuomo is trying
12   to do here is get another do-over.  And he even
13   indicated that in the last conference before
14   Judge Merkl, where we brought up the fact that he's
15   now subpoenaing our lawyers who were deputized to
16   carry out a government investigation under Executive
17   Law 63(8).  And he has a novel theory that he can --
18   you know, if he can't get the materials from us
19   because of sovereign immunity, he can just subpoena
20   our deputized lawyers to get the materials that way.
21   And --
22          THE COURT:  We don't need to get into that
23   today.
24          MS. LONGLEY:  Okay.
25          THE COURT:  That's not before me.

AMM TRANSCRIPTION SERVICE - 631.334.1445

```
 1              But what if the subpoena were limited to
 2    interview memos, the interview memos for Ms.
 3    Bennett's interview and any interview memos that
 4    reference Ms. Bennett, as well as any documents that
 5    the AG received in connection with Ms. Bennett's
 6    allegations, whether from her or from somebody else?
 7              What if it were limited that way; would the
 8    AG still stand on the sovereign immunity objection?
 9              MS. LONGLEY:  Yes, Your Honor.  I think
10    because you're going to any interview memos.
11              And, I'm sorry, I didn't catch the second
12    category.  You said plaintiff's interview memo.  And
13    then who were the other -- what were the other
14    interview memos?
15              THE COURT:  The interview memos that
16    discussed -- just the portions of any interview
17    memos that discussed Ms. Bennett.
18              MS. LONGLEY:  Yeah, so we have asserted
19    privilege -- in addition to sovereign immunity,
20    we've asserted privilege over the entirety of the
21    interview memos.  Plaintiff doesn't have her own
22    interview memo.  Nobody has their interview memo.
23    And there's a reason for that.
24              THE COURT:  That's the review that
25    Judge Merkl is doing, though.  We're not having two
```

1  magistrate judges do two privilege reviews.  It's
2  bad enough that one of us has to do it.  And I feel
3  badly that it's Judge Merkl bearing the brunt of it.
4  So, you know we're not going to -- I don't want to
5  risk conflicting privilege decisions either.
6         MS. LONGLEY:  Which is why it makes sense
7  to wait for her to rule on it before, you know, the
8  same thing gets submitted to Your Honor.
9         And I will say that the privilege issues
10  are really important to this office because there's
11  attorney-client privilege in there.  There's
12  attorney work product.  But the biggest thing is
13  probably law enforcement privilege on those
14  documents.  And the documents are full of
15  information about people that's not public,
16  cooperating witnesses.
17         And as we mentioned briefly in our letter,
18  I think it's in footnote 1, which has even been
19  borne out more recently, there has been from the
20  beginning, there were credible fears by cooperating
21  witnesses of retaliation that has been -- there's
22  been a lot in the press.  There's a lot in our
23  briefing in Trooper 1.
24         Just last week, the First Department
25  reinstated a retaliation claim brought by a former

1    executive chamber employee who claimed -- alleged

2    that he was fired because he spoke to the OAG

3    investigators and corroborated sexual harassment by

4    Governor Cuomo.  And that was just reinstated.  And

5    this is why, like, you know, it is very important to

6    our office not to be disclosing to the very person

7    who they're -- who they have credible fears of

8    retaliation exactly what they said.  And it's really

9    not germane to Ms. Bennett's lawsuit here.  It's not

10   relevant, it's not proportional, and there are real

11   privacy interests, privilege interests, sovereign

12   immunity interests.

13          So I think if you weigh -- if you look at

14   the big picture and all the interests on either

15   side, there really is not a compelling case to --

16   for us to consider providing them voluntarily.

17          THE COURT:  Okay.  All right.

18          Let's circle back to the timing with

19   respect to Ms. Boylan because it's going to

20   influence the timing with respect to the AG

21   subpoena.

22          Is two weeks enough time for the parties to

23   meet and confer and be prepared to report to me

24   whether they've been able to reach an agreement with

25   respect to the search terms that Ms. Boylan will

1    implement?

2          Ms. Perry, is that achievable by

3    January 18th?

4          MS. PERRY:  I'm sorry, Your Honor.  I was

5    on mute.  By the 18th?  Was that for me?

