# SHER TREMONTE LLP

January 23, 2024

**BY ECF**

Honorable Sarah L. Cave
United States Magistrate Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

     **Re:**    *Bennett v. Cuomo, et al.*, No. 22 Civ. 7846 (VSB) (SLC)

Dear Judge Cave:

     We write pursuant to the Court's Individual Practice II(C)(2) to request another discovery conference regarding Governor Cuomo's subpoenas to nonparty Lindsey Boylan. In the January 4, 2024 Order concerning those subpoenas, the Court held that Governor Cuomo had not yet established that certain requests were "relevant and proportional to the needs of this case." ECF No. 164. In so concluding, the Court did not have an opportunity to consider additional information we recently received from Plaintiff Charlotte Bennett during discovery in this case. ECF No. 163.

     As explained further below, Ms. Boylan is a critical witness for Governor Cuomo's defense because Ms. Bennett's story around her interactions with Governor Cuomo shifted dramatically <u>after</u> Ms. Bennett began communicating with Ms. Boylan in early December 2020. Ms. Boylan lied about her own experiences to cajole others, including Ms. Bennett, to join Ms. Boylan's public attacks on Governor Cuomo. It is crucial that Governor Cuomo obtain evidence concerning Ms. Boylan's false allegations to establish that Ms. Boylan used those falsehoods to manipulate Ms. Bennett.

     In her Complaint, Ms. Bennett spins a false narrative about her experience working in the Executive Chamber, including that: (1) Governor Cuomo's attention made her "uncomfortable," *see, e.g.*, ECF No. 1 at ¶ 23; (2) Governor Cuomo pressured her into discussing her alleged sexual assault experiences, *see, e.g., id.* ¶¶ 2, 44-50; (3) she was unhappy with her job because it was a hostile work environment, *see, e.g., id.* ¶ 2; (4) she sought a transfer because Governor Cuomo was sexually harassing her, *see, e.g., id.* ¶¶ 3, 81-82, 84; and (5) the transfer was to an "inferior" position and was involuntary*, see, e.g., id.* ¶¶ 3, 82. <u>These allegations are not true</u>.

     Discovery, including contemporaneous video recordings by Ms. Bennett[1] – ***recordings that Ms. Bennett did not disclose to the OAG during the investigation*** – refute Ms. Bennett's sexual

---

[1] Documents referenced in this letter are attached hereto. Videos referenced in this letter may be accessed at the following link: ██████████████████████████████████████████████████████ ("Video Link"). We note that Ms. Bennett designated the videos, which she produced without dates, as Confidential. We dispute that the videos are entitled to such protection, at least in their entirety. The videos cited in this letter, while they undercut Ms. Bennett's claims, contain minimal confidential personally sensitive information. Thus, while we are filing the information under seal, we respectfully request that the Court direct us to file an unredacted version of

Hon. Sarah L. Cave
January 23, 2024
Page 2 of 4

harassment allegations in numerous material respects, and in Ms. Bennett's own voice and in her own words.

- Ms. Bennett deliberately sought Governor Cuomo's attention and delighted when she received it. ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████ Video Link CB-00007856.

- While Ms. Bennett complained about ██████████████████████ her principal grievance was that her role was too administrative. ████████████████████████████████████ ███████████████████████████████████████████████████████████████ █████████████████████████████, even though, as she acknowledges in her Complaint, her predecessor who sat in the exact same seat and performed the exact same tasks had been a man.

- Ms. Bennett deliberately engaged Governor Cuomo in conversation in January 2020 about her prior sexual assaults, and she did so because it was a matter of personal and professional importance to her, not because, as she now alleges, Governor Cuomo "subjected" her to "invasive questions" about her "history as a sexual assault survivor." ECF No. 1 at 13. ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ And while Ms. Bennett now alleges that the conversation was harassing, she declared unequivocally at the time that ████████████████ Video Link CB-00007866.

- Ms. Bennett intentionally sought Governor Cuomo's assistance with the draft of the speech she was giving at Hamilton College in May 2020. CB-00005258. And though she was upset about that conversation, it is not, as she currently alleges, because the conversation was sexually harassing but because she perceived Governor Cuomo's feedback as critical and overbearing. CB-00005809-10.

- To the extent Ms. Bennett was unhappy in her job in the Executive Chamber, it was for reasons having nothing whatsoever to do with Governor Cuomo. Contrary to Ms. Bennett's current allegations, Governor Cuomo was the only thing Ms. Bennett apparently liked about her job. As Ms. Bennett described it at the time, ███████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████

this letter on the public docket. The public has a right to see these videos to understand that Ms. Bennett's public claims against Governor Cuomo are demonstrably false and that the OAG's credibility determination of Ms. Bennett was based on a woefully incomplete record. Further, the public should know that there is a firm basis for Governor Cuomo's subpoenas to Ms. Boylan, particularly since Ms. Boylan has characterized such routine civil discovery demands as harassment.

Hon. Sarah L. Cave
January 23, 2024
Page 3 of 4

███████████████████████████████████████████████████████████

Video Link CB-00007866; Video Link CB-00007867.

- Ms. Bennett was not, as she currently alleges, transferred to another role in June 2020 as retaliation for alleging sexual harassment by Governor Cuomo. To the contrary, Ms. Bennett had been seeking a position in health policy since <u>as early as January 2020</u>. CB-00000882-883. And she was thrilled with her new role as a Senior Policy Advisor, including because ████████████████████████████ in contrast to the demanding 24/7 expectations of the Executive Chamber that Ms. Bennett found intolerable. Video Link CB-00007868.

Ms. Bennett began to recast her entire experience working in the Executive Chamber as sexual harassment by Governor Cuomo after she started speaking with Ms. Boylan in early December 2020.[2] Discovery thus far shows that Ms. Bennett was deeply influenced by Ms. Boylan. It also shows that Ms. Boylan manipulated Ms. Bennett, including by lying to Ms. Bennett about her own experience with Governor Cuomo. Among other things, during their early conversations, Ms. Boylan told Ms. Bennett a story about how Ms. Boylan met Governor Cuomo, saying (falsely) that ██████████████████████████████████. Video Link CB-00007887. ***This never happened***. Rather, it appears Ms. Boylan saved this made-up story specifically for Ms. Bennett, fabricating it to manipulate Ms. Bennett (███████████). That tactic appears to have worked, along with Ms. Boylan's promises ████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ████████████████████████████████████████████

Thus, Ms. Boylan is a critical witness to how, when, and why Ms. Bennett's story morphed from "████████████" to "it was harassment." And it is essential to Governor Cuomo's defense to show that Ms. Boylan's own manufactured allegations of sexual harassment against Governor Cuomo heavily influenced a vulnerable Ms. Bennett, who was clearly seeking to become part of Ms. Boylan's political community and platform, and ultimately led to Ms. Bennett's allegations. Thus, the information Governor Cuomo seeks from Ms. Boylan – including documents that will reveal how Ms. Boylan shaped her own story, how she lied, and how she threatened and cajoled and manipulated witnesses – is highly relevant and proportional to the needs of this case.[3]

---

[2] While Ms. Bennett may have suggested previously to a friend that she was offended by her June 2020 conversation with Governor Cuomo, that conversation occurred in the context of the prior discussions she had voluntarily and deliberately initiated. Her current characterizations of every prior interaction with Governor Cuomo as sexual harassment post-date her conversations with Ms. Boylan and are contradicted by discovery.

