```
                        UNITED STATES DISTRICT COURT
                        SOUTHERN DISTRICT OF NEW YORK

In re:                                  :
                                             Docket #22cv7846
BENNETT, CHARLOTTE,                      :

                    Plaintiff,           :

   - against -                           :

CUOMO, et al.,                           : New York, New York
                                           February 1, 2024
                    Defendants.          :

------------------------------------ :

                        PROCEEDINGS BEFORE
                  THE HONORABLE SARAH L. CAVE,
                 UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:          EISENBERG & SCHNELL LLP
                        BY:  LAURA SCHNELL, ESQ.
                             HERBERT EISENBERG, ESQ.
                        233 Broadway
                        New York, New York 10279

                        KATZ BANKS KUMIN LLP
                        BY:  DEBRA KATZ, ESQ.
                             RACHEL GREEN, ESQ.
                             KAYLA MORIN, ESQ.
                        11 Dupont Circle, N.W., Suite 600
                        Washington, D.C.  20036




Transcription Service:  Carole Ludwig, Transcription Services
                        155 East Fourth Street #3C
                        New York, New York 10009
                        Phone:  (212) 420-0771
                        Email:  Transcription420@aol.com


Proceedings recorded by electronic sound recording; Transcript
produced by transcription service.
```

APPEARANCES CONTINUED:

```
For Defendant Andrew Cuomo:    SHER TREMONTE LLP
                               BY:  THERESA TRZASKOMA, ESQ.
                               90 Broad Street
                               New York, New York 10004

                               GLAVIN PLLC
                               BY:  RITA GLAVIN, ESQ.
                               156 West 56th Street, Suite 2004
                               New York, New York 10019

For Defendant DeRosa:          MORVILLO PLLC
                               BY:  GREGORY MORVILLO, ESQ.
                               1740 Broadway, 15th Floor
                               New York, New York 10019

                               GRUPPUSO LEGAL
                               BY:  ANTHONY GRUPPUSO, ESQ.
                               560 Main Street
                               Chatham, New Jersey 07928

                               GELBER & SANTILLO PLLC
                               BY:  SARAH SULKOWSKI, ESQ.
                               52 Duane Street, 7th Floor
                               New York, New York 10007

For Defendant Mogul:           ORRICK, HERRINGTON & SUTCLIFFE
                               BY:   MICHAEL DELIKAT, ESQ.
                                     BRIANNA MESSINA, ESQ.
                               51 West 52nd Street
                               New York, New York 10019

For Defendant DesRosiers:      DEBEVOISE & PLIMPTON LLP
                               BY:  JYOTIN HAMID, ESQ.
                                    LEAH ROSENBERG, ESQ.
                                    SOREN SCHWAB, ESQ.
                               66 Hudson Boulevard
                               New York, New York 10001

For Interested Party Boylan:   E. DANYA PERRY PLLC
                               DBA PERRY LAW
                               BY:  DANYA PERRY, ESQ.
                                    KRISTA OEHLKE, ESQ.
                               157 East 86th Street, 4th Floor
                               New York, New York 10028
```

<u>APPEARANCES CONTINUED:</u>

                                    GLASER WEIL FINK HOWARD JORDAN &
                                         SHAPIRO LLP
                                    BY:  JULIE GERCHIK, ESQ.
                                    10250 Constellation Boulevard
                                    Suite 1900
                                    Los Angeles, California 90067

For NY Attorney General:            NEW YORK CITY LAW DEPARTMENT
                                    BY:  SERENA LONGLEY, ESQ.
                                    100 Church Street, Room 3-212
                                    New York, New York 10007


For Non-Party Madeline             BRESSLER, AMERY & ROSS, PC
Cuomo:                             BY:  DAVID PIKUS, ESQ.
                                    17 State Street, 34th Floor
                                    New York, New York 10004

<u>INDEX</u>

**E X A M I N A T I O N S**

| <u>Witness</u> | <u>Direct</u> | <u>Cross</u> | <u>Re-<br>Direct</u> | <u>Re-<br>Cross</u> |
|---|---|---|---|---|
| None | | | | |

**E X H I B I T S**

| <u>Exhibit<br>Number</u> | <u>Description</u> | <u>ID</u> | <u>In</u> | <u>Voir<br>Dire</u> |
|---|---|---|---|---|
| None | | | | |

```
 1                        PROCEEDINGS                    5
 2            THE COURT:  Good afternoon, this is Magistrate
 3   Judge Cave.  We're here for a discovery conference in
 4   Bennett v. Cuomo, case number 22cv7846.  May I have the
 5   appearances starting with the plaintiff please.
 6            MS. LAURA SCHNELL:  Good afternoon, Your Honor,
 7   Laura Schnell for the plaintiff Charlotte Bennett,
 8   together with Herbert Eisenberg at the firm of Eisenberg
 9   & Schnell, and also on the phone Debra Katz, Rachel
10   Green, and I believe Kayla Morin at the firm of Katz,
11   Bank, Kimmin.
12            THE COURT:  All right, thank you, good
13   afternoon.  For Mr. Cuomo.
14            MR. THERESA TRZASKOMA:  Hi, good afternoon,
15   Your Honor, Theresa Trzaskoma, law firm Sher Tremonte,
16   on behalf of Governor Cuomo, and I believe my co-counsel
17   is on as well.
18            THE COURT:  Thank you.
19            MS. TRZASKOMA:  But I'll let her introduce
20   herself.
21            THE COURT:  All right, thank you.
22            MS. RITA GLAVIN:  Good afternoon, Judge Cave,
23   Rita Glavin of Glavin PLLC for former Governor.
24            THE COURT:  Okay, good afternoon.  For Ms.
25   DeRosa.
```

PROCEEDINGS                                          6

1

2          MR. GREGORY MORVILLO:  Good afternoon, Your

3   Honor, Gregory Morvillo on behalf of Ms. DeRosa and

4   Anthony Gruppuso and Sarah Ann Sulkowski who represent

5   Ms. DeRosa are also present on the call.

6          THE COURT:  All right, good afternoon.  For Ms.

7   Mogul.

8          MR. MICHAEL DELIKAT:  Good afternoon, Your

9   Honor, Michael Delikat and Brianna Messina from Orrick

10  representing Ms. Morgul.

11         THE COURT:  All right, good afternoon.  For Ms.

12  DesRosiers.

13         MR. JYOTIN HAMID:  Good afternoon, Your Honor,

14  this is Jyo Hamid at Debevoise & Plimpton.  I believe on

15  the line also are my colleagues Leah Rosenberg and Soren

16  Schwab for Ms. DesRosiers.

17         THE COURT:  Good afternoon.  For non-party Ms.

18  Boylan.

19         MS. DANYA PERRY:  Good afternoon, Your Honor,

20  this is Danya Perry from Perry Law along with my

21  colleague Krista Oehlke. Also on the call is my co-

22  counsel Julie Gerchik.

23         THE COURT:  All right, good afternoon.  And the

24  Attorney General's Office.

25         MS. SERENA LONGLEY:  Hi, good afternoon, Your

PROCEEDINGS                                  7

Honor, this is Serena Longley from the New York State

Attorney General's Office, and I also have colleagues

from my office on the line, but they don't expect to

speak.

THE COURT:  All right, very good, thank you.

Is there anyone I missed or anyone who would like to

state their appearance?

MR. DAVID PIKUS:  If I may, Your Honor, may it

please the Court.  My name is David Pikus, P-I-K-U-S.

I'm with Bressler Amery & Ross.  With the Court's

permission, I'd just like to be an observer or maybe

more specifically a listener today.  I represent a non-

party Madeline Cuomo, the Governor's sister, who has

been subpoenaed for a deposition, and we'd be interested

to hear how Your Honor is handling some of these issues.

THE COURT:  All right, thank you.  Anyone else?

Okay, very good.  So what I'd like to do is start with

just getting a status update from various

constituencies.  That was the original intent of this

call.  And then we'll also discuss issues relating to

the subpoenas that Mr. Cuomo has served on Ms. Boylan

and the OAG, and then we also need to talk about the

discovery schedule because the current fact discovery

deadline is coming up at the end of this month.

PROCEEDINGS                                    8

1

2              So if I could start with Ms. Bennett.  I see

3    that you've produced a substantial number of documents,

4    but if you could update me on whether Ms. Bennett's

5    production is substantially complete, if there's

6    anything outstanding, and anything else about the status

7    of Ms. Bennett's document production.

8              MS. SCHNELL:   Yes, Your Honor, and I also can

9    update the Court because we have reached agreement on

10   some of the discovery scheduling issues that I can

11   report to the Court, subject to the Court's approval of

12   course.

13             Ms. Bennett has substantially has completed her

14   document production, of course, with the caveat that she

15   has an ongoing obligation if other things come up to

16   produce it.  But, yes, everything she possesses we have

17   produced to defendants and we have told them that.

