```
                   UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF NEW YORK

In re:                              :
                                         Docket #22cv7846
BENNETT, CHARLOTTE,                 :

                   Plaintiff,       :

   - against -                      :

CUOMO, et al.,                      : New York, New York
                                      February 1, 2024
                   Defendants.      :

------------------------------------ :


                      PROCEEDINGS BEFORE
                 THE HONORABLE SARAH L. CAVE,
                UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:          EISENBERG & SCHNELL LLP
                        BY:  LAURA SCHNELL, ESQ.
                             HERBERT EISENBERG, ESQ.
                        233 Broadway
                        New York, New York 10279

                        KATZ BANKS KUMIN LLP
                        BY:  DEBRA KATZ, ESQ.
                             RACHEL GREEN, ESQ.
                             KAYLA MORIN, ESQ.
                        11 Dupont Circle, N.W., Suite 600
                        Washington, D.C.  20036




Transcription Service: Carole Ludwig, Transcription Services
                       155 East Fourth Street #3C
                       New York, New York 10009
                       Phone:  (212) 420-0771
                       Email:  Transcription420@aol.com
```

Proceedings recorded by electronic sound recording; Transcript produced by transcription service.

APPEARANCES CONTINUED:

For Defendant Andrew Cuomo:    SHER TREMONTE LLP
                               BY:  THERESA TRZASKOMA, ESQ.
                               90 Broad Street
                               New York, New York 10004

                               GLAVIN PLLC
                               BY:  RITA GLAVIN, ESQ.
                               156 West 56th Street, Suite 2004
                               New York, New York 10019

For Defendant DeRosa:          MORVILLO PLLC
                               BY:  GREGORY MORVILLO, ESQ.
                               1740 Broadway, 15th Floor
                               New York, New York 10019

                               GRUPPUSO LEGAL
                               BY:  ANTHONY GRUPPUSO, ESQ.
                               560 Main Street
                               Chatham, New Jersey 07928

                               GELBER & SANTILLO PLLC
                               BY:  SARAH SULKOWSKI, ESQ.
                               52 Duane Street, 7th Floor
                               New York, New York 10007

For Defendant Mogul:           ORRICK, HERRINGTON & SUTCLIFFE
                               BY:  MICHAEL DELIKAT, ESQ.
                                    BRIANNA MESSINA, ESQ.
                               51 West 52nd Street
                               New York, New York 10019

For Defendant DesRosiers:      DEBEVOISE & PLIMPTON LLP
                               BY:  JYOTIN HAMID, ESQ.
                                    LEAH ROSENBERG, ESQ.
                                    SOREN SCHWAB, ESQ.
                               66 Hudson Boulevard
                               New York, New York 10001

For Interested Party Boylan:   E. DANYA PERRY PLLC
                               DBA PERRY LAW
                               BY:  DANYA PERRY, ESQ.
                                    KRISTA OEHLKE, ESQ.
                               157 East 86th Street, 4th Floor
                               New York, New York 10028

APPEARANCES CONTINUED:

                                GLASER WEIL FINK HOWARD JORDAN &
                                    SHAPIRO LLP
                                BY:  JULIE GERCHIK, ESQ.
                                10250 Constellation Boulevard
                                Suite 1900
                                Los Angeles, California 90067

For NY Attorney General:        NEW YORK STATE OFFICE OF THE
                                    ATTORNEY GENERAL
                                BY:  SERENA LONGLEY, ESQ.
                                28 Liberty Street
                                New York, New York 10005

For Non-Party Madeline          BRESSLER, AMERY & ROSS, PC
Cuomo:                          BY:  DAVID PIKUS, ESQ.
                                17 State Street, 34th Floor
                                New York, New York 10004

<u>**INDEX**</u>

**E X A M I N A T I O N S**

| **Witness** | **Direct** | **Cross** | **Re-Direct** | **Re-Cross** |
|---|---|---|---|---|
| None | | | | |

**E X H I B I T S**

| **Exhibit Number** | **Description** | **ID** | **In** | **Voir Dire** |
|---|---|---|---|---|
| None | | | | |

```
 1                       PROCEEDINGS                    5

 2          THE COURT:  Good afternoon, this is Magistrate

 3  Judge Cave.  We're here for a discovery conference in

 4  Bennett v. Cuomo, case number 22cv7846.  May I have the

 5  appearances starting with the plaintiff please.

 6          MS. LAURA SCHNELL:  Good afternoon, Your Honor,

 7  Laura Schnell for the plaintiff Charlotte Bennett,

 8  together with Herbert Eisenberg at the firm of Eisenberg

 9  & Schnell, and also on the phone Debra Katz, Rachel

10  Green, and I believe Kayla Morin at the firm of Katz,

11  Bank, Kimmin.

12          THE COURT:  All right, thank you, good

13  afternoon.  For Mr. Cuomo.

14          MR. THERESA TRZASKOMA:  Hi, good afternoon,

15  Your Honor, Theresa Trzaskoma, law firm Sher Tremonte,

16  on behalf of Governor Cuomo, and I believe my co-counsel

17  is on as well.

18          THE COURT:  Thank you.

19          MS. TRZASKOMA:  But I'll let her introduce

20  herself.

21          THE COURT:  All right, thank you.

22          MS. RITA GLAVIN:  Good afternoon, Judge Cave,

23  Rita Glavin of Glavin PLLC for former Governor.

24          THE COURT:  Okay, good afternoon.  For Ms.

25  DeRosa.
```

```
 1                        PROCEEDINGS                    6

 2           MR. GREGORY MORVILLO:  Good afternoon, Your

 3   Honor, Gregory Morvillo on behalf of Ms. DeRosa and

 4   Anthony Gruppuso and Sarah Ann Sulkowski who represent

 5   Ms. DeRosa are also present on the call.

 6           THE COURT:  All right, good afternoon.  For Ms.

 7   Mogul.

 8           MR. MICHAEL DELIKAT:  Good afternoon, Your

 9   Honor, Michael Delikat and Brianna Messina from Orrick

10   representing Ms. Morgul.

11           THE COURT:  All right, good afternoon.  For Ms.

12   DesRosiers.

13           MR. JYOTIN HAMID:  Good afternoon, Your Honor,

14   this is Jyo Hamid at Debevoise & Plimpton.  I believe on

15   the line also are my colleagues Leah Rosenberg and Soren

16   Schwab for Ms. DesRosiers.

17           THE COURT:  Good afternoon.  For non-party Ms.

18   Boylan.

19           MS. DANYA PERRY:  Good afternoon, Your Honor,

20   this is Danya Perry from Perry Law along with my

21   colleague Krista Oehlke. Also on the call is my co-

22   counsel Julie Gerchik.

23           THE COURT:  All right, good afternoon.  And the

24   Attorney General's Office.

25           MS. SERENA LONGLEY:  Hi, good afternoon, Your
```

PROCEEDINGS                                   7

Honor, this is Serena Longley from the New York State
Attorney General's Office, and I also have colleagues
from my office on the line, but they don't expect to
speak.

THE COURT:  All right, very good, thank you.
Is there anyone I missed or anyone who would like to
state their appearance?

MR. DAVID PIKUS:  If I may, Your Honor, may it
please the Court.  My name is David Pikus, P-I-K-U-S.
I'm with Bressler Amery & Ross.  With the Court's
permission, I'd just like to be an observer or maybe
more specifically a listener today.  I represent a non-
party Madeline Cuomo, the Governor's sister, who has
been subpoenaed for a deposition, and we'd be interested
to hear how Your Honor is handling some of these issues.

THE COURT:  All right, thank you.  Anyone else?
Okay, very good.  So what I'd like to do is start with
just getting a status update from various
constituencies.  That was the original intent of this
call.  And then we'll also discuss issues relating to
the subpoenas that Mr. Cuomo has served on Ms. Boylan
and the OAG, and then we also need to talk about the
discovery schedule because the current fact discovery
deadline is coming up at the end of this month.

```
 1                        PROCEEDINGS                    8

 2          So if I could start with Ms. Bennett.  I see

 3 that you've produced a substantial number of documents,

 4 but if you could update me on whether Ms. Bennett's

 5 production is substantially complete, if there's

 6 anything outstanding, and anything else about the status

 7 of Ms. Bennett's document production.

 8          MS. SCHNELL:   Yes, Your Honor, and I also can

 9 update the Court because we have reached agreement on

10 some of the discovery scheduling issues that I can

11 report to the Court, subject to the Court's approval of

12 course.

13          Ms. Bennett has substantially has completed her

14 document production, of course, with the caveat that she

15 has an ongoing obligation if other things come up to

16 produce it.  But, yes, everything she possesses we have

17 produced to defendants and we have told them that.

18          We now have gotten deposition dates for all the

19 defendants, and we have a schedule in place I'm pleased

20 to report to the Court --

21          THE COURT:  Great.

22          MS. SCHNELL:   -- as well as a schedule for

23 plaintiff's deposition.  And given that, we have also

24 conferred with defendants, and we jointly would like to

25 propose to the Court the following schedule for
```

```
 1                              PROCEEDINGS                      9

 2   completion of discovery.  Fact discovery by August 15

 3   with all depositions concluded by June 30 and expert

 4   discovery by September 30.

 5           THE COURT:  All right.  Sorry, September 30 for

 6   experts?

 7           MS. SCHNELL:  Yes.

 8           THE COURT:  All right.

 9           MS. SCHNELL:  And I believe in the original

10   court order there's some other dates that would need to

11   be adjusted as well.

12           THE COURT:  Right.

13           MS. SCHNELL:  You know, conferences and things

14   like that, Your Honor.

15           THE COURT:  Sure.  Okay, well, I'll have the

16   defendants weigh in on that.  Can you just give me a

17   rough overview of the timing of the depositions?

18           MS. SCHNELL:  We have depositions scheduled

19   for Ms. Bennett in March and the four individual

20   defendants in April and May.

21           THE COURT:  Great.

22           MS. SCHNELL:  And we are going to do a couple

23   of third-party depositions that we anticipate will be

24   able to be done in similar timeframe but certainly by

25   the end of June.
```

1

2        THE COURT:  Very good, thank you.  Okay, I'll

3   have the defendants weigh in on that schedule later.

