```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK

In re:                            :
                                         Docket #22cv7846
BENNETT, CHARLOTTE,              :

               Plaintiff,        :

  - against -                    :

CUOMO, et al.,                   : New York, New York
                                   February 26, 2024
               Defendants.       :

----------------------------------- :


                        PROCEEDINGS BEFORE
                   THE HONORABLE SARAH L. CAVE,
                   UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For Plaintiff:           EISENBERG & SCHNELL LLP
                         BY:  LAURA SCHNELL, ESQ.
                              HERBERT EISENBERG, ESQ.
                         233 Broadway
                         New York, New York 10279

                         KATZ BANKS KUMIN LLP
                         BY:  RACHEL GREEN, ESQ.
                              KAYLA MORIN, ESQ.
                              SARAH NESBITT, ESQ.
                         11 Dupont Circle, N.W., Suite 600
                         Washington, D.C.  20036




Transcription Service:  Carole Ludwig, *Transcription Services*
                         155 East Fourth Street #3C
                         New York, New York 10009
                         Phone:  (212) 420-0771
                         Email:  Transcription420@aol.com


Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.
```

APPEARANCES CONTINUED:

For Defendant Andrew Cuomo:     SHER TREMONTE LLP
                                BY:  THERESA TRZASKOMA, ESQ.
                                     ALLEGRA NOONAN, ESQ.
                                90 Broad Street
                                New York, New York 10004

                                GLAVIN PLLC
                                BY:  RITA GLAVIN, ESQ.
                                156 West 56th Street, Suite 2004
                                New York, New York 10019

For Defendant DeRosa:           MORVILLO PLLC
                                BY:  GREGORY MORVILLO, ESQ.
                                1740 Broadway, 15th Floor
                                New York, New York 10019

                                GELBER & SANTILLO PLLC
                                BY:  SARAH SULKOWSKI, ESQ.
                                52 Duane Street, 7th Floor
                                New York, New York 10007

For Defendant DesRosiers:       DEBEVOISE & PLIMPTON LLP
                                BY:  JYOTIN HAMID, ESQ.
                                     LEAH ROSENBERG, ESQ.
                                66 Hudson Boulevard
                                New York, New York 10001

For Defendant Mogul:            ORRICK, HERRINGTON & SUTCLIFFE
                                BY:  JILL ROSENBERG, ESQ.
                                     BRIANNA MESSINA, ESQ.
                                51 West 52nd Street
                                New York, New York 10019

For Interested Party Boylan:    GLASER WEIL FINK HOWARD JORDAN &
                                     SHAPIRO LLP
                                BY:  JULIE GERCHIK, ESQ.
                                10250 Constellation Boulevard
                                Suite 1900
                                Los Angeles, California 90067

                                E. DANYA PERRY PLLC
                                DBA PERRY LAW
                                BY:  DANYA PERRY, ESQ.
                                     KRISTA OEHLKE, ESQ.
                                157 East 86th Street, 4th Floor
                                New York, New York 10028

APPEARANCES CONTINUED:

For NY Attorney General:      OFFICE OF THE NEW YORK STATE
                                 ATTORNEY GENERAL
                              BY:  SERENA LONGLEY, ESQ.
                              28 Liberty Street
                              New York, New York 10005

Also Present:                 VLADECK, RASKIN & CLARK, P.C.
                              BY:  ANNE CLARK, ESQ.
                              111 Broadway, Suite 1505
                              New York, New York10006

                              CLEARY GOTTLIEB STEEN & HAMILTON
                              BY:  SARA SANCHEZ, ESQ.
                              One Liberty Plaza
                              New York, New York 10006

<u>**INDEX**</u>

<u>**E X A M I N A T I O N S**</u>

| <u>Witness</u> | <u>Direct</u> | <u>Cross</u> | Re-<br><u>Direct</u> | Re-<br><u>Cross</u> |
|---|---|---|---|---|
| None | | | | |

