UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

CHARLOTTE BENNETT,

                     Plaintiff,

       - against -

ANDREW CUOMO,
MELISSA DEROSA,
JULL DESORISERS, and
JUDITH MOGUL,

               Defendants.

-----------------------------------------------------------------------X

    1:22-cv-07846 (VSB)(SLC)


### NONPARTY RESPONDENT'S MEMORANDUM OF LAW IN SUPPORT OF CROSS-MOTION TO QUASH AND IN OPPOSITION TO MOVANT'S MOTION TO COMPEL


LETITIA JAMES
Attorney General
State of New York
28 Liberty Street
New York, New York 10005

Attorney for Nonparty Office of the Attorney
    General


Andrew Amer
Serena Longley
Michael Jaffe
James Cooney

    of Counsel

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ...................................................................................................................... 3

    A.  The Referral and OAG Investigation Report ........................................................ 3

    B.  Cuomo's Relentless Campaign to Attack OAG's Investigation .......................... 4

    C.  Bennett's Complaint and Cuomo's Subpoena to OAG ........................................ 4

ARGUMENT ........................................................................................................................... 6

    I. THE COURT LACKS SUBJECT MATTER JURISDICTION BASED ON
    OAG'S BROAD STATE SOVEREIGN IMMUNITY ........................................................ 6

        A.  In This Circuit, A Subpoena Triggers Sovereign Immunity ........................... 7

        B.  OAG Has Not Waived Its Sovereign Immunity Defense ................................. 11

    II. THE MATERIALS SOUGHT ARE IRRELEVANT AND NOT
    PORPORTIONAL TO THE NEEDS OF THE CASE ........................................................ 15

        A.  The Materials Sought Have No Relevance to Bennett's Causes of Action .............. 15

        B.  Cuomo's Subpoena Imposes A Burden That Is Not Proportional
        To The Needs Of The Case ............................................................................. 18

    III. THE MATERIALS SOUGHT ARE PRIVILEGED ......................................................... 19

        A.  The Attorney/Client Privilege And Work Product Doctrine Apply ........................ 19

        B.  The Law Enforcement Privilege Applies ........................................................ 23

CONCLUSION ...................................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

*Abdou v. Gurrieri*, No. 05-cv- 3946, 2006 WL 2729247 (E.D.N.Y.
Sept. 25, 2006) ...................................................................................................................8

*Adams v. Texas Comm'n on Env't Quality*, No. A-06-CA-281-SS, 2007
WL 9701381 (W.D. Tex. May 29, 2007) ............................................................................16

*Alden v. Maine*, 527 U.S. 706 (1999) ........................................................................... 7, 14

*Allied Irish Banks v. Bank of Am., N.A.,* 240 F.R.D. 96 (S.D.N.Y.
2007) ...........................................................................................................................26, 27

*Alltel Comm'ns, LLC v. DeJordy*, 65 F.3d 1100 (8th Cir. 2012)....................................10

*Beaulieu v. Vermont*, 807 F.3d 478 (2d Cir. 2015) ..........................................................7

*Blue Angel Films, Ltd. v. First Look Studios, Inc.*, No. 08-cv-6469, 2011
WL 830624 (S.D.N.Y. March 9, 2011) ..............................................................................21

*Bonnet v. Harvest (U.S.) Holdings, Inc.,* 741 F.3d 1155 (10th Cir. 2014) .........................10, 12, 13

*Cartica Management, LLC v. Corpbanca, S.A.*, 50 F. Supp.3d 477
(S.D.N.Y.  2014) ...............................................................................................................11

*Catskill Dev't, LLC v. Park Place Entertainment Corp.*, 206 F.R.D. 78
(S.D.N.Y. 2002)..................................................................................................................9

*Cirale v. 80 Pine Street Corp*, 35 N.Y.2d 113 (1974)....................................................30

*City of New York v. Blue Rage Inc.*, No. 17-cv-3480, 2018 WL
2709203 (E.D.N.Y. June 5, 2018) ............................................................................. 20, 21

*Close v. State of N.Y.*, 125 F.3d 31 (2d Cir. 1997) ........................................................15

*College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*,
527 U.S. 666 (1999) ....................................................................................................15, 16

*Corbett v. eHome Credit Corp*, No. 10-cv-26, 2010 WL 3023870
(E.D.N.Y. August 2, 2010)................................................................................................21

*Cuomo v. Office of the New York State Attorney General*, No. 22-mc-
3044, 2023 WL 4714097 (E.D.N.Y. July 21, 2023) ..........................................................6

*Dorsett v. County of Nassau*, 762 F.Supp.2d 500 (E.D.N.Y. 2011) .................................................29

*Dugan v. Rank*, 372 U.S. 609 (1963) .......................................................................................... 8, 11

*EPA v. General Elec. Co.*, 197 F.3d 592 (2d Cir. 1999), *amended on
    reh'g on other grounds*, 212 F.3d 689 (2d Cir. 2000) .............................................8, 9, 13

*Estate of Gonzalez v. Hickman*, 466 F. Supp. 2d 1226 (E.D. Ca. 2006) .....................................12

Exec. Law § 63(8) .............................................................................................................................30

*Felix v. County of Nassau*, 344 F.R.D. 441 (E.D.N.Y. 2023) ........................................................9

*Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276 (2d Cir.
    1998) .............................................................................................................................20

*Garrett v. Metro. Life Ins. Co.,* No. 95-cv-2406, 1996 WL 325725
    (S.D.N.Y. June 12, 1996) .......................................................................................24

*Gulino v. Bd. of Educ. of the City Sch. Dist. of the City of New York*, No.
    96-cv-8414, 2016 WL 7320775 (S.D.N.Y. July 18, 2016), report
    and recommendation adopted, No. 96-cv-8414, 2016 WL
    7243544 (S.D.N.Y. Dec. 14, 2016) ......................................................................17

*Haber v. United States*, 823 F.3d 746 (2d Cir. 2016) ....................................................................15

*Hans v. Louisiana*, 134 U.S. 1 (1890) ............................................................................................6

*Hickman v. Taylor*, 329 U.S. 495 (1947) .......................................................................................23

*In re General Motors LLC Ignition Switch Litigation*, 80 F. Supp. 3d 521
    (S.D.N.Y. 2015) ............................................................................................... 25, 26

*In re Grand Jury Subpoena,* 341 F.3d 331 (4th Cir. 2003) ...........................................................26

*In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459 (S.D.N.Y. 1996) .............................................27

*In re Missouri Dept. of Natural Res.*, 105 F.3d 434 (8th Cir. 1997) .............................................10

*In re S.E.C. ex rel. Glotzer*, 374 F.3d 184 (2d Cir. 2004) ............................................................8

*In re The City of New York*, 607 F.3d 923 (2d Cir. 2010) ....................................................... 28, 29

*Kelly v. City of New York*, No. 01-cv-8906, 2003 WL 548400
    (S.D.N.Y. Feb. 24, 2003) .....................................................................................29

*Land v. Dollar*, 330 U.S. 731 (1947) ................................................................................................11

*Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613 (2002) ....................................14, 17

*Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682 (1949) .....................................................11

*Lazarou v. Mississippi State Univ.*, No. 1:07-CV-00060-GHD, 2012
   WL 1352890 (N.D. Miss. Apr. 17, 2012) ....................................................................................16

*Lora v. Board of Ed. Of City of New York*, 74 F.R.D. 565 (E.D.N.Y.
   May 12, 1977) ..............................................................................................................................30

*MacNamara v. City of New York,* 249 F.R.D. 70 (S.D.N.Y. 2008) ..................................................30

*Makarova v. United States*, 201 F.3d 110 (2d Cir.2000) ................................................................15

*McGinty v. New York*, 251 F.3d 84 (2d Cir. 2001) ........................................................................15

*Milord-Francois v. New York State Off. of Medicaid Inspector Gen.*, No.
   19-cv-00179, 2022 WL 10653757 (S.D.N.Y. Oct. 18, 2022) .....................................................14

