```
                 UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF NEW YORK
         ----------------------------:
         CHARLOTTE BENNETT,          : Case No.: 22-cv-7846
                       Plaintiff,    :
              v.                     :
         ANDREW M. CUOMO, et al.,    : New York, New York
                       Defendants.   : March 22, 2024
         ----------------------------:

              TRANSCRIPT OF STATUS CONFERENCE HEARING
              BEFORE THE HONORABLE SARAH L. CAVE
                 UNITED STATES MAGISTRATE JUDGE

         APPEARANCES:

         For Plaintiff:        EISENBERG & SCHNELL LLP
                               BY: Laura S. Schnell, Esq.
                                   Herbert Eisenberg, Esq.
                               233 Broadway
                               New York, NY 10279

         For Plaintiff:        KATZ BANK KUNIN
                               BY:  Rachel E. Green, Esq.
                                   Debra Katz, Esq.
                               11 Dupont Circle
                               Washington, DC 20036

         For Defendant:        SHER TREMONTE
         Andrew M. Cuomo       BY:  Theresa Trzaskoma, Esq.
                                   Allegra Noonan, Esq.
                               90 Broad Street
                               New York, New York 10004

         For Defendant:        GLAVIN PLLC
         Andrew M. Cuomo       BY:  Rita M. Glavin, Esq.
                               156 West 56th Street - Ste #2004
                               New York, NY 10019

         For Defendant:        MORVILLO PLLC
         Melissa DeRosa        BY:  Gregory R. Morvillo, Esq.
                                   Sarah Sulkowski, Esq.
                                   Anthony Grupposo, Esq.
                               1740 Broadway - 15th Floor
                               New York, NY 10019


         Proceedings recorded by electronic sound recording;
         Transcript produced by transcription service

              AMM TRANSCRIPTION SERVICE - 631.334.1445
```

```
 1                    APPEARANCES (Continued)

 2
     For Defendant:       DEBEVOISE & PLIMPTON LLP
 3   Jill DesRosiers      BY:  Joe Hamid, Esq.
                               Leah Rosenberg, Esq.
 4                        66 Hudson Boulevard
                          New York, NY 10001
 5
     For Defendant:       ORRICK, HERRINGTON & SUTCLIFFE LLP
 6   Judith Mogul         BY:  Michael Delikat, Esq.
                               Brianna Messina, Esq.
 7                        51 West 52nd Street
                          New York, NY 10019
 8
     For Defendant:       PERRY LAW
 9   Lindsey Boylan       BY:  Krista Oehlke, Esq.
                          157 East 86th Street
10                        New York, New York 10028

11   For Nonparty:        BRESSLER, AMERY & ROSS, PC
     Madeline Cuomo       BY:  DAVID H. PIKUS, ESQ.
12                        17 State Street
                          New York, New York 10004
13
     For Defendant:       GLASER WEIL FINK HOWARD
14   Boylan               BY:  Julie Gerchik, Esq.
                          10250 Constellation Boulevard
15                        Los Angeles, CA 90067

16   For Defendant:       OFFICE OF THE NY STATE
     NY Attorney          ATTORNEY GENERAL
17   General              BY:  Serena Longley, Esq.
                          28 Liberty Street
18                        New York, New York 10005

19

20

21

22

23

24

25


            AMM TRANSCRIPTION SERVICE - 631.334.1445
```

```
 1              THE COURT:  Good morning.  This is
 2   Magistrate Judge Cave.  We're here for a conference
 3   in Bennett versus Cuomo; Case Number: 22-cv-7846.
 4              May I have the appearances, starting with
 5   the plaintiff, Ms. Bennett.
 6              MS. SCHNELL:  Good morning, Your Honor.
 7   Laura Schnell and Herbert Eisenberg at Eisenberg &
 8   Schnell for Ms. Bennett.
 9              THE COURT:  Good morning.
10              MR. EISENBERG:  Good morning.
11              MS. GREEN:  And, Your Honor, Rachel Green
12   and Debra Katz at Katz Banks Kumin for the
13   plaintiff, Ms. Bennett.
14              THE COURT:  All right.  Good morning.
15              For Mr. Cuomo?
16              MS. GLAVIN:  Yes.  Good morning,
17   Your Honor.  Rita Glavin, Glavin PLLC, for former
18   Governor Cuomo.  And I believe there are some
19   colleagues from Sher Tremonte on the call that can
20   introduce themselves, also for the former governor.
21              THE COURT:  All right.  Thank you.
22              MS. TRZASKOMA:  Good morning.
23              Good morning, Your Honor.  Theresa
24   Trzaskoma from Sher Tremonte also on behalf of
25   former Governor Cuomo.
```

```
 1              THE COURT:  Good morning.
 2              Anyone else for Mr. Cuomo?
 3          MS. NOONAN:  Good morning, Your Honor.
 4   Allegra Noonan for Governor Cuomo.  Thank you.
 5              THE COURT:  All right.  Good morning.
 6              For Ms. DeRosa?
 7          MR. MORVILLO:  Good morning, Your Honor.
 8   Gregory Morvillo on behalf of Ms. DeRosa, and I'm
 9   joined by Sarah Sulkowski and Anthony Gruppuso.
10              THE COURT:  All right.  Good morning.
11              For Ms. DesRosiers?
12          MR. HAMID:  Good morning, Your Honor.  Joe
13   Hamid at Debevoise & Plimpton.  I believe my
14   colleague, Leah Rosenberg at Debevoise is also on
15   the line for Ms. DesRosiers.
16              THE COURT:  Very good.  Good morning.
17              For Ms. Mogul?
18          MR. DELIKAT:  Good morning, Your Honor.
19   Mike Delikat for defendant, Mogul.  I believe my
20   colleague, Brianna Messina is also on the line.
21              THE COURT:  Good morning.
22              For Ms. Cuomo, Madeline Cuomo?
23          MR. PIKUS:  Good morning, Your Honor.
24   David Pikus, P-I-K-U-S, of Bressler, Amery & Ross,
25   PC.
```

```
 1              THE COURT:  Thank you.  Good morning.
 2         For Ms. Boylan?
 3         MS. GERCHIK:  Good morning, Your Honor.
 4   Julie Gerchik of Glaser Weil, on behalf of
 5   non-party, Ms. Boylan, and I have my colleague, Alex
 6   Miller with me.
 7              THE COURT:  Sure.  Thank you.
 8         Anyone else who is appearing that would
 9   like to make themselves known?
10         MS. LONGLEY:  Good morning, Your Honor.
11   This is Serena -- Hi, it's Serena Longley from the
12   New York Attorney General's Office.  I don't have
13   anything I plan to bring up, but as you encouraged,
14   we are here in case you need us.
15              THE COURT:  Okay.  Thank you so much for
16   being here.  I hope that's the case.
17         All right.  Anyone else?
18         MS OEHLKE:  And this is Chris Oehlke of
19   Perry Law, on behalf of non-party, Lindsey Boylan as
20   well.
21              THE COURT:  All right.  Thank you.
22         All right.  So the way that I would like to
23   proceed today is to address the issues first
24   involving the two nonparties, Ms. Boylan and
25   Ms. Cuomo, in the hope that we may be able to
```

1    resolve those first, and then they can be excused

2    from the conference.

3         Ms. Longley, I don't have anything that the

4    parties have raised in their letters about the OAG.

5    You're welcome to stay on if you like just in case,

6    but, hopefully, given that there was nothing raised

7    in the letters, that we don't have anything to

8    address to the OAG today.

9         So starting with Ms. Boylan, it looked like

10   from the parties' letters that Ms. Boylan's

11   production was going to be beginning earlier this

12   week on a rolling basis.

13        So, Ms. Gerchik, would you or one of your

14   colleagues be able to give me an update on where

15   things stand?

16        MS. GERCHIK:  Of course, Your Honor.  This

17   is Ms. Gerchik.

18        So we did begin on a rolling basis.  We

19   produced some documents on Wednesday.  We have gone

20   through a large chunk of the documents so far, but

21   we've gone through them a little more quickly than

22   we expect to be going through them as we go forward,

23   unfortunately, but only because, honestly, we've,

24   you know, been able to go through most of the spam

25   and junk mail first.  And it's been, you know, quite

1    a quick review.  But we did do our initial

2    production.  We produced on Wednesday.  And we're

3    going to continue on an on-going basis.

4             THE COURT:  Okay.  All right.

5             Any anticipation as to how many more

6    productions there might be or when you might be

7    finished?

8             MS. GERCHIK:  It's a little hard to say.

9    It's a little hard to say right now.  I mean, where

10   we -- just so Your Honor knows, where we ended up

11   was that we agreed -- really just because we thought

12   it was more efficient than having to go through

13   motion practice.  So we basically agreed to review

14   somewhere in the neighborhood of about 45,000

15   documents.

16            THE COURT:  Okay.

17            MS. GERCHIK:  Which is quite a lot,

18   particularly for a non-party.

19            THE COURT:  All right.  Thank you.  I

20   appreciate that.

21            Ms. Glavin, you or anybody from your team,

22   is there anything you'd like to raise about

23   Ms. Boylan's production thus far?

24            MS. GLAVIN:  No, Your Honor, not at this

25   time.  We received the documents, or the initial

1    tranche on Wednesday, and we really have not had a
2    chance to get through those just based on some other
3    document productions this week.
4            THE COURT:  Okay.
5            MS. GLAVIN:  So we'll just be in touch with
6    Ms. Boylan's counsel.
7            THE COURT:  All right.  Good.  All right.
8    I appreciate you working together.  So sounds like
9    that process is well underway.
10           Ms. Schnell or Ms. Green, anything you want
11   to raise as to Ms. Boylan while we have her counsel
12   on the line?
13           MS. SCHNELL:  No, Your Honor.
14           THE COURT:  Anything anybody else would
15   like to raise as to Ms. Boylan?
16           Good.  Okay.
17           Well, Ms. Gerchik, thank you to you and
18   your colleagues for being here today.  You're
19   welcome to stay if you like, but I think the only
20   other thing we'll be doing at the conclusion of this
21   conference is just setting a date for our next
22   status conference.  So you're welcome to stay if you
23   want to be heard on the timing of that, otherwise,
24   we'll just issue an order that includes a date for
25   our next status conference, which would cover all

1    the issues that we're talking about today, as well

2    as anything having to do with Ms. Boylan.  But it

3    doesn't sound like there's any ripe issues, at the

4    moment, at least.

5           MS. GERCHIK:  All right.  Thank you,

6    Your Honor.

7           THE COURT:  All right.

8           MS. GERCHIK:  Thank you.

9           THE COURT:  Very good.  Thank you.

10          Okay.  So next I'd like to turn to

11   Ms. Bennett's letter concerning the deposition

12   subpoena to Ms. Cuomo.

13          And so it looks like, you know, there may

14   be some potential points of agreement, but let me --

15   since the issue was first raised by Ms. Bennett,

16   I'll give Ms. Bennett's counsel the floor first, and

17   then I'll hear from Ms. Cuomo's counsel.

