**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

CHARLOTTE BENNETT,

                                    Plaintiff,

            v.

ANDREW M. CUOMO,
MELISSA DEROSA,
JILL DESROSIERS, and
JUDITH MOGUL,

                                    Defendants.

---

No. 22 Civ. 7846 (VSB) (SLC)

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF FORMER GOVERNOR CUOMO'S MOTION TO COMPEL THE OFFICE OF THE NEW YORK STATE ATTORNEY GENERAL'S COMPLIANCE WITH SUBPOENA AND IN OPPOSITION TO ITS CROSS-MOTION TO QUASH

Theresa Trzaskoma
Allegra Noonan
Brachah Goykadosh
SHER TREMONTE LLP
90 Broad Street, 23rd Floor
New York, New York 10004
Tel.: (212) 202-2600
Fax: (212) 202-4156
ttrzaskoma@shertremonte.com

Rita M. Glavin
Katherine E. Petrino
GLAVIN PLLC
156 West 56th Street, Ste. 2004
New York, NY 10019
Tel: (646) 693-5505
rglavin@glavinpllc.com

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ............................................................................................................................ 3

I.    THE OAG'S SOVEREIGN IMMUNITY ARGUMENTS
      ARE MERITLESS ................................................................................................. 3

      A.    Federal Discovery Subpoenas Do Not Trigger State
            Sovereign Immunity .................................................................... 3

      B.    The OAG Waived Sovereign Immunity by Producing
            Similar Materials to Other Various Entities .............................. 8

II.   THE OAG FAILS TO CONTEST THAT THE REQUESTED
      MATERIALS ARE RELEVANT AND PROPORTIONAL ............................... 12

      A.    The OAG's Relevance Arguments Are Meritless ................... 12

      B.    The OAG's Burden Arguments Are Meritless ........................ 15

III.  THE OAG FAILS TO ESTABLISH THAT THE
      REQUESTED MATERIALS ARE PRIVILEGED ............................................ 17

      A.    The OAG Fails to Establish That the Attorney-Client
            Privilege or the Work-Product Doctrine Apply ...................... 17

      B.    The OAG Fails to Establish That the Law
            Enforcement Privilege Applies ............................................... 22

CONCLUSION ....................................................................................................................... 24

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Agran v. City of New York*,
No. 95 CIV. 2170 (JFK), 1996 WL 263023 (S.D.N.Y. May 16, 1996) .......................... 16

*Alden v. Maine*,
527 U.S. 706 (1999)............................................................................................................. 8

*Allen v. Woodford*,
543 F. Supp. 2d 1138 (E.D. Cal. 2008).............................................................................. 1

*Allied Irish Banks v. Bank of N.A.*,
240 F.R.D. 96 (S.D.N.Y. 2007) ......................................................................................... 21

*Andrews v. Cruz*,
No. 04 Civ. 0566 PAC RLE, 2006 WL 1984650
(S.D.N.Y. July 14, 2006) ...................................................................................................... 7

*Boron Oil Co. v. Downie*,
873 F.2d 67 (4th Cir. 1989) ............................................................................................... 4

*Brook v. Simon & Partners, LLP*,
No. 17 Civ. 6435 (GBD) (SLC), 2021 WL 5919207
(S.D.N.Y. Dec. 15, 2021)............................................................................................. 19, 20

*Charleston Waterkeeper v. Frontier Logistics, L.P.*,
488 F. Supp. 3d 240 (D.S.C. 2020).............................................................................. 1, 5

*Del Campo v. Kennedy*,
517 F.3d 1070 (9th Cir. 2008) .......................................................................................... 6

*Dorsett v. Cnty. of Nassau*,
762 F. Supp. 2d 500 (E.D.N.Y. 2011) ........................................................................... 23

*Exxon Shipping Co. v. U.S. Dep't of Interior*,
34 F.3d 774 (9th Cir. 1994) ............................................................................................... 4

*Flores v. Stanford*,
No. 18 Civ. 02468 (VB)(JCM), 2022 WL 354719 (S.D.N.Y. Feb. 7, 2022) .................. 13

*Felix v. Cnty. of Nassau*,
344 F.R.D. 441 (E.D.N.Y. 2023) ...................................................................................... 1

*Floyd v. City of New York*,
739 F. Supp. 2d 376 (S.D.N.Y. 2010)...................................................................... 22, 23

*Franchise Tax Bd. of Calif. v. Hyatt*,
    587 U.S. 230 (2019) ............................................................................................ 9

*Gucci Am., Inc. v. Guess?, Inc.*,
    271 F.R.D. 58 (S.D.N.Y. 2010) ......................................................................... 20

*Gunter v. Atl. Coast Line R.R.*,
    200 U.S. 273 (1906) ............................................................................................ 9

*Henry v. N.J. Transit Corp.*,
    210 N.E.3d 451 (N.Y. 2023) .............................................................................. 9

*Hernandez v. Off. of the Comm'r of Baseball*,
    331 F.R.D. 474 (S.D.N.Y. 2019) ....................................................................... 17

*In re Aenergy, S.A.*,
    451 F. Supp. 3d 319 (S.D.N.Y. 2020) ............................................................... 18

*In re Charter Oak Assocs.*,
    361 F.3d 760 (2d Cir. 2004) ............................................................................... 9

*In re Initial Pub. Offering Secs. Litig.*,
    220 F.R.D. 30 (S.D.N.Y. 2003) ......................................................................... 20

*In re Kidder Peabody Secs. Litig.*,
    168 F.R.D. 459 (S.D.N.Y. 1996) ................................................................. 21, 22

*In re Mo. Dep't of Nat. Res.*,
    105 F.3d 434 (8th Cir. 1997) .............................................................................. 1

*In re Terrorist Attacks on Sept. 11, 2001*,
    523 F. Supp. 3d 478 (S.D.N.Y. 2021) ............................................................... 4

*In re The City of New York*,
    607 F.3d 923 (2d Cir. 2010) ............................................................................... 23

*Jackson v. AFSCME Local 196*,
    Civ. No. 3:07CV0471 (JCH), 2008 WL 1848900
    (D. Conn. Apr. 25, 2008) ................................................................................... 5

*Kelly v. City of New York*,
    No. 01 Civ. 8906 (AGSDF), 2003 WL 548400
    (S.D.N.Y. Feb. 24, 2003) ................................................................................... 23

*Knox v. U.S. Dep't of the Interior*,
    No. 4:09-CV-162-BLW, 2012 WL 465585 (D. Idaho Feb. 13, 2012) ............. 10

*Lynch v. City of New York*,
  No. 17-CV-7577 (JGK) (BCM), 2022 WL 19836912
  (S.D.N.Y. June 16, 2022) ................................................................................. 7

*McGehee v. Neb. Dep't of Corr. Servs.*,
  987 F.3d 785 (8th Cir. 2021) ............................................................................ 1

*McGowan v. JPMorgan Chase Bank, N.A.*,
  No. 18 Civ. 8680 (PAC) (GWG), 2020 WL 1974109
  (S.D.N.Y. Apr. 4, 2020) .................................................................................. 19

*Mich. Corr. Org. v. Mich. Dep't of Corr.*,
  774 F.3d 895 (6th Cir. 2014) ............................................................................ 5

*Morrison v. Budget Rent A Car Sys., Inc.*,
  230 A.D.2d 253 (N.Y. App. Div. 1997) ........................................................... 9

