UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————————————X

CHARLOTTE BENNETT,                                  :
                                                    :
                              Plaintiff,            :       1:22-cv-07846 (VSB)(SLC)
                                                    :
          - against -                               :
                                                    :
ANDREW CUOMO,                                       :
MELISSA DEROSA,                                     :
JULL DESROSIERS, and                               :
JUDITH MOGUL,                                       :
                                                    :
                              Defendants.           :
                                                    :
———————————————————————————————X


**NONPARTY RESPONDENT'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF CROSS-MOTION
TO QUASH**


LETITIA JAMES
Attorney General
State of New York
28 Liberty Street
New York, New York 10005

Attorney for Nonparty
Office of the Attorney General


Andrew Amer
Serena Longley
Michael Jaffe
James Cooney

       of Counsel

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ................................................................................................1

**ARGUMENT** .........................................................................................................................1

   I.   SOVEREIGN IMMUNITY APPLIES TO BAR MOVANT'S SUBPOENA...........................1

        A.    In This Circuit, A Subpoena Triggers Sovereign Immunity ...........................1

        B.    OAG Has Not Waived Its Sovereign Immunity Defense .............................5

   II.  THE MATERIALS SOUGHT ARE IRRELEVANT AND NOT
       PORPORTIONAL TO THE NEEDS OF THE CASE ...................................................6

   III.  THE MATERIALS SOUGHT ARE PRIVILEGED................................................8

        A.    The Attorney-Client Privilege And Work-Product Doctrine Apply................8

        B.    The Law Enforcement Privilege Applies .................................................10

**CONCLUSION**..................................................................................................................10

i

# TABLE OF AUTHORITIES

**Cases**

*Cartica Management, LLC v. Corpbanca, S.A.*, 50 F. Supp.3d 477 (S.D.N.Y. 2014)....................................3

*College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666 (1999) ...........................5

*Corbett v. eHome Credit Corp*, No. 10-cv-26, 2010 WL 3023870 (E.D.N.Y. August 2, 2010)................................................................................................................................8

*Daves v. Dallas Cnty, TX.*, 64 F.4th 616 (5th Cir. 2023) ....................................................5

*Ebbert v. Nassau County*, No. 05-cv-5445, 2007 WL 674725 (E.D.N.Y. March 5, 2007)...............................................................................................................................7

*EPA v. General Elec. Co.*, 197 F.3d 592 (2d Cir. 1999), *amended on reh'g on other grounds*, 212 F.3d 689 (2d Cir. 2000) ................................................................................. 1, 2

*Estate of Gonzalez v. Hickman*, 466 F.Supp.2d 1226 (E.D. Cal 2008) .........................................3

*Fisher v. United States*, 425 U.S. 391 (1976) ............................................................................9

*Grand Street Artists v. General Elec. Co.*, 22 F.Supp.2d 299 (S.D.N.Y. 1998) ...............................2

*Gunter v. Atlantic Coast Line R. Co.,* 200 U.S. 273 (1906) ........................................................5

*Henry v. New Jersey Transit Corp.*, 39 N.Y.3d 361(2023)..........................................................6

*In re General Motors LLC Ignition Switch Litigation*, 80 F.Supp.3d 521 (S.D.N.Y. 2015) ..........................10

*In re S.E.C. ex rel. Glotzer*, 374 F.3d 184 (2d Cir. 2004).........................................................1

*Pennhurst State School and Hosp. v. Halderman*, 465 U.S. 89 (1984) .........................................6

*Russell v. Harris Cnty., TX*, No. H-19-226, 2023 WL 5658936 (S.D. Tex. Aug. 31, 2023)........................................................................................................................... 4, 5

*Russell v. Jones*, 49 F.4th 507 (5th Cir. 2022)..........................................................................2

*Sibley v. Choice Hotels International,* No. 14-cv-634, 2015 WL 9413101 (E.D.N.Y. December 22, 2015) .....................................................................................................6

*Sky Medical Supply Inc. v. SCS Support Claim Services, Inc.*, No. 12-cv-6383, 2017 WL 1133349 (E.D.N.Y. March 24, 2017) ............................................................................7

**Rules**

Federal Rule of Civil Procedure 26 ..................................................................................................6

Federal Rule of Civil Procedure 45 ..................................................................................................3

**Other Authorities**

Black's Law Dictionary (11th ed. 2019), Evidence.......................................................................7

**PRELIMINARY STATEMENT**[1]

Second Circuit precedent holds that a subpoena served on a nonparty government agency is a judicial proceeding barred by sovereign immunity unless waived because it would, if enforced, compel the government to act. Under that precedent, Defendant Cuomo's Subpoena served on OAG is unenforceable. The Subpoena is also improper because it is motivated by his personal political objectives, rather than the proportional needs of *Bennett v. Cuomo*. Cuomo fails to establish the relevance of the sought-after-materials, their proportionality to the needs of the case, and bases to overcome the protections under numerous well-established privileges. The Subpoena should be quashed.

