**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

CHARLOTTE BENNETT,

                    Plaintiff,

      v.

ANDREW M. CUOMO,
MELISSA DEROSA,
JILL DESROSIERS, and
JUDITH MOGUL,

                 Defendants.

---

No. 22 Civ. 07846 (VSB) (SLC)

**ORAL ARGUMENT**
**REQUESTED**

---

**FORMER GOVERNOR CUOMO'S OBJECTIONS TO MAGISTRATE JUDGE CAVE'S ORDER DENYING THE MOTIONS TO COMPEL COMPLIANCE WITH AND GRANTING THE MOTIONS TO QUASH SUBPOENAS ON THE OFFICE OF THE NEW YORK STATE ATTORNEY GENERAL; CLEARY GOTTLIEB STEEN & HAMILTON LLP; AND VLADECK, RASKIN & CLARK, PC**

Theresa Trzaskoma
Allegra Noonan
Brachah Goykadosh
SHER TREMONTE LLP
90 Broad Street, 23rd Floor
New York, New York 10004
Tel.: (212) 202-2600
Fax: (212) 202-4156
ttrzaskoma@shertremonte.com

Rita M. Glavin
Katherine E. Petrino
GLAVIN PLLC
156 West 56th Street, Ste. 2004
New York, NY 10019
Tel: (646) 693-5505
rglavin@glavinpllc.com

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND .................................................................................................................. 3

LEGAL STANDARD ........................................................................................................... 8

ARGUMENT ....................................................................................................................... 8

    I.     THE OAG IS NOT IMMUNE FROM THE
          FEDERAL DISCOVERY SUBPOENA ..................................................................... 8

         A.    State Sovereign Immunity Is Inapplicable
              to Federal Discovery Subpoenas .................................................................. 8

         B.    Even If Sovereign Immunity Were Applicable,
              the OAG Waived It .................................................................................... 17

    II.    SOVEREIGN IMMUNITY DOES NOT PROTECT PRIVATE
          LAW FIRMS FROM COMPLIANCE WITH FEDERAL SUBPOENAS .......... 20

    III.   THE REQUESTED MATERIALS ARE
          RELEVANT AND PROPORTIONAL ............................................................... 24

CONCLUSION ................................................................................................................... 25

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adler, Inc. v. Noyes*,
    285 N.Y. 34 (N.Y. 1941) ................................................................................. 22

*Allen v. Woodford*,
    544 F. Supp. 2d 1074 (E.D. Cal. 2008).................................................... 12, 21

*Alltel Commc'ns, LLC v. DeJordy*,
    675 F.3d 1100 (8th Cir. 2012) ...................................................................... 12

*Andrews v. Cruz*,
    No. 04 Civ. 0566 PAC RLE, 2006 WL 1984650 (S.D.N.Y. July 14, 2006) ............... 9, 17

*Barnes v. Black*,
    544 F.3d 807 (7th Cir. 2008) ........................................................................ 12

*Barrett v. United States*,
    853 F.2d 124 (2d Cir. 1988)........................................................................... 13

*Bonnet v. Harvest (U.S.) Holdings, Inc.*,
    741 F.3d 1155 (10th Cir. 2014) .................................................................... 13

*Breen v. Mortg. Comm'n*,
    285 N.Y. 425 (N.Y. 1941) ............................................................................ 22

*Catskill Dev., L.L.C. v. Park Place Ent. Corp.*,
    206 F.R.D. 78 (S.D.N.Y. 2002) ............................................................... 23, 24

*Charleston Waterkeeper v. Frontier Logistics*,
    488 F. Supp. 3d 240 (D.S.C. 2020)............................................................... 12

*Clissuras v. City Univ. of New York*,
    359 F.3d 79 (2d Cir. 2004)............................................................................ 11

*Collins v. City of Harker Heights, Tex.*,
    503 U.S. 115 (1992)...................................................................................... 14

*Commonwealth of Puerto Rico v. United States*,
    490 F.3d 50 (1st Cir. 2007)........................................................................... 12

*COMSAT Corp. v. Nat'l Sci. Found.*,
    190 F.3d 269 (4th Cir. 1999) ........................................................................ 12

*D'Ippolito v. Cities Serv. Co.*,
    39 F.R.D. 610 (S.D.N.Y. 1965) ................................................................................................... 19

*Ebbert v. Nassau Cnty.*,
    No. CV 05-5445(FB)(AKT), 2007 WL 674725 (E.D.N.Y. Mar. 5, 2007) ........................ 9

*Edelman v. Jordan*,
    415 U.S. 651 (1974) .............................................................................................................. 13, 20

*Ex parte Young*,
    209 U.S. 123 (1908) .......................................................................................................... *passim*

*Exxon Shipping Co. v. U.S. Dep't of Interior*,
    34 F.3d 774 (9th Cir. 1994) .................................................................................................. 12

*Fed. Maritime Comm'n v. S.C. State Ports Auth.*,
    535 U.S. 743 (2002) ............................................................................................................... 12

*Felix v. Cnty. of Nassau*,
    344 F.R.D. 441 (E.D.N.Y. 2023) ........................................................................................ 11

*Ford v. Reynolds*,
    316 F.3d 351 (2d Cir. 2003) ................................................................................................ 24

*Gollomp v. Spitzer*,
    568 F.3d 355 (2d Cir. 2009) ................................................................................................ 24

*Grand Canyon Skywalk Dev., LLC v. Cieslak*,
    Nos. 2:15-cv-01189-JAD-GWF, 2:13-cv-00596-JAD-GWF,
    2015 WL 4773585 (D. Nev. Aug. 13, 2015) ................................................................... 14

*Gristede's Foods, Inc. v. Poospatuck (Unkechauge) Nation*,
    No. 06-cv-1260 (KAM), 2009 WL 4981905 (E.D.N.Y. Dec. 10, 2009) .................... 19, 20

*Hafer v. Melo*,
    502 U.S. 21 (1991) ................................................................................................................. 20

*Hess v. PATH*,
    513 U.S. 30 (1994) ................................................................................................................. 11

*Houston Bus. J., Inc. v. Off. of Comptroller of Currency, U.S. Dep't of Treasury*,
    86 F.3d 1208 (D.C. Cir. 1988) ............................................................................................ 15

*In re Air Crash at Belle Harbor, N.Y. on Nov. 12, 2001*,
    490 F.3d 99 (2d Cir. 2007) .................................................................................................. 13

*In re Charter Oak Assocs.*,
    361 F.3d 760 (2d Cir. 2004) ................................................................................................ 17

iii

*In re Deposit Ins. Agency*,
    482 F.3d 612 (2d Cir. 2007)................................................................................ 17

*In re Joint E. & S. Dists. Asbestos Litig.*,
    891 F.2d 31 (2d Cir. 1989)................................................................................. 15

*In re Payment Card Interchange Fee & Merchant Disc. Antitrust Litig.*,
    05-MD-1720 (MKB), 2018 WL 4158290 (E.D.N.Y. Aug. 30, 2018)............................. 8

*Info. Res., Inc. v. Dun & Bradstreet Corp.*,
    999 F. Supp. 591 (S.D.N.Y. 1998) ..................................................................... 19

*Jackson v. AFSCME Local 196*,
    Civ. No. 3:07CV0471 (JCH), 2008 WL 1848900 (D. Conn. Apr. 25, 2008)............. 11, 21

*King v. Cuomo*,
    465 F. App'x 42 (2d Cir. 2012) ......................................................................... 24

*Kirschner v. Klemons*,
    No. 99 Civ. 4828(RCC), 2005 WL 1214330 (S.D.N.Y. May 19, 2005) .......................... 9

*Lapides v. Bd. of Regents of Univ. Sys. of Georgia*,
    535 U.S. 613 (2002)....................................................................................... 17

*Leitner v. Westchester Cmty. Coll.*,
    779 F.3d 130 (2d Cir. 2015)............................................................................. 11

*Lewis v. Clarke*,
    581 U.S. 155 (2017)............................................................................. 21, 23, 24

*Mallon v. N.Y. State Off. of Mental Health*,
    No. 10 Civ. 804 (LAK)(MHD), 2011 WL 13521200 (S.D.N.Y. June 1, 2011).............. 22

