```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK
        ----------------------------:
        CHARLOTTE BENNETT,           : Case No.: 22-cv-7846
                       Plaintiff,    :
            v.                       :
        ANDREW M. CUOMO, et al.,     : New York, New York
                       Defendants.   : October 1, 2024
        ----------------------------:

              TRANSCRIPT OF STATUS CONFERENCE HEARING
                BEFORE THE HONORABLE SARAH L. CAVE
                 UNITED STATES MAGISTRATE JUDGE

        APPEARANCES:

        For Plaintiff:      EISENBERG & SCHNELL LLP
                            BY: Laura S. Schnell, Esq.
                                Herbert Eisenberg, Esq.
                            233 Broadway
                            New York, NY 10279

        For Plaintiff:      KATZ BANK KUNIN
                            BY:  Rachel E. Green, Esq.
                                 Debra Katz, Esq.
                            11 Dupont Circle
                            Washington, DC 20036

        For Defendant:      SHER TREMONTE
        Andrew M. Cuomo     BY:  Theresa Trzaskoma, Esq.
                                 Allegra Noonan, Esq.
                                 Brachah Goykudosh, Esq.
                            90 Broad Street
                            New York, New York 10004

        For Defendant:      GLAVIN PLLC
        Andrew M. Cuomo     BY:  Rita M. Glavin, Esq.
                            156 West 56th Street - Ste #2004
                            New York, NY 10019

        For Defendant:      MORVILLO PLLC
        Melissa DeRosa      BY:  Gregory R. Morvillo, Esq.
                                 Sarah Sulkowski, Esq.
                            1740 Broadway - 15th Floor
                            New York, NY 10019


        Proceedings recorded by electronic sound recording;
        Transcript produced by transcription service

              AMM TRANSCRIPTION SERVICE  631.334.1445
```

```
 1                    APPEARANCES (Continued)

 2
      For Defendant:        DEBEVOISE & PLIMPTON LLP
 3    Jill DesRosiers       BY:  Leah Rosenberg, Esq.
                                 Soren Schwab, Esq.
 4                          66 Hudson Boulevard
                            New York, NY 10001
 5
      For Defendant:        ORRICK, HERRINGTON & SUTCLIFFE LLP
 6    Judith Mogul          BY:  Brianna Messina, Esq.
                            51 West 52nd Street
 7                          New York, NY 10019

 8    For Non-Party         THE LAW OFFICE OF ANDREW M. STENGEL
      McEnaney              BY:  KATHERINE E. MAYO, ESQ.
 9                          11 Broadway
                            New York, New York 10004
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          THE COURT:  Good morning.  This is

2    Magistrate Judge Cave.  We're here for a conference

3    in Bennett v. Cuomo; case number: 22-cv-7846.

4          May I have the appearances starting with

5    plaintiffs' counsel, please.

6          MS. KATZ:  I'm sorry, Your Honor, I didn't

7    understand -- I couldn't hear what you said.

8          THE COURT:  I'm asking for the appearance

9    of plaintiffs' counsel, please.

10          MS. KATZ:  Okay.  Thank you, Your Honor.

11    This is Debra Katz appearing for Charlotte Bennett.

12          Would you like me to list our other counsel

13    on the call, or do you want them to enter the

14    appearance directly?

15          THE COURT:  Sure.  Yes, you can just list

16    them.

17          MS. KATZ:  Sure.  So with me is Rachel

18    Green, Herb Eisenberg and Laura Schnell.

19          THE COURT:  Okay.  Very good.  Good

20    morning.

21          All right.  For former governor Cuomo?

22          MS. TRZASKOMA:  Hi.  Good morning, Judge

23    Cave.  This is Theresa Trzaskoma from Sher Tremonte.

24    My colleagues, Allegra Noonan and Brachah Goykadosh,

25    are also on the phone.  And I believe my co-counsel,

AMM TRANSCRIPTION SERVICE  631.334.1445

```
 1    Rita Glavin of Glavin PLLC is also on the line.
 2              THE COURT:  All right.  Good morning.
 3              MS. GLAVIN:  Yes, Your Honor, this is Rita
 4    Glavin.  I'm here as well.
 5              THE COURT:  All right.  Good morning.
 6              For Ms. DeRosa?
 7              MS. MAYO:  Katherine Mayo --
 8              MR. MORVILLO:  Morning, Your Honor.
 9    Gregory Morvillo.
10              MS. MAYO:  Oh, pardon me.
11              MR. MORVILLO:  Good morning, Your Honor.
12    Gregory Morvillo and Sarah Sulkowski on behalf of
13    Ms. DeRosa today.
14              THE COURT:  Excellent.  Thank you.
15              For Ms. DesRosiers?
16              MS. ROSENBERG:  Good morning, Your Honor.
17    This is Leah Rosenberg at Debevoise & Plimpton on
18    behalf of Jill DesRosiers, and my colleague, Soren
19    Schwab, is also on the line.
20              THE COURT:  Okay.  Thank you.
21              For Ms. Mogul?
22              MS. MESSINA:  Good morning, Your Honor.
23    This is Brianna Messina from Orrick Herrington &
24    Sutcliffe on behalf of Ms. Mogul.
25              THE COURT:  All right.  Good morning.
```

