```
                   UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF NEW YORK
        ----------------------------:
        CHARLOTTE BENNETT,           : Case No.: 22-cv-7846
                    Plaintiff,       :
             v.                      :
        ANDREW M. CUOMO, et al.,     : New York, New York
                    Defendants.      : November 7, 2024
        ----------------------------:

               TRANSCRIPT OF STATUS CONFERENCE HEARING
               BEFORE THE HONORABLE SARAH L. CAVE
                  UNITED STATES MAGISTRATE JUDGE

        APPEARANCES:

        For Plaintiff:       EISENBERG & SCHNELL LLP
                             BY: Laura S. Schnell, Esq.
                                 Herbert Eisenberg, Esq.
                             233 Broadway
                             New York, NY 10279

        For Plaintiff:       KATZ BANK KUNIN
                             BY:  Rachel E. Green, Esq.
                                  Debra Katz, Esq.
                             11 Dupont Circle
                             Washington, DC 20036

        For Defendant:       GLAVIN PLLC
        Andrew M. Cuomo      BY:  Rita M. Glavin, Esq.
                             156 West 56th Street - Ste #2004
                             New York, NY 10019

        For Defendant:       MORVILLO PLLC
        Melissa DeRosa       BY:  Gregory R. Morvillo, Esq.
                                  Sarah Sulkowski, Esq.
                             1740 Broadway - 15th Floor
                             New York, NY 10019

        For Defendant:       DEBEVOISE & PLIMPTON LLP
        Jill DesRosiers      BY:  Jyotin Hamid, Esq.
                                  Soren Schwab, Esq.
                             66 Hudson Boulevard
                             New York, NY 10001

        Proceedings recorded by electronic sound recording;
        Transcript produced by transcription service

              AMM TRANSCRIPTION SERVICE - 631.334.1445
```

```
 1    APPEARANCES (Continued)

 2

 3    For Defendant:        ORRICK, HERRINGTON & SUTCLIFFE LLP
      Judith Mogul         BY:   Michael Delikat, Esq.
 4                               Brianna Messina, Esq.
                           51 West 52nd Street
 5                         New York, NY 10019

 6    For Nonparty:         BRESSLER, AMERY & ROSS, PC
      Madeline Cuomo       BY:  DAVID H. PIKUS, ESQ.
 7                         17 State Street
                           New York, New York 10004
 8
      For Defendant:        THE LAW FIRM OF ANDREW M. STENGEL
 9    McEnaney             BY:  Katherine E. Mayo, Esq.
                           11 Broadway
10                         New York, New York 10004

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              THE COURT:  Good afternoon.  This is
 2    Magistrate Judge Cave.  We're here for a conference
 3    in Bennett v. Cuomo; Case Number: 23-cv-7846.
 4              We have a lot of people on the line, so I
 5    would like to start with appearances of plaintiff's
 6    counsel, please.
 7              MS. SCHNELL:  Good morning, Your Honor.
 8    This is Laura Schnell at Eisenberg & Schnell for
 9    plaintiff, Charlotte Bennett.  Also on the phone for
10    plaintiff is Herbert Eisenberg at Eisenberg &
11    Schnell and Debra Katz and Rachel Green from Katz
12    Banks Kumin.
13              THE COURT:  Thank you very much.
14              For Mr. Cuomo?
15              MS. GLAVIN:  Yes.  Good morning, Your
16    Honor.  Rita Glavin of Glavin PLLC for former
17    governor Andrew M. Cuomo.
18              THE COURT:  Okay.  Good afternoon.
19              For Ms. DeRosa?
20              MR. MORVILLO:  Good afternoon, Your Honor.
21    Gregory Morvillo and Sarah Sulkowski on behalf of
22    Ms. DeRosa.
23              THE COURT:  Thank you.
24              For Ms. DesRosiers?
25              MR. HAMID:  Good afternoon, Your Honor.
```

1    This is Jyotin Hamid at Debevoise & Plimpton.  I
2    believe my colleague, Soren Schwab, at Debevoise is
3    also on the line.
4            THE COURT:  All right.
5            For Ms. Mogul?
6            MR. DELIKAT:  Mike Delikat and Brianna
7    Messina from Orrick.
8            Judge, there's a lot of background noise.
9    Could you ask everyone to go on mute when they're
10   not on?
11           THE COURT:  I just -- I will once we get
12   the appearances.
13           MR. DELIKAT:  Thank you.
14           THE COURT:  Once we get everybody to
15   announce themselves, then I'll ask everyone to.
16           MR. DELIKAT:  Okay.
17           THE COURT:  Thank you.
18           Do we have counsel for Ms. Cuomo, Madeline
19   Cuomo?
20           MR. PIKUS:  Good afternoon, Your Honor.
21   David Pikus, P-I-K-U-S, of Bressler, Amery & Ross,
22   PC.
23           THE COURT:  All right.  Good afternoon.
24           And for Ms. McEnaney?
25           MS. MAYO:  Katherine Mayo of the Stengel

1    Law Firm for non-party, Ms. McEnaney.

2            THE COURT:  Okay.  Great.

3            And as Mr. Delikat suggested -- I think

4    everyone's done it now, but did I miss any

5    appearances, people who would like to announce

6    themselves?

7            Very good.  Thank you.

8            And so, in the meantime, if you're not

9    speaking, please mute yourself.  And when you do

10   need to speak, of course it's fine to unmute so that

11   we can all hear you.

12           On the agenda today -- in order of how I'm

13   proposing that we handle it -- are two non-party

14   issues.  I'm suggesting that we deal with those

15   first so that the non-parties can then excuse

16   themselves.

17           It looks like there's potentially an issue

18   regarding the scheduling of Ms. Cuomo's deposition.

19   And then we have Ms. DeRosa's motion to compel with

20   respect to Ms. McEnaney.  And then there may be a

21   brewing issue with respect to the length of the

22   plaintiff's deposition, and their rumblings of

23   extending the discovery schedule as well.