6          THE COURT:  Yeah.  Well, the question is

7    for you, and it's --

8          MS. PERRY:  Yes.

9          THE COURT:  -- whether two weeks is enough

10   time for you to meet and confer with Ms. Trzaskoma

11   and Ms. DeRosa's counsel about the search terms that

12   Ms. Boylan would implement using the guidance that I

13   gave earlier?

14         MS. PERRY:  Yes, Your Honor.  That's more

15   than enough time.

16         THE COURT:  And what I would be doing is

17   asking the parties to report to me then as to

18   whether they've been able to reach an agreement or

19   if there's still a dispute.  If there's still a

20   dispute, then we'll have another conference.  And

21   then, I guess, why don't we in an abundance of

22   caution, I'll give you a date for another conference

23   the week after that.

24         How is -- you're on the west coast, right,

25   Ms. Perry?

```
 1              MS. PERRY:  No, Your Honor.  I'm in
 2  New York.
 3              THE COURT:  Oh, okay.  10 a.m. on Monday,
 4  January 22nd for a conference.
 5              MR. MORVILLO:  Your Honor?
 6              THE COURT:  Yes?
 7              MR. MORVILLO:  This is Greg Morvillo.
 8              Mr. Gruppuso and I are in a Rule 104
 9  hearing that day in New Jersey on the 22nd, 23rd and
10  24th.
11              THE COURT:  Okay.  How about 3 o'clock on
12  the 25th?
13              MS. TRZASKOMA:  That's good for me.
14              MR. MORVILLO:  That works.
15              THE COURT:  All right.
16              MS. PERRY:  Actually --
17              THE COURT:  Who is that a problem for?
18              MS. PERRY:  Yeah, I'm going to be out of
19  town for a board meeting.
20              THE COURT:  How about the next day at
21  3 o'clock; Friday the 26th.
22              MS. PERRY:  I'll still be at the board
23  meeting, but I could step out.
24              THE COURT:  Okay.  All right.
25              So 3 p.m. on the 26th, then we'll speak.
```

1    And what else, since we're not meeting until

2    Friday --

3             MS. TRZASKOMA:  Your Honor, this is

4    Ms. Trzaskoma.  I am not available on the 26th at 3.

5    I could do earlier that day.

6             THE COURT:  I'm committed on another case

7    earlier that day.  How about the 29th?

8             MS. TRZASKOMA:  The afternoon of the 29th

9    works.

10            THE COURT:  Okay.

11            Anybody else have a problem with the

12   afternoon of the 29th?

13            MS. PERRY:  I do not.

14            THE COURT:  Okay.  All right.  2 o'clock on

15   the 29th.

16            Ms. Longley, I'll get back to you, but --

17   because I will want to by that time see where things

18   have come out with respect to Judge Merkl.  And

19   we'll make a decision at that point whether we will

20   have to do motion practice and, if so, what the

21   scope will be.

22            MS. LONGLEY:  Okay, Your Honor.  Sorry.  So

23   are you asking about my availability on that day?