[3] Judge Merkl recently ordered Ms. Boylan to produce documents concerning Ms. Boylan's own allegations in the Trooper 1 Action. *See* Discovery Order, *Trooper 1 v. N.Y. State Police*, 22-cv-00893 (LDH) (TAM), ECF No. 218 (E.D.N.Y. Jan. 16, 2024).

Hon. Sarah L. Cave
January 23, 2024
Page 4 of 4

Respectfully submitted,

*/s/ Theresa Trzaskoma*

Theresa Trzaskoma

Attachments



Steph –

I was asked to be the keynote speaker at a (now virtual) graduation celebration for my alma mater. I wanted to share with the Governor – as a follow-up to a conversation we had several months ago. And to make sure his mention is okay. It would mean the world to me if you shared this with him.

Char

Messages - Alex Bennett & Dad & Mom



5/15/20, 8:16 AM

Gov asked about you guys

And tried to rewrite my speech

Exported from iPhone (G6TYX2XGKPHC) on 6/4/21, 8:54 PM with iMazing by DigiDNA. Database date when extracted: 6/4/21, 5:24 PM

Page 63 of 75

CB-00005809

Messages - Alex Bennett & Dad & Mom



**Dad**
That's nice.  Did you let him ?

Eh  He wants me to add stuff  I probably will  He has good ideas but he's just a know it all

Or rather, his advice was just repeating back to me my own speech but in his own words and calling it his

Lol

He's glad you got tested

**Dad**
That's funny.

You can tell him we think he's doing a great job. Might be losing his edge though.  He said he was would be back in TRMS as he's a big fan.  She says "don't tell your brother".   He smiled , but should have said " I'll be telling him at 10:01"

**Mom**
What the heck did he want to add to your speech?   So glad you showed him.

Hahahah

**Mom**
I started taking that covid course.  😄

Yeah he seems worried about losing his edge. Asked me what he was doing differently than before

Omg! Did you do your interview?

**Alex Bennett**
What did you say he was doing differently

**Mom**
What did you say?     No interview yet

He thinks nothing  He's wondering why people may be losing interest

Was wondering what I saw from my pov

Exported from iPhone (G6TYX2XGKPHC) on 6/4/21, 8:54 PM with iMazing by DigiDNA. Database date when extracted: 6/4/21, 5:24 PM

Page 64 of 75

CB-00005810

iMessage
1/30/20, 11:50 AM

Hey! It's Charlotte

So I've gone back and forth on reaching out to you because I want to be very careful with how I approach this - considering I don't have the "blessings" of senior staff/they aren't ready for me to leave.... but I'm looking for jobs right now (no one else in chamber knows, not even my team). My background is in public health so I thought it would be worth reaching out to you to pick your brain a little bit

I came across a really cool position at Drug Policy Alliance and some other similar positions at public health advocacy orgs in NY. I'm wondering if you know anyone at DPA (just applied today)? Would you be up to grab a drink next week when I'm in Albany if you have time? Or want to hop on the phone with me for a few minutes? And of course please don't tell anyone - kind of terrified of this getting out so I've avoided sharing w chamber folks

Yes! 100 percent. Let's get a drink. And I will not say a word to anyone—promise. Know how this chamber life is

You're the best. Thank you thank you

Let's! Which day works for you?

I can be flexible so long as work doesn't ruin my life (which it usually does) when are you up?

So classic, when chamber ruins everything you plan

Does Monday work? I'll be up Monday - Wednesday but might be leaving before the end of the day on Wednesday. I can probably extend my stay or come back up though so I'm flexible too

1/30/20, 3:34 PM

Ok let's aim for Monday!

Perfect!! Thank you! Looking forward to it

2/3/20, 3:06 PM

Hey there! Wanted to check in and let you know that I'm around tonight still. But if the constituency meetings this week threw a wrench in your week we can look for another time that works. No sweat

I think my night is officially ruined lol

Can we tentatively aim for tomorrow?

Or whenever you are up next. Or can do a call in interim.

Yes definitely. I'll be around tomorrow night but we can 100% meet next time I'm up (prob next week or the week after so just around the corner). No rush on this, you are being put through the wringer right now lol

Also let me know how I can help w the health docs I sent you. Want to help so just say the word

CB-00000882

3/8/20, 9:19 AM

Just sent the chart sorry the format is weird on my MacBook

No that was perfect

So great ty

Welcome!

3/8/20, 12:49 PM

When is the next batch of #s available? Think we will get any updates before his 145 interview?

I had weird phrasing not before 145

All good :)

4/8/20, 9:22 AM

Hey there - deeply bored these days (no book...) so if you need an extra set of hands somewhere please let me know. Happy to help where I can be useful. Want to do my part. Hope you're surviving okay

Yes!!! This is amazing. I will happily pull you in

Loved "Yes!!! This is amazing. I will happily pull you in "

Yes!!!!!! 🙏 🙏 🙏

6/12/20, 6:15 PM

Just talked to Jill if you're still floating around! Otherwise we can talk m Sun or Mon. I'll still be in Alb

6/15/20, 9:28 AM

Let's connect today! I'll be in a little late today. Working from home this am bc I have a maintenance guy coming to my house

Perfect! Let me know when you're good to chat and I'll come by

6/15/20, 2:53 PM

What's the rest of your day look like?

6/15/20, 5:39 PM

Sorry! Stupid with meetings through 7. Are you ok if I call you tonight? Are you in albany tomorrow?

No worries! I'll be in Alb tomorrow - what's your am like? Down for a call tonight but we can delay until tomorrow if that's easier too. Whatever works

My am is pretty open! I'm free 10:30 until the presser. I'm going to give you access to my calendar so you can start seeing what meetings are about and we can discuss which ones it makes sense for you to join!

CB-00000883

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X

TROOPER 1,

                 Plaintiff,

        -against-

NEW YORK STATE POLICE and
ANDREW CUOMO,

               Defendants.