18             We now have gotten deposition dates for all the

19   defendants, and we have a schedule in place I'm pleased

20   to report to the Court --

21             THE COURT:  Great.

22             MS. SCHNELL:   -- as well as a schedule for

23   plaintiff's deposition.  And given that, we have also

24   conferred with defendants, and we jointly would like to

25   propose to the Court the following schedule for

```
 1                         PROCEEDINGS                    9

 2  completion of discovery.  Fact discovery by August 15

 3  with all depositions concluded by June 30 and expert

 4  discovery by September 30.

 5            THE COURT:  All right.  Sorry, September 30 for

 6  experts?

 7            MS. SCHNELL:  Yes.

 8            THE COURT:  All right.

 9            MS. SCHNELL:  And I believe in the original

10  court order there's some other dates that would need to

11  be adjusted as well.

12            THE COURT:  Right.

13            MS. SCHNELL:  You know, conferences and things

14  like that, Your Honor.

15            THE COURT:  Sure.  Okay, well, I'll have the

16  defendants weigh in on that.  Can you just give me a

17  rough overview of the timing of the depositions?

18            MS. SCHNELL:  We have depositions scheduled

19  for Ms. Bennett in March and the four individual

20  defendants in April and May.

21            THE COURT:  Great.

22            MS. SCHNELL:  And we are going to do a couple

23  of third-party depositions that we anticipate will be

24  able to be done in similar timeframe but certainly by

25  the end of June.
```

PROCEEDINGS                    10

THE COURT:  Very good, thank you.  Okay, I'll have the defendants weigh in on that schedule later. One question I also had for you, one of the issues that Mr. Cuomo has raised in his letter is some videos that Ms. Bennett seems to have taken of herself.  Can you tell me when those were produced please?

MS. SCHNELL:  When they were produced?

THE COURT:  Yes

MS. SCHNELL:  To the defendants, recently, Your Honor.

THE COURT:  Okay, and do you know when those videos were taken approximately?

MS. SCHNELL:  We do know approximately when they were taken.  Defendants have asked us for some of that information.  We are preparing a letter, and we're potentially going to meet and confer on some issues relating to those videos.

THE COURT:  All right, very good, thank you. If I have any other questions for you before I let you go for the moment.  All right, I think I'm good on that. Ms. Trzaskoma, anything you want to weigh in about, if you can update me on the status of your client's document production and then anything you want to, any comments you want to add on the proposed schedule?

```
 1                        PROCEEDINGS                   11
 2          MS. TRZASKOMA:  Yes, Your Honor, good
 3   afternoon.  So from our client's perspective I'm pleased
 4   to report that his production is complete as of today.
 5   There have been four productions totalling about 51,000
 6   pages.  And I just want to sort of put down on a marker
 7   that we are going through Ms. Bennett's production, much
 8   of which has been produced to us fairly recently, and I
 9   anticipate that we will be coming back to her with
10   follow-up requests and questions about, you know, where,
11   about documents that have not been produced that we
12   would've expected.  So that's just a marker that I'm not
13   sure it's document discovery's totally complete from
14   that perspective.
15          THE COURT:  She didn't say it about you, but I
16   imagine she might've (indiscernible) completed today.
17          MS. TRZASKOMA:  Understood.
18          THE COURT:  Yes, I understand.  Without
19   prejudice.  Any comments on the proposed schedule that
20   Ms. Schnell described?
21          MS. TRZASKOMA:  No, Your Honor.  We have agreed
22   to that.  I mean obviously our agreement depends, you
23   know, is contingent on resolving some of these non-party
24   discovery issues in a timely way.  But that – our hope,
25   sincere hope is that we can achieve this discovery
```

1                        PROCEEDINGS                    12

2  schedule.

3          THE COURT:  Great.  Very good, thank you.  Mr.

4  Morvillo, you or one of your colleagues, could you speak

5  to the status of Ms. DeRosa's production.

6          MR. MORVILLO:  Yes, Your Honor.  We should be

7  making another production either tomorrow or early next

8  week, and we anticipate being complete by mid-February,

9  say February 16.

10         THE COURT:  Great.  And Ms. DeRosa is one of

11 the depositions that Ms. Schnell described that'll take

12 place in April or May?

13         MR. MORVILLO:  That is correct, she'll know in

14 April.

15         THE COURT:  Very good.  All right, thank you.

16 Mr. Delikat for Ms. Mogul, what's the status for her

17 production?

18         MR. DELIKAT:   Ms. Mogul has completed her

19 production and her deposition is now scheduled for April

20 26.  There's one open issue that we're still mtg and

21 conferring with plaintiff about, and that is the length

22 of Ms. Bennett's deposition given there are four

23 separate named defendants in this case and obviously

24 quite a few documents.  Hopefully, we'll be able to work

25 that out, but if we can't work that out in terms of

```
 1                        PROCEEDINGS                    13
 2   additional time beyond the seven hours, we'll get back
 3   to you.
 4           THE COURT:  Okay, very good, thank you.  I was
 5   wondering if that might be among the topics that was
 6   being discussed.
 7           MR. DELIKAT:   We're working on it.
 8           THE COURT:  Okay, good.  I appreciate that
 9   you're trying to work it out.
10           MR. DELIKAT:   Okay, thank you.
11           THE COURT:  Mr. Hamid, for your client, what's
12   the status:
13           MR. HAMID:  Yeah, thank you, Your Honor.  We
14   completed our document production quite some time ago,
15   and our deposition is scheduled for May 9.  And so
16   nothing to add.
17           THE COURT:  Wonderful.  Great, well, that's
18   progress.  I realize that there may be some open issues
19   about the parties' document productions, but I
20   appreciate all the progress that the parties have made,
21   and obviously understand that, given that things are
22   still (indiscernible) recently, that there may be some
23   follow-up questions.  But I appreciate all the hard work
24   in getting to this point.  It doesn't always happen.
25   Very good.
```

PROCEEDINGS                    14

1

2          So now let's move to the issues concerning Ms.

3   Boylan.  So, Ms. Trzaskoma, you had filed a letter that

4   provided a link to some videos of Ms. Bennett that I was

5   referring to a moment ago.  And so which aspect of the

6   subpoena to Ms. Boylan do you think that the videos are

7   somehow new information and require Ms. Boylan to

8   produce?

9          MS. TRZASKOMA:  Well, so it's not, Your Honor,

10  our letter - our understanding of Your Honor's prior

11  order is that you were, is that it was, you know, your

12  decision for now and that we were permitted to come back

13  if we had further requests or had additional information

14  that could help explain why it is that we made these

15  requests in the first place and why it is that we

16  believe this information is still very important to

17  Governor Cuomo's defense.

18          And I think, you know, that when we receive

19  those videos, which, of course, had been designated as

20  confidential, and so I will refrain from describing

21  them, but they really bring home to us that there is a

22  very, you know, that Governor Cuomo's defense is a very

23  important one, and it is that Ms. Bennett who, you know,

24  who was a, who professionally, had a professional

25  ambition and a personal ambition to be an advocate for

PROCEEDINGS                    15

1

2  women who are victims, that she did not frame or

3  describe her experience in the executive chamber as an

4  experience involving sexual harassment until after she

5  spoke with Ms. Boylan.  And it was at that time that Ms.

6  Boylan told Ms. Bennett the story about Governor Cuomo

7  that were not true.  She we believe lied to Ms. Bennett,

8  Ms. Boylan did, about her own experiences in the

9  executive chamber in order to tap into this desire of

10  Ms. Bennett to be part of that kind of mission.

11          And in those conversations between them, we

12  believe, that was when Ms. Bennett began to recast her

13  experience as an experience of sexual harassment.  And

14  we think that that, we think that the videos show very

15  clearly that Ms. Bennett's story changed significantly.

16          And so we need to be able to present that

17  defense, and whether Ms. Boylan's allegations against

18  Governor Cuomo are true is a very important fact for us

19  to be able to establish that they weren't true because

20  otherwise Governor Cuomo will be in the position of

21  really not being able to put on that defense because he

22  won't, the jury will be left with the false impression

23  that what Ms. Bennett heard from Ms. Boylan was true.

24          THE COURT:  Well, right, but does it matter --

25          MS. TRZASKOMA:  And --

1

2          THE COURT:  At the time that Ms. Bennett heard

3  Ms. Boylan's story, did she believe it's true?  That's

4  the question to ask Ms. Bennett.

5          (interposing)

6          MS. TRZASKOMA:  Well, but here's the --

7          THE COURT:  Go ahead.

8          MS. TRZASKOMA:  Sorry, I didn't mean to

9  interrupt you.  No, but here's the problem, whether Ms.

10  Bennett believed it or not, in order for us to put on

11  that story, put that story in front of a jury, we have

12  to be able to say at the same time so that the jury

13  understands everything and understands that Ms. Boylan

14  was not, in fact, harassed because that will be highly

15  prejudicial.  If all the jury gets to hear that Ms.

16  Bennett heard and believed that Ms. Boylan was sexually

17  harassed by Governor Cuomo and we don't have the

18  opportunity to say, and, by the way, it wasn't true for

19  Ms. Boylan either --

20          THE COURT:  But Ms. --

21          (interposing)

22          MS. TRZASKOMA:  -- then the jury --

23          THE COURT:  But Ms. Bennett didn't know that or

24  maybe she did, but we don't, at this point in the case,

25  I still don't understand why it matters one way the

```
 1                        PROCEEDINGS                    17
 2  other as far as Ms. Bennett is concerned.  I understand
 3  that Mr. Cuomo wants to clear his name, but this case
 4  involves Ms. Bennett's allegations against him and the
 5  other defendants.  That's what we're talking about.  And
 6  --
 7          MS. TRZASKOMA:  But we can't do that - sorry.
 8  Sorry, Your Honor.
 9          THE COURT:  Go ahead.
10          MS. TRZASKOMA:  No, but we cannot prove the
11  defense to Ms. Bennett's claim without getting into Ms.
12  Boylan's allegations.  They're inextricably intertwined
13  for Governor Cuomo's defense.  And the problem with
14  saying you can - the problem with saying all you need to
15  know is what Ms. Bennett heard and you don't need to
16  look under the hood of that, it's putting Governor Cuomo
17  in an untenable position where he doesn't really have
18  that defense.  He can't really put it on because he's,
19  he's in this position of choosing do I put on more
20  evidence of allegations against me in order to show that
21  Ms. Bennett's story changed for a reason or why her
22  story changed at the risk of prejudicing myself by
23  introducing, by voluntarily introducing these irrelevant
24  allegations, you know, otherwise irrelevant.  I mean the
25  only reason that Ms. Boylan is relevant is that she was
```

PROCEEDINGS                          18

1

2   having these conversations and telling Ms. Bennett what

3   happened.