4   One question I also had for you, one of the issues that

5   Mr. Cuomo has raised in his letter is some videos that

6   Ms. Bennett seems to have taken of herself.  Can you

7   tell me when those were produced please?

8        MS. SCHNELL:   When they were produced?

9        THE COURT:  Yes

10        MS. SCHNELL:   To the defendants, recently,

11   Your Honor.

12        THE COURT:  Okay, and do you know when those

13   videos were taken approximately?

14        MS. SCHNELL:   We do know approximately when

15   they were taken.  Defendants have asked us for some of

16   that information.  We are preparing a letter, and we're

17   potentially going to meet and confer on some issues

18   relating to those videos.

19        THE COURT:  All right, very good, thank you.

20   If I have any other questions for you before I let you

21   go for the moment.  All right, I think I'm good on that.

22   Ms. Trzaskoma, anything you want to weigh in about, if

23   you can update me on the status of your client's

24   document production and then anything you want to, any

25   comments you want to add on the proposed schedule?

2            MS. TRZASKOMA:  Yes, Your Honor, good

3    afternoon.  So from our client's perspective I'm pleased

4    to report that his production is complete as of today.

5    There have been four productions totalling about 51,000

6    pages.  And I just want to sort of put down on a marker

7    that we are going through Ms. Bennett's production, much

8    of which has been produced to us fairly recently, and I

9    anticipate that we will be coming back to her with

10   follow-up requests and questions about, you know, where,

11   about documents that have not been produced that we

12   would've expected.  So that's just a marker that I'm not

13   sure it's document discovery's totally complete from

14   that perspective.

15           THE COURT:  She didn't say it about you, but I

16   imagine she might've (indiscernible) completed today.

17           MS. TRZASKOMA:  Understood.

18           THE COURT:  Yes, I understand.  Without

19   prejudice.  Any comments on the proposed schedule that

20   Ms. Schnell described?

21           MS. TRZASKOMA:  No, Your Honor.  We have agreed

22   to that.  I mean obviously our agreement depends, you

23   know, is contingent on resolving some of these non-party

24   discovery issues in a timely way.  But that – our hope,

25   sincere hope is that we can achieve this discovery

1                          PROCEEDINGS                    12

2   schedule.

3           THE COURT:  Great.  Very good, thank you.  Mr.

4   Morvillo, you or one of your colleagues, could you speak

5   to the status of Ms. DeRosa's production.

6           MR. MORVILLO:  Yes, Your Honor.  We should be

7   making another production either tomorrow or early next

8   week, and we anticipate being complete by mid-February,

9   say February 16.

10          THE COURT:  Great.  And Ms. DeRosa is one of

11  the depositions that Ms. Schnell described that'll take

12  place in April or May?

13          MR. MORVILLO:  That is correct, she'll know in

14  April.

15          THE COURT:  Very good.  All right, thank you.

16  Mr. Delikat for Ms. Mogul, what's the status for her

17  production?

18          MR. DELIKAT:   Ms. Mogul has completed her

19  production and her deposition is now scheduled for April

20  26.  There's one open issue that we're still mtg and

21  conferring with plaintiff about, and that is the length

22  of Ms. Bennett's deposition given there are four

23  separate named defendants in this case and obviously

24  quite a few documents.  Hopefully, we'll be able to work

25  that out, but if we can't work that out in terms of

```
 1                          PROCEEDINGS                    13

 2   additional time beyond the seven hours, we'll get back

 3   to you.

 4          THE COURT:  Okay, very good, thank you.  I was

 5   wondering if that might be among the topics that was

 6   being discussed.

 7          MR. DELIKAT:  We're working on it.

 8          THE COURT:  Okay, good.  I appreciate that

 9   you're trying to work it out.

10          MR. DELIKAT:  Okay, thank you.

11          THE COURT:  Mr. Hamid, for your client, what's

12   the status:

13          MR. HAMID:  Yeah, thank you, Your Honor.  We

14   completed our document production quite some time ago,

15   and our deposition is scheduled for May 9.  And so

16   nothing to add.

17          THE COURT:  Wonderful.  Great, well, that's

18   progress.  I realize that there may be some open issues

19   about the parties' document productions, but I

20   appreciate all the progress that the parties have made,

21   and obviously understand that, given that things are

22   still (indiscernible) recently, that there may be some

23   follow-up questions.  But I appreciate all the hard work

24   in getting to this point.  It doesn't always happen.

25   Very good.
```

1

2        So now let's move to the issues concerning Ms.

3    Boylan.  So, Ms. Trzaskoma, you had filed a letter that

4    provided a link to some videos of Ms. Bennett that I was

5    referring to a moment ago.  And so which aspect of the

6    subpoena to Ms. Boylan do you think that the videos are

7    somehow new information and require Ms. Boylan to

8    produce?

9        MS. TRZASKOMA:  Well, so it's not, Your Honor,

10   our letter - our understanding of Your Honor's prior

11   order is that you were, is that it was, you know, your

12   decision for now and that we were permitted to come back

13   if we had further requests or had additional information

14   that could help explain why it is that we made these

15   requests in the first place and why it is that we

16   believe this information is still very important to

17   Governor Cuomo's defense.

18        And I think, you know, that when we receive

19   those videos, which, of course, had been designated as

20   confidential, and so I will refrain from describing

21   them, but they really bring home to us that there is a

22   very, you know, that Governor Cuomo's defense is a very

23   important one, and it is that Ms. Bennett who, you know,

24   who was a, who professionally, had a professional

25   ambition and a personal ambition to be an advocate for

1

2  women who are victims, that she did not frame or

3  describe her experience in the executive chamber as an

4  experience involving sexual harassment until after she

5  spoke with Ms. Boylan.  And it was at that time that Ms.

6  Boylan told Ms. Bennett the story about Governor Cuomo

7  that were not true.  She we believe lied to Ms. Bennett,

8  Ms. Boylan did, about her own experiences in the

9  executive chamber in order to tap into this desire of

10  Ms. Bennett to be part of that kind of mission.

11         And in those conversations between them, we

12  believe, that was when Ms. Bennett began to recast her

13  experience as an experience of sexual harassment.  And

14  we think that that, we think that the videos show very

15  clearly that Ms. Bennett's story changed significantly.

16         And so we need to be able to present that

17  defense, and whether Ms. Boylan's allegations against

18  Governor Cuomo are true is a very important fact for us

19  to be able to establish that they weren't true because

20  otherwise Governor Cuomo will be in the position of

21  really not being able to put on that defense because he

22  won't, the jury will be left with the false impression

23  that what Ms. Bennett heard from Ms. Boylan was true.

24         THE COURT:  Well, right, but does it matter --

25         MS. TRZASKOMA:  And --

2          THE COURT:  At the time that Ms. Bennett heard

3   Ms. Boylan's story, did she believe it's true?  That's

4   the question to ask Ms. Bennett.

5          (interposing)

6          MS. TRZASKOMA:  Well, but here's the --

7          THE COURT:  Go ahead.

8          MS. TRZASKOMA:  Sorry, I didn't mean to

9   interrupt you.  No, but here's the problem, whether Ms.

10  Bennett believed it or not, in order for us to put on

11  that story, put that story in front of a jury, we have

12  to be able to say at the same time so that the jury

13  understands everything and understands that Ms. Boylan

14  was not, in fact, harassed because that will be highly

15  prejudicial.  If all the jury gets to hear that Ms.

16  Bennett heard and believed that Ms. Boylan was sexually

17  harassed by Governor Cuomo and we don't have the

18  opportunity to say, and, by the way, it wasn't true for

19  Ms. Boylan either --

20          THE COURT:  But Ms. --

21          (interposing)

22          MS. TRZASKOMA:  -- then the jury --

23          THE COURT:  But Ms. Bennett didn't know that or

24  maybe she did, but we don't, at this point in the case,

25  I still don't understand why it matters one way the

1                          PROCEEDINGS                    17

2    other as far as Ms. Bennett is concerned.  I understand

3    that Mr. Cuomo wants to clear his name, but this case

4    involves Ms. Bennett's allegations against him and the

5    other defendants.  That's what we're talking about.  And

6    --

7            MS. TRZASKOMA:  But we can't do that – sorry.

8    Sorry, Your Honor.

9            THE COURT:  Go ahead.

10           MS. TRZASKOMA:  No, but we cannot prove the

11   defense to Ms. Bennett's claim without getting into Ms.