<u>**E X H I B I T S**</u>

| Exhibit<br><u>Number</u> | <u>Description</u> | <u>ID</u> | <u>In</u> | Voir<br><u>Dire</u> |
|---|---|---|---|---|
| None | | | | |

```
 1                        PROCEEDINGS                    5
 2            THE COURT:  Good afternoon, this is Magistrate
 3   Judge Cave.  We're here for a discovery conference in
 4   Bennett v. Cuomo, case number 22cv7846.  May I have the
 5   appearances starting with Ms. Bennett please.
 6            MS. LAURA SCHNELL:  Good afternoon, Your Honor,
 7   Laura Schnell and Herbert Eisenberg at Eisenberg &
 8   Schnell and Rachel Green, Kayla Morin, and Sarah Nesbitt
 9   at Katz, Bank, Kimmin for Ms. Bennett.
10            THE COURT:  Okay, good afternoon.  For Mr.
11   Cuomo.
12            MR. THERESA TRZASKOMA:  Good afternoon, Your
13   Honor, Theresa Trzaskoma from Sher Tremonte on behalf of
14   former Governor Andrew M. Cuomo.  I believe colleagues
15   and co-counsel on the line, and I'll let them state
16   their appearances.
17            THE COURT:  Okay.
18            ATTORNEYS:  Good afternoon --
19            (interposing)
20            MS. ALLEGRA NOONAN:  Go ahead, Rachel
21            ATTORNEY:  Go ahead, Allegra.
22            MS. NOONAN:  Oh, thank you, yes, Your Honor,
23   good afternoon, this is Allegra Noonan from Sher
24   Tremonte LLP as well as on behalf of Governor Cuomo.
25   Thank you.
```

```
 1                          PROCEEDINGS                    6
 2              THE COURT:  Good afternoon.
 3              MS. RITA GLAVIN:  Good afternoon, Judge Cave,
 4    it's Rita Glavin from Glavin PLLC on behalf of former
 5    Governor Cuomo.
 6              THE COURT:  Good afternoon.  For Ms. DeRosa.
 7              MR. GREGORY MORVILLO:  Good afternoon, Judge,
 8    Gregory Morvillo from Morvillo PLLC Sarah Sulkowski from
 9    Gelber Santillo on behalf of Ms. DeRosa.
10              THE COURT:  Good afternoon.  For Ms.
11    DesRosiers.
12              MR. JYOTIN HAMID:  Good afternoon, Your Honor,
13    this is Jyo Hamid at Debevoise & Plimpton.  I believe my
14    colleague Leah Rosenberg also of Debevoise is also on
15    the line for Ms. DesRosiers.
16              THE COURT:  Okay, good afternoon.  For Ms.
17    Mogul.
18              MS. JILL ROSENBERG:  Good afternoon, Your
19    Honor, this is Jill Rosenberg from Orrick Herrington &
20    Sutcliffe, and with me is my colleague Brianna Messina
21    also from Orrick.
22              THE COURT:  All right, good afternoon.  For the
23    OAG.
24              MS. SERENA LONGLEY:  Good afternoon, Your
25    Honor, this is Serena Longley here on behalf of the New
```

```
 1                         PROCEEDINGS                      7
 2    York Attorney General's Office.  I'm joined by some of
 3    my colleagues as well as Anne Clark from Vladeck, Raskin
 4    & Clark P.C. and Sara Sanchez from Cleary Gottlieb Steen
 5    & Hamilton LLP.
 6              THE COURT:  Okay, good afternoon.  Thank you
 7    for joining us.  For Ms. Boylan.
 8              MS. DANYA PERRY:  Good afternoon, Your Honor,
 9    Julie Gerchik, Glaser Weil, and I believe on the line I
10    have my co-counsel Danya Perry and Krista Oehlke from
11    Perry Law.
12              THE COURT:  Okay, good afternoon.  Anyone else
13    I missed?  Very good, thank you.
14              So we do have over 24 people on the line.  So I
15    would ask if you're not speaking, to just make sure that
16    your line is muted.  What we have to cover today are
17    updates as to the status of Ms. Boylan, compliance with
18    the Court's January 4 order, the anticipated motion to
19    compel as to Cleary and Vladeck, and then I also want at
20    the end to discuss scheduling oral argument regarding
21    Mr. Cuomo's motion to compel the OAG's subpoena and then
22    across the motion to quash.  And then obviously anything
23    else that anyone wants to cover.
24              So if we could start with Ms. Boylan, I got a
25    letter from the parties last week that there were still
```

```
 1                          PROCEEDINGS                      8

 2   a few outstanding issues as to search terms.  Ms.

 3   Schnell, can you – sorry, not Ms. Schnell – Ms.

 4   Trzaskoma, can you start to tell me where we are?

 5          MS. TRZASKOMA:  Yes, I'm going to defer to my

 6   colleague Ms. Noonan for this.

 7          THE COURT:  Okay.  Go ahead, Ms. Noonan.

 8          MS. NOONAN:  Yes, good afternoon, Your Honor.

 9   So we were able to reach agreement as of earlier today

10   with counsel for Ms. Boylan.  We did negotiate over the

11   course of the past month, and we were negotiating both

12   the search terms applicable to this case as well as the

13   Trooper 1 case so that all the documents could be

14   collected at the same time.  So that is where we stand.

15   And the only thing we would ask on behalf of Governor

16   Cuomo is, just given the timing and the length of the

17   processes thus far, that the Court set another

18   conference to check in on the progress of the actual

19   document collection and production because we're in

20   agreement on what is going to be reviewed, but that

21   review to my knowledge hasn't started yet.  So we just

22   want to make sure that that stays on track.

23          THE COURT:  All right, thank you.  Ms. Gerchik

24   or Ms. Perry, can you speak to where we are on timing of

25   getting the search terms processed and review of
```

```
 1                      PROCEEDINGS                    9
 2  production underway?
 3          MS. GERCHIK:  Yes, Your Honor, as counsel just
 4  stated, we did reach agreement finally this morning
 5  after a month of quite a few negotiations back and
 6  forth.  And so as we said in our confirmatory email
 7  earlier today, we are now promoting the documents and
 8  will begin our review tomorrow.
 9          THE COURT:  Okay, and, sorry, that was Ms.
10  Gerchik speaking?
11          MS. GERCHIK:  Yes.  Yes, Your Honor.
12          THE COURT:  I just want to, trying to keep the
13  voices straight.
14          MS. GERCHIK:  Yes.
15          THE COURT:  So the search terms have already
16  been run, and it's just a review and production that
17  needs to happen?
18          MS. GERCHIK:  So without getting too into the
19  weeds, some of the search terms, the ones that we did
20  not have agreement on way back when, we then came to
21  agreement about potential fixes, shall we say, and so we
22  ran those.  We've gone back and forth, but, yes, the
23  review is what is going to start tomorrow.
24          THE COURT:  Okay.  Do you have enough as to the
25  time to complete the review of the production?
```

1

2          MS. GERCHIK:  Your Honor, at this time I don't.

3   I will say that where we are at that we will be

4   promoting 42,000 documents which is quite a sizeable

5   number.  Regardless of (indiscernible) status, but here,

6   of course, we are talking about a non-party individual

7   witness.  So we have – I'm sorry, we'll be promoting

8   more than that, I misspoke, 42,000 hits per the search

9   terms that we have agreed on as of this morning.