*Morrison v. Budget Rent A Car Sys.*, 657 N.Y.S.2d 721 (2d Dep't
   1997) .............................................................................................................................................14

*New York Times Co. v. United States Dep't of Justice,* 939 F.3d 479 (2d
   Cir. 2019) ................................................................................................................................27, 28

*Papasan v. Allain*, 478 U.S. 265 (1986) ...........................................................................................6

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984)) ...............................................7

*Regents of the Univ. of Cal. v. Doe,* 519 U.S. 425 (1997) ..............................................................7

*Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426 (2d
   Cir. 1999) .......................................................................................................................................6

*Russell v. Jones*, 49 F.4th 507 (5th Cir. 2022) ..........................................................................10, 11

*Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996) ..............................................................7, 11

*Sinni v. Forest Hills Hosp.,* No. 09-cv-4572, 2011 WL 1004817
   (E.D.N.Y. March 18, 2011) .........................................................................................................19

*Solomon v. Nassau County*, 274 F.R.D. 455 (E.D.N.Y. May 24, 2011) ........................................23

*Springfield Hospital Inc. v. Guzman*, 28 F.4th 403 (2d Cir. 2022) ................................................6

*Texas LDPC, Inc. v. Broadcom, Inc.*, No. 22-CV-01781, 2023 WL
    3293291 (S.D. Tex. 2023) ................................................................16

*United State v. Adlman*, 134 F.3d 1194 (2d Cir.1988) .................................24

*United States v. Hossain*, No. 19-cr-606, 2021 WL 4272827
    (S.D.N.Y. September 21, 2021) ........................................................29

*United States v. James*, 980 F.2d 1314 (2d Cir. 1992) ...............................17

*United States v. Velarde*, 40 F. Supp. 2d 1314 (D.N.M. 1999), .................18

*Upjohn Co. v. United States*, 449 U.S. 383 (1981) ....................................23

*Vega v. Semple*, 963 F.3d 259 (2d Cir. 2020) ...........................................12

*Woodard v. City of New York*, No. 99-cv-1123, 2000 WL 516890
    (E.D.N.Y. March 10, 2020) .............................................................30

*Yul Chu v. Mississippi State Univ.*, 901 F. Supp. 2d 761 (N.D. Miss.
    2012) ...............................................................................................16

**Statutes**

Federal Rule of Civil Procedure 26 ..........................................................20

New York Executive Law §87 ..................................................................11

**Treatises**

Erwin Chemerinsky, *Federal Jurisdiction* § 7.6 (2d ed.1994) ...................16

**Constitutional Provisions**

U.S. Const., Eleventh Amendment ..............................................................6

## PRELIMINARY STATEMENT

In a report published on August 3, 2021 ("Report"), Office of the New York Attorney General ("OAG") investigators concluded that then-Governor Cuomo had sexually harassed several women who were current and former state employees, including Plaintiff Charlotte Bennett. Following the issuance of the Report, and in the midst of an open impeachment investigation, Cuomo announced he would resign as governor on August 24, 2021.

Starting months before OAG issued its Report and continuing to this day, Cuomo has pursued a relentless campaign to undermine and discredit the Report and OAG's investigation and to rehabilitate his reputation. The nonparty subpoena Cuomo served on OAG in this action ("Subpoena") is just part of this strategy; it has nothing to do with any legitimate effort to obtain documents and information necessary for Cuomo to defend himself against the harassment and retaliation claims asserted by Bennett. Cuomo already has access to a vast amount of information related to OAG's investigation that has been publicly released by OAG on its website, including minimally redacted transcripts of all testimony taken by the investigators under oath.

As a threshold matter, under Second Circuit precedent, enforcement of the Subpoena is barred by OAG's broad state sovereign immunity. But even if the Court were to reach the merits, the Subpoena should be quashed because the materials sought by Cuomo are wholly irrelevant to the claims and defenses in this action. Bennett alleges in her Complaint that Cuomo sexually harassed her "throughout her employment as his Executive Assistant" chiefly by subjecting her to repeated unwanted sexual comments and sexual advances, and then retaliated against her when she reported Cuomo's harassment to her supervisors, the press, and to OAG. Bennett's allegations are limited to conduct that she directly observed and do not in any way rely on establishing harassment of others discussed in the Report; thus, Bennett's allegations against Cuomo will turn entirely on Bennett's first-

hand account of her experience working for Cuomo and communications of which she was personally aware, and have nothing to do with the Report or the investigative materials discussed in the Report. Cuomo is not seeking the materials for any legitimate purpose, but rather to advance his personal crusade to attack OAG's investigation. Litigants have no entitlement to use nonparty discovery to advance their agendas on matters unrelated to the defense of the underlying claims against them.

In any event, even if the Court were to conclude that sovereign immunity does not apply or that some of the requested materials could have some possible relevance to Bennett's claims, the demand for such materials is not proportional to the needs of the case, especially considering the enormous undue burden that producing the materials would impose on OAG (at significant taxpayer expense). Any production would require a time-consuming review and redaction process to protect highly sensitive information, including sensitive details about witnesses – such as medical information, sexual histories, details about their family, addresses and other personally identifying information, and confidential employment information – as well as security protocols, floorplans, and security footage.

Finally, beyond these determinative issues, the interview memos, unredacted transcripts, and "documents concerning" witness statements sought by Cuomo are protected from disclosure under numerous applicable privileges. First, the investigative materials shared between the investigation team and OAG are protected from disclosure by the attorney-client privilege, and internal memos generated by the investigation team are attorney work product. Second, the interview memos and transcripts contain information pertaining to law enforcement techniques as well as sensitive information about witnesses that would, if disclosed, impair the ability of OAG to conduct future investigations, and are therefore protected from disclosure under the law enforcement privilege. Third, the interview memos reflect opinions, recommendations, and deliberations relating to the findings and conclusions incorporated into the Report, and are therefore protected from disclosure under the deliberative process and public interest privileges.

2

## BACKGROUND

### A.       The Referral and OAG Investigation Report

By letter dated March 1, 2021, then-Governor Cuomo referred allegations of sexual harassment against him to OAG for investigation pursuant to New York Executive Law § 63(8) ("§ 63(8)") (the "Referral Letter"). Declaration of Serena Longley, dated March 22, 2024 ("Longley Decl."), Ex. 1. In the Referral Letter, Cuomo directed OAG to select an independent law firm to conduct the § 63(8) inquiry ("Investigation"), while acknowledging "that nothing in this letter is intended to constrain or limit the powers inherent in §- 63(8)," which grants OAG discretion to appoint, employ and determine the duties of non-governmental "deputies" for the purpose of inquiring into referred matters. *Id.*

Starting on March 8, 2021, OAG began appointing an "Investigative Team," led by private attorneys Joon Kim of Cleary Gottlieb Steen & Hamilton LLP and Anne Clark of Vladeck, Raskin & Clark, P.C., and empowered them to issue subpoenas to investigate and report on allegations of sexual harassment by Cuomo and surrounding circumstances. *Id.* ¶ 12 , Ex. 4. The Investigation closed on August 3, 2021 with the release of the Report and 111 exhibits concluding that Cuomo sexually harassed several women. *Id.* ¶ 18. The Investigative Team interviewed 179 individuals, taking testimony under oath from 41, and collected over 74,000 documents. *Id* ¶¶ 18, 21*;* Declaration of Ye Eun Charlotte Chun, dated March 22, 2024 ("Chun Decl.") ¶ 5.