18          MS. SCHNELL:  Good morning again,

19   Your Honor.  This is Laura Schnell.

20          I don't know that there's agreement.  I

21   mean, we certainly want to take Ms. Cuomo's

22   deposition.  We've agreed that the deposition would

23   not happen until after the other defendants'

24   depositions have taken place.  But we do want to get

25   a date in place now so that we can meet the

AMM TRANSCRIPTION SERVICE - 631.334.1445

```
 1   discovery deadline.
 2            THE COURT:  Sure.  Okay.
 3            Mr. Pikus, are you still objecting
 4   altogether to the deposition subpoena to your
 5   client?
 6            MR. PIKUS:  We are, Your Honor.  And if I
 7   may, if it please the Court, I'd just like to
 8   explain why we're concerned about this.
 9            You know, it's easy to say, well, what's
10   wrong with sitting for an hour or two and giving
11   testimony?  Our concern plainly and simply is that
12   we've demonstrated to the plaintiff already that
13   there's no nexus between Governor Cuomo and his
14   sister in terms of any instructions.  And our
15   concern here is that the plaintiff has an ulterior
16   motive.  And that's reinforced by the fact that this
17   New York Times article on which they rely was a bit
18   of bootstrapping because we think that if they
19   didn't instigate it directly, they certainly were
20   big promoters of the content of that article, some
21   of which is either untrue or misleading.
22            And the attorneys for the plaintiff have
23   appeared on CNN, as well as giving interviews to The
24   New York Times denouncing my client publicly.  She's
25   not a state employee.  She's never been an employee
```

1    of her brother, you know.  She's his sister and
2    that's the connection.  And we don't, frankly, want
3    to give them an opportunity to cause harassment or
4    embarrassment of the governor's family.  You know,
5    he can speak for himself.
6              The other points we make are that, number
7    one, this is really a sideshow.  Whatever Ms. Cuomo
8    may or may not have done is really not material to
9    the overall case here.  The stay of discovery was --
10    excuse me -- the denial of the motion to stay
11    discovery came on dueling applications by the
12    parties and really didn't address a very peripheral
13    non-party.  So we continue to submit that the
14    deposition should at least be stayed until there's a
15    ruling on the retaliation claims.
16              And we also think that our conditions for
17    the deposition, if it's allowed to go forward, are
18    reasonable.  I know that the plaintiff -- and we
19    thank them -- they've agreed at least to limit the
20    time period in accordance with the Court's prior
21    order.
22              But the one thing I really want to
23    emphasize is that the argument here that the
24    plaintiff makes is a little crafty.  Nothing in
25    these quotes that they make from these few text

AMM TRANSCRIPTION SERVICE - 631.334.1445

1    messages that they provide, such as, you know, he

2    appreciates -- meaning the governor -- the governor

3    appreciates what you did or that he's seen what they

4    did -- those are not instructions.

5            You know, saying that a political figure

6    appreciates something that his supporters did is

7    hardly proof of the reason that they're arguing that

8    they need Ms. Cuomo's deposition.  They're claiming

9    that she acted at the behest and was an agent of her

10   brother, and none of these quotes that they've given

11   Your Honor support that.  You know, at best, he was

12   aware of what she was doing, and that doesn't

13   outweigh the embarrassment, the time, the cost.

14           This has been very costly to my client.

15   She had to make a motion in which she was

16   substantially successful.  She now has to argue this

17   motion as well.  She'll probably want representation

18   at the deposition.  This is just a staggering cost

19   for a non-party, especially under the circumstances.

20           That's what we have to say.

21           THE COURT:  Okay.  Well, as I read the text

22   messages though, Mr. Pikus, with all due respect,

23   she does seem to have knowledge and have taken some

24   actions that are arguably relevant to Ms. Bennett's

25   claims in this case, as well as to Mr. Cuomo's

1    defenses.

2            So I think it is fair to say that based on

3    the record that we have as of today, that your

4    client does have some knowledge that is relevant,

5    like I said, both to the claims and defenses.  And,

6    on that basis, that a deposition, albeit, you know,

7    very limited, both in time period as well as the

8    duration of her deposition are warranted.  It seems

9    like there's agreement that it would not be held

10   until after party depositions in this case.

11           But I believe, and my ruling is that, Ms.

12   Cuomo, based on the record as of today, should be

13   deposed, should sit for her deposition pursuant to

14   the subpoena that she's received.  Like I said, I'm

15   willing to limit it as to both time period, scope,

16   as well as duration, but I think we should get a

17   date for it on the calendar.

18           Obviously, if there's something that

19   arises -- you know, I'm not going to stay it until

20   we have a ruling from Judge Broderick on the

21   retaliation claim.  But in between now and the date

22   that the deposition is scheduled for, if there's a

23   ruling from Judge Broderick that you think changes

24   that analysis, the analysis that I just described,

25   then you're welcome to renew your request.  But

```
 1   given how much we have to get done in this case, I'm
 2   trying to avoid deferring too many issues until
 3   later on in the case.  So I would like to get a date
 4   on the calendar for your client's deposition.
 5            And my proposal is consistent with the
 6   plaintiff's letter, that we limit the time period,
 7   the scope of the deposition to February 27, 2021
 8   through September 14, 2022, and that the deposition
 9   be no longer than two hours of on-the-record time.
10            Can you work with Ms. Cuomo to get some
11   dates from her later in our discovery period?  Our
12   fact discovery cutoff is in August, so presumably it
13   would be sometime a little bit down the road, after
14   the party depositions have taken place, but to get
15   some dates from her that you can share with the
16   parties to the case so that we can get her on the
17   calendar?
18            MR. PIKUS:  Certainly, Your Honor.
19            THE COURT:  Okay.  Wonderful.  Thank you.
20            MR. PIKUS:  Thank you.
21            THE COURT:  All right.  So just to clarify,
22   her deposition will be limited to two hours, the
23   time period limited as I just stated, and to take
24   place after the party depositions.
25            MR. PIKUS:  May I just inquire, Your Honor?
```

1    I'm sorry, but being a non-party, I have less

2    knowledge than the others about the schedule.

3            THE COURT:  Certainly.

4            MR. PIKUS:  The plaintiff's attorneys had

5    said something about the deposition deadline being

6    June 30th, and Your Honor had mentioned August.

7            THE COURT:  Right.  So -- yes.

8            MR. PIKUS:  Could I impose on Your Honor to

9    clarify that for us, please.

10           THE COURT:  Yes, I'll clarify that.

11          The deposition deadline is June 30th, and

12    our fact discovery cutoff altogether is August 15th.

13          MR. PIKUS:  So would you say that the

14    cutoff for Ms. Cuomo's deposition would be June 30th

15    then or would it be August?

16          THE COURT:  I think the goal would be to

17    finish it by then.  But, as I said, we are keyed to

18    finishing the party depositions first before her

19    deposition.  So given that she is a non-party and we

20    have a lot to get through, I will certainly be

21    flexible, if we're not able to accommodate all the

22    caveats that we've said about scheduling her

23    deposition.  If it doesn't occur before June 30th,

24    I'll be reasonable about that.

25          MR. PIKUS:  Okay.  That's fair.

```
 1            THE COURT:  But let's aim for getting a
 2    date for the end of June with her, and then if it
 3    needs to slide because, you know, there's another
 4    party deposition that's important to take place
 5    before hers, then we can reassess, all right?
 6            MR. PIKUS:  Thank you so much, Your Honor.
 7            THE COURT:  Okay.  All right.
 8            MR. PIKUS:  Are we excused at this point?
 9            THE COURT:  Before I let you go --
10            Ms. Schnell, anything else as to Ms. Cuomo
11    before we let Mr. Pikus go?
12            MS. SCHNELL:  No, Your Honor, although I
13    certainly don't see any reason why this shouldn't
14    happen before June 30th, especially if it's a
15    two-hour deposition.
16            And with respect to the two hours,
17    Your Honor, if we reach two hours and there is a
18    very discrete -- things we have not gotten to
19    question her about, I'm hoping we could come back to
20    the Court to get a -- you know, some brief
21    additional time, if necessary.
22            THE COURT:  Well, certainly, I would ask
23    you to be efficient, and then you can ask Mr. Pikus
24    in the first instance if he's willing to accommodate
25    that.  And if not, then yes.
```

```
1              MS. SCHNELL:  Thank you, Your Honor.
2              THE COURT:  And --
3              MR. PIKUS:  Okay.  Thank you.  Have a good
4    weekend, everyone.
5              THE COURT:  Okay.  Thank you very much.
6              MR. PIKUS:  Bye now.
7              THE COURT:  Okay.  All right.  Thank you.
8              So then the next issue, I think, that
9    Ms. Bennett had raised was her request for
10   production to Mr. Cuomo, numbers 52 and 70.
11             Ms. Schnell, is that an issue that you or
12   owe of your colleagues can address?
13             MS. GREEN:  Rachel Green --
14             MR. MORVILLO:  Your Honor, this is Greg
15   Morvillo.  I'm sorry.  I'm hearing some background
16   noise.  It feels like somebody's outside or on a
17   boat.  Could --
18             THE COURT:  A little bit, yes.
19             MR. MORVILLO:  If you would be willing to
20   ask that person to mute their phone, that would be
21   very helpful.
22             THE COURT:  Yes.  I can't tell who it is,
23   but if you're outside and not speaking, if you could
24   please mute your line for us.
25             Much better.  Thank you.
```

```
1              Thank you, Mr. Morvillo.

2              Okay.  So on Ms. Bennett's team, somebody

3    who could address RFPs 52 and 70.

4              MS. GREEN:  Yes, Your Honor.  Good morning.

5    This is, again, Rachel Green on behalf of

6    Ms. Bennett.

7              As we wrote in our filing, defendants have

8    confirmed that they are withholding responsive

9    documents for these two RFPs, 52 and 70.  They

10   listed nearly a dozen objections to RFP 52 and about

11   six or so to RFP 70, but they have not made clear

12   pursuant to which objections they are withholding

13   responsive documents.  So we request that a

14   defendant be required to specify the objections on

15   which he is standing, and also set a briefing

16   schedule so that we can move to compel production

17   responses to those two requests.

18             THE COURT:  Yeah.  Not super psyched about

19   more briefing, so let's try to work this out today.

20             So I'm trying to understand request numbers

21   52 and 70.  So, with respect to request number 52,

22   it is, "All documents concerning or relating to any

23   statements made by your attorneys or communications

24   team that you allege were false or not authorized by

25   you."
```

1          So, in the first instance, has Mr. Cuomo

2     asserted so far in this litigation that his

3     attorneys or communications team made statements

4     that he did not authorize?

5          MS. GREEN:  Not so far, as far as I'm

6     aware.  Although I'd be happy to be corrected if

7     Defendant Cuomo has, indeed, made that and we missed

8     it.  But no, not so far.

9          THE COURT:  Okay.  So what is this request

10    then trying to go after?  If that's not something

11    that's been asserted, why is it a live issue?

12         MS. GREEN:  Well, Your Honor, if he does

13    later assert it or state that some of his statements

14    or many of the statements made by his team were

15    false or not authorized by him, it goes directly to

16    plaintiff's causes of action 2, 7 and 11, and,

17    therefore, is relevant to her causes of action.

18         THE COURT:  All right.

19         Ms. Glavin, would you or one of your

20    colleagues like to respond?

21         MS. GLAVIN:  Yes.  Hi, Judge.  It's Rita

22    Glavin.

23         THE COURT:  Thank you.

24         MS. GLAVIN:  I actually was surprised by

25    the letter because I did not think that this was

1   going to be sent to Your Honor on March 15th.  We

2   had a meet and confer about this several weeks

3   ago --

4         THE COURT:  Right.

5         MS. GLAVIN:  And I think I had explained on

6   both -- Request 52 about -- this read more like an

7   interrogatory.  And I said, you know, you're asking

8   for some type of admission here, and so I just said

9   the wording of this is just -- is wrong for a

10   document request.