*N.Y. Times Co. v. U.S. Dep't of Just.*,
  939 F.3d 479 (2d Cir. 2019) ............................................................................ 21

*NGV Gaming, Ltd. v. Upstream Point Molate, LLC*,
  Nos. C-04-3955 SC (JCS), C-05-1605 SC, 2009 WL 4258550
  (N.D. Cal. Nov. 24, 2009) ............................................................................... 12

*Ott v. City of Milwaukee*,
  682 F.3d 552 (7th Cir, 2012) ............................................................................ 1

*Pennhurst State Sch. & Hosp. v. Halderman*,
  465 U.S. 89 (1984) ........................................................................................ 5, 6

*Pierce v. Demmon*,
  No. 9:14-CV-1028 (GTS/DEP), 2015 WL 7077227
  (N.D.N.Y. Nov. 12, 2015) ................................................................................. 7

*Polk's Lessee v. Windel*,
  19 Fed. Cas. 940 (C.C.D. Tenn. 1817) ............................................................. 8

*Quern v. Jordan*,
  440 U.S. 332 (1979) .......................................................................................... 5

*Roache v. Fisher*,
  No. 9:18-CV-825 (GLS/ATB), 2021 WL 2366981 (N.D.N.Y. Feb. 8, 2021) ................... 7

*Russell v. Harris Cnty., Texas*,
  CIVIL ACTION No. H-19-226, 2023 WL 5658936 (S.D. Tex. Aug. 31, 2023) .............. 6

*Russell v. Jones*,
  49 F.4th 507 (5th Cir. 2022) ........................................................................ 1, 6

iv

*Russell v. Scott*,
    Civil Action No. 5:20-cv-184-gwc-kjd, 2022 WL 3084339
    (D. Vt. Aug. 3, 2022) ................................................................................. 7

*Shannon v. Liberty Mut. Grp. Inc.*,
    No. 3:20-CV-1192 (RNC), 2021 WL 2644742 (D. Conn. June 28, 2021) ...................... 13

*Sinni v. Forest Hills Hosp.*,
    No. 09-cv-4572, 2011 WL 1004817 (E.D.N.Y. Mar. 18, 2011) ....................................... 13

*U.S. EPA v. Gen. Elec. Co.*,
    212 F.3d 689 (2d Cir. 2000) ........................................................................................ 4

*U.S. EPA v. Gen. Elec. Co.*,
    197 F.3d 592 (2d Cir. 1999) ......................................................................... 4, 5, 7, 11, 12

*United States v. James*,
    980 F.2d 1314 (9th Cir. 1992) .............................................................................. 10, 11

*United States v. Juv. Male 1*,
    431 F. Supp. 2d 1012 (D. Ariz. 2006) ............................................................................ 5

*United States v. Sampson*,
    898 F.3d 270 (2d Cir. 2018) ...................................................................................... 16

*United States v. Velarde*,
    40 F. Supp. 2d 1314 (D.N.M. 1999) ............................................................................ 11

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981) ................................................................................................ 18

*Virginia Dep't of Corr. v. Jordan*,
    921 F.3d 180 (4th Cir. 2019) ...................................................................................... 1

*Watts v. SEC*,
    482 F.3d 501 (D.C. Cir. 2007) .................................................................................... 4

*Winn v. Patterson*,
    34 U.S. 663 (1835) .................................................................................................. 8

**Statutes**

28 U.S.C. § 2072(a) .......................................................................................................... 5

42 U.S.C. § 1983 ....................................................................................................... 3, 6, 7

N.Y. Exec. Law § 63(8) ............................................................................................ 19, 20, 23

**Rules**

Fed. R. Civ. P. 45 ........................................................................................................... 4

**Other Authorities**

*The Eleventh Amendment and Federal Discovery: A New Threat to*
    *Civil Rights Litigation*,
    62 Fla. L. Rev. 203 (Jan. 2010) ............................................................................ 7

## PRELIMINARY STATEMENT

It should be beyond dispute that the materials sought in Governor Cuomo's OAG Subpoena are relevant and that production would be virtually burdenless. Yet the OAG persists in refusing to disclose these materials, trotting out the same arguments it has been using for years to justify its outrageous noncompliance with lawful discovery subpoenas. Whatever merit the OAG's relevance and burden arguments may have had in connection with Governor Cuomo's much broader July 2022 subpoena to the OAG in the Trooper 1 Action, those arguments are patently frivolous in this case, where the Subpoena seeks a very narrow set of witness statements that are not privileged. What is more, the OAG continues to contend that it is beyond any federal court's jurisdiction to enforce a routine discovery subpoena, a position that embraces the sort of state sovereign immunity claim that officials from some states have asserted (and apparently continue to assert) in response to federal lawsuits seeking to enforce federal civil rights laws.[1]

Each of the OAG's arguments in opposition to complying with the Subpoena is unfounded. *First*, the OAG does not have sovereign immunity against federal discovery subpoenas. As established in our opening brief, numerous cases across many jurisdictions hold that federal discovery subpoenas may proceed against states because they do not constitute "suits" for purposes of state sovereign immunity—or, in the alternative, because enforcing compliance with these subpoenas falls under the *Ex parte Young* exception. Despite the OAG's insistence otherwise, Second Circuit precedent does not bind this Court to diverge from countrywide precedent, in part

---

[1] *See, e.g. Felix v. Cnty. of Nassau*, 344 F.R.D. 441, 442 (E.D.N.Y. 2023) (New York); *Russell v. Jones*, 49 F.4th 507, 510 (5th Cir. 2022) (Texas); *McGehee v. Neb. Dep't of Corr. Servs.*, 987 F.3d 785, 786-787 (8th Cir. 2021) (Nebraska); *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 184 (4th Cir. 2019) (Virginia); *Ott v. City of Milwaukee*, 682 F.3d 552, 553, 555 (7th Cir, 2012) (Wisconsin); *Allen v. Woodford*, 543 F. Supp. 2d 1138, 1140-1141 (E.D. Cal. 2008) (California); *see also Charleston Waterkeeper v. Frontier Logistics, L.P.*, 488 F. Supp. 3d 240, 251 (D.S.C. 2020) (South Carolina invoking sovereign immunity in environmental protection case); *In re Mo. Dep't of Nat. Res.*, 105 F.3d 434, 435 (8th Cir. 1997) (Missouri invoking sovereign immunity in environmental protection case).

because the Second Circuit has analyzed only <u>federal</u> sovereign immunity vis-à-vis subpoenas issued in <u>state</u> court, which presents materially different considerations from <u>state</u> sovereign immunity vis-à-vis subpoenas issued in <u>federal</u> court. The OAG's arguments against its own waiver of its purported sovereign immunity similarly fold under the weight of pertinent case law.

***Second***, disclosure of the Requested Materials is directly relevant and proportional to the needs of the case. Governor Cuomo seeks a limited set of witness statements concerning Bennett's allegations and the work environment in the Executive Chamber (which she claims was hostile); indeed, we have every reason to believe the Requested Materials will cut to the heart of Plaintiff's harassment and retaliation claims. Moreover, these materials cannot be obtained from the witnesses themselves: even setting aside the inefficiencies and significant drain on resources that would arise from taking the deposition of each witness who worked closely with Bennett or in the Executive Chamber, witnesses may not recall (or may need to be confronted with) the information they provided three years ago. The OAG also falters on its burden argument—the declarations the OAG itself submitted belie any contention that the OAG would need to conduct any (much less any extensive) further review and redaction to prepare the Requested Materials for production. Rather, the declarants admit that the materials have already been reviewed and redacted for any conceivable attorney work product.