**ARGUMENT**

**I. SOVEREIGN IMMUNITY APPLIES TO BAR MOVANT'S SUBPOENA**

**A. In This Circuit, A Subpoena Triggers Sovereign Immunity**

The Second Circuit has affirmatively held that enforcement of a subpoena is a "judicial proceeding" triggering sovereign immunity. *EPA v. General Elec. Co.*, 197 F.3d 592 (2d Cir. 1999), *amended on reh'g on other grounds*, 212 F.3d 689 (2d Cir. 2000) (cited by *In re S.E.C. ex rel. Glotzer*, 374 F.3d 184, 190 (2d Cir. 2004); *see* OAG MOL at pgs. 7-11. Cuomo ignores *Glotzer* entirely and attempts to sweep *EPA* under the rug by noting that it involves *federal* sovereign immunity rather than *state* sovereign immunity, but that is a distinction without a difference. In both cases, the Second Circuit held sovereign immunity applied to a nonparty subpoena because "the result could serve 'to restrain the Government from acting, or to compel it to act,'" relying on the Supreme Court's standard in *Dugan*. *Id.* at 597 (quoting *Dugan*, 372 U.S. at 620). Nothing about the court's reasoning depended on the subpoena being issued to a federal agency as opposed to a state agency; the critical point was that

---

[1] This reply brief uses the same defined terms as OAG's Memorandum of Law in Support of its Motion to Quash ("OAG MOL") (ECF No. 223).

enforcement of the subpoena could compel the government agency to act, as it would here. This is exactly what persuaded the Fifth Circuit in *Russell* to hold that state sovereign immunity barred enforcement of subpoenas against state officials. *Russell v. Jones*, 49 F.4th 507, 519 (5th Cir. 2022) (holding "state sovereign immunity is no less effective" a defense to federal non-party subpoenas served on state officials than federal sovereign immunity in *EPA*).

Revisionist history notwithstanding, Cuomo cannot escape the binding holding of *EPA* that a subpoena is a "suit" triggering sovereign immunity. Remarkably, Cuomo attempts to distinguish *EPA* by arguing that it ruled on a "state-court subpoena" (Cuomo Response and Reply MOL (ECF No. 239) ("Cuomo Reply") at pg. 4) despite the clear language of *EPA* (and the underlying district court ruling) stating that the subpoena in *EPA* was "issued out of the Southern District." *See EPA*, 197 F.3d 592; *Grand Street Artists v. General Elec. Co.*, 22 F.supp.2d 299, 300 (S.D.N.Y. 1998). Cuomo's attempt to avoid binding precedent is premised on a misstatement of the factual record in *EPA* and related invocation of the Supremacy Clause, which was not invoked in *EPA* and has no application here.

Additionally, Cuomo's suggestion that the Second Circuit "left open the question" of whether a federal agency can invoke sovereign immunity from compelled compliance with a federal court subpoena lacks any support in the *EPA* record. *See* Cuomo Reply at pg. 4 *citing U.S. EPA v. Gen. Elec. Co.*, 212 F.3d 689, 690 (2d Cir. 2000) (denying EPA's motion for reconsideration solely because the federal government had waived EPA's sovereign immunity via the Administrative Procedures Act). There is no basis in fact or law (including the supplemental Second Circuit ruling Cuomo cites) to distinguish federal, tribal or state sovereignty in the context of a nonparty subpoena.

Further, Cuomo cannot skirt OAG's sovereign immunity by invoking the *Ex parte Young* exception for two reasons. First, Cuomo's circular logic claiming that OAG's failure to comply with his subpoena is the very same violation that supports the *Ex parte Young* exception cannot hold. To invoke *Ex parte Young*, the ongoing violation of law needs to be independent of the proceeding brought

2

to enjoin the violation; Cuomo's assertion that the litigation over his subpoena serves as both the ongoing violation of law and the proceeding to enjoin the ongoing violation of law is a self-serving mirage that if real would have the *Ex parte Young* exception swallow sovereign immunity whole.