*Mancuso v. N.Y. State Thruway Auth.*,
    86 F.3d 289 (2d Cir. 1996)......................................................................... 8, 11

*McGehee v. Neb. Dep't of Corr. Servs.*,
    968 F.3d 899 (8th Cir. 2020) ........................................................................... 12

*McGinty v. New York*,
    251 F.3d 84 (2d Cir. 2001)............................................................................... 11

*Monaco v. Mississippi*,
    292 U.S. 313 (1934)........................................................................................ 8

*Monterey Bay Confederation of Clubs v. City of Santa Cruz*,
    No. 13-CV-01231-LHK, 2013 WL 6698400 (N.D. Cal. Dec. 19, 2013) ........................ 21

*NGV Gaming, Ltd. v. Upstream Point Molate, LLC*,
 Nos. C-04-3955 SC (JCS), C-05-1605 SC,
 2009 WL 4258550 (N.D. Cal. Nov. 24, 2009) ............................................................... 18

*Pierce v. Demmon*,
 No. 9:14-CV-1028 (GTS/DEP), 2015 WL 7077227 (N.D.N.Y. Nov. 12, 2015) ........... 16

*Plymouth Res., LLC v. Norse Energy Corp. USA*,
 Civ. Action No. 3:10-CV-909 (NAM/DEP),
 2011 WL 13234733 (N.D.N.Y. Dec. 1, 2011) .................................................................. 9

*Polk's Lessee v. Windel*,
 19 F. Cas. 940 (C.C.D. Tenn. 1817) ............................................................................. 10

*Pooler v. Esquir*,
 No. 14-CV-4655(F), 2017 WL 3498284 (W.D.N.Y. Aug. 16, 2017) ............................... 9

*Roache v. Fisher*,
 No. 9:18-CV-825 (GLS/ATB), 2021 WL 2366981 (N.D.N.Y. Feb. 8, 2021)............. 9, 16

*Rouson ex rel. Estate of Rouson v. Eicoff*,
 No. 04-CV-2734 (ARR)(KAM), 2006 WL 2927161 (E.D.N.Y. Oct. 11, 2006)............... 9

*Russell v. Jones*,
 49 F.4th 507 (5th Cir. 2022) ........................................................................................ 16

*Russell v. Scott*,
 Civil Action No. 5:20-cv-184-gwc-kjd, 2022 WL 3084339 (D. Vt. Aug. 3, 2022) ..... 9, 16

*Smith v. Baugh*,
 No. 16-CV-00906-LJV-LGF, 2023 WL 2768277 (W.D.N.Y. Apr. 4, 2023)................... 9

*Smith v. Benson*,
 No. 08-CV-0485Sr, 2010 WL 11750690 (W.D.N.Y. Nov. 4, 2010)................................ 9

*Smith v. Oneida Emp. Servs.*,
 No. 5:08-CV-151 (FJS/GJD), 2009 WL 890614 (N.D.N.Y. Mar. 29, 2009) .................. 23

*St. Vincent Med. Grp., Inc. v. U.S. Dep't of Just.*,
 71 F.4th 1073 (7th Cir. 2023) ...................................................................................... 12

*Thompson v. Richter*,
 Civ. Action No. 7:22-v-00014-O, 2023 WL 7986341 (N.D. Tex. Nov. 17, 2023) ......... 16

*Tripathy v. Schneider*,
 No. 21-CV-6392FPG, 2023 WL 8467531 (W.D.N.Y. Dec. 7, 2023) ............................. 9

*U.S. Dep't of Just. v. Ricco Jonas*,
    24 F.4th 718 (1st Cir. 2022).......................................................................... 12, 21

*U.S. E.P.A. v. Gen. Elec. Co.*,
    197 F.3d 592 (2d Cir. 1999).................................................................... 10, 11, 15

*United States v. Caldwell*,
    2 U.S. 333 (C.C.D. Pa. 1795)...................................................................... 10

*United States v. James*,
    980 F.2d 1314 (9th Cir. 1992) ..................................................................... 18

*United States v. Juv. Male 1*,
    431 F. Supp. 2d 1012 (D. Ariz. 2006) ......................................................... 21

*United States v. Menominee Tribal Enters.*,
    Case No. 07-C-316, 2008 WL 2273285 (E.D. Wis. June 2, 2008)................. 18

*United States v. Planned Parenthood Fed'n of Am.*,
    No. 2:21-CV-022-Z, 2022 WL 21758612 (N.D. Tex. Dec. 6, 2022) ............. 16

*United States v. Reynolds*,
    345 U.S. 1 (1953)........................................................................................ 15

*United States v. Velarde*,
    40 F. Supp. 2d 1314 (D.N.M. 1999) ........................................................... 18

*Va. Dep't of Corr. v. Jordan*,
    921 F.3d 180 (4th Cir. 2019) ...................................................................... 21

*Va. Off. for Prot. & Advoc. v. Stewart*,
    563 U.S. 247 (2011).................................................................................... 23

*Winn v. Patterson*,
    34 U.S. 663 (1835)..................................................................................... 10

*Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*,
    466 F.3d 232 (2d Cir. 2006)................................................................... 11, 21

*Wopsock v. Dalton*,
    No. 2:12-cv-0570-RJS-EJF, 2018 WL 1578086 (D. Utah Mar. 29, 2018)........ 13, 24

**Statutes**

28 U.S.C. § 636......................................................................................... 8

N.Y. Exec. Law § 63(8) .............................................................................. 3

**Rules**

Fed. R. Civ. P. 45 ................................................................................................ *passim*

Fed. R. Civ. P. 72 ....................................................................................................... 8

Defendant former Governor Andrew M. Cuomo, by and through his undersigned counsel, respectfully submits these Objections to Magistrate Judge Cave's Opinion and Order, filed at ECF No. 272 (the "Order"), denying Governor Cuomo's motions to compel the Office of New York State Attorney General's ("OAG"), Cleary Gottlieb Steen & Hamilton LLP's ("Cleary") and Vladeck, Raskin & Clark, PC's ("Vladeck") (collectively, the "Firms") compliance with subpoenas—and granting the OAG's and the Firms' respective motions to quash subpoenas that seek materials relevant to Plaintiff Charlotte Bennett's ("Bennett" or "Plaintiff") allegations and Governor Cuomo's defenses. Because the Order is contrary to law, Governor Cuomo respectfully requests that the Court vacate it and remand it for resolution of unresolved privilege objections.

## PRELIMINARY STATEMENT

Since the ratification of the Eleventh Amendment in 1795, nearly 230 years ago, federal courts have enforced compliance with subpoenas served on state entities and officers. The Order departs from this long history, nearly as old as the United States itself, and from nearly every other court to have considered the issue, to rule that state sovereign immunity bars the enforcement of federal discovery subpoenas. It applies this ruling not only to the OAG, but also to two private law firms whose employees were once deputized to conduct the investigation at issue. And, even though the OAG concedes it produced some of the same or related materials to multiple federal entities, the Order further concludes that the OAG has not waived its apparent sovereign immunity.

Those holdings are patently contrary to law. As an initial matter, state sovereign immunity only applies to "suits" brought against states. Across jurisdictions, federal discovery subpoenas are not "suits" for purposes of sovereign immunity because they do not implicate the treasury and dignity interests undergirding state sovereign immunity. Second Circuit precedent that subpoenas on federal agencies trigger federal sovereign immunity occurs in the separation of powers context

1

and does not control the federalism issues at stake in considering the application of state sovereign immunity to federal discovery subpoenas. Indeed, similar precedents in other circuits coexist with the majority rule that state sovereign immunity is inapplicable to federal discovery subpoenas.

But even if federal discovery subpoenas are "suits" for purposes of state sovereign immunity, other exceptions apply. If federal discovery subpoenas are "suits," for example, they are "suits" brought by the United States because, under the Federal Rules of Civil Procedure, they are issued by attorneys as agents for the originating federal district court. Under the Eleventh Amendment, suits brought against states by the United States do not implicate state sovereign immunity. Likewise, the *Ex parte Young* exception applies such that movants can seek an order enforcing compliance with subpoenas to remedy the ongoing violation of the Federal Rules of Civil Procedure inherent in noncompliance. These conclusions, adopted by a plethora of courts across the country, comport with the federalist structure of the United States government and permit federal courts to exercise their evidence-gathering function to properly adjudicate disputes within their jurisdiction. Without the ability to enforce subpoenas issued under their auspices, federal courts would be powerless in many cases to adjudicate and remedy violations of federal law, including constitutional violations carried out by state actors.