```
1                    Do we have counsel for Ms. McEnaney?
2               MS. MAYO:  Yes.  Katherine Mayo for Ms.
3      McEnaney.
4               THE COURT:  All right.  Good morning.
5      Thank you for joining us.
6               MS. MAYO:  Good morning.  Thank you.
7               THE COURT:  Anyone I missed who wants to
8      state their appearance?
9               Okay.  Very good.
10              Well, since Ms. McEnaney is a nonparty, I'd
11     like to address her issues first, or the issues
12     relating to her first, so that we can hopefully let
13     her go while we discuss the other issues raised in
14     the parties' joint letter.
15              So, Mr. Morvillo or Ms. Sulkowski, do you
16     want to start with what's outstanding, you believe,
17     from Ms. McEnaney?
18              MS. KATZ:  Your Honor, before we do that --
19     this is Debra Katz for Charlotte Bennett.  We raised
20     an issue about confidential materials being
21     discussed during this call.
22              THE COURT:  Yes.
23              MS. KATZ:  And I assume there's media on
24     this call.  We don't want to wait until the
25     conclusion of this hearing to designate what we
```

```
1    believe should be confidential under the protective
2    order, and this is a problem.  If this is going to
3    be discussed on this call with other people present,
4    it would not give us an opportunity to assert a
5    confidentiality designation.  It would already be
6    out there.
7              So in light of that, how would Your Honor
8    like to proceed?
9              THE COURT:  Well, I don't know that the
10   issues that concern Ms. McEnaney involve getting
11   into confidential information.  I've already entered
12   a sealing order with respect to the submissions
13   related to her.
14             And then with respect to the issues
15   concerning Ms. Bennett, I'm still struggling with
16   why there needs to be anything confidential about
17   her disclosed in the context of discussing what
18   appears to be just a dispute about timing of her
19   completing production of the electronic information
20   that's raised in the parties' letters and then
21   scheduling of depositions.
22             MS. KATZ:  That's fine.  I just wanted to
23   flag the issue so everybody has the same
24   understanding about what should be discussed openly
25   during this call.
```

AMM TRANSCRIPTION SERVICE   631.334.1445

```
 1              THE COURT:  Okay.
 2              MS. KATZ:  Thank you.
 3              THE COURT:  So I would encourage all the
 4   counsel on this call, because there are last time I
 5   checked 21 people on this conference, and it's
 6   probably more now.  And so I don't have a list of
 7   all the numbers, but at the moment, this line is
 8   public.  And so if -- I would encourage you to not
 9   mention any confidential information about anyone.
10   If you need to, stop and let us know that so that we
11   can attempt to seal this virtual courtroom.  But
12   just please understand, it's difficult to do that,
13   and it's going to make it difficult for us to
14   complete the things that we need to do today if we
15   have to stop and do that.
16              So, obviously, if there's confidential
17   information that you really, really need to share
18   with me, let me know that before you do it so that
19   we can figure out the best way forward.
20              Okay.  So, Mr. Morvillo or Ms. Sulkowski,
21   with respect to Ms. McEnaney, can you just fill me
22   in on what you believe is still outstanding from her
23   production?
24              MS. SULKOWSKI:  Yes, Your Honor.  This is
25   Sarah Sulkowski on behalf of Ms. DeRosa.
```

1          As you know, we've asked for leave to move

2    to compel Ms. McEnaney to comply fully with the

3    document subpoena we served on her on May 22nd.

4    Ms. Mayo, her counsel, represented to us on August

5    1st, and to the Court on September 20th, that her

6    client would fully comply with that subpoena, but

7    she now refuses to do so.

8          What we've received are several hundred

9    pages of heavily redacted text message excerpts from

10   a text chain that is concededly responsive, as it's

11   been produced, and so the redactions are improper.

12   It also contains embedded video messages that are

13   also concededly responsive, none of which have been

14   produced.

15         Ms. McEnaney, we understand to now be

16   arguing that producing the unredacted text messages

17   or any of the responsive video recordings would

18   impose an undue burden, and we disagree with that

19   and would appreciate the opportunity to tell the

20   Court why.

21         THE COURT:  Okay.  Well, let me hear from

22   Ms. Mayo first.

23         What are the nature of the redactions just

24   generally, Ms. Mayo?

25         MS. MAYO:  The nature of the redactions are

AMM TRANSCRIPTION SERVICE  631.334.1445

1    that there were originally 4,000 pages of text

2    messages.  Ms. McEnaney has now produced -- I think

3    it's 391 pages.  And if the Court were to do an in

4    camera review, which perhaps that's advisable, the

5    Court would see that there is not a single text

6    message on these 391 pages that is marked, blacked

7    out.  And there was no manipulation of these text

8    messages as they appear on these pages.

9         And at this point, DeRosa's counsel is

10   attempting a fishing expedition.  Proportionality is

11   obviously the new gold standard in determining the

12   scope of discovery, and I'm sure the Court is highly

13   familiar with that.  Anything additional would be of

14   marginal utility, at best.  I think, should the

15   Court be inclined to compel McEnaney to produce

16   additional text messages on top of the unredacted

17   391 pages, I would ask that DeRosa's counsel at

18   least explain why they need further context because

19   I was overinclusive and with specificity in why

20   that's relevant.

21        THE COURT:  I thought that some of the

22   examples that Ms. DeRosa's counsel provided did show

23   redactions.  You're saying you didn't redact them or

24   you did?

25        MS. MAYO:  No.  Let me look -- no, there's

AMM TRANSCRIPTION SERVICE  631.334.1445

1   not a single -- there is one photo that was redacted

2   because it features a number of prominent artists,

3   but we could certainly produce that.  It is pursuant

4   to a protective order.  But let me look again at the

5   copies that were ...

6        No, there's no redactions on these pages,

7   none, that were submitted to the Court.

8        THE COURT:  Ms. Sulkowski, I thought that

9   at least one of the exhibits -- I don't remember

10  which exhibit number it is now, but that there were

11  redactions.

12       MS. SULKOWSKI:  I don't know that we have

13  seen black-box redactions on the pages that have

14  been produced, but these are all clearly from a

15  single text chain, which, under the case law of this

16  circuit is a single document.  And it's very clear

17  as a matter of law, that redactions for

18  responsiveness within a responsive document are

19  improper.  Context is needed.

20       Ms. Mayo, respectfully, is not intimately

21  familiar with the details of this case and the

22  parties' claims and defenses here, and we have a

23  protective order.  And so there's just -- there's no

24  undue burden in asking her to produce the unredacted

25  text messages.  In fact, it would be significantly

1    less burdensome to simply mark these confidential,

2    Bates stamp them and produce them.

3         Ms. Mayo has admitted there are 4,000 pages

4    in this chain.  We've received fewer than 400.  We

5    submit that we are happy to review for

6    responsiveness ourselves, as we have repeatedly

7    offered to Ms. Mayo to do and as we're doing with

8    plaintiffs' own production, and that there is no

9    basis for this untimely objection and redaction.

10         THE COURT:  All right.  I don't understand.

11    So --

12         MS. MAYO:  If I may, Your Honor, briefly?

13         THE COURT:  Yeah.  Go ahead.

14         MS. MAYO:  There is no case law that

15    defines "text message chain" as every text that two

16    individuals exchanged.  And that is what DeRosa's

17    counsel is attempting to argue right now.  And what

18    they are requesting is exactly why the

19    proportionality standard was implemented.

20         Discovery becomes sprawling.  It takes up

21    too much of the Court's time.  There is no reason

22    why DeRosa's counsel needs 4,000 pages of text

23    messages that I very carefully reviewed page by page

24    for responsiveness.  Should the Court desire to look

25    at these text messages, I don't know what DeRosa's