24           As to the last point, I think it's

25   premature to be doing that.  So I don't expect to be

1     making a ruling on any extension requests today.
2     But I'm just noting that in terms of the agenda in
3     front of us.
4          So starting with Ms. Cuomo, because I'm
5     hoping that we can be relatively brief and then let
6     Mr. Pikus go, do I have it correct, Ms. Schnell --
7     I'll start with you -- that it looks like we're
8     confirmed for Ms. Cuomo's deposition on January
9     30th?
10         MS. SCHNELL:  Yes, Your Honor.  I believe
11    Mr. Pikus has a problem with that date, but gave us
12    another date that is also within that time period,
13    so we do not have any remaining issues.
14         THE COURT:  Okay.  Are there any other
15    issues pertaining to Ms. Cuomo that we need to
16    discuss?
17         MR. PIKUS:  May it please the Court, Your
18    Honor, David Pikus.  No, not at this time.
19    Obviously, we've agreed to the January 29th date
20    subject to the parties going before we do.  And
21    we're reserving our rights, of course, in case the
22    decision is made on the motion to dismiss.
23         THE COURT:  Of course.  Okay.  And, you
24    know, what I would just say, my intention right now
25    is that our fact discovery deadline remains January

AMM TRANSCRIPTION SERVICE - 631.334.1445

```
 1    31st.  Let's try to keep Ms. Cuomo's date as the
 2    29th.  I know -- I am aware of what I have said
 3    before about her following the party deposition.  We
 4    have a lot of moving parts here, Mr. Pikus, and I
 5    don't want you pulling the rug out from under
 6    everybody at the very last minute.  I want the date
 7    of January 29th with her to hold, please.
 8             MR. PIKUS:  Understood.
 9             THE COURT:  Okay.  Thank you very much.
10             MR. PIKUS:  Okay.  Thank you, Your Honor.
11    I'm going to sign off.
12             THE COURT:  Yes, you're welcome to depart.
13    Thank you.
14             MR. PIKUS:  Okay, thank you.  Bye-Bye.
15             (Mr. Pikus leaves the conference.)
16             THE COURT:  Okay.  Thank you.
17             All right.  So that takes care of the first
18    issue.  Now we need to turn to Ms. DeRosa's motion
19    to compel with respect to Ms. McEnaney.
20             Mr. Morvillo or Ms. Sulkowski, would you
21    like to go first, please.
22             MS. SULKOWSKI:  Yes, Your Honor.  This is
23    Sarah Sulkowski for Ms. DeRosa.  When we were last
24    together on October 1st, the Court ordered
25    Ms. McEnaney to produce videos and some additional
```

1    text messages if they existed.  But at that time, we

2    had not had an opportunity to extensively compare

3    the text messages that Ms. McEnaney had produced

4    with what we had received from plaintiff.  We have

5    since had the opportunity to do that.  And as we

6    expressed in our pre-motion letter, there are

7    serious, glaring deficiencies in Ms. McEnaney's

8    production of text messages, which her counsel has

9    repeatedly described as over-inclusive.

10           We're assuming that representation isn't

11   knowingly false, and so it -- it seems to evidence a

12   misunderstanding either of the scope of the subpoena

13   or the issues at stake in this case.  And in either

14   case, we need to figure out how to get the remaining

15   relevant materials and responsive materials post

16   haste, since we have just a little more than a month

17   remaining before we depose the plaintiff.

18           We provided the Court with a few examples

19   of highly responsive and relevant text messages not

20   produced by Ms. McEnaney as field exhibits to our

21   October 17th letter.  We're happy to offer

22   additional examples in our briefing on a motion to

23   compel or in a closed session, if Your Honor would

24   like.  But suffice it to say, there are many

25   additional examples just in comparison with what the

1   plaintiff has produced previously.  And of course,
2   the problem is that we don't know what Ms. Bennett
3   doesn't still have or hasn't produced that
4   Ms. McEnaney does have and has withheld.  And that's
5   the whole point of this subpoena.  It always has
6   been.
7          Depending on the volume of additional
8   responsive messages, we could need substantial time
9   to review those in addition to what's going to be
10  required to review the expansive production that
11  plaintiff has just made on Halloween.
12         So, given all of this, given that Ms. Mayo
13  has had, and her client have had almost six months
14  to review these messages and produce the responsive
15  ones, that they clearly have not done so, and that
16  time is short, we would propose the top-jet
17  quick-peek solution, where one member of our team
18  would review all of the text messages, would confer
19  with Ms. Mayo about what we found to be responsive,
20  would return or destroy the non-responsive messages,
21  and would only then either in concurrence with
22  Ms. Mayo on what's responsive, or after recourse to
23  the Court to make those responsiveness
24  determinations, would only then share with other
25  counsel on our team.

1              The only proposed solution we've heard from

2    Ms. Mayo is that we specify each and every

3    responsive document that wasn't included, and she

4    can then turn those over.  And of course, that's

5    not -- that doesn't solve the problem that the

6    subpoena was designed to solve, which is, we don't

7    know what we don't have from plaintiff.

8              Now, Ms. McEnaney has never moved to quash

9    this subpoena, but if she did, the standard would

10   be -- the onus would be on her to show an undue

11   burden.  And the quick-peek approach that we're

12   proposing, imposes no burden at all on Ms. McEnaney

13   or her counsel.  Confidentiality is ensured by the

14   protective order in place.  We would be assuming the

15   burden and cost of the responsiveness review.  And

16   so this is, we submit, the lowest friction, most

17   efficient solution possible.  And we've never heard

18   any explanation of Ms. Mayo's opposition to it.  At

19   this stage it's the solution that's required to

20   effectuate Ms. DeRosa's right to these responsive

21   materials.

22             THE COURT:  So, Ms. Mayo, Ms. DeRosa's

23   counsel has identified in their letter at least

24   three big spans of time during which there are no

25   text messages that Ms. McEnaney has produced.