24            THE COURT:  Yes.

25            MS. LONGLEY:  Okay.  Sorry.  Could you --

```
 1   do you remind repeating the day?
 2              THE COURT:  Yes.  It's Monday, January
 3   29th, at 2 p.m.
 4              MS. LONGLEY:  That should work.
 5              THE COURT:  Okay.  Great.
 6              All right.  So we'll ask the parties to
 7   meet and confer between now and then.  And by
 8   January -- since we're not meeting until the 29th,
 9   I'll give you until the 24th to provide me with a
10   joint status letter with respect to the parties
11   meeting and conferring and hopefully reaching an
12   agreement with respect to Ms. Boylan.  And then
13   we'll plan to discuss at that point whether any
14   developments in the Trooper 1 case have occurred
15   and, if so, how that will impact the scope of any
16   briefing that we would need here with respect to the
17   subpoena to the Attorney General; okay?
18              MS. TRZASKOMA:  Okay.  Your Honor, this is
19   Theresa Trzaskoma.
20              Sorry.  I appreciate the Court's patience.
21   I just have two issues that I want -- two points I
22   want to make in response to Ms. Longley because --
23   so the record is clear.
24              THE COURT:  Okay.
25              MS. TRZASKOMA:  First of all, we do have
```

```
 1    Ms. Bennett's interview memo, which Governor Cuomo
 2    received in the context of discovery in a criminal
 3    investigation, in a criminal case that was
 4    dismissed.
 5            THE COURT:  Okay.
 6            MS. TRZASKOMA:  It's redacted, as I
 7    understand all of the interview memos are, for
 8    information that arguably is -- contains some sort
 9    of attorney impressions.
10            And the second -- so I just want to raise
11    that because I think it's not the case that, you
12    know, those interview memos have been kept in a
13    lockbox because they're privileged.
14            And the second issue is that the privilege
15    review that Judge Merkl is doing, there is -- I
16    think there is actually very little overlap between
17    what Judge Merkl is reviewing right now and what
18    Your Honor would be reviewing.  I mean, the
19    privilege log, which I'm -- which the Attorney
20    General's Office produced, the vast majority of the
21    interview memos are from troopers or former troopers
22    and other complainants, so --
23            THE COURT:  Right, but she's reviewing for
24    the same privileges, though.  So that's the point --
25    that's my point about not having to do -- make two
```

AMM TRANSCRIPTION SERVICE - 631.334.1445

```
 1   magistrate judges do two privilege reviews.
 2              I understand there may be different
 3   documents, but she's reviewing for the same
 4   assertions of privilege, of attorney-client work
 5   product and law enforcement.  So it's the same.
 6   It's the same nature that she's considering.  I
 7   realize it may be a different memo, you know, a
 8   different name on the memo, but it's the same
 9   privileges.
10              MS. TRZASKOMA:  Well, I guess this goes --
11   yeah, I mean, it may be that there's some
12   combination of privilege and relevance.  I don't
13   know what her review is encompassing, but I just --
14   I wanted to make clear that there -- that it's a
15   different universe of materials in this case, and
16   also that the interview -- many -- not many -- a
17   handful of interview memos including Ms. Bennett's,
18   have been disclosed, and we have them, so ...
19              THE COURT:  See, that will go to weight.
20   That will go to -- if there is a privilege, whether
21   there's a waiver, which would be addressed in the
22   context of any briefing if we have to do that, so --
23              MS. TRZASKOMA:  Okay.  Thank you,
24   Your Honor.
25              THE COURT:  Yes.
```

```
 1                    MS. LONGLEY:  Your Honor?

 2                    THE COURT:  Yes?

 3                    MS. LONGLEY:  It's Serena Longley from the

 4       AG's office.  Can I just, you know, comment on the

 5       interview memos that Cuomo has?

 6                    He got them through criminal discovery.  He

 7       did not get them from us.  And I look forward to --

 8       you know, we can certainly brief the Court if this

 9       gets to Your Honor about why the privilege has not

10       been waived on that, but it hasn't, and, you know,

11       he got those in the context of criminal discovery in

12       New York State Criminal Court, which is very

13       different standard than is in place here in the

14       civil court.

15                    THE COURT:  I understand.  I'm not making

16       any ruling, and nobody should construe anything that

17       I've said here today, things that are not before me

18       and issues that have not been briefed, we're not

19       making a finding on those.  So that's the reason for

20       deferring this and having, hopefully, a clearer

21       discussion about that.

22                    Again, I'm just really trying to minimize

23       the number of issues that have to be briefed because

24       at a -- it does seem -- from what I understand, and

25       I've read most, if not all, of what's been presented
```