------------------------------------------------------------X

**DISCOVERY ORDER**

22-CV-893 (LDH) (TAM)
23-MC-1587 (LDH) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

On February 17, 2022, Trooper 1 ("Plaintiff"), a member of former New York Andrew Cuomo's Protective Service Unit ("PSU"), initiated this action alleging that former Cuomo sexually harassed her and other state employees. (*See* Compl., ECF No. 1, Docket No. 22-CV-893.) The amended complaints named as Defendants the New York State Police ("NYSP"), former Andrew Cuomo ("Cuomo"), Melissa DeRosa ("DeRosa"), and Richard Azzopardi ("Azzopardi") (collectively referred to as "Defendants"). (*See* First Am. Compl. ("FAC"), ECF No. 7; Second Am. Compl. ("SAC"), ECF No. 71.) This Order assumes familiarity with the factual and procedural history of this case.

On January 11, 2024, the Court held a motion hearing on myriad discovery disputes concerning two non-party witnesses, Lindsey Boylan and Charlotte Bennett, related to various motions to compel and quash, and a motion for a protective order filed by Plaintiff, seeking to quash certain subpoenas due to concerns based on Federal Rule of Evidence 412. Following oral argument, the Court orders as follows with regard to the various motions and disputes relevant to Ms. Boylan.

## I.  Legal Standard

### A.  Relevance & Proportionality

Federal Rule of Civil Procedure 26(b)(1), as amended on December 1, 2015, recognizes that "[i]nformation is discoverable . . . if it is relevant to any party's claim or defense and is proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment; *see Sibley v. Choice Hotels Int'l*, No. 14-CV-634 (JS) (AYS), 2015 WL 9413101, at *2 (E.D.N.Y. Dec. 22, 2015) (observing that "the current version of Rule 26 defines permissible discovery to consist of information that is, in addition to being relevant 'to any party's claim or defense,' also 'proportional to the needs of the case'") (citation omitted); *see also Robertson v. People Magazine*, No. 14-CV-6759 (PAC), 2015 WL 9077111, at *2 (S.D.N.Y. Dec. 16, 2015) ("[T]he 2015 amendment [to Rule 26] does not create a new standard; rather it serves to exhort judges to exercise their preexisting control over discovery more exactingly."). The Court has "broad discretion" in determining relevance for discovery purposes. *Michael Kors, L.L.C. v. Su Yan Ye*, No. 18-CV-2684 (KHP), 2019 WL 1517552, at *2 (S.D.N.Y. Apr. 8, 2019). The Court also "has wide latitude to determine the scope of discovery." *Broidy Capital Mgmt. LLC v. Benomar*, 944 F.3d 436, 446 (2d Cir. 2019) (quotation marks omitted); *see In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 982 F.3d 113, 125 (2d Cir. 2020) (recognizing courts have "broad discretion in managing discovery"). "The party seeking discovery must make a *prima facie* showing that the discovery sought is more than merely a fishing expedition." *Perry v. The Margolin & Weinreb Law Group LLP*, No. 14-CV-3511 (JS) (AKT), 2015 WL 4094352, at *2 (E.D.N.Y. July 7, 2015).

Federal Rule of Civil Procedure 45(d)(2)(B)(i) provides, in pertinent part, that "on notice to the commanded person, the serving party may move the court . . . for an order

compelling production or inspection" pursuant to a subpoena. Subsection B of Rule 45(d)(2) further provides that "[t]hese acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." Fed. R. Civ. P. 42(d)(2)(B)(ii). At the same time, Rule 45 provides that on a timely motion, "the court for the district where compliance is required must quash or modify a subpoena" if it "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). The movant bears the burden of persuasion in a motion to quash a non-party subpoena. *United States v. Int'l Bus. Mach. Corp.*, 83 F.R.D. 97, 104 (S.D.N.Y. 1979).

Under Rule 45, a subpoena should be quashed where it "requires disclosure of privileged or other protected matter" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)–(iv). To determine whether a subpoena imposes an undue burden, "courts weigh the burden to the subpoenaed party against the value of the information to the serving party by considering factors such as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Citizens Union of City of New York v. Att'y Gen. of New York*, 269 F. Supp. 3d 124, 138 (S.D.N.Y. 2017) (quotation marks omitted). Here, the Court takes special notice of the fact that Ms. Boylan is not a party to this case in considering the proportionality of the discovery requests made of her and regarding her. *Cf. Henry v. Bristol Hosp., Inc.*, No. 13-CV-826 (SRU), 2020 WL 1158464, at *1 (D. Conn. Mar. 10, 2020) ("[C]ourts give special weight to the burden on non-parties of producing documents to parties involved in litigation." (quotation marks and alteration omitted)).

### B. Rule 412

Federal Rule of Evidence 412 prohibits the admission of evidence "in a civil or criminal proceeding involving alleged sexual misconduct" that is "offered to prove that a victim engaged in other sexual behavior." Fed. R. Evid. 412(a)(1). The rule provides an exception in civil cases where the "probative value [of the evidence] substantially outweighs the danger of harm to any victim and of unfair prejudice to any party." *Id.* at (b)(2). Courts must consider Rule 412 during discovery. *Cf. Hughes v. Twenty-First Century Fox, Inc.*, 327 F.R.D. 55, 58–59 (S.D.N.Y. 2018) (noting that Courts "must balance [the Rule 26 discovery] standard with Rule 412" and quashing a non-party subpoena seeking evidence related to prior sexual history).

## II. Motions[1]

Non-party Lindsey Boylan has filed two motions to quash. The first, ECF No. 16, Docket No. 23-MC-1587, seeks to quash a document subpoena and notes that Ms. Boylan and Defendant Cuomo agreed to defer discussion about a deposition subpoena (referred to herein as the "Boylan Document Subpoena" and the "Boylan Deposition Subpoena"). The second, ECF No. 86, Docket No. 22-CV-893, seeks to quash four document subpoenas (the "Additional Non-party Subpoenas"): (1) to the Empire State Development Corporation ("ESDC"); (2) to the New York State Executive Chamber; (3) to Howard Zemsky; and (4) to Elizabeth Fine. Relatedly, Plaintiff Trooper 1 has filed a motion for a protective order (the "Trooper 1 Motion") concerning various of the subpoenas related to Ms. Boylan as well as subpoenas related to non-party Charlotte

---

[1] The requests made in the relevant contested document subpoenas are listed in the Appendix.

4

Bennett. Trooper 1's basis for her motion is that the subpoenas seek irrelevant evidence that is impermissible under Rule 412.

**A. Boylan Document Subpoena**

As to the Boylan Document Subpoena (ECF No. 18-5, No. 23-MC-1587), the court finds as follows:

1) Document Request 1(b),[2] which seeks all documents "concerning . . . (b) any allegations of sexual harassment or other misconduct [Ms. Boylan] ha[s] made against Cuomo" seeks discovery that is relevant and proportional to the needs of the case, limited to the time period from **2016 through March 30, 2023**, the date of the subpoena. Similarly, the Court finds that Document Requests 11 and 16 are relevant and proportional, subject to the same date limitations, and that Ms. Boylan should search for and produce documents and other information responsive to these requests.