4            THE COURT:  What discovery do you have from Ms.

5   Boylan to date?  What's the status of the parties'

6   meeting and conferring and Ms. Boylan producing

7   documents to you?

8            MS. TRZASKOMA:  We have no documents from Ms.

9   Boylan.  We have been in communication – there are two

10  orders, one in this case and one in Troope 1, for –

11  there's overlap between the orders, that there are ways

12  in which the two orders are different.  We have been in

13  conversation with Ms. Boylan's counsel about search

14  terms which is proving to be quite a challenge for us,

15  but we're working on that, Your Honor.  The other thing

16  is that we have asked Ms. Boylan to agree that whatever

17  is produced in Trooper 1 can be used in this case and

18  vice versa, whatever's produced under the Bennett order

19  can be used in Trooper 1, and Ms. Boylan's counsel has

20  not agreed to that.

21           So we're, you know, we don't have anything yet.

22  We're going to have certain things.  We have, as Ms.

23  Boylan pointed out in her letter, appealed the discovery

24  decision in the Trooper 1 case with respect to Boylan,

25  discovery related to Ms. Boylan.

```
 1                        PROCEEDINGS                    19
 2            But right now we have nothing, and I do think,
 3   you know, it is critical for Governor Cuomo's defense of
 4   Ms. Bennett's allegations, not to clear his name, he's a
 5   defendant in this lawsuit.  He did not file this
 6   lawsuit.  He did not file the Trooper 1 lawsuit.  These
 7   are lawsuits that were filed against him.
 8            THE COURT:  Neither did Ms. Boylan.  Like she's
 9   not here.  He's not suing her.  She's not suing him.
10            MS. TRZASKOMA:  Well, Ms. Boylan is – she's a
11   non-party witness.  That is always the case is with non-
12   party witnesses.
13            THE COURT:  And I've ordered a lot --
14            MS. TRZASKOMA:  That she didn't chose --
15            (interposing)
16            THE COURT:  I've ordered a lot of discovery
17   that she's going to have to produce.  We talked about –
18   it sounds like there are a ton of communications that
19   fall within the scope of what I have already ordered her
20   to produce and about which you are meeting and
21   conferring.
22            I understand that you're frustrated that you
23   don't have anything now, but you're making this argument
24   as if we're, as if I hadn't already ordered discovery
25   from her.  We already understand that she is relevant.
```

```
 1                         PROCEEDINGS                    20
 2   She's not as relevant as the Trooper 1 case because the
 3   allegations are different, but clearly her
 4   communications with Ms. Bennett are relevant.  I have
 5   found that, and I've ordered that they be produced.
 6              And so what I struggle with is opening the
 7   whole floodgates to everything that you've asked for and
 8   all the other requests about Ms. Boylan.  You're going
 9   to get whatever Ms. Boylan said to Ms. Bennett and vice
10   versa.  And all that goes to the defense that you were
11   just discussing.  What I don't understand is why opening
12   the door to everything else about Ms. Boylan's career in
13   Albany and her relationship or lack thereof with the
14   Governor or anybody else has anything to do with the
15   claims or defenses in this case.
16              MS. TRZASKOMA:  Well, Your Honor, it is
17   absolutely critical to Governor Cuomo's defense that
18   when Ms. Boylan spoke with Ms. Bennett, she
19   misrepresented the facts, and we cannot, we cannot make
20   that defense --
21              THE COURT:  How?  How does that --
22              MS. TRZASKOMA:  how did she misrepresent?
23              THE COURT:  No.  Let me finish.  How does the
24   fact that Ms. Boylan was lying, assuming that she was,
25   have anything to do with whether, what Ms. Bennett is
```

1

2  alleging happened to her, did or did not happen?

3          MS. TRZASKOMA:  I'll try to say this one more

4  time.  Governor Cuomo's defense is that Ms. Bennett did

5  not describe, did not complain about sexual harassment,

6  did not complain that Governor Cuomo was sexually

7  harassing her in these, you know, that her allegations

8  about sexual harassment were new after she talked to Ms.

9  Boylan.  And it is in the context of that that why Ms.

10  Bennett changed her story at that moment in time is that

11  she believed, potentially, she was told by Ms. Boylan

12  that Ms. Boylan had similar experiences working with

13  Governor Cuomo.

14          THE COURT:  Right.

15          MS. TRZASKOMA:  Right, so fast forward to

16  trial.  We're putting on that defense.  How can we put

17  on that defense in front of a jury and say Ms. Boylan

18  said to Ms. Bennett she had been, Ms. Boylan had been

19  sexually harassed too without also being able to turn to

20  the jury and say, by the way, jury, Ms. Boylan wasn't

21  sexually harassed.  She was lying.

22          THE COURT:  Right, but --

23          MS. TRZASKOMA:  Because the jury's going to be

24  left with the totally false impression that what Ms.

25  Bennett heard from Ms. Boylan was true, and that is

1

2  highly prejudicial to Governor Cuomo.  And it is

3  basically saying to us you can't put on that defense

4  because if you do, you're just going to have to let the

5  jury, let that hang out there in front of the jury.  And

6  I'm not going to give you the evidence that you need to

7  be able to establish conclusively or by stipulation that

8  what Ms. Boylan said was not true.

9           THE COURT:  I'm sorry that you feel --

10          MS. TRZASKOMA:  Your Honor --

11          THE COURT:  -- keep explaining things to me,

12  Ms. Trzaskoma, but I do appreciate you indulging me.

13  Ms. Perry --

14          MS. SCHNELL:  Your Honor - I'm sorry to

15  interrupt, this is Laura Schnell.  May I be heard on

16  some of this?  Because the whole premise of what Mr.

17  Cuomo is saying is just wrong on the facts of Ms.

18  Bennett.  May I --

19          THE COURT:  I'd like to hear from Ms. Boylan

20  first.  I will certainly give you a chance to be heard,

21  but I'd really like to, in order to try to do this in an

22  organized fashion, I'd like to hear from Ms. Boylan

23  next.

24          MS. SCHNELL:   Of course, Your Honor, thank

25  you.

| 1 | PROCEEDINGS | 23 |

2          THE COURT:  Ms. Perry.

3          MS. PERRY:  I'm sorry, Your Honor.

4          THE COURT:  Go ahead, if there's anything you

5  want to respond to, then I have several questions for

6  you.

7          MS. PERRY:  Yes.  I do think that Ms. Schnell

8  was about to say what I'm probably not as well

9  positioned to say, although I do have some understanding

10 of, which is that they have not begun to establish, and

11 these new materials do not at all establish, that Ms.

12 Bennett at all changed her story on, you know, because

13 of any intervention by Ms. Boylan.  These videos do not

14 show that at all.  The first in the series of videos,

15 and I, of course, am hamstrung a bit because I do

16 understand that these videos are confidential, but so I

17 guess I will just leave it at that --

18         THE COURT:  I've watched them all, so you

19 don't, I understand generally.

20         MS. PERRY:  Okay.

21         (interposing)

22         THE COURT:  -- that I don't really understand,

23 but I have watched them all.

24         MS. PERRY:  Okay, so I just look in very

25 general terms as well, but certainly the ones like I can

1

2  describe, you know, that involve my client show what I

3  would describe as just support and not manipulation or

4  attempt to, you know, to goad Ms. Bennett in any way.

5          But, you know, apart from that, I guess just

6  with respect to the arguments that go to relevance and

7  proportionality, I'm afraid I just have to repeat what

8  we said the first time and what Your Honor has said only

9  because Ms. Trzaskoma hasn't put forward any new

10 arguments here.  All she's asking for really is a mini

11 trial because none, you know, none of the materials that

12 they're asking for, and, again, they really haven't at

13 all pointed to exactly what they'd be looking for in

14 additional requests that would go to, you know, to

15 anything in particular other than what Your Honor has

16 already ordered be produced.

17         But it really is, and I hate to use the tired

18 old expression, but really would be a fishing

19 expedition.  Your Honor has ordered that communications

20 between Ms. Bennett and Ms. Boylan be produced.  We have

21 proposed search terms last Friday.  I don't believe

22 we've heard back yet from the defendant on this, but we

23 have already, we have a universe of potentially

24 responsive documents already segregated, and I believe

25 that they can readily be produced.