12   Boylan's allegations.  They're inextricably intertwined

13   for Governor Cuomo's defense.  And the problem with

14   saying you can – the problem with saying all you need to

15   know is what Ms. Bennett heard and you don't need to

16   look under the hood of that, it's putting Governor Cuomo

17   in an untenable position where he doesn't really have

18   that defense.  He can't really put it on because he's,

19   he's in this position of choosing do I put on more

20   evidence of allegations against me in order to show that

21   Ms. Bennett's story changed for a reason or why her

22   story changed at the risk of prejudicing myself by

23   introducing, by voluntarily introducing these irrelevant

24   allegations, you know, otherwise irrelevant.  I mean the

25   only reason that Ms. Boylan is relevant is that she was

```
 1                        PROCEEDINGS                    18
 2    having these conversations and telling Ms. Bennett what
 3    happened.
 4            THE COURT:  What discovery do you have from Ms.
 5    Boylan to date?  What's the status of the parties'
 6    meeting and conferring and Ms. Boylan producing
 7    documents to you?
 8            MS. TRZASKOMA:  We have no documents from Ms.
 9    Boylan.  We have been in communication – there are two
10    orders, one in this case and one in Troope 1, for –
11    there's overlap between the orders, that there are ways
12    in which the two orders are different.  We have been in
13    conversation with Ms. Boylan's counsel about search
14    terms which is proving to be quite a challenge for us,
15    but we're working on that, Your Honor.  The other thing
16    is that we have asked Ms. Boylan to agree that whatever
17    is produced in Trooper 1 can be used in this case and
18    vice versa, whatever's produced under the Bennett order
19    can be used in Trooper 1, and Ms. Boylan's counsel has
20    not agreed to that.
21            So we're, you know, we don't have anything yet.
22    We're going to have certain things.  We have, as Ms.
23    Boylan pointed out in her letter, appealed the discovery
24    decision in the Trooper 1 case with respect to Boylan,
25    discovery related to Ms. Boylan.
```

```
 1                         PROCEEDINGS                    19
 2            But right now we have nothing, and I do think,
 3    you know, it is critical for Governor Cuomo's defense of
 4    Ms. Bennett's allegations, not to clear his name, he's a
 5    defendant in this lawsuit.  He did not file this
 6    lawsuit.  He did not file the Trooper 1 lawsuit.  These
 7    are lawsuits that were filed against him.
 8            THE COURT:  Neither did Ms. Boylan.  Like she's
 9    not here.  He's not suing her.  She's not suing him.
10            MS. TRZASKOMA:  Well, Ms. Boylan is – she's a
11    non-party witness.  That is always the case is with non-
12    party witnesses.
13            THE COURT:  And I've ordered a lot --
14            MS. TRZASKOMA:  That she didn't chose --
15            (interposing)
16            THE COURT:  I've ordered a lot of discovery
17    that she's going to have to produce.  We talked about –
18    it sounds like there are a ton of communications that
19    fall within the scope of what I have already ordered her
20    to produce and about which you are meeting and
21    conferring.
22            I understand that you're frustrated that you
23    don't have anything now, but you're making this argument
24    as if we're, as if I hadn't already ordered discovery
25    from her.  We already understand that she is relevant.
```

```
 1                        PROCEEDINGS                    20
 2   She's not as relevant as the Trooper 1 case because the
 3   allegations are different, but clearly her
 4   communications with Ms. Bennett are relevant.  I have
 5   found that, and I've ordered that they be produced.
 6             And so what I struggle with is opening the
 7   whole floodgates to everything that you've asked for and
 8   all the other requests about Ms. Boylan.  You're going
 9   to get whatever Ms. Boylan said to Ms. Bennett and vice
10   versa.  And all that goes to the defense that you were
11   just discussing.  What I don't understand is why opening
12   the door to everything else about Ms. Boylan's career in
13   Albany and her relationship or lack thereof with the
14   Governor or anybody else has anything to do with the
15   claims or defenses in this case.
16             MS. TRZASKOMA:  Well, Your Honor, it is
17   absolutely critical to Governor Cuomo's defense that
18   when Ms. Boylan spoke with Ms. Bennett, she
19   misrepresented the facts, and we cannot, we cannot make
20   that defense --
21             THE COURT:  How?  How does that --
22             MS. TRZASKOMA:  how did she misrepresent?
23             THE COURT:  No.  Let me finish.  How does the
24   fact that Ms. Boylan was lying, assuming that she was,
25   have anything to do with whether, what Ms. Bennett is
```

1

2   alleging happened to her, did or did not happen?

3          MS. TRZASKOMA:  I'll try to say this one more

4   time.  Governor Cuomo's defense is that Ms. Bennett did

5   not describe, did not complain about sexual harassment,

6   did not complain that Governor Cuomo was sexually

7   harassing her in these, you know, that her allegations

8   about sexual harassment were new after she talked to Ms.

9   Boylan.  And it is in the context of that that why Ms.

10  Bennett changed her story at that moment in time is that

11  she believed, potentially, she was told by Ms. Boylan

12  that Ms. Boylan had similar experiences working with

13  Governor Cuomo.

14          THE COURT:  Right.

15          MS. TRZASKOMA:  Right, so fast forward to

16  trial.  We're putting on that defense.  How can we put

17  on that defense in front of a jury and say Ms. Boylan

18  said to Ms. Bennett she had been, Ms. Boylan had been

19  sexually harassed too without also being able to turn to

20  the jury and say, by the way, jury, Ms. Boylan wasn't

21  sexually harassed.  She was lying.

22          THE COURT:  Right, but --

23          MS. TRZASKOMA:  Because the jury's going to be

24  left with the totally false impression that what Ms.

25  Bennett heard from Ms. Boylan was true, and that is

1

2  highly prejudicial to Governor Cuomo.  And it is

3  basically saying to us you can't put on that defense

4  because if you do, you're just going to have to let the

5  jury, let that hang out there in front of the jury.  And

6  I'm not going to give you the evidence that you need to

7  be able to establish conclusively or by stipulation that

8  what Ms. Boylan said was not true.

9            THE COURT:  I'm sorry that you feel --

10            MS. TRZASKOMA:  Your Honor --

11            THE COURT:  -- keep explaining things to me,

12  Ms. Trzaskoma, but I do appreciate you indulging me.

13  Ms. Perry --

14            MS. SCHNELL:  Your Honor - I'm sorry to

15  interrupt, this is Laura Schnell.  May I be heard on

16  some of this?  Because the whole premise of what Mr.

17  Cuomo is saying is just wrong on the facts of Ms.

18  Bennett.  May I --

19            THE COURT:  I'd like to hear from Ms. Boylan

20  first.  I will certainly give you a chance to be heard,

21  but I'd really like to, in order to try to do this in an

22  organized fashion, I'd like to hear from Ms. Boylan

23  next.

24            MS. SCHNELL:   Of course, Your Honor, thank

25  you.

```
 1                          PROCEEDINGS                    23
 2              THE COURT:  Ms. Perry.
 3              MS. PERRY:  I'm sorry, Your Honor.
 4              THE COURT:  Go ahead, if there's anything you
 5   want to respond to, then I have several questions for
 6   you.
 7              MS. PERRY:  Yes.  I do think that Ms. Schnell
 8   was about to say what I'm probably not as well
 9   positioned to say, although I do have some understanding
10   of, which is that they have not begun to establish, and
11   these new materials do not at all establish, that Ms.
12   Bennett at all changed her story on, you know, because
13   of any intervention by Ms. Boylan.  These videos do not
14   show that at all.  The first in the series of videos,
15   and I, of course, am hamstrung a bit because I do
16   understand that these videos are confidential, but so I
17   guess I will just leave it at that --
18              THE COURT:  I've watched them all, so you
19   don't, I understand generally.
20              MS. PERRY:  Okay.
21              (interposing)
22              THE COURT:  -- that I don't really understand,
23   but I have watched them all.
24              MS. PERRY:  Okay, so I just look in very
25   general terms as well, but certainly the ones like I can
```

1

2   describe, you know, that involve my client show what I

3   would describe as just support and not manipulation or

4   attempt to, you know, to goad Ms. Bennett in any way.

5            But, you know, apart from that, I guess just

6   with respect to the arguments that go to relevance and

7   proportionality, I'm afraid I just have to repeat what

8   we said the first time and what Your Honor has said only

9   because Ms. Trzaskoma hasn't put forward any new

10  arguments here.  All she's asking for really is a mini

11  trial because none, you know, none of the materials that

12  they're asking for, and, again, they really haven't at

13  all pointed to exactly what they'd be looking for in

14  additional requests that would go to, you know, to

15  anything in particular other than what Your Honor has

16  already ordered be produced.

17           But it really is, and I hate to use the tired

18  old expression, but really would be a fishing

19  expedition.  Your Honor has ordered that communications

20  between Ms. Bennett and Ms. Boylan be produced.  We have

21  proposed search terms last Friday.  I don't believe

22  we've heard back yet from the defendant on this, but we

23  have already, we have a universe of potentially

24  responsive documents already segregated, and I believe

25  that they can readily be produced.