10         So I can't tell you an approximate time.  I

11  could just tell you that we are going to be starting

12  tomorrow, and we will be reviewing diligently.

13         THE COURT:  Okay, thank you.  And then I

14  assume, Ms. Noonan, that you want to wait to have those

15  documents before we get Ms. Boylan's deposition which we

16  sort of tabled a couple of times?

17         MS. NOONAN:  Your Honor, that would be correct,

18  and, again, this is Allegra Noonan.  And we may be in

19  touch with counsel for Ms. Boylan to propose perhaps

20  focusing on prioritizing certain documents that are

21  maybe relevant to Ms. Bennett's deposition, but that's

22  something that we'll talk to her.  We haven't talked

23  before this.  But we, for Ms. Boylan's deposition, we'll

24  expect that the review is complete and we have the full

25  production of the documents, and then we'll speak with

```
 1                        PROCEEDINGS                    11
 2    Ms. Boylan's counsel separately about getting the
 3    documents that we know we need for Ms. Bennett's
 4    deposition.
 5              THE COURT:  Okay, I understand.  As I always
 6    say to parties when I'm supervising discovery, we don't
 7    need to have every single email in hand before we take a
 8    deposition.  Substantial completion is usually what we
 9    aspired to.  And given that the process of getting these
10    documents has been more protracted than I would've liked
11    through no fault of anyone's, it's just I'm a little
12    concerned that it took us two months to finalize search
13    terms.  And so that does make me a little bit concerned
14    about how long the review might take.  So I understand
15    Ms. Boylan is a non-party, but, unfortunately, she does
16    have documents that are relevant for the plaintiff's
17    deposition here.  And so just remind me, Ms. Noonan,
18    have we set a date for Ms. Bennett's deposition as yet?
19              MS. NOONAN:  There is a date set for Ms.
20    Bennett's deposition I believe, but I'll have my
21    colleagues chime in if I have that incorrectly, but I do
22    believe we have a date for her.
23              THE COURT:  I'm guessing, Ms. Schnell, you
24    probably know that.
25              MS. SCHNELL:  We have two days reserved, Your
```

```
 1                       PROCEEDINGS                  12
 2  Honor.  Let me see if I can - so the very end of March I
 3  believe.  Let me just quickly look for it.  But yes, and
 4  I was just on a call, a meet and confer this morning we
 5  confirmed those dates.  So, yes, we have a date.  It's
 6  the last week in March.
 7            THE COURT:  Well, what I would --
 8            MS. SCHNELL:  March 27 and 28, Your Honor.
 9            THE COURT:  Okay, great, thank you.  What I
10  would strongly encourage you to do, Ms. Noonan, is to
11  get to Ms. Gerchik and her colleagues as soon as
12  possible like this week what are the most important
13  documents that you feel you really need for Ms.
14  Bennett's deposition so that we don't have to reschedule
15  that.  Okay?
16            MS. GERCHIK:  Absolutely, Your Honor, we'll be
17  in touch with them.  We think we have an efficient plan
18  for that, but because we just haven't spoken to Ms.
19  Boylan's counsel yet, I don't want to represent it
20  without there being an agreement.  But I'm confident we
21  can forge a path forward that makes sense.
22            THE COURT:  All right, thank you.  Anything
23  else with respect to Ms. Boylan's production that anyone
24  wants to raise?  Okay, good.  So, Ms. Gerchik, you're
25  welcome to stay.  You don't have to.  Other than, well,
```

1
2    I guess you should stay because we need to, we'll set a
3    conference date.  So I'm sorry, I think you do need to
4    stick around, but we just won't get to scheduling until
5    the end of the call.

6              MS. GERCHIK:  Okay, thank you, Your Honor.

7              THE COURT:  But if you want to just leave one
8    person on and the rest of you can go back to work,
9    that's fine.  Okay?

10             So then let's pivot to talking about Mr.
11   Cuomo's subpoenas as the law firm's Cleary and Vladeck.
12   Ms. Trzaskoma, do you want to take this first or one of
13   your colleagues?

14             MS. TRZASKOMA:  Yes.  No, Your Honor, Theresa
15   Trzaskoma.  So I just want to take a step back on the
16   subpoenas to make clear that we served the subpoenas on
17   the two law firms for the purpose of, not for any
18   improper purpose because we believe that even if state
19   sovereign immunity protects the AG's Office from having
20   to disclose the records we seek, the two non-state
21   entities Cleary and Vladeck are not protected by state
22   sovereign immunity.  And contrary to the argument made
23   in counsel's February 20, '24 letter both on behalf of
24   the law firms and the AG's Office, in the context of a
25   discovery subpoena requesting the production of records

1

2  for inspection and copying, that just doesn't implicate

3  the kind of state interest that sovereign immunity

4  protects.

5          So we vehemently disagree with their legal

6  arguments, and I think, you know, and including because

7  of one of the cases they cite, the Eastern District

8  decision in <u>Felix</u> made clear that while a state agency

9  might not have to turn over records if those records are

10  available from another custodian, a non-state custodian,

11  those records can be obtained.