Given the public significance and interest in the Report, OAG decided to make available to the public certain materials from the Investigation, specifically on-the-record testimony and approximately 1000 exhibits to that testimony, but to do so in redacted form to protect witness confidentiality and privacy. Longley Decl. ¶ 23. The review and redaction process for public release of transcripts and just over 1000 of the 74,000 collected documents took the Investigative Team approximately 3,600 hours to complete due to the highly sensitive and confidential nature of the

information contained in the materials. Chun Decl. ¶¶ 10-12. Without waiving any privileges, OAG cooperated with several other governmental agencies conducting their own investigations into overlapping allegations against Cuomo. Longley Decl. ¶¶ 25-28. As part of those cooperative efforts, OAG provided to government agencies certain investigative materials subject to agreements preserving the confidentiality of OAG's documents to the greatest extent possible. *Id.*

### B. Cuomo's Relentless Campaign to Attack OAG's Investigation

Facing multiple allegations of sexual harassment in March 2021, Cuomo announced he would not resign and asked the public to reserve judgment until OAG concluded its Investigation. *Id* ¶¶ 9-11, Exs. 2, 3. Yet within days of the § 63(8) appointments of Kim and Clark, OAG learned that members of Cuomo's inner circle were privately seeking out negative information about Kim and Clark to prepare a counteroffensive attack on the Report in the event the outcome of the Investigation was not favorable. *Id.* at ¶ 20; Chun Decl. ¶ 6. Throughout the Investigation, the Investigative Team learned of multiple efforts by Cuomo's advisors to obtain negative information about the Investigative Team and women who had accused Cuomo of misconduct. *Id.* The day after the Report was issued, counsel to the Executive Chamber (part of the Office of the Governor) wrote to OAG attacking the findings in the Report, largely based on purportedly negative information about, and attacks on, Kim and Clark and also complaints about Cuomo's lack of access to underlying materials from the Investigation. Longley Decl. ¶¶ 42-44, Ex. 6. As part of this campaign, Cuomo has sought the non-public materials underlying the Report repeatedly without success. Longley Decl. ¶¶ 43, 46-64.

### C. Bennett's Complaint and Cuomo's Subpoena to OAG

In her Complaint, Bennett asserts two causes of action for gender discrimination and one cause of action for sexual harassment against Cuomo based on her own personal account that during the period May 2019 through June 2020, Cuomo sexually harassed her by, *inter alia*, making unwelcome comments about her body and physical appearance, making unwelcome sexual advances, steering her

into conversations about the size of his hands/genitals, as well as asking inappropriate questions about her dating history, whether she was monogamous, and her history of sexual assault and whether that affected her ability to enjoy sex. Bennett Complaint (ECF No. 1) at pgs. 40-41. Bennett asserts two causes of action for retaliation against Cuomo based on, *inter alia*, her transfer to an inferior position where she had little work to do under poor supervision, her forced resignation shortly thereafter, as well as Cuomo's public rebuke of her and her allegations and impugning her credibility and character. *Id* at pgs 49-53. These causes of action, and the underlying allegations that support them, are based on Bennett's personal knowledge of what Cuomo said and did to her, not any subsequent investigation of her allegations or any findings contained in the Report. *See Id.* Contrary to Cuomo's assertions otherwise, OAG's Investigation is not on trial in the Bennett Action, which is solely about what Cuomo and the other defendants to the action did or did not do to Bennett.

On August 22, 2023, Cuomo served OAG with the Subpoena pursuant to Rule 45 of the Federal Rules of Civil Procedure, directed to "Office of the New York State Attorney General." Subpoena, at ECF No. 201-1. The Subpoena contained two requests: "1. All documents concerning or reflecting witness statements made by the following individuals… including but not limited to any summaries or notes of witness interviews… 2. Unredacted videos and transcripts of testimony in connection with the Investigation for the following individuals…." *Id.* Both demands listed the same "individuals," which included Bennett, Lindsay Boylan, Trooper 1, "any OAG Investigation witness who referenced" those three named individuals, and "any current or former employees of the Executive Chamber under Governor Cuomo." *Id.* OAG initially served Cuomo with Responses and Objections to the Subpoena on September 2, 2024 and provided amended responses on November 21, 2024. Longley Decl. at ¶ 58, Ex. 9. OAG objected to the subpoena including based on OAG's broad sovereign immunity, lack of relevance and proportionality, undue burden, and attorney/client, work-product, deliberative process, law enforcement, and public interest privileges. *Id.*

**ARGUMENT**

## I. THE COURT LACKS SUBJECT MATTER JURISDICTION BASED ON OAG'S BROAD STATE SOVEREIGN IMMUNITY

As discussed more fully in Points II and III below, the materials sought by Cuomo have been properly withheld by OAG as they are not relevant to Cuomo's defense, their production would impose an undue burden on OAG that is disproportionate to the needs of the case, and they are protected from disclosure under various privileges. However, without even reaching the substance of the Subpoena demands themselves, the Court should quash the Subpoena because enforcement is barred by OAG's broad sovereign immunity.[1]

The Eleventh Amendment "bars suits against a State by citizens of that same State" in addition to citizens of other states. *Papasan v. Allain*, 478 U.S. 265, 276 (1986) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)). "The Eleventh Amendment thus 'affirm[s] that the fundamental principle of sovereign immunity limits the grant of judicial authority in Art. III.'" *Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 447-48 (2d Cir. 1999) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). The Eleventh Amendment is but one "species" of sovereign immunity. *Beaulieu v. Vermont*, 807 F.3d 478, 483 (2d Cir. 2015) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996)). States also enjoy a broader species of sovereign immunity, independent of the Eleventh Amendment, that applies against all private suits, whether in state or federal court. *Alden v. Maine*, 527 U.S. 706, 713, 721 (1999) (noting state immunity from suit is a fundamental aspect of sovereignty that existed before ratification of the Constitution that "neither derives from, nor is limited by, the terms

---

[1] OAG's broad sovereign immunity poses a threshold jurisdictional bar to the Court compelling OAG to comply with the Subpoena. However, if the Court determines that the Subpoena should be quashed based on the non-jurisdictional grounds raised by OAG in Points II and III below, the Court need not reach this jurisdictional question. *Cuomo v. Office of the New York State Attorney General*, No. 22-mc-3044, 2023 WL 4714097 at \*17 (E.D.N.Y. July 21, 2023) (denying Cuomo's motion to compel on relevance and burden grounds, thereby obviating the need to reach OAG's sovereign immunity defense); *Springfield Hospital Inc. v. Guzman*, 28 F.4th 403, 416 (2d Cir. 2022) (noting sovereign immunity need not be decided if the Court can resolve the motion on the merits in the government's favor).

of the Eleventh Amendment"); *Beaulieu*, 807 F.3d at 483 (citing *Alden*). Both forms of sovereign immunity – under the Eleventh Amendment and at common law pre-ratification – apply not only to a state but also to a state agency acting as an arm of the state, such as OAG. *Regents of the Univ. of Cal. v. Doe,* 519 U.S. 425, 429 (1997) (recognizing sovereign immunity extends to state agencies). OAG relies on both forms of sovereign immunity in seeking to quash the Subpoena.

Adjudicating OAG's sovereign immunity defense requires the Court to conduct a two-part analysis: (1) whether the Subpoena is a "judicial proceeding" for purposes of triggering sovereign immunity; and (2) if so, whether OAG's sovereign immunity defense has been waived.