11        I didn't think it was a proper document

12   request, how it was worded, because I don't know

13   that Governor Cuomo has alleged that his attorney

14   said something that was, you know, false or

15   unauthorized.  And they can certainly question him

16   about that at his deposition.

17        THE COURT:  Yes.

18        MS. GLAVIN:  And so we had actually had a

19   meet and confer with plaintiff's counsel on March

20   14th in anticipation of having to get status letters

21   to the Court.  And this didn't come up on that call,

22   so I just, you know, assumed this was not a live

23   issue.  I don't think it should be a live issue, you

24   know.

25        And with respect to 70, I had also read

```
 1    that document request to be, you know, improper,
 2    and, you know, it was making more of a statement.
 3           We certainly are producing what are
 4    responsive documents in Governor Cuomo's possession,
 5    custody and control.  And, you know, we're going
 6    back.  And to the extent there are things that are
 7    responsive, we, of course, will produce them.  But
 8    with respect to these two particular requests, it
 9    just seemed like more of a statement and they were
10    seeking some type of an admission that, you know,
11    was more appropriate for a deposition.
12           So I was surprised this got raised.  I
13    don't think that it's ripe.  I'm happy to discuss it
14    further with plaintiff's counsel.  I don't think
15    this is something that needs to have any type of
16    briefing.
17           THE COURT:  And is it correct, my statement
18    that I made to Ms. Green -- and she seemed to agree
19    was the case -- you're not changing the position
20    that to date at least, Mr. Cuomo has not alleged
21    that any statement made by his attorneys or his
22    communications team was false or not authorized?
23           MS. GLAVIN:  Well, with respect to that,
24    I'm not aware that he's ever said -- without waiving
25    any privilege -- and let's be clear about
```

1   that because they're --

2            THE COURT:  Sure.  Sure.

3            MS. GLAVIN:  They're certainly talking

4   about -- what they're getting at is communications

5   Governor Cuomo, you know, may have had with me, and

6   certainly, it's in the context of an attorney-client

7   relationship.  So we can't waive privilege on that.

8            But I'm not aware of him coming out, you

9   know, in any other forum and indicating that I've

10  said, you know, something false -- because I think

11  it's directed at me -- or, you know, that his

12  attorneys aren't his representatives.

13           THE COURT:  Sure.

14           MS. GLAVIN:  But I think it's certainly

15  grounds, you know, to ask him about in his

16  deposition to the extent it doesn't trample on

17  privilege.

18           THE COURT:  Okay.

19           MS. GLAVIN:  And this all then goes to the

20  retaliation claims, which Your Honor knows is

21  pending before Judge Broderick.

22           THE COURT:  Right.  Of course.  All right.

23           So, Ms. Green, just sticking with number 52

24  for a second.  It seems like this is a nonissue at

25  this point in time.  And it also seems like, based

1    on what Ms. Glavin just said, that Mr. Cuomo will be

2    prepared at his deposition to answer that question

3    one way or the other, whether there's any statement

4    that his attorneys or his communications team made

5    that he believes were false or unauthorized.

6         So on the representation that we can

7    address that, you know, you can pose this question

8    in his deposition, it seems like it's a nonissue at

9    this point in terms of document requests.

10        MS. GREEN:  I understand, Your Honor.

11        If I may just respond very briefly for the

12   record --

13        THE COURT:  Sure.

14        MS. GREEN:  -- on several points.

15        THE COURT:  Okay.

16        MS. GREEN:  Just to be quite clear, the

17   purpose of this request is because the plaintiff

18   alleges that Defendant Cuomo, through his agents,

19   Rita Glavin, including his entire comms team,

20   deliberately smeared her across numerous occasions.

21   And so seeking these documents is directly relevant

22   to those claims.

23        And then as far as Ms. Glavin's point about

24   whether this is right, as we put in our letter to

25   the Court, we did meet and confer on February 26th.

1    We did state our objections.  She indicated that
2    they were standing on their objections, and we
3    informed them we were at an impasse, so we do
4    believe that we, you know, complied with this
5    Court's rules on the matter.
6            And then, finally, we did raise requests
7    for admission on this topic, multiple ones.  I cited
8    a couple in Footnote 2 to Docket 216 requesting
9    Defendant Cuomo to admit -- you know, I have --
10   Request for Admission number 111 stated, "Please
11   admit that Defendant Cuomo was aware of the public
12   statements his legal representatives made about
13   plaintiff."
14           Number 112 states, "Please admit that all
15   public comments made by Rita Glavin on behalf of
16   Defendant Cuomo about plaintiff were authorized by
17   Defendant Cuomo."
18           So to the point of whether these are sort
19   of styled as interrogatories, we did make these
20   requests for admission.  And to be clear, he did not
21   answer.  And, in fact, he objected to both of those
22   requests for admission and stated that the requests
23   were premature.
24           THE COURT:  Right.
25           MS. GREEN:  And so we certainly will be

1  prepared to ask him about this at his deposition.

2          THE COURT:  Right.

3          MS. GREEN:  But we do maintain that any

4  responsive documents are certainly relevant to

5  plaintiff's claims.

6          THE COURT:  All right.  Well, you can

7  maintain that position, but I'm not compelling

8  Mr. Cuomo to respond to RFPs any differently or any

9  further or make any production as to RFP number 52

10 at this time.

11         To the extent that there are issues with

12 requests for admission, we'll address those --

13 requests for admission should come at the end of

14 discovery.  They're not a discovery device.  So to

15 the extent there are disputes about requests for

16 admission and the responses to those, we'll cover

17 that down the road.  But at this point, I don't

18 think that there's anything further that needs to be

19 done as to RFP number 52.

20         Now, turning to number 70, I'm trying to

21 understand who the "hes" and the "hers" are in this.

22         So am I interpreting RFP number 70

23 correctly that Ms. Bennett asserts that Ms. Mogul

24 made a statement that Mr. Cuomo's actions did not

25 rise to the level of sexual harassment?

```
1              But then there's a reference to grooming
2    "her" when she made "her" complaint.  Is the "her"
3    Ms. Mogul, or is the "her" Ms. Bennett, or is the
4    "her" somebody else?
5              MS. GREEN:  Thank you, Your Honor.  I'm
6    happy to provide clarification on that.
7              THE COURT:  Okay.  Great.
8              MS. GREEN:  "He" refers to Defendant
9    Cuomo -- was still grooming her.  The "her" refers
10   to plaintiff -- when she, plaintiff, made her,
11   plaintiff, complaint.
12             THE COURT:  Okay.  So Ms. Mogul made some
13   separate statement.  And I don't have the complaint
14   open in front of me, but the premise of this RFP is
15   that Ms. Mogul made some statement characterizing
16   Ms. Bennett's complaint, right?
17             MS. GREEN:  Yes.  As grooming and not
18   rising to the level of sexual harassment.  That's
19   correct, Your Honor.
20             THE COURT:  Okay.  And so you're seeking,
21   for example, any communications between Ms. Mogul
22   and Mr. Cuomo about that particular statement?
23             MS. GREEN:  Yes.  Or any relating to that
24   statement.  So they could be communications between
25   others that Defendant Cuomo has in his possession,
```

1    custody, or control.  But, yes, relating to that,

2    statement.

3            And, you know, Defendant Cuomo, one of his

4    objections, many objections to this request includes

5    construing the term "complaint" to mean

6    "allegation," and then construing the language used

7    in the request to avoid anything resembling

8    acquiescing to plaintiff's allegation about Mogul

9    having made that.

10            And so, given the narrowing that he

11    provided in his objection, if he has responses,

12    documents under those conditions, you know, he

13    should still be obligated to produce them to

14    plaintiff.

15            THE COURT:  Okay.  Ms. Glavin, do you want

16    to add anything further?  You touched on 70 earlier,

17    but --

18            MS. GLAVIN:  Yeah.

19            THE COURT:  -- more procedurally, if you

20    want to respond to what Ms. Green said --

21            MS. GLAVIN:  Yeah.  Your Honor, one of the

22    fundamental problems with how this is worded is Judy

23    Mogul, who was a counsel to the governor in the

24    Executive Chamber --

25            THE COURT:  Right.

                AMM TRANSCRIPTION SERVICE - 631.334.1445

```
 1          MS. GLAVIN:  She never made this statement
 2    or conclusion.  It's not true.  You just have to
 3    read her testimony with the OAG.  This is plaintiff,
 4    you know, trying to interpret, you know, Ms. Mogul's
 5    notes.  But, you know, Ms. Mogul's counsel is on
 6    this call, and they might address it.
 7          But the fundamental basis of this is a
 8    characterization of something that they're claiming
 9    Ms. Mogul said, which she didn't say or conclude.
10    And that was the problem with this document request.
11    It's just, as we said, vague, ambiguous,
12    mischaracterizes Ms. Mogul, who was, you know, also
13    a counsel to the governor.
14          THE COURT:  Right.  Well, I don't think
15    I've been subtle about my inability to, sort of,
16    understand the premise of the RFP, but let me just
17    ask.  And, Mr. Delikat, I do want to hear from
18    you --
19          MR. DELIKAT:  Yes.
20          THE COURT:  But let me just ask another
21    question of Ms. Glavin first, and that is, the
22    searches and production of Mr. Cuomo's documents
23    that are being done, do they otherwise include
24    communications or other documents between him and
25    Ms. Mogul concerning Ms. Bennett's allegations,
```

1    complaint -- however you characterize her

2    assertions?

3              MS. GLAVIN:  Your Honor, I think that we

4    would have produced anything that's nonprivileged,

5    you know, that's relevant to her allegations.

6              THE COURT:  Okay.  And is --

7              MS. GLAVIN:  I don't know off the top of my

8    head, but if it were nonprivileged -- because we

9    went through -- I mean, of course, we went through

10   this exercise three years ago.

11             THE COURT:  Sure.  And is there privilege

12   being asserted over some of the communications

13   between Ms. Mogul and Mr. Cuomo based on her status

14   as his counsel at the time?

15             MS. GLAVIN:  I think it would have been --

16             MR. DELIKAT:  There were none on the topic.

17             MS. GLAVIN:  Okay.  Yeah, I was going to

18   say, Mike, you know -- excuse me -- Mr. Delikat

19   would know better than I would.

20             THE COURT:  Okay.  Go ahead.  Go ahead,

21   Mr. Delikat.  I won't interrupt you --

22             MR. DELIKAT:  Thank you, Judge.

23             THE COURT:  -- any further.

24             MR. DELIKAT:  Yes.  Plaintiff's counsel

25   made the same request to us, and we objected and

1    said because Mogul did not make any such statement,

2    there are no documents responsive to this request.

3         And so, you know, with respect to this

4    allegation that Ms. Mogul said this was grooming and

5    it wasn't sexual harassment, it's been clear, and

6    from Ms. Mogul's testimony in front of the AG, that

7    she never brought up the term or used the word

8    "grooming."  In fact, it was Ms. Bennett that

9    brought that up in the conversation with Ms. Mogul.

10   So the whole question here is built on a faulty

11   presumption.

12        We've denied that quite clearly.  We just

13   didn't object to it, but we said there was no such

14   statement made, and we produced all the documents,

15   you know, relevant around this, you know, including

16   Ms. Mogul's notes of a conversation that she had

17   with Ms. Bennett.