***Third***, the OAG does not come close to meeting its burden on any of the privileges it asserts. The OAG fails to establish that the special deputies from Cleary and Vladeck were retained for the purpose of giving legal advice rather than for the purpose of conducting an independent investigation without substantive influence from the OAG—and, in any event, the OAG also fails to establish that the Requested Materials are communications made for the purposes of obtaining or providing such legal advice. The Subpoena seeks witness statements, not legal memos.

Moreover, the OAG offers no support for its contention that the Requested Materials constitute work product and cannot explain how the already-conducted review and redaction for any work product does not suffice in the civil litigation context. The OAG has also waived any privilege it has, and it fails to distinguish the cases saying so. The OAG's assertion of law-enforcement and public-interest privileges fare no better, especially considering that the OAG has failed to explain why the operative Protective Order cannot allay any privacy or sensitivity concerns involving the witnesses who gave statements.

In urging these arguments, the OAG asks this Court to issue holdings that would, among other things: (1) prevent civil rights plaintiffs from accessing crucial evidence in cases under 42 U.S.C. § 1983 and similar laws; (2) prohibit parties from obtaining any circumstantial evidence in employment discrimination cases; and (3) invent a distinction between civil and criminal discovery governing the work-product doctrine, whereunder the new <u>civil</u> standard would be the more exacting one. These positions, which, to our knowledge, the OAG had never taken in any case prior to the Trooper 1 Action, demonstrate the extraordinary lengths that the OAG is willing to go to avoid disclosure of its investigative files.

Governor Cuomo and other individuals have been sued by Plaintiff and have a right, just like any other defendant, to obtain broad discovery under Rule 26. The OAG is not above or beyond the law and should be required to comply with the Subpoena.

## **ARGUMENT**

## I.   **THE OAG'S SOVEREIGN IMMUNITY ARGUMENTS ARE MERITLESS**

### **A. Federal Discovery Subpoenas Do Not Trigger State Sovereign Immunity**

The ample case law cited in our opening brief conclusively shows that state sovereign immunity does not bar enforcement of federal discovery subpoenas. The OAG's three arguments in opposition are without merit.

3

*First*, Second Circuit precedent does not require holding that the OAG Subpoena is a "suit" for purposes of state sovereign immunity. The OAG argues that *U.S. EPA v. General Electric Co.*, 197 F.3d 592 (2d Cir. 1999) requires the conclusion that a federal discovery subpoena served on a state agency is a judicial proceeding triggering state sovereign immunity. ECF No. 223 at 7-8. But *EPA* concerns federal sovereign immunity, not state sovereign immunity. *EPA*, 197 F.3d at 593. Moreover, that case did not involve a federal-court subpoena but instead a state-court subpoena on a federal agency. *Id.* at 593 (subpoena originated from action in New Jersey state court). In general, "state court subpoenas present entirely different issues" than federal-court subpoenas in part "because of the Supremacy Clause." *Watts v. SEC*, 482 F.3d 501, 508 n.1 (D.C. Cir. 2007) (Kavanaugh, J.); *accord Boron Oil Co. v. Downie*, 873 F.2d 67, 71 (4th Cir. 1989) ("The action of a state court to compel" discovery against a federal agency "plainly violates both the spirit and the letter of the Supremacy Clause."); *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 778 (9th Cir. 1994) ("The limitations on a state court's subpoena and contempt powers stem from the sovereign immunity of the United States and from the Supremacy Clause. Such limitations do not apply when a *federal* court exercises its subpoena power against federal officials."). Because federal-court subpoenas against federal agencies present no Supremacy Clause issues, the Second Circuit has explicitly left open the question whether such subpoenas should be governed simply by FRCP 45. *See U.S. EPA v. Gen. Elec. Co.*, 212 F.3d 689, 690 (2d Cir. 2000). Other Circuit courts—and even a District Court in this Circuit—have so held. *E.g. Watts*, 482 F.3d at 508 n.1; *Exxon Shipping Co.*, 34 F.3d at 779-780; *In re Terrorist Attacks on Sept. 11, 2001*, 523 F. Supp. 3d 478, 489 (S.D.N.Y. 2021). Consequently, there is no binding precedent concerning <u>federal</u> sovereign immunity vis-à-vis federal-court subpoenas, much less <u>state</u> sovereign immunity.

Consistent with these principles, at least one court in this Circuit has held that *EPA* does

4

not apply to federal discovery subpoenas against state entities. *Jackson v. AFSCME Local 196*, Civ. No. 3:07CV0471 (JCH), 2008 WL 1848900, at *2-3 (D. Conn. Apr. 25, 2008) ("[T]he Eleventh Amendment does not apply to the subpoenas at issue."). Courts have made a similar distinction in other Circuits. *See, e.g.*, *Charleston Waterkeeper v. Frontier Logistics, L.P.*, 488 F. Supp. 3d 240, 251 (D.S.C. 2020); *United States v. Juv. Male 1*, 431 F. Supp. 2d 1012, 1016 (D. Ariz. 2006) ("It would be strange indeed if a federal subpoena were operative against the greater sovereign and its officers but not the lesser."). There is no reason for this Court to depart from these compelling precedents.

**Second**, even if *EPA* bound the Court to hold that the OAG Subpoena is a suit for purposes of state sovereign immunity (which it does not), the *Ex parte Young* exception would still apply. Because that exception flows from the Fourteenth Amendment, it does not apply to federal sovereign immunity but instead applies to state sovereign immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 105 (1984). The OAG contends that *Ex parte Young* is inapplicable because the OAG is not engaging in an ongoing violation of federal law by refusing to comply with the Subpoena. ECF No. 223 at 10-11 & n.5. But *Ex parte Young* certainly applies to ongoing noncompliance with the federal rules. The power of the judiciary to set and enforce such rules—including federal discovery rules—stems from the Rules Enabling Act. 28 U.S.C. § 2072(a). Under *Ex parte Young*, courts can order state officials to cease ongoing noncompliance with procedural rules because they constitute ongoing violations of the Rules Enabling Act. *See Mich. Corr. Org. v. Mich. Dep't of Corr.*, 774 F.3d 895, 906 (6th Cir. 2014) (citing *Quern v. Jordan*, 440 U.S. 332 (1979)). Thus, courts have held, some explicitly under *Ex parte Young*, that an order enforcing compliance with a federal discovery subpoena does not run afoul of sovereign

immunity. *See* ECF No. 200 at 9-11; ECF No. 208 at 4 & n.4.[2]

The Court should not cast this thorough precedent aside, as the OAG urges. ECF No. 223 at 9-10. To do so would result in outcomes that forestall access to evidence and foreclose relief for civil rights plaintiffs, as in *Russell v. Jones*, 49 F.4th 507 (5th Cir. 2022), a Fifth Circuit case with startling policy implications on which the OAG continues to rely. *See* ECF No. 223 at 9. In *Russell*, the plaintiffs were incarcerated individuals who sued under § 1983 to enjoin enforcement of Harris County's allegedly unconstitutional felony-bail system. *Id.* at 510. Initially, the plaintiffs sued multiple defendants including county judges, but in a separate case decided after the plaintiffs initiated their lawsuit, the Fifth Circuit held that such judges could not be sued under § 1983, so the plaintiffs voluntarily dismissed those judges from the suit. *Id.* Thereafter, the plaintiffs served the judges with federal discovery subpoenas seeking materials related to the plaintiffs' civil rights claims. *Id.* at 511. But the Fifth Circuit used sovereign immunity to block that discovery. *See id.* at 512. This decision worked with the Fifth Circuit's related decisions in a companion case to effectively foreclose relief and force the district judge to dismiss the case as moot. *Russell v. Harris Cnty., Texas*, CIVIL ACTION No. H-19-226, 2023 WL 5658936, at *1 (S.D. Tex. Aug. 31, 2023).