Second, Cuomo fails to allege that OAG is engaging in any conduct that could be construed as an ongoing violation of federal law necessary to invoke *Ex parte Young. See* OAG MOL at Pt. I. A, pgs. 10-11. Cuomo argues that OAG is violating federal law by refusing to comply with the Subpoena and cites broadly to the Federal Courts Rules Enabling Act at 28 U.S.C. § 2072(a). Cuomo Reply at pg. 5. However, OAG has followed every prescribed legal procedure to properly object to the Subpoena, and Cuomo does not, and cannot, identify any section of the Rules Enabling Act (or any Rule promulgated by the Federal Courts) that OAG is presently violating to support application of *Ex parte Young. See Estate of Gonzalez v. Hickman*, 466 F.Supp.2d 1226 (E.D. Cal 2008) (holding *Ex parte Young* was inapplicable to compel state officials from complying with nonparty subpoena because failure to comply was not an ongoing violation of federal law: "The purpose of the relief sought here, production of documents that could lead to admissible evidence in a suit seeking relief for a past wrong, is clearly retrospective. There is no ongoing violation that could support a finding that the present issue falls within the *Ex parte Young* exception to the Eleventh Amendment bar."); *see also* FRCP 45 (D)(2)(b).

The Court should also reject Cuomo's attempts to urge the Court to ignore binding Second Circuit law in favor of the law of other Circuits (or even less persuasive, the holdings of individual district courts outside of the Second Circuit) because following binding precedent would "permit the state and its employees to avoid accountability…"*See* Cuomo Reply at pg. 7. As a threshold matter, this Court is, of course, required to follow binding Second Circuit precedent without regard to different approaches taken by other circuits. *Cartica Management, LLC v. Corpbanca, S.A.*, 50 F. Supp.3d 477, 486 (S.D.N.Y. 2014) ("[D]istrict courts and other inferior courts are bound by decisions of the Court

3

of Appeals in the appropriate circuit unless overruled by an intervening Supreme Court decision or other change in law."). Further, Cuomo's emphasis on "accountability" here is yet more evidence that he is more interested in impermissibly using this litigation to attack OAG (and hold OAG "accountable" for his decision to resign as governor and his political fallout) than he is in actually defending the merits of Bennett's claims against him. *See* OAG MOL at pgs. 15-16. Cuomo's assertions that the Second Circuit's interpretation of sovereign immunity would amount to a denial of litigants' access to vital discovery ignores the numerous ways that litigants can seek state records including where the state has voluntarily participated in discovery, the state has waived its own immunity (including when the state is a party), the state records are in the possession, custody or control of a state official properly joined as a party under the *Ex parte Young* doctrine, Congress has validly abrogated a state's immunity, or where the records are available by alternative means prescribed by the states in other forums, including through freedom of information laws. *See* OAG MOL at pg. 11. The facts here highlight the reality that applying sovereign immunity in this context will not be a bar to litigants prosecuting or defending their cases. Cuomo has access to thousands of pages of OAG's records in this matter, including OAG's public Report, approximately 1,000 documents underlying that Report, and transcripts (redacted for applicable privileges) of all sworn deposition witnesses interviewed by OAG under oath, all published voluntarily by OAG on its website. Chun Decl. ¶ 12. Not to mention the thousands of pages of records Cuomo is in the process of receiving from OAG through his FOIL request. Longley Decl. at ¶ 64.  All of these records are available to Cuomo notwithstanding the fact that OAG has asserted sovereign immunity in response to his nonparty Subpoena. As detailed more fully below in Section II, the records he now seeks are not sufficiently relevant, if at all, to justify the burden placed on OAG in their production, and his lack of access to those records will hardly grind this litigation to a halt or adversely affect his ability to mount a defense.

Cuomo once again attempts to mislead the Court by insinuating that the Fifth Circuit decision in *Russell* directly resulted in dismissal of the underlying lawsuit (*Russell v. Harris Cnty., TX*, No. H-19-226, 2023 WL 5658936 (S.D. Tex. Aug. 31, 2023)) because the litigants there were barred from seeking sufficient

discovery as a result of the holding in *Russell*. Cuomo Reply at pg. 6. This is factually incorrect. The trial court in *Russell* made clear that the reason the case was dismissed was because of a Fifth Circuit decision, *Daves v. Dallas Cnty, TX.*, 64 F.4th 616, 631 (5th Cir. 2023), holding that a prisoner has no right to bring a § 1983 action against state correctional officials to challenge their bail conditions and had nothing to do with plaintiff's ability to access state records. *See Harris Cnty., TX*, 2023 WL 5658936 at * 1 ("The Fifth Circuit's most recent decision in <u>*Daves v. Dallas County (Daves II)*, 64 F.4th 616 (5th Cir. 2023)</u> (en banc), brings this case to an end.").