Moreover, even if the OAG somehow enjoys sovereign immunity (which it does not), it has waived that immunity in this case. By producing the requested materials and related documents to the DOJ in aid of prosecution against Governor Cuomo, it has effectuated a classic waiver. And by submitting similar materials to another federal court in aid of an affirmative motion to quash on grounds of relevance and privilege, it has effectuated a second waiver.

And, even if the OAG has not waived its purported sovereign immunity, there is no legal basis to conclude that the Firms have sovereign immunity. The Firms are fully private: the Firms

were never deputized to be agents of the OAG, and even the individual attorneys who ran the investigation are no longer deputized. And, regardless, the subpoenas against the Firms neither threaten the state treasury nor run any risk that any state actor will be haled into court or held in contempt for noncompliance with a court order. Second Circuit precedent makes clear that, under these conditions, state sovereign immunity cannot apply.

Setting aside sovereign immunity, the Order's holding that some of the requested materials are irrelevant is also contrary to Rule 26's relevance standards. Materials concerning other Executive Chamber employees—whether or not they reference Plaintiff by name—relate to Plaintiff's allegations of a hostile work environment, including because they likely concern whether Governor Cuomo's conduct was gender-based, as Plaintiff alleges, or expressed to both men and women.

Accordingly, Governor Cuomo respectfully requests that the Court vacate the order and remand for consideration of outstanding privilege issues.

## BACKGROUND

### *The OAG Investigation & Report*

In February 2021, Plaintiff made public allegations of sexual harassment against Governor Cuomo. On March 1, 2021, under New York Executive Law § 63(8), Governor Cuomo directed the OAG to select independent counsel to investigate the allegations and make a public report of the findings. *See* ECF No. 201 ¶ 3. The OAG deputized attorneys from the Firms for that purpose. *Id.* ¶ 4.

On August 3, 2021, the OAG released the OAG Report, which credited allegations by eleven women, including Plaintiff and other former and current Executive Chamber employees, that "the Governor engaged in conduct constituting sexual harassment under federal and New York

State law"[1] *Id.* ¶ 5 at 1. According to the OAG Report, investigators "interviewed 179 individuals and took testimony under oath from 41 of them." *Id.* ¶ 5 at 15. Although Attorney General James promised that she would release the underlying evidence, *see id.* ¶ 6, the OAG disclosed to the public only a carefully curated subset of those materials—no interview memos or transcripts—on the day the Report was released, *see id.* ¶ 7. On August 10, 2021, one week after the release of the OAG Report, and after the OAG refused to provide Governor Cuomo with the evidence underlying the Report, Governor Cuomo announced his resignation. Soon after, Attorney General James backtracked, stating that she would not release all the underlying evidence at the request of several district attorneys who were conducting investigations based on the Report. *See id.* ¶ 8.[2]

By January 20, 2022, the OAG released all transcribed testimony from the 41 witnesses who were interviewed under oath. *See id.* ¶ 10. Notably, however, certain information that would undermine the credibility of certain complainants was redacted. *Id.* ¶ 11. And many of those transcripts contained material exculpatory evidence not discussed in the OAG Report. The OAG never made available—either to the public or Governor Cuomo (beyond what he received in discovery from the Albany County District Attorney)—any interview memoranda or notes.[3] Still,

---

[1] Governor Cuomo vehemently denies any misconduct and has raised numerous issues regarding the investigation, the Report, and the OAG's ensuing conduct in the aftermath of the Report's release. Discovery in this case and in the Trooper 1 Action have borne out that the OAG's investigation was shoddy and unreliable. Among other things, the OAG investigators utterly failed to enforce subpoenas to Plaintiff and other complainants and thus failed to obtain or consider critical evidence that completely guts their allegations of harassment.

[2] In late December 2021 and January 2022, all district attorney offices closed their investigations without bringing any charges against Governor Cuomo. The sole criminal complaint against Governor Cuomo (a misdemeanor groping allegation brought by Albany County Sheriff without consultation with the Albany District Attorney) was dismissed on January 7, 2022. In dismissing the case, the Albany County District Attorney concluded that "after review of all the available evidence we have concluded that we cannot meet our burden at trial." *See* ECF No. 201 ¶ 18. Prior to dismissal, some OAG interview memos were disclosed to Governor Cuomo as part of discovery required by statute. Those memos contained material exculpatory evidence that was not disclosed in the OAG Report or included in the publicly released OAG transcripts. *See generally id.* ¶ 11.

[3] The OAG has likewise resisted disclosure in response to Freedom of Information Law ("FOIL"), N.Y. Pub. Officers L. § 84 requests by the Daily News and by Governor Cuomo. ECF No. 201 ¶ 13; Exhibit A, Tr. of May 8, 2024 Oral Arg. ("Ex. A") at 69:12-70:4.

Governor Cuomo reasonably believes that many of the 179 witnesses contradicted the complainants, provided information exculpatory to Governor Cuomo, or made statements during the informal interview that were later omitted from their testimony under oath.

Meanwhile, in mid-August 2021, the United States Department of Justice ("DOJ") and the United States Attorney's Office for the Eastern District of New York ("EDNY") requested materials from the OAG to aid a federal civil investigation of Governor Cuomo and the Executive Chamber under Title VII. Order at 7. The OAG provided materials to the DOJ. *Id.* On January 26, 2024, the DOJ, EDNY, and the Executive Chamber entered into a settlement agreement (the "DOJ/EDNY Agreement") announcing the DOJ's legally non-binding findings that Governor Cuomo subjected several female state employees to a "hostile work environment." *Id.* at 10.[4]

***Plaintiff's Complaint and Its Reliance on the OAG Report***

On September 14, 2022, Plaintiff initiated this lawsuit by filing the Complaint, alleging that while working in the Executive Chamber, Governor Cuomo sexually harassed her "and ten other women." Compl. ¶ 135. Plaintiff emphasizes the OAG Report's conclusion that Governor Cuomo "had created a hostile work environment." *Id.* ¶ 6. She alleges that the other female staffers wore "dresses and high heels" when the Governor was in the office because it was "open knowledge" that Governor Cuomo "preferred to work with women who were pretty and dressed in a stereotypically feminine and sexy manner." *Id.* ¶ 16. She moreover asserts that Governor Cuomo forced her, unlike her male co-workers, to learn and sing "Danny Boy" and compete against him in a push-up contest. *Id.* ¶¶ 24-26, 30. And she further contends that she was "[f]earful of retaliation" in the Executive Chamber. *Id.* ¶ 85.

---

[4] *See* Agreement Between the United States and the State of New York Executive Chamber Regarding Workplace Reform, Dep't of Just. (Jan. 26, 2024), *available at* https://www.justice.gov/crt/media/1335301/dl?inline.

***The Subpoenas & the Noncompliance of the OAG and the Firms***

The Subpoena to the OAG (the "OAG Subpoena") and the Subpoenas to the Firms (the "Firm Subpoenas," with the OAG Subpoena, the "Subpoenas") "command[]" production of two narrow categories of materials related to the OAG's investigation and Report: (1) witness interview memos and (2) unredacted videos and transcripts of witnesses who provided sworn testimony. ECF Nos. 192-1, 192-2, 201-1. The requests encompass only statements concerning Plaintiff, employees of the Executive Chamber under Governor Cuomo, Trooper 1,[5] Ms. Boylan, or any witness who referenced Plaintiff, Trooper 1, or Ms. Boylan (the "Requested Materials"). ECF Nos. 192-1, 192-2, 201-1.

On September 12, 2023, the OAG provided Responses and Objections refusing to comply with the OAG Subpoena in any respect, principally on the grounds of "broad sovereign immunity." ECF No. 201-2. Thereafter, the OAG amended its Responses and Objections on November 21, 2023, maintaining its sovereign immunity and other objections. ECF No. 201-3. Specifically, the OAG also objected to the Subpoena to the extent it "seeks documents that are not relevant to any party's claim or defense" and "as overly broad and unduly burdensome." *Id.* The Firms' Responses and Objections to the Firm Subpoenas objected on the same grounds. ECF No. 192-3.