```
 1    counsel thinks they're going to find in addition.
 2              THE COURT:  So --
 3              MS. MAYO:  If you want to know about the
 4    girls getting their nails done, I don't see the
 5    point in it.
 6              THE COURT:  So, Ms. Sulkowski, I'm just
 7    confused.  Your complaint is that you didn't get the
 8    entire 4,000 pages?
 9              MS. SULKOWSKI:  That's correct, as well as
10    the videos that are embedded in those messages and
11    that Ms. Mayo --
12              THE COURT:  We'll talk about the videos
13    separately.
14              MS. SULKOWSKI:  Of course.
15              THE COURT:  But the text chain -- what
16    Ms. Mayo is representing is that she reviewed the
17    text chain and produced those texts that are
18    responsive to the subpoena.  Why are you entitled to
19    more?
20              MS. SULKOWSKI:  Well, we've cited in our
21    letters to Your Honor on this subject extensive case
22    law showing that redaction for responsiveness within
23    such a chain is improper.
24              THE COURT:  That's different.  We're not
25    talking about redaction.  We're talking about she
```

AMM TRANSCRIPTION SERVICE  631.334.1445

```
 1    reviewed and produced the text messages that are
 2    responsive.  She didn't redact anything, other than
 3    this one photo that she mentioned.
 4         MS. SULKOWSKI:  Oh, respectfully, Your
 5    Honor, the omission of pages of a text chain is a
 6    redaction.  She has excerpted pages.
 7         THE COURT:  No, it's not.
 8         MS. SULKOWSKI:  Many, many pages.
 9         THE COURT:  That is not a good argument,
10    Ms. Sulkowski.  But let's talk about the videos,
11    Ms. Mayo.  Why aren't you producing those?
12         MS. MAYO:  I initially directed my client
13    to review the videos, despite the fact that these
14    videos can be obtained from the plaintiff directly,
15    which should be the first avenue of DeRosa's counsel
16    and any motions to compel need to be exhausted.
17         THE COURT:  As we've spared you from, there
18    have been some issues with that.  So that's why we
19    need to ask Ms. McEnaney to produce any responsive
20    videos that she has, unfortunately.
21         MS. MAYO:  Fair.
22         So I was very careful in responding to the
23    subpoena, and I reviewed the Court's orders.  And
24    for that reason, I directed my client to review the
25    videos, which is an extremely burdensome project.
```

AMM TRANSCRIPTION SERVICE  631.334.1445

1    They are not something that can be searched.  And so

2    she is required to sit, or I am required to sit and

3    watch every single video.

4         In August exceptional circumstances arose

5    and my client was experiencing extreme emotional

6    distress.  At this point, that renders these demands

7    overly burdensome.  Again, proportionality is, what

8    is the value of the discovery materials sought

9    versus what is the burden on the respondent?  That

10    is one of the factors.  And any factor can weigh

11    more heavily than another.

12         There is merely marginal utility of these

13    video messages.  Again, I have no idea what DeRosa's

14    counsel thinks they are going to find.  Everything

15    they need to know is in the text messages.  The

16    videos are merely supplementary.

17         THE COURT:  Respectfully, Ms. Mayo, we

18    don't know that unless we see the videos.  So I'm

19    happy to give your clients more time to review --

20    you and your client to have some more time to review

21    the videos, but to the extent that there is content

22    in the videos that is responsive to the subpoena --

23    in other words, that is comparable to the content of

24    the text messages that you produce -- she needs to

25    produce those videos.

AMM TRANSCRIPTION SERVICE  631.334.1445