1           Have you tried going to Ms. McEnaney's

2    texts for these windows and seeing if there are

3    additional responsive text messages or videos that

4    need to be produced?

5           MS. MAYO:  Thank you, Your Honor.  I have

6    not, but not because of any resistance on my part.

7    It's more a matter of the fact that any meet and

8    confer was very abruptly concluded with the only

9    solution -- it's ironic that defendant, DeRosa,

10   saying the only solution I proposed was that they

11   provide me every text message or area where they see

12   something that they believe might be relevant or

13   they call "relevant," that should be produced.

14   That's the only solution that they provided, which

15   is to have Ms. McEnaney turn over each and every

16   text message.

17          And as far as my experience has shown and

18   the case law shows, that's simply not how discovery

19   proceeds.  A corporation isn't required to open up

20   their file room and allow opposing counsel to walk

21   in and examine all the files.  And notably, we're

22   not talking about a corporation here.  We're talking

23   about a young woman.

24          And even Ms. Sulkowski said she would

25   require substantial time to review any additional

AMM TRANSCRIPTION SERVICE - 631.334.1445

```
 1    messages.  Can you imagine the time that has been
 2    demanded on this young woman and myself?  That's not
 3    resistance.  It's that, rather than -- I'm happy to
 4    review those messages and produce any and all that
 5    could be responsive.  There's no gamesmanship here.
 6    You know, and in addition, someone who's responding
 7    to a subpoena is not expected to be perfect.
 8         I'm sure there may be some messages that
 9    were missed, but far and away, the vast majority of
10    anything that was responsive, certainly was.  But
11    I'm not willing to turn over my client's entire
12    phone, essentially all of her communications with a
13    party, which will reveal all kinds of things that
14    have nothing to do with this case.  And it is a
15    privacy issue.  And that is relevant.  It's highly
16    relevant.  Case law shows that a non-party's privacy
17    interests are important.
18         So I simply wanted a middle ground.  And I
19    said, as we had this meet and confer, here's my
20    first proposal.  And Ms. Sulkowski's response was,
21    no, that's not acceptable, we want them all.
22         THE COURT:  Well, I've already --
23         MS. MAYO:  And I could have come up with
24    other possible solutions.
25         THE COURT:  Okay.  Have you thought of any
```

```
1    other possible solutions that you're in a position
2    here to discuss today?
3            MS. MAYO:  I know with other non-parties,
4    and it's a practice that's very common in discovery
5    to use a word search, for example, keywords.
6            THE COURT:  So far you have not -- the text
7    that you've turned over have not been the result of
8    a word search?
9            MS. MAYO:  No, I personally read every
10   single one, which is far superior to a board search.
11           THE COURT:  Did you include -- did your
12   review include -- I'm looking at Page 2 of
13   Ms. DeRosa's letter at ECF Number 312, and there she
14   represents that there are no messages for July 1 to
15   August 8, 2019, June 14th to June 19th, 2020, and
16   July 9th to October 6th.
17           Did you review those time periods
18   previously?
19           MS. MAYO:  I did.
20           THE COURT:  Okay, and you didn't find any
21   responsive texts during that time period?
22           MS. MAYO:  I didn't deem them responsive,
23   but I'm happy to re-review.  I just want to
24   emphasize that there's no resistance on
25   Ms. McEnaney's part to supplement her responses.
```

```
1    That's simply not what's happening here.  I just
2    want a fair solution.
3         THE COURT:  Right.  Well, you should be
4    reviewing -- and I'll give Ms. Sulkowski a chance in
5    a minute if there are any other time periods, time
6    gaps that she wants to raise, but I am going to
7    direct, if it looks like -- based on what Ms. DeRosa
8    has said in her letter, there are responsive texts
9    during those three periods that appear not to have
10   been produced.
11        I understand that Ms. McEnaney is a
12   non-party, and so, you know, what the hot, burning
13   issues are in this case may be less familiar to you
14   when you're doing your review, but certainly any
15   text messages about her employment with the State of
16   New York and the governor's office, as well as
17   Mr. Cuomo, or any of the defendants, whether by name
18   or by implication, any of those texts should -- the
19   Court would deem those responsive, and those should
20   be produced.
21        So there may be -- there may be code that
22   you have to decipher a little bit, and that may
23   require some, you know, translating with your
24   client.  But certainly the Court is going to direct
25   that Ms. McEnaney -- you and Ms. McEnaney go back
```

1    for the three periods in the letter, at least, and

2    produce any additional responsive text messages,

3    okay?

4         MS. MAYO:  Certainly.  And I assure the

5    Court that anything that had to do with employment,

6    I would estimate 97% has been turned over.  DeRosa's

7    counsel is really getting into the weeds in terms of

8    trying to build a case here, but I will do so, and I

9    will gladly provide them.

10        THE COURT:  They are certainly thorough.

11        Ms. Sulkowski, are there any other time

12   gaps that you've identified other than the three

13   listed in your letter?

14        MS. SULKOWSKI:  We have identified numerous

15   other missing messages.  And I can follow up with

16   Ms. Mayo and provide her with the time periods.  But

17   of course, the problem is that, again, we don't

18   know -- there are many time periods missing.

19   Responsive messages from all of them should be

20   produced.  And we can't identify specific messages

21   that fall within other time periods if we don't

22   already have them from plaintiff.  And those are the

23   messages we need the most.

24        THE COURT:  You already asked me once to

25   make her turn over all 4,000 text messages and I

1    denied that.  I'm not going to do that today.  I

2    understand that you proposed -- you've offered a

3    proposal that you think would mitigate the burden.

4    But I'm very concerned about Ms. McEnaney's privacy.

5    And so turning over 4,000 of her text messages is --

6    I am not comfortable with doing that.  I think that

7    what you propose may be a resource, may minimize the

8    resource burden, but it does not minimize the

9    privacy burden that's placed on Ms. McEnaney by

10   turning over all of her text messages.