1  to Judge Merkl, obviously, not the documents
2  themselves, but I've read the transcripts of all of
3  her discussions with all of you, and a lot of the
4  issues are overlapping, and it's burdensome for the
5  parties, and it's burdensome for two courts to have
6  to resolve the same issue in multiple places,
7  multiple times.  So that's why I'm trying to
8  streamline this, so that if we do have briefing,
9  it's going to be on a quick turnaround.
10        I mean, the other issue that we haven't
11  talked about, but we'll have to talk about on the
12  29th, is that the fact discovery cutoff is the end
13  of February.  Clearly, we're not going to make that.
14  So we're going to have to assess -- the parties
15  should be prepared to discuss at that conference,
16  you know, what's still remaining and, you know,
17  what, if any, additional time is going to be needed.
18  So we don't have to get to that today, but, you
19  know, it's out there.  All right.
20        Ms. Schnell, for Ms. Bennett, anything else
21  you would like to raise today while we're assembled?
22        MS. SCHNELL:  No, Your Honor, other than we
23  have been unsuccessful in seeking deposition dates
24  from the defendants.  And if that has not been
25  resolved by the 29th, we would like to address that

AMM TRANSCRIPTION SERVICE - 631.334.1445

```
1    at that conference, Your Honor.
2              THE COURT:  Well, what we'll do is we'll
3    let anybody who has something to say, you need to
4    get a letter to me by January 24th at 5 p.m.  And
5    that's your deadline.  I'm not taking -- nobody is
6    going to be able to raise any issues or pop up or
7    throw something else at me after 5 o'clock on
8    January 24th, so ...
9              MS. SCHNELL:  Absolutely, Your Honor.
10   That's --
11             THE COURT:  If you want to have it be
12   heard -- if you want me consider it at the January
13   29th conference, that's the deadline.
14             MS. SCHNELL:  We will absolutely abide by
15   that, Your Honor.  Not a problem.
16             THE COURT:  Okay.  Thank you.
17             Ms. Trzaskoma, anything else you would like
18   to cover today?
19             MS. TRZASKOMA:  No, Your Honor.  Thank you.
20             THE COURT:  All right.  Thank you.
21             Ms. Sulkowski?
22             MS. SULKOWSKI:  Nothing, Your Honor.  Thank
23   you.
24             THE COURT:  And Ms. Longley?
25             MS. LONGLEY:  Yes.  One thing, Your Honor.
```

AMM TRANSCRIPTION SERVICE - 631.334.1445

```
 1              In the event there are any developments in
 2      the Trooper 1 case, as it relates to the subpoena to
 3      the Attorney General's Office, would you like us to
 4      provide a, you know, update by letter to the Court
 5      whenever that happens?
 6              THE COURT:  Yes, I do.  It doesn't have to
 7      be immediate, but you can --
 8              MS. LONGLEY:  Yeah.
 9              THE COURT:  -- do it in your January 24th
10      letter.
11              MS. LONGLEY:  Okay.  And in the unlikely
12      event there's a ruling between the 24th and the
13      29th, I would think Your Honor would want us to
14      write anyways to let you know.
15              THE COURT:  You can certainly let me know
16      before then.  Just not after then.
17              MS. LONGLEY:  Okay.  Thanks.
18              THE COURT:  All right.  Either of the other
19      defendants, Ms. DesRosiers or Ms. Mogul, anything
20      else you want to raise?
21              It's nothing or either that they're on
22      mute.  Okay.
23              MR. DELIKAT:  No, Your Honor, for Defendant
24      Mogul.
25              THE COURT:  Okay.  Thank you.
```

AMM TRANSCRIPTION SERVICE - 631.334.1445

```
1                 And for Ms. DesRosiers?
2                 MR. SCHWAB:  Nothing to add, Your Honor.
3                 THE COURT:  Okay.  All right.
4                 Thank you very much, everyone.  You'll see
5      a post-conference order from us.  And we'll be
6      adjourned.
7                 Thank you.  Have a good afternoon.
8
9                            0o0
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1
 2                    C E R T I F I C A T E
 3
 4        I, Adrienne M. Mignano, certify that the
 5   foregoing transcript of proceedings in the case of
 6   Bennett v. Cuomo, et al; Docket #22CV7846 was
 7   prepared using digital transcription software and is
 8   a true and accurate record of the proceedings.
 9
10
11   Signature  _____
                    Adrienne M. Mignano
12                 ADRIENNE M. MIGNANO, RPR
13
14   Date:      January 6, 2024
15
16
17
18
19
20
21
22
23
24
25
```