2) As to Document Requests 2 and 3, which request, respectively, all documents concerning the OAG Investigation and the AJC Investigation, Ms. Boylan has already produced the request she received from the OAG, and the documents she provided in response. Ms. Boylan is directed to search for and produce any requests she received from the AJC. As to any other documents and/or correspondence that could be covered by this request, Cuomo has not established sufficient relevance and proportionality at this time to require any additional searching and production given the burden that would impose on Ms. Boylan, a non-party.

---

[2] The Court notes, however, that Document Request 1 is vague and overbroad insofar as it requests "[a]ll documents concerning (a) any of Your personal interactions with Governor Cuomo . . . ." (ECF No. 18-5, No. 23-MC-1587, Request No. 1(a).) Accordingly, Ms. Boylan is not required to search for or produce documents as to subcategory (a) of Request 1.

3)  As to Document Request 4, which requests "[a]ll documents reflecting any communications" between Ms. Boylan and the news media, the Court finds that searching for documents and information responsive to this request would impose a significant burden on Ms. Boylan, as to which Cuomo has not, at this time, established relevance and proportionality. Additionally, to the extent Ms. Boylan's allegations to media outlets have been published in the media, Cuomo already has access to that information.

4)  As to Document Request 5, which requests "all documents reflecting communications with the Executive Chamber or any of its current or former employees," concerning Cuomo, "with the Executive Chamber or any of its current or former employees," the Court finds that the request is substantially overbroad in that it requests "all documents reflecting communications" and includes both a specific list of individuals and an unbounded list of potential employees. Attempting to search for and produce documents in response would impose a significant undue burden on Ms. Boylan. At this time, Cuomo has not established relevance and proportionality as to a large swath of the information that would be included in this broad request. Accordingly, the Court narrows this request to allow discovery into documents that reflect communications with other complainants regarding allegations of sexual harassment or other misconduct against Cuomo and any investigations into Cuomo, for the time period from **December 1, 2020, through February 2022**; as noted above, this case was filed in February 2022.

5)  As to Document Request 7, which requests all communications with Karen Hinton concerning Cuomo, the Court notes that Ms. Hinton already provided some of these communications in response to a subpoena, and the Court finds that Cuomo has

established relevance. Given the relatively low burden of this request, the Court directs Ms. Boylan to search for and produce responsive documents.

6) At this time, Cuomo has not established that the following requests are relevant and proportional to the needs of this case: Request Nos. 6,[3] 8–10, 12–15.

**B. Boylan Deposition Subpoena**

As to the Boylan Deposition Subpoena (ECF No. 18-6, No. 23-MC-1587), the Court notes that Ms. Boylan has not yet made a formal motion to quash the Boylan Deposition Subpoena. The Court finds that, based on the present record and the parties' initial disclosures, a deposition of Ms. Boylan is relevant and proportional to the needs of the case. Any determination by the Court, however, as to the timing of the deposition is deferred to a date following completion of party discovery, including documentary discovery and both party depositions, as well as Ms. Boylan's compliance with the Boylan Document Subpoena consistent with the findings herein.

**C. Additional Non-party Subpoenas**

The Additional Non-party Subpoenas broadly seek production of the following categories of information: (1) information regarding a relationship between Ms. Boylan and Mr. Zemsky; (2) information regarding contributions by Mr. Zemsky or his family members to Ms. Boylan's political campaigns; (3) information regarding Ms. Boylan's performance at work, including complaints received and information about the end of

---

[3] As to Document Request 6, which concerns "[a]ll documents" related to a published essay by Ms. Boylan in Medium, "including all non-privileged drafts and communications," the Court finds that Cuomo has failed to establish that this request is proportional to the needs of the case at this time. The Court further finds that this request is burdensome and is of marginal relevance. This finding also attends to the other subpoenas that seek documents related to this essay, as noted *infra*.

her employment with New York State; (4) information regarding the OAG and AJC investigations; and (5) information regarding Ms. Boylan's allegations of sexual harassment or misconduct against Mr. Cuomo.

    1. *The ESDC Subpoena*

The document subpoena to the ESDC (ECF No. 88-5, No. 22-CV-893) makes 10 requests, many of which overlap with the Zemsky Subpoena, as detailed below. The motion presently pending before the Court as to this subpoena, which was brought by Ms. Boylan, is construed solely as a motion to quash those document requests that seek information regarding her.

    1)  Document Requests 1 through 3 seek discovery that is relevant and proportional to the needs of the case, limited to the time period from March 1, 2020 through March 30, 2023.

    2)  Request 10 seeks various categories of documents and communications, including documents and communications regarding Ms. Boylan's relationship with Mr. Zemsky, and the events of January 2018, including meetings with Alphonso David.[4] Ms. Boylan objects to the requests as the information sought touches upon her privacy interests. At this juncture, Cuomo has failed to establish relevance and proportionality as to these requests. The Court further notes that Cuomo has ample information for cross-examination of Ms. Boylan regarding the circumstances of her leaving her

---

[4] In addition to the lack of relevance and proportionality for these requests, discovery demands related to Ms. Boylan's relationship with Mr. Zemsky implicate Rule 412, and Cuomo has not demonstrated that the probative value outweighs the potential harm to Ms. Boylan, a non-party. *See* Fed. R. Evid. 412(a)–(b). Moreover, as demonstrated throughout the papers and at oral argument, Cuomo already has substantial information regarding this alleged relationship. Additional discovery into this collateral issue is cumulative and disproportionate on the present record.

employment at the ESDC and, if deemed relevant at trial should Ms. Boylan be a
witness, her relationship with Mr. Zemsky.

3)   At this juncture, Cuomo has failed to establish relevance and proportionality
as to Document Requests 4 through 9 in the ESDC Subpoena.[5]

2.   *The Executive Chamber Subpoena*

The document subpoena to the New York State Executive Chamber (ECF No. 88-
6, No. 22-CV-893) includes 15 total requests, many of which overlap with other
subpoenas. At oral argument, counsel for Cuomo advised that the Executive Chamber
has begun production on the subpoena, but not as to the items that include requests for
information as to Ms. Boylan. The Court's findings below only address the document
requests that seek information regarding Ms. Boylan.

1)   Document Request 4(b) is relevant specifically as to communications by or
with Ms. Boylan making allegations of sexual harassment or any other misconduct by
Cuomo. There is no basis to quash this request.