PROCEEDINGS                          25

2      And so, you know, Ms. Bennett will stand, you

3 know, on her allegations.  This case will be tried on

4 those allegations and the defenses.  And I believe the

5 documents that we will produce will either, will

6 substantiate Ms. Trzaskoma's, you know, the defense that

7 she has put forward here that Ms. Boylan had made the

8 whole thing up and has instigated Ms. Bennett or they

9 won't.  Of course, our position and Ms. Bennett's

10 position is that they absolutely will not, but the

11 documents that Your Honor's ordered to be produced will

12 show that or they won't.  And I think that's really all

13 that I could say about that, and I'm sure Ms. Schnell

14 can add some more.

15      THE COURT:  Thank you.  I understand that Ms.

16 Boylan is a non-party, but I am a little disappointed

17 that we're a month from our last conference and we're

18 only just at this stage, we haven't even finalized

19 search terms let along Ms. Boylan having produced any

20 documents yet.  So clearly I'm going to need to monitor

21 you guys and put you on a much shorter timetable if

22 that's going to happen.  Because one inference here is

23 that it will help a lot if Ms. Boylan at least produces

24 something to diffuse potentially some of the arguments

25 that Ms. Trzaskoma was just making.

```
 1                        PROCEEDINGS                      26

 2              MS. PERRY:  Your Honor, we are --

 3              (interposing)

 4              MS. PERRY:  -- I think they will support us.

 5    We have been working diligently, and we did provide

 6    those search terms last Friday, and we just have not

 7    heard back.

 8              THE COURT:  Okay, well, could you speak to what

 9    Ms. Trzaskoma said she had proposed which was to agree

10    that anything that Ms. Boylan were to produce in the

11    Trooper 1 case could be used here.  Obviously, I assume

12    that that proposal is without prejudice to whatever

13    merits arguments or admissibility arguments or anything

14    else would be made, and I'm certainly not saying that

15    everything that's produced in the Trooper 1 case is

16    relevant here.  But just as a practical matter, doesn't

17    that facilitate a practical solution here?

18              MS. PERRY:  Well, as Your Honor pointed out,

19    the complaint and the allegations are very different in

20    that case.  At the core of the complaint there is an OAD

21    report and, of course the complaint of 11 other women,

22    and that was the basis for Judge Merkel's ruling there.

23    Of course, she significantly narrowed the very broad

24    subpoena there as well.

25              Having said that, I was not party to the meet
```

PROCEEDINGS                                    27

1

2    and confers there.  My co-counsel Julie Gerchik was.

3    And so I actually cannot speak to this, but I would ask

4    that Ms. Gerchik be allowed to speak to this particular

5    point if that's okay with Your Honor.

6              THE COURT:  Yes, that's fine.  Ms. Gerchik, can

7    you weigh in on this idea of trying to come to some

8    agreement about the Trooper 1 materials?

9              MS. GERCHIK:  Yes, absolutely, Your Honor,

10   thank you.  It's our position is that this is what with

11   respect to judges in both cases say, I'm sorry, just to

12   be clear, we made this very clear on the call that we

13   had last Friday that this is up to the parties and the

14   judges in both cases.  So we have reached

15   confidentiality orders, etc.  But if the parties, both,

16   you know, Judge Merkel (indiscernible) how this case

17   should proceed, we are fine with that.  We basically

18   just said, you know, we don't have a position, but we're

19   not going to just agree to do it and do it until we've

20   heard from respective courts, that's all.

21             THE COURT:  Okay, well, I mean this is the

22   first I'm hearing that there's even been any discussion

23   about it.  It's not mentioned I don't think in the

24   parties' letters that some kind of resolution would be

25   possible.  I'm pretty sure that there are other

 1
 2  materials that, I think as Ms. Schnell alluded to a
 3  little while ago, that the parties have agreed could be
 4  used in either cases just for purposes of efficiency or
 5  at least that there are some categories like that are
 6  under discussion.  So that's one of the things that I'd
 7  like to hear from Ms. Schnell about.  But if you're open
 8  to considering that, like I said, without prejudice to
 9  any of the merits arguments or evidentiary bases or,
10  frankly, even relevance objections but just in terms of
11  efficiency, to save everybody a whole lot of time, to
12  the extent that things only need to be produced once,
13  that is potentially a pragmatic solution here.
14          So, Ms. Schnell, you wanted to weigh in, and if
15  you could speak to the idea of some kind of agreement
16  about information sharing as well.
17          MS. SCHNELL:   Yes, first, Your Honor, just the
18  whole premise of the defendant's argument is just
19  faulty.  Ms. Bennett complained about sexual harassment
20  to the defendants, Ms. DesRosiers, Ms. Mogul, and Ms.
21  DeRosa in June of 2020, and there are contemporaneous
22  notes of that conversation confirm her complaints and
23  her, what she has said happened has not changed since
24  then.  And she first spoke or contacted or had any
25  contact with Lindsey Boylan in December of 2020, six

1  months later.  So the idea that any contact with Lindsey

2  Boylan made her change her story has absolutely no

3  record base.

4       And I apologize for the fact that we filed that

5  letter that you struck, Your Honor, but the reason we

6  filed it and I should've asked the Court's permission

7  was we find it incredibly horrible for defendants to be

8  filing letters on a third-party subpoena issue calling

9  our client a liar  Public documents calling her a liar,

10 to just get it out into the public for no legitimate

11 litigation purpose.  And we don't want, we don't think

12 that's a proper use of this Court to be able to file

13 these letters calling our client a liar which is a

14 repetition of what happened right after the Attorney

15 General report and kept going on.

16       THE COURT:  Understand.  Do you speak to the

17 idea of there being some agreement between the parties

18 and Ms. Boylan about whatever she produces in the

19 Trooper 1 case at a minimum being available here without

20 prejudice to any arguments that the parties might have

21 about how it actually gets used in this case?

22       MS. SCHNELL:   Yes, for discovery purposes only

23 but certainly with no agreement that there's any

24 relevance and that it will not be used to justify, since

1
2  we have it, now we get a deposition of Ms. Boylan who is

3  not --

4         THE COURT:  I think - I'm pretty sure a

5  deposition of Ms. Boylan is going to happen.  To some

6  degree or how long it is and what the topics are is

7  maybe another question.  But we've reserved that the

8  last time, but I wouldn't rely on preventing Ms.

9  Boylan's deposition in this case.

10         MS. SCHNELL:   Well, but, Your Honor, I mean,

11  again, Ms. Boylan is not going to be a witness in this

12  case.  We have said we have no intention of calling her.

13  It is a very different matter than the Trooper 1 case,

14  as Your Honor is aware, where they have not said that.

15  In fact, there's allegations about Ms. Boylan throughout

16  the Trooper 1 complaint.  It's very different here.  And

17  we are trying to narrow discovery to get this case to

18  trial, and the idea that, you know, they will be able

19  to, again - what they want these documents for is

20  exactly the mini trial, that's what they want.  They

21  want to depose her on her own claims which we do not

22  think has anything to do with our case.

23         THE COURT:  All right, well, like I said, we're

24  not dealing with the issue of the extent and topics for

25  Ms. Boylan's deposition today, but am I - you're open to

1

2  discussing with Ms. Perry and Ms. Trzaskoma and their

3  colleagues some kind of agreement about a protective

4  without prejudice for sharing of what Ms. Boylan

5  produces in the Trooper 1 case.

6         MS. SCHNELL:   Yes, with proper serious

7  confidential provisions, yes.

8         THE COURT:   All right, so hopefully let's have

9  the parties meet and confer about that agreement, and

10  we'll hopefully moving that along so that if there are

11  any open issues about it, we'll be in a position to

12  discuss them at our next conference.

13         Ms. Trzaskoma, is there anything else you want

14  to add about Ms. Boylan today?

15         MS. TRZASKOMA:   Yes, Your Honor, I just have to

16  correct a couple of points for the record.  First of

17  all, Ms. Bennett I don't believe ever spoke with Ms.

18  DeRosa in June or any other time about allegations of

19  sexual harassment or any other complaints like that.

20  Second, she did not – the record is clear that when she

21  complained in June of 2020, when Ms. Bennett complained,

22  that the people to whom she complained, the other

23  defendants, did not believe what she was describing was

24  sexual harassment.  And as for calling Ms. Bennett a

25  liar, what our letter points out is that Ms. Bennett's

```
 1                        PROCEEDINGS                      32

 2   own words, her own contemporaneous statements

 3   demonstrate that the allegations in her complaint are

 4   false.  We didn't call Ms. Bennett a liar, she called

 5   herself a liar.

 6            So that is, you know, what's truly outrageous

 7   here is that Ms. Bennett's, you know, allegations that

 8   certain conversations were harassing when at the time

 9   she described, at the time the conversations happened

10   she described them in a very different way that that's

11   what's outrageous here.  That those allegations against

12   Governor Cuomo are out there, it's extremely frustrating

13   then to have, you know, Ms. Bennett who filed complaint

14   against Governor, a public complaint against Governor

15   Cuomo that is full of inaccurate allegations and that

16   somehow there's something wrong when Governor Cuomo

17   filed a letter pointing that out, I'm gob smacked at the

18   suggestion that there's anything improper that we did

19   here.

20            THE COURT:  Right --

21            (interposing)

22            MS. TRZASKOMA:  And, again, as --

23            THE COURT:  Go ahead.

24            MS. TRZASKOMA:  Yeah, and as for Ms. Boylan,

25   the whole point is to avoid - we're in the discovery
```

1

2   phase.  The questions about the truth or falsity of Ms.