1

2          And so, you know, Ms. Bennett will stand, you

3    know, on her allegations.  This case will be tried on

4    those allegations and the defenses.  And I believe the

5    documents that we will produce will either, will

6    substantiate Ms. Trzaskoma's, you know, the defense that

7    she has put forward here that Ms. Boylan had made the

8    whole thing up and has instigated Ms. Bennett or they

9    won't.  Of course, our position and Ms. Bennett's

10   position is that they absolutely will not, but the

11   documents that Your Honor's ordered to be produced will

12   show that or they won't.  And I think that's really all

13   that I could say about that, and I'm sure Ms. Schnell

14   can add some more.

15          THE COURT:  Thank you.  I understand that Ms.

16   Boylan is a non-party, but I am a little disappointed

17   that we're a month from our last conference and we're

18   only just at this stage, we haven't even finalized

19   search terms let along Ms. Boylan having produced any

20   documents yet.  So clearly I'm going to need to monitor

21   you guys and put you on a much shorter timetable if

22   that's going to happen.  Because one inference here is

23   that it will help a lot if Ms. Boylan at least produces

24   something to diffuse potentially some of the arguments

25   that Ms. Trzaskoma was just making.

```
 1                          PROCEEDINGS                    26
 2              MS. PERRY:  Your Honor, we are --
 3              (interposing)
 4              MS. PERRY:  -- I think they will support us.
 5    We have been working diligently, and we did provide
 6    those search terms last Friday, and we just have not
 7    heard back.
 8              THE COURT:  Okay, well, could you speak to what
 9    Ms. Trzaskoma said she had proposed which was to agree
10    that anything that Ms. Boylan were to produce in the
11    Trooper 1 case could be used here.  Obviously, I assume
12    that that proposal is without prejudice to whatever
13    merits arguments or admissibility arguments or anything
14    else would be made, and I'm certainly not saying that
15    everything that's produced in the Trooper 1 case is
16    relevant here.  But just as a practical matter, doesn't
17    that facilitate a practical solution here?
18              MS. PERRY:  Well, as Your Honor pointed out,
19    the complaint and the allegations are very different in
20    that case.  At the core of the complaint there is an OAD
21    report and, of course the complaint of 11 other women,
22    and that was the basis for Judge Merkel's ruling there.
23    Of course, she significantly narrowed the very broad
24    subpoena there as well.
25              Having said that, I was not party to the meet
```

1
2  and confers there.  My co-counsel Julie Gerchik was.

3  And so I actually cannot speak to this, but I would ask

4  that Ms. Gerchik be allowed to speak to this particular

5  point if that's okay with Your Honor.

6           THE COURT:  Yes, that's fine.  Ms. Gerchik, can

7  you weigh in on this idea of trying to come to some

8  agreement about the Trooper 1 materials?

9           MS. GERCHIK:  Yes, absolutely, Your Honor,

10 thank you.  It's our position is that this is what with

11 respect to judges in both cases say, I'm sorry, just to

12 be clear, we made this very clear on the call that we

13 had last Friday that this is up to the parties and the

14 judges in both cases.  So we have reached

15 confidentiality orders, etc.  But if the parties, both,

16 you know, Judge Merkel (indiscernible) how this case

17 should proceed, we are fine with that.  We basically

18 just said, you know, we don't have a position, but we're

19 not going to just agree to do it and do it until we've

20 heard from respective courts, that's all.

21           THE COURT:  Okay, well, I mean this is the

22 first I'm hearing that there's even been any discussion

23 about it.  It's not mentioned I don't think in the

24 parties' letters that some kind of resolution would be

25 possible.  I'm pretty sure that there are other

1

2    materials that, I think as Ms. Schnell alluded to a

3    little while ago, that the parties have agreed could be

4    used in either cases just for purposes of efficiency or

5    at least that there are some categories like that are

6    under discussion.  So that's one of the things that I'd

7    like to hear from Ms. Schnell about.  But if you're open

8    to considering that, like I said, without prejudice to

9    any of the merits arguments or evidentiary bases or,

10   frankly, even relevance objections but just in terms of

11   efficiency, to save everybody a whole lot of time, to

12   the extent that things only need to be produced once,

13   that is potentially a pragmatic solution here.

14          So, Ms. Schnell, you wanted to weigh in, and if

15   you could speak to the idea of some kind of agreement

16   about information sharing as well.

17          MS. SCHNELL:   Yes, first, Your Honor, just the

18   whole premise of the defendant's argument is just

19   faulty.  Ms. Bennett complained about sexual harassment

20   to the defendants, Ms. DesRosiers, Ms. Mogul, and Ms.

21   DeRosa in June of 2020, and there are contemporaneous

22   notes of that conversation confirm her complaints and

23   her, what she has said happened has not changed since

24   then.  And she first spoke or contacted or had any

25   contact with Lindsey Boylan in December of 2020, six

1    months later.  So the idea that any contact with Lindsey

2    Boylan made her change her story has absolutely no

3    record base.

4

5            And I apologize for the fact that we filed that

6    letter that you struck, Your Honor, but the reason we

7    filed it and I should've asked the Court's permission

8    was we find it incredibly horrible for defendants to be

9    filing letters on a third-party subpoena issue calling

10   our client a liar  Public documents calling her a liar,

11   to just get it out into the public for no legitimate

12   litigation purpose.  And we don't want, we don't think

13   that's a proper use of this Court to be able to file

14   these letters calling our client a liar which is a

15   repetition of what happened right after the Attorney

16   General report and kept going on.

17           THE COURT:  Understand.  Do you speak to the

18   idea of there being some agreement between the parties

19   and Ms. Boylan about whatever she produces in the

20   Trooper 1 case at a minimum being available here without

21   prejudice to any arguments that the parties might have

22   about how it actually gets used in this case?

23           MS. SCHNELL:  Yes, for discovery purposes only

24   but certainly with no agreement that there's any

25   relevance and that it will not be used to justify, since

```
 1                         PROCEEDINGS                   30
 2    we have it, now we get a deposition of Ms. Boylan who is
 3    not --
 4            THE COURT:  I think - I'm pretty sure a
 5    deposition of Ms. Boylan is going to happen.  To some
 6    degree or how long it is and what the topics are is
 7    maybe another question.  But we've reserved that the
 8    last time, but I wouldn't rely on preventing Ms.
 9    Boylan's deposition in this case.
10            MS. SCHNELL:   Well, but, Your Honor, I mean,
11    again, Ms. Boylan is not going to be a witness in this
12    case.  We have said we have no intention of calling her.
13    It is a very different matter than the Trooper 1 case,
14    as Your Honor is aware, where they have not said that.
15    In fact, there's allegations about Ms. Boylan throughout
16    the Trooper 1 complaint.  It's very different here.  And
17    we are trying to narrow discovery to get this case to
18    trial, and the idea that, you know, they will be able
19    to, again - what they want these documents for is
20    exactly the mini trial, that's what they want.  They
21    want to depose her on her own claims which we do not
22    think has anything to do with our case.
23            THE COURT:  All right, well, like I said, we're
24    not dealing with the issue of the extent and topics for
25    Ms. Boylan's deposition today, but am I - you're open to
```

 1    discussing with Ms. Perry and Ms. Trzaskoma and their

 2    colleagues some kind of agreement about a protective

 3    without prejudice for sharing of what Ms. Boylan

 4    produces in the Trooper 1 case.

 5         MS. SCHNELL:  Yes, with proper serious

 6    confidential provisions, yes.

 7         THE COURT:  All right, so hopefully let's have

 8    the parties meet and confer about that agreement, and

 9    we'll hopefully moving that along so that if there are

10    any open issues about it, we'll be in a position to

11    discuss them at our next conference.

12         Ms. Trzaskoma, is there anything else you want

13    to add about Ms. Boylan today?

14         MS. TRZASKOMA:  Yes, Your Honor, I just have to

15    correct a couple of points for the record.  First of

16    all, Ms. Bennett I don't believe ever spoke with Ms.

17    DeRosa in June or any other time about allegations of

18    sexual harassment or any other complaints like that.

19    Second, she did not – the record is clear that when she

20    complained in June of 2020, when Ms. Bennett complained,

21    that the people to whom she complained, the other

22    defendants, did not believe what she was describing was

23    sexual harassment.  And as for calling Ms. Bennett a

24    liar, what our letter points out is that Ms. Bennett's

PROCEEDINGS                                    32

1

2   own words, her own contemporaneous statements

3   demonstrate that the allegations in her complaint are

4   false.  We didn't call Ms. Bennett a liar, she called

5   herself a liar.

6            So that is, you know, what's truly outrageous

7   here is that Ms. Bennett's, you know, allegations that

8   certain conversations were harassing when at the time

9   she described, at the time the conversations happened

10  she described them in a very different way that that's

11  what's outrageous here.  That those allegations against

12  Governor Cuomo are out there, it's extremely frustrating

13  then to have, you know, Ms. Bennett who filed complaint

14  against Governor, a public complaint against Governor

15  Cuomo that is full of inaccurate allegations and that

16  somehow there's something wrong when Governor Cuomo

17  filed a letter pointing that out, I'm gob smacked at the

18  suggestion that there's anything improper that we did

19  here.