12          So - and we're not trying to do this as an end

13  runaround the privilege and other, you know, the

14  privilege and work product objections that the AG's

15  Office has raised and that we are in the course of

16  briefing.  Those arguments would be the same as to all

17  the subpoenas and don't need to be relitigated I don't

18  think in the context of the Cleary and Vladeck's

19  subpoenas.  So those subpoenas really raise a very

20  discrete legal issue that can and should be briefed

21  promptly and should be we think taken up by the Court at

22  or around the same time as the Court is considering the

23  State, the AG's Office arguments.  And to the extent

24  privilege arguments prevail, those would prevail as to

25  Cleary and Vladeck, but we do think that the immunity

1

2  question is very different as it relates to the law

3  firms.  So we'd like to get a briefing schedule on that.

4              THE COURT:  As you see the discrete issue, is

5  it, am I wording it correctly to say that it's whether,

6  assuming sovereign immunity even applies to the OAG,

7  whether the law firms also have the benefit of sovereign

8  immunity?

9              MS. TRZASKOMA:  Correct.

10             THE COURT:  Okay.  So you wouldn't – we don't

11  need to re-brief the issues that are already in the

12  motion to compel as to the OAG.

13             MS. TRZASKOMA:  Right.  The privilege argument,

14  the privilege issues – the sovereign immunity issue will

15  be, we don't need to re-brief whether the AG has

16  sovereign immunity or whether the documents are

17  protected by any of the privileges invoked by the

18  Attorney General's Office, but we do need to brief this,

19  as I say, quite discrete legal issue of whether if the

20  AG's Office has sovereign immunity from having to comply

21  with a federal discovery subpoena, does that immunity

22  kind of cloak and protect non-state agents of the AG's

23  Office.

24             THE COURT:  Okay.  And as to why that has to

25  happen now as opposed to waiting until I issue a

```
 1                          PROCEEDINGS                    16
 2   decision as to the OAG motion to compel is what?
 3             MS. TRZASKOMA:  Well, I do worry that we're
 4   going to get off schedule.  I think that right now the
 5   current briefing schedule with the AG's office has us
 6   fully, you know, we're not going to be fully briefed
 7   until sometime at the end of March.  So I do worry that
 8   if we don't - if we don't take this up and kind of get
 9   it on, you know, if we don't start - sorry, I think
10   early April is the date for when we'll be fully briefed.
11   Yeah, April 3, sorry, I was getting my Bennett
12   deposition and my - anyway, so April 3 is the ending, is
13   when it'll be fully briefed.  I just worry that, you
14   know, if the Court were to rule on sovereign immunity, I
15   mean in some ways the Court can just decide, could
16   decide or could punt on the state sovereign immunity
17   argument as it applies to the AG and resolve what we
18   think is a much cleaner issue as to whether Cleary and
19   Vladeck enjoy that immunity.  So I think it makes sense
20   for the Court to be thinking about all these issues at
21   the same time.
22             THE COURT:  I think there are privilege issues
23   - I think I'll hear this from the law firms in a minute
24   - there are privilege issues as well.  So I don't know
25   that is as narrow as I would hope.
```

PROCEEDINGS                17

1
2          MS. TRZASKOMA:  No, I will say just so I'm not
3  misspeaking, I think all of the issues, the privilege
4  issues obviously have to be resolved, and I'm not
5  proposing to take us, to take the Cleary and Vladeck
6  issues and separate them from the privilege issues
7  because those are implicated in the Cleary and Vladeck
8  subpoenas as well.  So I'm not proposing to bifurcate
9  that in any respect.  I'm proposing, and what I think
10  makes sense is for the Court to consider all of them at
11  the same time so that assuming the Court concludes, as
12  we believe it should, that the documents are not
13  attorney-client communications, that they're not, it's
14  not protected by work product, that the question then
15  would be can the Court enforce the subpoenas against
16  either the law firms or the AG's office.
17          THE COURT:  Do you think the analysis as to the
18  privilege issues is the same as to the OAG and the law
19  firms or is it a different analysis, different privilege
20  analysis?
21          MS. TRZASKOMA:  I believe it's the same, and I,
22  you know, the AG's office and the law firms can correct
23  me if that's wrong, but I believe that the privileges
24  that the law firms are invoking are actually privileges
25  that would belong to, well, they would belong to both,

1
2  that they're principally the same, they're on all fours
3  in terms of the analysis I think.
4        THE COURT:  Okay, thank you.  All right, Ms.
5  Clark or Ms. Sanchez, would you like to respond for
6  either of your firms, together or separately?
7        MS. SERENA:  Your Honor, this is Serena from
8  the AG's Office, and counsel for the firms will be happy
9  to respond, but could I just briefly address something
10  that came up on Friday and it directly bears on the
11  argument that counsel just made about this idea that
12  they can avoid sovereign immunity by subpoenaing the
13  firms because the firms are not state actors, or non-
14  state agents, as I believe Ms. Trzaskoma just said.
15        I did just want to draw the Court's attention
16  to document 200 on the docket which is Cuomo's motion to
17  compel the OAG subpoena.  And on page 18, halfway
18  through the page, I'm going to read from that.  It says,
19  quote, "The investigators were deputized by the OAG
20  pursuant to Executive Law § 638 which makes clear that
21  the deputies are part of, not counsel to, the OAG.  See
22  New York Executive Law 638.
23        And so I just don't understand how they can
24  reconcile that statement in their brief that they
25  submitted to you on Friday with their argument to you

1

2   today that somehow they can subpoena, they can avoid

3   sovereign immunity because the subpoenas to the firms

4   are not subpoenas for state records or not subpoenas to

5   state actors when they've said the exact opposite in

6   their brief filed on Friday.  So I just --

7            THE COURT:  All right --

8            (interposing)

9            THE COURT:  -- but thank you.

10           (interposing)

11           THE COURT:  One at a time, one at a time.  Are

12  you done, Ms. Longley?