### A.  In This Circuit, A Subpoena Triggers Sovereign Immunity

The Second Circuit has answered the first issue in the affirmative, holding in the analogous context of a subpoena served on a federal agency that enforcement of a subpoena is a "judicial proceeding" triggering federal sovereign immunity. *EPA v. General Elec. Co.*, 197 F.3d 592 (2d Cir. 1999), *amended on reh'g on other grounds*, 212 F.3d 689 (2d Cir. 2000) (cited by *In re S.E.C. ex rel. Glotzer*, 374 F.3d 184, 190 (2d Cir. 2004)); *see also Abdou v. Gurrieri*, No. 05-cv- 3946, 2006 WL 2729247, at *3 (E.D.N.Y. Sept. 25, 2006) (relying on *EPA* and *Glotzer* in holding that absent waiver, federal sovereign immunity divests the court of jurisdiction to compel a federal agency to comply with a subpoena). In *EPA*, the parties cross-moved to compel and quash a nonparty subpoena served on the EPA by GE in the Southern District of New York after the EPA refused to comply with GE's subpoena in connection with a pending action in the District of New Jersey. 197 F.3d at 594-95. On appeal, the Second Circuit affirmed the district court's holding that enforcement of the subpoena was a "judicial proceeding" brought "against the sovereign" for purposes of triggering the EPA's sovereign immunity because "the result could serve 'to restrain the Government from acting, or to compel it to act.'" *Id.* at 597 (quoting *Dugan v. Rank*, 372 U.S. 609, 620 (1963)). Finding that enforcement of GE's subpoena "would compel the EPA to act," the Second Circuit held the subpoena was "barred by sovereign immunity in the absence

of a waiver." *EPA*, 197 F.3d at 597.[2]

Two district courts within this circuit have applied the rule in *EPA* in the context of state and tribal sovereign immunity. *See Felix v. County of Nassau*, 344 F.R.D. 441 (E.D.N.Y. 2023) (applying the rule in *EPA* to hold that a subpoena triggers *state* sovereign immunity); *Catskill Dev't, LLC v. Park Place Entertainment Corp.*, 206 F.R.D. 78, 87 (S.D.N.Y. 2002) (applying the rule in *EPA* to hold that a subpoena triggers *tribal* sovereign immunity). *Felix* is directly on point. 344 F.R.D. 441 There, plaintiff served a subpoena on nonparty OAG in a wrongful death action seeking OAG's investigative materials beyond what was already published on OAG's website. *Id* at 442-443. The court applied the reasoning in *EPA* to conclude that "when the OAG is served with a third-party subpoena, this is exactly the type of coercive judicial process that the Supreme Court cases seem to envision being protected against by sovereign immunity with its recognition that the doctrine covers more than lawsuits in which the State is named as a defendant." *Id* at 445.

This Court is, of course, similarly bound to apply the Second Circuit's holding in *EPA* to find here that the Subpoena is a "judicial proceeding" triggering OAG's sovereign immunity, but it is worth noting that the Second Circuit is hardly alone in adopting this approach. The Fifth, Eighth and Tenth Circuits have also held that enforcement of a subpoena is a "judicial proceeding" or "suit" for purposes of triggering different forms of sovereign immunity – state sovereign immunity (as here) in the Fifth Circuit and tribal sovereign immunity in the Eighth and Tenth Circuits. *See Russell v. Jones*, 49 F.4th 507, 519 (5th Cir. 2022) (holding state sovereign immunity applies to subpoenas served on state officials); *Alltel Comm'ns, LLC v. DeJordy*, 65 F.3d 1100, 1103 (8th Cir. 2012) (holding effort to compel

---

[2] The court went on to hold that the EPA's federal sovereign immunity was waived by the Administrative Procedures Act, 5 U.S.C. § 702, *see* 197 F.3d at 599, a statute that has no application here.

compliance with a subpoena triggered tribal sovereign immunity);[3] *Bonnet v. Harvest (U.S.) Holdings, Inc.*, 741 F.3d 1155, 1159-60 (10th Cir. 2014) (holding enforcement of a subpoena served on tribes was a suit for purposes of triggering tribal sovereign immunity).

In *Russell*, a case addressing state sovereign immunity, the plaintiffs issued subpoenas to nonparty state court judges seeking information about their role in creating and enforcing the bail schedule being challenged. *Id.* at 510. After concluding that the judges were acting in their official capacities "such that the subpoenas were really served against the state," the Fifth Circuit held that state sovereign immunity applied to state judges as recipients of subpoenas based on the general rule that a suit is against the sovereign if "the judgment sought . . . would be to . . . compel [the Government] to act." *Id.* at 513-14 (internal quotations omitted) (citing *Dugan*, 372 U.S. at 620, *Land v. Dollar*, 330 U.S. 731, 738 (1947), and *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 704 (1949)). Rejecting any distinction between officials sued as defendants and officials served with a nonparty subpoena, the court held that "[b]y compelling a state to produce its papers, a *subpoena duces tecum* subjects a sovereign to the 'coercive process of judicial tribunals at the instance of private parties,'" thereby triggering the state's sovereign immunity. *Id.* at 515 (emphasis in original, internal citations omitted) (quoting *Seminole Tribe of Fla.* 517 U.S. at 58).

Cuomo's efforts to avoid the application of the Second Circuit's holding in *EPA* are without merit. **First**, Cuomo relies on the "many courts [that] have reasoned that a discovery subpoena is not a 'suit' for purposes of state sovereign immunity." Cuomo MOL at 9; *see also* Cuomo MOL at 10. But the cases Cuomo cites are all outside the Second Circuit and therefore have no controlling or

---

[3] Fifteen years earlier, the Eighth Circuit rejected a nonparty state agency's claim of immunity from discovery subpoenas based on the Eleventh Amendment, *see In re Missouri Dept. of Natural Res.*, 105 F.3d 434, 436 (8th Cir. 1997), but as the Fifth Circuit noted, the Eighth Circuit's more recent decision in *Alltel* "casts considerable doubt" on its earlier decision in *In re Missouri DNR*. *Russell*, 49 F.4th at 518 n.12.

persuasive effect; to the extent these cases hold that a subpoena is not a "judicial proceeding" or "suit" for purposes of triggering a state's broad sovereign immunity, they conflict with the law in this circuit and should not be followed.[4] *See Cartica Management, LLC v. Corpbanca, S.A.*, 50 F. Supp.3d 477, 486 (S.D.N.Y. 2014) ("[D]istrict courts and other inferior courts are bound by decisions of the Court of Appeals in the appropriate circuit unless overruled by an intervening Supreme Court decision or other change in law."). Cuomo fails to cite a single controlling Second Circuit decision in support of his argument that a nonparty subpoena is not a "suit" triggering sovereign immunity.

**Second**, Cuomo erroneously relies on the *Ex parte Young* doctrine, which provides an exception to sovereign immunity for suits seeking "prospective relief against an *individual acting in his official capacity . . .* to end an *ongoing violation of a federal law*." *Vega v. Semple*, 963 F.3d 259, 280 (2d Cir. 2020) (emphasis added). The exception does not apply here for two independent reasons: (1) the Subpoena names a state agency (OAG) rather than an individual acting in his official capacity; and (2) Cuomo does not and cannot plausibly assert that OAG is engaging in *an ongoing violation of federal law* by lawfully possessing OAG's own investigatory file. *See Estate of Gonzalez v. Hickman*, 466 F. Supp. 2d 1226, 1229 (E.D. Ca. 2006) (rejecting *Ex parte Young* exception in a subpoena enforcement action against state agency because "[t]here is no on going violation that could support a finding that the present issue falls within the *Ex Parte Young* exception to the Eleventh Amendment bar").[5]

Tellingly, Cuomo fails to cite to a single case holding that the *Ex parte Young* exception applies in a subpoena enforcement action to override sovereign immunity. Instead, he cites to dicta in a footnote in *Bonnet* that provides no support for his position. Cuomo MOL at 10 (citing *Bonnet*, 741

---

[4] In any event, these out-of-circuit cases are also distinguishable because they address only state sovereign immunity derived from the Eleventh Amendment and not the broader species of pre-ratification sovereign immunity OAG invokes here.

[5] It would be futile for Cuomo to serve a new subpoena naming the Attorney General in her official capacity instead of OAG because he still cannot satisfy the "ongoing violation of federal law" requirement.

F.3d at 1162 n.1). In *Bonnet*, the Tenth Circuit *quashed* a subpoena served on a tribe based on its determination, consistent with the Second Circuit's decision in *EPA*, that the subpoena was a suit triggering tribal immunity – a holding that *defeats*, rather than supports, Cuomo's position. 741 F.3d at 1161-62.  In dicta in a footnote, the *Bonnet* court suggested the outcome might be different if the subpoena named a *tribal official* rather than the tribe itself because of the potential application of *Ex parte Young,* but expressly *declined* to decide the issue "as Plaintiffs here served a Tribal agency, rather than a tribal official." *Id.* at 1162 n.1.