18        THE COURT:  Okay.  So that was the other

19   thing I wanted to confirm.  It sounds like, based on

20   what Ms. Glavin said, that to the extent there are

21   any nonprivileged communications or other documents

22   between Ms. Mogul and Mr. Cuomo about Ms. Bennett's

23   allegations, complaint, assertions, that Mr. Cuomo

24   has produced those.

25        Is it fair to say that Ms. Mogul has done

1    the same?

2            MR. DELIKAT:  Yes.

3            THE COURT:  Okay.  All right.

4            Ms. Green, anything else you want to say on

5    RFP number 70?

6            MS. GREEN:  Thank you, Your Honor.

7            Only that to the extent that Mr. Morvillo,

8    on behalf of Defendant Mogul, did say that there are

9    no responsive documents in response to a similar

10   request, the difference here is only that

11   Ms. Glavin -- Defendant Cuomo responded saying that

12   they are withholding responsive documents.  And so

13   if there are responsive documents, we only ask,

14   based on what objections are they maintaining that

15   withholding.  And if there are no responsive

16   documents, as, you know, we have not been bringing

17   the same request to your attention in the case of

18   Defendant Mogul because if there are no responsive

19   documents, there are no responsive documents,

20   there's nothing further that can be done.

21           THE COURT:  Okay.  Just clarify, it was

22   Mr. Delikat not Mr. Morvillo, but --

23           MS. GREEN:  Oh.  So sorry.

24           THE COURT:  It's okay.  It's okay.  It's a

25   lot of people to keep track of.

 1               But, Ms. Glavin, is there anything being
 2     withheld as to number 70?
 3               MS. GLAVIN:  Judge, no.
 4               THE COURT:  Okay.
 5               MS. GLAVIN:  No.  No.  That was the issue
 6     with -- I -- you know, I probably should have taken
 7     advice from Mr. Delikat to say Ms. Mogul didn't say
 8     that.
 9               THE COURT:  Okay.
10               MS. GLAVIN:  That should have been the
11     response.
12               THE COURT:  All right.
13               MS. GLAVIN:  It could have saved us all
14     this trouble.
15               THE COURT:  All right.  So at this time I'm
16     not going to require any further production by Mr.
17     Cuomo in response to RFP number 70.  This is all
18     obviously subject to questioning at depositions.
19     And then I have no doubt that the parties will have
20     numerous post-deposition follow-up requests.
21               So if this remains an issue, it can be
22     raised again.  But as of today, the record does not
23     support requiring further action with respect to RFP
24     number 70.  Okay.
25               Anything else on Ms. Bennett's side of

```
 1    things with respect to any of the defendants'
 2    productions or other issues before I turn to the
 3    issues that have been raised as to Ms. Bennett?
 4             MS. GREEN:  Not at this time, Your Honor.
 5             THE COURT:  Okay.  Wonderful.  Thank you.
 6             All right.  So then --
 7             MR. EISENBERG:  Excuse me, Your Honor.
 8             THE COURT:  Yes.
 9             MR. EISENBERG:  This is Herb Eisenberg for
10    Ms. Bennett.
11             THE COURT:  Yes.
12             MR. EISENBERG:  There is an issue that I'd
13    like to raise.  I don't know if this is the
14    appropriate time.  But yesterday evening, we
15    received a letter from defendants telling us that
16    plaintiff's deposition, which was scheduled for next
17    week, is going to be put off, and also telling us
18    that our depositions of the four defendants, which
19    are presently scheduled for dates in April and early
20    May, are also going to be put off.
21             This morning, we wrote to defendants
22    stating, we can't force you to take plaintiff's
23    deposition, but we have no intention to put off the
24    depositions of the four named defendants that are
25    presently scheduled.  Schedules have been made to
```

1    accommodate those dates.

2         It is imperative that we move this case

3    forward.  The discovery cutoff is coming up fast

4    upon us, and we don't feel there's any legitimate

5    rationale for defendants to tell us we can't be

6    taking the depositions that have been noticed since

7    October and early December.  We are ready to go.  We

8    would like to take those depositions.  We'd like to

9    move this case forward.

10        And if I might add, this is a similar

11   pattern to what happened in the Trooper 1 case, and

12   it is concerning to us.  We don't want to get mired

13   in motion practice and letters going back and forth

14   about the opportunity to take depositions were --

15   which were rightfully noticed and which we are

16   willing to proceed with.

17        THE COURT:  Okay.  Well, I think I have

18   made very clear my aversion to chaos, and so I have

19   nothing in writing from anybody about this.  If this

20   just came up last night and the parties have only

21   just exchanged letters, then you have not met and

22   conferred about this issue.

23        So I appreciate you raising it,

24   Mr. Eisenberg, but with all due respect, the parties

25   need to work through that issue themselves first.

1      And we're going to be setting another date for a
2      conference in the case.  If the parties haven't
3      worked it out by then, then we will raise it.
4           But I am not going to do issues on the fly
5      that came up last night.  That is not an efficient
6      or a productive way for us to be dealing with
7      issues.  That's the very reason why I require you to
8      file letters with me well in advance of our
9      conferences so that we have an orderly way of
10     dealing with issues.
11          MR. EISENBERG:  Your Honor, I --
12          THE COURT:  So I appreciate you raising it,
13     but I am not going to rule on that issue today.
14          MR. EISENBERG:  I certainly understand the
15     aversion to address issues on the fly, and we
16     similarly feel it would have been appropriate for
17     this to come before the Court, certainly, prior to
18     this, now, presentation.
19          Our first deposition, plaintiff's
20     deposition, is scheduled for March 27th.  That's now
21     been put off.  The following deposition is scheduled
22     for April 11th, and that's Ms. DeRosa.
23          I understand we can meet and confer about
24     this, but this just landed on our desks yesterday
25     evening, and it is quite disconcerting.  Hotel

```
 1    reservations have been made, schedules have been

 2    made, travel plans have been made, all in

 3    anticipation of this going forward.

 4            As a matter of fact, last Monday --

 5    actually, this Monday -- forgive me -- we were told

 6    we're going to go forward with these depositions, so

 7    they were confirmed.  The opportunity to cancel

 8    plans is much more difficult when it is on such

 9    short notice.

10            THE COURT:  All right.  I understand your

11    frustration.

12            Is there anything that any of the

13    defendants' counsel want to briefly, briefly say on

14    this issue, mindful that I am not ruling on it

15    today?

16            MS. GLAVIN:  Yes, Your Honor.

17            THE COURT:  Go ahead, Ms. Glavin.

18            MS. GLAVIN:  Yes.  Yes, Your Honor.  Rita

19    Glavin, on behalf of former Governor Cuomo.

20            All I want to do is make a record and

21    appreciate exactly what you just said about not

22    ruling on this.

23            I think, in our March 15th status letter to

24    the Court, we made clear that there were many, many

25    documents that Ms. Bennett had improperly redacted.
```

1   On Monday night, Ms. Bennett produced 12,000 pages
2   of documents to the parties that removed those
3   redactions.  The redactions in just -- you know, we
4   only were able to start looking at this sometime on
5   Tuesday, but in the sliver that we saw, there are,
6   you know, at least 1,000 new messages, we think,
7   just by back-of-the-envelope math that have now been
8   unredacted in conversations that were previously
9   produced.
10          As Your Honor might imagine, in
11  preparing -- a lot of time has been spent preparing
12  for Mr. Bennett's deposition.  And what happened is
13  that plaintiff, after we've repeatedly raised, over
14  and over again in meet and confers and e-mails,
15  issues with respect to the redactions that we
16  believed were unresponsive information and relevant
17  information kept coming back to us and saying it was
18  not responsive.
19          We began providing examples.  Provided
20  examples of a 12-page text exchange between
21  Ms. Bennett and a political operative by the name of
22  Erica Vladimer, where there were numerous
23  redactions, and that conversation took place during
24  the Attorney General's investigation.  It discussed
25  Ms. Bennett's harassment allegations.  It discussed

AMM TRANSCRIPTION SERVICE - 631.334.1445

1    the AG investigation.  It discussed Ms. Bennett's

2    deposition.  And within 24 hours, then they produced

3    an unredacted version of the 12-page exchange, and

4    there were highly relevant texts that had been

5    improperly redacted.

6            We had a meet and confer.  Following the

7    meet and confer, we sent this letter to the Court.

8    And what plaintiff did on Monday night was reproduce

9    her entire production of the thousands of text

10   messages.  And it has put us in a position -- it

11   just put us in a very difficult position because we

12   spent weeks reviewing the 12,000 pages we had.  Now,

13   they've all been unredacted, and we have to review

14   those.

15           In addition, you know, we detailed -- what

16   we sent last night was a six-page, single-space

17   letter that went through the issues that we have had

18   with the productions after they had represented to

19   the Court and to us that they were complete,

20   including missing information on the -- on

21   Ms. Bennett's cell phone, e-mail accounts that we

22   have seen that we needed to understand whether

23   they've been searched.  There are redactions to

24   Ms. Bennett's medical records and with her -- with

25   respect to her prescription records.  We've asked to

1    get those.  We still don't have them.  And so all --
2    because of this, we were forced to have to put this
3    off because we can't prepare.  And this also
4    impacts -- this also impacts the preparation of our
5    own clients' depositions.
6              In addition, what I expect we will be
7    doing -- and we have already raised this with
8    plaintiff's counsel -- is there are many, many pages
9    of text messages that counsel has omitted, just
10   simply did not produce.  One example that I saw last
11   night deals with Ms. Bennett communicating with one
12   of her closest friends.  And she regularly
13   communicated with this woman about the governor,
14   about her job, about what was happening.
15             There are some 40 pages of text messages
16   missing from her communications with that friend
17   between May 15th and May 18th of 2020.  Those dates
18   are critical because there are six paragraphs in
19   Ms. Bennett's complaint devoted to her interactions
20   with Governor Cuomo on May 15th.  And we have
21   repeatedly been told that these omissions are not
22   responsive.
23             Because of what we have seen in redactions
24   that we were told were because they were not
25   responsive and then turned out that they were, we

```
 1    expect to file a motion before Your Honor to do an

 2    in-camera review of some of these because of our

 3    concerns.

 4            But I just wanted to make the record that

 5    the issue of this being put off -- we had all been

 6    planning to go forward.  We had the videographer,

 7    you know, court reporter scheduled, all of us.  I

 8    have moved around other obligations to make myself

 9    available for this, but we're unable to do it.

10            And at the same time, we need the

11    documents, particularly as it goes to comments about

12    my client, what he said, what he did on certain

13    days.  I need that to prep Andrew Cuomo.  And so I,

14    you know, took plaintiffs at their word when they

15    told the Court that this was complete, they produced

16    everything that was responsive.  It's not.

17            And it's certainly -- I'm unhappy on a

18    bunch of levels.  And it's not gamesmanship on our

19    part.  I have a pretty full schedule with other

20    professional obligations, and this has thrown that

21    into whack.  It has also thrown in -- days I plan to

22    prep with my client into whack.

23            So I just want Your Honor to know that, you

24    know, this is not -- we're not doing gamesmanship.

25    And I don't think comparing anything happening in
```

```
 1    the Trooper 1 case to this case -- it's apples and
 2    oranges.  These are two different cases, entirely
 3    different sets of allegations, different witnesses,
 4    different third parties.  So I want to make a record
 5    on that.
 6              And I think -- you know, we have until
 7    June 30th to get this done.  We have made clear to
 8    plaintiff's counsel, our goal is to get it done by
 9    then, but we're going to have to readjust
10    depositions because of this production.  And I
11    defer because I think some of my co-counsel may want
12    to be heard on this as well.
13              THE COURT:  Okay.  Thank you, Ms. Glavin.
14              MR. DELIKAT:  Yeah.  Yes, Your Honor.  It's
15    Mr. Delikat.  I'd like to briefly be heard also, if
16    that's okay.
17              THE COURT:  Yes, go ahead.  Briefly.
18              MR. DELIKAT:  Yeah.  So --
19              THE COURT:  This is --
20              MR. DELIKAT:  Yeah.  In a letter to the
21    Court last week sent by Ms. Trzaskoma, I believe,
22    there was discussed, albeit in a short form, issues
23    with respect to the production of medical and
24    therapist records.
25              THE COURT:  Yeah, I assumed we would get to
```

1    that in this call.