Accordingly, the OAG's assurance that applying state sovereign immunity in this case would not meaningfully affect § 1983 litigation is entirely empty. ECF No. 223 at 11 & n.6. Were state sovereign immunity a bar on federal discovery subpoenas to states, civil rights plaintiffs, like those in *Russell*, would be denied evidence and, in turn, relief. A cursory review of modern § 1983 cases shows several actions where, had the OAG's theory applied, plaintiffs would have lost out

---

[2] To the extent the OAG is correct that *Ex parte Young* applies to "individuals" acting in their official capacity, the OAG effectively concedes that federal discovery subpoenas can proceed against the Firms, OAG custodians like an Assistant Attorney General, or deputized custodians. *See* ECF No. 223 at 10. With respect to the Firms, private entities may "act under color of state law" and thus be sued under § 1983. *Del Campo v. Kennedy*, 517 F.3d 1070, 1081 n.16 (9th Cir. 2008). Because these private firms may act in such an "official capacity," *Ex parte Young* may operate against them when they act in ongoing contravention of federal law. *See Pennhurst*, 465 U.S. 89, 104-105.

on evidence from state agencies through civil discovery. *See e.g. Russell v. Scott*, Civil Action No. 5:20-cv-184-gwc-kjd, 2022 WL 3084339, at *11 (D. Vt. Aug. 3, 2022) *Lynch v. City of New York*, No. 17-CV-7577 (JGK) (BCM), 2022 WL 19836912, at *1-2 (S.D.N.Y. June 16, 2022); *Roache v. Fisher*, No. 9:18-CV-825 (GLS/ATB), 2021 WL 2366981, at *6 (N.D.N.Y. Feb. 8, 2021), *report and recommendation adopted sub nom. Roache v. Connell*, No. 918CV825GLSATB, 2021 WL 2366981, at *6 (N.D.N.Y. Feb. 8, 2021); *Pierce v. Demmon*, No. 9:14-CV-1028 (GTS/DEP), 2015 WL 7077227, at *1-2 (N.D.N.Y. Nov. 12, 2015); *Andrews v. Cruz*, No. 04 Civ. 0566 PAC RLE, 2006 WL 1984650, at *1 (S.D.N.Y. July 14, 2006).[3] This Court should reject the OAG's calls for a restrictive application of the sovereign immunity doctrine that would permit the state and its employees to avoid accountability across many legal contexts and that would permit state officials to play politics with the disclosure of evidence relevant to federal lawsuits. *See* Jennifer Lynch, *The Eleventh Amendment and Federal Discovery: A New Threat to Civil Rights Litigation*, 62 Fla. L. Rev. 203, 255 (Jan. 2010) ("Finding that sovereign immunity does not apply to subpoenas would support . . . the rights of a § 1983 plaintiff because it would allow the plaintiff to obtain a remedy for constitutional violations by using the federal discovery rules to fully litigate her case against the state actor who she alleges deprived her of her constitutional rights.").

    ***Third***, the OAG is wrong that common-law state sovereign immunity applies here even if Eleventh Amendment state sovereign immunity does not. *See* ECF No. 223 at 10 n.4. Even if common-law immunity differs from Eleventh Amendment immunity in other contexts, courts

---

[3] The OAG's suggestion that parties turn to a state's FOIL procedures is downright disingenuous, since that process, too, is subject to political maneuvering. *See* ECF No. 223 at 11 n.6. Indeed, Governor Cuomo pursued information through the FOIL process in the Trooper 1 Action—at the OAG's behest—and has still been denied disclosure. Governor Cuomo is now engaged in an Article 78 proceeding against the OAG based on its failure to produce witness statements in response to that FOIL request. *See* Verified Pet., *Cuomo v. Off. of the N.Y. Att'y Gen.*, No. 150515/2024, Doc No. 1 (N.Y. Sup. Ct. Jan. 18, 2024); Mem. of Law in Opp'n to Resp't Mot. to Dismiss, *id.*, Doc No. 46 (N.Y. Sup. Ct. Mar. 27, 2024). Moreover, appeals of wrongful FOIL determinations take place in state court, which creates litigation inefficiencies in federal cases—a fate the Second Circuit sought to avoid with respect to federal sovereign immunity. *See EPA*, 197 F.3d at 599.

across jurisdictions are clear that federal discovery subpoenas can proceed against state entities under either doctrine. It is a familiar concept that "the development of the common law" is "guide[d]" by "legal precedent." *A Primer on the Civil-Law System*, Fed. Jud. Ctr., FJC-MISC-95-4 (1995). This Circuit is replete with recent precedent permitting federal discovery subpoenas on state entities. ECF No. 200 at 11 n.13; *supra* at 6-7. And a number of courts in other circuits have also, throughout recent decades, explicitly ruled that sovereign immunity is no bar to federal discovery subpoenas. ECF No. 200 at 9-11; ECF No. 208 at 3-4.

Moreover, cases decided soon after the ratification of the Eleventh Amendment also recognized that state sovereign immunity did not impede the use of federal discovery subpoenas. In several cases in the early 1800s, federal judges considered using subpoenas against state entities or officials, divulging a view that such subpoenas were appropriate "common practice" under both the Eleventh Amendment and any applicable common law. *See Winn v. Patterson*, 34 U.S. 663, 676-677 (1835); *Polk's Lessee v. Windel*, 19 Fed. Cas. 940, 941 (C.C.D. Tenn. 1817) *rev'd on other grounds sub nom. Polk's Lessee v. Wendell*, 18 U.S. 293 (1820). Indeed, when discussing common-law state sovereign immunity, the Supreme Court has described the "residuum of sovereignty" beyond the Eleventh Amendment as preventing states from being summoned "as defendants" to "answer the complaints of private persons." *Alden v. Maine*, 527 U.S. 706, 719 (1999). This precedent—both old and new—leads inexorably to the conclusion that, even under common law, state sovereign immunity is not a bar to federal discovery subpoenas.

### B. The OAG Waived Sovereign Immunity by Producing Similar Materials to Other Various Entities

The OAG offers four arguments that it has not waived sovereign immunity by providing materials like the Requested Materials to a different federal court, to a federal agency, and to counsel for Governor Cuomo in a related case. None of these arguments has merit.