Second Circuit precedent holds that a nonparty subpoena served on a state entity is a "suit" that triggers sovereign immunity. This Court should bar enforcement of the Subpoena on that ground.

### B. OAG Has Not Waived Its Sovereign Immunity Defense

OAG has affirmatively objected to the Subpoena at every possible juncture and has never consented to the jurisdiction of this Court to compel compliance with the Subpoena. Thus, OAG cannot be deemed to have waived its sovereign immunity defense. Nevertheless, Cuomo makes four arguments asserting that OAG has waived its sovereign immunity by prior conduct: 1) engaging in litigation conduct in this case and in the <u>Trooper 1</u> Action; 2) producing documents to the Court for *in-camera* review in the <u>Trooper 1</u> Action; 3) allegedly producing records to DOJ for use in an investigation parallel to OAG's regarding Cuomo's sexual harassment of numerous women; and 4) making a limited voluntary production of materials to Cuomo in the <u>Trooper 1</u> Action. Cuomo MOL at pgs. 9-12. Each of these arguments is entirely meritless. *See* OAG MOL at pgs. 11-15. Principally, Cuomo's arguments ignore the well-established standard that a state must unequivocally invoke its intention to be subject to the jurisdiction of the federal courts in order to waive its sovereign immunity. *See College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999) (citing *Gunter v. Atlantic Coast Line R. Co.,* 200 U.S. 273, 284 (1906) (to find waiver a State must "make a clear declaration that it intends to submit itself to [a federal court's] jurisdiction.") and, *Pennhurst State School*

5

*and Hosp. v. Halderman*, 465 U.S. 89 (1984)). In stark contrast to conduct required under this stringent standard, Cuomo attempts to construe waiver from conduct by OAG either explicitly objecting to this Court's jurisdiction (argument 1) or in providing documents to another court or in forums outside of the jurisdiction of this Court (arguments 2, 3, and 4); none of which can provide the clear and unequivocal waiver necessary for OAG to be held to have consented to this Court's jurisdiction. To the contrary, OAG's conduct in this case has been clear and consistent; OAG has at every turn objected to enforcement of the Subpoena. *See* OAG MOL at pgs. 14-15 (citing to Longley Decl. at ¶¶ 43, 48, 50, 55-56, 58-59). OAG's conduct leaves no room to find waiver.

Cuomo's reliance on *Henry v. New Jersey Transit Corp.*, 39 N.Y.3d 361(2023), is misplaced. In *Henry*, the NY Court of Appeals held that the New Jersey Transit Corp., an entity of the State of New Jersey, did not preserve its sovereign immunity defense by failing to assert it at the trial level, including in post-trial briefing. *Id.* at 367. There is simply no analogy to this case, where OAG has raised sovereign immunity at the earliest possible moment and has continued to do so at every opportunity.

OAG is entitled to invoke sovereign immunity to bar enforcement of the Subpoena and has not waived that defense. Sovereign immunity is a jurisdictional bar to enforcement and requires this Court to quash the Subpoena.

## II. THE MATERIALS SOUGHT ARE IRRELEVANT AND NOT PORPORTIONAL TO THE NEEDS OF THE CASE

Cuomo posits an outdated – and incredibly expansive – view of relevance. *See* Cuomo Reply at pgs. 12-13 ("Relevance is defined broadly and plainly includes evidence that does not directly prove or disprove the allegations at issue – circumstantial evidence."). This articulation of relevance ignores the requirement instituted in a 2015 amendment to Rule 26 that discovery sought be "proportional to the needs of the case." *Sibley v. Choice Hotels International,* No. 14-cv-634, 2015 WL 9413101 at *2 (E.D.N.Y. December 22, 2015); *see also Sky Medical Supply Inc. v. SCS Support Claim Services, Inc.*, No. 12-

cv-6383, 2017 WL 1133349 at *3 (E.D.N.Y. March 24, 2017). Cuomo also ignores the higher burden

he has in seeking discovery against a nonparty. *See Ebbert v. Nassau County*, No. 05-cv-5445, 2007 WL

674725, at *4 (E.D.N.Y. March 5, 2007) (Courts should "accord special weight to the burden on non-

parties of producing documents for others involved in litigation."). Cuomo's articulation of the

relevance of the materials sought in his Subpoena boils down to speculation that the materials "may"

impeach the credibility of Plaintiff or other witnesses and/or that they "may" establish that other

employees of the Executive Chamber did not experience the same harassment that Plaintiff alleges.