The OAG's and the Firms' refusal to produce any documents in this action comes in the wake of an ongoing 19-month discovery dispute in the Trooper 1 Action. On July 11, 2022, Governor Cuomo served a Rule 45 subpoena on the OAG in that case, and the OAG broadly objected. ECF No. 201-4; ECF No. 201 ¶ 22. Notably, in its opposition to Governor Cuomo's motion to compel and in support of a cross-motion to quash, the OAG raised for the first time in

---

[5] Although the Order mentions Trooper 1, Governor Cuomo no longer seeks materials concerning Trooper 1 and so represented below. ECF No. 200 at 7 n.7.

that litigation[6]—and, as far as we are aware—for the first time *ever*, its threshold objection that the effort to enforce the discovery subpoena was barred by state sovereign immunity. ECF No. 201 ¶ 23. Despite its assertion of immunity, the OAG voluntarily produced certain documents. *Id.*

On July 21, 2023, the Trooper 1 court denied Governor Cuomo's motion to compel, but reserved ruling on the OAG's motion to quash. ECF No. 201-5. The court concluded that the subpoena was overly broad because it sought large amounts of investigative material beyond Trooper 1's own allegations. *Id.* at 27. After Trooper 1's counsel confirmed that Trooper 1 intended to rely on the OAG Report itself, ECF No. 201-6 at 1-2, and in connection with the OAG's still-pending motion to quash, the court ordered the OAG to provide certain witness statements for *in camera* review to assess the OAG's privilege arguments as to a narrowed version of the subpoena.[7] Order at 14. The OAG complied. *Id.* Though the court denied the motion for reconsideration concerning the motion to compel, *id.* at 15, the OAG's privilege assertions remain *sub judice*.

### *The Motions to Compel, the Cross-Motions to Quash, and the Order*

On February 23, 2024, in this action, Governor Cuomo moved to compel the OAG's compliance with the OAG Subpoena, ECF No. 199, and on March 8, 2024 he moved to compel the Firms' compliance with the Firm Subpoenas, ECF No. 207. The OAG and the Firms all cross-moved to quash. ECF Nos. 222, 227. By April 17, 2024, the motions were fully briefed. *See* ECF No. 243. On May 8, 2024, Judge Cave held joint oral argument on all of the motions. *See* Ex. A.

---

[6] The OAG did not raise sovereign immunity objections in its initial responses and objections but instead raised the defense for the first time in its papers opposing Governor Cuomo's motion to compel. ECF No. 201 ¶ 23.

[7] Because Trooper 1's complaint incorporates *all* the allegations from the OAG Report and expressly relies on the OAG investigation, the original subpoena to the OAG was broad. *See* ECF No. 201-4. Though Governor Cuomo agreed to narrow the requests significantly, the Trooper 1 denied the motion to compel on breadth grounds. *See* ECF No. 201-5 at 27. Governor Cuomo moved for reconsideration and argued that the court should have narrowed the subpoena rather than refuse to enforce it. *See* ECF No. 201-6.

On June 12, 2024, the Order quashed the Subpoenas. The Order concludes that the Subpoenas cannot issue because the OAG and the Firms all enjoy sovereign immunity. Order at 20-36. The Order further holds that the OAG has not waived its sovereign immunity. *Id.* at 36-41. Even though these holdings are dispositive, the Order also concludes that, while Requests 1(a), 1(d), 1(e), 2(a), 2(d), and 2(e) of the Subpoenas are relevant and proportional subject to minor narrowing, Requests 1(b), 1(c), 2(b), and 2(c) are not sufficiently relevant or proportional. *Id.* at 42-47. The Order does not rule on the OAG's privilege arguments. *Id.* at 47-48.

These objections, filed under 28 U.S.C. § 636(b)(1)(A) and Federal Rule of Civil Procedure 72(a), follow.

## LEGAL STANDARD

Pursuant to 28 U.S.C. § 636(b)(1)(A) and Federal Rule of Civil Procedure 72(a), a district judge must modify or set aside any part of a magistrate judge's order that is "clearly erroneous or is contrary to law." In reviewing issues of law, there is "no practical difference between a court's application of the 'contrary to law' standard and the *de novo* standard." *In re Payment Card Interchange Fee & Merchant Disc. Antitrust Litig.*, 05-MD-1720 (MKB), 2018 WL 4158290, at *9 (E.D.N.Y. Aug. 30, 2018).

## ARGUMENT

### I.  THE OAG IS NOT IMMUNE FROM THE FEDERAL DISCOVERY SUBPOENA

#### A.  State Sovereign Immunity Is Inapplicable to Federal Discovery Subpoenas

Whether under the Eleventh Amendment or the residuum of common law, the Constitution provides that states "shall be immune" but only from suits brought by private citizens in federal court. *Monaco v. Mississippi*, 292 U.S. 313, 322 (1934). State sovereign immunity has two main rationales: to protect a state's treasury and to protect its dignity as a joint sovereign. *See Mancuso v. N.Y. State Thruway Auth.*, 86 F.3d 289, 293 (2d Cir. 1996). The enforcement of federal discovery

8

subpoenas does not sufficiently implicate either rationale. From the time immediately following the passage of the Eleventh Amendment to the present day, federal discovery subpoenas on state entities have fallen outside the ambit of state sovereign immunity. The idea of applying state sovereign immunity to federal discovery subpoenas was so unheard of that the OAG had never raised that objection before moving to quash in the Trooper 1 Action. Even so, breaking from longstanding precedent, the Order holds that states need not comply with federal discovery subpoenas under state sovereign immunity. That holding is contrary to law for several reasons.

*First*, a federal discovery subpoena is not a "suit" for purposes of state sovereign immunity. The Order acknowledges that, in many other courts, federal discovery subpoenas are not "suits" in this context, even if the Second Circuit has never addressed the question. Order at 24-25 (citing cases from the First, Seventh, and Eighth Circuits, as well as several district courts in the Fourth, Ninth, and D.C. Circuits). These cases reason that federal discovery subpoenas do not seek payment from the state's treasury or impinge on the state's dignity in any meaningful way.

Moreover, the Order acknowledges that courts within the Second Circuit have routinely enforced federal discovery subpoenas against state agencies and officials. Order at 25-26 (citing several cases spanning several district courts in the Second Circuit).[8]

---

[8] There are many such cases. *See, e.g.*, *Russell v. Scott*, Civil Action No. 5:20-cv-184-gwc-kjd, 2022 WL 3084339, at *11 (D. Vt. Aug. 3, 2022); *Roache v. Fisher*, No. 9:18-CV-825 (GLS/ATB), 2021 WL 2366981, at *6 (N.D.N.Y. Feb. 8, 2021), *adopted sub nom. Roache v. Connell*, 2021 WL 1920538, at *2 (N.D.N.Y. May 13, 2021); *Plymouth Res., LLC v. Norse Energy Corp. USA*, Civ. Action No. 3:10-CV-909 (NAM/DEP), 2011 WL 13234733, at *2 (N.D.N.Y. Dec. 1, 2011); *Smith v. Benson*, No. 08-CV-0485Sr, 2010 WL 11750690, at *2 (W.D.N.Y. Nov. 4, 2010); *Ebbert v. Nassau Cnty.*, No. CV 05-5445(FB)(AKT), 2007 WL 674725, at *11 (E.D.N.Y. Mar. 5, 2007); *Rouson ex rel. Estate of Rouson v. Eicoff*, No. 04-CV-2734 (ARR)(KAM), 2006 WL 2927161, at *8 (E.D.N.Y. Oct. 11, 2006); *Andrews v. Cruz*, No. 04 Civ. 0566 PAC RLE, 2006 WL 1984650, at *3 (S.D.N.Y. July 14, 2006); *Kirschner v. Klemons*, No. 99 Civ. 4828(RCC), 2005 WL 1214330, at *4 (S.D.N.Y. May 19, 2005); *see also Smith v. Baugh*, No. 16-CV-00906-LJV-LGF, 2023 WL 2768277, at *5 (W.D.N.Y. Apr. 4, 2023) (denying defendant's motion to quash subpoena on non-party New York State Commission of Correction); *Tripathy v. Schneider*, No. 21-CV-6392FPG, 2023 WL 8467531, at *2 (W.D.N.Y. Dec. 7, 2023) (anticipating Rule 45 subpoena against New York state agency); *Pooler v. Esquir*, No. 14-CV-4655(F), 2017 WL 3498284, at *2 (W.D.N.Y. Aug. 16, 2017) (reasoning that it was "Plaintiff's responsibility to seek [] evidence by issuing a Rule 45 subpoena" to a New York state agency (emphasis added)).