```
 1            So I'm not going to require you to review
 2    and produce additional text messages from the 4,000
 3    pages, but the videos do need to be reviewed and
 4    produced.  And I apologize that this is a burden on
 5    your client -- or I shouldn't apologize, but there
 6    is -- I regret that it's a burden on your client,
 7    but it does need to be done, unfortunately.
 8            So do you think your client would be able
 9    to complete that review by the end of this month so
10    that you can -- you and your client could complete
11    that review and production by the end of this month?
12            MS. MAYO:  I do not.  She has a full-time
13    job.  This is a full-time job, and I think that's
14    made apparent by the fact that even plaintiffs'
15    third-party discovery vendor has had difficulty.
16    We're talking about a young woman with a full-time
17    job and a managing partner of a small law firm who
18    has a full case load.
19            THE COURT:  How many videos?  How many
20    videos are there?
21            MS. MAYO:  Many.  I don't know exactly how
22    many, but I believe there are hundreds.  And so if
23    one were to assume that each one is, I don't know, a
24    minute or two long, each one has to be opened, it
25    has to be listened to.  On and on.  It's hours.
```

```
 1              THE COURT:  That's a few hours of time.
 2   That's a few hours of time.  So I realize that she's
 3   a nonparty, that it is a burden.
 4              MS. MAYO:  In reality, it takes much
 5   longer, Your Honor, with all due respect.  Pardon.
 6              THE COURT:  Well, I'm going to give her a
 7   month to do it, okay.  And if she still needs some
 8   more time to do it, then you can let me know that.
 9   But I would like you to endeavor to -- whether it's
10   together, separately -- to work to review the videos
11   and produce the responsive videos by October 31st,
12   okay.  But I'm going to deny --
13              MS. MAYO:  Understood.
14              THE COURT:  -- the request with regard to
15   the additional text messages.
16              MS. MAYO:  I hope that the product is worth
17   the emotional distress that my client will feel,
18   extreme anxiety, depression.  She had a panic
19   attack.  I don't see the proportionality, but I
20   respect the Court's order.
21              THE COURT:  Okay.  All right.  Thank you.
22   I appreciate that, and, again, regret the burden on
23   your client.
24              Okay.  Ms. Sulkowski, so I'm granting your
25   request with respect to the videos, but it's denied
```

1    as to the additional text messages.

2           Is there anything else that we needed to

3    discuss with respect to Ms. McEnaney while we have

4    Ms. Mayo on the line?

5           MS. SULKOWSKI:  Your Honor, we would ask

6    that Ms. McEnaney produce the videos on a rolling

7    basis as they're reviewed.  And we would also like

8    to ask to brief the Court very briefly on the issue

9    of producing at least text messages for periods of

10   time highly relevant to this case.

11          THE COURT:  What does that mean?

12          MS. SULKOWSKI:  There are periods of

13   time -- for example, May 5th and 6th, 2020, when

14   events were allegedly occurring that are highly

15   relevant to this case, and so all text messages

16   between the two of these young women for those time

17   periods are extremely likely to be relevant to this

18   case, whether or not Ms. McEnaney's counsel

19   perceives the relevance.

20          THE COURT:  Well, in the 391 pages that you

21   have, do you have text messages from May 5th and

22   6th?

23          MS. SULKOWSKI:  It's not clear that we have

24   all of the relevant time periods.  I'm looking at

25   the text messages right now.

```
 1              MS. MAYO:  If I may, Your Honor, I have no
 2    problem producing the entirety of those text
 3    messages.  Counsel will see that I absolutely
 4    included every single responsive text during that
 5    time period because I'm highly aware that that is a
 6    sensitive time period.
 7              THE COURT:  Okay.  So for May 5th and 6th,
 8    you'll produce just the entirety of the text on
 9    those days?
10              MS. MAYO:  I have no problem doing that.
11              THE COURT:  Great.  Okay.
12              So you don't need to brief it.  You'll get
13    it anyway.
14              MS. SULKOWSKI:  Thank you, Your Honor.
15              MS. MAYO:  Your Honor, if I may just --
16    very quickly, I just want to address -- not to waste
17    too much of the Court's time, but I think it's
18    significant.  May I proceed?
19              I want to address DeRosa's allegations that
20    there was some kind of collaboration between myself
21    and plaintiffs' counsel.
22              THE COURT:  Well, they didn't raise it now,
23    so I think you almost got away without having to
24    deal with it, but if you want to raise it, go ahead.
25              MS. MAYO:  Well, I think it bears stating
```

```
 1    that I have never spoken to plaintiffs' counsel.  I
 2    have never exchanged -- I don't know if I've
 3    exchanged any e-mails.  We exchanged a few voice
 4    messages mid summer.  And then, upon reflection, I
 5    thought it best not to communicate with them for
 6    exactly this reason.  And so I want to clarify the
 7    record on that point.
 8              THE COURT:  Okay.  Well, I didn't see any
 9    evidence of any improper conduct, so I'm not making
10    any finding in that regard.
11              MS. MAYO:  Understood.
12              THE COURT:  Ms. Sulkowski, anything else
13    with respect to Ms. McEnaney we need to discuss
14    today?
15              MS. SULKOWSKI:  I would like to just revise
16    my prior statement to say that it's June 5th and
17    6th, 2020.  I apologize for misspeaking as to the
18    relevant dates that we need.
19              And as for the rest, no, Your Honor.  Thank
20    you.
21              THE COURT:  Okay.  Great.
22              So, Ms. Mayo, you'll undertake to produce
23    all the text messages on June 5th and 6th.  And I'll
24    give you until the end of October to complete the
25    review and production of any videos that are
```