11        So if -- in addition to the three times in

12   your letter, if there are other spans of time that

13   you've identified that you want Ms. Mayo to go back

14   and double-check, you can communicate with her to do

15   that.  But I am not going to order -- I'm not going

16   to grant your request for her to turn over wholesale

17   all 4,000 text messages, or however many there are.

18        MS. SULKOWSKI:  Your Honor, we respectfully

19   would like an opportunity to brief this issue.

20        THE COURT:  You've already written me

21   letters.  You've briefed this issue.  We're done.

22   We've got to get to the end of this.  You've

23   submitted a letter brief.  That's sufficient.  If

24   you want to brief this issue, it's not going to be

25   decided until the end of the year, and it's too

1    late.  And that's not a reason to grant you a
2    discovery extension.
3            We need to do this now.  If Ms. Mayo is
4    going to do the review, she needs to do it now.  I'm
5    going to put time constraints on her doing it so
6    that she can turn it over to you so that you have it
7    before Ms. Bennett's deposition.  But re-briefing an
8    issue that you've already briefed is not a good
9    solution.  That's not a good use of resources.
10   Ms. Mayo's resources are much better devoted to
11   finding the text messages that you wanted to find
12   than responding to a letter brief from you.
13           MS. SULKOWSKI:  Your Honor, our concern
14   continues that she has missed these messages twice,
15   and they miss them again.  It's not only employment,
16   it's also substance use.  It's also sexual acting
17   out.  It's numerous, numerous topics that don't
18   appear to have been encompassed in her review of the
19   first two times.
20           At a very minimum, we --
21           THE COURT:  Then you should have a --
22   longer than a 10-minute conversation with her to
23   explain to her what it is she's looking for.  A meet
24   and confer for 10 minutes, that's barely a meet and
25   confer.

AMM TRANSCRIPTION SERVICE - 631.334.1445

```
 1              MS. SULKOWSKI:  I have to object to the
 2    characterization.  We certainly did not hang up on
 3    Ms. Mayo.  She did not indicate that she had more to
 4    offer in that conversation.  We would have been
 5    happy to talk to her as long as necessary to resolve
 6    this.  There were no other suggestions forthcoming.
 7              If she is going to do this review and
 8    produce additional messages to us, we would ask for
 9    a very tight turnaround time, and we will provide
10    her with time periods when we need the messages.
11              THE COURT:  Okay, but the more you ask her
12    to look for, the longer it's going to take her to do
13    it.  So you do need to -- and we're going to talk
14    about this when we get to Ms. Bennett's deposition.
15    You guys need to prioritize.
16              What are the most important things?  I
17    understand responsiveness is very broad, and it
18    encompasses a lot.  But what are the most important
19    things that you think Ms. McEnaney has, that she has
20    not already produced?  I would like to get her
21    higher than 97%, but I wouldn't be surprised if
22    there's one or two things that are missing.  That
23    always happens in discovery.  We need to be
24    realistic and practical.
25              So there are three time periods in your
```

1  letter.  If there are other time periods that you

2  want to identify for her, that's fine.  But the more

3  you ask her to search for, the longer it's going to

4  take.  And it is not going to be a reason for us to

5  move the discovery deadline, or to move

6  Ms. Bennett's deposition.

7       MS. SULKOWSKI:  Your Honor -- Your Honor,

8  respectfully, it's been six months almost since we

9  served the subpoena.  Ms. Mayo went dark for nearly

10  a month after asking for and being granted multiple

11  extensions.  None of that courtesy should be

12  prejudicing Ms. DeRosa at this point.  We need all

13  the responsive text messages.

14       THE COURT:  You have hundreds of text

15  messages from her.  Ms. DeRosa is not prejudiced.

16  She has hundreds of text messages.  And I'm ordering

17  that she go back and do a second round, informed by

18  a conversation with you, to make sure that we get as

19  close to complete coverage as possible.  But she is

20  right that it is not going to be perfect.  But she

21  is a non-party, and I am mindful of the burden on

22  her, and I am mindful of her privacy interests.  And

23  so I'm trying to balance all those things against

24  Ms. DeRosa's need for this discovery, which I'm

25  perfectly willing to acknowledge.  But we need to be

1    reasonable, and we need to move forward.

2              So my ruling is that I'm denying your

3    request to order her to wholesale turn over all

4    4,000 documents.  But I am going to direct her to go

5    back and search -- re-search the three time periods

6    that are identified in your letter, as well as any

7    additional time periods that you want to identify to

8    her.  And I would strongly encourage you to remember

9    that the more you ask of her, the more time it's

10   going to take, and the less time you'll have to

11   review whatever it is she turns over ahead of the

12   deposition.

13             MS. SULKOWSKI:  Your Honor, may we have a

14   deadline for this production?

15             THE COURT:  I was just going to ask her

16   that.

17             So, Ms. Mayo, what is your turnaround time

18   for reviewing these three additional periods?  And

19   there may be some other odds and ends that

20   Ms. Sulkowski follows up with you about.

21             MS. MAYO:  Sure.  I could do it in two

22   weeks after receiving the list.

23             THE COURT:  Well, you have the three.  You

24   can go ahead and get started on the three that are

25   in the letter today.  There's no reason we can't

1    start doing that today.

2              MS. MAYO:  Sure.  Well, I do have other

3    things to do, but I will get it done very quickly.

4              THE COURT:  I don't need 12-22.  I mean,

5    you have information about the areas that they think

6    are missing already, and Ms. Sulkowski will follow

7    up with you about any others.  But then two weeks

8    from today is the 21st, okay?

9              MS. MAYO:  How about a timeline for any

10   additional time periods that they're seeking?  I'm

11   afraid that could get hairy.

12             THE COURT:  Ms. Sulkowski, how quickly do

13   you think you can let Ms. Mayo know about any

14   additional time periods you're wanting her to check?