2)   Document Request 6, which seeks communications between Ms. Boylan and
Cuomo, is relevant, and necessarily includes communications that could not be subject
to any privacy protections since any communications in the Executive Chamber's
possession would have been made in connection with Ms. Boylan's and Cuomo's public
service positions. Accordingly, the Court does not find a basis on the present record to
deny discovery as to this request.

---

[5] To the extent these requests also seek information as to sexual behavior, they implicate
Rule 412. *See* note 4, *supra*. Additionally, Ms. Boylan has a clear privacy interest in her personnel
files, which are implicated by Requests 5–9. *Cf. Ireh v. Nassau Univ. Med. Ctr.*, No. 6-CV-9 (LDW)
(AKT), 2008 WL 4283344, at *3 (E.D.N.Y. Sept. 17, 2008) ("Plaintiff may assert a privacy interest
in his personnel files, though they are in possession of his former employer." (quotation marks
and alterations omitted)).

3)  As to Document Requests 5 and 7, to the extent each of these requests seek documents and communications regarding Ms. Boylan's relationship with Howard Zemsky and the events of January 2018, Cuomo has failed to establish relevance and proportionality as to those aspects of these requests.

4)  At this juncture, Cuomo has failed to establish relevance and proportionality as to Requests 8 through 14.

### 3.  *The Howard Zemsky Subpoena*

The document subpoena to Mr. Zemsky (ECF No. 88-7, No. 22-CV-893) seeks one category of information that is relevant and proportional to the discovery needs in this case, i.e., Request No. 6, which seeks "[a]ll Documents or Communications concerning the OAG Investigation, OAG Report, AJC Investigation, and AJC Report, including any documents you provided to the OAG or AJC." At this juncture, Cuomo has failed to establish relevance and proportionality as to the remaining requests in the document subpoena to Mr. Zemsky.[6]

### 4.  *The Elizabeth Fine Subpoena*

At this time, Cuomo has not established that the Elizabeth Fine requests (*see* ECF No. 88-8, No. 22-CV-893) are relevant and proportional to the needs of this case.

### D.  Trooper 1 Motion

As to Lindsey Boylan, the Trooper 1 Motion sought to quash (1) the Boylan Document Subpoena and the Boylan Deposition Subpoena (*see* ECF No. 82, No. 22-CV-893; ECF No. 82-3, at ECF pp. 3, 13); (2) the Zemsky Subpoena (ECF No. 82-6); (3) a document subpoena to "Lindsey for New York" (ECF No. 82-7), seeking documents or

---

[6] To the extent these requests also seek information as to sexual behavior, they implicate Rule 412. *See* note 4, *supra*.

communications related to an essay Ms. Boylan published in February 2021 in Medium (including drafts of the essay), communications with a number of individuals concerning allegations of sexual assault or other misconduct made against Cuomo, documents or communications concerning fundraising by Ms. Boylan's campaign related to allegations of sexual harassment or other misconduct against Cuomo, and documents reflecting communications between "Lindsey for New York" and media outlets or journalists related to allegations of sexual harassment or other misconduct against Cuomo; (4) the Executive Chamber Subpoena (ECF No. 82-8); (5) a document subpoena to Verizon (ECF No. 82-9) for phone records related to Ms. Boylan's telephone number, seeking all records and information from January 1, 2020, through the date of the subpoena; and (6) a document subpoena to Cade Leebron (ECF No. 82-10) seeking documents and communications regarding a published essay written by Ms. Boylan, communications between various individuals concerning allegations of sexual harassment against Cuomo, and documents concerning fundraising by Ms. Boylan related to allegations of sexual harassment against Cuomo.

Trooper 1 seeks to quash certain aspects of these subpoenas to the extent that they seek evidence protected by Federal Rule of Evidence 412, which "aims to safeguard [alleged victims of sexual offenses] against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and to encourage victims of sexual misconduct to institute and to participate in legal proceedings against alleged offenders." *United States v. Frey*, No. 19-CR-537 (DRH) (SIL), 2022 WL 2359665, at *4 (E.D.N.Y. June 30, 2022) (quotation marks and alteration omitted). The Boylan Document Subpoena, the Boylan Deposition Subpoena, the Zemsky Subpoena, and the Executive Chamber Subpoena are addressed above. To the extent that the permissible requests from those subpoenas implicate

11

information protected by Rule 412, the Court finds that the potential probative value of the requests, as narrowed, may outweigh the danger of harm to Ms. Boylan at this stage of the case, without prejudice to Plaintiff's or Ms. Boylan's rights to object to the use of any such evidence at trial. *See* Fed. R. Evid. 412. As to the remaining subpoenas included in Trooper 1's motion for a protective order, the Court assesses whether the requests seek information about a purported victim's sexual behavior and the potential probative value of the request substantially outweighs the danger of harm to the purported victim. In addition, at oral argument, Ms. Boylan objected to the provision of records as to certain of these subpoena requests on the same grounds on which she relies to object to the requests made in the Boylan Document Subpoena. The Court's findings are as follows.

1. *"Lindsey for New York" Subpoena*

The "Lindsey for New York" Subpoena (ECF No. 82-7, No. 22-CV-893) contains four requests.

1) Request 1 seeks documents and communications related to Ms. Boylan's Medium Essay, including all drafts. Trooper 1 has not established that this request has any bearing on Ms. Boylan's sexual behavior; accordingly, the Court does not find this request to implicate Rule 412. The Court notes that this request substantially overlaps with Request 6 of the Boylan Document Subpoena, and the Court found *supra* that Defendant Cuomo has not established that the request is relevant and proportional to the needs of this case. Accordingly, "Lindsey for New York" need not search for or produce documents as to this request.

2) Requests 2–4 relate to documents and communications by or with specified individuals or journalists concerning allegations of sexual harassment or other misconduct against Defendant Cuomo. Plaintiff has not established how these requests

12

would tend to seek information pertaining to purported victims' sexual behavior; accordingly, the Court does not find this request to implicate Rule 412. In addition, the Court notes that Requests 3 and 4 substantially overlap with Requests 4 and 9 of the Boylan Document Subpoena, and the Court found *supra* that Defendant Cuomo has not established that the request is relevant and proportional to the needs of this case; accordingly, "Lindsey for New York" need not search for or produce documents as to these requests. Request 2 substantially overlaps with Request 5 of the Boylan Document Subpoena; thus this Request is limited both as to which communications are included and to the relevant timeframe of **December 1, 2020, through February 2022**.