3   Boylan, of what Ms. Boylan said to Ms. Bennett is within

4   squarely within the scope of relevance here.  And the

5   whole point of getting that discovery now is so that we

6   can avoid a mini trial.  Otherwise, we are going to get

7   to trial, and I would like there to be a stipulation,

8   I'd like there to be an instruction to the jury that the

9   allegations are not true.

10          THE COURT:  All right, so --

11          (interposing)

12          MS. TRZASKOMA:  Otherwise, if we get --

13          THE COURT:  -- we're so far from that concept,

14   Ms. Trzaskoma.  So you just said we're in discovery, so

15   let's not, we're not at the final pretrial conference.

16   So please let's focus on what we have here.  It sounds

17   like Ms. Boylan's counsel and Ms. Bennett's counsel are

18   willing to engage with you on some kind of agreement

19   that would allow for the sharing of what Ms. Boylan

20   produced in the Trooper 1 case for discovery purposes in

21   this case without prejudice to any parties' arguments or

22   objections as to relevance or evidentiary issues.  Can

23   you go back to the table on that and hopefully try to

24   reach some agreement that avoids having to continue to

25   talk about the same things over and over again?

```
 1                          PROCEEDINGS                    34

 2              MS. TRZASKOMA:  Here's the problem, Your Honor,

 3    is that I think, you know, for some of the same reasons,

 4    I understand the order, the discovery order with respect

 5    to Ms. Boylan and Trooper 1 is we believe and, you know,

 6    it is incorrect for the same reason and, you know,

 7    precludes discovery into some of the same areas that

 8    we've been talking about today.  The circumstances, you

 9    know, including the circumstances of Ms. Boylan's

10    departure from ESD and whether she left, as she told Ms.

11    Bennett and as she told the world, because of sexual

12    harassment or whether she left for another reason.  And

13    so it's, you know, if Your Honor is going, having us

14    meet and confer about a sharing agreement doesn't solve

15    the underlying problem.

16              THE COURT:  Well, I will be clear, that you

17    have not shown me anything that changes my decision at

18    our January 4 conference about which requests Ms. Boylan

19    needs to respond to.  Looking at the factors that I have

20    to consider, as I said before, I don't believe that any

21    of the requests other than 1 and 17 are relevant and

22    proportional to any claim or defense in this case.

23              I understand that the issues in this case are

24    extremely important to both sides and to members of the

25    public as well.  But considering also the parties'
```

1

2    access to information from other sources, the lesser

3    importance of this case of Ms. Boylan, what happened to

4    Ms. Boylan as distinguished from the truth or falsity of

5    Ms. Bennett's allegations, and the extent to which Ms.

6    Boylan producing more as Ms. Cuomo is asking her to do,

7    the extent to which that's going to help us resolve the

8    issues in this case remains, I remain unconvinced about

9    that.

10            And then, finally, I'm also mindful of the

11   burden and expense both to the parties in this case of

12   going down such, going down that road as well as the

13   burden to Ms. Boylan.  So the order of January 4 as to

14   the scope of what Ms. Boylan needs to produce in

15   response to the subpoena will stand, but to the extent

16   that the parties can reach an agreement as to what has

17   been ordered to be produced by Ms. Boylan in the Trooper

18   1 case, so its negotiations can continue and hopefully

19   be helpful to letting us move on.  And as we've heard,

20   we have depositions coming up, so we should be

21   definitely moving toward getting what we need to get

22   from Ms. Boylan so that we don't have to reschedule any

23   depositions.

24            Is there anything else further with respect to

25   Ms. Boylan that we need to talk about today?

PROCEEDINGS                          36

1

2          MR. MORVILLO:  Your Honor, this is Greg

3   Morvillo.  May I just make two quick points?

4          THE COURT:  Sure.

5          MR. MORVILLO:  So the first is I just want to

6   make sure that the record is completely clear that Ms.

7   DeRosa never spoke to Ms. Bennett about any of this, and

8   I think Ms. Schnell said that she spoke to the

9   defendants.  That's not true, she did not speak to Ms.

10  DeRosa.  I just want to make sure that that was crystal

11  clear.

12          And the second issue is back when we last met

13  by phone, we had the discussion about the subpoenas, and

14  Your Honor told us on behalf of Ms. DeRosa with Ms.

15  Boylan to meet and confer about search terms and

16  productions.  And I want to make sure that it is, that I

17  understand what's happening here which is that the same

18  general requests that you have ordered Ms. Boylan to

19  search for or produce in relation to the Governor will

20  be done for Ms. Boylan as well, I'm sorry, for Ms.

21  DeRosa as well because I don't want us to get into this

22  do these search terms and have Ms. Boylan's counsel say,

23  well, no, the Judge didn't order us to do that.  They

24  just ordered a meet and confer between you two, meaning

25  Ms. Boylan and Governor Cuomo.  So I want to make sure

1

2  that Ms. DeRosa is included in that because that was my

3  understanding when we came out of it.  I just want to

4  make sure that's still where we are.

5          THE COURT:  Nobody should be siloed here.  If

6  you're taking anything away from this, it's that we're

7  only doing this once.  And everybody should be

8  communicating with each other and nobody should be left

9  out of conversations in order to get this done.

10         MR. MORVILLO:  Yeah, and but also documents,

11 right, it's not just the conversation.  I've been kindly

12 invited to participate in everything, but I mean that

13 Ms. Boylan's supposed to be searching for documents that

14 are relevant to Ms. DeRosa as well.  Is that right?

15         THE COURT:  So you should be part of the

16 conversation about what the search terms are so that

17 she's only doing one search.

18         MR. MORVILLO:  Got it.  Thank you.  Thank you,

19 Judge.

20         THE COURT:  Okay.  Someone else wanted to jump

21 in?

22         MS. TRZASKOMA:  Yeah, just briefly, Your Honor,

23 Theresa Trzaskoma.  I just wanted to make sure because I

24 think it wasn't entirely clear to us, based on Your

25 Honor's January 4 order, just to be clear, this is Your

```
 1                        PROCEEDINGS                    38
 2   Honor's final order with respect to the subpoena to Ms.
 3   Boylan in terms of what (pause).
 4           THE COURT:  Are you asking so you know whether
 5   or not you should appeal?  I mean you didn't appeal from
 6   the last one and the time to do so has expired.  So --
 7           MS. TRZASKOMA:  No, we didn't appeal because,
 8   Your Honor, it did not, I mean we understood the order
 9   to be, we understood that the order was provisional and
10   not a final closing of the door with respect to the
11   subpoena.
12           THE COURT:  Well, what I said in the order is
13   that you could come back under showing of good cause to
14   try to convince me as to the remaining items.  You have
15   not done that.  The fact discovery is still ongoing.
16   So, you know, it's still possible.  I'm not sure that it
17   - I can imagine the circumstances that would get me to
18   change my mind, but as long as - and we also haven't
19   finalized whether the parties are going to reach an
20   agreement or not.  So it's significant to me to
21   understand whether the parties can come to an agreement
22   about sharing of information.
23               (pause in proceeding)
24           THE COURT:  I'm not going to advise you about
25   when your time to appeal is running or not, Ms.
```

1                              PROCEEDINGS                        39

2   Trzaskoma.  That's up to you.

3              MS. TRZASKOMA:  Okay, well, thank you, Your

4   Honor, we'll look at the transcripts.

5              THE COURT:  Okay, thank you.  So as far as next

6   steps for Ms. Boylan then, Ms. Perry, you said that you

7   had provided search terms last week.  Did you include

8   Mr. Morvillo in the distribution of those search terms?

9              MS. PERRY:  I believe so, Your Honor, again, I

10  wasn't in that meet and confer, but my understanding is

11  that we agreed on the call to include Ms. DeRosa in the

12  searches in that meet and confer.  Ms. Gerchik or Ms.

13  Oehlke can correct me if I'm wrong or Mr. Morvillo.  But

14  my understanding is consistent with what Your Honor just

15  said just now, and we're happy to do that.  It certainly

16  makes sense for efficiency purposes.

17             THE COURT:  Okay, so we'll –

18             (interposing)

19             MR. MORVILLO:  Your Honor, this is Greg

20  Morvillo.  I did receive the search terms.  I just want

21  to make sure that you understand we did receive the

22  search terms.  We are participating in it.  I just

23  wanted to make sure that the documents that were going

24  to be searched would include the terms that we were

25  proposing as well.  And I think it's clear enough, thank

1                         PROCEEDINGS                    40

2   you.

3            MS. PERRY:  Yes, Your Honor, I believe – we

4   sent our emails with proposed search terms on Friday,

5   January 26, and we requested that Mr. Cuomo propose

6   their own, and I believe we have not received anything

7   back.  So we're very open to those, but it's been almost

8   a week.

9            THE COURT:  Okay.  All right, well, we'll be

10  setting a time for the next discussion and/or status

11  letter.  So hopefully that will provide some incentive

12  for people to move things along.  Okay, I guess the only

13  last open, potentially open issue with respect to Ms.

14  Boylan though is the letter that Mr. Cuomo had filed

15  that was redacted, there was a redacted and an

16  unredacted version.  Ms. Schnell, do you have a position

17  on the unredacting or the public filing of the

18  unredacted version of Mr. Cuomo's letter?