20           THE COURT:  Right --

21           (interposing)

22           MS. TRZASKOMA:  And, again, as --

23           THE COURT:  Go ahead.

24           MS. TRZASKOMA:  Yeah, and as for Ms. Boylan,

25  the whole point is to avoid - we're in the discovery

phase.  The questions about the truth or falsity of Ms.

Boylan, of what Ms. Boylan said to Ms. Bennett is within

squarely within the scope of relevance here.  And the

whole point of getting that discovery now is so that we

can avoid a mini trial.  Otherwise, we are going to get

to trial, and I would like there to be a stipulation,

I'd like there to be an instruction to the jury that the

allegations are not true.

           THE COURT:  All right, so --

           (interposing)

           MS. TRZASKOMA:  Otherwise, if we get --

           THE COURT:  -- we're so far from that concept,

Ms. Trzaskoma.  So you just said we're in discovery, so

let's not, we're not at the final pretrial conference.

So please let's focus on what we have here.  It sounds

like Ms. Boylan's counsel and Ms. Bennett's counsel are

willing to engage with you on some kind of agreement

that would allow for the sharing of what Ms. Boylan

produced in the Trooper 1 case for discovery purposes in

this case without prejudice to any parties' arguments or

objections as to relevance or evidentiary issues.  Can

you go back to the table on that and hopefully try to

reach some agreement that avoids having to continue to

talk about the same things over and over again?

2          MS. TRZASKOMA:  Here's the problem, Your Honor,

3   is that I think, you know, for some of the same reasons,

4   I understand the order, the discovery order with respect

5   to Ms. Boylan and Trooper 1 is we believe and, you know,

6   it is incorrect for the same reason and, you know,

7   precludes discovery into some of the same areas that

8   we've been talking about today.  The circumstances, you

9   know, including the circumstances of Ms. Boylan's

10  departure from ESD and whether she left, as she told Ms.

11  Bennett and as she told the world, because of sexual

12  harassment or whether she left for another reason.  And

13  so it's, you know, if Your Honor is going, having us

14  meet and confer about a sharing agreement doesn't solve

15  the underlying problem.

16          THE COURT:  Well, I will be clear, that you

17  have not shown me anything that changes my decision at

18  our January 4 conference about which requests Ms. Boylan

19  needs to respond to.  Looking at the factors that I have

20  to consider, as I said before, I don't believe that any

21  of the requests other than 1 and 17 are relevant and

22  proportional to any claim or defense in this case.

23          I understand that the issues in this case are

24  extremely important to both sides and to members of the

25  public as well.  But considering also the parties'

1  access to information from other sources, the lesser

2  importance of this case of Ms. Boylan, what happened to

3  Ms. Boylan as distinguished from the truth or falsity of

4  Ms. Bennett's allegations, and the extent to which Ms.

5  Boylan producing more as Ms. Cuomo is asking her to do,

6  the extent to which that's going to help us resolve the

7  issues in this case remains, I remain unconvinced about

8  that.

9

10        And then, finally, I'm also mindful of the

11  burden and expense both to the parties in this case of

12  going down such, going down that road as well as the

13  burden to Ms. Boylan.  So the order of January 4 as to

14  the scope of what Ms. Boylan needs to produce in

15  response to the subpoena will stand, but to the extent

16  that the parties can reach an agreement as to what has

17  been ordered to be produced by Ms. Boylan in the Trooper

18  1 case, so its negotiations can continue and hopefully

19  be helpful to letting us move on.  And as we've heard,

20  we have depositions coming up, so we should be

21  definitely moving toward getting what we need to get

22  from Ms. Boylan so that we don't have to reschedule any

23  depositions.

24        Is there anything else further with respect to

25  Ms. Boylan that we need to talk about today?

1                              PROCEEDINGS                        36

2           MR. MORVILLO:  Your Honor, this is Greg

3    Morvillo.  May I just make two quick points?

4           THE COURT:  Sure.

5           MR. MORVILLO:  So the first is I just want to

6    make sure that the record is completely clear that Ms.

7    DeRosa never spoke to Ms. Bennett about any of this, and

8    I think Ms. Schnell said that she spoke to the

9    defendants.  That's not true, she did not speak to Ms.

10   DeRosa.  I just want to make sure that that was crystal

11   clear.

12          And the second issue is back when we last met

13   by phone, we had the discussion about the subpoenas, and

14   Your Honor told us on behalf of Ms. DeRosa with Ms.

15   Boylan to meet and confer about search terms and

16   productions.  And I want to make sure that it is, that I

17   understand what's happening here which is that the same

18   general requests that you have ordered Ms. Boylan to

19   search for or produce in relation to the Governor will

20   be done for Ms. Boylan as well, I'm sorry, for Ms.

21   DeRosa as well because I don't want us to get into this

22   do these search terms and have Ms. Boylan's counsel say,

23   well, no, the Judge didn't order us to do that.  They

24   just ordered a meet and confer between you two, meaning

25   Ms. Boylan and Governor Cuomo.  So I want to make sure

PROCEEDINGS                           37

1    that Ms. DeRosa is included in that because that was my

2    understanding when we came out of it.  I just want to

3    make sure that's still where we are.

4         THE COURT:  Nobody should be siloed here.  If

5    you're taking anything away from this, it's that we're

6    only doing this once.  And everybody should be

7    communicating with each other and nobody should be left

8    out of conversations in order to get this done.

9         MR. MORVILLO:  Yeah, and but also documents,

10   right, it's not just the conversation.  I've been kindly

11   invited to participate in everything, but I mean that

12   Ms. Boylan's supposed to be searching for documents that

13   are relevant to Ms. DeRosa as well.  Is that right?

14        THE COURT:  So you should be part of the

15   conversation about what the search terms are so that

16   she's only doing one search.

17        MR. MORVILLO:  Got it.  Thank you.  Thank you,

18   Judge.

19        THE COURT:  Okay.  Someone else wanted to jump

20   in?

21        MS. TRZASKOMA:  Yeah, just briefly, Your Honor,

22   Theresa Trzaskoma.  I just wanted to make sure because I

23   think it wasn't entirely clear to us, based on Your

24   Honor's January 4 order, just to be clear, this is Your

 1
 2  Honor's final order with respect to the subpoena to Ms.

 3  Boylan in terms of what (pause).

 4        THE COURT:  Are you asking so you know whether

 5  or not you should appeal?  I mean you didn't appeal from

 6  the last one and the time to do so has expired.  So --

 7        MS. TRZASKOMA:  No, we didn't appeal because,

 8  Your Honor, it did not, I mean we understood the order

 9  to be, we understood that the order was provisional and

10  not a final closing of the door with respect to the

11  subpoena.

12        THE COURT:  Well, what I said in the order is

13  that you could come back under showing of good cause to

14  try to convince me as to the remaining items.  You have

15  not done that.  The fact discovery is still ongoing.

16  So, you know, it's still possible.  I'm not sure that it

17  – I can imagine the circumstances that would get me to

18  change my mind, but as long as – and we also haven't

19  finalized whether the parties are going to reach an

20  agreement or not.  So it's significant to me to

21  understand whether the parties can come to an agreement

22  about sharing of information.

23        (pause in proceeding)

24        THE COURT:  I'm not going to advise you about

25  when your time to appeal is running or not, Ms.

PROCEEDINGS                    39

1

2    Trzaskoma.  That's up to you.

3            MS. TRZASKOMA:  Okay, well, thank you, Your

4    Honor, we'll look at the transcripts.

5            THE COURT:  Okay, thank you.  So as far as next

6    steps for Ms. Boylan then, Ms. Perry, you said that you

7    had provided search terms last week.  Did you include

8    Mr. Morvillo in the distribution of those search terms?

9            MS. PERRY:  I believe so, Your Honor, again, I

10   wasn't in that meet and confer, but my understanding is

11   that we agreed on the call to include Ms. DeRosa in the

12   searches in that meet and confer.  Ms. Gerchik or Ms.

13   Oehlke can correct me if I'm wrong or Mr. Morvillo.  But

14   my understanding is consistent with what Your Honor just

15   said just now, and we're happy to do that.  It certainly

16   makes sense for efficiency purposes.

17           THE COURT:  Okay, so we'll –

18           (interposing)

19           MR. MORVILLO:  Your Honor, this is Greg

20   Morvillo.  I did receive the search terms.  I just want

21   to make sure that you understand we did receive the

22   search terms.  We are participating in it.  I just

23   wanted to make sure that the documents that were going

24   to be searched would include the terms that we were

25   proposing as well.  And I think it's clear enough, thank

                            PROCEEDINGS                    40

 1   you.

 2        MS. PERRY:  Yes, Your Honor, I believe – we

 3   sent our emails with proposed search terms on Friday,

 4   January 26, and we requested that Mr. Cuomo propose

 5   their own, and I believe we have not received anything

 6   back.  So we're very open to those, but it's been almost

 7   a week.

 8        THE COURT:  Okay.  All right, well, we'll be

 9   setting a time for the next discussion and/or status

10   letter.  So hopefully that will provide some incentive

11   for people to move things along.  Okay, I guess the only

12   last open, potentially open issue with respect to Ms.

13   Boylan though is the letter that Mr. Cuomo had filed

14   that was redacted, there was a redacted and an

15   unredacted version.  Ms. Schnell, do you have a position

16   on the unredacting or the public filing of the

17   unredacted version of Mr. Cuomo's letter?