13           MS. LONGLEY:  I'm not.  I have another just

14  note on the <u>Felix</u> decision which I believe Ms. Trzaskoma

15  left out or changed a word that is crucial when she said

16  that documents could be available from non-state, I

17  think she said custodians, but actually the language of

18  the decision is non-state sources which is, you know,

19  different than the case here because getting documents

20  from these firms would still be getting them from a

21  state source because they are OAG's documents.  I think

22  that there's - and you can hear this more from the firms

23  - but this idea that if you can't get something from us

24  because of an immunity or a privilege that we have,

25  which counsel also just agreed, and we agree that the

```
 1                        PROCEEDINGS                    20
 2   privilege analysis is the same.  We also think the
 3   sovereign immunity analysis the same for the subpoenas
 4   to the firms and the subpoenas to OAG.
 5          And so I just, I think it's really - I'll leave
 6   it at that.  I think that's the important point, and if
 7   you have more specific questions for the firms, they can
 8   answer now.
 9          THE COURT:  Okay.  Go ahead, Ms. - Ms.
10   Trzaskoma, I'll let you respond after (indiscernible) if
11   that's okay.
12          MS. TRZASKOMA:  Of course.
13          THE COURT:  I just want to hear from everybody
14   first.  Ms. Clark or Ms. Sanchez.
15          MS. SANCHEZ:  This is Sara Sanchez.  Yes, Your
16   Honor, it's our position that this motion to compel that
17   defendant Cuomo seeks to bring is entirely unnecessary.
18   It's duplicative.  He's seeking from us and from Cleary
19   Gottlieb and from Vladeck the exact same material he has
20   sought from the Office of the Attorney General in the
21   very same investigation conducted for the Offices of the
22   Attorney General by the law firms as special deputies.
23   So that OAG subpoena's obviously subject to a separate
24   motion to compel.  And if that motion to compel is
25   successful, the subpoenas against the law firms are
```

2  moot.  There's nothing more to obtain from the firms.

3  And if the motion to compel is not successful, then the

4  Court has determined that defendant Cuomo's not entitled

5  to the documents knowing that the law firms are in

6  possession of those underlying materials as agents.

7           So that's why we're asking the Court to stay

8  any separate motion practice as to Cleary Gottlieb and

9  Vladeck.  We don't think it's necessary.  Your Honor,

10 defendant Cuomo (indiscernible) the documents under the

11 OAG subpoena or he won't.

12          As to this question of the firm's being,

13 somehow being on separate footing when it comes to

14 sovereign immunity, we strongly disagree.  We think

15 there's just no basis at all for that.  It is, it's

16 unnecessary and it's frivolous to brief that.  You know,

17 the firms are protected because the firms were not

18 subpoenaed in their individual capacity but only in

19 their capacity as agents and special deputies to the

20 OAG.  So that makes the Attorney General's Office the

21 real party in interest here for purposes of enforcing

22 the subpoena.  And, you know, there's just no, there's

23 no daylight, there's no distance between the arguments

24 made by the Office of the Attorney General and the

25 arguments that we would make when it comes to sovereign

```
  1                        PROCEEDINGS                    22
  2    immunity.  Our arguments, you know, rise and fall with
  3    the OAG arguments.
  4            And, you know, compelling the firms to act
  5    necessarily requires compelling production of, it's not
  6    our documents.  It's the Office of the Attorney
  7    General's documents that it objects to producing.  And
  8    it would be, Your Honor, compelling that production,
  9    that cost to the Office of the Attorney General, which,
 10    again, is the real party in interest here.
 11            And, you know, courts have held that compelling
 12    counsel to deliver documents that, you know, aren't
 13    otherwise discoverable from a client jeopardizes, you
 14    know, the policy of promoting open communication between
 15    lawyers and their clients, and here the analysis is even
 16    more clear because we were not only counsel but we were
 17    also appointed as a special deputy.  So it's like trying
 18    to subpoena an employee of the real party in interest
 19    here which courts have also held is improper.  So we
 20    don't see a basis for any separate briefing or any
 21    separate motion practice, Your Honor.
 22            THE COURT:  Okay, thank you.  Ms. Clark, did
 23    you want to add anything?
 24            MS. CLARK:  I think Ms. Sanchez covered it very
 25    well.  I'd just reiterate that any documents we have we
```

PROCEEDINGS                          23

1
2  have only because we were made special deputies.  And
3  then at the outset we agreed with the Office of the
4  Attorney General that any documents we received or
5  generated were the property of the Office of the
6  Attorney General.  None of these documents belong to the
7  firm, but I think Ms. Sanchez otherwise covered all the
8  points.
9           THE COURT:  And where is that memorialized, Ms.
10 Clark, that any documents (indiscernible) were the
11 property of the OAG?  Ms. Clark?
12          (pause in proceeding)
13          THE COURT:  Is that (indiscernible) for example
14 or --
15          MS. CLARK:  Yeah, it's paragraph 8 of the
16 retainer agreement.
17          THE COURT:  Okay.  Is that before me yet or
18 not?
19          MS. CLARK:  It's attached as an exhibit to our
20 letter of February 20.  It's exhibit, oh, yeah, exhibit
21 2.
22          (interposing)
23          MS. CLARK:  2 and 3 I think.
24          MS. LONGLEY:  Your Honor, sorry, this is Serena
25 Longley again.  Just quickly, it's exhibit 2 are the

PROCEEDINGS                    24

1
2    appointment letters which also speak to the obligations

3    to keep materials confidential and that all work is done

4    on behalf of the OAG.  And then exhibit 3 are the

5    engagements letters with the firms directly that are

6    pursuant to those appointment letters which are exhibit

7    2.  So it's in both documents very clearly.