      **Third**, Cuomo argues that quashing the Subpoena based on state sovereign immunity would lead to purportedly "absurd and unjust results" by denying civil litigants access to *any* discovery from the state. Cuomo MOL at 11. Cuomo's argument ignores Second Circuit precedent holding a subpoena triggers sovereign immunity under the circumstances presented here. *See, supra*, at Point I.A, 7-9. Moreover, his prediction of dire consequences is totally overblown; a civil litigant in a Section 1983 action will typically name one or more state officials as defendants under the *Ex parte Young* exception, and in that procedural posture may obtain party discovery by serving discovery notices on those officials, who can then be compelled to produce material within their custody, possession, or control. In cases where, as here, the plaintiff does not sue state officers in their official capacity, civil litigants can seek relevant documents from state agencies under New York's Freedom of Information Laws (*e.g.* New York Executive Law § 87).[6]

      Based on *EPA*, the Court should hold that the Subpoena is a "judicial proceeding" that is "barred by [OAG's] sovereign immunity in the absence of a waiver." *EPA*, 197 F.3d at 597.

### B.  OAG Has Not Waived Its Sovereign Immunity Defense

      Cuomo's assertion that OAG has waived its sovereign immunity defense is wrong for multiple

---

[6] Cuomo has already made a FOIL request for the documents he simultaneously seeks through the Subpoena. *See* Longley Decl. ¶¶ 61-64.

reasons. As a threshold matter, Cuomo conflates Eleventh Amendment immunity with broader state sovereign immunity in presuming that OAG's immunity defense is waivable. It is not. Unlike waiver of Eleventh Amendment immunity, waiver of a state's broader sovereign immunity is governed by state law. *See Alden*, 527 U.S. at 757–58 (1999) (referring to state law to determine waiver of general sovereign immunity). "Under New York law, sovereign immunity is considered to be an issue of subject matter jurisdiction that *may not be waived*." *Milord-Francois v. New York State Off. of Medicaid Inspector Gen.*, No. 19-cv-00179, 2022 WL 10653757, at *6 (S.D.N.Y. Oct. 18, 2022) (emphasis added) (citing *Morrison v. Budget Rent A Car Sys.*, 657 N.Y.S.2d 721, 726–27 (2d Dep't 1997)). Accordingly, there can be no waiver.[7]

But even if OAG's sovereign immunity was waivable (which is not the case), the facts here cannot possibly support a finding of waiver. As the party seeking to enforce the Subpoena, Cuomo bears the burden of establishing waiver. *Haber v. United States*, 823 F.3d 746, 751 (2d Cir. 2016) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000)). As is the case with the waiver of any constitutional right, an effective waiver of sovereign immunity requires an "intentional relinquishment or abandonment of a known right or privilege." *College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 682 (1999). The standard for finding waiver of a state's sovereign immunity is "stringent." *McGinty v. New York*, 251 F.3d 84, 95 (2d Cir. 2001). And in assessing whether a state has made a knowing and intentional waiver, the Supreme Court has instructed that "every reasonable presumption against waiver" is to be indulged. *College Savings Bank*, 527 U.S. at 682 (internal quotation marks omitted). Cuomo has failed to meet his burden of demonstrating OAG has engaged in any

---

[7] Cuomo's reliance on *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613 (2002), is misplaced. In *Lapides*, the state agency removed an action from state court to federal court, and then sought to invoke its Eleventh Amendment immunity to dismiss the action. *Id.* at 613. The Supreme Court held that the state had waived its Eleventh Amendment immunity when it "voluntarily invoke[d] the [federal] court's jurisdiction. *Id* at 614. This case has nothing to do with removal and involves OAG's broader pre-ratification sovereign immunity.

conduct that could support a finding of waiver under this stringent standard.

**First**, Cuomo argues that OAG waived sovereign immunity by providing material to Magistrate Judge Merkl in the Trooper 1 Action for *in camera* review. Cuomo MOL at 14. But, as Cuomo acknowledges, Judge Merkl *ordered* OAG to do so. *Id.* at 2 (noting OAG "complied with the Trooper 1 court's order that the OAG present documents for the court's *in camera* review"). Complying with a court order cannot support a finding that OAG *voluntarily* abandoned its right to invoke sovereign immunity. *See Close v. State of N.Y.*, 125 F.3d 31, 39 (2d Cir. 1997) (noting the conduct at issue must be one in which the state realistically could choose not to participate); Erwin Chemerinsky, *Federal Jurisdiction* § 7.6, at 410 (2d ed.1994) (same).

**Second**, Cuomo relies on OAG's initial voluntary production in the Trooper 1 Action of a handful of documents mentioning Trooper 1 by name to advance a "selective waiver" argument. Cuomo MOL at 14-15. OAG's limited voluntary production does not provide the clear, unambiguous consent required to waive sovereign immunity. *College Savings Bank*, 527 U.S. at 675–76. Notably, the facts of *EPA* establish that sovereign immunity cannot be "selectively waived" in this circuit based on a partial production of materials sought by subpoena. *See* 197 F.3d at 594 As noted by the court in *EPA*, after receiving the subpoena, the EPA treated the subpoena "as a request under FOIA in accordance with EPA regulations" and decided to release several documents in response, which the court assumed were produced. *Id* at 594. The court nevertheless concluded that federal sovereign immunity applied to the subpoena notwithstanding this partial production of several documents absent some other form of waiver.[8] *Id.* at 597.

---

[8] Indeed, courts in other circuits routinely hold that voluntary participation in discovery does not waive sovereign immunity. *See Texas LDPC, Inc. v. Broadcom, Inc.*, No. 22-CV-01781, 2023 WL 3293291, at *2 (S.D. Tex. 2023) (applying the holding in *Russell*, the court determined that "[p]articipating in discovery does not provide the clear, unambiguous consent to suit that is required to waive sovereign immunity); *Yul Chu v. Mississippi State Univ.*, 901 F. Supp. 2d 761, 774 (N.D. Miss. 2012) (holding no waiver despite state entity "engaging in extensive discovery"); *Adams v. Texas Comm'n on Env't Quality*, No. A-06-CA-281-SS, 2007 WL 9701381, at *1 (W.D. Tex. May 29, 2007) (finding no waiver despite a state

Contrary to Cuomo's argument, when addressing Eleventh Amendment immunity, courts have found waiver by litigation conduct only where a state voluntarily and affirmatively invoked a federal court's jurisdiction to resolve a claim presented by the state, which is not the case here. *See, e.g., Lapides v. Bd. of Regents of Univ. Sys. of Georgia,* 535 U.S. 613, 619 (2002); *Gulino v. Bd. of Educ. of the City Sch. Dist. of the City of New York*, No. 96-cv-8414, 2016 WL 7320775, at *7 (S.D.N.Y. July 18, 2016), report and recommendation adopted, No. 96-cv-8414, 2016 WL 7243544 (S.D.N.Y. Dec. 14, 2016) ("[T]he cases involving waiver-by-litigation premise the waiver on a State actually appearing as a party and submitting its rights for judicial determination.") (collecting cases).

**Third**, Cuomo maintains that OAG waived sovereign immunity based on the "possib[ility] that the OAG provided investigatory material to DOJ in connection with DOJ's purported investigation into allegations of sexual harassment against Governor Cuomo." Cuomo MOL at 14. In support of this position, Cuomo cites to *United States v. James*, 980 F.2d 1314 (2d Cir. 1992), for the proposition that "[a] sovereign—federal, tribal, or state—can waive purported sovereign immunity . . . by providing the same or related materials to the federal government." Cuomo MOL at 13. However, in *James*, the tribe had voluntarily provided documents from one of its agencies to one party to the United States to aid in the government's prosecution of James, but then invoked sovereign immunity when subpoenaed for additional *related records* by James. *James*, 980 F.2d at 1319. The court found that the tribe had waived its sovereign immunity by placing the records at issue in the case when it voluntarily provided those same type of records to one party, and could thus not shield *related* records from disclosure to other parties in the same case.[9] *Id* at 1320. Here, OAG has not provided the

---

entity "participating in discovery, depositions, and other pretrial matters"); *Lazarou v. Mississippi State Univ.*, No. 1:07-CV-00060-GHD, 2012 WL 1352890, at *5 (N.D. Miss. Apr. 17, 2012) (holding no waiver despite a state entity "engaging in extensive discovery").