2           MR. DELIKAT:  Right.  And so I just want to

3    give you one example of the issues that relate to

4    that.

5           As you know, there are claims for extensive

6    emotional distress and pain and suffering in this

7    case.  It's not a garden-variety emotional-distress

8    case, and, therefore, that gives the defendants the

9    right to have access to the plaintiff's medical

10   records and therapy records, as well as to do an

11   examination of her by, you know, an expert forensic

12   psychiatrist.

13          One of the most important issues is

14   Ms. Bennett was seeing a Cynthia Haupt, who was her

15   therapist, and she was seeing Dr. Haupt at the time.

16   Almost all of the allegations in this case with

17   respect to harassment were things that Ms. Mogul

18   said or did during the same period of time.

19          We were provided with Cynthia Haupt's

20   records, 41 pages that were almost totally

21   illegible.  We asked the other side at the time to

22   have Ms. Haupt dictate those notes or provide us

23   with legible copies, given the significance and the

24   importance of this particular period in time when

25   Ms. Bennett was regularly seeing Ms. Haupt for

1    therapy and talking about her own mental state at

2    the time of the underlying allegations of the

3    complaint.

4           We were told -- at the time, the first

5    response was, there's no obligation under the

6    Federal Rules for us to do anything other than turn

7    over completely illegible notes.  That's your

8    particular problem.  And that's all they were going

9    to do.

10          We met and conferred with the plaintiff's

11   counsel and said, look, this doesn't make sense.

12   We're going to have to, now, serve a third-party

13   deposition notice on Ms. Haupt and have her just

14   come in and read her notes first, and then go from

15   there with respect to that.

16          They then came around to a position that if

17   we paid for Ms. Haupt -- her time at $220 an hour --

18   to transcribe those notes in a legible fashion, they

19   would turn those over.  We agreed to do that.  This

20   was last week.  We agreed to do that, and we said we

21   absolutely needed to have them by today.  When we

22   followed up with plaintiff's counsel this week, they

23   told us they've been unable to reach Ms. Haupt.

24          In addition to the illegibility of the

25   notes, there were six pages of the 41 pages that

AMM TRANSCRIPTION SERVICE - 631.334.1445

1      were cut off in the original scan that were provided

2      to us.  This is the kind of critical information

3      that we need in order to question Ms. Bennett and

4      prepare our witnesses for this, and prepare our

5      forensic psychiatrists for this with respect to the

6      deposition.  And just an example of things that are

7      coming up in our ongoing disputes with respect to

8      deficiencies that are causing us not to be ready and

9      to ask specifically that the entire schedule be

10     rolled forward, most importantly, that it definitely

11     be completed by June 30th.  But that we maintain the

12     order of the witnesses that we agreed to based upon

13     representations that the productions had been made

14     complete by plaintiff, which they made long before

15     we received all of these late productions this week,

16     and still haven't received any transcription of Dr.

17     Haupt's notes.

18             And one other thing, just on the medical

19     record side, we've asked for copies of her

20     prescription medications, which she was taking

21     numerous prescription medications at the time that

22     all of these underlying events occurred, and we've

23     been essentially stonewalled with respect to that.

24             We said she could easily -- the first

25     response to that was, it's not within her custody

1    and control.  Well, all she needed to do was to go

2    to the pharmacy where she got these prescriptions

3    and get copies of those, or if she has an online

4    app, as most people do these days, you know, for

5    their medication, all of those prescription records

6    would be readily available on an online app for her

7    prescriptions.

8         These are the kinds of critical records --

9    we're not talking about little deficiencies.  These

10   are major deficiencies that prevent us from

11   sufficiently preparing for her deposition and

12   preparing our clients to be able to respond to --

13        THE COURT:  Great.  That's fine,

14   Mr. Delikat, but why didn't you put in a letter by

15   the deadline that I set for you to raise all this?

16        You're throwing a bunch of things at me

17   that nobody has explained --

18        MR. DELIKAT:  Because I -- Your Honor --

19        THE COURT:  I am not going to rule on

20   medical records if you haven't raised it with me.

21        MR. DELIKAT:  Your Honor, we appreciate

22   that, and we understand that.  We're just making a

23   record on this because this all happened this week.

24        So the issue was raised as to the

25   deficiency in medical records.  These specific

1    issues, we thought were being worked out.  We

2    thought we would have legible copies of Dr. Haupt's

3    notes because we agreed to pay her $220 an hour to

4    transcribe them.  And all we're told this week,

5    without any further update, is, we've been unable to

6    reach her and no prescription record.

7         So this is all happening in real time.  I

8    appreciate, and we respect, obviously, your order

9    with respect to that, but there's some exigency here

10   and emergency as to what's going on, that we

11   couldn't do it last week because they told us they

12   would give us this stuff and they haven't.

13        THE COURT:  All right.

14        Anything else that any of the defendants'

15   counsel wants to just raise briefly with respect to

16   scheduling of depositions, mindful, for the fourth

17   time, I am not ruling on scheduling today.

18        MR. HAMID:  Your Honor --

19        MR. MORVILLO:  Yes, Your Honor.

20        THE COURT:  Mr. Hamid and then

21   Mr. Morvillo.

22        MR. MORVILLO:  Okay.

23        MR. HAMID:  I'm sorry, Greg.

24        Just very, very quickly, Your Honor, I just

25   wanted to underscore a point that my co-defense

1    counsel have raised, which is, it is all of our

2    intention to try to work on this, to get it done

3    within the June 30th deadline.  No one's happy about

4    the schedule being upset.

5           And so I just wanted to underscore the

6    point:  This is not gamesmanship or an attempt to

7    delay.  We want to work it out, figure out a

8    schedule that works for everyone, consistent with

9    the order that was agreed, and still finishing in

10   time.  That's all I wanted to say.

11          THE COURT:  Thank you.

12          Mr. Morvillo?

13          MR. MORVILLO:  Thank you, Your Honor.

14          I wanted to point out that Ms. DeRosa is

15   the first defendant who will be deposed in this case

16   on the present schedule.  And we agreed to be first

17   defendant out, understanding that we would go after

18   Ms. Bennett.  And we made that agreement based on

19   plaintiff's representation that they were finished

20   producing documents.  And as Ms. Trzaskoma's letter

21   to the Court demonstrates, they're nowhere near

22   finished producing documents.

23          And they have been hiding the ball on us

24   for months now because there are videos that were

25   redacted.  And when we pressed the issue, they

1   unredacted them.  But they told us that those

2   redactions were not responsive.  That was wrong.

3   Those redactions, many of them, were highly relevant

4   to this case.

5           Then with the text messages that -- we

6   received 12,000 unredacted text messages this week.

7   After we go forward, then we receive text messages

8   from them.  And the same thing:  We were told, these

9   are not responsive.  And yet, many of them are

10  highly relevant to this.

11          It is unfair to ask us to continue along

12  this schedule when plaintiffs have been playing

13  games with the discovery, when they haven't met

14  their burden, when they misrepresented the fact that

15  they went forward.  And so this particularly impacts

16  Ms. DeRosa because she's April 11th as of right now.

17          And so we still don't have all of their

18  production.  We're still missing documents.  And I

19  don't see how we can be preparing for Ms. Bennett,

20  reviewing their documents that are very, very late

21  in the production and still trying to prepare

22  Ms. DeRosa, when we don't have all of their

23  information.

24          There may be conversations about Ms. DeRosa

25  that are in their documents that we need to see, but

1    they haven't produced them because they're claiming

2    nonresponsive over certain things that we look at

3    them, we see massive responsiveness.

4         So we are very concerned about this, and

5    that's all I will say.  Thank you, Your Honor.

6              THE COURT:  Thank you.

7         Mr. Eisenberg --

8         MR. EISENBERG:  Thank you, Your Honor.

9              THE COURT:  -- there's a lot to respond to

10    there.  It's not necessary because, again, I am not

11    ruling on this.  But if there are any points that

12    you very, very briefly want to resolve -- because I

13    do want to get to the issues that actually were

14    raised in the parties' letters.

15         MR. EISENBERG:  Thank you, Your Honor.  A

16    couple of things.

17         One, unless defendants intend to tailor

18    their testimony at depositions, plaintiff's videos

19    of herself, her medical records, the notes of her

20    therapist, her pharmacy records, none of that has

21    any role in our depositions of defendants.

22         Defendants' depositions should go forward.

23    It is nothing that we have withheld that should

24    alter anything that they say.  As long as they

25    answer truthfully and from their memory and

```
 1    experience, there is nothing that they seek from us
 2    that will inform them.
 3           That being said, we dispute a lot of what
 4    has been said.  For example, Dr. Haupt's medical
 5    records has been with defendants for months, at
 6    least two months, and we're hearing about this now
 7    on the eve of her deposition.  We need to move this
 8    case forward.  I fear that defendants aren't
 9    interested in doing so.
10           They want to blame us.  They can blame us
11    and go ahead and do that.  We have responses to
12    everything that has been said.  We don't want to
13    curtail our depositions of defendants.
14           THE COURT:  All right.  Thank you.  Okay.
15           So then, Ms. Glavin, initially you had
16    raised the issue of the sealing of the videos.  Is
17    that now resolved?
18           It sounds like the videos were de-redacted,
19    or whatever you want to say, unsealed, and you now
20    have the full videos.  Is there anything remaining
21    as to the videos?
22           MS. GLAVIN:  Yeah.  The only thing I just
23    wanted to raise, Your Honor, is plaintiff's counsel
24    had filed a letter with the Court on Wednesday of
25    this week --
```

1          THE COURT:  Yes.

2          MS. GLAVIN:  And I just -- they have now

3    agreed to de-designate confidentiality designations

4    on the videos, but I do think it's important to make

5    a record about what happened here.

6          We had met and conferred about that

7    confidentiality designation on the videos.  And at

8    that time that we met and conferred -- that was on

9    February 22nd -- we were talking only about the

10   redacted videos that Ms. Bennett provided, and we

11   said we did not think the designations were

12   appropriate.

13         We were told, in no uncertain terms, by

14   plaintiff's counsel throughout that meet and confer,

15   absolutely not, would they not ever agree that they

16   shouldn't be marked confidential.  We were told

17   repeatedly to go to Your Honor if we wanted to

18   challenge it, that they were quite comfortable

19   Your Honor would agree with them, and to go to the

20   Court.

21         So, as a result, we spent a lot of time and

22   resources writing our letter to the Court on

23   March 15th about why it should be de-designated.

24   And we then got an e-mail from Ms. Katz on Tuesday

25   or Wednesday of this week doing a complete 180,

1    saying, yeah, we'll no longer make them

2    confidential, and will you revoke your letter?