8

*First*, the OAG contends that federal courts must analyze waiver of common-law state sovereign immunity (as opposed to Eleventh Amendment state sovereign immunity) under state law, and that, under New York law, state sovereign immunity is not waivable. ECF No. 223 at 12 & n.7. In support, the OAG relies on *Morrison v. Budget Rent A Car Sys., Inc.*, 230 A.D.2d 253, 261-262 (N.Y. App. Div. 1997), and cites to a certain federal case also relying on *Morrison*, which held that under New York's Civil Practice Law and Rules, claims of interstate sovereign immunity are characterized as claims for lack of subject-matter jurisdiction, which cannot be waived. But that aspect of *Morrison* was abrogated recently by *Henry v. New Jersey Transit Corporation*, 210 N.E.3d 451 (N.Y. 2023), where the Court of Appeals reasoned that "interstate sovereign immunity is waivable based on litigation conduct." *Id.* at 371. The Court of Appeals explained that sovereign immunity is rooted in concepts such as a court's power over a party, a state's amenability to suit, its consent to be sued, and haling a party into court, "all of which align closely with treatment of personal jurisdiction issues, not subject matter jurisdiction ones." *Id.* at 372 (citing *Franchise Tax Bd. of Calif. v. Hyatt*, 587 U.S. 230, 238-239 (2019)). These same concepts motivate waiver by litigation conduct in federal courts. *See In re Charter Oak Assocs.*, 361 F.3d 760, 767 (2d Cir. 2004) ("Where a State voluntarily becomes a party to a cause, and submits its rights for judicial determination, it will be bound thereby, and cannot escape the result of its own voluntary act . . . ." (cleaned up) (quoting *Gunter v. Atl. Coast Line R.R.*, 200 U.S. 273 (1906))). In this case, the OAG submitted to an order from the Trooper 1 court in an effort to obtain a ruling that the OAG's investigative materials are protected from disclosure. *See* ECF No. 225 ¶¶ 55-56. That is precisely the sort of deliberate engagement that constitutes a waiver.

*Second*, the OAG argues that its provision of materials to the court in the Trooper 1 Action was not a waiver because the OAG produced documents pursuant to court order involuntarily.

ECF No. 223 at 13. But this position flies in the face of any sovereign immunity claim. If the OAG is, as it argues, immune from being compelled to act by a federal court, the OAG's compliance with the Trooper 1 court's order was purely voluntary. Further, this case is similar to *Knox v. U.S. Dep't of the Interior*, No. 4:09-CV-162-BLW, 2012 WL 465585 (D. Idaho Feb. 13, 2012), where the court held that tribes were required to produce officials for deposition because those officials had submitted pertinent information in support of their motions to reconsider and motions to file amicus briefs earlier in the case. *Id.* at *1. The court compelled those officials to answer questions at deposition relevant to the information they filed because those filings waived the tribes' sovereign immunity with respect to related information. *Id.* at *1-2 (citing *United States v. James*, 980 F.2d 1314, 1320 (9th Cir. 1992)).

Similarly, here, the OAG submitted documents, likely including at least some of the Requested Materials, for review in the Trooper 1 Action in support of its relevance, privilege, and confidentiality arguments in a voluntary cross-motion to quash. *See* ECF No. 225 ¶ 56. When it submitted the materials, Governor Cuomo's motion to compel the subpoena had already been denied—so the submission was <u>only</u> in support of the cross-motion and thus constituted an affirmative invocation of the Trooper 1 court's jurisdiction. *See* ECF No. 236-1 at 6 ("The Court's prior ruling expressly *did not quash* Cuomo's subpoena to the OAG."). Given that the Daily News had sought OAG investigative materials through FOIL, ECF No. 200 at 6 n.5, the OAG may well have invoked the court's jurisdiction to prevent media outlets from obtaining such materials. In any case, because the OAG submitted these materials to support a voluntary cross-motion, the OAG waived sovereign immunity as to the Requested Materials here.

**Third**, the OAG posits that its provision of materials to the DOJ[4] in connection with the DOJ's supposed investigation into allegations of sexual harassment against Governor Cuomo does not constitute a waiver, seeking to distinguish precedent by pointing out that the DOJ was actively prosecuting the party requesting the records in those cases. ECF No. 223 at 14. But, contrary to the OAG's assertions, nothing in *James* or *United States v. Velarde*, 40 F. Supp. 2d 1314 (D.N.M. 1999), suggests that the holdings of those cases are limited to cases where the sovereign produces materials to a federal prosecutor in active litigation against the movant. Quite the opposite, the holdings in these cases are broad. In *James*, the Ninth Circuit analyzed "[t]he fact that the tribe voluntarily gave documents located in [its] Housing Authority files"—and paid no special attention to the government's status as prosecutor in that case. *See James*, 980 F.2d at 1320. Similarly, in *Velarde*, the court simply concluded that the tribe waived sovereign immunity by "provid[ing] a tribal records check, tribal enrollment information, tribal incident reports, and interviews with tribal police to federal officials." *See Velarde*, 40 F. Supp. 2d 1314. These cases focus on disclosure to the federal government in general rather than the fact that disclosure was made to a prosecutor litigating against the movant. Regardless of the context, when a sovereign has already consensually disclosed information to the federal government, the dignity of that sovereign is not at issue when another federal entity seeks the same.

**Fourth**, the OAG argues that its voluntary provision of certain investigative materials to Governor Cuomo in the Trooper 1 Action does not constitute a waiver because selective production cannot constitute a waiver in the Second Circuit. ECF No. 223 at 13-14. The OAG contends that under *EPA*, "selective waiver" arguments are foreclosed because the Second Circuit acknowledged that the EPA had released "several additional documents" but still applied

---

[4] Notably, the OAG does not deny that it provided these materials to the DOJ.

sovereign immunity to quash the subpoena against the EPA. *EPA*, 197 F.3d at 594. This argument is unavailing. As an initial matter, the EPA never raised (and the Second Circuit never addressed) a selective waiver argument, so *EPA* is not and cannot be binding on this point. But even if the Second Circuit had considered selective waiver, *EPA* would still be distinguishable because the Circuit never analyzed whether the documents sought by the subpoena related at all to the documents that the EPA voluntarily released. When documents sought by a subpoena are "sufficiently similar" to the documents that have been voluntarily produced, those documents come within the scope of a selective waiver. *See NGV Gaming, Ltd. v. Upstream Point Molate, LLC*, Nos. C-04-3955 SC (JCS), C-05-1605 SC, 2009 WL 4258550 at *6 (N.D. Cal. Nov. 24, 2009). In *NGV Gaming, Ltd.*, after analyzing if the documents sought by the subpoenas were "sufficiently similar" to an investigatory report and related information that were voluntarily produced, the court found that the sovereign had waived its sovereign immunity. *Id.* at *3, 5-6. The same reasoning applies here. The documents produced by the OAG in the Trooper 1 Action came from the very same investigative files that led to the OAG Report. Thus, the OAG has waived sovereign immunity over other documents concerning that report.

## II.    THE OAG FAILS TO CONTEST THAT THE REQUESTED MATERIALS ARE RELEVANT AND PROPORTIONAL

### A.    The OAG's Relevance Arguments Are Meritless

The OAG asserts that the Subpoena requests are vague, overbroad, and encompass irrelevant information because they purportedly seek materials unrelated to Plaintiff or her allegations. The OAG's arguments are baseless to the point of frivolity.

*First*, the OAG argues that all interview memos and unredacted transcripts are irrelevant because Plaintiff's claims can be proved only by firsthand knowledge. *See* ECF No. 223 at 15-16. This argument is ludicrous. Relevance is defined broadly and plainly includes evidence that does

not directly prove or disprove the allegations at issue—circumstantial evidence. *See Shannon v. Liberty Mut. Grp. Inc.*, No. 3:20-CV-1192 (RNC), 2021 WL 2644742, at *18 (D. Conn. June 28, 2021) (observing that courts in this Circuit have held that circumstantial evidence concerning discrimination claims is "relevant and appropriate" for discovery). Indeed, to credit the OAG's argument would foreclose discovery related to nearly all nonparty witnesses. Furthermore, contemporaneous witness statements are relevant because those statements may undercut Plaintiff's allegations by (a) providing contradictory facts concerning Plaintiff's specific allegations, (b) maintaining that the Executive Chamber work environment was not hostile,[5] or (c) stating outright that Plaintiff lied to them or to the OAG. In other words, those statements may "bear on" a stated "claim or defense." *See Flores v. Stanford*, No. 18 Civ. 02468 (VB)(JCM), 2022 WL 354719, at *4 (S.D.N.Y. Feb. 7, 2022) (citing cases).