Cuomo Reply at pg. 13. Such speculation is insufficient to establish relevance following the 2015

amendment to Rule 26, nor does it fit into Cuomo's own outdated definition of relevance; the

materials Cuomo seeks are not "circumstantial evidence"[2] of whether Cuomo sexually harassed

Bennett but rather are internal investigative files related to an after-the-fact investigation of allegations

of sexual harassment. OAG has articulated a strong basis for quashing the Subpoena on the grounds

that production of the sought-after-materials would impose an immense burden on OAG, including

the time and expense involved in reviewing the records, and the harm such production would do to

OAG's ability to conduct future investigations. OAG MOL at pgs. 18-19.[3] Cuomo's complaint that

OAG is making him litigate this case "the hard way" (Cuomo Reply at pg. 14) is silly. OAG is simply

asking Cuomo, a *party* to this litigation, to litigate this case on his own rather than ride OAG's coattails.

     In sum, Cuomo's overstretched theory of relevance is not enough to outweigh the significant

burden to nonparty OAG (*see* OAG MOL at pgs. 18-19) or the threat to OAG's important privileges,

---

[2] Cuomo seems to conflate "circumstantial evidence," "[e]vidence based on inference and not on personal knowledge or observation" (Black's Law Dictionary (11th ed. 2019), Evidence) with evidence of minimal or no relevance.

[3] Cuomo claims he needs OAG's interview memoranda because he is unaware of the identity of many of the witnesses to the OAG investigation and thus cannot seek their deposition. Cuomo Reply at pg. 14. However, as the former Governor and head of the Executive Chamber, he knows the identities of the employees who worked for him and does not need to rely on the OAG interview memoranda to identify potential witnesses. He still cannot explain why the fact that an employee was interviewed by OAG has any bearing on whether they might be a more relevant witness to this lawsuit than an employee who observed the same office dynamics but was not interviewed by OAG. Rather, this is plainly an attempt to attack and re-litigate the OAG investigation and to use this litigation as a pretext for finding out more information about witnesses in the OAG investigation. *See* OAG MOL at pgs. 15-16.

as explained more fully below in Section III below.  *See Corbett v. eHome Credit Corp*, No. 10-cv-26, 2010 WL 3023870 at *3 (E.D.N.Y. August 2, 2010) (holding subpoena seeking information with "little apparent or likely relevance" should be quashed even where burden is not onerous).

### III.   THE MATERIALS SOUGHT ARE PRIVILEGED

#### A. The Attorney-Client Privilege And Work-Product Doctrine Apply

Cuomo's contention that the Firms retained by OAG as outside counsel, and the attorneys of the Firms deputized as OAG's Special Deputies and Assistants, were not acting as counsel to OAG is fundamentally wrong and undermines each of Cuomo's arguments positing that the attorney-client and work-product privileges do not attach to the sought-after-materials. Cuomo's challenge to the attorney-client relationship between OAG and the Firms (Cuomo Reply at pg. 18) ignores reality. Both the Chun and Longley Declarations make clear that the Firms were retained to provide legal advice to OAG stemming from their investigation, and the engagement agreements between OAG and the Firms make clear that a core function the Firms were retained to provide was legal advice and analysis stemming from their investigation. Longley Decl. ¶ 14, Ex. 5, Firms Engagement Letters (the firms were retained "to provide investigation and legal services by assisting the [OAG] in its review of allegations of, and circumstances surrounding, sexual harassment against Governor Andrew Cuomo"); Chun Decl. ¶ 5.

Cuomo is also simply wrong that the independent nature of the Investigation rendered the need for legal advice moot. Pursuant to Executive Law § 63(8) and the referral, independent firms were selected to lead the Investigation under the supervision and authority of OAG.  Nothing about Executive Law § 63(8) or the structure of the Investigation rendered legal guidance and consultation between OAG and the investigators unnecessary; indeed, the Report was approved and issued by OAG pursuant to the powers granted to OAG via Executive Law § 63(8) and Cuomo's referral letter

and was published on OAG's website.[4] This dynamic is highlighted by the appointment of the Special Deputies and Assistants as direct agents of and counsel to OAG. Longley Decl. Ex. 4, Appointment Letters.