Critically, courts have been in the practice of enforcing subpoenas against state agencies and officials since the time right after the enactment of the Eleventh Amendment. In *United States v. Caldwell*, 2 U.S. 333 (C.C.D. Pa. 1795)—a Supreme Court case decided less than two months after the ratification of the Eleventh Amendment—the court ordered a delay before trial so the defendant could serve nonparty subpoenas on two state judges. *Id.* at 334. One Justice remarked in concurrence that "[i]f we issue a subpoena to a Justice or a Judge, and it is not obeyed, we should be more strict in our proceedings against such characters . . . ." *Id.* at 334 n.*. Condoned by the Framers, subpoenas on state offices continued thereafter. *See Winn v. Patterson*, 34 U.S. 663, 676-677 (1835) (outlining the "common practice" of subpoenas to state offices for records); *Polk's Lessee v. Windel*, 19 F. Cas. 940, 941 (C.C.D. Tenn. 1817) (contemplating that records might be produced "on a subpoena duces tecum to the secretary" of North Carolina), *rev'd on other grounds sub nom. Polk's Lessee v. Wendell*, 18 U.S. 293 (1820).

Against the weight of longstanding precedent, the Order concludes that federal discovery subpoenas are suits for purposes state sovereign immunity. It cites to the Second Circuit's ruling in *United States Environmental Protection Agency v. General Electric Company*, 197 F.3d 592 (2d Cir. 1999) ("*EPA*") that a federal discovery subpoena on a federal agency is barred by sovereign immunity absent waiver. *Id.* at 597.[9] According to the Order, under the reasoning in *EPA*, both the subpoena itself and a corresponding order to enforce the subpoena invoke the federal judicial power to "compel" the OAG to act subject to contempt and sanctions for non-compliance, and thus substantially impinge upon its dignity. Order at 26-27.

---

[9] To be sure, the Second Circuit is clear that there has been a waiver of such sovereign immunity under the Administrative Procedure Act, and that subpoenas can proceed against federal agencies. *EPA*, 197 F.3d at 597.

In this respect, the Order diverges from *Jackson v. AFSCME Local 196*, Civ. No. 3:07CV0471 (JCH), 2008 WL 1848900 (D. Conn. Apr. 25, 2008), which held that *EPA* was "not controlling" over the pertinent question because federal discovery subpoenas against state agencies do not implicate the state's treasury, and "courts focus on the Eleventh Amendment's purpose to prevent federal court judgments that would have to be paid out of a state's treasury." *See id.* at *2-3. Instead, the Order reasons that *EPA* requires it to align with the decision in *Felix v. County of Nassau*, 344 F.R.D. 441 (E.D.N.Y. 2023)—the only prior case in this circuit ever quashing a federal discovery subpoena on grounds of state sovereign immunity—that a subpoena is "exactly the type of coercive judicial process" that is protected by sovereign immunity. *Id.* at 445. According to the Order, *EPA* requires the conclusion that the subpoena insults the OAG's dignity, and, in the Second Circuit, the dignity rationale trumps the treasury rationale. Order at 27-29.

But Second Circuit precedent does not require the Court to follow *Felix* over *Jackson*. To start, several Second Circuit cases state plainly that "the vulnerability of the State's purse" is "the most salient factor in Eleventh Amendment determinations." *Leitner v. Westchester Cmty. Coll.*, 779 F.3d 130, 134 (2d Cir. 2015) (quoting *Hess v. PATH*, 513 U.S. 30, 47-48 (1994)) (emphasis added); *accord Clissuras v. City Univ. of New York*, 359 F.3d 79, 82 (2d Cir. 2004); *McGinty v. New York*, 251 F.3d 84, 100 (2d Cir. 2001); *Mancuso*, 86 F.3d at 293. Accordingly, *Jackson* is more a product of Second Circuit rulings than *Felix*.

Moreover, because federal discovery subpoenas are not akin to lawsuits, they do not effectuate a substantial infringement on state dignity. Second Circuit precedent provides that the dignity rationale for state sovereign immunity (as opposed to federal sovereign immunity) is tied not to the application of just any involuntary judicial process, but instead to the "summon[ing]" of states as "defendants to answer the complaints of private persons." *Woods v. Rondout Valley Cent.*

11

*Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 241 (2d Cir. 2006); *see also Fed. Maritime Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 760 (2002) (applying state sovereign immunity to agency adjudications given "the strong similarities between [agency] proceedings and civil litigation"). The long history of enforcement of federal discovery subpoenas against state agencies and officers squarely demonstrates the near-universal understanding that such subpoenas do not similarly violate the dignity protected by state sovereign immunity.

The foregoing is precisely why courts in other circuits routinely hold that federal discovery subpoenas are not subject to state sovereign immunity, even when subpoenas are subject to federal and/or tribal sovereign immunity. *Compare, e.g.*, *Commonwealth of Puerto Rico v. United States*, 490 F.3d 50, 57 (1st Cir. 2007) (treating subpoena against federal agency as "suit[]" against the federal government); *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 277 (4th Cir. 1999) (same); *St. Vincent Med. Grp., Inc. v. U.S. Dep't of Just.*, 71 F.4th 1073, 1075 (7th Cir. 2023) (same); *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 778 (9th Cir. 1994) (same); *Alltel Commc'ns, LLC v. DeJordy*, 675 F.3d 1100, 1105 (8th Cir. 2012) (treating subpoena against Indian tribe as "suit" subject to tribal sovereign immunity); *with, e.g.*, *U.S. Dep't of Just. v. Ricco Jonas*, 24 F.4th 718, 727 (1st Cir. 2022) (reasoning that federal discovery subpoenas do not trigger state sovereign immunity); *Charleston Waterkeeper v. Frontier Logistics*, 488 F. Supp. 3d 240, 251 (D.S.C. 2020) (same); *Barnes v. Black*, 544 F.3d 807, 812 (7th Cir. 2008) (same); *Allen v. Woodford*, 544 F. Supp. 2d 1074, 1079 (E.D. Cal. 2008) (same); *McGehee v. Neb. Dep't of Corr. Servs.*, 968 F.3d 899, 901 (8th Cir. 2020) (same), *vacated on reh'g on other grounds* at 987 F.3d 785 (8th Cir. 2021). Nothing in the Second Circuit requires a different result here.

**Second**, even if Second Circuit precedent requires the conclusion that a federal discovery subpoena is a "suit," Order at 26-29, it is not a private suit covered by state sovereign immunity

because, if anything, it is a "suit" by the United States. "[N]othing in the Eleventh Amendment has ever been seriously supposed to prevent a State's being sued by the United States." *Barrett v. United States*, 853 F.2d 124, 127 (2d Cir. 1988) (quotations omitted).

A Rule 45 subpoena is not a private suit because, while it is signed by a private attorney, it is issued on behalf of and pursuant to the authority of the originating federal district court. Indeed, the Order acknowledges that the subpoenas were "issued pursuant to the Court's authority under Rule 45," Order at 26, which is consistent with commentary to Rule 45 specifying that the Rule "put[s] the attorney in a position similar to that of the administrative agency, as a public officer entitled to use the court's contempt power to investigate facts in dispute." Fed. R. Civ. P. 45 advisory committee's note to 1991 amendment. This Circuit has adopted the commentary's characterization. *See In re Air Crash at Belle Harbor, N.Y. on Nov. 12, 2001*, 490 F.3d 99, 102 & n.3 (2d Cir. 2007) (describing Rule 45 subpoena as signed by counsel "on behalf of the District Court" even when the demands in the subpoena are not endorsed by that court). Consequently, if a federal discovery subpoena is a "suit" for purposes of state sovereign immunity, it is a "suit" brought on behalf of the United States to which states are not immune.