```
1    responsive, and then, hopefully, any other issues
2    you can raise after that, okay?
3              MS. MAYO:  Absolutely.  Thank you, Your
4    Honor.
5              THE COURT:  Okay.  And I think we can
6    excuse you.
7              Does anybody else need anything from
8    Ms. Mayo?
9              Okay.  Hearing nothing, Ms. Mayo, thank you
10   for joining us today, and you can step off the call
11   now.
12             MS. MAYO:  Thank you very much, Your Honor.
13             (Ms. Mayo leaves the conference call.)
14             THE COURT:  Okay.  Thank you.  All right.
15             Okay.  So let's then go to the parties'
16   joint letter.
17             Ms. Katz, it seems like the primary issue
18   is the reimaging of Ms. Bennett's phones and
19   production resulting from that.  Can you elaborate
20   for me on the status?
21             MS. KATZ:  Yes, I can, Your Honor, and then
22   I'll ask Rachel Green, who's been in touch with the
23   vendor, to speak to the specifics.
24             THE COURT:  Great.
25             MS. KATZ:  But the overriding issue is
```

```
1     this -- as Your Honor knows, we dealt with this
2     issue.  After speaking to Your Honor about this the
3     last time, we spoke with defendants and went with
4     their recommendation about the choice of vendors.
5     And we retained A&M Vendors.  And the vendor has
6     encountered many difficulties with the reimaging
7     process.
8           The plaintiff has kept defendants apprised
9     of all of these delays.  They're not our doing.
10    Some delays, however, were caused by technical
11    difficulties, but others were caused by the lack of
12    defendants' cooperation and their delay in
13    responding to clarifying information that we
14    requested from them.  We have had to shoulder the
15    full expense.  We've asked them to help shoulder the
16    burden and cost of the reimaging, but they've
17    declined to do so.
18          There are multiple iPhones.  We have asked
19    the vendor to do this on a rush time schedule, and
20    what we have received is voluminous materials.  We
21    have spent hundreds of lawyer hours, hundreds of
22    paralegal hours going through these materials, going
23    through videos, and they are very, very time
24    consuming.  And we have not delayed.  We want this
25    to move forward.
```

```
1            We have kept the defendants apprised about
2       the problems.  And at some point, as we noted in our
3       joint submission to Your Honor, we received
4       communication from defendants' counsel saying that
5       in light of the slow production -- which really was
6       not our doing.  We've done everything humanly
7       possible to get these materials to defendants.
8            We received a letter saying, we're going to
9       have to bump the discovery schedule in light of the
10      slow production.  We did not object to that, though
11      we want to get going with this.  And we said, that's
12      fine.  We recognize that this has been slow
13      production, not anyone's desire here, but we agreed
14      that we would move the dates.
15           And you can see the exchange that we
16      referenced in our materials.  And everything seemed
17      on track for agreeing to new dates and going back to
18      the Court and telling the Court that we needed
19      additional time.  That changed when we asked for the
20      defendants' portion of the submission.
21           So that brings us to now.  We told
22      defendants' counsel that we thought we can conclude
23      our review of these videos and get the submission
24      done by the end of the month.  And that's what we
25      represented in our papers to the Court, and we are
```

1    still on track to be able to do that.

2              THE COURT:  Just to clarify, meaning the

3    end of October?

4              MS. KATZ:  We said 30 days, but we would

5    like until the end of October to complete this

6    production.  And I think that's absolutely

7    achievable.  If it isn't, we'll notify the Court,

8    but we think we are on track for that.

9              THE COURT:  Okay.  All right.

10             So you think you can complete the review

11   and production by the end of October?

12             MS. KATZ:  Yes, I do.

13             THE COURT:  All right.  I don't know who on

14   the defendants' side wants to jump in on this.

15             Ms. Trzaskoma?

16             MS. TRZASKOMA:  Yes, Your Honor.  Thank you

17   very much.

18             You know, I want to express on behalf of

19   myself and all defendants, the extraordinary sense

20   of frustration that we have had through this

21   discovery process.  I mean, we are now almost at the

22   two-year anniversary of Ms. Bennett filing her

23   lawsuit, a lawsuit that she had been contemplating

24   bringing for at least a year prior to that.  And she

25   knew she was going to need to provide discovery to

1    anyone who she sued.  And the fact that, you know,

2    we are so delayed in getting responsive

3    communications from her is absolutely -- it is not

4    just a technical problem, Your Honor.

5            If you'll recall -- and I think it's

6    important to set the table for this and to correct

7    the public record around why it is that the

8    defendants in this case have had to expend so many

9    resources over the past year to deal with discovery

10   issues.  It is not, as Ms. Katz told *The New York*

11   *Times* two weeks ago, because we are weaponizing the

12   judicial system.  That is a statement that she -- an

13   extra-judicial statement that she made specifically

14   for the purpose of impugning us and our client, and

15   the record should be corrected that almost all -- I

16   am looking at a binder of, like, nearly 100 tabbed

17   communications going back and forth with plaintiffs'

18   counsel around the innumerable discovery

19   deficiencies.

20           And by the way, Ms. Katz has not allowed us

21   to speak with their vendor.  We have asked to go

22   directly to the vendor to understand what is going

23   on.  And the point that we are at right now is not

24   simply the cleanup phase.  We are still getting

25   thousands of highly relevant communications.

AMM TRANSCRIPTION SERVICE  631.334.1445

1           And just to go back in time again, in

2     January plaintiffs' counsel represented that they

3     had turned over everything.  They produced

4     approximately 2,300 documents, totaling 10,000

5     pages.  Based on that, we scheduled Ms. Bennett's

6     deposition for the end of March.  As we were

7     reviewing her production and in the runup to the

8     deposition, we went back and forth and back and

9     forth, numerous meet and confers on various issues,

10    including the blanket withholding of huge swaths of

11    responsive communications along the lines of what

12    Ms. Sulkowski was talking about earlier, where there

13    were snippets of text messages.  But it was clear

14    that there had been a before and after.  Something

15    had prompted that communication.  And we went back

16    to plaintiffs' counsel repeatedly.

17          And at a certain point in advance of that

18    March deposition, they acknowledged that they would

19    need to reimage Ms. Bennett's phone.  At that point,

20    we put the deposition off.  Ms. Bennett's counsel

21    said that they could get it done by June 30th.  And

22    on that basis, we rescheduled Ms. Bennett's

23    deposition to the end of October.

24          June 30th came and went.  Now, there were

25    additional documents -- 3,600 additional documents,

AMM TRANSCRIPTION SERVICE  631.334.1445

1    some of which were repeats of what had been produced

2    before, without redactions, with additional

3    information.  So defense counsel had to go back

4    through that entire production, re-review it, and

5    then it was still not complete because between June

6    30th and now, we have gotten an additional 5,000

7    documents totaling an additional 15,000 pages.  And,

8    again, it has to all be reviewed and re-reviewed.

9            And we put in our portion of the letter our

10    frustration and our request that the Court set a

11    date certain deadline, not a suggestion by

12    plaintiffs' counsel that maybe they can get it done

13    by the end of October.  But considering there has

14    been so much slippage even since August, we have

15    slipped, like, another month.  And at this point, it

16    is extremely frustrating.

17            And a lot of it is under the protective

18    order.  I will not discuss it in the context of this

19    public proceeding, but the belated produced

20    documents, again, it's not just cleanup.  These are

21    documents and communications and videos that go to

22    the heart of plaintiffs' claims, that completely

23    undercut her allegations, that should have been

24    produced a year ago.

25            THE COURT:  Okay.  But you have them now,

AMM TRANSCRIPTION SERVICE  631.334.1445

1    and she's going to finish her production by the end

2    of October.  So what is the relief that you're

3    asking me for?

4            MS. TRZASKOMA:  I would like the Court to

5    have there be a court order that she will complete

6    her production by the end of October.

7            And we do have information.  And the other

8    unusual thing about this case is, you know, in my

9    years of practice -- I won't say how many -- but I

10   have never had an individual party with the volume

11   of communications that Ms. Bennett has.  You know,

12   she was --

13           THE COURT:  It is what it is.  It is what

14   it is.

15           MS. TRZASKOMA:  It is what it is, but it --

16           THE COURT:  There's a lot for you to make

17   hay out of, I'm sure.  So I would rather have you

18   have it than not.  And so I understand you're trying

19   to correct the record, and I understand you're

20   speaking to whoever the media are on this call, but

21   I really want to focus on what relief you're asking

22   for, and it just seems to be a date certain.

23           And, again, it's substantial completion

24   because I have every expectation that when you sit

25   down to take Ms. Bennett's deposition, you're going

AMM TRANSCRIPTION SERVICE  631.334.1445