15             MS. SULKOWSKI:  Monday.

16             THE COURT:  Okay.  So how about --

17             MS. MAYO:  Could I have two weeks from

18   Monday?

19             THE COURT:  Well, how about we say two

20   weeks from today for the ones that you already know

21   about, that's the 21st.  And then I'll give you

22   until November 26th for any additional ones that

23   Ms. Sulkowski identifies for you by Monday, okay?

24             MS. MAYO:  That works.  Thank you, Your

25   Honor.

          AMM TRANSCRIPTION SERVICE - 631.334.1445

```
 1                MS. SULKOWSKI:  Thank you.

 2                THE COURT:  Okay.

 3                MS. SULKOWSKI:  Thank you, Your Honor.  If

 4      I might raise one additional issue while we have

 5      Ms. Mayo here.

 6                We received videos and images that appear

 7      to have been embedded in text messages from

 8      Ms. McEnaney.  We didn't actually -- she sent them

 9      on the 31st.  We didn't actually receive them until

10      the 4th, which is why they're not raised in our

11      letter.  But we note that there are no videos or

12      images produced after 2020, but we know that there

13      were embedded images in 2021, for example.

14                And so while we have Ms. Mayo here, I'd

15      just like to ask that any videos and images after

16      2020 be produced.

17                THE COURT:  Can you identify for her the

18      messages that have the embedded videos that are not

19      there?  Or do you have the messages, and you just

20      don't have the video?  Or the videos are somehow

21      kept separately?

22                MS. SULKOWSKI:  We have text messages that

23      plaintiff has produced that show embedded images

24      that are not included in those messages.  And so we

25      believe Ms. McEnaney would have those images.  I can
```

```
 1   certainly give Ms. Mayo examples.  Again, it's a
 2   problem that we don't know everything that we don't
 3   have.
 4            THE COURT:  Sure, I understand.
 5            So, Ms. Mayo, may I ask you, did you search
 6   for videos that Ms. McEnaney has after 2020?
 7            MS. MAYO:  We did, to the best of my
 8   ability -- to the best of my knowledge.  I'm going
 9   to have -- I'd have to circle back with my client
10   because she's the one who's in possession of the
11   phone, and we worked together to -- it was actually
12   quite a logistical challenge to download as many of
13   the images and videos as possible.  I can circle
14   back and find out if there was an issue with that,
15   or if there are images and videos that were not
16   downloaded.  That was not a conscious decision on
17   either of our part.
18            I think we just -- I'm willing to set out a
19   timeline right here and now.  I don't want to engage
20   in any additional motion practice, and I'm sure the
21   Court does not want to do so either.
22            THE COURT:  I understand.
23            MS. MAYO:  Could we get some time beyond
24   the deadline for the text messages to start to deal
25   with this?
```

AMM TRANSCRIPTION SERVICE - 631.334.1445

```
 1              THE COURT:  Let me just -- hold on one
 2    second.  I'm just looking for the various deposition
 3    dates to -- so Ms. Bennett is not going to be until
 4    January.  So what -- how about I set a deadline of
 5    December 6th on the videos, okay?
 6              MS. MAYO:  That works for --
 7              THE COURT:  After Thanksgiving.
 8              MS. MAYO:  That works, Your Honor.
 9              THE COURT:  So, Ms. Sulkowski, I would
10    encourage you to the extent you've identified
11    messages where the video is not there, to share
12    those with Ms. Mayo.  But, Ms. Mayo, please go back
13    to Ms. McEnaney and make sure independent of
14    whichever ones that Ms. Sulkowski shows you, that
15    there isn't any -- that we're not in a situation
16    where there are videos from 2021 that are
17    responsive, that need to be produced, okay?
18              MS. MAYO:  Certainly doable.
19              THE COURT:  Okay.  Good.  Thank you.
20              MS. SULKOWSKI:  Thank you, Your Honor.
21              THE COURT:  All right.  Ms. Sulkowski, any
22    other points relating to Ms. McEnaney?
23              MS. SULKOWSKI:  No, Your Honor.  Thank you.
24              THE COURT:  Okay.  Thank you.
25              All right.  Ms. Mayo, I think we can let
```

```
 1   you go.  Please do make sure that you look at the
 2   post-conference order, which will have the deadlines
 3   that we just talked about.  And I appreciate you
 4   going back and being as thorough as humanly
 5   possible, okay.
 6           MS. MAYO:  Thank you very much, Your Honor.
 7           THE COURT:  All right.  We can excuse you
 8   now.  Thank you.
 9           MS. MAYO:  Thank you.  Take care.  Bye.
10           THE COURT:  Thank you.
11           (Ms. Mayo leaves the conference.)
12           THE COURT:  Okay.  So based on the parties'
13   submission, it looked like there was a percolating
14   issue with respect to the length of Ms. Bennett's
15   deposition.  I don't know if -- I'll give the
16   defendants a chance to tell me where things stand on
17   this.
18           Does one of the defendants' counsel want to
19   tell me whether this is ripe yet, or if the parties
20   are still working on it?
21           MS. GLAVIN:  Good afternoon, Your Honor.
22   Rita Glavin.  I think I can take the lead on this.
23           THE COURT:  Okay.
24           MS. GLAVIN:  To give you a -- Judge, just
25   to give you a little bit of an update, because I
```

AMM TRANSCRIPTION SERVICE - 631.334.1445

```
 1    think this will impact how you think about this, and
 2    it certainly is impacting how we're thinking about
 3    this.
 4            We got a production on October 31st from
 5    Ms. Bennett.  The production is -- it's quite
 6    voluminous.  It's approximately 7,700 files.  Our
 7    vendor has not completed loading them.  Within that
 8    there are 1,000 media files, which I think Your
 9    Honor understands to be either video or audio.
10            And given Your Honor's familiarity with the
11    case, the videos, a lot of them are Ms. Bennett sort
12    of documenting things going on in her life,
13    contemporaneous.  There -- in those, also within
14    this, there are approximately 2,000 files that at
15    this point we're getting a "Image cannot be opened."
16    And we will have to address that because I'm -- we
17    have not had a chance to confer with plaintiff's
18    counsel about the production.  But I wanted Your
19    Honor just to be aware of what's in there.
20            So there's about 2,000 that as of now we're
21    being told we can't review.  And I think Your Honor
22    knows the issue with the media files is they all
23    have to be reviewed because you can't do -- they're
24    not easily searchable.  I'll give you a flavor just
25    for some of them that -- you know, some of -- our
```

1    team has been able to look at.