2. *Verizon Subpoena*

The Verizon Subpoena (ECF No. 82-9, No. 22-CV-893) requests subscriber information, length of service, call detail information, and detail information for text messages for Ms. Boylan's telephone number, for the time period from January 1, 2020, to June 20, 2023, the date of the subpoena. Trooper 1 has not established that this subpoena implicates Rule 412; Rule 412 does not provide a basis to quash the Verizon Subpoena. Ms. Boylan, however, objects to this subpoena as unduly burdensome and overly intrusive. The Court concurs with Ms. Boylan that a phone records subpoena seeking over three years of phone records is intrusive, overly burdensome, and disproportionate to the needs of this case. At oral argument, the Court inquired as to whether there may be a narrower set of records, limited by date and party with whom Ms. Boylan was in contact, that may be relevant and proportional, and suggested that the parties should meet and confer on this issue. Upon further reflection, however, the Court finds that Cuomo has not, at this time, established the relevance and

proportionality of his request for production of phone records for Ms. Boylan, a non-party.[7]

    3.  *Cade Leebron Subpoena*[8]

The Cade Leebron Subpoena (ECF No. 82-10, No. 22-CV-893) contains three requests.

    1)  Request 1 seeks documents and communications related to Ms. Boylan's Medium Essay, including all drafts. Trooper 1 has not established that this request has

---

[7] The Court notes that, when pressed at oral argument as to the relevance of these records, Cuomo principally relied on arguments concerning Ms. Boylan's alleged communications with other non-parties and witnesses, and an alleged threat she sent to Mr. Zemsky. Further elaboration on the alleged threat and other messages, however, revealed that Ms. Boylan allegedly sent self-destructing and encrypted messages using an app, which will not be reflected in the Verizon phone records. Given the somewhat speculative nature of the arguable relevance, the intrusiveness of the request for over three years of records, the Court's determination to require Ms. Boylan to produce relevant communications, and the burden that would be imposed on Ms. Boylan to search for and produce her phone records (which would likely require redaction pertaining to evidence of privileged attorney-client communications, irrelevant and private family communications, communications with any doctors or therapists, and the like), the Court concludes that, on balance, this request is not proportional to the needs of this case. *See* Fed. R. Civ. P. 26(b)(1) (providing, *inter alia*, that courts should consider "the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit").

Additionally, the Court finds that Ms. Boylan is "a non-party and discovery of h[er] phone number is an unnecessary intrusion into h[er] privacy." *Sapia v. Home Box Off.*, No. 18-CV-1317 (CM), 2022 WL 769798, at *7 (S.D.N.Y. Mar. 14, 2022) (citing *Hernandez v. Immortal Rise, Inc.*, No. 11-CV-4360 (RRM) (LB), 2012 WL 4369746, at *9 (E.D.N.Y. Sept. 24, 2012) (discussing the privacy concerns related to disclosure of telephone numbers for non-parties)).

[8] Although Ms. Leebron has not objected to the subpoena (and may not yet have been served the subpoena), Cuomo seeks the *identical* information from Ms. Leebron as from Ms. Boylan. Cuomo may not avoid compliance with the Court's findings of relevance and proportionality as to information sought from one third-party by seeking it from yet another individual even *further* removed from the substance of the litigation. Ms. Boylan has a privacy interest in the information sought from Ms. Leebron. A non-subpoenaed party has standing to challenge a subpoena when the party "has a privilege, privacy[,] or proprietary interest in the documents sought." *Universitas Educ., LLC v. Nova Group, Inc.*, No. 11-CV-1590 (LTS) (HBP), 2013 WL 57892, at *5 (S.D.N.Y. Jan. 4, 2013); *see also Solow v. Conseco, Inc.*, No. 6-CV-5988 (BSJ) (THK), 2008 WL 190340, at *3 (S.D.N.Y. Jan. 18, 2008) ("[C]ourts have recognized that parties with a privacy interest in subpoenaed documents have standing to oppose the subpoena.").

any bearing on Ms. Boylan's sexual behavior; accordingly, the Court does not find this request to implicate Rule 412. In addition, this request substantially overlaps with Request 6 of the Boylan Document Subpoena and the Court found *supra* that Defendant Cuomo has not established that the request is relevant and proportional to the needs of this case. Accordingly, Cade Leebron need not search for or produce documents as to this request.

2)  Request 2 is for communications with specified individuals concerning allegations of sexual harassment or other misconduct against Defendant Cuomo. Plaintiff has not established how this request would tend to seek information pertaining to purported victims' sexual behavior; accordingly, the Court does not find this request to implicate Rule 412. Request 2 substantially overlaps with Request 5 of the Boylan Document Subpoena; thus the relevant timeframe of **December 1, 2020, through February 2022** applies to this request.

3)  Request 3 is for documents or communications concerning fundraising by Ms. Boylan's political campaign relating to allegations of sexual harassment or other misconduct against Cuomo. Plaintiff has not established how this request would tend to seek information pertaining to purported victims' sexual behavior; accordingly, the Court does not find this request to implicate Rule 412. While the parties and non-parties have not formally moved to quash this subpoena on grounds related to relevance and proportionality, the Court notes that this request substantially overlaps with Request 9 of the Boylan Document Subpoena, and the Court found *supra* that Defendant Cuomo has not established that those requests are relevant and proportional to the needs of this case given Ms. Boylan's status as a non-party; accordingly, Cade Leebron need not search for or produce documents as to these requests.

\*   \*   \*   \*   \*

15

For the foregoing reasons, and the reasons discussed on the record at the January 11, 2024 oral argument, and consistent with the foregoing findings:[9]

1) Ms. Boylan's motions to quash (ECF No. 86, Docket No. 22-CV-893; ECF No. 16, Docket No. 23-MC-1587) are granted in part and denied in part, and Cuomo's cross-motions to compel Ms. Boylan's compliance (ECF No. 1, Docket No. 23-MC-1587) are likewise granted in part and denied in part; and

2) The Trooper 1 Motion to quash (ECF No. 82, Docket No. 22-CV-893) is terminated as moot with respect to the Boylan Document Subpoena and Additional Non-party Subpoenas, given the Court's resolution of ECF No. 86, and denied as to the "Lindsey for New York" Subpoena, Verizon Subpoena, and Cade Leebron Subpoena. However, specific document requests for which the Court found that Cuomo has not established relevance and proportionality need not be searched for or produced, as detailed above.

**SO ORDERED.**

Dated: Brooklyn, New York
      January 16, 2024

*Taryn A. Merkl*

TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE

---

[9] Because meritorious arguments were made as to the motions to quash, the motion to compel, and the motion for a protective order, the Court declines to provide any fee shifting under Rule 37(a)(5). *See* Fed. R. Civ. P. 37(a)(5).

## Appendix: Subpoena Requests

### I. Boylan Document Subpoena (ECF No. 18-5, No. 23-MC-1587; ECF No. 82-3, No. 22-CV-893)

1) All documents concerning (a) any of Your personal interactions with Governor Cuomo, and/or (b) any allegations of sexual harassment or other misconduct You have made against Governor Cuomo.

2) All documents concerning the OAG Investigation, including but not limited to any communications between You and the OAG and any statements or documents You provided to the OAG.