19            MS. SCHNELL:   We are opposed to it, Your

20  Honor.

21            THE COURT:  All right, well, I'll have to take

22  a closer look at that then.  Ms. Trzaskoma, do you wish

23  to be heard on the sealing or unsealing?

24            MS. TRZASKOMA:  Yeah, as we noted I think in

25  our letter, Your Honor, we don't think, the videos have

1

2  been designated as confidential, but we don't think they

3  are confidential, but particularly to the extent they

4  relate to Ms. Bennett's public allegations against

5  Governor Cuomo, you know, the letter in its entirety

6  along with the link to the videos should be made public.

7  But even if the videos, the underlying videos are not

8  made public, certainly what is in the letter and what is

9  currently redacted from the public version of the letter

10 is, there is nothing, you know, personally sensitive or,

11 you know, anything that's unrelated to the allegations

12 and should definitely be made public.

13          THE COURT:  Right, I think though we needed

14 something more from you if you want to redesignate it,

15 Ms. Trzaskoma.  The order, I'm not sure which order it

16 was, was the one scheduling this conference or striking

17 the letter, but that you needed to follow the procedures

18 in the protective order which includes the additional

19 meeting and conferring.  I mean we've sort of done that

20 here a little bit, but if I could ask you to just meet

21 and confer with Ms. Schnell just one more time and see

22 if there's a way even to minimize the redactions in the

23 letter so that as much of it as possible could be

24 publicly filed, and that's another thing that you'll

25 update us on between now and then.  But for now --

```
 1                          PROCEEDINGS                      42

 2            MS. TRZASKOMA:  Yes, Your Honor, we certainly

 3    will.

 4            THE COURT:  Okay, great.  For now the letter

 5    will remain as it is, but you can renew the request for

 6    unsealing or revising the redactions in due course.

 7    Okay, anything else on Ms. Boylan before we move to the

 8    Attorney General?  Okay.

 9            All right, so thank you, Ms. Longley, for your

10    patience.  I hoped to get to you sooner, but I

11    appreciate you bearing with us.  So as I understand it,

12    since our last conference on January 4, there has been

13    an Article 78 proceeding that's been filed in state

14    court.  Can you update me on the status of that

15    proceeding?  I know it was filed by Mr. Cuomo, but what

16    the Attorney General's deadline is for responding and

17    the future of those proceedings.

18            MS. LONGLEY:  Hi, Your Honor, yes.  It is true

19    Cuomo did file an Article 78 against the Attorney

20    General.  That is, I think that the Court automatically

21    set the deadline around February 20 I want to say for

22    our office to respond, but we're in the process of

23    extending that.  It hasn't been set yet.

24            THE COURT:  Okay.  And what is the – I

25    understand you'll file a written response, but then
```

```
 1                        PROCEEDINGS                    43
 2   after that what happens?  Is there some discovery period
 3   or is there just a hearing in front of, in the state
 4   court or?
 5        MS. LONGLEY:  So under Article 78 discovery is
 6   not automatic, it's disfavored, and it's unlikely, I
 7   mean and I don't know, I don't know if the petitioner,
 8   Mr. Cuomo, would seek discovery.  I think we would
 9   oppose that.  Article 78 proceedings are designed to be
10   somewhat streamlined, quicker proceedings than your
11   average action in state court, and so I don't think it's
12   likely there'll be discovery.  It'll probably be decided
13   on papers.  Sometimes there's oral argument.  It really
14   depends on the judge.
15        THE COURT:  And are the objections that the
16   Attorney General may have, and I realize you haven't
17   filed your response yet, but are they the same
18   objections generally that the Attorney General has
19   lodged to the subpoena in this case?  In other words,
20   sovereign immunity, privilege, etc.
21        MS. LONGLEY:  Yes.  So they won't be unless
22   largely because the standard is different under Article
23   78, and it's a different, you know, and the Article 78
24   standard is really, it's about is the public entitled to
25   disclosure of the information, the record that is being
```

PROCEEDINGS                    44

1  sought.  And so there's, that, there's a set of

2  different standards, there's different exemptions.  Many

3  of the exemptions recognize privileges.  But one of the

4  biggest issues at play in the Bennett, in response to

5  the Bennett subpoena is, of course, sovereign immunity,

6  and under the Article 78 proceeding standard, there is

7  no sovereign immunity defense for our office to raise.

8  So we won't be raising that, so that issue's out.

9          Many of the privileges are the same, but we

10  don't have relevance or really proportionality

11  arguments.  It either can be burden arguments.  But,

12  again, you know, we're sort of at the early stages.  The

13  petitioner in that case waited until the final day to

14  file.  They could've filed that Article 78 sooner.

15          The other this is that the Article, the FOIL

16  process is still underway, so their actual Article 78

17  petition against office may be premature, and that's

18  another issue that will get briefed by us.

19          THE COURT:  So it's possible, if the Attorney

20  General were hypothetically just to produce what it is

21  Mr. Cuomo's asking for, it could be mooted?

22          MS. LONGLEY:  Yes, Your Honor, yes.  And

23  there's a production, you know, there's ongoing review

24  and potential production, and really what Mr. Cuomo has

PROCEEDINGS                    45

1  challenged is the amount of time that the Office

2  estimated it would take to do the review, and he is

3  calling that a, quote, "constructive denial."  We don't

4  think it is.  We think the FOIL, the FOIL request that

5  he made to our office is still open and actively being

6  worked on by the office.

7

8           THE COURT:  All right, thank you.  Okay, so I'm

9  just – we had punted on the Attorney General issues for

10  a different reason which was to see whether anything had

11  happened in the proceeding in front of Judge Merkel.

12  So, Ms. Longley, can you speak to that, whether there

13  have been any developments that I should be aware of in

14  terms of her – I believe she was undergoing a privilege

15  review of some of the memos.

16           MS. LONGLEY:  Yes, Your Honor, we haven't

17  received any additional rulings or orders from Judge

18  Merkel.  We understand that the arguments are still

19  under review, and specifically there is a pending motion

20  for reconsideration that Mr. Cuomo filed.  That hasn't

21  been ruled on.  And as we discussed at the last

22  conference, we did provide a privilege log, we've

23  provided some documents that Judge Merkel asked for in

24  camera review.  We've submitted those.  And we haven't

25  heard from her yet, and we don't have a, we don't have

1    anything giving us a sense of when we will hear from

2    her, but I do expect that we will hear from her and that

3    she is reviewing the materials in anticipating, in

4    anticipation of making some rulings that would bear on

5    the same issues that are now, that the defendant Cuomo

6    in the Bennett case is seeking, the premotion conference

7    here, so that he can move to compel.

8         THE COURT:  All right, Ms. Trzaskoma.

9         MS. TRZASKOMA:  Yes, Your Honor, I guess I have

10   a few things to add here.  So, first of all, so I think

11   it should be clear to Your Honor that if we have any

12   hope of complying with the discovery schedule that we

13   just talked about at the beginning of this call, we

14   really need to get the issues relating to the AG's

15   subpoena.  The subpoenas both to the Office of the

16   Attorney General as well as our subpoenas to the Cleary

17   law firm and to the Vladeck law firm.  I don't think

18   that we should wait either for the Article 78 proceeding

19   which sounds to me, reading the tea leaves, like there's

20   going to be, there are going to be some procedural

21   arguments about whether we, you know, our filing was

22   mooted or not mooted or partially mooted.  But they have

23   the, the Attorney General's Office has asked for a

24   significant extension to respond to that.  We, you know,

PROCEEDINGS                    47

1   in part because of discovery deadlines in this case and

2   in Trooper 1, we have not agreed to that, but I don't

3   know whether the court in the Article 78 proceeding will

4   agree.

5       We also, you know, just on Judge Merkel's

6   privilege review, the materials that are in front of

7   Judge Merkel for her privilege review overlap in some

8   respects with what we are seeking from the Attorney

9   General in this case, but they are far from identical

10  universes of information.  So it's entirely possible

11  that Judge Merkel will make certain rulings in Trooper 1

12  as to privilege claims that won't obviate the need for

13  this Court to do the same thing with the materials that

14  have been requested here.

15      And then, finally, Your Honor, just on this

16  sovereign immunity point, I know that in Ms. Boylan's

17  letter from yesterday and in the now stricken letter

18  that there have been references to a settlement

19  agreement between the Department of Justice and the

20  executive chamber, and we are, Governor Cuomo, neither

21  Governor Cuomo nor his former senior leadership

22  including the defendants in this case were ever

23  contacted about that investigation.  So we have been

24  trying to figure out what if anything the Department of

1
2  Justice did to investigate.  It appears to us that the
3  Department of Justice relied on the investigation that
4  the AG's office conducted.
5           And so part of that - for example, Ms. Bennett
6  confirmed that the AG or that the Department of Justice
7  never contacted her or spoke with her.  We have asked
8  Ms. Boylan whether she was interviewed by the Department
9  of Justice, and her counsel has not responded to that
10 question.  And we did ask the Attorney General's Office
11 whether the AG's office had provided to the U.S.
12 Department of Justice any additional materials that were
13 not otherwise made public because in our view any such
14 production by the AG's office would be wholly
15 inconsistent with the claim of sovereign immunity that
16 they're relying on to resist this federal court subpoena
17 and, indeed, would constitute a waiver, you know, as to
18 those materials for sure and potentially a broader
19 waiver.
20          When we asked Ms. Longley whether the AG
21 produced to DOJ any additional materials, Ms. Longley
22 declined to tell us, and, in fact, you know, declined to
23 tell us whether there was a production; if there was,
24 what it consisted of; and instead made reference to
25 potential confidentiality agreement that may have been

1

2    relied on in making a production if a production

3    occurred.  And I'll just read what Ms. Longley said

4    exactly so that I'm not, so that I'm being clear.  I'm

5    just trying to pull up her email.  But in any event, she

6    said, "With respect to the DOJ investigation that has

7    corroborated AG's investigative findings, we decline

8    your request to provide any additional information about

9    what may have been shared, if anything, under

10   confidentiality agreements with other law enforcement

11   agencies."