18        MS. SCHNELL:   We are opposed to it, Your

19   Honor.

20        THE COURT:  All right, well, I'll have to take

21   a closer look at that then.  Ms. Trzaskoma, do you wish

22   to be heard on the sealing or unsealing?

23        MS. TRZASKOMA:  Yeah, as we noted I think in

24   our letter, Your Honor, we don't think, the videos have

2  been designated as confidential, but we don't think they

3  are confidential, but particularly to the extent they

4  relate to Ms. Bennett's public allegations against

5  Governor Cuomo, you know, the letter in its entirety

6  along with the link to the videos should be made public.

7  But even if the videos, the underlying videos are not

8  made public, certainly what is in the letter and what is

9  currently redacted from the public version of the letter

10  is, there is nothing, you know, personally sensitive or,

11  you know, anything that's unrelated to the allegations

12  and should definitely be made public.

13          THE COURT:  Right, I think though we needed

14  something more from you if you want to redesignate it,

15  Ms. Trzaskoma.  The order, I'm not sure which order it

16  was, was the one scheduling this conference or striking

17  the letter, but that you needed to follow the procedures

18  in the protective order which includes the additional

19  meeting and conferring.  I mean we've sort of done that

20  here a little bit, but if I could ask you to just meet

21  and confer with Ms. Schnell just one more time and see

22  if there's a way even to minimize the redactions in the

23  letter so that as much of it as possible could be

24  publicly filed, and that's another thing that you'll

25  update us on between now and then.  But for now --

```
 1                        PROCEEDINGS                    42

 2              MS. TRZASKOMA:  Yes, Your Honor, we certainly

 3   will.

 4              THE COURT:  Okay, great.  For now the letter

 5   will remain as it is, but you can renew the request for

 6   unsealing or revising the redactions in due course.

 7   Okay, anything else on Ms. Boylan before we move to the

 8   Attorney General?  Okay.

 9              All right, so thank you, Ms. Longley, for your

10   patience.  I hoped to get to you sooner, but I

11   appreciate you bearing with us.  So as I understand it,

12   since our last conference on January 4, there has been

13   an Article 78 proceeding that's been filed in state

14   court.  Can you update me on the status of that

15   proceeding?  I know it was filed by Mr. Cuomo, but what

16   the Attorney General's deadline is for responding and

17   the future of those proceedings.

18              MS. LONGLEY:  Hi, Your Honor, yes.  It is true

19   Cuomo did file an Article 78 against the Attorney

20   General.  That is, I think that the Court automatically

21   set the deadline around February 20 I want to say for

22   our office to respond, but we're in the process of

23   extending that.  It hasn't been set yet.

24              THE COURT:  Okay.  And what is the – I

25   understand you'll file a written response, but then
```

PROCEEDINGS                    43

after that what happens?  Is there some discovery period
or is there just a hearing in front of, in the state
court or?

MS. LONGLEY:  So under Article 78 discovery is
not automatic, it's disfavored, and it's unlikely, I
mean and I don't know, I don't know if the petitioner,
Mr. Cuomo, would seek discovery.  I think we would
oppose that.  Article 78 proceedings are designed to be
somewhat streamlined, quicker proceedings than your
average action in state court, and so I don't think it's
likely there'll be discovery.  It'll probably be decided
on papers.  Sometimes there's oral argument.  It really
depends on the judge.

THE COURT:  And are the objections that the
Attorney General may have, and I realize you haven't
filed your response yet, but are they the same
objections generally that the Attorney General has
lodged to the subpoena in this case?  In other words,
sovereign immunity, privilege, etc.

MS. LONGLEY:  Yes.  So they won't be unless
largely because the standard is different under Article
78, and it's a different, you know, and the Article 78
standard is really, it's about is the public entitled to
disclosure of the information, the record that is being

sought.  And so there's, that, there's a set of
different standards, there's different exemptions.  Many
of the exemptions recognize privileges.  But one of the
biggest issues at play in the Bennett, in response to
the Bennett subpoena is, of course, sovereign immunity,
and under the Article 78 proceeding standard, there is
no sovereign immunity defense for our office to raise.
So we won't be raising that, so that issue's out.

        Many of the privileges are the same, but we
don't have relevance or really proportionality
arguments.  It either can be burden arguments.  But,
again, you know, we're sort of at the early stages.  The
petitioner in that case waited until the final day to
file.  They could've filed that Article 78 sooner.

        The other this is that the Article, the FOIL
process is still underway, so their actual Article 78
petition against office may be premature, and that's
another issue that will get briefed by us.

        THE COURT:  So it's possible, if the Attorney
General were hypothetically just to produce what it is
Mr. Cuomo's asking for, it could be mooted?

        MS. LONGLEY:  Yes, Your Honor, yes.  And
there's a production, you know, there's ongoing review
and potential production, and really what Mr. Cuomo has

 1

 2  challenged is the amount of time that the Office

 3  estimated it would take to do the review, and he is

 4  calling that a, quote, "constructive denial."  We don't

 5  think it is.  We think the FOIL, the FOIL request that

 6  he made to our office is still open and actively being

 7  worked on by the office.

 8          THE COURT:  All right, thank you.  Okay, so I'm

 9  just - we had punted on the Attorney General issues for

10  a different reason which was to see whether anything had

11  happened in the proceeding in front of Judge Merkel.

12  So, Ms. Longley, can you speak to that, whether there

13  have been any developments that I should be aware of in

14  terms of her - I believe she was undergoing a privilege

15  review of some of the memos.

16          MS. LONGLEY:  Yes, Your Honor, we haven't

17  received any additional rulings or orders from Judge

18  Merkel.  We understand that the arguments are still

19  under review, and specifically there is a pending motion

20  for reconsideration that Mr. Cuomo filed.  That hasn't

21  been ruled on.  And as we discussed at the last

22  conference, we did provide a privilege log, we've

23  provided some documents that Judge Merkel asked for in

24  camera review.  We've submitted those.  And we haven't

25  heard from her yet, and we don't have a, we don't have

1

2  anything giving us a sense of when we will hear from

3  her, but I do expect that we will hear from her and that

4  she is reviewing the materials in anticipating, in

5  anticipation of making some rulings that would bear on

6  the same issues that are now, that the defendant Cuomo

7  in the Bennett case is seeking, the premotion conference

8  here, so that he can move to compel.

9          THE COURT:  All right, Ms. Trzaskoma.

10          MS. TRZASKOMA:  Yes, Your Honor, I guess I have

11  a few things to add here.  So, first of all, so I think

12  it should be clear to Your Honor that if we have any

13  hope of complying with the discovery schedule that we

14  just talked about at the beginning of this call, we

15  really need to get the issues relating to the AG's

16  subpoena.  The subpoenas both to the Office of the

17  Attorney General as well as our subpoenas to the Cleary

18  law firm and to the Vladeck law firm.  I don't think

19  that we should wait either for the Article 78 proceeding

20  which sounds to me, reading the tea leaves, like there's

21  going to be, there are going to be some procedural

22  arguments about whether we, you know, our filing was

23  mooted or not mooted or partially mooted.  But they have

24  the, the Attorney General's Office has asked for a

25  significant extension to respond to that.  We, you know,

PROCEEDINGS                                    47

in part because of discovery deadlines in this case and

in Trooper 1, we have not agreed to that, but I don't

know whether the court in the Article 78 proceeding will

agree.

        We also, you know, just on Judge Merkel's

privilege review, the materials that are in front of

Judge Merkel for her privilege review overlap in some

respects with what we are seeking from the Attorney

General in this case, but they are far from identical

universes of information.  So it's entirely possible

that Judge Merkel will make certain rulings in Trooper 1

as to privilege claims that won't obviate the need for

this Court to do the same thing with the materials that

have been requested here.

        And then, finally, Your Honor, just on this

sovereign immunity point, I know that in Ms. Boylan's

letter from yesterday and in the now stricken letter

that there have been references to a settlement

agreement between the Department of Justice and the

executive chamber, and we are, Governor Cuomo, neither

Governor Cuomo nor his former senior leadership

including the defendants in this case were ever

contacted about that investigation.  So we have been

trying to figure out what if anything the Department of

1

2  Justice did to investigate.  It appears to us that the

3  Department of Justice relied on the investigation that

4  the AG's office conducted.

5          And so part of that – for example, Ms. Bennett

6  confirmed that the AG or that the Department of Justice

7  never contacted her or spoke with her.  We have asked

8  Ms. Boylan whether she was interviewed by the Department

9  of Justice, and her counsel has not responded to that

10  question.  And we did ask the Attorney General's Office

11  whether the AG's office had provided to the U.S.

12  Department of Justice any additional materials that were

13  not otherwise made public because in our view any such

14  production by the AG's office would be wholly

15  inconsistent with the claim of sovereign immunity that

16  they're relying on to resist this federal court subpoena

17  and, indeed, would constitute a waiver, you know, as to

18  those materials for sure and potentially a broader

19  waiver.