8                THE COURT:  All right, thank you.  All right,

9    Ms. Trazaskoma, do you want to respond?

10               MS. TRZASKOMA:  Thank you, Your Honor.  You

11   know, just to address briefly Ms. Longley's first point,

12   I think she's missing an important distinction here

13   which is that we agree that the individual lawyers at

14   Cleary and Vladeck, including Ms. Clark and Mr. Kim,

15   were, in fact, deputized by the Attorney General's

16   Office, but I don't see anything in the records, and I

17   would be shocked if there were, that the Cleary firm is

18   currently or ever was an arm of the Attorney General's

19   Office, nor do I think that happened with Vladeck.  So

20   they're, you know, mixing things up.

21               We have subpoenaed the custodians of records

22   which are the two law firms, and the fact that there is

23   a provision in the engagement letters with Ms. Clark and

24   Mr. Kim requiring upon the AG's request that they

25   destroy or return the materials is of no consequence to

1

2  the question of whether Cleary and Vladeck are currently

3  custodians of these records.  And I would note that both

4  of those, that paragraph A regarding the retention of

5  records notes in Ms. Clark's, for example, that if the

6  firm is subjected to legal proceedings to compel

7  disclosure, they will promptly notify the AG.

8          So it contemplates that the firms d get

9  subpoenaed for information and that, you know, this is

10  our entire point which is that these law firms did not

11  by virtue of being engaged, by having their lawyers be

12  engaged and deputized become a state entity.  They never

13  were and they are not now.  And that's our argument.  It

14  is — I vehemently disagree that there is any reason to

15  wait on this briefing.  It is an important issue.  There

16  is — it's an important issue of constitutional law, and

17  if the Court were to take these issues up seriatim, I

18  believe that would just result in wasteful delay that's

19  going to mean we're never going to comply with the

20  Court's discovery schedule.

21          THE COURT:  Could you respond though to the

22  point that Ms. Sanchez made which is that if you succeed

23  on the motion to compel as to the OAG, then the

24  subpoenas to the law firms are moot and conversely if

25  the motion to compel as to the OAG is denied and

```
 1                          PROCEEDINGS                    26
 2   sovereign immunity is upheld, then it similarly would be
 3   upheld as to the law firms?
 4            MS. TRZASKOMA:  Well, that's the entire
 5   argument.  I don't think that if sovereign immunity as
 6   to the AG is upheld, it dictates the resolution of
 7   whether the law firms enjoy the same immunity.  And it
 8   is possible, I concede, that the Court could find that
 9   the AG is not immune, that the documents are not
10   protected by any privilege, and could direct them to be
11   turned over or that the documents are, in fact,
12   privileged and that regardless of immunity they should
13   be turned over.  But, again, I am concerned that that is
14   not going, those issues are not going to be decided and
15   certainly not decided finally.  I don't know that the AG
16   is not going to appeal that issue.
17            So I'm just concerned that by delaying briefing
18   on this discrete legal issue, again, you know, the
19   Attorney General is going to be responding to our motion
20   to compel which includes all the privilege arguments,
21   that we're, that it makes sense to delay.
22            THE COURT:  All right, well, if it's just a
23   discrete issue, we can keep the briefing relatively
24   streamlined I would think.  So if your brief was limited
25   to ten pages, when could you file, when can you file it?
```

```
 1                       PROCEEDINGS                    27

 2            MS. TRZASKOMA:  We could file that on Mrach 8.

 3            THE COURT:  Okay.  If – will the law firms be

 4   responding together?

 5            MS. LONGLEY:  Hi, Your Honor, this is Serena

 6   Longley from the AG's office.  Yes, I think the firms

 7   would be an OAG would also move to quash as well as the

 8   real party in interest as is contemplated in the portion

 9   of the engagement letter that Ms. Trzaskoma read which

10   says that the firms have an obligation to let us know if

11   anyone moves to compel against them so that we can

12   interpose and object.  So I think, again, this already

13   unnecessary briefing would also involve a motion from

14   OAG as well as from the firms.

15            THE COURT:  Would it be just one motion?  You

16   don't need, the OAG and the firms don't need to file two

17   motions, right?

18            MS. LONGLEY:  I agree.  I think we don't have

19   to file any, but I guess what I would say that makes the

20   point which is that we're all the same, and so it's

21   really all duplicative of the, you know, the motion to

22   compel that was just filed Friday and is going to be

23   briefed.

24            THE COURT:  It's not though.  There is a

25   separate question as to the law firms, and I'm trying to
```