[9] *United States v. Velarde*, 40 F. Supp. 2d 1314 (D.N.M. 1999), is similarly distinguishable. In that case the federal government subpoenaed a tribe as part of a criminal prosecution, seeking tribal records related to material the tribe had

requested materials to any named party. Thus, OAG has not selectively invoked sovereign immunity, but rather has consistently objected to turning over the requested materials. *See* Longley Decl. at ¶¶ 43, 48, 50, 55, 56, 58, 59.

## II. THE MATERIALS SOUGHT ARE IRRELEVANT AND NOT PORPORTIONAL TO THE NEEDS OF THE CASE

The materials sought by Cuomo in the Subpoena are simply not relevant to Cuomo's defense in this action as they are not tailored to Bennett's claims, nor are they proportional to the needs of the case. Cuomo has utterly failed to satisfy *his burden* of demonstrating the relevance and proportionality for the documents sought. Rather, Cuomo's real motive for seeking the interview memos and unredacted transcripts is to further his illegitimate purpose of attacking the Report, the witnesses who cooperated with OAG, and the investigators.

### A. The Materials Sought Have No Relevance to Bennett's Causes of Action

The allegations in the Complaint, and thus Cuomo's corresponding defenses, are limited to a discrete number of events that Bennett herself experienced. Yet the Subpoena seeks all "documents concerning or reflecting" any witness statement related to any current or former Executive Chamber employee, regardless of their first-hand knowledge of Bennett's allegations. *See* Subpoena at Request 1. Because the subject of the Investigation was Cuomo, the former head of the Executive Chamber, this request sweeps up a large portion of OAG's extremely voluminous investigatory file. *See* Chun Decl. at ¶¶ 15-17. Moreover, Cuomo has not made even a superficial attempt to explain the relevance of the vast majority of the materials he seeks, including the three broad categories of material comprising: (1) information establishing a hostile work environment; 2) information about Bennett; and 3) information about Boylan. *See* Cuomo MOL at pgs. 15-16. Cuomo has also articulated an

---

already provided to the United States during its investigation of the defendant being prosecuted. *Id* at 1317.

unsound theory that the materials sought are relevant to defend Bennett's retaliation claims, while admitting that he seeks discovery from OAG to "relitigate the Attorney General's report." *See* Longley Decl. ¶¶ 41-44; Transcript of Bennett Discovery Conference January 4, 2024 (ECF No. 166) at pg. 32: 7-9 (Trzaskoma: "[T]o say that we wanted to relitigate the Attorney General's report, yeah, because it is front and center in that case . . . ."). Cuomo fails to articulate how the broad swath of materials he seeks has any relevance to his ability to defend himself against Bennett's claims.

First, the enumerated categories of documents are vague and not properly tailored to seek only relevant information; Cuomo improperly seeks materials connected to all Executive Chamber employees interviewed regardless of whether they knew Bennett or have any information relevant to her claims. *See Sinni v. Forest Hills Hosp.,* No. 09-cv-4572, 2011 WL 1004817, at *2-3 (E.D.N.Y. March 18, 2011) (limiting discovery because plaintiff alleged specific instance of retaliation and not pattern or practice of discrimination). Second, even for discernible types of documents, *e.g.* interview memos, Cuomo has not articulated how they bear on his defense. Confidential memos concerning interviews of witnesses conducted after-the-fact by OAG investigators are irrelevant to Bennett's allegations; they cannot impact Bennett's testimony because she has never seen them, and in any event, she will have to establish her claims through first-hand evidence. Third, as Cuomo is getting discovery directly from Boylan, there is no basis for him to seek duplicative, second-hand materials from nonparty OAG, nor would doing so be proportional to the case. Finally, the thoroughness of OAG's Investigation and whether or not the Report correctly concluded Cuomo engaged in sexual harassment are not relevant to Bennett's retaliation claims, one of which is based on allegations of retaliatory transfer in June 2020, *before* OAG's investigation, and the other of which is based on Cuomo and his counsel's public statements impugning Bennett for reporting instances of harassment to the Executive Chamber in 2020 and participating in OAG's investigation in 2021. Whether these alleged acts constitute retaliation does not depend on whether Cuomo sexually harassed Bennett or whether OAG correctly concluded that Cuomo

engaged in sexual harassment; what matters is whether Bennett engaged in protected activity by reporting her good faith belief that Cuomo had sexually harassed her. *See Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998) ("With respect to the first element, participation in protected activity, the plaintiff need not establish that the conduct she opposed was actually a violation of Title VII, but only that she possessed a good faith, reasonable belief that the underlying employment practice was unlawful under that statute.") (internal quotation marks and citation omitted). If he seeks to challenge whether Bennett engaged in protected activity, Cuomo can conduct discovery concerning her good faith belief in her underlying allegations without obtaining any non-public OAG materials.

Further, Cuomo has the same access to information about the witnesses interviewed by OAG as Bennett does and can seek to obtain their testimony if he so chooses (*see* Longley Decl. ¶ 40), which would arguably at least not be hearsay like the statements of OAG investigators contained in their notes. *See City of New York v. Blue Rage Inc.*, No. 17-cv-3480, 2018 WL 2709203 at *2 (E.D.N.Y. June 5, 2018) ("a court must limit a party's discovery if it determines that [the material] is obtainable from some other source that is more convenient, less burdensome, or less expensive…"). The Report is not direct evidence of anything relevant to this case and thus has no bearing on Cuomo's defense of the claims asserted against him by Bennett. *See Id.*

It is all too obvious that Cuomo's real purpose in pursuing the materials sought in the Subpoena is to continue his attack on the Report as part of his ongoing campaign to restore his reputation. Longley Decl. ¶ 41-44. "[W]hen the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery is properly denied." *Blue Angel Films, Ltd. v. First Look Studios, Inc.*, No. 08-cv-6469, 2011 WL 830624, at *1 (S.D.N.Y. March 9, 2011). The disconnect between Cuomo's desire to obtain the materials sought for his own political motives and his need for them in defense of this particular lawsuit is evidenced by the fact that Cuomo has unsuccessfully sought these same materials more than a dozen times, including as early as before

17

issuance of the OAG Report. Longley Decl. ¶¶ 20, 41-44.[10]

### B. Cuomo's Subpoena Imposes A Burden That Is Not Proportional To The Needs Of The Case

As discussed more fully above, because the materials sought are of no discernable relevance to this case, any burden imposed by the Subpoena compels granting OAG's motion to quash. *See Corbett v. eHome Credit Corp*, No. 10-cv-26, 2010 WL 3023870 at *3 (E.D.N.Y. August 2, 2010) (holding subpoena seeking information with "little apparent or likely relevance" should be quashed even where burden is not onerous). Here, Cuomo's plainly overbroad Subpoena imposes an immense burden on OAG, as his requests arguably seek a broad swath of materials that would require thousands of attorney hours to review prior to production. Chun Decl. ¶ 18. OAG's investigative file contains over 74,000 records collected by the investigators, 73,000 of which have not been made public. Reviewing those records to determine if they were "concerning" an Executive Chamber employee would be an immense undertaking. *See* Chun Decl. ¶¶ 5, 12, 18. (noting that a review of just 1,000 documents for public release took 3,600 hours to review). Moreover, the materials sought are replete with privileged and confidential information that would require resource-intensive review and redaction (*supra* Point III); such a consumption of nonparty OAG's taxpayer-funded resources (Chun Decl. ¶ 18) is not proportional to this case given the lack of any relevance the materials have to Cuomo's defense.