3          And it was upsetting to us because of the

4    amount of time that we spent on a letter.  You know,

5    we keep hearing about, we're wasting taxpayer

6    dollars.  To make us go through that exercise -- and

7    I said to Ms. Katz in an e-mail, like, we want to

8    raise the issue of cost that we had to go through

9    this exercise.  And then write a letter to the Court

10   saying, yeah, we've decided not to do this, after

11   they made us write the letter.

12         So we're very frustrated, and we think it's

13   appropriate that we should get costs for having to

14   go through that exercise and spend our time and

15   effort writing that letter to the Court.

16         On the issue of the videos, yes, they have

17   now agreed, as they should have back on

18   February 22nd, when they told us and made us go to

19   Your Honor and made Your Honor read the letter, and

20   then that it said, no, sorry.

21         So I think I -- very frustrated about that,

22   and I just want the Court to know about it.  And I

23   think you should consider addressing that with

24   plaintiff's counsel, why they made us write this

25   letter.

1          THE COURT:  All right.  Ms. Bennett's
2    counsel, who wants to respond to Ms. Glavin on the
3    videos?
4          MS. GREEN:  Hi, Your Honor.  Rachel Green
5    on behalf of Ms. Bennett.
6          It is plaintiff's position that there is no
7    longer a dispute as to these videos.  I'll respond
8    only very briefly to avoid embroiling the Court
9    further in this issue.
10         But following the February 26th hearing and
11   defendants' repeated requests to see the unredacted
12   videos in the interest of proceeding with discovery,
13   we did produce all seven videos without redactions
14   to defendants.  Defendants, following that, never
15   raised their designation objections, and plaintiff
16   believed that the designation issue was no longer a
17   live dispute.  And so we were surprised to see the
18   filing on Friday, Docket 215, limiting his
19   de-designation request to the redacted videos.
20         And so, in light of all the live discovery
21   disputes, and, again, in the interest of not unduly
22   burdening the Court, we did agree to de-designate
23   the redacted videos, other than the ten seconds of
24   that one identified video.  And so, again, we
25   believe this is no longer a dispute, and that we

                AMM TRANSCRIPTION SERVICE - 631.334.1445

```
 1    object vehemently to Defendant Cuomo's pursuit of
 2    fees for this.
 3            And that is our position on the matter.
 4            THE COURT:  All right.  Thank you.
 5            I'm going to deny the request for costs at
 6    this time.  When we get to the end of fact
 7    discovery, we'll have, I'm sure, a lot of issues
 8    about -- I hope that we don't have issues about
 9    spoliation, but to the extent that there are
10    sanctions, costs, all that, we'll deal with it at
11    the end of fact discovery.
12            So the request for costs with respect to
13    the videos is denied without prejudice.
14            Next issue raised with respect to
15    Ms. Bennett's production is the relevance and
16    privacy redactions, but based on some things I heard
17    a little while ago, it sounds like there were some
18    additional productions by Ms. Bennett earlier this
19    week, so I am not sure if this is still a live
20    issue.
21            Ms. Glavin?
22            MS. GLAVIN:  Yes, Your Honor.  A couple of
23    things on that.
24            One is, following our letter -- the
25    reproduction happened on Monday night.  We are still
```

1    going through that.  We still have seen some
2    redactions in there, but given the freshness of the
3    production, I am not in a position to catalog them.
4    And I think there are still redactions that exist in
5    her medical records.  And Mr. Delikat, Mogul's
6    counsel, may be in a better position to raise that.
7         The issue with respect to -- I mean, there
8    are omitted pages in the text messages.  I think
9    that, to us, also falls into the redaction category,
10   but I think we will be raising that with the Court.
11   And it will impact -- it will certainly impact the
12   deposition schedule depending on what we get from
13   them.
14        But there are, again -- I mean, one that's
15   just sticking in my craw is the 40 pages of missing
16   text messages from Ms. Bennett's production between
17   May 15, 2020 and May 18, 2020 with her good friend,
18   William McEnaney (phonetic), who she, on an almost
19   daily basis, is discussing the governor, her mental
20   health, working in the chamber, et cetera.  And
21   given the importance of the May 15th date and the
22   six paragraphs in her complaint dealing with
23   May 15th, we think that those omissions were
24   improper.  And we keep getting told blanketly that
25   any pages they didn't produce, you know, were

1    because they were not responsive.

2           We are questioning that based on what we

3    have been told already was not responsive, such as

4    redactions to the videos, redactions to other text

5    messages that we now see had highly relevant

6    information, which is why I think we're going to

7    have to bring it to the Court to do in camera, you

8    know, and have Your Honor look at it, which I regret

9    having to do.

10          And then on that issue, there's one thing I

11   wanted to raise because they're saying that our

12   clients' depositions shouldn't be rescheduled

13   because of documents that are not produced because

14   they're going to "tailor their testimony."  I do

15   want to raise something with Your Honor on this

16   point, which I think is unique.

17          With respect to my client, the former

18   governor, during this period of time -- I mean, he

19   does not have, and he did not have an e-mail

20   account, and he doesn't have access to all the

21   materials from the Executive Chamber.  And so a lot

22   of us are being able to put together, because of the

23   thousands of things that were going on with him in,

24   you know, 2019 and 2020 and 2021, when Ms. Bennett

25   was in the Chamber, and then when she made her

1    allegations, is we have to piece together dates and

2    times, and it's not Governor Cuomo tailoring his

3    recollection.  There's core materials that we've

4    been getting in discovery that go and actually help

5    trigger his memory:  Oh, that did happen on this

6    date.  Yes, something like that was discussed, I

7    can't remember, et cetera.

8            So the plaintiff's production is very, very

9    important, you know, for his preparation, not to

10   tailor it.  I mean, he's already testified before

11   the AG about Ms. Bennett, but it's certainly in

12   terms of a chronology, and it also puts us in a

13   position to ask the Executive Chamber to give us

14   certain e-mails, you know, that might deal with what

15   the governor was doing, you know, at times

16   Ms. Bennett is having text communication saying

17   what's going on in the chamber.

18           So it impacts that, and it impacts how we

19   are able to prepare him, you know, given, I think,

20   the uniqueness of the hundreds of things going on at

21   that time, particularly as it relates to a core time

22   period in this, which is the early part of 2020.

23           So I just wanted Your Honor to appreciate

24   that because it's a unique situation for me with a

25   client, that there was a lot going on, and he does

```
 1    not have, you know, e-mails and all of the
 2    information he would have at his fingertips when he
 3    was sitting in that job.
 4              THE COURT:  Okay.  So I don't need to rule
 5    on anything with respect to the relevance and
 6    privacy redactions as of today.
 7              MS. GLAVIN:  Yes, so long as we have a
 8    representation from plaintiff's counsel that there
 9    are no redactions anymore based on the privacy and
10    relevance.
11              THE COURT:  All right.
12              Ms. Green, do you or one of your colleagues
13    want to respond?
14              MS. GREEN:  Happy to, Your Honor.  This is
15    Rachel Green.
16              So I understand that there's one document
17    that was identified in last night's letter -- I have
18    not yet gotten a chance to review it -- that perhaps
19    was inadvertently continuing to contain redactions.
20    I will take a look at it.
21              But other than that one identified
22    document, it is, indeed, plaintiff's representation
23    that there are no additional redactions, other than
24    as stated in our filing, of the SSN of our client.
25              THE COURT:  Sorry.  I lost what you said.
```

```
 1   Social Security number, that's what you meant?
 2          MS. GREEN:  Yes.  Yes.  Sorry, Your Honor.
 3   Yes, Social Security number.  And with that, it is
 4   our position that there is no further dispute on the
 5   issues raised in defendant's filing on Friday.
 6          THE COURT:  Oh, so --
 7          MS. GLAVIN:  But I just want to -- Your
 8   Honor?
 9          THE COURT:  Just let me clarify what
10   Ms. Green said, and then I'll let you respond in a
11   second.
12          So what you're saying is that, aside from
13   the one document addressed in a letter that the
14   defendants sent you last night, which you'll look
15   into, the only redactions in what Ms. Bennett
16   produced this week are of her Social Security
17   number.
18          MS. GREEN:  Yes, that is correct.
19          THE COURT:  All right.
20          Ms. Glavin?
21          MS. GLAVIN:  Judge, I just want to be very
22   clear, make sure that this is clear, and for Your
23   Honor to weigh in on this, that they should not --
24   plaintiff's counsel cannot be making redactions
25   based on relevance or privacy.
```

```
 1              THE COURT:  I mean, there is a
 2    confidentiality order in place.
 3              MS. GLAVIN:  Exactly.
 4              THE COURT:  There's a protective order in
 5    place in this case, Ms. Green.  So why do we even
 6    need to redact Ms. Bennett's Social Security number
 7    at this point?
 8              MS. GREEN:  Respectfully, Your Honor, the
 9    reason for doing that is because defendants have,
10    unfortunately, already accidentally filed something
11    unsealed that was supposed to be filed under seal,
12    and so we are greatly concerned at especially the
13    potential impact of even an accidental filing in the
14    future if plaintiff's Social Security number is
15    revealed.  And we don't see any reason for them to
16    have it.  And if they need it for some reason, we
17    can provide it separately, but we would prefer to
18    keep those redacted to maintain her privacy.
19              THE COURT:  All right.
20              I mean, Ms. Glavin, can you tell from
21    the -- I realize you just got the documents on
22    Monday, but are you able to tell from the context
23    that, yes, it really only is the Social Security
24    number that's being redacted?
25              And if there's some that you have doubts
```

1    about, that you think it's more than just a Social

2    Security number, then in the first instance, you can

3    raise it with Ms. Green.

4         But what she's representing is the only

5    thing that they've redacted is the Social Security

6    number, which I understand there's a protective

7    order in place in this case, but I'm trying not to

8    have another round of having unredacted documents

9    produced.

10        So if that's the representation, but if you

11   have a concern about something where you think it's

12   more than just Social Security number, can we just

13   table that for you to raise it with Ms. Green in the

14   first instance?  And then if I need to look at it,

15   then I'll look at it.

16        MS. GLAVIN:  Yes.

17        Your Honor, let's put the Social Security

18   number to the side here because I think that's, sort

19   of, less of an issue here.  What we would like from

20   Your Honor is to instruct plaintiff's counsel that

21   they cannot be redacting for relevance or privacy,

22   given the protective order in the case, which is

23   what they had done in the production of, you know,

24   thousands of pages of documents, that they cannot be

25   doing that.

1              And then once we have that from Your Honor,
2      there should not be an issue.  I mean, I can tell
3      you from the sliver we've looked at, there are still
4      some redactions, but I think if Your Honor makes
5      that clear today, it makes any meet and confer much
6      easier if we have a problem.
7              THE COURT:  All right.  Well, no one has
8      convinced me that anybody should be redacting -- any
9      party in this case -- not addressing nonparties --
10     but no one, in what I've heard today or to date in
11     this case, has convinced me that there needs to be
12     redactions for relevance or privacy because there's
13     a protective order in this case.
14             Based on Ms. Bennett's counsel
15     representation, that the only thing that she has
16     redacted is the Social Security number, as a
17     pragmatic matter, I'm not going to require her to do
18     another round of unredactions.  But if any of the
19     defendants have a concern about a document that
20     Ms. Bennett has produced that has redactions, and
21     they think it's more than the Social Security
22     number, then that would not be in compliance with my
23     ruling.  All right?
24             MS. GLAVIN:  Thank you, Your Honor.
25             THE COURT:  All right.