   ***Second***, the OAG contends that the Requested Materials are irrelevant to Plaintiff's retaliation claims because those claims do not hinge on what the OAG concluded or how it went about its investigation. ECF No. 223 at 16-17. For similar reasons, this argument is nonsensical: contemporaneous witness statements may undercut Plaintiff's retaliation theory. Moreover, to the extent Plaintiff claims that Governor Cuomo retaliated against her by challenging the methodology or findings of the OAG Report, Compl. ¶¶ 140-145, witness statements undercutting or disproving the findings in the Report itself are also relevant.

   ***Third***, the OAG challenges the relevance of materials concerning Executive Chamber employees who did not reference Plaintiff. ECF No. 223 at 15-16. But these materials speak on Plaintiff's work environment, which Plaintiff alleges was hostile. Plaintiff claims, for example,

---

[5] To the extent the OAG suggests that Plaintiff does not allege a pattern or practice of discrimination, ECF No. 223 at 16 (citing *Sinni v. Forest Hills Hosp.*, No. 09-cv-4572, 2011 WL 1004817, at *2-3 (E.D.N.Y. Mar. 18, 2011)), the OAG is incorrect. *See* Compl. ¶¶ 6, 125, 135-137.

that encouraging her to participate in a push-up competition and sing "Danny Boy" were forms of gender-based harassment. Compl. ¶¶ 24-26, 30, 35-36. Interviews with or testimony from other Executive Chamber employees who may have experienced a similar workplace dynamic would be relevant to the question of whether gender was a factor in such alleged conduct. Plaintiff also alleges that Governor Cuomo purposely recruited and promoted attractive women and required those women to wear particular clothing and hairstyles. Compl. ¶¶ 16, 21, 39-41. Statements from other Executive Chamber employees will bear on these allegations.

      *Fourth,* the OAG says Governor Cuomo should obtain testimony directly from witnesses at issue. ECF No. 223 at 17. This "do it the hard way" argument is wholly inconsistent with the broad discovery authorized by Rule 26. Setting aside that Governor Cuomo does not know the identities of all witnesses from whom the OAG obtained statements, the OAG's position is senseless. Memories fade: witnesses at issue may not remember their statements from three years ago. Moreover, the prior statements of those witnesses remain important to test the veracity of any current statements from those same witnesses. And what is more, conducting depositions of all witnesses who may have made statements about Plaintiff, Ms. Boylan, or the Executive Chamber is inefficient, unnecessarily invasive, and expensive. Indeed, a review of the limited witness memos Governor Cuomo obtained through discovery from the Albany County District Attorney demonstrates that the OAG investigators routinely asked employees about the working environment in the Executive Chamber, Governor Cuomo's conduct, and complainants. *See* Trzaskoma Reply Decl. Ex. 1.[6] After all, the OAG investigation was focused on the very same issues at the heart of Plaintiff's lawsuit.

---

[6] Citations to Exhibit 1 to Declaration of Theresa Trzaskoma in Further Support of Governor Cuomo's Motion to Compel the Office of the New York State Attorney General's Compliance with Subpoena and in Opposition to Its Cross-Motion to Quash will be styled "Trzaskoma Reply Decl. Ex. 1."

*Finally*, the OAG attempts to recast the Subpoena as part of a longstanding effort to attack the OAG Report. ECF No. 223 at 17-18. This argument is a distraction, and Governor Cuomo could equally ask—what on earth is the OAG trying to hide? The Requested Materials—prior witness statements concerning the allegations at hand, Plaintiff's work environment, and the credibility of one of the key witnesses in the case—are at the center of relevance in this case. To the extent Plaintiff's allegations of harassment overlap with the Report or her theory of retaliation requires Governor Cuomo to challenge the veracity of the Report, that makes the Requested Materials all the *more* relevant. Either way, this Subpoena is a matter of routine discovery.

## B.  The OAG's Burden Arguments Are Meritless

Alongside its relevance arguments, the OAG contends that producing the Requested Materials would be so burdensome that the Subpoena is not proportional to the needs of this case. The OAG's arguments here too must fail.

*First*, the OAG argues that responding to the Subpoena would require review of all 74,000 records generated during the OAG's investigation of the allegations against Governor Cuomo and represents that an earlier review of just 1,000 documents took 3,600 hours. ECF No. 223 at 18. This argument does not make sense. The Requested Materials do not comprise 74,000 documents or anywhere near that number.[7] Instead, by the OAG's own admission, the Subpoena targets at most 155 documents: unredacted versions of the public redacted witness transcripts and witness interview memos concerning Plaintiff, Ms. Boylan, or the Executive Chamber. *See* ECF No. 224

---

[7] The OAG's reference to 74,000 documents is outrageous in the context of this particular Subpoena, which does not call for anything near the OAG's entire investigative file but instead calls for a limited universe of witness statements. For similar reasons, the OAG's argument that an OAG production would be duplicative of the impending productions from Ms. Boylan is without merit. ECF No. 223 at 16. The OAG cannot credibly claim that Ms. Boylan has interview memos or unredacted transcripts—or can otherwise access the witness statements therein.

15

¶ 16.[8] The requested transcripts require no more than a cursory subject-matter review and require no redaction because the Subpoena explicitly requests unredacted transcripts.[9] As for the entire universe of interview memos beyond just those requested in the Subpoena, which number at most 200, the declaration filed by former deputy Chun makes clear that at least 155 of those memos <u>have already been reviewed and redacted</u>. ECF No. 224 ¶ 13. Nothing in the OAG's submission indicates that any interview memos responsive to the Subpoena are not among the 155 already-redacted memos, or that complying with the Subpoena would require anything more than sending Governor Cuomo's counsel a link to the memos that have already been reviewed and redacted.

*Second*, the OAG contends that redactions for purposes of criminal discovery differ from redactions that it would have to make for purposes of civil discovery. ECF No. 223 at 18-19. The OAG provides no legal basis for this unheard-of distinction, including what, if any, additional information would need to be redacted. Work product is work product, regardless of the context. Indeed, to the extent that there is any distinction between civil and criminal discovery standards, access to information in civil discovery is markedly <u>broader</u> than access in criminal discovery. *United States v. Sampson*, 898 F.3d 270, 280 (2d Cir. 2018) ("[F]ederal criminal discovery is far more limited than federal civil discovery."); *Agran v. City of New York*, No. 95 CIV. 2170 (JFK), 1996 WL 263023, at *2 (S.D.N.Y. May 16, 1996). The Chun Declaration provides that most of the materials potentially requiring any redaction at all have already been redacted for work product—both a <u>civil</u> and criminal discovery concern. *See* ECF No. 224 ¶ 13.

Moreover, we do not need to guess what type of information the interview memos contain because counsel for Governor Cuomo received a limited number of these redacted memos during

---

[8] The OAG's estimate may even be too high because it mistakenly includes materials concerning Trooper 1, which Governor Cuomo no longer seeks as part of the Requested Materials. *See* ECF No. 200 at 7 n.7.