Further, the interview memoranda were created by OAG's deputized agents with the intent to provide legal guidance and planning within the Investigative Team (which for these purposes was part of OAG) and in furtherance of ultimately making legal recommendations to OAG as to whether Cuomo engaged in sexual harassment and retaliation. Chun Decl. ¶ 13. The fact that the investigators did not have a privileged relationship with the interview subjects themselves does not defeat OAG's assertions of privilege over the memoranda. It is the compilation and transmittal of information between attorney and client that may cloak documents or communications under the attorney-client privilege.[5] *Fisher v. United States*, 425 U.S. 391 (1976) (holding that where a client gives documents that are not in themselves privileged but were provided by a client to his attorney for the purposes of obtaining legal advice, such documents in possession of the attorney were protected under attorney-client privilege).

Finally, Cuomo's waiver arguments concerning attorney-client and attorney-work-product privileges fare no better than his waiver arguments with respect to sovereign immunity. OAG has never put the sought-after-materials at issue in litigation. Cuomo conflates the public Report with the confidential interview memoranda. OAG has already published the transcripts and exhibits underlying the Report, and the Report does not cite to or reference the interview memoranda. Rather, OAG has

---

[4]https://ag.ny.gov/press-release/2021/independent-investigators-find-governor-cuomo-sexually-harassed-multiple-women (last accessed 4/17/2024).

[5] OAG acknowledges that the transcripts sought by Cuomo's Subpoena are not covered under the attorney-client or work-product privileges. The transcripts are distinguishable from the memoranda because they were not created by the attorneys themselves, but rather by an outside transcription service, and were created to make a sworn record of word-for-word recitations of non-privileged conversations. OAG has already made all sworn transcripts public with only redactions to protect OAG's law enforcement privilege. *See* OAG MOL at pgs. 23-25; *supra* at Point III. B pg. 10. By contrast, the memoranda created by the Special Deputies and Assistants were aggregations of information that the attorneys believed to be worthy of memorialization and consist of the attorneys' impressions and recollections of the interviews they conducted. *See* OAG MOL at pg. 22.

consistently denied access to the memoranda to members of the public, including the witnesses themselves. Longley Decl. ¶ 40; *See In re General Motors LLC Ignition Switch Litigation*, 80 F.Supp.3d 521, 528-529 (S.D.N.Y. 2015) (rejecting a claim that interview materials were not intended to be kept confidential because of a promise (and act) to disclose facts in a report).

### B.  The Law Enforcement Privilege Applies

OAG vigorously disputes Cuomo's characterizations of both OAG's law enforcement interest in keeping its interview memoranda confidential and the utility such memoranda would provide Cuomo in defense of this action. Cuomo Reply at pg. 23. Far from demonstrating a "compelling need" (*id.*) for the sought-after-materials, Cuomo has barely demonstrated even a hypothetical application for these records. *See supra* Section II, pgs. 6-7. Movant seeks to re-litigate the validity of the Report and the legality of the investigative process, but that is not relevant to the legal claims in this action, which concern Cuomo's direct interactions with Bennett and alleged retaliation. To compel OAG to provide Cuomo with the identities of and private information given by confidential witnesses who are irrelevant to Bennett's claims would undoubtably hinder OAG's ability to gain witnesses' cooperation in future investigations for fear OAG could be compelled as a nonparty to disclose their information in remote and irrelevant litigation by private litigants with ulterior motives.

Further, Cuomo's insistence that any confidentiality concerns can be cured by adherence to the confidentiality order is belied by the fact that one prominent reason OAG seeks to keep these memoranda confidential is because of the fear that defendants to this action themselves will use them to further harass and intimidate the witnesses. *See* OAG MOL at pg. 25; Longley Decl. ¶¶ 41-45.

### CONCLUSION

For the reasons set forth above, nonparty OAG respectfully requests that the Court grant its cross-motion to quash the Subpoena, deny Cuomo's motion in its entirety, and grant such other and further relief as the Court deems just and proper.

Dated:  New York, New York
        April 17, 2024

                                        Respectfully submitted,

                                        LETITIA JAMES
                                        Attorney General of the State of New York

                                        By:  /s/ Andrew Amer
                                        Andrew Amer
                                        Serena Longley
                                        Michael Jaffe
                                        James Cooney

                                        28 Liberty Street
                                        New York, NY 10005
                                        Phone: (212) 416-6127
                                        andrew.amer@ag.ny.gov

                                        Attorneys for Nonparty
                                        Office of the Attorney General