***Third***, even if federal discovery subpoenas are private "suits," ordering compliance falls within the ambit of "prospective relief" permitted under *Ex parte Young*. Under *Ex parte Young*, states are not immune to suits that seek prospective injunctive relief as opposed to retrospective relief targeting state funds. *See* 209 U.S. 123, 158-159 (1908); *see also Edelman v. Jordan*, 415 U.S. 651, 664-665 (1974). Thus, courts have concluded that enforcing compliance with federal discovery subpoenas constitutes "prospective injunctive relief" and is "not subject to the doctrine of sovereign immunity." *Bonnet v. Harvest (U.S.) Holdings, Inc.*, 741 F.3d 1155, 1162 n.1 (10th Cir. 2014); *see also Wopsock v. Dalton*, No. 2:12-cv-0570-RJS-EJF, 2018 WL 1578086, at *2-3

(D. Utah Mar. 29, 2018); *Grand Canyon Skywalk Dev., LLC v. Cieslak*, Nos. 2:15-cv-01189-JAD-GWF, 2:13-cv-00596-JAD-GWF, 2015 WL 4773585, at *5-7 (D. Nev. Aug. 13, 2015).

The Order concludes that *Ex parte Young* does not apply because the OAG's assertion of sovereign immunity and other objections as grounds for non-production "was the proper mechanism under the Federal Rules of Civil Procedure," and therefore the OAG has not violated any federal right. Order at 30-31. That holding conflicts with the structure and purpose of Rule 45. A sovereign's procedural compliance with a federal rule does not shield it from *Ex parte Young*. For example, though a state may comply with procedural due process requirements, it still may violate substantive due process requirements. *See Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992). In the same way, a nonparty may comply with the procedural requirements of Rule 45 by serving objections, but still fail to comply with the substantive requirements of Rule 45—namely, to produce relevant and proportional materials. Even where there is procedural compliance, substantive noncompliance with a federal rule permits application of *Ex parte Young*.

The Order also concludes that *Ex parte Young* does not apply because there is no private cause of action under the Rules Enabling Act or the Federal Rules of Civil Procedure. Order at 31-33. In so concluding, the Order skirts its own holding that the subpoena *itself* is an "action" for purposes of state sovereign immunity. Under that framework, the "cause of action" for the subpoena appears in Rule 45(a)(3), which permits an attorney to "issue and sign a subpoena if the attorney is authorized to practice in the issuing court." The "cause of action" for the motion to compel enforcement appears in FRCP 45(d)(2)(B)(i), which provides that, "on notice," the serving party "may move the court for the district where compliance is required for an order compelling production or inspection." Concluding that these are not authorized "causes of action" by private

14

parties for purposes of *Ex parte Young* is completely at odds with the conclusion that the subpoena and motion to compel are "actions" for purposes of state sovereign immunity.

**Fourth**, permitting federal discovery subpoenas against state entities comports with—indeed is necessary to—our federalist judicial system, which makes cases like *EPA* inapposite. Federal entities stand in a different position than state entities when it comes to federal discovery subpoenas, where the separation of powers underlies the federal sovereign immunity analysis. Separation of powers was in fact at the heart of the Second Circuit's decision in *EPA*: by permitting motions to compel subpoenas against federal agencies under the APA, the Second Circuit "maintain[ed] the appropriate balance" between executive interests in "preventing interference with government functions" and judicial interests in "discovering important information relevant to the prosecution or defense of private litigation." *See EPA*, 197 F.3d at 599.[10]

But separation of powers is of no concern if an attorney, on behalf of a federal district court, "sues" a state for information for use in federal lawsuit. The predominant concern in these circumstances is federal supremacy. To carry out their constitutional mandate to hear cases within their jurisdiction, federal courts require the ability to issue subpoenas and gather information. *See Houston Bus. J., Inc. v. Off. of Comptroller of Currency, U.S. Dep't of Treasury*, 86 F.3d 1208, 1213 (D.C. Cir. 1988) ("[T]he discovery devices in federal court stand available to facilitate the resolution of actions cognizable in federal court."). Thus, federal judicial control over evidence cannot be "abdicated to the caprice" of state executive officers. *See United States v. Reynolds*, 345 U.S. 1, 9-10 (1953). The Order's contrary holding threatens the ability of federal courts to carry

---

[10] Relatedly, the Second Circuit has used "separation of powers" as a "wellspring" for other issues related to federal sovereign immunity—like issues concerning the "discretionary function exception" read into federal sovereign immunity statutes. *See In re Joint E. & S. Dists. Asbestos Litig.*, 891 F.2d 31, 35 (2d Cir. 1989).

out their Article III mandate and of citizens to obtain relief—including for constitutional or statutory violations—in federal courts.

These foundational principles show why the Order's reliance on *Russell v. Jones*, 49 F.4th 507 (5th Cir. 2022)—the only circuit case applying state sovereign immunity to federal discovery subpoenas—is out of step. In *Russell*, the plaintiffs were incarcerated individuals who sued under § 1983 to enjoin enforcement of Harris County's allegedly unconstitutional felony-bail system. *Id.* at 510. Initially, the plaintiffs sued multiple defendants including county judges, but the Fifth Circuit held that such judges could not be sued under § 1983, so the plaintiffs voluntarily dismissed those judges from the suit. *Id.* Thereafter, the plaintiffs served the judges with federal discovery subpoenas seeking material information. *Id.* at 511. But the Fifth Circuit ruled that sovereign immunity applied to those subpoenas and quashed them. *See id.* at 512. Consequently, the plaintiffs were unable to obtain crucial evidence for their federal claims. The district court, without the full panoply of material evidence, was unable to vindicate the plaintiffs' rights.

There is a reason why *Russell* is an outlier. Now, in the Fifth Circuit, civil rights plaintiffs are foreclosed from evidence necessary to pursue their claims. *See Thompson v. Richter*, Civil Action No. 7:22-v-00014-O, 2023 WL 7986341, at *1-2 (N.D. Tex. Nov. 17, 2023).[11] Had such a holding applied in this Circuit over the past decade, it would have stymied evidence-gathering in a number of recent actions where plaintiffs sued under § 1983 to vindicate federal rights. *See e.g. Russell*, 2022 WL 3084339, at *11 (partially enforcing subpoena on New York Department of Corrections and Community Supervision ("DOCCS")); *Roache*, 2021 WL 2366981, at *6 (discussing information obtained from subpoena on DOCCS); *Pierce v. Demmon*, No. 9:14-CV-

---

[11] Defendants may also be foreclosed from evidence material to their defenses. *See United States v. Planned Parenthood Fed'n of Am.*, No. 2:21-CV-022-Z, 2022 WL 21758612, at *4 (N.D. Tex. Dec. 6, 2022).

1028 (GTS/DEP), 2015 WL 7077227, at *2 (N.D.N.Y Nov. 12, 2015) (enforcing subpoena on DOCCS); *Andrews v. Cruz*, 2006 WL 1984650, at *3 (partially enforcing subpoena on DOCCS). To uphold federalism, duly exercise their duties under Article III, and to provide an avenue for relief from violations of federal law, federal courts must be permitted to issue discovery subpoenas on states.

### B.  Even If Sovereign Immunity Were Applicable, the OAG Waived It

A state may waive sovereign immunity through its conduct, as the OAG has done multiple times here. *See In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007). Where a state engages in voluntary conduct that is "anomalous or inconsistent" with the application of sovereign immunity, the state has waived its sovereign immunity because to hold otherwise would create "seriously unfair results." *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 619 (2002). Conduct waivers, as opposed to general statutory consent waivers, are broadly construed. *See In re Charter Oak Assocs.*, 361 F.3d 760, 770 (2d Cir. 2004). Despite the OAG's arguments otherwise, the Order also concludes that state sovereign immunity is waivable. Order at 34-36.

The OAG waived sovereign immunity on at least two separate occasions, and the Order's denial of waiver in both instances is contrary to law. *First*, the OAG made a production of some or all of the Requested Materials to the DOJ to effectuate prosecution against Governor Cuomo. The OAG provided these materials to the DOJ/EDNY as part of a Title VII investigation into the alleged harassment at the Executive Chamber under the Governor. Order at 7, 10. The OAG did so with at least knowledge that these materials could be used to initiate a civil lawsuit, in which case the materials would have been subject to disclosure as part of discovery. And indeed, as provided in the DOJ/EDNY Agreement, the Assistant Attorney General for Civil Rights

17

"authorized a Title VII lawsuit" based on the DOJ's findings.[12] That the federal government elected to enter into a settlement rather than file suit does not affect the waiver analysis.