```
1   to have 50 other follow-up questions after that --
2   50 other follow-up topics for her to look for
3   documents about, and so it's going to be substantial
4   completion because I don't want anybody -- and it
5   goes both ways.  Nobody's going to be put in a
6   Catch-22 about saying they completed their document
7   production and then they sit down for their
8   deposition and, you know, there's something else
9   that comes up in the deposition.  That just happens.
10  You all know that.
11          MS. TRZASKOMA:  No, and I appreciate that,
12  Your Honor.  And I should have asked for an order
13  that the issue will be substantially complete
14  because we do have -- I mean, even among the
15  materials we have, you know, we do have follow-ups
16  and we do see issues that persist.  So, no doubt,
17  there will be additional.  But we would like to be
18  in a position to take Ms. Bennett's deposition
19  before the end of the year, and there's no way to
20  get to that milestone without her being in
21  substantial completion by the end of October.
22          And again, you know, this is a situation
23  where she is a plaintiff.  She should have had her
24  phone imaged a long time ago.  These were documents
25  that are not only responsive to our request, but
```

```
 1    were responsive to the Attorney General's subpoena
 2    to her, that she did not turn over to the Attorney
 3    General's Office.
 4            And so to be a defendant in this situation
 5    and have a publicly filed lawsuit against my client
 6    and all of these defendants, where the plaintiff,
 7    you know, has dragged out the disclosure of
 8    information that is directly relevant to our
 9    defenses is extremely frustrating.
10            THE COURT:  I understand.
11            MS. TRZASKOMA:  And I appreciate Your Honor
12    letting me express that.
13            THE COURT:  Okay.  All right.
14            Ms. Katz?
15            MS. KATZ:  Yes?
16            THE COURT:  Any issue with our ordering
17    today -- and this will help you move your vendor
18    along -- that the production on behalf of
19    Ms. Bennett will be substantially complete by the
20    end of October, October 31st?
21            MS. KATZ:  Yes, Your Honor, we can do that,
22    and we'll communicate that to the vendor.
23            THE COURT:  Great.
24            MS. KATZ:  But, again, I just want to be
25    very clear on this record.  This has not been in our
```