2            There are some clear, you know, right off

3    the top, material, video files in there that we

4    hadn't seen before.  There are some from late 2019

5    where Ms. Bennett is talking about her job, talking

6    about, you know, quitting the job.  There is a text

7    message that we've seen where she's drafted a

8    resignation letter.  This is in late 2019.

9            And I just -- this is just by way of

10   example, because, of course, one of the key points

11   in the case is Ms. Bennett claiming that she had

12   left the Chamber because of sexual harassment, or it

13   was retaliation, and the job she went to, you know,

14   was retaliatory and a do-nothing job.  This, of

15   course, I think you understand -- Your Honor would

16   understand the significance to the defense of this.

17   I get, and I'm quite certain plaintiff will

18   disagree, you know, with what the significance is.

19   But, you know, from our perspective it's quite

20   significant.

21            THE COURT:  Sure.

22            MS. GLAVIN:  What we have -- what we have

23   done, and it's in the letter, is we've scheduled --

24   you know, we've scheduled all the party depositions.

25   We have dates for those.

AMM TRANSCRIPTION SERVICE - 631.334.1445

1          Go ahead if you had a question.  I just
2   wanted -- I had a little more context, but if you
3   have a question, Judge, please jump in.
4          THE COURT:  No, go ahead.
5          MS. GLAVIN:  Okay.  So what we have done,
6   and I think Your Honor got this when we met with you
7   a month ago, and it's reflected in our status letter
8   from September.  The vast, and I really mean the
9   vast majority of the document productions, and what
10  we believe to be the most material to Ms. Bennett's
11  claims and our defense have all happened in the last
12  90 days.  We have not gotten through even the
13  document production that occurred in August, which
14  was in the range -- and it was late August.  It was
15  in the range of 4,000 to 5,000 files.
16         So, A, I give that to you because -- what
17  you said to us at the last conference.  And you were
18  right and it was fair, is you have a January 31st
19  deadline, and you are not -- you know, you want to
20  see that we're making progress, and we're working
21  and doing everything we can.  And so I want you to
22  understand that from the defendants' perspective --
23  and you can be sure that we have regular calls with
24  counsel for our three co-defendants in terms of what
25  we're seeing in those productions.  There's also --

1    so there's a lot of documents that are important to

2    us that only recently got produced.

3           And, you know, we are -- we are where we

4    are, okay.  But I would say that when the Court in

5    March of this year set the January deadline, and our

6    willingness to say that we thought that was a

7    reasonable deadline, was based on the representation

8    that Ms. Bennett's production would be produced --

9    would be completed by June, and that just didn't

10   happen.  And so we feel that we lost four months.

11   That's just where we are.

12          On the issue of the depositions, we had --

13   and to also give you a flavor for where we think

14   we're at, we took -- there are -- Ms. Bennett has

15   approximately, I think it's eight or nine, you know,

16   mental health medical providers that are directly

17   relevant to this.  We took two of the depositions in

18   August.  We had noticed two more.  But because of

19   the significance of the document production that we

20   got in late August, it was clear to us that we would

21   need those documents and to have reviewed them for

22   the two upcoming depositions we had noticed.  And so

23   we had to put those off.

24          And with respect to one of the providers

25   that we did in August, after his deposition, we got

```
 1    some pretty critical pieces of two videos that we
 2    would like to have showed that provider that
 3    directly related to what he -- the services he was
 4    providing to Ms. Bennett.
 5          But where we are in terms of what we think,
 6    because we have talked amongst ourselves,
 7    particularly given what Your Honor had to say at our
 8    last conference, we have the party depositions
 9    scheduled.  And with respect to what we're looking
10    at is that there are now -- if we have seven mental
11    health providers that we would need depositions of,
12    two of the seven are ones that we had noticed but
13    then had to put off because medical records were
14    incomplete, or we were also getting documents from
15    Ms. Bennett that were contemporaneous with whatever
16    treatment that she was being provided that we
17    realized were going to be important for us in
18    questioning the medical providers.
19          In addition to the medical providers in
20    terms of fact -- third-party fact witnesses -- and
21    we're still, again, talking through this with
22    defense, with our co-counsel, but Your Honor, I
23    think knows that, for instance, Ms. DeRosa -- and
24    her counsel can speak to this -- given the
25    allegations of Ms. DeRosa and, you know,
```

1    retaliation, what the job was that Ms. Bennett then

2    moved to in health policy, there are different

3    questions and different people that Ms. DeRosa

4    certainly would want to depose that go directly to

5    the allegations against her.

6              THE COURT:  Of course.

7              MS. GLAVIN:  And I think this -- yeah, and

8    I think the same was true for Ms. Mogul and

9    certainly with respect to Governor Cuomo, because

10   we're, of course, keenly focused on all of the

11   allegations prior to her job move.

12             THE COURT:  Right.

13             MS. GLAVIN:  So we have come up with the

14   list, the four of us, because we're trying to be

15   efficient on this and do exactly what you, you know,

16   directed us to do.  We think it's going to be at

17   least eight fact witnesses.  In that ballpark.  It

18   could change depending on what we see in the current

19   production, which, again, is not fully loaded.

20             But I just wanted to give you that

21   background to have a sense of where we are because I

22   don't want you to think we've been sitting around

23   twiddling our thumbs.  We're trying to do it.