3) All documents concerning the AJC Investigation, including but not limited to any communications between You and the AJC and any statements or documents You provided to the AJC.

4) All documents reflecting any communications between You and any Media Outlet or journalist, including but not limited to news outlets, newspapers, or social media platforms, concerning allegations of sexual harassment or other misconduct against Governor Cuomo.

5) All documents reflecting communications with the Executive Chamber or any of its current or former employees, including Charlotte Bennett, Alessandra Biaggi, Brittany Commisso, Alyssa McGrath, Ana Liss and Kaitlin . . . , concerning Governor Cuomo, including allegations of sexual harassment or other misconduct against Governor Cuomo and any investigation of Governor Cuomo.

6) All documents related to your February 2021 essay published on Medium entitled "My story of working with Governor Cuomo," including all non-privileged drafts and communications concerning that essay.

7) All communications with Karen Hinton concerning Governor Cuomo.

8) For the period January 1, 2017 through the present, all communications with Howard Zemsky concerning: Governor Cuomo; Your personal relationship and/or sexual relationship with Howard Zemsky; and/or a meeting with Alphonso David in January 2018 concerning your relationship with Howard Zemsky.

9) For the time period March 1, 2020 through the present, all documents concerning fundraising or other communications by Your campaigns relating to your allegations of sexual harassment or other misconduct against Governor Cuomo.

10) For the time period March 13, 2020 through June 23, 2020, all communications concerning Governor Cuomo's March 14, 2020 executive order temporarily modifying election procedures during the COVID-19 public health crisis.

11) All communications with Governor Cuomo.

12) All documents and communications concerning your September 2018 resignation from New York State employment, including those relating to meetings with Alphonso David, those regarding any effort or attempt by you to resign prior to that resignation, or those relating to documents you signed or were asked to sign in connection your resignation.

13) All communications concerning workplace complaints about you during your employment by New York State and/or the Empire State Development Corporation.

14) All communications concerning any effort or attempt by you to retain employment with the State of New York and/or Empire State Development Corporation following your September 2018 resignation, including communications with Stephanie Benton and/or Alphonso David.

15) All documents and communications concerning the decision by Lupe Todd Medina to stop working for your campaign for Manhattan Borough President.

16) All videos, images, or photographs of Governor Cuomo or of You with Governor Cuomo and any documents or communications concerning such videos, images, or photographs, including on social media.

## II. ESDC Subpoena (ECF No. 88-5, No. 22-CV-893)

1) All Documents concerning the OAG Investigation or the AJC Investigation, including but not limited to any Communications (a) between You and the OAG and any statements or documents You provided to the OAG, and (b) between You and the AJC and any statements or documents You provided to the AJC.

2) All Communications between Lindsey Boylan and Governor Cuomo.

3) All Documents or Communications concerning any complaint by Ms. Boylan about Governor Cuomo.

4) All Documents or Communications concerning a personal and/or sexual relationship between Ms. Boylan and Mr. Zemsky, including but not limited to: Communications in December 2017 where ESD employees attended a social event with Ms. Boylan and Mr. Zemsky; and/or Communications concerning how Ms. Boylan and Mr. Zemsky conducted themselves when together.

5) All Documents or Communications concerning complaints about Lindsey Boylan's conduct or performance at ESD, including but not limited to Documents sufficient to identify any ESD employees or consultants who complained about Ms. Boylan and the nature of those complaints.

6) All Documents concerning ESD's request to terminate Ms. Boylan or have her removed from ESD's payroll in September 2018, including but not limited to Communications about terminating Ms. Boylan by or with Elizabeth Fine or Howard Zemsky.

7)  All Documents concerning any effort or threat by Ms. Boylan to resign from New York State employment prior to September 2018.

8)  All Documents concerning Ms. Boylan's resignation in September 2018.

9)  All Documents concerning any effort by Ms. Boylan to remain employed by New York State despite tendering her resignation in September 2018.

10) To the extent not covered by any prior request, all Documents and Communications involving Lindsey Boylan concerning: allegations of sexual harassment or any other misconduct by Governor Cuomo; any references to Governor Cuomo's appearance; any references to Governor Cuomo's conduct towards Ms. Boylan; any complaints about the work environment at ESD or the Executive Chamber; Ms. Boylan's travel aboard any flights with Governor Cuomo in October 2017; any meeting Ms. Boylan had with Governor Cuomo in December 2016 at the New York State Capitol; any event that Ms. Boylan attended at the Governor's Mansion in Albany, New York, including in February 2018; Ms. Boylan praising or complimenting Governor Cuomo; and a January 2018 meeting with Alphonso David concerning the relationship between Ms. Boylan and Mr. Zemsky.

## III. Executive Chamber Subpoena (ECF Nos. 82-8, 88-6, No. 22-CV-893)

1)  All documents concerning the OAG Investigation, including but not limited to any communications between You and the OAG and any statements or documents You provided to the OAG.

2)  All documents concerning the AJC Investigation, including but not limited to any communications between You and the AJC and any statements or documents You provided to the AJC.

3)  All electronic communications by or with Brittany Commisso, for the following dates: December 31, 2019, November 16, 2020, November 19, 2020, December 7, 2020, December 8, 2020, December 13, 2020, March 3, 2021, March 6, 2021, March 7, 2021, and March 8, 2021.

4)  All electronic communications by or with Farrah Kennedy, Tracy Goodman, Alyssa McGrath, or Brittany Commisso concerning: (a) overtime assignments or scheduling at either the Capitol or the Mansion; and/or (b) allegations of sexual harassment or other misconduct by Governor Cuomo, including statements by Lindsey Boylan or Charlotte Bennett.

5)  All documents reflecting any communications by or with Lindsey Boylan concerning: Ms. Boylan's personal and/or sexual relationship with Howard Zemsky; allegations of sexual harassment or any other misconduct by Governor Cuomo; any references to Governor Cuomo's appearance, including calling him "handsome"; any references to Governor Cuomo's conduct towards Ms. Boylan; any complaints about the work environment at ESD or the Executive Chamber; Ms. Boylan's travel aboard any flights with Governor Cuomo in October 2017; any meeting Ms. Boylan had with Governor Cuomo in December 2016 at the New York State Capitol; any event that Ms.

Boylan attended at the Governor's Mansion in Albany, New York in February 2018; Ms. Boylan praising or complimenting Governor Cuomo; Ms. Boylan's September 2018 resignation; Ms. Boylan's efforts to keep her job after her resignation; efforts by Ms. Boylan to resign prior to September 2018; and/or a January 2018 meeting with Alphonso David.

6)  All communications between Lindsey Boylan and Governor Cuomo.