12           And, you know, to that point, Your Honor, the

13   branch of the federal government that was conducting

14   that investigation was the Civil Rights Division, and

15   they were conducting an investigation to determine

16   whether to bring a civil lawsuit against the State.  And

17   so we have real questions about what happened there.  I

18   think it's, as I said, it's entirely possible DOJ did

19   nothing more than look at what was in the public record.

20   That's certainly, or little more than what was look –

21   they did little more than look at what was in the public

22   record that has been what's reported in the press.  But,

23   you know, we do need to know from the Attorney General's

24   Office what they turned over if anything that is among

25   the materials we're seeking here for the subpoena.

1                        PROCEEDINGS                    50

2            THE COURT:  All right, so how do we move this

3   along?  I'm already pretty far behind – both the Article

4   78 proceeding is probably going to get resolved before I

5   can get these issues teed up.  Judge Merkel may very

6   well as well.  So what're you proposing, Ms. Trzaskoma,

7   for how we move forward?  Are you wanting to move to

8   compel against the AG?  Are you wanting to move to

9   compel against Cleary and Vladeck?  Are you wanting me

10  to do a privilege review?  And hopefully not all of the

11  above.

12           MS. TRZASKOMA:  Well, I think, I mean, look, I

13  think if the Court is going to credit in any way the

14  sovereign immunity arguments, we need to tee up motions

15  to compel all three subpoenas and get those underway

16  because otherwise we, you know, we aren't going to be

17  able to comply with the discovery schedule.

18           THE COURT:  All right, well, when can you file

19  your motion to compel?  Or motions.

20           MS. TRZASKOMA:  Yeah.  Can I – would it be all

21  right if we alerted the Court later today with a

22  proposed schedule?

23           THE COURT:  Yeah --

24           MS. TRZASKOMA:  Understanding that we'll do it

25  on an expedited basis.

1

2          THE COURT:  It's going to be expedited, and

3    it's going to be a lot shorter.  I'm not getting three

4    separate 25-page briefs from you.  So I would strongly

5    urge you to make it be one motion, and I know that the

6    issues may be slightly different as to the law firms but

7    they should be the same, at least as to the law firms.

8    So consider how --

9          (interposing)

10          MS. TRZASKOMA:  Yeah --

11          THE COURT:  Go ahead.

12          MS. TRZASKOMA:  Yeah, certainly the privilege

13    issues are the same, but the sovereign, it's the

14    question of sovereign immunity is slightly different in

15    the context of the law firms.

16          THE COURT:  Okay.  But have you briefed all

17    these issues in front of Judge Merkel already, sovereign

18    immunity as well as the privilege issues?

19          MS. TRZASKOMA:  We have briefed some of these

20    issues, not all of them, and Judge Merkel noted that the

21    briefing that was done on sovereign immunity, that if

22    she were going to reach that issue, she would need to

23    require additional briefing.  So I think there's more

24    that we need to say and that we can say and that we will

25    say.

2              THE COURT:  Okay, well, propose what you want

3     to propose, but if I adopt this schedule, this is not a

4     reason to take us off track of August 16.  It is what it

5     is.  If it turns out that there's more that comes from

6     the AG and we have to redo some, reopen some

7     depositions, then that's fine, but the parties should be

8     aware that this is not a reason to take our foot off the

9     gas on everything else that we've been talking about.

10    Because all these issues are so uncertain, and the

11    timing of having them need to be resolved is uncertain.

12    And so we need to do everything that we can, that we're

13    finishing the things that we can finish, and this is not

14    a reason to drag things out.

15              So if you want to file a letter, Ms. Trzaskoma,

16    by tomorrow morning, if you can confer with all of your,

17    all the other counsel on this call and reach an

18    agreement and as to a proposed briefing schedule, I'll

19    consider it and I'll have to consider what else I have

20    going on and when I'll be able to get to it.

21              MS. LONGLEY:  Your Honor --

22              MS. TRZASKOMA:  Understood.

23              MS. LONGLEY:  Hi, Your Honor, this is Serena

24    Longley from the AG's Office.  Can I just respond and

25    raise a few issues regarding this proposed date for

1                              PROCEEDINGS                        53

2  briefing of the motion to compel?  One just sort of

3  technical issue is that I did try to raise the subpoenas

4  to the law firms on the last conference, and Your Honor

5  said it wasn't before you because it hadn't been

6  presented in a pre-motion letter, and that's still the

7  case.  Defendant Cuomo still has not, in asking for that

8  to be brought up.  So we – I think under your rules it

9  is premature.

10        That said, I do think that legal issues are

11  exactly the same and that the sovereign immunity defense

12  is exactly the same.  And so I'm not looking to be

13  overly technical or difficult, but I do think there's a

14  reason.  The subpoenas to the firms and sovereign

15  immunity there hasn't been briefed before Judge Merkel

16  because when Cuomo raised it before Judge Merkel, she

17  said it was a non-starter and that they were acting as

18  our agents and our attorneys, and there's no way that

19  they could get around sovereign immunity by subpoenaing

20  our lawyers.

21        So I think as non-parties who haven't even been

22  properly, you know, brought before, this issue hasn't

23  been presented properly for this conference but that it

24  is a significant expense and burden on us as a non-

25  party, on these law firms to have to litigate three

1                          PROCEEDINGS                        54

2  times over, actually six times over if you think about

3  it with the Trooper 1 case, the brief, you know, brief

4  and litigate the various subpoenas – sorry about that

5  noise – from Cuomo on this.  I think it is unduly

6  burdensome and inappropriate use of resources to have to

7  litigate that.

8              We still maintain our position that we should

9  wait for a ruling from Judge Merkel because the

10  sovereign immunity issues and some of the privilege

11  issues could have preclusive effect here on defendant

12  Cuomo in the Bennett case.  And so we stand by that, and

13  given our non-party status, given Your Honor's previous

14  concerns about conflicting rulings including conflicting

15  privilege rulings, we don't think that it makes sense

16  for us to have to brief everything again here before

17  Your Honor or for our law firms and agents to have to

18  also join in the briefing.

19              THE COURT:  All right, well, you make a good

20  point about the law firms who obviously are not here

21  unless they are here and they haven't told me.  So what

22  we can do it is we'll do the letter, meet and confer and

23  letter back and forth between now and our next

24  conference.  So – and we'll talk about the dates for

25  that in a second.  So the briefing schedule that you

1    provided to me, I'm going to assume that even if the law

2    firms appear, that they're not going to be producing

3    anything and they're going to stand on the same

4    objections.  So I think we can assume that the briefing

5    will have to go forward.  But I should hear from them,

6    but there's a possibility I shouldn't necessarily assume

7    that.

8        MS. TRZASKOMA:  Your Honor, may I just – it's

9    Theresa Trzaskoma.  Just briefly.  We did have a meet

10   and confer with the Cleary and Vladeck firms and are in

11   the process of putting a pre-motion conference letter

12   before Your Honor.  But I think we know where this is

13   headed, which is we're going to have to brief, we're

14   going to have to brief these issues as to all the

15   subpoena recipients, and, you know, it's inefficient to,

16   I mean it's completely inefficient to do it on a

17   staggered schedule or to just wait.  But if --

18       THE COURT:  Well --

19       (interposing)

20       MS. TRZASKOMA:  -- Your Honor wants us to --

21       THE COURT:  -- are not here, I have not heard

22   anything from the law firms.  So I should have an

23   opportunity for them to talk me out of why we even need

24   to brief this, for example.  So we can set a schedule,

1

2  you can set a schedule for --

3          MS. TRZASKOMA:  Yes.

4          THE COURT:  -- the AG briefs and that process

5  can get started, and there's some issues that, you know,

6  as we've discussed, are unique to the AG that could be

7  decided separately from the law firms.  You know,

8  there's several different ways potentially do this.  But

9  I should at least, Ms. Longley is right that I have not

10 so far heard from the law firms, and they should have an

11 opportunity to tell me why they think we shouldn't have

12 a briefing schedule as to them.  Was there something

13 else --

14         MS. TRZASKOMA:  No --

15         THE COURT:  Go ahead.  Go ahead.

16         MS. TRZASKOMA:  No, that's fine, Your Honor.  I

17 mean I think that's fine.  I will - I do want to correct

18 the record because Judge Merkel did not have, did not

19 have the benefit of any briefing when she made the

20 offhand comments that Ms. Longley was referring to, and

21 those issues have not been teed up for Judge Merkel.  So

22 I think it's appropriate - but we'll put that in our

23 letter.  I just want to make sure the record's clear

24 that Judge Merkel has not remotely ruled on this issue.