20          When we asked Ms. Longley whether the AG

21  produced to DOJ any additional materials, Ms. Longley

22  declined to tell us, and, in fact, you know, declined to

23  tell us whether there was a production; if there was,

24  what it consisted of; and instead made reference to

25  potential confidentiality agreement that may have been

1   relied on in making a production if a production

2   occurred.  And I'll just read what Ms. Longley said

3   exactly so that I'm not, so that I'm being clear.  I'm

4   just trying to pull up her email.  But in any event, she

5   said, "With respect to the DOJ investigation that has

6   corroborated AG's investigative findings, we decline

7   your request to provide any additional information about

8   what may have been shared, if anything, under

9   confidentiality agreements with other law enforcement

10  agencies."

11

12          And, you know, to that point, Your Honor, the

13  branch of the federal government that was conducting

14  that investigation was the Civil Rights Division, and

15  they were conducting an investigation to determine

16  whether to bring a civil lawsuit against the State.  And

17  so we have real questions about what happened there.  I

18  think it's, as I said, it's entirely possible DOJ did

19  nothing more than look at what was in the public record.

20  That's certainly, or little more than what was look –

21  they did little more than look at what was in the public

22  record that has been what's reported in the press.  But,

23  you know, we do need to know from the Attorney General's

24  Office what they turned over if anything that is among

25  the materials we're seeking here for the subpoena.

```
 1                        PROCEEDINGS                    50
 2              THE COURT:  All right, so how do we move this
 3    along?  I'm already pretty far behind - both the Article
 4    78 proceeding is probably going to get resolved before I
 5    can get these issues teed up.  Judge Merkel may very
 6    well as well.  So what're you proposing, Ms. Trzaskoma,
 7    for how we move forward?  Are you wanting to move to
 8    compel against the AG?  Are you wanting to move to
 9    compel against Cleary and Vladeck?  Are you wanting me
10    to do a privilege review?  And hopefully not all of the
11    above.
12              MS. TRZASKOMA:  Well, I think, I mean, look, I
13    think if the Court is going to credit in any way the
14    sovereign immunity arguments, we need to tee up motions
15    to compel all three subpoenas and get those underway
16    because otherwise we, you know, we aren't going to be
17    able to comply with the discovery schedule.
18              THE COURT:  All right, well, when can you file
19    your motion to compel?  Or motions.
20              MS. TRZASKOMA:  Yeah.  Can I - would it be all
21    right if we alerted the Court later today with a
22    proposed schedule?
23              THE COURT:  Yeah --
24              MS. TRZASKOMA:  Understanding that we'll do it
25    on an expedited basis.
```

1

2         THE COURT:  It's going to be expedited, and

3   it's going to be a lot shorter.  I'm not getting three

4   separate 25-page briefs from you.  So I would strongly

5   urge you to make it be one motion, and I know that the

6   issues may be slightly different as to the law firms but

7   they should be the same, at least as to the law firms.

8   So consider how --

9         (interposing)

10        MS. TRZASKOMA:  Yeah --

11        THE COURT:  Go ahead.

12        MS. TRZASKOMA:  Yeah, certainly the privilege

13  issues are the same, but the sovereign, it's the

14  question of sovereign immunity is slightly different in

15  the context of the law firms.

16        THE COURT:  Okay.  But have you briefed all

17  these issues in front of Judge Merkel already, sovereign

18  immunity as well as the privilege issues?

19        MS. TRZASKOMA:  We have briefed some of these

20  issues, not all of them, and Judge Merkel noted that the

21  briefing that was done on sovereign immunity, that if

22  she were going to reach that issue, she would need to

23  require additional briefing.  So I think there's more

24  that we need to say and that we can say and that we will

25  say.

1

2          THE COURT:  Okay, well, propose what you want

3     to propose, but if I adopt this schedule, this is not a

4     reason to take us off track of August 16.  It is what it

5     is.  If it turns out that there's more that comes from

6     the AG and we have to redo some, reopen some

7     depositions, then that's fine, but the parties should be

8     aware that this is not a reason to take our foot off the

9     gas on everything else that we've been talking about.

10    Because all these issues are so uncertain, and the

11    timing of having them need to be resolved is uncertain.

12    And so we need to do everything that we can, that we're

13    finishing the things that we can finish, and this is not

14    a reason to drag things out.

15         So if you want to file a letter, Ms. Trzaskoma,

16    by tomorrow morning, if you can confer with all of your,

17    all the other counsel on this call and reach an

18    agreement and as to a proposed briefing schedule, I'll

19    consider it and I'll have to consider what else I have

20    going on and when I'll be able to get to it.

21         MS. LONGLEY:  Your Honor --

22         MS. TRZASKOMA:  Understood.

23         MS. LONGLEY:  Hi, Your Honor, this is Serena

24    Longley from the AG's Office.  Can I just respond and

25    raise a few issues regarding this proposed date for

1
2   briefing of the motion to compel?  One just sort of

3   technical issue is that I did try to raise the subpoenas

4   to the law firms on the last conference, and Your Honor

5   said it wasn't before you because it hadn't been

6   presented in a pre-motion letter, and that's still the

7   case.  Defendant Cuomo still has not, in asking for that

8   to be brought up.  So we – I think under your rules it

9   is premature.

10          That said, I do think that legal issues are

11  exactly the same and that the sovereign immunity defense

12  is exactly the same.  And so I'm not looking to be

13  overly technical or difficult, but I do think there's a

14  reason.  The subpoenas to the firms and sovereign

15  immunity there hasn't been briefed before Judge Merkel

16  because when Cuomo raised it before Judge Merkel, she

17  said it was a non-starter and that they were acting as

18  our agents and our attorneys, and there's no way that

19  they could get around sovereign immunity by subpoenaing

20  our lawyers.

21          So I think as non-parties who haven't even been

22  properly, you know, brought before, this issue hasn't

23  been presented properly for this conference but that it

24  is a significant expense and burden on us as a non-

25  party, on these law firms to have to litigate three

1

2  times over, actually six times over if you think about

3  it with the Trooper 1 case, the brief, you know, brief

4  and litigate the various subpoenas – sorry about that

5  noise – from Cuomo on this.  I think it is unduly

6  burdensome and inappropriate use of resources to have to

7  litigate that.

8         We still maintain our position that we should

9  wait for a ruling from Judge Merkel because the

10 sovereign immunity issues and some of the privilege

11 issues could have preclusive effect here on defendant

12 Cuomo in the Bennett case.  And so we stand by that, and

13 given our non-party status, given Your Honor's previous

14 concerns about conflicting rulings including conflicting

15 privilege rulings, we don't think that it makes sense

16 for us to have to brief everything again here before

17 Your Honor or for our law firms and agents to have to

18 also join in the briefing.

19        THE COURT:  All right, well, you make a good

20 point about the law firms who obviously are not here

21 unless they are here and they haven't told me.  So what

22 we can do it is we'll do the letter, meet and confer and

23 letter back and forth between now and our next

24 conference.  So – and we'll talk about the dates for

25 that in a second.  So the briefing schedule that you

1
2  provided to me, I'm going to assume that even if the law
3  firms appear, that they're not going to be producing
4  anything and they're going to stand on the same
5  objections.  So I think we can assume that the briefing
6  will have to go forward.  But I should hear from them,
7  but there's a possibility I shouldn't necessarily assume
8  that.
9          MS. TRZASKOMA:  Your Honor, may I just – it's
10 Theresa Trzaskoma.  Just briefly.  We did have a meet
11 and confer with the Cleary and Vladeck firms and are in
12 the process of putting a pre-motion conference letter
13 before Your Honor.  But I think we know where this is
14 headed, which is we're going to have to brief, we're
15 going to have to brief these issues as to all the
16 subpoena recipients, and, you know, it's inefficient to,
17 I mean it's completely inefficient to do it on a
18 staggered schedule or to just wait.  But if --
19         THE COURT:  Well --
20         (interposing)
21         MS. TRZASKOMA:  -- Your Honor wants us to --
22         THE COURT:  -- are not here, I have not heard
23 anything from the law firms.  So I should have an
24 opportunity for them to talk me out of why we even need
25 to brief this, for example.  So we can set a schedule,

PROCEEDINGS                                56

1  you can set a schedule for --

2        MS. TRZASKOMA:  Yes.

3        THE COURT:  -- the AG briefs and that process

4  can get started, and there's some issues that, you know,

5  as we've discussed, are unique to the AG that could be

6  decided separately from the law firms.  You know,

7  there's several different ways potentially do this.  But

8  I should at least, Ms. Longley is right that I have not

9  so far heard from the law firms, and they should have an

10 opportunity to tell me why they think we shouldn't have

11 a briefing schedule as to them.  Was there something

12 else --

13       MS. TRZASKOMA:  No --

14       THE COURT:  Go ahead.  Go ahead.

15       MS. TRZASKOMA:  No, that's fine, Your Honor.  I

16 mean I think that's fine.  I will – I do want to correct

17 the record because Judge Merkel did not have, did not

18 have the benefit of any briefing when she made the

19 offhand comments that Ms. Longley was referring to, and

20 those issues have not been teed up for Judge Merkel.  So

21 I think it's appropriate – but we'll put that in our

22 letter.  I just want to make sure the record's clear

23 that Judge Merkel has not remotely ruled on this issue.

24       MS. LONGLEY:  But she did, Judge Merkel did

1

2  stay any further briefing or litigating over those

3  subpoenas because, and she didn't need briefing to rule

4  essentially that, or at least stay those and say that

5  the legal issues and arguments are the same, the

6  sovereign immunity defense is the same, they're our

7  agent, and that she's going to resolve the subpoena

8  directed at OAG first and then deal with the subpoenas.