1
2    figure out a way so that – I only want to do this once
3    either, I agree with you.  So what I'm trying to do is
4    find a way to streamline any briefing as to the law
5    firms, if it's a discrete issue, to get you on track
6    with the OAG briefing, and then we just have one oral
7    argument where everybody shows up and we get this done.
8    So I guess if Mr. Cuomo files his brief, his motion to
9    compel and ten-page brief on March 8, how long do you
10   need for your motion to quash?
11           MS. LONGLEY:  Well, Your Honor, first, I do
12   think we could agree to do one joint motion on behalf of
13   the three entities.  As far as how long we need, give me
14   just one moment to consult --
15           THE COURT:  How about like March 26?
16           MS. LONGLEY:  March, sorry, what, 25th?
17           THE COURT:  March 26.
18           MS. LONGLEY:  26?
19           THE COURT:  Yeah, 2-6.
20           MS. LONGLEY:  I think that should be okay.
21   That works.
22           THE COURT:  And then, Ms. Trzaskoma, could you
23   get your reply in by April 3?
24           MS. TRZASKOMA:  I think we could.
25           THE COURT:  Okay.  Because that would get us,

```
 1                    PROCEEDINGS                    29
 2  well, I guess are you going to want, the OAG is probably
 3  going to want to reply, but maybe a week later for the
 4  reply on the cross-motion?
 5              MS. LONGLEY:  Yes.  I think – or maybe – what
 6  date does that put us at, sorry?
 7              (interposing)
 8              MS. LONGLEY:  April 10?
 9              THE COURT:  Yeah.
10              MS. LONGLEY:  I think that's fine.  And just to
11  be really clear, the only issue for this briefing is
12  going to be are the firms able to invoke the state
13  sovereign immunity defense?
14              THE COURT:  Right.
15              MS. LONGLEY:  Okay --
16              THE COURT:  And I already – the facts are, I
17  don't know that there's really any disputed issues of
18  fact, and I have, you know, I can read engagement
19  letters.  So that's why I'm trying to limit it to ten
20  pages because I really think it is the single issue.
21  You don't need to talk about the whole, all the
22  background on sovereign immunity.  It's just assuming
23  that there is sovereign immunity, why it applies to the
24  law firms.  And, similarly, all the privilege issues
25  have all been set forth in the other round of briefing.
```

PROCEEDINGS                          30

1

2   So it should be pretty narrow, and, frankly, it would be

3   great if we don't even need ten pages, but I'm not going

4   to push you that had, frankly.

5          MS. TRZASKOMA:  Okay.

6          MS. LONGLEY:  Your Honor, would there be a

7   limiting on the replies pages?

8          THE COURT:  I mean the replies I was thinking

9   five.  Can everybody live with that?  I mean I'm doing

10  this so that it gets resolved more quickly, and we'll –

11  I want to try, if we get the briefing done by April 10,

12  then we could probably fit in oral argument before the

13  end of April and then, you know, I'm not making any

14  promises or predictions about getting a decision out to

15  you, but it means it's not going to be long after that.

16  So that's why I'm just thinking, I mean I would really

17  love if we could do argument, well, the week of April 22

18  is (indiscernible).  But like May 2 we could do

19  argument.  (inaudible)

20         MS. TRZASKOMA:  Your Honor, this is Theresa

21  Trzaskoma.  Five pages for our reply is, makes sense to

22  us.  I think that we have I believe April, or May 2 is

23  the date currently set for our client's deposition --

24         THE COURT:  Okay.

25         ATTORNEY:  It is --

```
 1                      PROCEEDINGS                    31

 2            (interposing)

 3            MS. TRZASKOMA:  But May 3 would work.

 4            THE COURT:  Okay.

 5            MS. TRZASKOMA:  May 1 or May 3.

 6            THE COURT:  May 3.

 7            MS. LONGLEY:  Your Honor, would it be possible

 8  to perhaps do it the following week in May?  I just say

 9  this because I know several people on our side are

10  affected by like DOE calendar.  There's a long break

11  there, and I think a lot of people have, I think it goes

12  into that week.

13            THE COURT:  Okay, how about May 9, morning of

14  May 9?

15            MS. TRZASKOMA:  I believe that's the deposition

16  of Ms. DesRosiers.

17            THE COURT:  Okay, how about the afternoon of

18  May 8?

19            MS. TRZASKOMA:  I believe that works for us.

20  This is Theresa Trzaskoma.

21            THE COURT:  How about the OAG, May 8?

22            MS. LONGLEY:  Yes, that works for all of us

23  here.

24            THE COURT:  Okay.  And Ms. Sanchez and Ms.

25  Clark?
```

```
 1                        PROCEEDINGS                    32

 2            MS. SANCHEZ:  That's fine.  Thank you.

 3            THE COURT:  And, Ms. Schnell, I know you don't

 4   necessarily have to say anything (indiscernible) but

 5   does that date work for you?

 6            MS. SCHNELL:  Yes.  Yes, Your Honor, thank you.

 7            THE COURT:  Okay, so let's do 3 o'clock on May

 8   8.  All right, very good.  And that will be both the OAG

 9   motion as well as the law firm motion.  Everybody can

10   (indiscernible).  Let me just check on thing.

11            (pause in proceeding)

12            THE COURT:  Yes, that should be fine on my end.

13   Great, I appreciate that.  Thank you, everyone.  Okay,

14   so I think those were all the things on my checklist.

15   Ms. Schnell, let me start with you, any other issues

16   you'd like to raise from Ms. Bennett's perspective?

17            MS. SCHNELL:  No, we are making progress on

18   various discovery disputes, so I think it would make

19   sense to set another call in perhaps two weeks so we can

20   tee up any, you know, disputes we cannot resolve to get

21   to, for Your Honor before that.

22            THE COURT:  Okay.  Yeah, Ms. Trzaskoma has

23   raised that as to Ms. Boylan as well.  Ms. Trzaskoma,

24   how about you?  Aside from setting another conference

25   date, any other issues to raise on behalf of your
```

```
 1                         PROCEEDINGS                    33
 2   client?
 3             MS. TRZASKOMA:  No, Your Honor, just to flag,
 4   which came up on our last conference, there's an issue
 5   related to the confidentiality designations of the
 6   videos of Ms. Bennett that we are not able to resolve,
 7   that we will be submitting a premotion or, you know, a
 8   letter to Your Honor pursuant to the protective order
 9   concerning those designations and the sealing of those
10   materials.
11             THE COURT:  Understood.  Okay.  Mr. Morvillo,
12   Ms. Sulkowski, anything on behalf of Ms. DeRosa?
13             MR. MORVILLO:  Nothing Your Honor.
14             THE COURT:  Okay.  Mr. Hamid, on behalf of Ms.
15   DesRosiers?
16             MR. HAMID:  No, nothing, Your Honor, thank you.
17             THE COURT:  All right, Ms. Rosenberg, on behalf
18   of Ms. Mogul?
19             MS. ROSENBERG:  Nothing other than, as Ms.
20   Schnell mentioned, we are working through some discovery
21   issues including relating to the plaintiff's deposition.
22   So if we're able to resolve, we'll inform the Court.
23             THE COURT:  All right.  If we have our next
24   conference, it's a little bit longer than two weeks, but
25   it's what I can give you, we have our next conference on
```

```
 1                        PROCEEDINGS                      34
 2   March 22, is that enough time to resolve whatever these
 3   issues are without impacting any depositions?
 4             MR. MORVILLO:  Your Honor, this is Ray
 5   Morvillo, I think it's probably okay.  My concern would
 6   be if there isn't, and obviously I have no idea whether
 7   there will be, but if there's any issues with production
 8   from Ms. Boylan because certainly we're going to want to
 9   get documents in for Ms. Bennett's deposition that will
10   be relevant from Ms. Boylan or potentially relevant to
11   the extent that they exist.  And the 22nd cuts it pretty
12   close to the deposition which I think is the 28th or the
13   29th.
14             THE COURT:  Yeah.
15             MR. MORVILLO:  So if you can do earlier in case
16   there's a resolution that needs to be, that would be
17   helpful.
18             THE COURT:  Unfortunately, I don't have any
19   time really the week before that, either next week, even
20   next week is not really soon enough.  The week of the
21   11th I've already filled.
22             MR. MORVILLO:  Well, then I guess the 22nd is
23   good.
24             THE COURT:  So, sorry, I guess I'm not really
25   giving you much of a choice.
```