Cuomo's contention that the interview memos have already been redacted for purposes of civil discovery such that "the only burden the OAG could suffer would be to drag and drop the files [submitted in camera to Magistrate Judge Merkl] into an email or a file-sharing program" (Cuomo MOL at pg. 17) is disingenuous. Cuomo's counsel has been advised multiple times on the record in the Trooper 1 Action that the interview memoranda have not been redacted in line with the civil

---

[10] Cuomo has sought materials underlying the OAG Investigation, including the privileged interview memoranda and unredacted transcripts he now seeks, through: nonparty subpoenas as defendant in another sexual harassment lawsuit; multiple written requests to OAG; a complaint to the Attorney Grievance Committee; and NY's FOIL statute. Longley Decl. ¶¶ 41-44, 46-57, 61-64.

discovery standards relevant here. *See* Longley Decl. ¶56; Ex. 8 (*Cuomo v. OAG*, 22-mc-03044 (E.D.N.Y.), September 26, 2023 discovery conference Tr. at 36 3-10); *see Id* at ECF No. 55. Thus Cuomo knows full well that OAG would need to review all the interview memos for redaction under the civil discovery standards starting from square one.

A review of the remaining proportionality factors weighs against compelling OAG to comply with the Subpoena. The parties in this action have equal access to the evidence collected by OAG and thus the parties are on equal footing. Longley Decl. ¶ 40. Furthermore, while the allegations in this action are serious and the amount in controversy is not negligible, those factors must be weighed against the fact that the requested materials are irrelevant and thus will not assist Cuomo in his defense of the claims. Furthermore, OAG has a "serious and legitimate concern that its employees and resources not be commandeered into service by private litigants to the detriment of the smooth functioning of government operations." *Solomon v. Nassau County*, 274 F.R.D. 455, 460 (E.D.N.Y. May 24, 2011). Here, the burden on the State would be enormous, both in the time and attention it would take from OAG's employees to oversee the review and production of materials, and the tax-dollars that would be expended employing outside counsel to conduct the review. *See* Chun Decl. ¶ 18.

## III. THE MATERIALS SOUGHT ARE PRIVILEGED

### A. The Attorney/Client Privilege And Work Product Doctrine Apply

Cuomo requests memoranda written by OAG investigators that are unquestionably protected by the attorney-client privilege and work-product doctrine. The attorney-client privilege extends to attorney notes and memoranda "to encourage full and frank communication between attorneys and their clients." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (holding the privilege protects interview notes and memoranda prepared by a corporation's in-house counsel during an internal investigation of illegal activity by employees). In the context of the OAG investigation, "the privilege [] protect[s] not only the giving of professional advice to [OAG to] act on it but also the giving of

information to the [Investigative Team] to enable [them] to give sound and informed advice." *Id.* at 390-91. The interview memos are also attorney work-product. *See Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947) (acknowledging that attorney work-product is reflected in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other ways). Rule 26(b)(3) codified *Hickman* and provides qualified protection for materials prepared by or at the behest of counsel in anticipation of litigation or for trial. Fed. R. Civ.P. 26(b)(3); *see also United State v. Adlman*, 134 F.3d 1194, 1198-99 (2d Cir.1988) ("[n]othing in Rule 26(b)(3) states or suggests that documents prepared 'in anticipation of litigation' with the purpose of assisting in the making of a business decision do not fall within its scope.").

Cuomo's argument that the materials sought were not prepared in connection with pending or anticipated litigation (Cuomo MOL at pg. 21) does not square with the Second Circuit's interpretation of the "in anticipation of litigation" requirement, which asks whether "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Adlman*, 134 F.3d at 1198-99 (internal quotations and citation omitted). A party invoking the work-product doctrine need not have anticipated the specific litigation in which the protection is actually invoked. *See Garrett v. Metro. Life Ins. Co.,* No. 95-cv-2406, 1996 WL 325725, at *4 (S.D.N.Y. June 12, 1996). Cuomo's argument is without merit because OAG and the Investigative Team reasonably anticipated litigation upon receiving the §63(8) referral, including litigation from the victims (as came to pass), and also litigation by Cuomo himself (which his counsel has acknowledged considering, and which also came to pass with Cuomo's filing of an Ethics Complaint). Chun Decl. ¶ 13.

Cuomo's raises numerous meritless arguments that the attorney-drafted memoranda are not privileged. First, he claims that the communications are not between attorney and client. Cuomo MOL at pg. 18. Cuomo provides no authority for his claim that private attorneys deputized as OAG special

deputies are not "attorneys" providing legal advice to the State or that OAG should not be considered the "client" where, as here, the Executive Chamber did not play that role due to the obvious conflict. Under Executive Law § 63(8), the special deputies functioned as attorneys within OAG while also being employed by private firms that OAG formally engaged and contracted with for legal services in service of the Investigation. Longley Decl. ¶ 13. Cuomo's theory that there simply was no "client," is nonsensical. Given the obvious practical and contractual roles played by the Investigative Team and OAG staff receiving and responding to the team's communications, there can be no serious doubt that the communications between the two are covered by the attorney-client privilege. *Id.* ¶¶ 15-16.[11]

Second, Cuomo asserts that the documents collected and created by the Investigative Team were not intended to be kept confidential because OAG announced that it would (and did) release a report. But the record establishes that the Investigative Team intended their notes and communications with OAG to remain confidential notwithstanding that the Report was always intended to be made public. *See Id* ¶¶ 13, 16, Ex. 4; Chun Decl. ¶ 13; *see In re General Motors LLC Ignition Switch Litigation*, 80 F. Supp. 3d 521, 528-529 (S.D.N.Y. 2015) (rejecting a claim that interview materials were not intended to be kept confidential because of a promise (and act) to disclose facts in a report). The "touchstone analysis is not whether [the holder of the privilege] intended to keep confidential the results of its investigation, but rather whether it intended to keep confidential the communications reflected in the interview materials" and "[t]he fact that certain *information* in [otherwise protected] documents might ultimately be disclosed [] does not, by itself, create the factual inference that the *communications* were not intended to be confidential at the time they were made." *Id* at 529, citing *In re*

---

[11] Cuomo's admission here that the law firms OAG retained as outside counsel and appointed as special deputies are "part of – not counsel to -- OAG" (Cuomo MOL at pg. 18) conflicts with and undermines his argument that by serving subpoenas on the law firms he somehow avoids OAG's sovereign immunity defense. Cuomo Letter Requesting Discovery Conference, February 12, 2024 ECF No. 192. OAG's position remains consistent; the special deputies were a part of OAG providing internal legal advice and counsel to OAG leadership acting as the "client."

*Grand Jury Subpoena,* 341 F.3d 331, 336 (4ᵗʰ Cir. 2003).

The Investigative Team created memoranda concerning their interviews, which OAG has not shared with the public or the witnesses themselves. Longley Decl. ¶ 40. The memos reflect the opinions of the Investigative Team as to the merits and veracity concerning witness statements and were used by the Investigative Team to provide advice to OAG on investigative next steps. Chun Decl. ¶ 13. OAG has taken deliberate steps to preserve privilege over certain categories of documents. For example, to the extent any interview memos were shared with other law enforcement entities conducting parallel investigations, they were provided subject to strict confidentiality terms to preserve OAG's privileges. *Id.* ¶¶ 25-28. OAG intended to keep non-published materials confidential and the disclosure of facts and findings in the Report does not remove the protection afforded to those confidential materials. Chun Decl. ¶ 13.