           AMM TRANSCRIPTION SERVICE - 631.334.1445

1          The last issue that I think was raised in
2     the letter, and then I'll give you a chance to
3     clarify, was the phone extraction.
4          Based on your letter, Ms. Glavin, it
5     sounded like the parties were still discussing that
6     issue, but is there anything you want to elaborate
7     on?
8          MS. GLAVIN:  Yes, Your Honor.
9          I believe we're at an impasse with respect
10    to the phone extraction.  And I think that
11    Mr. Morvillo's colleague, Sarah Sulkowski --
12         Sarah, I am going to mispronounce your
13    name, and I apologize.
14         MS. SULKOWSKI:  It's okay.  Sulkowski.
15    Don't worry about it.
16         THE COURT:  Hold on.  All right.
17         Ms. Sulkowski, do you want to raise -- oh,
18    go ahead.
19         MS. GLAVIN:  Yeah, but just one issue is,
20    Your Honor, we believe that Ms. Bennett's phone
21    needs to be fully imaged.  It's clear to us that it
22    was not.  And, you know, one example is that the --
23    you know, these thousands of pages of text messages
24    don't have timestamps.  We have a date stamp, but
25    they don't have timestamps.  And that information is

1    critical to us, particularly as she's talking about

2    events on certain days in real time, as to what she

3    said to whom, when, about what.

4            And we have asked for the timestamps and

5    that they are certainly going to be on her phone,

6    and it would be in the metadata, and we don't have

7    that, and so we believe that the phone needs to be

8    imaged.  But I will let my co-counsel, Ms. DeRosa's

9    counsel, also speak to this.

10            THE COURT:  All right.

11            Ms. Sulkowski?

12            MS. SULKOWSKI:  Thank you, Your Honor.

13    Sarah Sulkowski, for Melissa DeRosa.

14            So I think the concept of metadata is

15    familiar.  Standard electronic discovery

16    instructions and the instructions that we included

17    with our document requests in this case provide for

18    the processing of metadata; for example, by

19    requiring that families of documents be linked

20    within an electronic production.  We expressly asked

21    for that.

22            The result would be, of course, that once

23    the production is loaded into a database, like

24    Relativity or a similar database, documents that are

25    embedded in or attached to, for example, an e-mail

```
 1    or a text message would be related as child
 2    documents to that parent message and would be able
 3    to be viewed as such.  They would also likely appear
 4    sequentially within the production as it was
 5    reviewed in the software.
 6            Metadata also includes things like
 7    timestamps, as Ms. Glavin mentioned, on text
 8    messages.  And as we all know from our own text
 9    messaging, our phones keep track of the time each
10    message was sent, and standard e-discovery software
11    preserves and provides that information, which,
12    again, we expressly requested here.
13            So none of that was done here.  There are
14    numerous text and e-mail messages that clearly
15    contained or attached photographs, documents, or
16    other materials where the attachments are missing
17    and not linked in any way to the messages.  In fact,
18    it's unclear whether the attachments were provided
19    to us at all.  And if they were, it's impossible to
20    determine which ones went with which messages.  Nor
21    do we have timestamps for most of the messages that
22    were produced.  And, as Ms. Glavin said, that's key
23    information here where contemporaneous messages were
24    being sent during the events at issue.
25            To take just one example, CB-00004958 is a
```

1    page of a text chain between plaintiff and Lindsey

2    Boylan.  It's marked confidential, so I'm not going

3    to read it, but it shows that an image or images

4    were sent in December 2020 by Boylan to Bennett in

5    the context of a conversation about Governor Cuomo.

6    The embedded image, or images, aren't linked to the

7    document.  It's entirely unclear whether we received

8    them, or, if so, where they appear in these dozens

9    of thousands of pages that plaintiff has produced.

10    A standard phone extraction tool would have linked

11    these files as a family, and that needs to be done

12    here.

13          Plaintiff never objected to our electronic

14    discovery instructions in this case, much less

15    notified us that they wouldn't be providing key

16    metadata.  And so, as we've received each deficient

17    production, defendants have gone back to plaintiff's

18    counsel and requested the metadata, only to be told

19    that it wouldn't be produced because plaintiff has

20    given us what she has.

21          The software that plaintiff used on her

22    phone is called iMazing.  The limitations of this

23    software are well known.  There is a publication

24    last year by The Sedona Conference, which is a legal

25    nonprofit, which points out that iMazing "may not

1    extract all information, such as images or photos

2    that are sent via text message.  The collection and

3    subsequent production may be incomplete if

4    non-extracted information is responsive to the

5    document request.  It is important to understand the

6    limitations of collection tools and discuss these

7    with opposing counsel so an agreement can be

8    reached."

9           That was never done.  If plaintiff had

10   notified us she was going to be using this kind of

11   software, we would never have agreed, and we would

12   have sought Court intervention at that time.  When

13   we realized it was occurring, we tried to work with

14   plaintiff to get the necessary information on a

15   rolling basis, but we've gotten flat refusals.  And,

16   in fact, we've had to demand even basic information,

17   like the dates on which certain messages and

18   recordings were sent.

19          This just isn't a workable way to conduct

20   discovery in a high-stakes federal litigation.  The

21   information is not available from another source.

22   It is uniquely within plaintiff's possession,

23   custody and control, and it's plainly responsive and

24   highly relevant.

25          And so we need plaintiff's phone to be

```
 1    properly imaged and the results provided to us
 2    immediately, and then we'll need to review those
 3    results before depositions can commence, and so this
 4    is an issue of urgency.
 5              Thank you, Your Honor.
 6              THE COURT:  How many problematic text
 7    messages have you identified?
 8              MS. SULKOWSKI:  Certainly hundreds.
 9              THE COURT:  Hundreds?
10              MS. SULKOWSKI:  Yeah.
11              THE COURT:  And from a particular time
12    period or, kind of, across the board?
13              MS. SULKOWSKI:  It's across the board,
14    Your Honor.  There are very few embedded images or
15    documents that are accessible within the sequential
16    production, if any, frankly.
17              THE COURT:  And from what Ms. Boylan has
18    produced to date, have you been able to identify,
19    you know, for example, a message that Ms. Bennett
20    sent to Ms. Boylan that appeared to have
21    attachments, and the copy in Ms. Bennett's
22    production doesn't have the attachments, but in
23    Ms. Boylan's production it does?
24              MS. SULKOWSKI:  We haven't had the chance
25    to cross-reference this production that we just
```

```
1   received, so I will say I don't know.  But given the
2   volume that Ms. Boylan has produced to date, it's
3   exceedingly unlikely that that's going to solve the
4   problem.
5            THE COURT:  Okay.  Thank you.
6            Ms. Green, you or one of your colleagues
7   want to respond on the phone?
8            MS. GREEN:  Yes.  Thank you, Your Honor.
9   This is Rachel Green.
10           THE COURT:  Yep.
11           MS. GREEN:  A number of issues to respond
12  to, but just to try to keep it as brief as possible,
13  this issue about iMazing and e-discovery, defendants
14  are raising that for the first time today.  We did
15  not know until this moment that they had an issue
16  with our use of iMazing, and they have had at least
17  some of plaintiff's text messages with iMazing
18  located on the documents since December 2023.  So
19  this is news to us.  We do not believe that this is
20  a ripe issue for the Court's attention today.
21           As far as the other issues that were raised
22  in the filing from defendants on phone extraction,
23  we did use iMazing to download the phone.  As we
24  have repeated across multiple meet and confers and
25  e-mails, the information that we have provided to
```

1    them, the metadata that we have, is the information

2    that we also have available to us.

3         To the extent that families are not linked

4    or attachments are not included, we do not have

5    them.  I do not know enough about technology to be

6    able to explain why we do not have them, but I can

7    represent that if an attachment is not included or

8    if metadata is not included, it is because it is not

9    available to us.  And I want to note, if a

10    responsive attachment -- obviously, if the

11    attachment is not responsive, we would not have

12    provided it.

13         But we have repeatedly told defendants

14    this, and it's my understanding that their inclusion

15    of this complaint in their letter to the Court is --

16    and I understand their perspective, that they are

17    frustrated with the answer, which is that there is

18    not anything else to provide.

19         And also, I want to note, if we are going

20    to be keeping a thorough record today, just that

21    with respect to several of the key conversations in

22    particular, plaintiff had collected screenshots of

23    those conversations in the course of gathering

24    documents responsive to the NY AG production years

25    ago.  And in the course of responding to the much

1    broader requests from all four defendants in this

2    case, obviously, plaintiff conducted a second

3    thorough review of all documents and texts in her

4    custody, possession or control.  And in doing so, we

5    have produced multiple formats of some of those same

6    conversations: PDFs, Excel spreadsheets, text

7    formats.  And some of those have timestamps.  Some

8    of them do not.

9            Again, I am not a tech person able to

10   explain to you why some are and are not available,

11   but we have provided what is available to us.

12           THE COURT:  Does Ms. Bennett still have the

13   phone that she used during 2019, 2020?

14           MS. GREEN:  I believe so.  She's had two

15   phones, and we have imaged both of them on iMazing,

16   and I believe she has both still, yes.

17           THE COURT:  Okay.  And the image that you

18   have on iMazing, that's an image of the whole phone,

19   or only portions?

20           MS. GREEN:  Yes.  That is what I have been

21   informed, yes.