[9] These transcripts can be designated confidential pursuant to the operative Protective Order. ECF No. 120 at 2-3.

discovery in the now-dismissed Albany criminal case against Governor Cuomo. The as-redacted memos contain nothing more than a factual recounting of the statements each witness gave to OAG investigators—whatever work product exists is at the very beginning or the very end of each memo and can be easily redacted. *See, e.g.*, Trzaskoma Reply Decl. Ex. 1 at 1, 6. Apart from any redactions for work product (which, going by the Chun Declaration, have already been either totally or substantially implemented, ECF No. 224 ¶ 13), nothing in these memos merits redaction under civil discovery standards.

   ***Third***, the OAG argues that the other proportionality factors weigh against disclosure of interview memos and unredacted transcripts. Although the OAG acknowledges that the allegations in the action are serious and the amount in controversy is conceivably high, the OAG avers that the parties have equal access to its materials (both public and non-public) and vaguely expresses a concern about the burden of compliance on its employees and resources. ECF No. 223 at 19. But complying with the Subpoena would require only minimal effort and would not, as the OAG contends, "commandeer" OAG employees into the service of private litigants.[10] Indeed, it is more likely that the burden of compliance on the OAG will be far, far less than the burden of resistance.

## III.   THE OAG FAILS TO ESTABLISH THAT THE REQUESTED MATERIALS ARE PRIVILEGED

### A.   The OAG Fails to Establish That the Attorney-Client Privilege or the Work-Product Doctrine Apply

   As the entity asserting privilege, the OAG bears the burden to establish that the Requested Materials are covered by the attorney-client privilege or the work-product doctrine. *Hernandez v.*

---

[10] Given the OAG's assertion that, if compelled, it would turn to the Firms to prepare and produce the Requested Materials, it is hard to imagine how the OAG would be burdened at all. ECF No. 229 at 6. We also note that this argument is directly at odds with the OAG's position that the information is work product because it was prepared in anticipation of this very litigation.

*Off. of the Comm'r of Baseball*, 331 F.R.D. 474, 476-477 (S.D.N.Y. 2019). The OAG comes nowhere close to meeting its burden.

      **First**, the OAG maintains that the deputized attorneys from Cleary and Vladeck were essentially in-house counsel for the OAG, and thus all the Requested Materials were communications between counsel and client covered by attorney-client privilege. ECF No. 223 at 19-21. Neither proposition is true. To start, the OAG fails to explain how the Requested Materials constitute attorney-client communications. The transcripts and the memos record communications between third-party witnesses and OAG deputies, and the OAG does not argue that the third-party witnesses had an attorney-client relationship with the OAG deputies. Accordingly, its citation to *Upjohn Co. v. United States*, 449 U.S. 383 (1981)—a case involving notes of interviews between a company's employees and that company's counsel— misses the mark. *See* ECF No. 223 at 19-20. Witness statements are not converted to attorney-client communications simply because an attorney put them in a memo or hired a court reporter to transcribe them. *See* ECF No. 200 at 18-19. It may well be true that the deputies eventually sent these transcripts and memos to Attorney General James or other full-time OAG attorneys, but even if any such correspondence were privileged (which it is not), the attached transcripts and memos themselves would not be.

      Moreover, even if the Requested Materials were attorney-client communications (which they are not), the OAG fails to explain how they are <u>privileged</u> attorney-client communications. The attorney-client privilege applies only to confidential communications made for the purpose of obtaining legal advice. *In re Aenergy, S.A.*, 451 F. Supp. 3d 319, 322 (S.D.N.Y. 2020). The OAG's and the Firms' own description of their relationship undermines the assertion that either Firm provided the OAG any legal advice at all, much less that any of the Requested Materials constituted or reflected confidential communications made for the provision of such advice. Indeed, the Firms

18

and the OAG both took great pains to emphasize the independence of the special deputies in conducting the investigation. For instance, the OAG Report provided that, while New York Executive Law § 63(8) required the deputies to "periodically report to the Office of the NYAG" concerning "the Office's practice and procedures," the deputies made "all substantive decisions regarding how to conduct the investigation," as well as "all decisions regarding the analysis and conclusions reached in the Report, independently." ECF No. 201 ¶ 5 at 15.[11] Under these circumstances, it is difficult to conceive how the Firms were the equivalent of in-house counsel, much less that memos recording third-party witness statements constitute or reflect confidential communications made for the purpose of obtaining or providing legal advice.

*Second*, the OAG offers the conclusory assertion that the Requested Materials constitute work product because they were "reasonably" prepared in anticipation of litigation commenced by the complainants against Governor Cuomo and litigation commenced by Governor Cuomo against the OAG. ECF No. 223 at 20. But the question is not whether the OAG anticipated litigation when receiving the referral and conducting the investigation, as the OAG frames it. *Id.* Instead, the question is whether the materials at issue were "prepared in anticipation of litigation." *McGowan v. JPMorgan Chase Bank, N.A.*, No. 18 Civ. 8680 (PAC) (GWG), 2020 WL 1974109, at *3 (S.D.N.Y. Apr. 4, 2020) (quotation omitted). That is, whether "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Brook v. Simon & Partners, LLP*, No. 17 Civ. 6435 (GBD) (SLC), 2021 WL 5919207, at *4 (S.D.N.Y. Dec. 15, 2021) (quotation and citation omitted). "Documents . . . that would have been created whether or not litigation was

---

[11] For similar reasons, though the deputies from the Firms reported to (rather than provided counsel to) the OAG, the Firms cannot invoke sovereign immunity because the deputies purportedly conducted the investigation independently from the OAG. Moreover, the Firms themselves were never deputized, and, in any event, state agents are subject to federal discovery subpoenas for state records. *See* ECF No. 238 at 2.

anticipated, are not protected by work-product immunity." *Id.* (cleaned up); *see also Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 75 (S.D.N.Y. 2010) (To the extent that documents reflect the consideration of the possibility of litigation, "such possibility is insufficient to trigger the protection of the work product doctrine within the scope of Rule 26(b)(3)"). In other words, there must be a causal link between the preparation of the materials and the anticipated litigation, such that those materials were prepared "principally or exclusively" for such purpose. *See In re Initial Pub. Offering Secs. Litig.*, 220 F.R.D. 30, 34 (S.D.N.Y. 2003) (quotation omitted).

Here, nothing about the Requested Materials "reflects litigation defense strategy, or an evaluation of litigation exposure that the work product doctrine was intended to protect." *Brook*, 2021 WL 5919207, at *5 (quotation and citation omitted). At the time of referral and investigation, the litigation that the OAG speaks of was "no more than a possibility, which is insufficient to give rise to work-product protection." *Id.* (quotation and citation omitted). Even if the OAG investigators may have anticipated the nebulous possibility of litigation when preparing the documents, they did not prepare the documents in anticipation of such litigation. Rather, the documents were created for the singular purpose of conducting a public-interest investigation under New York Executive Law § 63(8) and issuing a public report, which would have proceeded without regard to any potential litigation. *See* Trzaskoma Decl. ¶ 3.

The OAG also fails to provide any support for the assertion that the Requested Materials entirely constitute attorney mental impressions. The transcripts cannot possibly include attorney mental impressions—they are pure recordings of factual statement. And the interview memos are similar—in the example provided to the Court, it is clear that the interview memos include all information disclosed from the witness to the interviewer. *See* Trzaskoma Reply Decl. Ex. 1. To the extent those memos include any mental impressions, those impressions only appear at the

beginning and/or end of each memo; and, apparently, those impressions have already been redacted. *See id.*; ECF No. 224 ¶ 13.