It is uncontroversial that a state agency's provision of materials to the federal government for purposes of prosecuting a defendant effects waiver of sovereign immunity when that defendant requests the same or related materials from that agency. In *United States v. James*, 980 F.2d 1314 (9th Cir. 1992), the Ninth Circuit held that the Quinault Indian Nation[13] waived its sovereign immunity by "voluntarily providing the Government with documents relevant to the case." *Id.* at 1320. The court reasoned that the Nation could not "selectively provide documents and then hide behind a claim of sovereign immunity" with respect to documents "from the same agency." *Id.* Other courts have also concluded that a sovereign "waives its sovereign immunity with respect to a particular agency" when that agency "voluntarily provides documents to the Government relevant to the case." *United States v. Velarde*, 40 F. Supp. 2d 1314, 1317 (D.N.M. 1999); *accord NGV Gaming, Ltd. v. Upstream Point Molate, LLC*, Nos. C-04-3955 SC (JCS), C-05-1605 SC, 2009 WL 4258550, at *5-6 (N.D. Cal. Nov. 24, 2009); *United States v. Menominee Tribal Enters.*, Case No. 07-C-316, 2008 WL 2273285, at *11-12 (E.D. Wis. June 2, 2008). In briefing below, the OAG argued that these cases stand for the proposition that sovereign immunity is only waived where a sovereign has "voluntarily provided" documents from one of its agencies "to the United States" to "aid in the government's prosecution of [the defendant]." ECF No. 223 at 14. Indeed, as described above, that is precisely what happened in this case: the OAG provided some or all of

---

[12] Agreement Between the United States and the State of New York Executive Chamber Regarding Workplace Reform, Dep't of Just. (Jan. 26, 2024), *available at* https://www.justice.gov/crt/media/1335301/dl?inline.

[13] As the Order recognizes, there is a dearth of case law regarding conduct waivers in the context of state sovereign immunity to federal discovery subpoenas, *see* Order at 39-40—courts across jurisdictions need not reach waiver because they have found that state sovereign immunity against federal discovery subpoenas is not applicable. Accordingly, case law concerning tribal sovereign immunity to federal discovery subpoenas is the most appropriate analog.

the Requested Materials to the federal government to effectuate action based on allegations against Governor Cuomo, and the DOJ/EDNY explicitly acknowledged that they approved (but ultimately did not take) such an action. Consequently, there should be no dispute that the OAG has waived sovereign immunity as to the Requested Materials by providing them to the DOJ and EDNY.

Courts in this Circuit have applied the same principle to other privileges besides sovereign immunity. For example, in *Information Resources, Inc. v. Dun & Bradstreet Corp.*, 999 F. Supp. 591 (S.D.N.Y. 1998), the court held that waiver of the work-product privilege "result[ed] from the voluntary submission of material to a government agency to incite it to attack the informant's adversary" in part because such waiver is necessary to "prevent[] the unfairness of selective revelations." *Id.* at 593. Furthermore, the court acknowledged that this justification applied to a different privilege, and that there is "no indication that difference [in privilege]" affects this outcome in other similar cases. *Id.* (citing *D'Ippolito v. Cities Serv. Co.*, 39 F.R.D. 610 (S.D.N.Y. 1965), a case applying the principle to governmental investigative privilege).

***Second***, the OAG submitted documents—likely including at least some of the Requested Materials—for review in the Trooper 1 Action in support of its relevance, privilege, and confidentiality arguments in a voluntary cross-motion to quash. *See* ECF No. 225 ¶ 56. In *Gristede's Foods, Inc. v. Poospatuck (Unkechauge) Nation*, No. 06-cv-1260 (KAM), 2009 WL 4981905 (E.D.N.Y. Dec. 10, 2009), one of the cases cited in the Order, the court found that certain defendants waived sovereign immunity by asserting counterclaims in their answer without asserting sovereign immunity in that answer or referencing such an assertion in another pending motion. *Id.* at *9. Because those defendants requested affirmative relief without simultaneously asserting sovereign immunity, they had waived the immunity, though they had asserted it earlier in the litigation and clearly planned to re-assert the argument later in the litigation. *Id.*

Similar to the facts in *Gristede's*, here, the OAG sought an affirmative ruling from the Trooper 1 court untethered to any assertion of sovereign immunity. The Order erroneously characterizes this conduct as defensive and in support of sovereign immunity. Order at 38. But when the OAG submitted the materials, Governor Cuomo's motion to compel the subpoena had already been denied—so the submission specifically supported the OAG's cross-motion to quash and thus constituted an affirmative invocation of the Trooper 1 court's jurisdiction. *See* ECF No. 236-1 at 6 ("The Court's prior ruling expressly *did not quash* Cuomo's subpoena to the OAG."). Because the character of the documents did not bear on the OAG's sovereign immunity arguments, the submission of the documents was clearly in service of the OAG's affirmative relevance and privilege arguments, without reference to sovereign immunity. Given that both Governor Cuomo and the Daily News had sought OAG investigative materials through FOIL, where sovereign immunity does not apply, ECF No. 200 at 6 n.5, a favorable ruling from the court could have prevented the Governor as well as independent media outlets from obtaining such materials. Because the OAG submitted these materials to support just its relevance and privilege arguments, the OAG waived sovereign immunity as to the Requested Materials here.

## II.   SOVEREIGN IMMUNITY DOES NOT PROTECT PRIVATE LAW FIRMS FROM COMPLIANCE WITH FEDERAL SUBPOENAS

State agents are subject to suit under the Eleventh Amendment. For prospective injunctive relief, they may be sued in their official capacities under *Ex parte Young*, as discussed above. *See Edelman v. Jordan*, 415 U.S. 651, 677 (1974). And for other types of relief, state agents may be sued in their individual capacities, because in those cases, the state is not the "real party in interest." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Because they do not threaten the state's treasury or federal enforcement against states, individual-capacity suits may proceed even where the conduct at issue occurred within the scope of the state agent's employment, and even if the state reimburses the

agent for any liability. *Lewis v. Clarke*, 581 U.S. 155, 164-165 (2017). Consequently, myriad courts have held that state sovereign immunity does not bar federal discovery subpoenas for state records served on state agents or officials. *U.S. Dep't of Just. v. Ricco Jonas*, 24 F.4th at 727; *Monterey Bay Confederation of Clubs v. City of Santa Cruz*, No. 13-CV-01231-LHK, 2013 WL 6698400, at \*2 (N.D. Cal. Dec. 19, 2013); *Allen v. Woodford*, 544 F. Supp. 2d 1074, 1079 (E.D. Cal. 2008); *Jackson v. AFSCME Local 196*, 2008 WL 1848900, at \*2; *United States v. Juv. Male 1*, 431 F. Supp. 2d 1012, 1016 (D. Ariz. 2006); *see also Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019).

Against this overwhelming precedent, the Order reasons that the Firms have sovereign immunity against federal discovery subpoenas on two grounds that are both contrary to law.

*First*, the Order reasons that, because the Firms were acting as agents of the OAG for purposes of the OAG Investigation, the Firms are effectively arms of the state entitled to the protections of sovereign immunity. Order at 50-51. But this conclusion ignores the twin purposes of sovereign immunity set out by the Order itself, neither of which applies: "(1) protecting the dignity of the state, and (2) preserving the state treasury." *Id.* at 17.

With respect to the treasury interest, it is undisputed that the Firm Subpoenas do not implicate New York's fisc. *Id.* at 52. Impact on the state's treasury is paramount and dispositive to any determination that an entity is an arm of the state. *See Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d at 241 (citations omitted). On that basis alone, the Order's rationale is erroneous. Indeed, in each of the three cases the Order cites in support of its conclusion, sovereign immunity applied because the suit in question essentially sought funds from the state treasury. Two of those cases held that defendant entities were arms of the state because they were owned or operated by state agencies, so suits for damages in effect sought money from state

coffers. *See Mallon v. N.Y. State Off. of Mental Health*, No. 10 Civ. 804 (LAK)(MHD), 2011 WL 13521200, at *1 n.1 (S.D.N.Y. June 1, 2011); *Breen v. Mortg. Comm'n*, 285 N.Y. 425, 428-429 (N.Y. 1941). The Firms, in contrast, are private and New York exercises no financial control over them. Indeed, they were never even deputized—and the individual investigators are also no longer deputized. The third case held that a suit against a state official for damages was barred by sovereign immunity because the fees sought were commingled with the state treasury and had "no severable character," so the suit was really seeking funds from the state's fisc. *Adler, Inc. v. Noyes*, 285 N.Y. 34, 36-37 (N.Y. 1941). Again, there is no financial entanglement between the Firms and the state—and the Subpoenas, in any event, seek no monetary relief.