```
 1        control.  We have worked very, very closely and
 2        pressed the vendor all summer long.  And we are
 3        very, very interested in moving this along.  And we
 4        will do what we can to be in substantial compliance.
 5        I think we will meet that.
 6                You know, I don't want to get into a tit
 7        for tat here.  I just want to make one point, which
 8        I think Your Honor is well aware of, which is, we
 9        did reproduce materials that we had produced the
10        first time because Your Honor told us that you did
11        not want us to redact things based on anything that
12        we thought went to relevancy, because the materials
13        were embarrassing, et cetera.  You said, produce it
14        all.  So we did produce it again.  And now they seem
15        to be complaining about having to review it a second
16        time, but they asked for that.
17                Similarly, we had to do the same thing.
18        Defendants produced 70,000 pages in contrast to
19        plaintiffs, who produced 103,000 pages.  Of the
20        70,000 pages that four defendants produced, 44,000
21        of those were publicly available from the AG's
22        report.  The first time they produced it, they
23        redacted publicly available materials.
24                So this has been a burden on both sides.  I
25        think we share their frustration.  We are very
```

AMM TRANSCRIPTION SERVICE  631.334.1445

```
 1    frustrated that we have had to fend off what we
 2    perceive to be very overly broad discovery requests,
 3    including seeking our client's medical records and
 4    pharmacy records since 2013 for every doctor visit
 5    she's had and --
 6              THE COURT:  Okay.  Well, nobody raised that
 7    in the joint letter.  That issue is not ripe for my
 8    consideration.
 9              MS. KATZ:  Okay.  That's fine.  I
10    understand, Your Honor.
11              THE COURT:  To the extent we're just
12    griping, gripe somewhere else.
13              MS. KATZ:  Okay.  I appreciate that.  I
14    just want the record to be clear that there's
15    frustration on both ends.
16              THE COURT:  I understand everybody's
17    frustrated.  And you're forgetting that I've been
18    here the whole time, so --
19              MS. KATZ:  Okay.  I guess you're
20    frustrated, too.
21              THE COURT:  All right.  I'm not frustrated.
22    I'm not frustrated.  I'm just trying to get you to
23    move along.
24              All right.  So in anticipation though of
25    Ms. Bennett completing this production by the end of
```

```
 1    October, that doesn't mean waiting until the end of
 2    October to look at your calendars and schedule her
 3    deposition.
 4          Ms. Trzaskoma, I hope that you and the
 5    other defendants can start talking to Ms. Katz and
 6    her colleagues now about -- I realize you don't know
 7    exactly how much you're getting, but you can kind of
 8    ballpark it.  It's not going to be a million pages.
 9    It's something less than that.  But you can kind of
10    ballpark how much remaining time you need and
11    estimate when you will be in a position to take
12    Ms. Bennett's deposition, right?
13          MS. TRZASKOMA:  Yes, Your Honor.  We can do
14    that.
15          THE COURT:  Great.  Okay.
16          MS. KATZ:  And also, Your Honor, that they
17    need to give us dates to reschedule the defendants'
18    depositions because we need a complete schedule.
19          THE COURT:  Yep.  Yep.  And you have a
20    deadline of January 31st.  So I understand that
21    there have been some technical issues over the
22    summer, but I don't see now any good cause for
23    extending the January 31st deadline.  There may
24    be --
25          MS. KATZ:  Well, Your Honor, I --
```

AMM TRANSCRIPTION SERVICE   631.334.1445

```
 1              THE COURT:  -- but there's not now.
 2    There's not now.
 3              MS. KATZ:  Your Honor, we did try to raise
 4    dates.  And I understand that defendants' counsel
 5    has a heavy litigation schedule and some trials
 6    coming up, which is why in advance of this
 7    conference I requested that we exchange dates we're
 8    available, but I don't know that defendants are
 9    going to give us dates for their clients'
10    availability.  So we will exchange information, but
11    it would surprise me if we can complete it by that
12    date in light of the representations defendants'
13    counsel have already made.
14              THE COURT:  All right.  Well, I'm not going
15    to decide that issue today.  We're going to have
16    another conference -- and we'll look at our
17    calendars in a moment -- in early November, and
18    we'll see where everybody is.  But nobody has
19    expressly asked for an extension of the fact
20    discovery deadline, and I'm not giving one away for
21    free because we've already had several.  And as we
22    just heard, everybody's unhappy that this case has
23    been going on for two years.  So notwithstanding
24    what everybody else has, I think we need to be
25    really buckling down and figuring out when we can
```

1    have depositions on both sides.  And I understand

2    there are probably a bunch of nonparties that we

3    have to think about as well.

4           So let's start kind of gaming this out now.

5    It's October 1st.  January 31st is a long time away.

6    A lot can be done between now and then.  There are

7    tons of lawyers on this case.  Not everybody has to

8    be at every deposition, and we don't need to have

9    every single document before we take a deposition.

10   I've said that before to you all.  I say that in

11   every single case.

12          So I understand the situation with

13   Ms. Bennett and that we want substantial completion.

14   That makes a lot of sense.  But to the extent there

15   are some nonparties who are kind of -- you have the

16   production and you're ready to go, let's start

17   getting those dates calendared.

18          I understand that the lawyers on this call

19   are very busy, but, like I said, there's a lot of

20   time between now and January 31st, and so you're

21   going to have to show me -- if you need more time

22   beyond that, you're going to have to convince me.

23   And right now I'm not seeing that.

24          MS. SULKOWSKI:  Your Honor?

25          THE COURT:  Yes.

AMM TRANSCRIPTION SERVICE  631.334.1445

```
1                    MS. SULKOWSKI:  This is Sarah Sulkowski for

2       Ms. DeRosa.

3                    On that subject, just very briefly, we

4       didn't feel the need to keep Ms. Mayo for this, but

5       she's not the only counsel for a nonparty subpoena

6       recipient from whom we've heard that plaintiffs'

7       counsel is telling subpoena recipients that the

8       documents we're requesting are duplicative of their

9       production.  They can't know that.  No one can know

10      that.  And they're saying this.  They're interfering

11      with our non-party discovery at the same time that

12      they're complaining publicly that we're engaging in

13      wasteful discovery tactics.  And I just submit that

14      both of those are improper and ask that the Court

15      instruct them to stop.