24             THE COURT:  I can tell by your submissions

25   that you're not just sitting around, but all that

1    context is very helpful.

2            I will just reiterate, I am -- I don't

3    think we should be considering extending the

4    schedule today.  I understand everything that you

5    just said, and you're laying the groundwork for that

6    request.  You know, January 31st is still three

7    months away.  A lot can happen, and a lot can be

8    done in three months.  We are going to have another

9    conference in early December, and, you know, we can

10   reassess at that time whether an extension is

11   necessary.  But I think it's premature today.

12           You know, the schedule that we adopted is

13   the one that the party has proposed.  And you'll

14   remember -- and I understand everything that you

15   said about the delays in Ms. Bennett's production.

16   And I'm not using "delay" in a derogatory sense.

17   I'm just -- unexpected -- unexpectedly took longer.

18   And I'm mindful that the parties probably didn't

19   contemplate that when they proposed a schedule

20   earlier this year.  But I do remember everybody

21   thinking that we can get it all done by January --

22   at the end of January.  And that was a good base

23   belief on all of our parts.  Things never go 100%

24   according to plan.

25           But I would like to keep our pedal to the

1    metal as much as possible over the next few weeks in

2    the hope that, you know, we can try to get as much

3    done as possible, or we can make decisions about --

4    I know you said eight fact witnesses.  Maybe you

5    don't need to depose all eight.  That decision is up

6    to you, and I'm not prejudging it.  I'm just saying,

7    you know, we always have to make decisions about how

8    we're going to expend our resources in the time that

9    we have.

10           And so I think the discipline of January

11   31st is good for all of us because it encourages

12   people like we just had with Ms. McEnaney.  If we're

13   anticipating that it has to be done when it has to

14   be done, magically people work within the time that

15   they have.

16           So I appreciate all the context,

17   Ms. Glavin, and we'll have a transcript of this, and

18   you won't have to repeat it all when we talk again

19   in December.

20           MS. GLAVIN:  Judge, thank you.

21           One thing, too, I wanted to mention to you

22   is, we actually weren't going to ask for you to rule

23   on this today.  I just wanted to let you know what

24   was going on.  I think in the joint status letter,

25   we thought it best to address the discovery schedule

```
 1   with you in a few weeks when we've had more chance
 2   to look at this.
 3          The other thing I wanted to tell you about
 4   as well, about we think we would need at least
 5   eight, just so you know, that was whittled down from
 6   a much longer list of people that we thought we
 7   absolutely needed.  So this was -- and now I'm
 8   kicking myself because I feel like I should have
 9   told you it was 15, and then you'd be so happy when
10   we got to eight.
11          THE COURT:  Then you'd get the credit.
12   Then you'd get credit for cutting it.
13          MS. GLAVIN:  Yes, I know.  I was so --
14   so -- but I want you to know that that was the
15   thinking that went into it.  And I do -- you know, I
16   give my colleagues credit, you know, in this defense
17   group, because there has been a fair amount of
18   compromise, because we don't want to come to you
19   unless it's something that we absolutely need.  And
20   people have given in within our group, you know,
21   this deposition is more important, and that -- we're
22   trying to work in that framework.  And it is not
23   always easy, but it's -- you know, with four
24   defendants, as I'm sure Your Honor is aware.
25          THE COURT:  Yeah.  Just to circle back, the
```

```
 1   question that teed us off was whether the length of
 2   Ms. Bennett's deposition, whether the parties were
 3   still working on that themselves, or if we need to
 4   decide that today.  And like I said, I do have time
 5   the week after Thanksgiving, and I'm hoping that we
 6   can have a conference then to talk about things
 7   further.
 8           So do you think on the issue -- and I do
 9   want to hear from Ms. Schnell or one of her
10   colleagues in a moment, of course, but is the issue
11   with respect to the length ripe as yet, or are you
12   going to keep working on that?
13           MS. GLAVIN:  Look, I think Ms. Schnell can
14   speak for herself.  I think they are dead set on two
15   days, and then coming to the Court.  I think where
16   we're at on this, is, you know, it may mean that we
17   need to do another letter to you just focused on
18   that issue, because I think you having the level of
19   detail would put you in a better position to rule.
20           THE COURT:  Let me give Ms. Schnell or one
21   of the other plaintiff's counsel a chance if you
22   want to weigh in on anything that Ms. Glavin said
23   and/or the issue of the length of Ms. Bennett's
24   deposition, which I'm leaning toward not making a
25   ruling on that today, but if there's any other
```

1    context that you want to share.

2             MS. SCHNELL:  Your Honor, Laura Schnell.

3             I mean, just in terms of the whole long

4    prelude to why they might need more time for

5    discovery, the only point I will make is how ironic

6    it is you ask, and we are ordered to, and,

7    therefore, we give them so many texts and stuff,

8    complete threads of texts that have nothing to do

9    with nothing.  And then using that onerous

10   production, which was incredibly onerous and

11   expensive for plaintiff to, therefore, need more

12   time.  But we are where we are, again, as the Court

13   said.

14            On the length of the deposition, we had

15   previously had a meet and confer last winter.  We

16   had agreed on two days instead of the one that the

17   rules provide for.  Two days of six hours each.  So

18   for a total of 12 hours, an additional five above

19   what the rules provide.  We have now agreed, subject

20   to it being the end of it, to another hour each day.