7)  All documents reflecting any communication by or with Howard Zemsky concerning: his personal and/or sexual relationship with Lindsey Boylan; allegations by Ms. Boylan of any misconduct or sexual harassment by Governor Cuomo; travel aboard any flights with Governor Cuomo in October 2017; complaints about Lindsey Boylan; a January 2018 meeting Howard Zemsky had with Alphonso David; and/or a January 2018 meeting Lindsey Boylan had with Alphonso David.

8)  All documents concerning complaints regarding Lindsey Boylan while she was employed at ESD, including but not limited to all documents reflecting the names of ESD employees who complained about Ms. Boylan, the nature of those complaints, and the investigation or resolution of those complaints, if any.

9)  All documents concerning ESD's request to have Ms. Boylan terminated from ESD or removed from ESD's payroll in 2018, including but not limited to communications by or with Elizabeth Fine or Howard Zemsky and complaints concerning Ms. Boylan's conduct.

10) All documents concerning a January 2018 meeting between Alphonso David and Lindsey Boylan and/or Alphonso David and Howard Zemsky, in which Mr. David inquired about the relationship between Ms. Boylan and Howard Zemsky.

11) All documents concerning Ms. Boylan's resignation in September 2018.

12) All documents concerning Ms. Boylan's efforts to stay employed by New York State after resigning from employment in September 2018 and/or efforts to rescind that resignation.

13) All documents concerning any attempt by Ms. Boylan to resign from New York State employment prior to September 2018.

14) All documents or communications concerning Ms. Boylan and Mr. Zemsky's personal and/or sexual relationship, including but not limited to communications in December 2017 where ESD employees attended a social event with Ms. Boylan and Mr. Zemsky, and/or communications concerning how Ms. Boylan and Mr. Zemsky conducted themselves when together.

15) All images or videos from the following events at which Governor Cuomo attended: a. December 12, 2016 fundraising event hosted by a lobbying firm; b. May 14, 2017 event at the New York State Department of Environmental Conservation's Salmon River Fish Hatchery; c. December 2017 holiday party for Executive Chamber employees; d. February 12, 2018 reception at the Executive Mansion; e. December 2018 holiday

20

party for Executive Chamber employees; f. September 14, 2019 event for Revive Mother Nature Initiative at New York City Hudson River Park; g. September 23, 2019 Belmont arena groundbreaking ceremony; h. December 2019 holiday party for Executive Chamber employees; i. December 30, 2020 opening of the Moynihan Hall in New York City; j. Holiday parties at the Executive Mansion for members of the New York State Police Protective Services Unit for the years 2016, 2017, 2018, 2019 and 2020.

**IV. Zemsky Subpoena (ECF Nos. 82-6, 88-7, No. 22-CV-893)**

1) All Documents or Communications concerning Lindsey Boylan's February 2021 essay published on Medium entitled "My story of working with Governor Cuomo."

2) All Communications concerning any allegations of sexual harassment or other misconduct made against Governor Cuomo.

3) All Communications concerning your personal and/or sexual relationship with Lindsey Boylan, including, but not limited to: any January 2018 meeting with Alphonso David in which Your relationship with Ms. Boylan was discussed; any January 2018 meeting between Ms. Boylan and Alphonso David in which Your relationship with Ms. Boylan was discussed; and any personal meetings with Lindsey Boylan outside the ESD workplace.

4) All Communications concerning complaints about Ms. Boylan's conduct while employed at ESD.

5) All Documents or Communications concerning any contributions by You, Your family members or Your business to Lindsey Boylan's 2020 and 2021 campaigns for U.S. Congress and/or Manhattan Borough President.

6) All Documents or Communications concerning the OAG Investigation, OAG Report, AJC Investigation, and AJC Report, including any documents you provided to the OAG or AJC.

**V. Elizabeth Fine Subpoena (ECF No. 88-8, No. 22-CV-893)**

1) All Documents or Communications concerning: a. a sexual relationship, or allegations of a sexual relationship, between Mr. Zemsky and Ms. Boylan; b. formal or informal complaints about Ms. Boylan's conduct while she was employed at ESD; c. any recommendation to terminate Ms. Boylan from ESD or ESD's payroll, including any meetings relating to that topic; d. Ms. Boylan's resignation, attempted resignation, or threatened resignation from ESD or the Executive Chamber, including but not limited to Ms. Boylan's September 2018 resignation.

2) For the period December 1, 2017 through the present, all Documents or Communications concerning: a. a January 2018 meeting between Mr. Zemsky and Mr. David concerning Ms. Boylan's relationship with Mr. Zemsky; b. a January 2018 meeting between Ms. Boylan and Mr. David concerning Ms. Boylan's relationship with Mr. Zemsky.

## VI. "Lindsey for New York" Subpoena (ECF No. 82-7, No. 22-CV-893)

1) All Documents or Communications concerning Lindsey Boylan's February 2021 essay published on Medium entitled "My story of working with Governor Cuomo," including all drafts.

2) All communications with by or with [sic] Lindsey Boylan, Karen Hinton, Cade Leebron, Charlotte Bennett, Ana Liss, Kaitlin . . . , Alessandra Biaggi, Tripp Yang, or Lupe Todd Medina, concerning any allegations of sexual harassment or other misconduct made against Governor Cuomo.

3) All Documents or Communications concerning fundraising by Lindsey Boylan's campaign for Manhattan Borough President relating to allegations of sexual harassment or other misconduct against Governor Cuomo.

4) All documents reflecting any communications between You and any Media Outlet or journalist, including but not limited to news outlets, newspapers, or social media platforms, concerning allegations of sexual harassment or other misconduct against Governor Cuomo.

## VII. Verizon Subpoena (ECF No. 82-9, No. 22-CV-893)

Provide the following records and information associated with the following phone number for the period January 1, 2020 through the present: [Ms. Boylan's telephone number]

1) All subscriber identifying information, including, but not limited to, name(s), address(es), date of birth, email addresses, and secondary telephone number;

2) Length of service, including the date the account was established and the date the account was disconnected, if applicable;

3) All call detail information, including but not limited to, call history, local, long distance and toll records, including incoming and outgoing calls; and

4) All detail information for text messages, including timing and numbers associated with incoming and outgoing text messages.

## VIII. Cade Leebron Subpoena (ECF No. 82-10, No. 22-CV-893)

1) All Documents or Communications concerning Lindsey Boylan's February 2021 essay published on Medium entitled "My story of working with Governor Cuomo," including all drafts.

2) All Communications with Lindsey Boylan, Karen Hinton, Charlotte Bennett, Ana Liss, Kaitlin . . . or Alessandra Biaggi concerning any allegations of sexual harassment or other misconduct made against Governor Cuomo.

3)  All Documents or Communications concerning fundraising by Lindsey Boylan's campaign for Manhattan Borough President relating to allegations of sexual harassment or other misconduct against Governor Cuomo.