25         MS. LONGLEY:  But she did, Judge Merkel did

2  stay any further briefing or litigating over those

3  subpoenas because, and she didn't need briefing to rule

4  essentially that, or at least stay those and say that

5  the legal issues and arguments are the same, the

6  sovereign immunity defense is the same, they're our

7  agent, and that she's going to resolve the subpoena

8  directed at OAG first and then deal with the subpoenas.

9  Because it's going to be the same outcome.

10         So she didn't need briefing.  I didn't suggest

11  she had briefing.  I said she wouldn't even entertain

12  briefing because, frankly, it's really a frivolous

13  argument and a huge waste of everybody's time and

14  resources to be subpoenaing our lawyers who are also

15  deputized as agents of the Office of the Attorney

16  General and to try to get like materials from them that

17  you can't get from us.  It's just, it's a non-starter as

18  Judge Merkel said.

19         THE COURT:  Well, I've read the transcripts,

20  and I understand what you're referring to, but in

21  fairness I will, we will set a time, Ms. Trzaskoma, for

22  you to file your letter about the law firms, they'll

23  have a chance to respond, and we'll have them on, we'll

24  have them join us at the next conference.

25         All right, Ms. Longley, was there something

1

2    else, you had a couple of points you wanted to make.

3    Was there something other than the procedural posture?

4           MS. LONGLEY:  It was, I think if you're

5    referring to procedural posture, it's just renewing our

6    position that we set forth at the last conference that

7    we think that it makes sense and it's appropriate given

8    our non-party status to wait for Judge Merkel's ruling

9    before we have to brief the subpoena for the same types

10   of materials and the same objections before Your Honor.

11          THE COURT:  I hear your objection, and I share

12   your view that it would be, I would prefer not to have

13   this be decided twice, but at the same time I can't hold

14   up this case.  If we don't try to start moving this

15   forward, the risk is that Mr. Cuomo comes in and says,

16   well, we still haven't decided the OAG issue here, and

17   then we're starting from scratch.  So we're already, you

18   know, by my waiting a month in the hope that there might

19   be some clarity, in fact, what's happened over the

20   course of that month is there's even less clarity

21   because we now have the Article 78 proceeding.  And I'm

22   not saying that's causation; it's just unfortunately we

23   haven't moved to resolution of the AG issue any further

24   forward in the last month, and so I need to do something

25   in this case to make sure that it does get teed up.

```
 1                          PROCEEDINGS                    59
 2          MS. LONGLEY:  Okay, Your Honor, I completely
 3   understand.  Can I just make two comments?  One is, you
 4   know, as far as the Article 78 proceeding and the impact
 5   here, I don't really understand how that is relevant
 6   here.  And I will also just say I mean they, we
 7   suggested to Cuomo's attorneys over a year ago that they
 8   try to get materials through FOIL and then eventually
 9   Article 78.  They've only very recently submitted FOIL
10   requests, and now that's working its way through the
11   regular process.  So I'm not really sure what that has
12   to do with scheduling here.
13          But separate and part I do have a suggestion,
14   respectfully, that perhaps I wonder if it would be
15   appropriate or make sense for your chambers to contact
16   Judge Merkel's chambers and just see if there's a sense
17   on timing there.  We haven't done that ourselves, but I
18   wonder if it would be something that would make sense
19   and be in the interests of judicial economy and avoid,
20   you know, just to have a sense of the timing and maybe
21   safe us from briefing --
22          THE COURT:  You want me to call Judge Merkel
23   and say can you hurry up so I don't have to do any work?
24   That's not going to go over well.
25          MS. LONGLEY:  Okay, I didn't mean it like that.
```

```
 1                          PROCEEDINGS                    60
 2   Just, you know, if she knows that there's going to be a
 3   decision, you know, in the next week or two, that might
 4   be relevant to how you're treating the briefing schedule
 5   here or, you know, whether there's going to be briefing.
 6            THE COURT:  If we get probably down the road in
 7   the briefing and something happens that means that we
 8   don't have to go forward with it, I will be the first
 9   one to shout up and cheer.  But we need to get something
10   in place to move this forward.  So I appreciate the
11   creative suggestions, Ms. Longley, but I'm not going to
12   ask Judge Merkel when she's going to rule.
13            So, all right, so let's – are there any other
14   issues before we get to talking about scheduling that
15   anybody wants to raise?  Okay.  So my suggestion is that
16   we have our next conference at 4 o'clock on Monday,
17   February 26.  Ms. Schnell, how is that for you and your
18   team?
19            MS. SCHNELL:   That's fine with me, Your Honor.
20            THE COURT:  Okay.  Ms. Trzaskoma.
21            MS. TRZASKOMA:  The 26th, that's 4, that's fine
22   for me.  I'm hoping Ms. Glavin can weigh in – yes, she
23   said it's okay for her too and for us.  Thanks.
24            THE COURT:  Great.  Mr. Morvillo, you or
25   somebody from your team.
```

```
 1                        PROCEEDINGS                      61

 2              MR. MORVILLO:  That works for us, Your Honor.

 3              THE COURT:  Great.  All right, Mr. Delikat.

 4   You're on mute, Mr. Delikat?  Or we lost you altogether.

 5   Somebody from Ms. Mogul's team can weigh in.

 6              MS. MESSINA:   This is Brianna Messina from

 7   (indiscernible) team.  Someone from our team can be

 8   available then

 9              THE COURT:  Okay, good, thank you.  Mr. Hamid

10   or Ms. Rosenberg could join.

11              MR. HAMID:  Yes, we'll cover.  That's fine,

12   thank you.

13              THE COURT:  Ms. Longley.

14              MS. LONGLEY:  Yes, Your Honor, that's fine.

15              THE COURT:  Okay.  And, Ms. Perry, you or

16   somebody from your team?

17              MS. PERRY:  Oh, I was hoping not to be there --

18              (interposing)

19              THE COURT:  It's possible that if you've agreed

20   on search terms and you're off to producing documents,

21   you may not need to be heard at all.  But just in case

22   there are any issues that I need to work out, then I --

23              MS. PERRY:  Yes, Your Honor, we'll be there.

24              THE COURT:  All right.  So then - so, Ms.

25   Trzaskoma, you're going to propose to me a briefing
```

 1

 2  schedule for the AG motion to compel, but as to the law

 3  firms I think what we need is a pre-motion conference

 4  request from you with respect to the law firms and then

 5  enough time for them to respond before the 26th so that

 6  they can then participate.

 7          MS. TRZASKOMA:  Yes, Your Honor, we'll make

 8  sure that happens.

 9          THE COURT:  So can you file your letter by,

10  say, the 9th, next Friday?

11          MS. TRZASKOMA:  The 9th is extremely difficult,

12  but could we do it on the 12th?

13          THE COURT:  The 12th is fine.  And then they'll

14  have, I'll give them until the following Tuesday, the

15  20th, which is a little bit more than normal, but I'm on

16  criminal duty that week anyway, so I won't be thinking

17  about this much.  All right.  And then I am prepared to

18  adopt the parties' proposed schedule.  Are there any of

19  the dates, Ms. Schnell, that you wanted to address or

20  should we just, using the fact discovery deadline of

21  August 15 and depositions of June 30 and expert

22  discovery of September 30, leave it to us to fill in the

23  remainder or do you want to just submit a proposal?

24          MS. SCHNELL:   I don't think there's anything

25  else, Your Honor.  I'm just looking at the old one.

```
 1                      PROCEEDINGS                   63
 2   Other than, there was a date for a post-discovery
 3   conference and a date by, to submit a joint letter
 4   updating the Court on the status, you know, dispositive
 5   motions.  And so those dates need to be put in as well.
 6              THE COURT:  We'll set those.  Wouldn't it be a
 7   happy day when we are thinking that --
 8              MS. SCHNELL:   (laughs)
 9              THE COURT:  -- fact discovery.
10              MS. SCHNELL:   We look forward to getting to
11   those dates.
12              THE COURT:  I'm sure.  I'm sure.  Okay, Ms.
13   Schnell, anything else you'd like to raise from the
14   plaintiff's side today?
15              MS. SCHNELL:   No.  No thank you, Your Honor.
16              THE COURT:  Great.  Anything else any of the
17   defendants would like to raise?
18              MS. TRZASKOMA:  No, Your Honor, thank you.
19              THE COURT:  All right, Ms. Longley, thank you,
20   and, Ms. Perry, thank you for sticking with us this
21   whole time, I appreciate it.  And then I guess the only,
22   the last thing is, since we're having a conference on
23   the 26th, we'll set a deadline for the parties to submit
24   letters with any issues, aside from the law firm issue,
25   any other issues that are ripe to address at the
```

1

2    conference.  That'll be sometime the week before.  Okay?

3    Very good.  Thank you so much, everyone, have a good

4    afternoon.  We'll be adjourned.

5             MS. SCHNELL:    Thank you, Your Honor.

6             ATTORNEYS:  Thank you.

7             (Whereupon the matter is adjourned to February

8    26, 2024 at 4 p.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

65

1

2

3                        C E R T I F I C A T E

4

5           I, Carole Ludwig, certify that the foregoing

6   transcript of proceedings in the case of BENNETT v.

7   CUOMO, et al., Docket #22cv7846, was prepared using

8   digital transcription software and is a true and

9   accurate record of the proceedings.

10

11

12

13   Signature    _____
                        *Carole Ludwig*

14                      Carole Ludwig

15   Date:  February 4, 2024

16

17

18

19

20

21

22

23

24

25