9  Because it's going to be the same outcome.

10         So she didn't need briefing.  I didn't suggest

11  she had briefing.  I said she wouldn't even entertain

12  briefing because, frankly, it's really a frivolous

13  argument and a huge waste of everybody's time and

14  resources to be subpoenaing our lawyers who are also

15  deputized as agents of the Office of the Attorney

16  General and to try to get like materials from them that

17  you can't get from us.  It's just, it's a non-starter as

18  Judge Merkel said.

19         THE COURT:  Well, I've read the transcripts,

20  and I understand what you're referring to, but in

21  fairness I will, we will set a time, Ms. Trzaskoma, for

22  you to file your letter about the law firms, they'll

23  have a chance to respond, and we'll have them on, we'll

24  have them join us at the next conference.

25         All right, Ms. Longley, was there something

PROCEEDINGS                                    58

1  else, you had a couple of points you wanted to make.

2  Was there something other than the procedural posture?

3           MS. LONGLEY:  It was, I think if you're

4  referring to procedural posture, it's just renewing our

5  position that we set forth at the last conference that

6  we think that it makes sense and it's appropriate given

7  our non-party status to wait for Judge Merkel's ruling

8  before we have to brief the subpoena for the same types

9  of materials and the same objections before Your Honor.

10          THE COURT:  I hear your objection, and I share

11  your view that it would be, I would prefer not to have

12  this be decided twice, but at the same time I can't hold

13  up this case.  If we don't try to start moving this

14  forward, the risk is that Mr. Cuomo comes in and says,

15  well, we still haven't decided the OAG issue here, and

16  then we're starting from scratch.  So we're already, you

17  know, by my waiting a month in the hope that there might

18  be some clarity, in fact, what's happened over the

19  course of that month is there's even less clarity

20  because we now have the Article 78 proceeding.  And I'm

21  not saying that's causation; it's just unfortunately we

22  haven't moved to resolution of the AG issue any further

23  forward in the last month, and so I need to do something

24  in this case to make sure that it does get teed up.

```
 1                         PROCEEDINGS                   59
 2            MS. LONGLEY:  Okay, Your Honor, I completely
 3   understand.  Can I just make two comments?  One is, you
 4   know, as far as the Article 78 proceeding and the impact
 5   here, I don't really understand how that is relevant
 6   here.  And I will also just say I mean they, we
 7   suggested to Cuomo's attorneys over a year ago that they
 8   try to get materials through FOIL and then eventually
 9   Article 78.  They've only very recently submitted FOIL
10   requests, and now that's working its way through the
11   regular process.  So I'm not really sure what that has
12   to do with scheduling here.
13            But separate and part I do have a suggestion,
14   respectfully, that perhaps I wonder if it would be
15   appropriate or make sense for your chambers to contact
16   Judge Merkel's chambers and just see if there's a sense
17   on timing there.  We haven't done that ourselves, but I
18   wonder if it would be something that would make sense
19   and be in the interests of judicial economy and avoid,
20   you know, just to have a sense of the timing and maybe
21   safe us from briefing --
22            THE COURT:  You want me to call Judge Merkel
23   and say can you hurry up so I don't have to do any work?
24   That's not going to go over well.
25            MS. LONGLEY:  Okay, I didn't mean it like that.
```

PROCEEDINGS                              60

1

2    Just, you know, if she knows that there's going to be a

3    decision, you know, in the next week or two, that might

4    be relevant to how you're treating the briefing schedule

5    here or, you know, whether there's going to be briefing.

6              THE COURT:  If we get probably down the road in

7    the briefing and something happens that means that we

8    don't have to go forward with it, I will be the first

9    one to shout up and cheer.  But we need to get something

10   in place to move this forward.  So I appreciate the

11   creative suggestions, Ms. Longley, but I'm not going to

12   ask Judge Merkel when she's going to rule.

13             So, all right, so let's – are there any other

14   issues before we get to talking about scheduling that

15   anybody wants to raise?  Okay.  So my suggestion is that

16   we have our next conference at 4 o'clock on Monday,

17   February 26.  Ms. Schnell, how is that for you and your

18   team?

19             MS. SCHNELL:   That's fine with me, Your Honor.

20             THE COURT:  Okay.  Ms. Trzaskoma.

21             MS. TRZASKOMA:  The 26th, that's 4, that's fine

22   for me.  I'm hoping Ms. Glavin can weigh in – yes, she

23   said it's okay for her too and for us.  Thanks.

24             THE COURT:  Great.  Mr. Morvillo, you or

25   somebody from your team.

```
 1                    PROCEEDINGS                    61
 2          MR. MORVILLO:  That works for us, Your Honor.
 3          THE COURT:  Great.  All right, Mr. Delikat.
 4   You're on mute, Mr. Delikat?  Or we lost you altogether.
 5   Somebody from Ms. Mogul's team can weigh in.
 6          MS. MESSINA:   This is Brianna Messina from
 7   (indiscernible) team.  Someone from our team can be
 8   available then
 9          THE COURT:  Okay, good, thank you.  Mr. Hamid
10   or Ms. Rosenberg could join.
11          MR. HAMID:  Yes, we'll cover.  That's fine,
12   thank you.
13          THE COURT:  Ms. Longley.
14          MS. LONGLEY:  Yes, Your Honor, that's fine.
15          THE COURT:  Okay.  And, Ms. Perry, you or
16   somebody from your team?
17          MS. PERRY:  Oh, I was hoping not to be there --
18          (interposing)
19          THE COURT:  It's possible that if you've agreed
20   on search terms and you're off to producing documents,
21   you may not need to be heard at all.  But just in case
22   there are any issues that I need to work out, then I --
23          MS. PERRY:  Yes, Your Honor, we'll be there.
24          THE COURT:  All right.  So then - so, Ms.
25   Trzaskoma, you're going to propose to me a briefing
```

PROCEEDINGS                                    62

1
2  schedule for the AG motion to compel, but as to the law

3  firms I think what we need is a pre-motion conference

4  request from you with respect to the law firms and then

5  enough time for them to respond before the 26th so that

6  they can then participate.

7           MS. TRZASKOMA:  Yes, Your Honor, we'll make

8  sure that happens.

9           THE COURT:  So can you file your letter by,

10  say, the 9th, next Friday?

11           MS. TRZASKOMA:  The 9th is extremely difficult,

12  but could we do it on the 12th?

13           THE COURT:  The 12th is fine.  And then they'll

14  have, I'll give them until the following Tuesday, the

15  20th, which is a little bit more than normal, but I'm on

16  criminal duty that week anyway, so I won't be thinking

17  about this much.  All right.  And then I am prepared to

18  adopt the parties' proposed schedule.  Are there any of

19  the dates, Ms. Schnell, that you wanted to address or

20  should we just, using the fact discovery deadline of

21  August 15 and depositions of June 30 and expert

22  discovery of September 30, leave it to us to fill in the

23  remainder or do you want to just submit a proposal?

24           MS. SCHNELL:   I don't think there's anything

25  else, Your Honor.  I'm just looking at the old one.

```
  1                        PROCEEDINGS                       63
  2   Other than, there was a date for a post-discovery
  3   conference and a date by, to submit a joint letter
  4   updating the Court on the status, you know, dispositive
  5   motions.  And so those dates need to be put in as well.
  6              THE COURT:  We'll set those.  Wouldn't it be a
  7   happy day when we are thinking that --
  8              MS. SCHNELL:   (laughs)
  9              THE COURT:  -- fact discovery.
 10              MS. SCHNELL:   We look forward to getting to
 11   those dates.
 12              THE COURT:  I'm sure.  I'm sure.  Okay, Ms.
 13   Schnell, anything else you'd like to raise from the
 14   plaintiff's side today?
 15              MS. SCHNELL:   No.  No thank you, Your Honor.
 16              THE COURT:  Great.  Anything else any of the
 17   defendants would like to raise?
 18              MS. TRZASKOMA:  No, Your Honor, thank you.
 19              THE COURT:  All right, Ms. Longley, thank you,
 20   and, Ms. Perry, thank you for sticking with us this
 21   whole time, I appreciate it.  And then I guess the only,
 22   the last thing is, since we're having a conference on
 23   the 26th, we'll set a deadline for the parties to submit
 24   letters with any issues, aside from the law firm issue,
 25   any other issues that are ripe to address at the
```

```
 1                        PROCEEDINGS                    64
 2   conference.  That'll be sometime the week before.  Okay?
 3   Very good.  Thank you so much, everyone, have a good
 4   afternoon.  We'll be adjourned.
 5           MS. SCHNELL:   Thank you, Your Honor.
 6           ATTORNEYS:  Thank you.
 7           (Whereupon the matter is adjourned to February
 8   26, 2024 at 4 p.m.)
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

65

C E R T I F I C A T E

     I, Carole Ludwig, certify that the foregoing transcript of proceedings in the case of BENNETT v. CUOMO, et al., Docket #22cv7846, was prepared using digital transcription software and is a true and accurate record of the proceedings.

Signature   _Carole Ludwig_____

           Carole Ludwig

Date:  February 4, 2024