PROCEEDINGS                               35

1

2          MR. MORVILLO:  Then I wholeheartedly agree with

3   the 22nd.

4          THE COURT:  All right, all right, so why don't

5   I put you down for 10 a.m. on Friday, March 22, and if

6   you can get me any letters as to, letters containing any

7   disputes that I need to address by Friday the 15th.  End

8   of the day on Friday the 15th.  Okay?  Any issues with

9   any of those dates that anyone wants to raise?

10         MS. LONGLEY:  Your Honor, hi, sorry, this is

11  Serena from the AG's Office.  Just confirming you're not

12  expecting us at that conference on --

13         THE COURT:  You don't have to, you're always

14  welcome, but I don't, I think I'm – it may be more Ms.

15  Boylan and Ms. Bennett, but I guess I would also suggest

16  that you look at the letters that are filed on the 15th -

17  -

18         MS. LONGLEY:  Of course.

19         THE COURT:  -- and anything in there that you

20  want to be heard on that you should probably show up.

21         MS. LONGLEY:  Okay, we appreciate that, thank

22  you.

23         THE COURT:  Okay.  All right, and same for the

24  law firms because we're going to be, your briefing

25  schedule will be percolating by that point.  So if you

```
 1                        PROCEEDINGS                    36
 2   don't want to be there either, you don't have to.
 3            MS. OEHLKE:  Your Honor, this is Krista Oehlke
 4   from Perry Law on behalf of Ms. Boylan.
 5            THE COURT:  Yes.
 6            MS. OEHLKE:  Our co-counsel Ms. Gerchik is
 7   calling from California.  So would it be possible to
 8   move the 10 a.m. to perhaps an hour or two later?
 9            THE COURT:  Let me check, sorry.
10            MS. OEHLKE:  If not, we can make it work
11            THE COURT:  Yeah.  Yeah, we could start at 11.
12   I can't really start much later than that.  Is that
13   okay?
14            MS. OEHLKE:  11 a.m. is great, yeah.  That's
15   great, thank you, Your Honor.
16            THE COURT:  Yep.  Great, so you'll see a post-
17   conference order that has the briefing schedule for the
18   law firm motion as well as the new, the next conference
19   date as well as the date for any letters with the
20   (indiscernible) that you want me to address.  Very good,
21   thank you so much, everyone.  We'll be adjourned for
22   today.  Have a good afternoon.
23            MS. SCHNELL:  Thank you, Your Honor.
24            MS. TRZASKOMA:  Thank you, Your Honor.  Good
25   afternoon.
```

```
 1                          PROCEEDINGS                        37

 2            ATTORNEYS:  Thank you.

 3            (Whereupon the matter is adjourned to March 22,

 4   2024 at 11 a.m.)

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

38

C E R T I F I C A T E

     I, Carole Ludwig, certify that the foregoing transcript of proceedings in the case of BENNETT v. CUOMO, et al., Docket #22cv7846, was prepared using digital transcription software and is a true and accurate record of the proceedings.

Signature  _____

          Carole Ludwig

Date:  March 3, 2024