Second, Cuomo maintains that the materials sought were created and collected for the purpose of a report, not to provide legal advice, relying inaptly on *Allied Irish Banks v. Bank of Am., N.A.,* 240 F.R.D. 96, 104 (S.D.N.Y. 2007). The court in *General Motors* rejected this argument, distinguishing *Allied* for reasons applicable here. *In re General Motors,* 80 F.Supp.3d at 521. In *Allied,* the court held the attorney-client privilege did not apply to investigative materials underlying a report prepared following an internal investigation where the company hired a *non-lawyer* consultant to produce the report that was released publicly, the consultant's engagement was limited to business-related matters, there was no evidence that a law firm engaged by the consultant provided legal advice to the company, and the final report indisputably did not provide legal advice. *Allied Irish Bank,* 240 F.R.D. at 104. On these facts, the *Allied* court found the purpose of the investigative material was limited to business-related matters. *Id.* As in *General Motors,* the facts here are distinguishable from *Allied* because the Investigation was conducted by lawyers engaged to provide legal advice on whether Cuomo's conduct was unlawful, and the Report concluded "that the Governor, on multiple

occasions, engaged in conduct and conversations that were offensive and sexual in nature that constituted sex-based harassment." Longley Decl. ¶ 18. Here, the circumstances giving rise to the Referral and the nature of services performed make clear that OAG engaged and deputized the Investigative Team attorneys to provide legal advice to OAG. *See Id.* ¶¶ 14-16, Exs. 4-5.

Third, Cuomo contends there was "subject-matter" waiver because OAG published the Report and exhibits, relying on *In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459 (S.D.N.Y. 1996). Cuomo MOL at pgs. 19-21. But *Kidder* is inapt because the *firm's client* placed the law firm's report "at-issue" in lawsuits, arbitrations, and federal investigations. *Kidder*, 168 F.R.D. at 469-73. To the contrary, OAG has not placed the Report at issue in any proceeding (nor, for that matter, has Bennett). Cuomo's reliance on *New York Times Co. v. United States Dep't of Justice,* 939 F.3d 479 (2d Cir. 2019), is equally unavailing as the court there, in the context of resolving a Freedom of Information Act ("FOIA") request with no limited subject matter, largely *rejected* the claim that public statements about an attorney's internal memoranda regarding whether to initiate formal criminal investigations constituted a broad "at issue" waiver under FOIA exemptions. *Id.* at 497-498; *see, supra,* Point II.A.

### B.  The Law Enforcement Privilege Applies

Materials that could jeopardize law enforcement investigations and safety are protected from disclosure by the law enforcement privilege upon a showing that the requested documents contain: (1) information pertaining to law enforcement techniques and procedures; (2) information that would undermine the confidentiality of sources; (3) information that would endanger witnesses and law enforcement personnel; (4) information that would undermine the privacy of individuals involved in an investigation; or (5) information that would seriously impair the ability of a law enforcement agency to conduct future investigations. *See In re The City of New York*, 607 F.3d 923, 940 (2d Cir. 2010). The privilege applies to investigative materials even when the investigation is no longer ongoing. *Id* at 944 (holding investigation need not be ongoing because disclosure may still seriously impair the ability of

a law enforcement agency to conduct future investigations).

The law enforcement privilege protects the entirety of the materials sought from disclosure; including the interview memoranda and the unredacted portions of transcripts sought by Cuomo. Chun Decl. ¶ 10; Longley Decl. ¶¶ 36-40. The Investigation Team carefully guarded the confidentiality of these documents to encourage witness cooperation as witnesses tend to be reluctant to share information if not assured of confidentiality out of fear that private information about them will become public or will be shared with the subject of the investigation, resulting in negative consequences for them or their family, including retaliation. Chun Decl. ¶ 11; Longley Decl. ¶¶ 41-45.

The Investigative Team communicated with over 100 witnesses whose identities are not known to the public as well as a number of on-the-record witnesses, many of whom expressed credible fears of retaliation and were hesitant to cooperate with the Investigation for fear of having their identities disclosed. Chun Decl. ¶ 11. Many cooperating witnesses requested that their identity and cooperation be protected, and they might not have cooperated as fully had they believed the substance of their information would be provided to Cuomo and his counsel. *Id.* Disclosing the attorney memoranda and unredacted transcripts would expose the identities of nonparty confidential witnesses involved in the Investigation and invade the privacy public and non-public witnesses. Moreover, disclosure is against OAG protocol, and to make such materials public, or provide them to the subject of the Investigation, would undermine OAG's investigative efforts to collect accurate and sensitive information in future investigations. Longley Decl. ¶¶ 39-40.

To defeat the assertion of the law enforcement privilege, the party seeking disclosure must show that: (1) the suit is non-frivolous and brought in good faith; (2) the information sought is not available through other discovery or from other sources; and (3) there is a compelling need for the privileged information. *See City of New York*, 607 F.3d at 948; *United States v. Hossain*, No. 19-cr-606, 2021 WL 4272827 at *7 (S.D.N.Y. September 21, 2021). "In addition, the privacy interests of third

24

parties carry great weight in the balancing of interests." *Dorsett v. County of Nassau*, 762 F.Supp.2d 500, 521 (E.D.N.Y. 2011); *Kelly v. City of New York*, No. 01-cv-8906, 2003 WL 548400, at \*5 (S.D.N.Y. Feb. 24, 2003) (holding sensitive investigation records of nonparty individuals should be "guarded against disclosure that has the potential to invade their privacy and impair their personal reputations").

Cuomo's showing is insufficient to overcome OAG's interest in preserving the confidentiality of its investigation because, contrary to his assertion (Cuomo MOL at pg. 6-7, 9), the Complaint does not in fact "rely heavily" on the Report, let alone OAG's non-public files (which Plaintiff does not have either). *See, supra*, at Point II.B Cuomo's reliance on *MacNamara v. City of New York*, 249 F.R.D. 70, 94 (S.D.N.Y. 2008), to argue that a protective order will cure the harm to OAG of producing materials covered by the law enforcement privilege is misplaced because it is the disclosure of the materials to Cuomo himself that gives rise to the harm. *See* Longley Decl. ¶¶ 41-45. Finally, for the same reasons the materials are protected by from disclosure by the public interest privilege.[12]

## CONCLUSION

For the reasons set forth above, nonparty OAG respectfully requests that the Court grant its cross-motion to quash the Subpoena, deny Cuomo's motion in its entirety, and grant such other and further relief as the Court deems just and proper.

---

[12] The public interest privilege attaches to "'confidential communications between public officers, and to public officers, in the performance of their duties, where the public interest requires that such confidential communications or the sources should not be divulged ... [because] the public interest would be harmed if the material were to lose its cloak of confidentiality.'" *Woodard v. City of New York*, No. 99-cv-1123, 2000 WL 516890 at \*4 (E.D.N.Y. March 10, 2020) (*quoting Cirale v. 80 Pine Street Corp*, 35 N.Y.2d 113 (1974)). To assert the public interest privilege in a federal action, a governmental entity must make a particularized showing of the public interest and privacy concerns at stake in disclosure. *See Woodard* 2000 WL 516890, at \*5; *see also Lora v. Board of Ed. Of City of New York*, 74 F.R.D. 565, 576 (E.D.N.Y. May 12, 1977). The protection of witnesses who cooperated with OAG's Investigation and the shielding of OAG's investigative techniques clearly fall within the scope of this privilege. Executive Law § 63(8), in making it a criminal offense to disclose information obtained in an investigation, without authorization of the Governor or Attorney General, clearly demonstrates the intent of the Legislature to shield investigative materials from disclosure. Exec. Law § 63(8). It is also manifestly in the public interest for government investigating agencies to be able to share information and materials with one another without waiving privilege or confidentiality of the shared materials.

Dated:  New York, New York
        March 22, 2024

                                        Respectfully submitted,

                                        LETITIA JAMES
                                        Attorney General of the State of New York

                                        By:

                                        Andrew Amer
                                        Serena Longley
                                        Michael Jaffe
                                        James Cooney

                                        28 Liberty Street
                                        New York, NY 10005
                                        Phone: (212) 416-6127
                                        andrew.amer@ag.ny.gov

                                        Attorney for Nonparty Office of the
                                            Attorney General