22           THE COURT:  Okay.  All right.

23           Well, I don't know that I have a full

24   record to rule on.  It sounds like the defendants

25   are asking me to order the imaging of Ms. Bennett's

```
 1    phone.  I would like additional submissions from the
 2    parties on this issue.
 3              So we'll talk about scheduling in a minute,
 4    but we'll set up a schedule for the defendants to
 5    submit a letter laying out why I should order the
 6    imaging of Ms. Bennett's phone and a chance for
 7    Ms. Bennett to respond.  And then we'll rule on it
 8    at the next conference, which is going to be pretty
 9    soon, given -- yes?
10              MS. SULKOWSKI:  Your Honor, it's Sarah
11    Sulkowski.  If I might just correct the record
12    briefly --
13              THE COURT:  Yes, go ahead.
14              MS. SULKOWSKI:  I corresponded with
15    Ms. Green on March 15th several times about iMazing
16    specifically, and so the representation that this is
17    a new issue is simply false.  Thank you.
18              THE COURT:  I understand, but it's pretty
19    new to me because you told me in your letter that
20    you were still meeting and conferring, which is
21    fine --
22              MS. SULKOWSKI:  Understood.
23              THE COURT:  -- but I am not going to order
24    the imaging of Ms. Bennett's phone without a more
25    fulsome record than I have before me now.
```

```
 1              MS. SULKOWSKI:  Certainly.  I was not
 2   suggesting it's not new to Your Honor.  Thank you.
 3              THE COURT:  Yeah.  Yeah.  Okay.
 4              MS. GREEN:  And, Your Honor, this --
 5              THE COURT:  Yes?
 6              MS. GREEN:  This is Rachel Green.  I just
 7   had one other point, if I may raise --
 8              THE COURT:  Yes.
 9              MS. GREEN:  Back with respect to the
10   redactions and the removal of redactions, I
11   understand the Court's position on this, and I just
12   want the record to be clear that your position on
13   relevancy and privacy redactions applies to the
14   Cuomo and other defendants' productions as well.
15              And I want to note again that they did this
16   repeatedly, and they are thousands of pages, in
17   particular, of Defendant Cuomo's production that
18   they have produced with redactions based on
19   relevancy, particularly from his BlackBerry.  I'm
20   talking about entire pages where it is entirely
21   redacted and on presumably no basis.  And we are --
22   I know -- I can sense Rita is about to speak, and
23   I -- we are meeting and conferring --
24              MS. GLAVIN:  No.  No, Rachel.  No.  No,
25   Ms. Green.
```

AMM TRANSCRIPTION SERVICE - 631.334.1445

1              THE COURT:  No.  If you go back and look at
2      the transcript, I said that the ruling applied to
3      all parties, so ...
4              MS. GREEN:  Thank you, Your Honor.  That is
5      all.
6              MS. GLAVIN:  Yep.  Yes, Your Honor.
7              And just so that I don't jump out of my
8      seat, but I, kind of, am -- the redactions that were
9      done to Governor Cuomo's BlackBerry, we understood
10     they were done due to responsiveness, not relevancy
11     and privacy.  And I have represented repeatedly to
12     plaintiff's counsel, because the exercise, at least
13     with respect to one of the BlackBerrys, was done
14     three years ago with another law firm, we're going
15     to go back and rereview those, and they're going to
16     get what they're entitled to.  And I agree that
17     relevancy redactions should not be happening, and
18     we're going to turn it over if there's any redaction
19     that's inappropriate.
20             THE COURT:  Great.  Thank you.  All right.
21             Any other issues in the letters that the
22     parties submitted in advance of this conference that
23     I've overlooked that we need to discuss today before
24     we turn to schedules?
25             MS. TRZASKOMA:  It's Theresa Trzaskoma.

1            Just briefly, not raised in our letter, but
2    raised in connection with the de-designation of the
3    videos referenced in the letter that we submitted at
4    ECF 173, as Your Honor will recall, we filed a
5    redacted version of that letter on the public docket
6    because it contained certain content from those
7    videos that had been designated as confidential, so
8    I just want to confirm that we are clear to file an
9    unredacted version of that letter on the public
10   docket.
11            THE COURT:  That was ECF 173, you said?
12            MS. TRZASKOMA:  Correct.  I think it -- so
13   the original filing was under seal -- you know,
14   partially under seal.
15            THE COURT:  All right.
16            Ms. Green, any objection?
17            MS. GREEN:  I don't have it in front of me,
18   and plaintiff does not object to the extent that
19   there is no mention of the ten seconds that both
20   parties agree should remain confidential, and to the
21   extent that it does not mention, quote, or otherwise
22   provide access to those ten seconds, then plaintiff
23   does not object.
24            THE COURT:  Do you know, Ms. Trzaskoma, if
25   it --

```
 1              MS. TRZASKOMA:  Yeah.  The letter does not.
 2    And we have agreed that those ten seconds of a
 3    single video would remain redacted.
 4              THE COURT:  Okay.  But does the letter
 5    reference those ten seconds or not?
 6              MS. TRZASKOMA:  No.  No.
 7              THE COURT:  Okay.  All right.  Then the
 8    unredacted version of ECF number 173 can be filed.
 9    Thank you.
10              Anything else before we turn to schedules?
11              All right.  Just before we actually look at
12    dates, I want to understand -- at a minimum, I'm
13    going to need to decide whether to order the imaging
14    of Ms. Bennett's phone.
15              Ms. Glavin, do you anticipate that
16    there's -- you made several references to in-camera
17    documents you were going to want me to review in
18    camera.  Do you know yet specifically those issues,
19    or is that an ongoing, evolving subject?
20              MS. GLAVIN:  If plaintiff's counsel is
21    persisting in their position that all of the pages
22    they removed from text exchanges are not responsive,
23    then yes.  And, I mean, off the top of my head, I've
24    now seen three or four of them, but we're still
25    making our way through the 12,000 pages that came
```

AMM TRANSCRIPTION SERVICE - 631.334.1445

```
1    through Monday, so it will take a bit.
2            But just as a practical matter, I'm sure we
3    could tee up, you know, a dozen right now.  And it
4    may be that if we tee that up and the Court looks at
5    this in camera, that might influence plaintiff's
6    thinking with respect to other omitted pages.
7            THE COURT:  All right.  So there is still
8    an issue with nonresponsive portions of
9    Ms. Bennett's production being withheld.
10           MS. GLAVIN:  Yes, Your Honor.
11           THE COURT:  Okay.  And then the issue with
12   the imaging of her phone.
13           Anything else in camera?  Any other
14   in-camera topics at this point?  Hoping no.
15           Okay.  So the next date that I could have a
16   conference with you is the morning of April 2nd.
17   That doesn't give you a whole lot of time to get me
18   letters and anything I would need to review in
19   camera, but I can give you that if you want and you
20   can do your best to give me what you need.  Or we
21   can look at the week after, the week of April 8th.
22   I do have some openings then instead.
23           MR. MORVILLO:  Your Honor, this is Greg
24   Morvillo.
25           THE COURT:  Yes?
```

```
 1              MR. MORVILLO:  I have a question.

 2              Will the April 2nd -- if that's going to be

 3    the date, will we be discussing the deposition

 4    schedule at that point?  Because that's after

 5    Ms. Bennett's deposition that has already been

 6    scheduled and about nine days before Ms. DeRosa is

 7    scheduled to go, or are we having a different

 8    conference for that?

 9              THE COURT:  No.  If you guys haven't worked

10    out the issue by then, then I would want to talk

11    about it on April 2nd, but it sounds like the

12    defendants just sent their letter last night.  So it

13    sounds like you guys have some work to do about

14    talking about schedules before I need to get

15    involved.

16              MR. MORVILLO:  Okay.  We have had a meet

17    and confer about this issue, and we have been told

18    in no uncertain terms then in an e-mail we received

19    this morning from Ms. Schnell, that plaintiffs will

20    not consent to moving the defendants' depositions.

21    And I think someone said it on this call today, so I

22    do think that needs to be teed up as fast as

23    possible.

24              THE COURT:  Well, as fast as possible that

25    I can give you is April 2nd, so ...
```

```
 1          MR. MORVILLO:  Well, if that's the date,
 2    then that's the date.  I just wanted to make sure
 3    that was on the schedule and that we were going to
 4    be dealing with that issue at that time.  Thank you.
 5          THE COURT:  If you guys haven't -- I mean,
 6    I would strongly encourage you -- there are a lot of
 7    document issues, you know, more on the defendants'
 8    side than the plaintiff's side, but there's some
 9    issues on both sides.  I would strongly encourage
10    you to use the time next week to see if you can come
11    to an agreement on rolling the schedule forward.
12    But if you can't, then we'll discuss it on April
13    2nd.  And if I have to micromanage your calendars, I
14    will, but you won't like it.  That's all I can say.
15          MR. MORVILLO:  Thank you, Your Honor.  I
16    appreciate that.
17          THE COURT:  All right.  So --
18          MS. GREEN:  Your --
19          THE COURT:  Go ahead.
20          MS. GREEN:  Your Honor, Rachel Green.
21          THE COURT:  Yes?
22          MS. GREEN:  Just briefly, with respect to
23    the in-camera documents portion of defendants'
24    disputes, I know a few moments ago, defendants'
25    counsel said, you know, that there are a number of
```

```
 1    issues with regards to the omission of certain
 2    pages.  They identified a couple examples for us, I
 3    believe, earlier this week.  We're looking at them.
 4    And I just want to present to Your Honor that we are
 5    willing to meet and confer with defendants about
 6    this before, again, raising those specific examples
 7    to Your Honor.  In-camera review may not be
 8    required.  We're happy to speak with defendants
 9    about the examples they've provided.
10            THE COURT:  Great.  I would love not to
11    have to review anything in camera at this point in
12    time.  I'm sure I will at some point, but if I don't
13    have to, then that would be great.
14            So, as I see it, the agenda for April 2nd
15    would be to the extent that the parties haven't come
16    to an agreement on deposition scheduling, the
17    question of the imaging of Ms. Bennett's phone and
18    any withholding or redactions for nonresponsiveness.
19    Those seem to me to be the three issues that we
20    would be checking in about.
21            Are there any other topics at this point
22    that the parties foresee, as we sit here, we would
23    need to address?
24            Okay.  Great.
25            So could you then get me letters by 6 p.m.
```

```
 1    on March 28th in anticipation of a conference at --
 2    well, assuming it works for everybody, we could do
 3    10 a.m. on April 2nd.
 4            Ms. Schnell or Ms. Green, you or any of
 5    your colleagues have a conflict on April 2nd at 10
 6    a.m.?
 7            MS. SCHNELL:  That's fine.  Fine with me,
 8    Your Honor.
 9            THE COURT:  Okay.
10            Ms. Glavin?
11            MS. GLAVIN:  That's fine, Your Honor, with
12    respect to my team.
13            THE COURT:  Okay.
14            Mr. Morvillo?
15            MR. MORVILLO:  April 2nd at 10 a.m.,
16    Your Honor?  That's fine.
17            THE COURT:  Yeah.  By phone.
18            Mr. Delikat?
19            MR. DELIKAT:  That's fine, Your Honor.
20    Thank you.
21            THE COURT:  All right.
22            Mr. Hamid?
23            MS. ROSENBERG:  This is Leah Rosenberg at
24    Debevoise, Your Honor.  That's fine for us as well.
25            THE COURT:  Okay.  Great.
```

```
 1              All right.  Very good.  So we'll look for
 2    letters from you by March 28th at 6 p.m.  I will
 3    give you five pages since the issue with respect to
 4    the imaging of Ms. Bennett's phone may take a little
 5    bit more space, as well as any issues about
 6    deposition scheduling and redaction for
 7    nonresponsiveness.
 8              As I see it, those are the three issues,
 9    but if there are others that are ripe by that point
10    in time that you need to raise, that's why I'm
11    giving you five pages.
12              Ms. Schnell or Ms. Green, anybody else on
13    Ms. Bennett's side, anything that you would like to
14    raise today?
15              MS. GREEN:  Nothing further, Your Honor.
16              THE COURT:  Great.
17              On the defendants' side, anything else?
18              MS. GLAVIN:  No, Your Honor.
19              THE COURT:  All right.  Great.
20              Thank you very much.  We will ask you to
21    order a transcript of today's proceedings as well.
22    I don't think I need it before we talk again on
23    April 2nd, but I appreciate all the time.  And have
24    a good weekend, everyone.  Thank you.
25                              0o0
```

1

2                    C E R T I F I C A T E

3

4        I, Adrienne M. Mignano, certify that the

5    foregoing transcript of proceedings in the case of

6    Bennett v. Cuomo; Docket #22CV7846 was prepared using

7    digital transcription software and is a true and

8    accurate record of the proceedings.

9

10

11    Signature  _Adrienne M. Mignano_____

12                 ADRIENNE M. MIGNANO, RPR

13

14    Date:      March 26, 2024

15

16

17

18

19

20

21

22

23

24

25