 **Third**, the OAG argues that *Allied Irish Banks v. Bank of America, N.A.*, 240 F.R.D. 96 (S.D.N.Y. 2007), does not apply because the Requested Materials were created for the purpose of providing legal advice. ECF No. 223 at 22-23. This argument assumes the proposition that the deputies were retained for the purpose of providing legal advice to the OAG. As described above, this is false. The deputies interviewed witnesses and generated memos for the purpose of conducting an "independent[]" investigation and issuing a public report about which they made "all substantive decisions." *See* ECF No. 201 ¶ 5 at 15. How could the deputies have been independent if they were also providing confidential legal advice to the OAG? The OAG cannot have it both ways. *Allied Irish Banks* squarely applies.

 **Fourth**, the OAG asserts that *In re Kidder Peabody Securities Litigation*, 168 F.R.D. 459 (S.D.N.Y. 1996), and *New York Times Co. v. United States Department of Justice*, 939 F.3d 479 (2d Cir. 2019), do not apply because the OAG itself did not place the Report at issue in any lawsuits, arbitrations, or federal investigations, and thus did not create a subject-matter waiver over the Requested Materials. ECF No. 223 at 23. The OAG downplays the consequences of the Report: not only has the OAG placed the Report at issue as a matter of material public discourse (including through the inflammatory televised press conference the OAG held on August 3, 2021 announcing the Report and its findings, Trzaskoma Decl. ¶ 6), but the Report was also placed at issue in several criminal investigations as well as a federal civil investigation. ECF No. 200 at 5, 9 n.10.

 Moreover, *Kidder* applies more broadly. The OAG's public disclosures themselves are sufficient, because "[t]he waiver may be found" if the privilege holder "makes factual assertions the truth of which can only be assessed by examination of the privileged communication." *Kidder*,

168 F.R.D. at 470. Certainly, the core allegations at issue in the Complaint—which the OAG held out as true in its Report—can be fully assessed only by examination of the Requested Materials, which are cited throughout the Report.

### B.  The OAG Fails to Establish That the Law Enforcement Privilege Applies

The OAG maintains its assertion of the law enforcement privilege,[12] arguing that the privilege protects the Requested Materials because the witnesses who gave statements have credible fears of retaliation, and the OAG guarded the confidentiality of these statements to encourage witness cooperation. ECF No. 223 at 24. The OAG further claims that the operative Protective Order cannot cure these harms because the disclosure of the materials to Governor Cuomo himself, rather than the public at large, would give rise to these harms. *Id.* at 25. Neither of these arguments has any merit.

As an initial matter, even assuming that each witness involved expressed fears of retaliation and was hesitant to cooperate,[13] the OAG fails to explain how disclosure of the Requested Materials, subject to the privacy of the Protective Order, would result in their widespread or public disclosure absent a Court order that they be de-designated confidential or unsealed (if appended to a public filing). This argument is particularly rich coming from the OAG, which already selectively released some of these materials to the public, apparently without any concern for the protection of witnesses. Further, although the OAG references Governor Cuomo's past public statements

---

[12] Conversely, the OAG does <u>not</u> maintain its assertion of the deliberative process privilege.

[13] Because the law enforcement privilege is so specific, courts often require submission under seal or *in camera* review of the documents in question to make the fact-specific determination whether each document is subject to the privilege. *Floyd v. City of New York*, 739 F. Supp. 2d 376, 379 (S.D.N.Y. 2010) ("[T]he law enforcement privilege is not an instrument by which law enforcement agencies may shield themselves from public scrutiny. Therefore, courts must vigilantly review an assertion of the privilege and must often conduct an *in camera* inspection of the materials in question."). The OAG does not allege that all witnesses are sensitive and has disclosed the identity of many of the witnesses in the OAG Report and throughout the Trooper 1 Action. Accordingly, to the extent the Court considers applying the law enforcement privilege, we respectfully request that the Court conduct a document-by-document review to determine whether the OAG's assertions about privacy and sensitivity are accurate.

defending against the allegations both in the press and in litigation, ECF No. 225 ¶¶ 41-45, there is no reason whatsoever to believe that improper retaliation of any witnesses would ensue, particularly since Governor Cuomo resigned almost three years ago and is no longer their boss. For similar reasons, in cases the OAG cites—aside from those cases readily distinguishable for involving information concerning highly sensitive national security or criminal enforcement investigations—a protective order was sufficient to safeguard any privacy interests. *See Dorsett v. Cnty. of Nassau*, 762 F. Supp. 2d 500, 537 (E.D.N.Y. 2011); *Kelly v. City of New York*, No. 01 Civ. 8906 (AGSDF), 2003 WL 548400, at *5 (S.D.N.Y. Feb. 24, 2003).

Moreover, even if the law enforcement privilege did apply (which it does not), Governor Cuomo presents a "compelling need" for the Requested Materials because they might "contradict, undermine, or otherwise cast doubt upon" Plaintiff's allegations. *See In re The City of New York*, 607 F.3d 923, 950 (2d Cir. 2010). As described above, the Requested Materials all comprise prior witness statements concerning Plaintiff's allegations of harassment and hostile work environment. And these statements are not just relevant, they are potentially potent. To the extent that they "corroborate or contradict" certain allegations and defenses, they will prove important during deposition testimony and trial. *See Floyd*, 739 F. Supp. 2d at 384. The Requested Materials are a "far cry" from the "highly-sensitive" materials motivating application of the privilege; they do not "involve secret operations or undercover officers," and they do not "implicate such vital concerns as terrorism, mass unrest or riots, spiraling violence or chaos, or anything of the like." *See id.* at 384. Consequently, the law enforcement privilege does not protect them from disclosure.

For the same reasons, the OAG's invocation of the public interest privilege falls short. ECF No. 223 at 25 & n.12. New York Executive Law § 63(8) does not change the analysis. To the extent it applies a limited rule of confidentiality to appointed officers, it does not apply a rule of

confidentiality to the OAG itself. Indeed, the rule contemplates that the Attorney General (or Governor) can authorize disclosure of information gathered in the investigation, as the OAG did in this case. That the OAG's disclosure was selective instead of complete does not change the fact that that OAG is not bound to confidentiality. And if anything, the public interest weighs very much in favor of disclosing evidence relevant to Plaintiff's claims.

## **CONCLUSION**

For the foregoing reasons and the reasons in his moving papers, Governor Cuomo respectfully requests that the Court compel the OAG to comply with the Subpoena.

Dated:          April 9, 2024                                   Respectfully submitted,
                New York, New York

                                                                _/s/  Theresa Trzaskoma_____

                                                                Theresa Trzaskoma
                                                                Allegra Noonan
                                                                Brachah Goykadosh
                                                                SHER TREMONTE LLP
                                                                90 Broad Street, 23rd Floor
                                                                New York, New York 10004
                                                                Tel.: (212) 202-2600
                                                                Fax: (212) 202-4156
                                                                ttrzaskoma@shertremonte.com

                                                                Rita M. Glavin
                                                                Katherine E. Petrino
                                                                GLAVIN PLLC
                                                                156 West 56th Street, Ste. 2004
                                                                New York, NY 10019
                                                                Tel: (646) 693-5505
                                                                rglavin@glavinpllc.com

                                                                *Counsel for former Governor*
                                                                *Andrew M. Cuomo*