Thus, the Order resorts to a passing reference to the dignity interest. Order at 52. But this rationale is also evidently inapplicable. According to the Order, a federal discovery subpoena to the <u>OAG</u> is a "suit" because it "subject[s]" the "<u>State agency</u>" to the "coercive process of judicial tribunals." *Id.* at 27 (emphasis added). Were the Court to order the OAG to comply with the OAG Subpoena, the OAG would "be in contempt under Rule 45(g)," and "subject to sanctions for non-compliance." *Id.* at 26-27. Conversely, the Order fails to explain how a subpoena on the private Firms, which were never deputized, threatens to effectuate any coercive judicial process against the state. The state is under no obligation to answer the Firm Subpoenas and cannot be held in contempt if the Firms fail to comply with an order compelling compliance.

Moreover, even if the Firms were somehow "arms" of the state despite the lack of articulable treasury or dignity interest, there is no basis for the Order's conclusion that individual state officials too would be protected by sovereign immunity. *Id.* at 51 n.19. Subjecting an official to individual liability or coercive process stands even farther from offending the state's treasury or dignity interests. Neither the Firm Subpoenas nor hypothetical subpoenas on individual officials

implicate the "specific indignity against which sovereign immunity protects" because neither "reach[es] funds in the state treasury" or "hale[s]" the state "into court." *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 258-259 (2011).

**Second**, the Order relies on *Catskill Development, L.L.C. v. Park Place Entertainment Corp.*, 206 F.R.D. 78 (S.D.N.Y. 2002), which quashed subpoenas on attorneys under tribal sovereign immunity by espousing the tenet that a "tribe's attorney . . . is cloaked in the immunity of the tribe just as a tribal official is cloaked in that immunity." *Id.* at 91. *Catskill* is inapposite because (1) it concerned tribal sovereign immunity (not state sovereign immunity); (2) it did not analyze *Ex parte Young*; and (3) it did not have the benefit of the many ensuing cases holding that sovereign immunity does not protect a sovereign's agents from producing the sovereign's records. Furthermore, a close reading of *Catskill* reveals that its holding hinged on attorney-client privilege, citing concerns that failing to quash the subpoenas would compromise a tribe's "ability to receive candid advice" or adversely influence "counsel's representation of the tribe in the future." *Id.* Rather than quashing in full as sovereign immunity would have required, the *Catskill* court actually permitted a deposition against one of the subpoenaed attorneys to the extent that it covered non-privileged information. *See id.* at 92.

The Order cites *Lewis v. Clarke* to support its reliance on *Catskill* because *Lewis v. Clarke* aligned tribal sovereign immunity principles with state sovereign immunity principles. Order at 52. But the tribal immunity rule that the Order relies on directly conflicts with state immunity precedent. *See id*. Tribal officials are immune from suit, even for damages, as long as they are acting within the scope of their tribal authority. *See Smith v. Oneida Emp. Servs.*, No. 5:08-CV-151 (FJS/GJD), 2009 WL 890614, at *2 (N.D.N.Y. Mar. 29, 2009) (citing cases). Unlike tribal officials, state officials do not enjoy sovereign immunity under the Eleventh Amendment, "even

when the conduct complained of was carried out in accordance with state law." *Ford v. Reynolds*, 316 F.3d 351, 356 (2d Cir. 2003) (quotation omitted). Consequently, individual plaintiffs can sue state attorneys without running afoul of sovereign immunity. *See, e.g.*, *King v. Cuomo*, 465 F. App'x 42, 43-44 (2d Cir. 2012) (suit against multiple New York attorneys general); *Gollomp v. Spitzer*, 568 F.3d 355, 365 (2d Cir. 2009) (dismissing complaint against New York attorney general because plaintiff failed to bring claim against him in his individual capacity). To the extent that *Lewis v. Clarke* brought tribal sovereign immunity in line with state sovereign immunity, *Lewis v. Clarke* overruled *Catskill*. *See Wopsock v. Dalton*, 2018 WL 1578086, at *3 (denying tribal sovereign immunity from subpoenas to tribal officials under *Lewis v. Clarke*). Otherwise, on this point, tribal sovereign immunity precedent is inapplicable to state sovereign immunity.

## III.   THE REQUESTED MATERIALS ARE RELEVANT AND PROPORTIONAL

In what can be considered as dicta in light of the sovereign immunity ruling, the Order holds, without explanation, that a handful of the Requested Materials contain information have "at best, 'tangential' relevance" to the action that would impose an "undue burden" on the OAG to gather. Order at 46-47.[14] The materials in question concern interview witness memos and transcripts of "any current or former employee of the Executive Chamber under Governor Cuomo."[15] *Id.* at 46. All of these materials are directly relevant to Plaintiff's allegations of a purported "hostile work environment" at the Executive Chamber, Compl. ¶ 6, including that (1) female employees were pressured to dress in a "stereotypically feminine and sexy manner," *id.* ¶ 16, and to "wear high-heeled shoes," *id.* ¶ 18; and that (2) Plaintiff was "[f]earful of retaliation" if

---

[14] The Order also correctly holds that the Requested Materials encompassed by Requests 1(a), 1(d), 1(e), 2(a), 2(d), and 2(e) are relevant and proportional, and Governor Cuomo does not object to this holding. *See* Order at 45-47.

[15] Again, although the Order holds that materials concerning Trooper 1 are irrelevant, Governor Cuomo no longer seeks materials concerning Trooper 1. ECF No. 200 at 7 n.7.

"others in the Executive Chamber" were to find out that she reported Governor Cuomo, *id.* ¶ 85. Consequently, there may be interview memos where Executive Chamber employees do not mention Plaintiff by name but do discuss the dress code, Governor Cuomo's general conduct, or the overall culture around reporting sexual harassment at the Chamber. Moreover, whether or not they mention Plaintiff by name, the Requested Materials may be relevant to Plaintiff's specific allegations of harassment against Governor Cuomo. For example, to the extent that Plaintiff alleges that Governor Cuomo made her sing "Danny Boy" or challenged her to a push-up contest as forms of gender-based harassment, *id.* ¶¶ 24-26, 30, the interview memos may well include evidence that male Chamber employees had the same experiences, thus undermining any gender distinction.

What is more, the OAG would suffer no burden in producing the materials covered by these requests. These materials have already been reviewed and have already been redacted to address purported privilege and confidentiality concerns. *See* ECF No. 159-1 at 36:1-8. The OAG has already prepared and submitted a similar set of information to the Trooper 1 court and managed to do so within the course of a week. *See* ECF No. 201 ¶ 28; ECF No. 201-8 at 9. Because there is very little (if any) burden associated with producing these materials, their plain relevance makes clear that the requests in question are duly proportional.

## <u>CONCLUSION</u>

For the foregoing reasons, Governor Cuomo respectfully requests that the Court vacate the Order and remand to Judge Cave for consideration of outstanding privilege issues.

Dated:       June 26, 2024                              Respectfully submitted,
             New York, New York


                                                        _____/s/  Theresa Trzaskoma_____

                                                        Theresa Trzaskoma
                                                        Allegra Noonan
                                                        Brachah Goykadosh
                                                        SHER TREMONTE LLP
                                                        90 Broad Street, 23rd Floor
                                                        New York, New York 10004
                                                        Tel.: (212) 202-2600
                                                        Fax: (212) 202-4156
                                                        ttrzaskoma@shertremonte.com

                                                        Rita M. Glavin
                                                        Katherine E. Petrino
                                                        GLAVIN PLLC
                                                        156 West 56th Street, Ste. 2004
                                                        New York, NY 10019
                                                        Tel: (646) 693-5505
                                                        rglavin@glavinpllc.com

                                                        *Counsel for former Governor*
                                                        *Andrew M. Cuomo*