16                   MS. KATZ:  I'm going to object to that

17      characterization.  We have never made that comment

18      to any individual.  Rachel Green had one or two

19      conversations where we said we are producing all

20      materials.  And I really object to your

21      characterization.  That was not said.

22                   THE COURT:  I'm not going to make any

23      finding in that regard.  But just remember, you

24      all -- you have to get through this case together,

25      okay.  So just be nice and don't do things -- and
```

```
1   don't spin things the wrong way, okay.
2           You need to work together to get to the
3   finish line, whether you like it or not.  I know you
4   all despise each other.  I know the parties despise
5   each other.  But we're here and we have to get this
6   done.
7           Ms. Katz, do you know if you and your team
8   are available at 11 a.m. on November 7th for a
9   telephone conference?
10          MS. KATZ:  Yes.
11          THE COURT:  Okay.
12          Ms. Trzaskoma, how about you?
13          MS. TRZASKOMA:  Yes, that's fine, Your
14  Honor.
15          THE COURT:  Great.
16          Ms. Sulkowski, you and Mr. Morvillo, any
17  conflict?
18          MS. SULKOWSKI:  Yes, Your Honor.
19          THE COURT:  Okay.  Great.
20          MS. SULKOWSKI:  Yes, no conflict.
21          THE COURT:  Okay.
22          Ms. Rosenberg?
23          MS. ROSENBERG:  Yes, that time works for
24  Ms. DesRosiers' counsel.
25          THE COURT:  Okay.  Great.
```

AMM TRANSCRIPTION SERVICE  631.334.1445

```
 1                 And Ms. Messina?

 2                 MS. MESSINA:  Yes.  Works for Ms. Mogul's

 3      counsel.

 4                 THE COURT:  Okay.  Great.

 5                 Actually, let's make it noon instead of 11

 6      because of a prior conference we have that day.

 7                 All right.  And so what I will do is ask

 8      you to give me a joint letter by noon on Monday,

 9      November 4th, with any issues that are ripe for me

10      to consider.

11                 Okay.  Ms. Katz, anything else you'd like

12      to raise from Ms. Bennett's perspective?

13                 MS. KATZ:  No, Your Honor.  Thank you.

14                 THE COURT:  Thank you.

15                 Any of the defendants, anything else you'd

16      like to raise?

17                 MR. MORVILLO:  Your Honor, this is Greg --

18                 THE COURT:  Yes.  Go ahead.

19                 MR. MORVILLO:  Your Honor, this is Greg

20      Morvillo.

21                 THE COURT:  Yes.

22                 MR. MORVILLO:  Did I understand you to say

23      that we should proceed with third-party depositions,

24      or did I mishear that?

25                 THE COURT:  I said you should -- there's no
```

```
 1    reason that we should not be scheduling depositions
 2    at this point.
 3            I'm not going to micromanage your schedule,
 4    but if people have produced documents and they're
 5    ready to go, you should try to get them scheduled
 6    because like I said --
 7            MR. MORVILLO:  Thank you very much.  I
 8    appreciate the clarification.
 9            THE COURT:  -- January 31st is the date,
10    so --
11            MR. MORVILLO:  Understood.
12            THE COURT:  -- is the deadline.
13            So, you know, if people are sitting around
14    now doing nothing, scheduling no depositions, it's
15    going to be very hard for you to convince me,
16    whenever you inevitably ask me for more time, it's
17    going to be hard for you to convince me that you
18    deserve it, okay?
19            MR. MORVILLO:  Understood.  Thank you very
20    much for the clarification.
21            THE COURT:  Okay.  All right.
22            Anything else?
23            MS. TRZASKOMA:  Your Honor, Theresa
24    Trzaskoma.
25            Just very briefly, I know that I touched on
```

```
 1    this, but I am very concerned about plaintiffs'
 2    counsels' statements to the press, and particularly
 3    to the extent they are misleading with respect to
 4    the cause of legal defense cost in this case.  And,
 5    you know, at this point I just -- I very much want
 6    the Court to understand that it's our view that
 7    that's inappropriate, bordering on a violation of
 8    ethical obligations.
 9            And I'm not specifically seeking a gag
10    order, but I do want to raise that as an issue.  And
11    if, you know, there are future statements that we
12    think are crossing the line, we plan to raise them
13    with the Court and seek specific relief, but that we
14    are very troubled by that, and particularly to the
15    extent it is an effort to prejudice our client and
16    defendants in the public eye.
17            THE COURT:  All right.  You've made your
18    statement.  No relief is being sought as to that
19    issue today, and I'm not making any finding or
20    ruling on it, but duly noted.
21            Okay.  Thank you very much, everyone.
22    You'll see a post-conference order from us, and if
23    you would also kindly order the transcript as well.
24            Thank you.  Have a good afternoon.
25
```

```
1                    C E R T I F I C A T E
2
3        I, Adrienne M. Mignano, certify that the
4    foregoing transcript of proceedings in the case of
5    Bennett v. Cuomo, et al.; Docket #22CV7846 was
6    prepared using digital transcription software and is
7    a true and accurate record of the proceedings.
8
9
10   Signature  _____
                        Adrienne M. Mignano
11              ADRIENNE M. MIGNANO, RPR
12
13   Date:      October 3, 2024
14
15
16
17
18
19
20
21
22
23
24
25
```