21   So in other words, two full days of seven hours.

22   And that is more than -- again, we're happy to brief

23   it as well, Your Honor, but that is more than almost

24   any court we've seen has ordered for a single

25   plaintiff case.

```
1              THE COURT:  Yes.  No, everyone, all the
2    counsel on this call have been involved in
3    complicated litigation.  I know it's hard to think
4    of one that's less complicated than this one, but
5    certainly more complex litigations.  And a
6    deposition of two full days is unusual.  Certainly
7    not the norm, obviously, given the rule.
8              But I'm happy to let the parties keep
9    talking about this issue.  And if we need to, we'll
10   have submissions before the next conference that tee
11   up if there remains a dispute between them about
12   whether the Court should order at this point in time
13   any longer deposition of Ms. Bennett.
14             MR. DELIKAT:  Your Honor, it's Mike Delikat
15   and Ms. Mogul.  If I could be heard just briefly on
16   the length of the deposition issue, and I know we're
17   not deciding that today, but this is an unusual
18   case.  We spent a lot of time today talking about
19   the volume of production, the videos with
20   information directly relevant to the actions of
21   Defendant Cuomo that are being challenged here.  And
22   it's going to take a lot of time to plod through the
23   factual allegations related to the harassment claims
24   in this case.
25             Put on top of that the fact that she had
```

1  almost ten treating physicians, and she has claims

2  for severe emotional distress in this case with

3  conflicting things that she told many of those

4  medical providers, there's that second element in

5  this case which makes it unusual.

6         And then put on top of that, besides

7  Defendant Cuomo, we have three individuals that

8  allegations of aiding and abetting the alleged

9  harassment have to be explored in some detail.

10        And so when you put those three

11 subcategories together, this does make this the

12 exceptional case where it really would be impossible

13 to complete everything within just two days.

14        THE COURT:  Okay.  Thank you.

15        Any of the other defendants' counsel wish

16 to make -- add anything to the record on this,

17 mindful that we're not ruling on it today?

18        MR. MORVILLO:  Your Honor, this is Greg

19 Morvillo on behalf of Ms. DeRosa.

20        I did want to add to the conversation, even

21 though I know there will be no ruling on it today,

22 about the extension of the deadline.

23        We have subpoenaed Ms. Boylan for a

24 deposition.  We were trying to get a date for her in

25 January.  Her lawyers have refused to give us a

1    date, saying earlier this week, I believe, that they

2    are going to move to quash the subpoena.

3         And although I have not seen any motion

4    from them, these are sort of the issues that we're

5    running into with third parties, that they don't

6    want to be deposed, and they understand there's a

7    deadline and think if they can push it out, then

8    that's good for them.  But that's part of the reason

9    that we think we're going to need an extension, is

10   because the third parties are not being eager --

11   let's say eager to be deposed in this case.

12        THE COURT:  Yeah.  Okay.  Well, I would --

13   if there is going to be motion practice, I know it's

14   not necessarily in your control, Mr. Morvillo, but

15   getting a -- if it's a definitive no, getting that

16   sooner rather than later, and then getting the

17   actual motion filed, will be helpful.  Not that I

18   love getting motions --

19        MR. MORVILLO:  Understood.

20        THE COURT:  -- but I'd rather decide the

21   issue in time, than hear it at the last minute.

22        MR. MORVILLO:  Understood, but Your Honor

23   is right.  I don't control when and whether they

24   make their motion.

25        THE COURT:  Of course not, but you can also

AMM TRANSCRIPTION SERVICE - 631.334.1445

```
 1   be a pest.  And, you know --
 2              MR. MORVILLO:  I am good at that.
 3              THE COURT:  I'm not saying you personally.
 4   I'm saying, if it's a definitive no, just say, we
 5   need to know that sooner rather than later, so that
 6   if we need to take it up with the judge, that we can
 7   do that.
 8              MR. MORVILLO:  Understood, Your Honor.
 9   We'll get on it, and I will be a pest.
10              MS. GLAVIN:  Okay.
11              THE COURT:  All right.  Any other
12   defendants wish to be heard?
13              Okay.  Ms. Schnell, any other issues from
14   Ms. Bennett's perspective to address today?
15              MS. SCHNELL:  No, Your Honor.
16              THE COURT:  Okay.  Any other defendants
17   wish to raise any issues?
18              Okay.  Silence is nice.
19              So you'll see a post-conference order from
20   us that addresses Ms. McEnaney and Ms. Cuomo, but
21   aside from that, we'll reserve everything.
22              How is 2:30 on December 4th for everyone
23   for another call?
24              MS. GLAVIN:  That works for Governor
25   Cuomo's attorneys, Your Honor.
```

AMM TRANSCRIPTION SERVICE - 631.334.1445

```
 1              MS. SCHNELL:  It works for plaintiff's
 2    attorneys, Your Honor.
 3              MR. MORVILLO:  Fine for DeRosa.
 4              THE COURT:  Everybody okay with that?
 5    Okay.
 6              MS. MAYO:  Yes.
 7              THE COURT:  If you could -- great.  If you
 8    could get me any -- if you could get me a joint
 9    letter by, let's say, 2:00 on December 2nd, so that
10    you don't have to write it over the weekend, or at
11    least you have until 1:00 to finalize it, or sorry,
12    2:00 on December 2nd for a joint letter with any
13    issues that you want me to address, okay.
14              All right.  Thank you very much, everyone.
15    Have a nice Thanksgiving holiday in the meantime,
16    and I will speak to you on December 4th at 2:30.
17    Thank you very much.  We'll be adjourned.
18              MR. MORVILLO:  Thank you.
19              MS. SCHNELL:  Thank you, Your Honor.
20              THE COURT:  Thank you.
21              MR. HAMID:  Thank you.
22
23                         0o0
24
25
```

AMM TRANSCRIPTION SERVICE - 631.334.1445

1

2                          C E R T I F I C A T E

3

4        I, Adrienne M. Mignano, certify that the

5    foregoing transcript of proceedings in the case of

6    Bennett v. Cuomo, et al.; Docket #22CV7846 was

7    prepared using digital transcription software and is

8    a true and accurate record of the proceedings.

9

10

11    Signature    _Adrienne M. Mignano_
                   _____

12                 ADRIENNE M. MIGNANO, RPR

13

14    Date:        November 11, 2024

15

16

17

18

19

20

21

22

23

24

25